CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Carel Alé (Bar No. 283717)
(E-Mail: Carel_Ale@fd.org)
Charles Snyder (Bar No. 287246)
(E-Mail: Charles_Snyder@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-0326-JFW |
| Plaintiff, | |
| v. | **JOINT STATEMENT RE DEFENDANT'S MOTION TO INSPECT GRAND JUROR SELECTION RECORDS PURSUANT TO 28 U.S.C. § 1867(f)** |
| JOSE LUIS HUIZAR, | |
| Defendant. | **Hearing Date: November 2, 2020** <br> **Time: 8:00 a.m.** |

1    Pursuant to the Court's October 14, 2020 Order, Docket Entry 69, Defendant

2  Jose Luis Huizar, by and through his counsel of record, Carel Alé and Charles Snyder,

3  and Plaintiff United States of America, by and through its counsel of record, hereby

4  submit a joint statement with respect to Defendant's Motion to Inspect Juror Selection

5  Records Pursuant to 28 U.S.C. § 1867(f), Docket Entry 65.

6

7                                     Respectfully submitted,

8                                     CUAUHTEMOC ORTEGA
                                      Federal Public Defender
9

10     Dated: October 22, 2020        By  _____

11                                    Carel Alé
                                      Charles Snyder
12                                    Deputy Federal Public Defenders

13

14

15                                    Respectfully submitted,

16     Dated: October 22, 2020        NICOLA T. HANNA
                                      United States Attorney
17

18                                    BRANDON D. FOX
                                      Assistant United States Attorney
19                                    Chief, Criminal Division

20

21                                    _____

22                                    MELISSA MILLS
                                      Assistant United States Attorney
23

24                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

25

26

27

28
                                      ii

# TABLE OF CONTENTS

JOINT STATEMENT...................................................................................1

1.    Any AO-12 form or JS-12 form created that relates to the 2019 Master Jury Wheel...............................................................................1

2.    Any other statistical or demographic analyses produced to ensure that the Master Jury Wheels that were used to summon the grand jurors who returned the Indictment in this case on July 30, 2020, were in compliance with the Jury Plan, Jury Selection and Service Act, or the Constitution. ...............................................................1

3.    The calculation of the number of potential jurors from each county in the Western Division to ensure compliance with the Jury Plan. ...............8

4.    The Source Data in electronic form for the 2019 Master Jury Wheel. The data should include, as available, Race, Gender, Ethnicity, Year of Birth, Zip Code, County, and Jury Division. ...............................9

5.    The 2019 Master Jury Wheel data, in electronic and accessible form that includes, Juror Number, Race, Gender, Ethnicity, Year of Birth, Zip Code, County and Jury Division. ...................................10

6.    Any algorithm, in electronic form, used to select names and create the 2019 Master Jury Wheel. The algorithm and any data pertaining to that algorithm shall be produced under seal...........................................11

7.    The calculation of proportionality of counties as described in §5 of the Jury Plan...............................................................................12

8.    The records or data of any prospective juror removed from the Western Division's 2019 Master Jury Wheel or transferred to another Master Jury Wheel after their names were run through the National Change of Address database.  The records or data should include, as available, Race, Gender, Ethnicity, Year of Birth, Zip Code, County, and Jury Division. ...............................................................14

9.    Information regarding how the National Change of Address database is produced or compiled and when and how often it is updated. ...............15

10.    The date when the grand jurors who returned the Indictment in this case on July 30, 2020 were summoned...........................................16

11.    The number of persons summoned from the 2019 Master Jury Wheel to be considered as grand jurors. This number should further be categorized by number per jury division. ...................................18

12.    For the 2019 Master Jury Wheel, the juror qualification and summons forms for the persons summoned to potentially become grand jurors.......19

13.    The Questionnaire, as defined by § 6 of the Jury Plan, sent to the prospective grand jurors on the 2019 Master Jury Wheel. ...................19

iii

14.   The records of the prospective jurors from the 2019 Master Jury Wheel who failed to return the Questionnaire........................................................ 19

15.   The Juror Numbers for the persons selected as potential grand jurors from January 1, 2020 to July 30, 2020...................................................... 19

16.   The disposition of each summoned potential grand juror as to excusal, deferment, disqualification or selection as described in §§ 9-11 of the Jury Plan for the 2019 Master Jury Wheel................................................ 21

17.   The Juror Number for each grand juror who returned the Indictment in this case on July 30, 2020. ........................................................................ 23

18.   The attendance record and reason for absence by date of each grand juror who returned the Indictment in this case on July 30, 2020.............. 24

iv

# TABLE OF AUTHORITIES

**CASES**

*Castaneda v. Partida*, 430 U.S. 482 (1977) ........................................................ 12, 15, 16

*Douglas Oil Co. of Cal. v. Petrol Stops Northwest*,
   441 U.S. 211 (1979) .......................................................................................... 21

*People of Territory of Guam v. Palomo*,
   511 F.2d 255 (9th Cir. 1975) ............................................................................... 6

*Test v. United States*, 420 U.S. 28 (1975) ............................................................. 4, 5, 7

*United States v. Armstrong*, 621 F.2d 951 (9th Cir. 1980) .................................. 4

*United States v. Beaty*, 465 F.2d 1376 (9th Cir. 1972) ....................................... 4

*United States v. Boyajian*, CR 09-933-CAS, ....................................................... 2

*United States v. Braxton*,
   No. 20-CR-237 (LDH), 2020 WL 6083649 (E.D.N.Y. Oct. 15, 2020) .................. 10

*United States v. Ciancia*,
   No. CR 13-902 PSG, 2015 WL 13798661 (C.D. Cal. Nov. 9, 2015) ............... *passim*

*United States v. Cloud*,
   No. 1:19-CR-02032-SMJ-01, 2020 WL 4381608 (E.D. Wash. July 27, 2020) ..... 4, 20

