TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (SBN: 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
VERONICA DRAGALIN (SBN: 281370)
MELISSA MILLS (SBN: 248529)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-2091/0647/0627
     Facsimile:  (213) 894-7631
     E-mail: Mack.Jenkins@usdoj.gov
             Veronica.Dragalin@usdoj.gov
             Melissa.Mills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-326(A)-JFW |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT JOSE HUIZAR'S MOTION TO COMPEL DISCOVERY |
| v. | |
| JOSE LUIS HUIZAR, et al. | Date:      March 22, 2021 |
| Defendants. | Time:      8:00 a.m. Location: Courtroom of the Hon. John F. Walter |

     Plaintiff United States of America, by and through its counsel

of record, the Acting United States Attorney for the Central District

of California and Assistant United States Attorneys Mack E. Jenkins,

Veronica Dragalin, and Melissa Mills, hereby files its opposition to

defendant JOSE HUIZAR's Motion to Compel Discovery (CR 160).

//

//

1    This opposition is based upon the attached memorandum of points

2  and authorities, the files and records in this case, and such further

3  evidence and argument as the Court may permit.

4  Dated: March 1, 2021              Respectfully submitted,

5                                    TRACY L. WILKISON
                                     Acting United States Attorney
6
                                     BRANDON D. FOX
7                                    Assistant United States Attorney
                                     Chief, Criminal Division
8

9

10  _____
    MACK E. JENKINS
11  VERONICA DRAGALIN
    MELISSA MILLS
12  Assistant United States Attorneys

13                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.     INTRODUCTION.................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND...........................1

III.   ARGUMENT....................................................3

       A.    Legal Standards.......................................3

       B.    Defendant Has Not Made a Showing of Particularized
             Need and Materiality for Discovery into What
             Transpired in the Grand Jury Room.....................5

       C.    Defendant Has Not Made a Showing of Particularized
             Need and Materiality for Grand Jury Legal Instructions...11

IV.    CONCLUSION.................................................15

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                                **Page(s)**

Bank of Nova Scotia v. United States,
        487 U.S. 250 (1988) ......................................... 8

Douglas Oil Co. of Cal. v. Petrol Stops Northwest,
        441 U.S. 211 (1979) ......................................... 3

In re Grand Jury Matter (Catania),
        682 F.2d 61 (3d Cir. 1982) .................................. 8

In re Grand Jury Proceedings Relative to Perl,
        838 F.2d 304 (8th Cir. 1988) ................................ 8

In re Grand Jury Subpoena,
        920 F.2d 235 (4th Cir. 1990) .............................. 7-8

In re Special Grand Jury (for Anchorage, Alaska),
        674 F.2d 778 (9th Cir. 1982) ................................ 5

McDonnell v. United States,
        136 S. Ct. 2355 (2016) .................................... 14

United States v. Alter,
        482 F.2d 1016 (9th Cir. 1973) ............................. 12

United States v. Barry,
        71 F.3d 1269 (7th Cir. 1995) .......................... 12, 13

United States v. Basurto,
        497 F.2d 781 (9th Cir. 1974) ............................. 8-9

United States v. Belton,
        No. 14-CR-00030-JST, 2015 WL 1815273 (N.D. Cal. Apr. 21, 2015)
        ........................................................... 12

United States v. Bennett,
        702 F.2d 833 (9th Cir. 1983) .............................. 15

United States v. Ciancia,
        No. CR 13-902 PSG, 2015 WL 13798676 ((C.D. Cal. May 20, 2015) 13

United States v. Crittenden,
        No. 4:20-CR-7 (CDL), 2020 WL 4917733 (M.D. Ga. Aug. 21, 2020)
        ....................................................... 10, 11

United States v. DeLuca,
        692 F.2d 1277 (9th Cir. 1980) ............................. 12

United States v. Dynavac, Inc.,
        6 F.3d 1407 (9th Cir. 1993) ................................ 7

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States v. Ferrebouef,
    632 F.2d 832 (9th Cir. 1980) ............................... 4

