CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CAREL ALE (Bar No. 283717)
Email: Carel_Ale@fd.org
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Jose Huizar

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-326-JFW |
| Plaintiff, | |
| v. | **REPLY ISO MOTION TO COMPEL** |
| JOSE HUIZAR, | |
| Defendant. | |

## REPLY

### Request 1

Rather than focusing on the relevant question, the government devotes much of its Opposition to the issue of whether Mr. Huizar has shown a particularized need for his requested discovery.  But the particularized-need standard applies, if at all, only for "matters" to which the rule of grand-jury secrecy obtains.  The overriding point of Mr. Huizar's motion is that neither of his requests seeks "matters" occurring before the grand jury.  To the extent that the government addresses <u>that</u> question when responding to Mr. Huizar's first request, it offers little more than semantic discursions and unreasoned conclusions.

It's not surprising that the government wants to avoid the topic.  Mr. Huizar's first request seeks procedural information about how the grand jurors performed their job during a once-in-a-century pandemic.  There is <u>no</u> colorable argument that a response to that request would reveal a grand-jury "matter" under Rule 6's purpose-driven inquiry.  <u>See</u> Mot'n at 2:5-17, 3:2-8.  Indeed, while the government quibbles with the meaning of "ministerial" – which appears nowhere in Mr. Huizar's briefing – and the specific wording of Mr. Huizar's request – as though it can't distinguish between "normal" grand jury operations and those modified as a result of the pandemic – it never once explains how a candid response would imperil a legitimate objective of grand jury secrecy.  <u>See</u> Opp'n at 5:16-7:16.

How, for example, would disclosing the physical and logistical grand-jury procedures employed during the pandemic prevent the escape of those whose indictment may be contemplated?  How would it imperil free deliberation?  How would it result in the subornation of perjury or witness tampering?  How would it drive away potential witnesses?  How would it punish the innocent accused who would otherwise receive protection from secrecy?  <u>See</u> <u>United States v. Procter & Gamble Co.</u>, 356 U.S. 677, 682 & n.6 (1958).  Not only does the Opposition present no convincing answers to those questions, it makes no effort to answer them at all.  Rather, in place of on-point

analysis, it offers irrelevant boilerplate plucked from inapposite cases,[1] none of which undermines the conclusion that Mr. Huizar's first request doesn't seek to discover "matters occurring before the grand jury."

Largely bypassing the antecedent question, the Opposition expends most of its energy on an extended discussion under the particularized-need standard, asserting that, as a precondition to receiving discovery, Mr. Huizar must first explain how unknown information about a wholly-novel situation would translate into a winning motion. Opp'n at 8:13-11:8.  But the particularized-need standard doesn't apply because Mr. Huizar isn't seeking grand-jury "matters."  So the relevant standard comes from Brady and Rule 16, not Rule 6.  Under Rule 16, a defendant "needn't spell out his theory of the case in order to obtain discovery."  United States v. Hernandez-Meza, 720 F.3d 760, 768 (9th Cir. 2013).  All that matters is whether discovery is "material to preparing the defense."  Fed. R. Crim. Proc. 16(a)(1)(E)(i).  "Materiality" is a "low threshold," satisfied "so long as 'the information . . . help[s]' [the defendant] prepare," even if that help is "simply caus[ing] a defendant to . . . take an entirely different path." Hernandez-Meza, 720 F.3d at 768; see also United States v. Bundy, 968 F.3d 1019, 1033 (9th Cir. 2020) (holding that, at the pretrial stage, the self-executing Brady rule likewise requires disclosure of information potentially helpful to the defense "without attempting to predict" how it may impact the result).

While seeking discovery into grand-jury operations may seem "frivolous" to a prosecutor who sees the grand jury merely as a passive vessel, when properly

---

[1] See Opp'n at 7:18-8:12 (citing United States v. Dynavac, Inc., 6 F.3d 1407 (9th Cir. 1993) (a case about whether business records submitted to a criminal grand jury were "matters" and "therefore protected from subsequent disclosure in a civil tax investigation"); In re Grand Jury Subpoena, 920 F.2d 235 (4th Cir. 1990) (same, but out-of-Circuit); In re Grand Jury Matter, 682 F.2d 61 (3d Cir. 1982) (an out-of-Circuit case about whether federal prosecutors could share transcripts of grand jury witness testimony with local prosecutors); In re Grand Jury Proceedings Relative to Perl, 838 F.2d 304 (8th Cir. 1988) (an out-of-Circuit case about whether civil litigants could obtain documents produced to a criminal grand jury)).

understood as an independent check on an overzealous executive,[2] the significance of novel and unprecedented changes to established procedures is apparent.  As Mr. Huizar wrote in his moving papers, even during normal times, it would have been an extraordinary task for a grand jury to find probable cause for every allegation underlying a 138-page indictment.  Doing it in the throes of a viral pandemic is more remarkable still.