*United States v. Corbett*,
   No. 20-CR-213(KAM), 2020 WL 5803243 (E.D.N.Y. Aug. 21, 2020) ............... 4, 18

*United States v. Diaz*, 236 F.R.D. 470 (N.D. Cal. 2006) ................................... 2, 4, 7, 21

*United States v. Holmes*,
   No. 18-CR-00258-EJD-1, 2020 WL 5408163 (N.D. Cal. Sept. 9, 2020) .......... *passim*

*United States v. Layton*, 519 F. Supp. 946 (N.D. Cal. 1981) ............................ 5

*United States v. McLernon*, 746 F.3d 1098 (6th Cir. 1984) .............................. 2, 7

*United States v. Nelson*,
   No. 05-cr-0208 CRB (JL), 2006 WL 8434976 (N.D. Cal. 2006) ...................... 22

*United States v. Plummer*, 941 F.2d 799 (9th Cir. 1991) .................................. 7

*United States v. Potts*, 20-CR-0128-JGB ...................................................... 17, 20, 22

*United States v. Rodriguez*, 924 F. Supp. 2d 1108 (C.D. Cal. 2013) ................ 4

*United States v. Shader*,
   No. 20-CR-202, 2020 WL 4158059 (E.D.N.Y. July 17, 2020) .......................... 10

*United States v. Todd*,
   No. 20-CR-256(KAM), 2020 WL 5981673 (E.D.N.Y. Oct. 8, 2020) ................ 4, 17

v

**STATUTES**

28 U.S.C. § 1867.........................................................................................*passim*

**OTHER AUTHORITIES**

C.D. Cal. Gen. Order No. 19-07 ......................................................... 9, 10, 13

C.D. Cal. Handbook for Federal Grand Jurors ............................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>JOINT STATEMENT</u>**

Pursuant to the Court's October 14, 2020 Order, the parties provide the following positions and responses with respect to each request contained in defendant's motion to inspect grand Juror Selection Records. The parties agree that defendant's requests are limited to the 2019 Master Jury Wheel.

**1.     Any AO-12 form or JS-12 form created that relates to the 2019 Master Jury Wheel.**

<u>Joint Government and Defense Position</u>

The parties agree that these records constitute Juror Selection Records as identified in the Court's General Order No. 19-07 (the "Jury Plan"), and that defendant is entitled to these records. Jury Plan § 12. This request should be granted.

**2.     Any other statistical or demographic analyses produced to ensure that the Master Jury Wheels that were used to summon the grand jurors who returned the Indictment in this case on July 30, 2020, were in compliance with the Jury Plan, Jury Selection and Service Act, or the Constitution.**

<u>Government Position</u>

Such records are not Juror Selection Records as defined in the Jury Plan, and defendant is not entitled to these records as a matter of right. Therefore, this request should be submitted or referred to the Chief Judge.[1]

Defendant has not offered any explanation as to why he requires these particular records to prepare to challenge the Court's grand jury selection procedures. Instead,

---

[1] In his reply, defendant objects to the government's suggestion that he should submit his requests for non-Juror Selection Records directly to the Chief Judge, arguing that the District Judge presiding over this case should transmit defendant's motion to the Chief Judge. Def. Reply at 5-6. The government notes that now-Chief Judge Gutierrez has held that a defendant's requests for non-Juror Selection Records filed with the District Judge assigned to the case were rendered moot, "so that Defendant may request their production directly from Chief Judge King." *United States v. Ciancia*, 2015 WL 13798661 at *5 (C.D. Cal. Nov. 9, 2015). However, the government defers to the Court as to the appropriate mechanism by which defendant's requests for the Court's non-Juror Selection Records should be presented to the Chief Judge.

defendant argues that he has an "unqualified right" to all records related to the juror selection process, and that he need not make any showing of need or relevance to his anticipated motion, including for records not identified in the Jury Plan as Juror Selection Records.  See Def. Reply at p. 1-2.

Courts —— including this Court —— have repeatedly rejected that position, requiring some showing of need for the disclosure of jury records beyond those to which a defendant is automatically entitled by statute and the operative Jury Plan, in order to permit the court to balance the defendant's needs against the equities favoring protection of that nonpublic information.  *See United States v. McLernon*, 746 F.3d 1098, 1123 (6th Cir. 1984) (upholding district court's denial of defendant's motion for juror records beyond those to which he was statutorily entitled and opining that, while other facts could theoretically support a defendant's need for more data, the "narrow facts currently before us" indicated that the defendant's needs were satisfied by jury lists and similar data); *see also Ciancia*, 2015 WL 13798661 at *4 (declining to "open the floodgates to all possible records without some evidence that such information is needed to prepare a Jury Act or Sixth Amendment claim"); *United States v. Boyajian*, CR 09-933-CAS, Dkt. #786 at *3 (holding that a defendant "does not have the unqualified right to any and all records related to jury selection without a showing of particularized need" and denying without prejudice defendant's motion for jury records other than those identified in the operative Jury Plan as Juror Selection Records).  The Northern District of California has also noted that a defendant's broad request for "a range of other jury-selection documents" beyond those to which he was statutorily entitled or those for which he had a demonstrated requirement would needlessly disrupt the operation of the clerk's office.  *United States v. Diaz*, 236 F.R.D. 470, 480-81 (N.D. Cal. 2006).

The cases cited by defendant support his unqualified right to jury lists and certain other juror selection records.  The government agrees with his automatic entitlement to

that subset of records delineated in the Jury Plan and concurs that those specific requests should be granted.  However, those cases do not support defendant's assertion that he has an unqualified and unlimited right to any and all records that he deems relevant to the juror selection process without any explanation of why he needs them to prepare a particular motion.