United States v. James,
    No. CR1908019001PCTDLR, 2020 WL 6081501 (D. Ariz. Oct. 15, 2020)
    ........................................................ 10

United States v. Kenny,
    645 F.2d 1323 (9th Cir. 1981) ............................. 11

United States v. Larrazolo,
    869 F.2d 1354 (9th Cir. 1989) ........................... 11-12

United States v. Leverage Funding Systems, Inc.,
    637 F.2d 645 (9th Cir. 1980) .............................. 9

United States v. Loc Tien Nguyen,
    314 F. Supp. 2d 612 (E.D. Va. 2004) ...................... 4

United States v. Mandel,
    914 F.2d 1215 (9th Cir. 1990) ............................. 4

United States v. Mitchell,
    502 F.3d 931 (9th Cir. 2007) ............................. 9

United States v. Murray,
    751 F.2d 1528 (9th Cir. 1985) ........................... 3-4

United States v. Pac. Gas & Elec. Co.,
    No. 14-CR-00175-TEH, 2015 WL 3958111 (N.D. Cal. June 29, 2015)
    ........................................................ 13

United States v. Plummer,
    941 F.2d 799 (9th Cir. 1991) ............................. 4

United States v. R. Enterprises, Inc.,
    498 U.S. 292 (1991) ...................................... 4

United States v. Santiago,
    46 F.3d 885 (9th Cir. 1995) .............................. 5

United States v. Sells Eng'g, Inc.,
    463 U.S. 418 (1983) ...................................... 4

United States v. Talao, No. CR-97-0217-VRW,
    1998 WL 1114043 (N.D. Cal. Aug. 14, 1998) ................ 12

United States v. Welch,
    201 F.R.D. 521 (D. Utah 2001) ............................ 13

United States v. Wright,
    667 F.2d 793 (9th Cir. 1982) ............................. 12

2

**Statutes**

18 U.S.C. § 666 ................................................ 2

18 U.S.C. § 1001 ............................................... 2

18 U.S.C. § 1014 ............................................... 2

18 U.S.C. § 1952 ............................................... 2

18 U.S.C. § 1956 ............................................... 2

18 U.S.C. § 1962 ............................................... 1

18 U.S.C. §§ 1341, 1343, 1346 ................................. 2

26 U.S.C. § 7201 ............................................... 2

28 U.S.C. § 1867 ............................................... 2

31 U.S.C. § 5324 ............................................... 2

**Other**

Fed. R. Crim. P. 6 ....................................... passim

Fed. R. Crim. P. 12 ........................................... 8

Fed. R. Crim. P. 16 ........................................... 4

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3          Defendant JOSE HUIZAR ("defendant") is charged in a 132-page

4   First Superseding Indictment with various violations stemming from

5   his corrupt dealings as a former Los Angeles City Councilmember,

6   namely, abusing his position and breaching the public's trust for

7   power and profit.  The criminal complaint, original indictment, and

8   first superseding indictment in this case were all filed during the

9   COVID-19 pandemic that has had far-reaching impacts across the globe.

10  On February 22, 2021, defendant filed a motion to compel production

11  of information regarding any COVID-19 modifications to the grand jury

12  proceedings in this case "in order to evaluate potential motion

13  practice."  (CR 160.)  Defendant also seeks legal instructions

14  provided to the grand jury on the counts ultimately returned in the

15  indictment to help answer the question of "what the government thinks

16  is a crime."  (<u>Id</u>.)  Because these records are protected by the

17  doctrine of grand jury secrecy, and because defendant has failed to

18  make the required showing of particularized need and materiality, the

19  motion should be denied.

20  **II.  FACTUAL AND PROCEDURAL BACKGROUND**

21         On June 22, 2020, the government filed a criminal complaint

22  charging defendant with one count of Racketeer Influenced and Corrupt

23  Organizations ("RICO") conspiracy, in violation of 18 U.S.C.

24  § 1962(d), with an accompanying 116-page affidavit setting forth the

25  government's theory of the case and detailed presentation of evidence

26  in support of the charge.  (CR 1.)