Indeed, that's especially true if the Court takes seriously the government's public positions on the pandemic.  For the last year, in thousands of court filings, the United States Attorney's Office has claimed that a process of paramount Constitutional importance – criminal jury trials – simply can't be performed.  Yet, when operating in private, with no Court involvement or transparency of any kind, Opp'n at 5 & n.2, the same prosecutorial office has devised an entirely-novel set of procedures and continued operating the grand jury with only minor interruptions.  The stark duality between public and private behavior at least raises questions.

It may ultimately be that there are perfectly-acceptable answers, and that, despite the novelty of the situation, a truthful and complete response to Mr. Huizar's first request leads nowhere.  But that's a reason to deny a motion to dismiss – or for Mr. Huizar to not file one in the first place – not to deny discovery outright.  To say that the information Mr. Huizar seeks is immaterial – meaning that it couldn't even impact the decision to abandon a motion – is to say that the government could make literally any change to the grand jury process and it wouldn't matter.  It could prohibit grand jurors from asking questions in the name of pandemic safety.  It could refuse the grand jury's request to call witnesses to avoid overcrowding.  It could eliminate grand jurors from specific parts of town or based on certain demographics given the pandemic's disparate

---

[2] See e.g., Wood v. Georgia, 370 U.S. 375, 390 (1962) ("Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused . . . . Particularly in matters of local political corruption and investigations is it important that . . . the real issues not become obscured to the grand jury.").

3

impact.  Mr. Huizar doubts that even the most zealous advocate of grand-jury secrecy would defend that position.

Because the first request seeks discovery material to Mr. Huizar's defense and not covered by the secrecy rule, the Court should order compliance.

### **Request 2**

For Mr. Huizar's second request, it is clear that the government relied heavily on United States v. Pac. Gas & Elec. Co. ("PG&E"), No. 14-CR-175-TEH, 2015 WL 3958111 (N.D. Cal. June 29, 2015), when crafting its response.  At page 12 of the Opposition, the government begins its discussion of the relevant issue with a lengthy quotation from PG&E about a "split of authority" over whether legal instructions are protected by the rule of grand-jury secrecy.  See Opp'n at 12:22-13:4.  To support its position that they are, the government then borrows two cases cited at page 12 of PG&E: United States v. Barry, 71 F.3d 1269 (7th Cir. 1995), and United States v. Welch, 201 F.R.D. 521, 523 (D. Utah 2001).  Opp'n at 13:4-13.  But while it's true that language in both cases supports the government's bottom-line conclusion, neither Barry nor Welch contains thoughtful reasoning or purports to apply Ninth Circuit law.  Indeed, the totality of the reasoning in Barry is five words.  71 F.3d at 1274.  And in Welch, there is no indication that the issue here was ever raised at all.  On the scale of persuasive authority, Barry and Welch thus rate exceptionally low.

PG&E is different.  A thoughtful and scholarly order, PG&E begins by considering whether the defendant had shown a particularized need for the grand jury instructions but finds that it had not.  2015 WL 3958111, at *8-12.  Fully aware of the cases cited in the government's papers, the PG&E Court then analyzed whether, under United States v. Alter, 482 F.2d 1016, 1029 & n.21 (9th Cir.1973), the legal instructions provided to the grand jury could nonetheless be discovered.  Id. at *12.  After surveying the arguments and authority, the court concluded that the legal instructions were not protected by grand jury secrecy, but that the procedure for discovering them depended on the format of the government's presentation:

4

> Whether the instructions go to the substance will depend to some extent on the format of their presentation – for example, whether they are distributed as a discrete printout with no relation to the evidence, or presented in a colloquy while the prosecutor makes connections to the evidence.

Id. at *13.  After reviewing the relevant transcripts in camera and redacting them so that they only contained the legal instructions, the court ordered the instructions produced to the defense.  In so doing, the Court concluded: "the legal instructions provided to the grand juries in this case can be disclosed to PG&E without intruding upon the secrecy of the grand juries' proceedings."  United States v. Pac. Gas & Elec. Co., No. 14-CR-175-TEH, Docket No. 110 (attached as Exhibit 1).

In other words: the intellectual centerpiece of the government's response to Mr. Huizar's second request fully agrees with Mr. Huizar's position, as do the majority of cases applying Ninth Circuit law.

Seemingly without realizing PG&E's outcome, the Opposition jumps immediately from PG&E to the "unsurprising" claim that "courts in this district have required a threshold showing of particularized need for legal instructions to the grand jury."  Opp'n at 13:14-16.  But no "therefore" follows this descriptive observation. Courts decide the issues presented by the parties, United States v. Sineneng-Smith, ___U.S.___, 140 S.Ct. 1575, 1579 (2020), meaning "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided[.]"  Webster v. Fall, 266 U.S. 507, 511 (1925); Zenith Radio Corp. v. United States, 437 U.S. 443, 462 (1978) ("It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used"); United States v. Skoien, 614 F.3d 638, 640 (7th Cir. 2010) ("Judicial opinions must not be confused with statutes, and general expressions must be read in light of the subject under consideration").  In none of the cases that the government cites was it argued that the legal instructions are not "matters" protected by the presumptive rule of secrecy, so the issue was never considered.