Moreover, the Jury Plan itself draws a clear distinction between Juror Selection Records and non-Juror Selection Records, specifying that "[p]arties seeking the disclosure of anything not identified as Juror Selection Records must apply to the Court for an order of disclosure."  Jury Plan § 12.  This delineation would make little sense if, as defendant argues, the Jury Plan did not limit a defendant's automatic entitlement to records beyond those identified as Juror Selection Records.

In seeking this non-Juror Selection Record without setting forth a showing of need for the information or relevance to his anticipated motion, defendant has not met the requirements of the Jury Plan.  The government thus respectfully submits that his request should be denied without prejudice to provide additional information justifying his request.  Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court, the government would defer to the Chief Judge to assess whether any future explanation of relevance or need is sufficient to overcome the sensitivity of this nonpublic information, the burden of production, or any other equities favoring nondisclosure.

Defendant's Response

Mr. Huizar agrees that these records are not classified as "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, pursuant to the Jury Plan, this request should be referred to the Chief Judge. This request should be granted.

The records requested, the district's own compliance records, may show that its grand jury selection procedures violate the Jury Selection Plan, JSSA, or the Constitution. Such information would support a motion to dismiss under 1867(d) and

3

the Sixth Amendment. *See, e.g.*, *United States v. Todd*, No. 20-CR-256(KAM), 2020 WL 5981673, at *4 (E.D.N.Y. Oct. 8, 2020) (granting similar request); *United States v. Holmes*, No. 18-CR-00258-EJD-1, 2020 WL 5408163, at *6 (N.D. Cal. Sept. 9, 2020) (same); *United States v. Corbett*, No. 20-CR-213(KAM), 2020 WL 5803243, at *5 (E.D.N.Y. Aug. 21, 2020) (same); *United States v. Merrick*, No. 20-CR-009-JD, 2020 WL 4808634, at *2 (D.N.H. Aug. 18, 2020) (same); *United States v. Cloud*, No. 1:19-CR-02032-SMJ-01, 2020 WL 4381608, at *2 (E.D. Wash. July 27, 2020) (same).

Mr. Huizar does have a broad right to the records requested. As the Supreme Court has explained, referring to §1867(f), "[t]his provision makes clear that a litigant has essentially an unqualified right to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30 (1975) (emphasis added). *See also United States v. Armstrong*, 621 F.2d 951, 955 (9th Cir. 1980) ("A litigant has essentially an unqualified right to inspect jury lists when necessary for the preparation or presentation of a motion . . . [which] extends not only to the grand jury panel, but also to the master wheel."). The Court in *Test* added that the only limitation authorized by Congress on the disclosure of "records and papers used . . . in connection with the jury selection process," 28 U.S.C. §1867(f), is that it must be made at reasonable times. 420 U.S. at 30, fn. 4.[2]

The Ninth Circuit in *United States v. Beaty* also acknowledged the permissiveness of the statue. 465 F.2d 1376 (9th Cir. 1972). In *Beaty*, the lower court had denied a request for inspection of records because the request was "not timely

---

[2] Importantly, the JSSA, the Supreme Court, and the Ninth Circuit do not limit what "records or papers used . . . in connection with the jury selection process" a defendant can access. Nor does the Jury Plan limit access to only records defined as "Juror Selection Records," Whether Mr. Huizar is entitled to the requested records under the Constitution, as opposed to the JSSA or the Jury Plan, is for this Court to decide. *Cf. United States v. Diaz*, 236 F.R.D. 470, 482 (N.D. Cal 2006) (recognizing that "disclosure requirements under 1867(f) differ from disclosure for a constitutional claim."); *United States v. Rodriguez*, 924 F. Supp. 2d 1108, 1118-19 (C.D. Cal. 2013) (finding the JSSA's requirements do not limit constitutional claims and that "[a]lthough the Court finds that Rodriguez's JSSA grand jury challenge is untimely, Rodriguez may bring his motion separately on constitutional grounds, a position the Government does not dispute.").

4

made, . . . not supported by sworn statement of fact (28 U.S.C. §1867(d)), is a fishing expedition with no justification and is apparently made for the purpose of delay." *Id.* at 1379. The Ninth Circuit held that the lower court erred. "The statutes clearly mean what they state. [The appellant-defendant] . . . was entitled to inspect . . . the 'contents of records or papers used by the jury commission or clerk in connection with the jury selection process . . .', under § 1867(f)." *Id. See also United States v. Layton*, 519 F. Supp. 946, 958 (N.D. Cal. 1981) (citing Beaty for the proposition that "[n]o probability of merit need be shown."). *Test* and *Beaty* make clear that for a defendant "to avail himself of this right of access to otherwise nonpublic jury selection records, a litigant need only allege that he is preparing a motion challenging the jury selection procedures. There is no doubt on this point whatsoever." *Layton*, 519 F. Supp. at 958.

The government nevertheless asserts (1) that requests that are not specifically defined as "Juror Selectin Records" will create an undue burden on the Clerk of the Court and (2) that Mr. Huizar must show a "particularized need" for the requested records. Both assertions are wrong. There is no evidence, and the government does not proffer any, to conclude that the Clerk of the Court would be unduly burdened by Mr. Huizar's requests. Nor do the government's cited sources make access to these records contingent on ease of availability. As to whether Mr. Huizar must first provide an explanation beyond stating that he is preparing a potential motion under the JSSA as is required by the statute, that too is unsupported. This additional requirement is not found in the text of statute, the Jury Plan, or the Sixth Amendment.

Creating a heightened requirement to obtain records used in connection with the juror selection process ignores that the intent of the JSSA is to grant access to those records liberally. That is so, the Supreme Court explained, because "without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious challenge." *Test*, 420 U.S. at 29. Not only is this information necessary to determine the merit of a motion but, as the Ninth Circuit recognized, a defendant

"needs this information in order to make his motion to stay or dismiss under subsection (a), 28 U.S.C. §1867, and to support his motion by the sworn statement of facts or affidavit required by subsection (d)." *People of Territory of Guam v. Palomo*, 511 F.2d 255, 258 (9th Cir. 1975) (emphasis added). Inspection of these jury selection process records is what allows a defendant to know if a meritorious motion exists, to make the motion, and to support his later statement of facts as required by subsection (d).