27         On July 30, 2020, the grand jury returned a 113-page indictment,

28  charging defendant in thirty-four counts with violations of 18 U.S.C.

1    § 1962(d) (RICO conspiracy), 18 U.S.C. §§ 1341, 1343, 1346 (Honest

2    Services Mail and Wire Fraud), 18 U.S.C. § 1952(a)(3) (Interstate and

3    Foreign Travel in Aid of Racketeering), 18 U.S.C. § 666(a)(1)(B)

4    (Bribery Concerning Programs Receiving Federal Funds), 18 U.S.C.

5    § 1956(a)(1)(B)(i), (a)(2)(B)(i) (Money Laundering), 18 U.S.C. § 1014

6    (False Statements to a Financial Institution), 18 U.S.C. § 1001(a)(2)

7    (Making False Statements), 31 U.S.C. § 5324(a)(3) (Structuring of

8    Currency Transactions to Evade Reporting Requirements), 26 U.S.C.

9    § 7201 (Attempt to Evade and Defeat the Assessment and Payment of

10   Income Tax). (CR 36.)

11       On November 12, 2020, the grand jury returned a 138-page First

12   Superseding Indictment, charging defendant and five other defendants.

13   (CR 74 or "FSI.")  The substantive crimes charged against defendant

14   in the FSI are the same as in the original indictment.  Among other

15   things, the FSI explicitly set forth seven types of "official acts"

16   performed by defendant and others, as part of the means of the RICO

17   conspiracy and scheme to defraud, including presenting motions,

18   voting, and exerting pressure on other City officials.  (FSI

19   ¶¶ 42(b), 45(b).)  In addition, each substantive count alleging a

20   violation of 18 U.S.C. § 666 explicitly sets forth the quid pro quo

21   agreement defendant reached with his co-schemers and co-conspirators,

22   alleging the benefits he accepted in connection with specific City

23   business or transactions.  (FSI ¶¶ 49, 51, 53, 54, 56, 57.)

24       On February 22, 2021, defendant filed a motion to compel

25   production of two types of grand jury records:[1] (1) information

26

27       [1] Defendant has previously sought additional grand jury records.
     On September 15, 2020, defendant filed a motion to inspect records
28   related to the grand juror selection process pursuant to 28 U.S.C.

*(footnote cont'd on next page)*

2

regarding COVID-19 modifications to the grand jury proceedings in this case; and (2) legal instructions provided to the grand jury on the counts ultimately returned in the indictment.  Defendant seeks the first category "in order to evaluate potential motion practice" and the second to help answer the question of "what the government thinks is a crime."  (CR 160 or "Mot.")

On February 24, 2021, defendants DAE YONG LEE, 940 HILL, LLC, and SHEN ZHEN NEW WORLD, LLC, filed joinders in defendant HUIZAR's motion to compel.  (CR 162, 163.)

**III. ARGUMENT**

**A.    Legal Standards**

It is a fundamental tenet of the grand jury process that "the proper functioning of the grand jury system depends on the secrecy of the grand jury proceedings." Douglas Oil Co. of Cal. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979).  Rule 6(e)(3) of the Federal Rules of Criminal Procedure provides narrow delineated exceptions to the rule of secrecy, permitting disclosure of grand jury matters only in limited circumstances.  When a defendant requests disclosure of grand jury matters, the court may authorize disclosure "upon a showing that grounds may exist for a motion to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).  Thus, defendant's right of access to grand jury materials turns on whether he meets the standard to dismiss an indictment based on conduct occurring before the grand jury.  See United States v. Murray, 751 F.2d 1528, 1533-34 (9th Cir. 1985) (defendants did not show a particularized need for grand jury

_____

§ 1867(f), which the Court granted in part and denied in part.  (CR 65, 71.)

3

materials where "the claimed misconduct would not have compelled the dismissal of the first superseding indictment").