5

That's why, unlike the government, Mr. Huizar not only provided on-point, in-Circuit authority, but attempted to reason through the analysis instead of simply lifting stray language from unhelpful cases.  As the moving papers explain, the bottom-line question is: how would disclosing the legal instructions for publicly-issued charges imperil one of the legitimate objectives of grand-jury secrecy?  The government provides no answer to that question because, as the moving papers make clear, no favorable answer exists.  Mot'n at 6:16-8:7.

Taking a separate tack, the government charges Mr. Huizar with "attempting to gain access to secret grand jury transcripts in an effort to better understand the government's view of the law and the case in order to prepare his trial defense."  Opp'n at 14:26-15:1.  Obviously learning what the government thinks is a crime would be helpful to preparing a defense; Mr. Huizar has never suggested otherwise.  But it shouldn't be surprising that he is intently interested in the propriety of the Indictment itself.  The common refrain for grand-jury error is something akin to "no harm no foul," with the rationale being that even if a grand jury improperly found probable cause, a trial conviction under a higher burden wipes the slate clean.  But while that may be true in some cases, this is a case where, through kitchen-sink charging strategy, the government has tried to remove all meaningful limitations on its <u>trial presentation</u> – including the hearsay rule, Rule 404(b), and, effectively, the statute of limitations – while sweeping in loads of hard-to-admit prejudicial material and muddying the waters between noncriminal conduct, ethical violations, state offenses, and federal crimes.  Entirely independent of the factual and legal reality, the Indictment's blunderbuss design may, itself, tend to make <u>some</u> conviction on <u>something</u> more likely.  Thus, Mr. Huizar has a natural interest in limiting an indictment obtained in contravention of law.  Moreover, as Mr. Huizar wrote in the moving papers, the potential for legal error in a sweeping, multiobject political-corruption/campaign-finance RICO conspiracy is unusually high.

But even if the Court assumes the counterfactual – that the only benefit of

disclosure would be to inform Mr. Huizar what exactly the government thinks is and isn't criminal – the Opposition never explains why that would be bad.  The government has a 10-year head start on the defense, which is working franticly to make up lost ground.  The government should already know what it believes is and isn't criminal.  Given the sweep and complexity of this prosecution, playing coy with the law and other discovery will do nothing but retard the progress, accuracy, and fairness of this case going forward.

For the reasons above and in the moving papers, the Court should grant Mr. Huizar's second request and either order the government to provide its legal instructions to the grand jury, or order the government to produce an independent set of legal instructions without reference to the grand jury.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: March 8, 2021

/s/ *Charles J. Snyder*

Carel Alé
Charles J. Snyder
Deputy Federal Public Defenders
Attorneys for Jose Huizar

7

## **DECLARATION OF CHARLES J. SNYDER**

I, Charles J. Snyder, declare as follows:

      1.    I am a California-licensed attorney appointed to represent Jose Huizar in this matter.  Unless otherwise stated, I make this declaration based on personal knowledge and, if called to testify, would attest to its contents under oath.

      2.    Attached as Exhibit 1 is a true and correct copy of a July 22, 2015 order in United States v. Pac. Gas & Elec. Co., No. 14-CR-175-TEH (N.D. Cal.).

      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Executed March 8, 2021 at Los Angeles, California.

                            */s/ Charles J. Snyder*
                              Charles J. Snyder

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

         Plaintiff,

    v.

PACIFIC GAS AND ELECTRIC COMPANY,

         Defendant.

Case No. 14-cr-00175-TEH

**ORDER RE: DISCLOSURE OF LEGAL INSTRUCTIONS IN GRAND JURY DOCUMENTS**

On June 29, 2015, this Court ordered the Government to submit for *in camera* review "all records of the legal instructions it gave to the grand jury" in this case, so that the Court could determine whether their production to PG&E would be appropriate. Order at 23-24 (Docket No. 103). The Government timely provided these documents to the Court, which has now completed its review of the materials. The Court has determined that the legal instructions provided to the grand juries in this case can be disclosed to PG&E without intruding upon the secrecy of the grand juries' proceedings, provided they are disclosed in the manner prescribed by the Court.

Accordingly, IT IS HEREBY ORDERED that the Government shall disclose to PG&E the portions of the grand jury record that have not been redacted by the Court in the attached document no later than one week after entry of this order. IT IS FURTHER ORDERED that these materials may only be used by PG&E and its counsel in connection with the defense of the above-captioned criminal case.

**IT IS SO ORDERED.**

Dated: 07/22/15

THELTON E. HENDERSON
United States District Judge