The government relies, in part, on *United States v. Ciancia*, No. CR 13-902 PSG, 2015 WL 13798661, at *2 (C.D. Cal. 2015), to argue that a heightened requirement exists. *See supra* at 2; Memorandum of Law in Response to Defense Motion to Inspect Grand Juror Records, Docket Entry 66 at 4, Request 2 ("defendant is not entitled to these records absent a showing of particularized need") (citing *Ciancia*, 2015 WL 13798661, *5). The government contends that the court in *Ciancia* rejected the argument that a defendant has an "'unqualified right' to all records related to the juror selection process, and that he need not make any showing of need or relevance to his anticipated motion." *Supra* at 2. Instead, the government claims, the *Ciancia* court required "some showing of need for the disclosure of jury records beyond those to which a defendant is automatically entitled by statute and the operative Jury Plan, in order to permit the court to balance the defendant's needs against the equities favoring protection of that nonpublic information." *Id*. The part of *Ciancia* the government cites to pertained to the court's reasoning for denying the request for records from "years beyond those that specifically affected him." 2015 WL 13798661, at *3. Even in those instances the "Court d[id] not disagree that there could be situations in which evidence from years other than those affecting the defendant could be useful," but it wanted "some evidence that such information is needed to prepare a Jury Act or Sixth Amendment claim." *Id.* at *4. As to the other records, for "the years that have or will directly affect Defendant," the *Ciancia* court granted those. *Id.* at *3. Mr. Huizar is asking for records or papers in connection with the juror selection process affecting

him. Even if *Ciancia*'s "some evidence" requirement were consistent with the lenient qualifications of the JSSA, it is inapplicable here where the request is for records affecting Mr. Huizar

Similarly, the Sixth Circuit's decision in *United States v. McLernon*, 746 F.2d 1098 (6th Cir. 1984), also does not support the government's claim of a higher standard. The defendant in *McLernon* had received master lists from which the grand jurors were drawn and the relevant demographic information but additionally sought the names, addresses, and questionnaires of the grand jurors who returned the indictments. *Id.* at 1122. The court, reviewing the district court's denial on a clear error standard, determined that "on the narrow facts currently before [them] appellants received sufficient information . . . ." and that the district court had not erred. *Id.* at 1123. The Sixth Circuit reiterated, however, that the "right to inspection extends to all jury selection materials relevant to a complete determination of whether a grand or petit jury has in fact been selected 'at a random from a fair cross-section of the community.'" *Id.* at 1123 (citing *Test* at 30).

The government's citation to *United States v. Diaz* also does not help its cause. *See supra* at 2 (citing *United States v. Diaz*, 236 F.R.D. 470, 480-81 (N.D. Cal. 2006)). The discussion in *Diaz* referenced disclosure of "nonministerial" grand jury records covered by Federal Rule of Criminal Procedure 6. *Id. Diaz* explained that "[d]efendants may access nonministerial records upon a showing of need" that would "overcome the traditional interests of grand jury secrecy." 236 F.R.D. at 480. *Diaz* cited to *United States v. Plummer*, 941 F.2d 799 (9th Cir. 1991), in support. In *Plummer* the Ninth Circuit required the defendant to "show[ ] a particularized need for grand jury transcripts that outweighs the need for secrecy . . . ." *Id.* at 806. With one exception, the government has not alleged that the records requested are "nonministerial grand jury

7

records" of the sort that in any way infringe on the grand jury's secrecy.[3] Mr. Huizar does not need to provide an explanation or show a "particularized need" for the jury selection records requested.[4]

### 3. The calculation of the number of potential jurors from each county in the Western Division to ensure compliance with the Jury Plan.

Government Position

These records are not Juror Selection Records as defined in the Jury Plan, and defendant is not entitled to these records as a matter of right. Therefore, this request should be submitted or referred to the Chief Judge.

As articulated above, in seeking this non-Juror Selection Record without setting forth a need for the information or relevance to his anticipated motion, defendant has not met the requirements of the Jury Plan. The government thus respectfully submits that this request should be denied without prejudice to provide additional information justifying his request. Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court, the government would defer to the Chief Judge to assess whether any future explanation of relevance or need is sufficient to overcome the sensitivity of this nonpublic information, the burden of production, or any other equities favoring nondisclosure.

Defendant's Response

Mr. Huizar agrees that these records are not classified as "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, pursuant to the Jury Plan, this request should be referred to the Chief Judge.

---

[3] The exception is Request 16, which the government construes to be requesting the names of the grand jurors. *See infra* at 20-21. As Mr. Huizar explains, he is not seeking the names of the grand jurors.

[4] For these reasons Mr. Huizar maintains that he does not have to make a "particularized need" showing for any of his requests.

8

This request is for "records or papers used . . . in connection with the jury selection process," 28 U.S.C. §1867(f), and should be granted. Under this Court's jury selection plan, each Division has a separate master jury wheel from which grand jurors are selected. C.D. Cal. Gen. Order No. 19-07 at ¶5. The Western Division includes the counties of Los Angeles, San Luis Obispo, Santa Barbara, and Ventura. *Id.* at ¶1. The Jury Plan asserts that it is the policy of the district that all litigants have the right to grand and petite juries "selected at random from a fair cross section of the community in the division . . . ." *Id.* at ¶2. The information requested, the calculation of the number of potential jurors from each county from the Western Division, would reveal whether the master jury wheel used in this case was comprised of a "fair cross section of the community in the division" as is the intended policy of this district, the purpose of the JSSA, and the guarantee of the Sixth Amendment.