The Supreme Court has "consistently construed [Rule 6(e)] to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted." United States v. Sells Eng'g, Inc., 463 U.S. 418, 443 (1983). "The standards the district court should follow when lifting the secrecy of grand jury proceedings are (1) that the desired material will avoid a possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and, (3) that only the relevant parts of the transcripts should be disclosed." United States v. Plummer, 941 F.2d 799, 806 (9th Cir. 1991). All three elements must be met to permit disclosure.

Importantly, there is a presumption of regularity in grand jury proceedings. United States v. R. Enterprises, Inc., 498 U.S. 292, 300 (1991). "Mere unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the particularized need required to outweigh the policy of grand jury secrecy." United States v. Ferrebouef, 632 F.2d 832, 835 (9th Cir. 1980) (quotation marks and citations omitted). Put simply, Rule 6(e) "is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred." United States v. Loc Tien Nguyen, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004).

Regardless of whether the materials are "grand jury matters," "[t]o obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality," and "conclusory allegations of materiality" do not suffice. United States v. Mandel, 914 F.2d 1215,

4

1   1219 (9th Cir. 1990).  The threshold showing of materiality "requires

2   a presentation of 'facts which would tend to show that the Government

3   is in possession of information helpful to the defense.'" <u>United

4   States v. Santiago</u>, 46 F.3d 885, 894 (9th Cir. 1995) (citations

5   omitted).

6       **B.   Defendant Has Not Made a Showing of Particularized Need and
            Materiality for Discovery into What Transpired in the Grand
7           Jury Room**

8       In his first request, defendant seeks "any modification(s) to

9   [the U.S. Attorney's Office] pre-COVID (i.e., normal) grand-jury

10  procedures" and "any orders requiring or authorizing those

11  modifications,"[2] for example "grand jurors appearing by video,

12  witnesses wearing masks or testifying remotely."  (Mot. at 1.)

13  Defendant seeks this information "to understand how, mechanically,

14  the grand jury in this case went about its inquest in order to

15  evaluate motion practice."  (<u>Id.</u> at 2-3.)

16      The government has an obligation keep secret "a matter occurring

17  before the grand jury" unless an exception applies.  Fed. R. Crim. P.

18  6(e)(2)(B)(vi).  Defendant has cited no authority to support his

19  position that the information he seeks in the first request is not a

20  "matter occurring before the grand jury."  Defendant relies on only

21  one case, namely, <u>In re Special Grand Jury (for Anchorage, Alaska)</u>,

22  674 F.2d 778 (9th Cir. 1982), to argue that this information does not

23  implicate Rule 6(e) grand jury secrecy because the information covers

24  the "procedural aspects" of the operation of the grand jury.  In that

25

26  _____

27      [2] The General Orders and Orders of the Chief Judge issued in
    this district to address the COVID-19 pandemic are publicly available
    at https://www.cacd.uscourts.gov/news/coronavirus-covid-19-guidance.

28  The government is not aware of any other court orders related to
    pandemic grand jury procedures.

case, the Ninth Circuit drew a distinction between transcripts and the type of "ministerial" clerical records that are largely governed by this Court's Jury Plan.  Id. at 780.  However, the Court noted that even "ministerial" records could be subject to the grand jury secrecy doctrine and cautioned that its use of that term "should not be taken to indicate any settled judgment on our part that none of the records could be classified as 'matters occurring before the grand jury' as that expression is used in Rule 6(e), Federal Rules of Criminal Procedure." Id. at 780, fn. 1.  This case does not support defendant's proposition that the material he seeks is not a "matter occurring before the grand jury."  Conversely, In re Special Grand Jury (for Anchorage, Alaska) makes clear that even if the records he seeks do not fall within the scope of Rule 6(e), they may still be subject to the broader doctrine of grand jury secrecy that the Ninth Circuit made clear extends beyond the borders of Rule 6(e).  Id. at 781-82 (rejecting contention that "the whole grand jury secrecy doctrine is encapsulated within the four corners of Rule 6(e)," and noting in dicta that "[i]t would be reasonable to hold that [a request for attendance records] runs afoul of the doctrine of grand jury secrecy, in spite of the fact that it seems not to fall within the scope of the Rule 6(e) language").