> **4.    The Source Data in electronic form for the 2019 Master Jury Wheel. The data should include, as available, Race, Gender, Ethnicity, Year of Birth, Zip Code, County, and Jury Division.**

Government Position

Source Data is a Juror Selection Record to which defendant is entitled. (Jury Plan § 4.) This request should be granted.

It is unclear from the Jury Plan whether the Source Data contains all information encompassed in defendant's request. To the extent that it does not, this request for information beyond that considered Source Data should be submitted or referred to the Chief Judge. For the reasons articulated above, and as defendant has shown no need for such non-Juror Selection Records or relevance to his anticipated motion, any such request should be denied without prejudice to provide additional information justifying his request. Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court, the government would defer to the Chief Judge to assess whether any future explanation of

relevance or need is sufficient to overcome the sensitivity of this nonpublic information, the burden of production, or any other equities favoring nondisclosure.

Defendant's Response

Mr. Huizar agrees that these records are "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, Mr. Huizar is entitled to these records and this Court can order its production.

The Source Data, as defined by the Jury Plan, includes Voter Lists and DMV Records. C.D. Cal. Gen. Order No. 19-07 at ¶4. Voter Lists and DMV Records likely contain the above referenced information, *i.e.*, race, gender, etc. Nevertheless, if that information is not included as "Source Data," as defined by the Jury Plan, Mr. Huizar asks this Court to refer the request to the Chief Judge. This information is pertinent to a determination of whether the 2019 Master Jury Wheel reflected a cross section of the community. Biographical information about a prospective or actual jurors is necessary to determine whether a distinctive or identifiable group has been excluded for purposes of a potential challenge to the jury selection process. *See, e.g.*, *United States v. Braxton*, No. 20-CR-237 (LDH), 2020 WL 6083649, at *3 (E.D.N.Y. Oct. 15, 2020) (granting a similar request); *United States v. Shader*, No. 20-CR-202, 2020 WL 4158059, at *4 (E.D.N.Y. July 17, 2020) (same).

**5.  The 2019 Master Jury Wheel data, in electronic and accessible form that includes, Juror Number, Race, Gender, Ethnicity, Year of Birth, Zip Code, County and Jury Division.**

Government Position

To the extent that this request seeks Merged Source Lists, this is a Juror Selection Record to which defendant is entitled.  (Jury Plan § 3.)  This request should be granted.

The Jury Plan does not specify whether the Merged Source Lists contain all information encompassed in defendant's request.  To the extent that they do not, this request for information beyond that considered Merged Source Lists should be

10

submitted or referred to the Chief Judge.  For the reasons articulated above, and as defendant has shown no need for the data or relevance to his anticipated motion, any such request should be denied without prejudice to provide additional information justifying his request.  Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court, the government would defer to the Chief Judge to assess whether any future explanation of relevance or need is sufficient to overcome the sensitivity of this nonpublic information, the burden of production, or any other equities favoring nondisclosure.

Defendant's Response

Mr. Huizar agrees that these records are "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, Mr. Huizar is entitled to these records and this Court should order its production.

If the requested data does not include the particular information referenced in the request, *i.e.*, race, gender, etc., Mr. Huizar asks this Court to refer the request to the Chief Judge. As explained *supra*, Defendant's Response Question 4, such information is pertinent to a determination of whether the 2019 Master Jury Wheel reflected a cross section of the community and thus whether Mr. Huizar has a meritorious motion.

**6.     Any algorithm, in electronic form, used to select names and create the 2019 Master Jury Wheel. The algorithm and any data pertaining to that algorithm shall be produced under seal.**

Government Position

These records are not Juror Selection Records as defined in the Jury Plan, and defendant is not entitled to these records as a matter of right.  Therefore, this request should be submitted or referred to the Chief Judge.

As articulated above, in seeking this non-Juror Selection Record without setting forth a need for the information or relevance to his anticipated motion, defendant has not met the requirements of the Jury Plan.  The government thus respectfully submits

11

that this request should be denied without prejudice to provide additional information justifying his request.  Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court, the government would defer to the Chief Judge to assess whether any future explanation of relevance or need is sufficient to overcome the sensitivity of this nonpublic information, the burden of production, or any other equities favoring nondisclosure.

> Defendant's Response

Mr. Huizar agrees that these records are not classified as "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, pursuant to the Jury Plan, this request should be referred to the Chief Judge.

This request is for "records or papers used . . . in connection with the jury selection process," 28 U.S.C. § 1867(f), and should be granted. The algorithm used to select the Master Jury Wheel is such a record. "[I]n order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs." *Castaneda v. Partida*, 430 U.S. 482, 494 (1977). The algorithm is part of the procedure employed to create the Master Jury Wheel and part of the records to which Mr. Huizar has a right to inspect.

**7.    The calculation of proportionality of counties as described in §5 of the Jury Plan.**

> Government Position

These records are not Juror Selection Records as defined in the Jury Plan, and defendant is not entitled to these records as a matter of right.  Therefore, this request should be submitted or referred to the Chief Judge.

As articulated above, in seeking this non-Juror Selection Record without setting forth a need for the information or relevance to his anticipated motion, defendant has not met the requirements of the Jury Plan.  The government thus respectfully submits

that this request should be denied without prejudice to provide additional information justifying his request.  Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court, the government would defer to the Chief Judge to assess whether any future explanation of relevance or need is sufficient to overcome the sensitivity of this nonpublic information, the burden of production, or any other equities favoring nondisclosure.

<u>Defendant's Response</u>

Mr. Huizar agrees that these records are not classified as "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, pursuant to the Jury Plan, this request should be referred to the Chief Judge.

This request is for "records or papers used . . . in connection with the jury selection process," 28 U.S.C. § 1867(f), and should be granted. As previously explain supra, Defendant's Response to Request 3, the Western Division, the Western Division is comprised of four counties. C.D. Cal. Gen. Order No. 19-07 at ¶1. In creating the Master Jury Wheel for the Western Division, the Jury Plan explains that selected names "shall be placed in the Master Jury Wheel for the division in which the county is located, in such numbers as to ensure that each county is substantially proportionally represented . . . ." *Id.* at §5. The information requested, the proportionality of counties as described in §5 of the Jury Plan, would reveal whether the master jury wheel "substantially proportionally represented" the counties in the Western Division and thus a "fair cross section of the community in the division."