While In re Special Grand Jury (for Anchorage, Alaska) indicates that even "ministerial" records are not necessarily immune from grand jury secrecy rules, the information that defendant seeks to discover about the conduct of proceedings before the grand jury cannot be discounted as "ministerial."  Unlike the records sought in that case — summons authorizations, service extensions, and other paperwork typically maintained by the Clerk of Court — defendant's motion does

1   not seek administrative information from the Court's clerical

2   records.  Instead, defendant seeks information from the government

3   describing details of what took place in the grand jury room during

4   the presentation of the indictment and superseding indictment in this

5   case, namely whether the witnesses wore a mask and/or testified

6   remotely, whether grand jurors appeared by video or were in the same

7   physical location,[3] and "how, mechanically, the grand jury in this

8   case went about its inquest."  (Mot. at 1-3.)  Moreover, defendant's

9   request here is both vague and expansive as, in attempting to define

10  the scope of the request, he refers to "normal" grand jury

11  procedures, which suggests that any disclosure here implicitly should

12  also divulge what occurs during a so-called "normal" grand jury

13  inquest.  But defendant offers no explanation or outline of his

14  understanding of what constitutes a "normal" grand jury proceeding

15  and thus, as per the terms of his motion, would not be subject to

16  disclosure.  The Ninth Circuit has explained that Rule 6(e) is

17  intended to "protect against disclosure of what is said or takes

18  place in the grand jury room."  United States v. Dynavac, Inc., 6

19

20      [3] General Orders and Orders of the Chief Judge issued in this
    district to address the COVID-19 pandemic do not address the nature
21  or mechanical workings of any government presentation or witness
    testimony before the grand jury.  Moreover, they have not authorized
22  grand juries to deliberate apart from each other, either remotely by
    video or telephonic conference, and instead refer to "in-person
23  meetings" of the grand juries.  Cf., Order of the Chief Judge 20-044
    (March 31, 2020) ("all regularly scheduled grand jury proceedings in
24  the Central District of California are suspended and continued" and
    "[g]rand jurors will not otherwise be required to report for service
25  ... during the period for which grand jury proceedings are
    suspended"); General Order 20-05 (April 13, 2020) (while authorizing
26  certain hearings "by video and telephonic conference," ordering that
    "**[i]n-person meetings of the grand juries** shall remain suspended")
27  (emphasis added); General Order 20-08 (May 28, 2020) (while
    authorizing certain hearings "by video and telephonic conference,"
28  noting that "**[i]n-person meetings of the grand juries** may resume at
    the discretion of the Chief Judge") (emphasis added).

F.3d 1407, 1411–12 (9th Cir. 1993).  Rule 6(e) protects "the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process." In re Grand Jury Subpoena, 920 F.2d 235, 241 (4th Cir. 1990) ("The substantive content of 'matters occurring before the grand jury' can be anything that may reveal what has transpired before the grand jury.") (internal citations omitted); see also In re Grand Jury Matter (Catania), 682 F.2d 61, 63 (3d Cir. 1982) ("Rule 6(e) applies ... to anything which may reveal what occurred before the grand jury"); In re Grand Jury Proceedings Relative to Perl, 838 F.2d 304, 306 (8th Cir. 1988) (secrecy applies to information that "reveals something about the intricate workings of the grand jury itself").

Defendant has articulated no basis for seeking information about what transpired in the grand jury room during the presentation of the indictment and superseding indictment in this case other than a vague reference to "potential motion practice," failing to make a showing of particularized need and materiality or even any cognizable legal theory for such potential motion.  A defendant may move to dismiss the indictment alleging "a defect in instituting the prosecution, including ... an error in the grand-jury proceeding." Fed. R. Crim. P. 12(b)(3)(A)(v).  "Dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988) (internal quotation marks and citations omitted).  A facially valid indictment is not subject to a "challenge to the reliability or competence of the evidence presented to the grand jury." Id. at 261;

8

1  see also United States v. Basurto, 497 F.2d 781, 785 (9th Cir. 1974)

2  ("[W]hen a duly constituted grand jury returns an indictment valid on

3  its face, no independent inquiry may be made to determine the kind of

4  evidence considered by the grand jury in making its decision.").