13

**8.    The records or data of any prospective juror removed from the Western Division's 2019 Master Jury Wheel or transferred to another Master Jury Wheel after their names were run through the National Change of Address database.  The records or data should include, as available, Race, Gender, Ethnicity, Year of Birth, Zip Code, County, and Jury Division.**

Government Position

These records are not Juror Selection Records as defined in the Jury Plan, and defendant is not entitled to these records as a matter of right.  Therefore, this request should be submitted or referred to the Chief Judge.

Based on the information defendant has provided as to the nature of his anticipated motion, the records sought by this request appear to be relevant to such a motion.  Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court, the government defers to the Chief Judge as to 1) whether information responsive to this request is in the possession of the Court; 2) whether such information exists in defendant's requested format; 3) whether production of such information would be administratively feasible for the Court; 4) whether disclosure of this information is otherwise appropriate after balancing defendant's demonstrated need for it against any equities that may weigh in favor of its protection or nondisclosure; and 5) any other considerations relevant to a disclosure determination.

Defendant's Response

Mr. Huizar agrees that these records are not classified as "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, pursuant to the Jury Plan, this request should be referred to the Chief Judge.

This request is for "records or papers used . . . in connection with the jury selection process," 28 U.S.C. § 1867(f), and should be granted. In challenging the jury selection process, a "defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he

14

belongs." *Castaneda*, 430 U.S. at 494. The records requested pertain to the procedures used to create the Master Jury Wheel. Mr. Huizar understands that after the Master Jury Wheels for each division are created, the names on those Wheels are run through the National Change of Address (NCOA) database. Based on the results, the third-party vendor (1) removes deceased individuals from the Master Jury Wheels, and (2) transfers individuals who have moved from one division to another within the Court's jurisdiction from the Master Jury Wheels associated with their previous addresses to the Master Jury Wheels for the divisions associated with their new addresses. The information requested would reveal if running the names through the NCOA program and removing or transferring names after the Master Jury Wheel is proportionally populated interferes with the proportionality or randomization that the prior steps purport to create and thus whether the final Master Jury Wheel complies with the requirements of the Jury Plan, JSSA, and the Constitution.

**9.    Information regarding how the National Change of Address database is produced or compiled and when and how often it is updated.**

Government Position

Any such records, to the extent they exist within the Court's possession, are not Juror Selection Records as defined in the Jury Plan, and defendant is not entitled to these records as a matter of right.  Therefore, this request should be submitted or referred to the Chief Judge.

To the extent that the Court possesses any information responsive to this request, the government submits that defendant has explained why such records would be relevant to his anticipated motion.  The government would defer to the Chief Judge as to 1) whether information responsive to this request is in the possession of the Court; 2) whether such information exists in defendant's requested format; 3) whether production of such information would be administratively feasible for the Court; 4) whether disclosure of this information is otherwise appropriate after balancing defendant's

15

demonstrated need for it against any equities that may weigh in favor of its protection or nondisclosure; and 5) any other considerations relevant to a disclosure determination.

<u>Defendant's Response</u>

Mr. Huizar agrees that these records are not classified as "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, pursuant to the Jury Plan, this request should be referred to the Chief Judge.

This request is for "records or papers used . . . in connection with the jury selection process," 28 U.S.C. § 1867(f), and should be granted. As previously explain *supra*, Defendant's Response to Request 8, the procedures employed in creating the Master Jury Wheel are directly at issue in any potential challenge. *See Castaneda*, 430 U.S. at 494. The use of the National Change of Address database, not otherwise disclosed in the District's Jury Plan, raises concerns about whether the final Master Jury Wheel represents the proportionality that the JSSA and the Jury Plan are meant to create. The information requested would reveal whether this additional step still resulted in a fair cross section of the community.

**10.    The date when the grand jurors who returned the Indictment in this case on July 30, 2020 were summoned.**

<u>Government Position</u>

These records are not Juror Selection Records as defined in the Jury Plan, and defendant is not entitled to this information as a matter of right.  Therefore, this request should be submitted or referred to the Chief Judge.

As articulated above, in seeking this non-Juror Selection Record without setting forth a need for the information or relevance to his anticipated motion, defendant has not met the requirements of the Jury Plan.  The government thus respectfully submits that this request should be denied without prejudice to provide additional information justifying his request.  Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court,

16

the government would defer to the Chief Judge to assess whether any future explanation of relevance or need is sufficient to overcome the sensitivity of this nonpublic information, the burden of production, or any other equities favoring nondisclosure.

<u>Defendant's Response</u>

Mr. Huizar agrees that these records are not classified as "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, pursuant to the Jury Plan, this request should be referred to the Chief Judge.

This request is for "records or papers used . . . in connection with the jury selection process," 28 U.S.C. § 1867(f), and should be granted. Records of when grand jurors were summonsed are necessary to determine what, if any, impact the ongoing pandemic might have had on juror substitutions and therefore on whether the grand jury who indicted Mr. Huizar represented a fair cross section of the community. Although 23 persons were initially seated on the grand jury, as few as 16 could have constituted the quorum which deliberated and returned Mr. Huizar's indictment 10 months later. *See* C.D. Cal. Handbook for Federal Grand Jurors at 7, *available at* https://tinyurl.com/y57wrgju. The Clerk of Court has stated that orders did issue since January 2020 that changed the composition of some of the grand juries, either by substituting jurors or forepersons, or by discharging or extending a grand jury's term. *See United States v. Potts*, 20-CR-0128-JGB, Docket Entry 34, Decl. of Counsel at ¶ 6 (explaining that a letter from the Clerk of the Court indicated "that some orders regarding grand juries have been signed since January 1, 2020," including "orders replacing a grand juror with one of the alternate grand jurors"). Thus, even assuming that the original 23 grand jurors who were empaneled represented a fair cross section of the community, it may be that the grand jurors who ultimately indicted Mr. Huizar months later, in the midst of a pandemic, did not. *See Holmes*, No. 18-CR-00258-EJD-1, 2020 WL 5408163, at *5 (granting the same request); *Todd*, No. 20-CR-256(KAM),

17

2020 WL 5981673, at *4 (same); *Corbett*, No. 20-CR-213(KAM), 2020 WL 5803243, at *5.

### 11. The number of persons summoned from the 2019 Master Jury Wheel to be considered as grand jurors. This number should further be categorized by number per jury division.