5  Defendant does not challenge the facial validity of the indictment,

6  nor can he, as the expansive indictment and hundreds of overt acts

7  clearly set forth all necessary elements and detail much of the

8  supporting allegations.

9      Defendant fails to explain how potential COVID-19 safety

10  measures could constitute violations that "substantially influenced"

11  the grand jury's decision to indict.  Since the law is clear that a

12  defendant cannot challenge the reliability or competence of the

13  evidence presented to the grand jury, any pandemic-driven safety

14  measures that could arguably influence a determination as to witness

15  credibility are beyond the scope of discovery.  Thus, even if

16  witnesses wore a facemask and/or testified remotely by video,

17  defendant has failed to show "that a ground may exist to dismiss the

18  indictment" on that basis.  Fed. R. Crim. P. Rule 6(e)(3)(E)(ii).[4]

19      This is because the use of masks does not render the proceedings

20

21  _____

22      [4] Whether or not certain grand jurors were excused from any
    session does not give rise to a ground for dismissing the indictment
    because "[d]efendants are not entitled to a jury of any particular
23  composition."  United States v. Mitchell, 502 F.3d 931, 951 (9th Cir.
    2007).  Similarly, how far apart grand jurors sat, whether they wore
24  masks, and other similar details about what occurred in the grand
    jury room does not provide a basis for dismissing the indictment.
25  "[A]n indictment is valid if (1) the grand jury returning the
    indictment consisted of between 16 and 23 jurors, (2) every grand
26  jury session was attended by at least 16 jurors, and (3) at least 12
    jurors vote to indict."  United States v. Leverage Funding Systems,
27  Inc., 637 F.2d 645 (9th Cir. 1980), cert. denied, 452 U.S. 961
    (1980).  Here, there is no dispute that a quorum was present for
28  every grand jury session and a sufficient number of grand jurors
    voted to indict on both indictments in this matter.

9

fundamentally unfair or otherwise infringe upon the jurors' ability to render independent judgment.  Courts have rejected arguments under the Confrontation Clause--which does not apply to grand jury proceedings--that facemasks during the COVID-19 pandemic infringe on a jury's ability to evaluate credibility at trial.  See, e.g., United States v. James, No. CR1908019001PCTDLR, 2020 WL 6081501, at *2 (D. Ariz. Oct. 15, 2020) ("mask requirement does not significantly obstruct the ability to observe demeanor" and "[b]ecause the covering of the nose and mouth does not significantly hinder observation of demeanor, allowing witnesses to testify while wearing masks does not materially diminish the reliability of the witnesses' testimony"); United States v. Crittenden, No. 4:20-CR-7 (CDL), 2020 WL 4917733, at *6 (M.D. Ga. Aug. 21, 2020) ("being able to see a witness's nose and mouth is not essential to testing the reliability of the testimony").  Defendant has failed to make a showing of particularized need for information about the mechanics of how witnesses testified before the grand jury and how such mechanics would establish a fatal structural or constitutional flaw.

The novel COVID-19 pandemic has not created an avenue for seeking discovery into matters occurring before the grand jury that have historically been protected from disclosure.  Without making any showing of need or materiality, defendant is not entitled to know whether a witness testified remotely or wore a facemask any more so than he is entitled to know whether the witness failed to make eye contact, fidgeted, had beads of sweat on his forehead, or exhibited any other signs that might be argued as relevant to evaluating credibility.  Nor does defendant have a right to discovery into other grand jury "procedures" for which he has failed to meet the

materiality standard, such as whether grand jurors wore masks or sat at a social distance from each other, or whether the prosecutor handed out or read the proposed indictment, used a microphone, stood or sat for the presentation.  Giving defendant access to this information without a showing of particularized need and where a legitimate need is difficult to even conceive would open the door to frivolous and baseless inquiries about what transpired in the grand jury room in every case.  This Court should deny this request.