Government Position

To the extent that this request seeks "the names of persons sent a Summons" pursuant to Section 6 of the Jury Plan, this is a Juror Selection Record to which defendant is entitled. To the extent that defendant requests this information, it should be granted.

To the extent that defendant seeks information beyond records identified in the Jury Plan, this request for non-Juror Selection Records should be submitted or referred to the Chief Judge.[5] For the reasons articulated above, and as defendant has shown no need for any non-Juror Selection Records or relevance to his anticipated motion, any such request should be denied without prejudice to provide additional information justifying his request. Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court, the government would defer to the Chief Judge to assess whether any future explanation of relevance or need is sufficient to overcome the sensitivity of this nonpublic information, the burden of production, or any other equities favoring nondisclosure.

Defendant's Response

Mr. Huizar agrees that these records are "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, Mr. Huizar is entitled to these records and this Court should order its production.

---

[5] As noted in the government's response to the defense motion, the government defers to the Court as to whether information demanded in a particular format that may not be consistent with the Jury Plan (here, numbers versus names, and categorization of numbers by jury division) can or should be provided. See Gov. Resp. at p. 7.

18

**12.**   **For the 2019 Master Jury Wheel, the juror qualification and summons forms for the persons summoned to potentially become grand jurors.**

Joint Government and Defense Position

The parties agree that juror qualification forms constitute Juror Selection Records as identified in the Jury Plan, and that defendant is entitled to these records as to 2019 Master Jury Wheel.  Jury Plan § 12.  This request should be granted.  Mr. Huizar withdraws his request for summons forms at this time. He reserves his right to summons forms at a later date.

**13.**   **The Questionnaire, as defined by § 6 of the Jury Plan, sent to the prospective grand jurors on the 2019 Master Jury Wheel.**

Joint Government and Defense Position

The parties agree that these records constitute Juror Selection Records as identified in the Jury Plan, and that defendant is entitled to these records.  Jury Plan § 12.  This request should be granted.

**14.**   **The records of the prospective jurors from the 2019 Master Jury Wheel who failed to return the Questionnaire.**

Joint Government and Defense Position

The parties agree that these records constitute Juror Selection Records as identified in the Jury Plan, and that defendant is entitled to these records.  Jury Plan § 12.  This request should be granted.

**15.**   **The Juror Numbers for the persons selected as potential grand jurors from January 1, 2020 to July 30, 2020.**

Government Position

It is not clear what, if any, Juror Selection Records defendant intends to seek by this request.  To the extent that he seeks to elicit, directly or indirectly, whether specific prospective jurors received a summons for a petit jury or a grand jury service, that information is not a Juror Selection Record.  Jury Plan § 6; *see also Ciancia*, 2015 WL 13798661, *3.  To the extent that defendant's date-limited request seeks information

that is specifically defined in the Juror Plan as a Juror Selection Record —— which is not clear from the face of the request —— it should be granted only as it pertains to the 2019 Master Jury Wheel.

If the requested information is not a Juror Selection Record, this request should be submitted or referred to the Chief Judge.  For the reasons articulated above, and as defendant has shown no need for such non-Juror Selection Records or relevance to his anticipated motion, any such request should be denied without prejudice to provide additional information justifying his request.  Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court, the government would defer to the Chief Judge to assess whether any future explanation of relevance or need is sufficient to overcome the sensitivity of this nonpublic information, the burden of production, or any other equities favoring nondisclosure.

<u>Defendant's Response</u>

Through this request Mr. Huizar seeks to obtain the juror number for persons selected as potential grand jurors. The juror numbers are randomly generated and serve to conceal the identity of the individuals. This information is commonly requested to aid the review of grand jury wheels. *See Potts*, 20-CR-0128-JGB, Docket Entry 25-1, Declaration of Jeffrey Martin at ¶ 8 & Attachment 1, no. 18 (requesting that "Juror Number only (and not Name or Street Address) for persons selected as potential grand jurors" and explaining "[t]he information requested is common to other reviews of Federal jury wheels that I have been asked to perform."). This request is for "records or papers used . . . in connection with the jury selection process," 28 U.S.C. § 1867(f), and should be granted. *See, e.g.*, *Holmes*, No. 18-CR-00258-EJD-1, 2020 WL 5408163, at *4 (granting similar request); *Cloud*, No. 1:19-CR-02032-SMJ-01, 2020 WL 4381608, at *4 (same).

20

**16.    The disposition of each summoned potential grand juror as to excusal, deferment, disqualification or selection as described in §§ 9-11 of the Jury Plan for the 2019 Master Jury Wheel.**

Government Position

The Court's record of "whether each prospective juror was postponed, disqualified, exempted, or excused; whether each prospective juror was directed to report during the on-call period; and whether each prospective juror reported as directed" is a Juror Selection Record, and defendant is entitled to it.  Jury Plan § 6.

Defendant is not as a matter of right entitled to information on whether specific summonses were for petit or grand jury service.  Jury Plan § 6; *see also Ciancia*, 2015 WL 13798661, *3.