### C. Defendant Has Not Made a Showing of Particularized Need and Materiality for Grand Jury Legal Instructions

In his second request, defendant seeks "the legal instructions provided to the grand jury for the offenses ultimately charged." (Mot. at 3.)  Defendant seeks this information because "what is and isn't a federal crime is often the subject of significant dispute in federal corruption cases."  (Id.)  Defendant argues that the government's instructions to the grand jury will help to answer the question of what is and is not a federal crime "or will at least help to crystallize likely areas of dispute," adding that "the government should have no problem disclosing what it believes the governing law to be."  (Id. at 6.)  At issue is not what the government believes the law to be, but grand jury transcripts that defendant seeks by this motion.  Defendant has failed to make a showing of particularized need and materiality for the grand jury legal instructions in this case.

The government is not required to provide any legal instructions to the jury in order to secure an indictment.  See United States v. Kenny, 645 F.2d 1323, 1347 (9th Cir. 1981).  And, even where instructions are given, "the prosecutor has no duty to outline all

11

the elements of [the offense] so long as the instructions given are not flagrantly misleading or so long as all the elements are at least implied." United States v. Larrazolo, 869 F.2d 1354, 1359 (9th Cir. 1989), overruled on other grounds by Midland Asphalt Corp. v. United States, 489 U.S. 794, 799-800 (1989).  Furthermore, "a grand jury usually sits for a long time, and it is not reinstructed every time evidence is taken," United States v. Barry, 71 F.3d 1269, 1274 (7th Cir. 1995), meaning that legal instructions provided in one case likely do not represent all legal instructions that particular grand jury received on the proposed charges during its tenure overseeing multiple indictment presentations.

Dismissal of the indictment for grand jury error requires "flagrant" conduct to the point that the grand jury was "deceived in some significant way" and that "significantly infringe[d] upon the ability of the grand jury to exercise independent judgment." United States v. Wright, 667 F.2d 793, 796 (9th Cir. 1982) (internal citations omitted); see also United States v. DeLuca, 692 F.2d 1277, 1280 (9th Cir. 1980) ("We do not dismiss an indictment valid on its face absent a showing that the government flagrantly manipulated, overreached, or deceived the [grand] jury.").  Defendant makes no such allegations here nor would there be any basis for them.

"A split of authority has developed regarding whether the legal instructions provided by the prosecutor to the grand jury are the kind of 'ground rules'[5] subject to disclosure, or rather whether they

---

[5] Defendant's motion appears to conflate or misapprehend the case law's discussion of the relevant instructions for disclosure. The "ground rules" referred to by the Ninth Circuit in United States v. Alter, 482 F.2d 1016 (9th Cir. 1973), upon which defendant relies, were the "*court's charges* to the grand jury," not the *prosecutor's*
*(footnote cont'd on next page)*

go to the substance of the grand jury's deliberation and are therefore afforded a presumption of secrecy." United States v. Pac. Gas & Elec. Co., No. 14-CR-00175-TEH, 2015 WL 3958111, at *12 (N.D. Cal. June 29, 2015).  In Barry, the Seventh Circuit held that a district court did not abuse its discretion in denying production of the legal instructions to a grand jury where the defendant did not show a need for them.  71 F.3d 1269, 1274.  As one district court correctly reasoned, "[t]he instructions to the grand jury are intimately associated with the deliberation and judgement aspects of the grand jury function.  Therefore, the instructions are matters occurring before the grand jury and require meeting standards for release of grand jury information." United States v. Welch, 201 F.R.D. 521, 523 (D. Utah 2001).