To the extent that defendant's request for records relating to "selection" of specific grand jurors demands "the names of grand jurors chosen and sworn," these are not Juror Selection Records.  The names of grand jurors selected falls within the purview of Rule 6(e) of the Federal Rules of Criminal Procedure.  *In Re Special Grand Jury (For Anchorage, Alaska)*, 674 F.2d 778, 782 (9th Cir. 1982) ("It would be reasonable to hold that [defendant's request for grand jury rolls] runs afoul of the doctrine of grand jury secrecy").  If defendant seeks that protected information, he must provide a showing of particularized need that is sufficiently strong and important to overcome the traditional interests of grand jury secrecy.  *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 223 (1979); *Diaz*, 236 F.R.D. at 480 (denying defendant's request for grand jury roll sheets and attendance information absent a sufficient showing of particularized need for this Rule 6(e)-protected information).  To the extent that defendant demands that information, this request should be submitted or referred to the Chief Judge.  Absent a showing of particularized need sufficient to outweigh the strong interests in grand jury secrecy, the request should be denied.

1    <u>Defendant's Response</u>

2        Mr. Huizar agrees that most of the records requested through this request are

3    "Juror Selection Records" pursuant to this District's Jury Plan and that he is entitled to

4    those records.

5        To the extent the request also seeks "selection" records, Mr. Huizar agrees with

6    the government that those are not "Jury Selection Records" as defined by this District's

7    Jury Plan. Accordingly, pursuant to the Jury Plan, that portion of this request should be

8    referred to the Chief Judge. Mr. Huizar is not asking for or seeking the names of the

9    grand jurors. Any "selection" information can be provided in the form of juror numbers

10   which retain the anonymity of the individual while providing other demographic

11   information. *See Potts*, 20-CR-0128-JGB, Docket Entry 25-1, Declaration of Jeffrey

12   Martin at ¶¶ 7, 8 & Attachment 1, no. 18.

13       The request for selection information seeks "records or papers used . . . in

14   connection with the jury selection process," 28 U.S.C. § 1867(f), and should be

15   granted. "A motion challenging a jury selection system, or the composition of a past

16   Grand Jury, is focused on the manner by which such juries are composed—*as well as*

17   *their actual composition*." *United States v. Nelson*, No. 05-cr-0208 CRB (JL), 2006 WL

18   8434976 (N.D. Cal. Oct. 10, 2006) (emphasis added). Whether the grand jurors

19   empaneled accurately represented the potential jurors is a key aspect of a fair cross

20   section claim. *See also Holmes*, 2020 WL 5408163, at *7 ("Defendants will be able to

21   analyze how excusal . . . altered the pool of otherwise qualified potential jurors from

22   which the grand jury was drawn."). The information requested here as to the selection

23   of the grand jurors reveals whether this District's process, excusals, deferments, and

24   disqualifications altered the pool of qualified jurors.

25

26

27

28

                                            22

**17.    The Juror Number for each grand juror who returned the Indictment in this case on July 30, 2020.**

Government Position

These records are not Juror Selection Records as defined in the Jury Plan, and defendant is not entitled to these records as a matter of right.  Therefore, this request should be submitted or referred to the Chief Judge.

As articulated above, in seeking this non-Juror Selection Record without setting forth a need for the information or relevance to his anticipated motion, defendant has not met the requirements of the Jury Plan.  The government thus respectfully submits that this request should be denied without prejudice to provide additional information justifying his request.  Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court, the government would defer to the Chief Judge to assess whether any future explanation of relevance or need is sufficient to overcome the sensitivity of this nonpublic information, the burden of production, or any other equities favoring nondisclosure.

Defendant's Response

Mr. Huizar agrees that these records are not classified as "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, pursuant to the Jury Plan, this request should be referred to the Chief Judge.

This request is for "records or papers used . . . in connection with the jury selection process," 28 U.S.C. § 1867(f), and should be granted. Whether the grand jurors empaneled accurately represented the pool of potential jurors is a key aspect of a fair cross section claim. *See Holmes*, 2020 WL 5408163, at *7 ("Defendants will be able to analyze how excusal . . . altered the pool of otherwise qualified potential jurors from which the grand jury was drawn."). This information, coupled with the other information sought, will collectively aid Mr. Huizar's understanding of whether the

23

procedures and process result in a grand jury that is not a fair cross section of the community. *Id.* (granting similar request).

### 18. The attendance record and reason for absence by date of each grand juror who returned the Indictment in this case on July 30, 2020.

Government Position

These records are not Juror Selection Records as defined in the Jury Plan, and defendant is not entitled to these records as a matter of right.  Therefore, this request should be submitted or referred to the Chief Judge.

As articulated above, in seeking this non-Juror Selection Record without setting forth a need for the information or relevance to his anticipated motion, defendant has not met the requirements of the Jury Plan.  The government thus respectfully submits that this request should be denied without prejudice to provide additional information justifying his request.  Because these records belong to the Court as an institution, and because the administrative burden of any production would fall squarely on the Court, the government would defer to the Chief Judge to assess whether any future explanation of relevance or need is sufficient to overcome the sensitivity of this nonpublic information, the burden of production, or any other equities favoring nondisclosure.

Defendant's Response

Mr. Huizar agrees that these records are not classified as "Juror Selection Records" pursuant to this District's Jury Plan. Accordingly, pursuant to the Jury Plan, this request should be referred to the Chief Judge.

This request is for "records or papers used . . . in connection with the jury selection process," 28 U.S.C. § 1867(f), and should be granted. Records about the attendance or reasons for absences for each of the grand jurors who ultimately indicted Mr. Huizar may reveal the demographic effects that the current pandemic had on the operation and composition of the grand jury in this case. This is especially relevant in

24

light of the Clerk of the Court's disclosure that orders affecting grand juries, potentially including substitutions, have been issued. This information is relevant to whether the grand jurors who indicted Mr. Huizar represented a fair cross section of the community and should be disclosed.

25