Unsurprisingly, courts in this district have required a threshold showing of particularized need for legal instructions to the grand jury.  See, e.g., United States v. Cai, No. CR 19-761-JFW, Dkt. 75 (C.D. Cal. June 1, 2020) (ruling that defendant "failed to make the requisite showing of a particularized need" for the disclosure of legal instructions to the grand jury); United States v. Chi, No. CR 16-824(A)-JFW, Dkt. 89 (C.D. Cal. June 9, 2017) (applying "particularized need" requirement for legal instructions to the grand

---

legal instructions. Id. 1029 fn.21 (emphasis added).  The other cases defendant cites all rely on this "ground rules" exception in Alter, without acknowledging the important distinction between the court's general charges to the grand jury about its duties and a prosecutor's legal instructions in a particular case.  See, e.g., United States v. Belton, No. 14-CR-00030-JST, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015) (concluding without analysis that legal instructions are "part of the 'ground rules'"); United States v. Talao, No. CR-97-0217-VRW, 1998 WL 1114043, at *12 (N.D. Cal. Aug. 14, 1998) (relying on Alter in finding grand jury legal instructions discoverable).

13

1    jury); United States v. Ciancia, No. CR 13-902 PSG, 2015 WL 13798676,

2    at *2 (C.D. Cal. May 20, 2015) ("The 'particularized need'

3    requirement covers grand jury instructions.").

4         This Court's analysis in Chi is particularly instructive.  In

5    that case, defendant argued that "because the First Superseding

6    Indictment does not allege influence in the performance of an

7    'official act' pursuant to the Supreme Court's decision in McDonnell

8    v. United States, 136 S. Ct. 2355 (2016), the grand jurors were

9    'likely were misinformed on ... the law.'"  No. CR 16-824(A)-JFW,

10   Dkt. 89 at 2.  In addition, "Defendant argue[d], without any support,

11   that the grand jurors were likely misinformed as to Korean bribery

12   law." Id.  The Court examined the language in the First Superseding

13   Indictment and noted that it tracked the language of the charged

14   statute, concluding that defendant failed to show "that the grand

15   jurors may have been, or were likely, misinformed as to the law."

16   Id. at 3.  "[G]iven that the First Superseding Indictment tracks the

17   relevant statutory language and that Defendant offers nothing more

18   than 'mere unsubstantiated, speculative assertions of improprieties

19   in the proceedings,' the Court concludes that Defendant has failed to

20   demonstrate a particularized need for the legal instructions provided

21   to the grand jury."  Id. (citation omitted).

22        Here, defendant has not even alleged that the grand jury was

23   likely misinformed as to bribery law, or that the First Superseding

24   Indictment fails to allege "official acts" or explicit quid pro quo

25   agreements for bribes involving campaign contributions.  In fact, as

26   written, it appears that defendant is attempting to gain access to

27   secret grand jury transcripts in an effort to better understand the

28   government's view of the law and the case in order to prepare his

14

trial defense, as opposed to alleging any potential error in the grand jury proceedings giving rise to a possible defense or motion to dismiss the indictment for impropriety in the grand jury proceedings. Defendant asks: "In a case of this size and complexity, why wait until the end to find out what the government thinks is a crime?" (Mot. at 8.)  In the alternative, defendant asks the Court to "simply require the government to produce an early copy of the instructions that it believes apply to the charged offenses."  (Mot. at 9 fn.13.)

Defendant can determine "what the government thinks is a crime" based on the specific statutes charged and the allegations in the First Superseding Indictment.  The allegations in the indictment set forth specific official acts as well as explicit quid pro quo agreements with respect to bribes involving campaign contributions. See, e.g., FSI ¶¶ 42(b), 45(b), 49, 51, 53, 54, 56, 57.

Defendant's failure to point to any fact indicating that the government incorrectly instructed the grand jury, much less engaged in flagrant or significant deception, dooms his request.  See United States v. Bennett, 702 F.2d 833, 836 (9th Cir. 1983) ("The defendant's assertion that he has no way of knowing whether prosecutorial misconduct occurred does not constitute a particularized need outweighing the need for grand jury secrecy."). Given the facially valid indictment in this case and the unrebutted presumption of regularity in grand jury proceedings, defendant has failed to make a showing of particularized need for the legal instructions provided to the grand jury.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to compel.

15