1  CUAUHTEMOC ORTEGA (Bar No. 257443)
   Federal Public Defender
2  Carel Alé (Bar No. 283717)
   (E-Mail: Carel_Ale@fd.org)
3  Charles Snyder (Bar No. 287246)
   (E-Mail: Charles_Snyder@fd.org)
4  Deputy Federal Public Defenders
   321 East 2nd Street
5  Los Angeles, California 90012-4202
   Telephone: (213) 894-2854
6  Facsimile: (213) 894-0081

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOSE LUIS HUIZAR,<br><br>　　　　Defendant. | Case No. 20-CR-0326-JFW<br><br>**DEFENDANT'S RENEWED MOTION TO INSPECT GRAND JUROR SELECTION RECORDS PURSUANT TO 28 U.S.C. § 1861, *et seq*. AND THE U.S. CONSTITUION; DECLARATIONS ISO OF MOTION; JOINT STATEMENT RE RENEWED MOTION**<br><br>**Hearing Date: March 22, 2021**<br>**Time: 8:00 a.m.** |

Pursuant to the Court's October 29, 2020 Order, Docket Entry 71, Defendant Jose Luis Huizar, by and through his counsel of record, Carel Alé and Charles Snyder, files this Notice of Motion and Renewed Motion to Inspect Grand Juror Selection Records Pursuant to 28 U.S.C. § 1861, *et seq.* and the United States Constitution. Defendant's Renewed Motion is based on the accompanying Memorandum of Points and Authorities, and the attached Exhibit A, Declaration In Support of Motion, Supplement: Joint Statement, Reply Declaration, and all other records in this case.[1]

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: March 8, 2021

By /s/ Carel Alé
Carel Alé
Charles Snyder

Deputy Federal Public Defenders

---

[1] Mr. Huizar is noticing this motion for March 22, 2021, because it is fully briefed pursuant to the Court's October 29, 2020 Order and to coincide with the hearing noticed for Mr. Huizar's Motion to Compel Discovery, Docket Entry 160.

i

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court previously granted in part, and denied in part without prejudice Defendant Jose Luis Huizar's ("Mr. Huizar") request for Grand Jury Selection records. Docket Entry 71 ("Court's October 29, 2020 Order"). Specifically, the Court granted Mr. Huizar's motion as to Requests 1, 4, 5, 12, 13, 14, and 16, and denied without prejudice as to the remaining requests. *Id.* The Court instructed Mr. Huizar that if he wished to renew his motion for the remaining requests, he should do so only after reviewing the responses received for Requests 1, 4, 5, 12, 13, 14, and 16. *Id.*

Mr. Huizar has reviewed the records provided pursuant to the Court's October 29, 2020 Order and now renews his request for records related to the grand jury selection process. Specifically, Mr. Huizar renews his request as to Requests 8, 9, 17 and 18, and seeks two additional records requests related to the Superseding Indictment. Mr. Huizar's requests relate to the National Change of Address database and the juror number and attendance records of the grand jurors that returned the indictment, Docket Entry 36, and superseding indictment against him, Docket Entry 74. Mr. Huizar asks this Court to grant his request to inspect papers and records responsive to Requests 8, 9, 17, 18, 19, and 20 or, in the alternative, refer these requests to the Chief Judge.

## II. LEGAL ANALYSIS

### A. Mr. Huizar is Entitled to the Requested Documents

Mr. Huizar has an independent statutory right to inspect "records or papers used by the jury commissioner or clerk in connection with the jury selection process" that "may be necessary in the preparation or presentation of a motion" under the statute. 28 U.S.C § 1867(f). Section 1867(f) creates an "unqualified right to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30 (1975) (*per curiam*) (emphasis added). It allows a defendant to "inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of" a motion to dismiss under Section 1867(a). This

"unqualified right to inspection is required not only by the plain text of the statute, but also by the statute's overall purpose of insuring 'grand and petit juries selected at random from a fair cross section of the community.'" *Test*, 420 U.S. at 30 (quoting 28 U.S.C. § 1861).

Inspection of such materials is essential to a defendant's ability to determine whether he has a potentially meritorious challenge. "[W]ithout inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Test*, 420 U.S. at 30. In other words, it is because of the otherwise opaque nature of the jury selection process that "[t]he right to inspect jury lists is essentially unqualified." *United States v. Studley*, 783 F.2d 934, 938 (9th Cir. 1986) (citing *Test*, 420 U.S. at 30). Accordingly, there is no threshold showing that a defendant must make to obtain the benefit of this statutory right or gain access to grand jury records that may be necessary to the preparation of a motion. "To avail himself of this right of access to otherwise nonpublic jury selection records, a litigant need only allege that he is preparing a motion challenging the jury selection procedures." *United States v. Layton*, 519 F. Supp. 946, 958 (N.D. Cal. 1981). The statute contemplates nothing else.

To be clear, the records Mr. Huizar seeks through these requests may not be defined as "Jury Selection Records" under the Jury Plan. Nevertheless, Mr. Huizar's right to discovery is not limited by the Jury Plan. The outer boundaries of this right are instead delineated by the Constitution and statute that necessarily govern over any general order of the court. *See, e.g., United States v. Magdirila*, 962 F.3d 1152, 1158 (9th Cir. 2020) (striking condition of release in C.D. Cal. General Order Condition 14 because it conflicted with the Constitution). The Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, *et seq.* ("JSSA") itself explicitly codifies its primacy over a jury selection plan because it permits defendants to challenge a court's jury plan for "substantial failure to comply" with the statute. 28 U.S.C. § 1867(a). *See also United States v. Erickson*, 75 F.3d 470, 477 (9th Cir. 1996); *United States v. Holmes*, No. 18-CR-00258-EJD-1, 2020

WL 5408163, at *2 (N.D. Cal. Sept. 9, 2020); *United States v. Sullivan*, No. 3:20-CR-00337-WHO-1, 2020 WL 5944433, at *2 (N.D. Cal. Oct. 7, 2020); *United States v. Seugasala*, No. 13-CR-00092-RRB, 2015 WL 1781969, at *1 (D. Alaska 2015) ("A defendant may challenge whether the local jury plan substantially operates in accordance with the Act."). Indeed, because the JSSA creates such a broad discovery right, any limitation on that right imposed by the clerk's office or the Jury Plan would frustrate its statutory scheme. *See* 28 U.S.C. § 1867(f); *Test*, 420 U.S. at 30. Mr. Huizar's right to records and papers used in the jury selection process is delineated by the JSSA and the Constitution and should not be limited by the very jury plan he intends to challenge.[2] This Court can and should grant Mr. Huizar's Requests. Alternatively, the Court should refer the Requests to the Chief Judge.

**B.   Renewed Requests**

   **1.   Requests 8 and 9**

Requests 8 and 9 seek records and data of any prospective jurors who were removed or transferred from the Western Division's Master Jury Wheel after the names were run through the National Change of Address database ("NCOA") and information related the NCOA.

In this district, a fair cross section of the community in grand and petit juries is purportedly ensured by the procedures set out by General Order No. 19-07, *In the Matter of the Plan of the United States District Court, Central District of California, for the Random Selection of Grand and Petit Jurors* (July 15, 2019) (the "Jury Plan"). According

---

[2] Even if the jury plan could govern Mr. Huizar's right to discovery, it remains unclear whether the jury plan even attempts to do so. The plan provides that "juror selection records" shall be disclosed to a litigant preparing a fair cross section motion. C.D. Cal. General Order 19-07 (July 15, 2019) § 12. Such records are also available to any member of the public. *Id.* (permitting disclosure upon order of the court). Another provision authorizes disclosure of records not defined as "juror selection records." *Id.* ("[T]he contents of records or papers not identified in this Plan as Juror Selection Records shall be disclosed only upon an order of the Court."). At most, that provision suggests such a request be referred to the Chief Judge, but it remains unclear whether litigants, as opposed to general members of the public, must be so referred. *Id.* ("[I]f such an application is made, it shall be referred to the Chief Judge.").

to the Jury Plan, grand and petit juries are selected from a Master Jury Wheel. The Master Jury Wheel is created by a third-party vendor contracted by the Clerk of the Court that is given Voter Lists and DMV Records ("Source Data") for each county. *Id.* at 3. The third-party vendor then merges the Source Data for each county into a single list ("Merged Source List"), which is cleared of any duplicate records of the same person or of records of persons under the age of 18 years. *Id.* Next, the third-party vendor randomly selects names from the Merged Source List for each county using a purely randomized process. *Id.* at 3-4. The selected names are then placed into the Master Jury Wheel for the division in which the county is located "in such numbers as to ensure that each county is substantially proportionally represented in that division's Master Jury Wheel." *Id.* at 4. The Jury Plan outlines no additional steps.

As previously explained, Mr. Huizar learned from the Clerk of the Court that after the Master Jury Wheels for each division is created, the names on those Wheels are run through the NCOA database. *See* Docket Entry 65 at 2-3. Based on the results, the third-party vendor then (1) removes deceased individuals from the Master Jury Wheels, and (2) transfers individuals who have moved from one division to another within the Court's jurisdiction from the Master Jury Wheels associated with their previous addresses to the Master Jury Wheels for the divisions associated with their new addresses. Running the names through the NCOA database and removing or transferring names *after* the Master Jury Wheel is proportionally populated raises concerns about whether the final Master Jury Wheel complies with the requirements of the Jury Plan, JSSA, and the Constitution. It is, for instance, unclear how many jurors were impacted by these after-the-fact changes, and whether some groups are disproportionately represented such as to interfere with the proportionality and randomization that the prior steps purport to create. "Because of the potential demographic effects of such a process, data on that process is necessary." February 16, 2020 Declaration of Jeffrey Martin ("Martin Decl.") at ¶ 4. The Court

4

previously denied Mr. Huizar's requests for information related to the NCOA, Requests 8 and 9, without prejudice.[3]

Information regarding this process is necessary in the preparation of a motion under the JSSA. Mr. Huizar now respectfully moves to renew his request to inspect records responsive to Requests 8 and 9 to determine whether there may be a meritorious challenge to the grand juror selection process arising from this additional step. Mr. Huizar cannot determine whether culling the Master Jury Wheel after it has been proportionally created is statutorily or constitutionally significant without inspecting the records requested here.

### 2. Requests 17 and 19

Requests 17 and 19 seek juror numbers for the grand jury that returned the indictments in this case. The grand juror numbers are necessary to clarify whether the grand jury was selected from both the Western and Southern divisions as the information provided by the Clerk of the Court suggests.

The documents provided pursuant to the Court's October 29, 2020 Order included information from both the Western and Southern divisions. *See* Martin Decl. ¶ 3.a. The Jury Plan, however, explains that litigants entitled to trial by jury "shall have the right to grand and petit juries selected at random from a fair cross section of the community *in the division* wherein the Court convenes." Jury Plan § 2 (emphasis added). To effectuate this policy, the Clerk of the Court is instructed to randomly select names from the Merged Source List for each county in the District and place the selected names "in the Master Jury Wheel for the *division* in which the county is located, in such numbers as to ensure that each county is substantially proportionally represented in that *division's* Master Jury Wheel." *Id.* § 5 (emphasis added). It appears, therefore, the Master Jury Wheel from which the grand jury in this case was selected did not conform with this District's Jury

---

[3] The government previously acknowledged that the records sought by this request appeared to be relevant to Mr. Huizar's anticipated motion. Docket Entry 70 at 14.

5

Plan nor the JSSA. *See* Jury Plan at §5 (explaining that the Court's process "will result in a Master Jury Wheel *for each division* that includes a fair cross section of the persons residing *in that division*" (emphasis added)). *See also United States v. Rodriguez*, 924 F. Supp. 2d 1108, 1114 (C.D. Cal. 2013) (explaining Central District's Jury Plan functions on a divisional basis). The grand juror numbers are necessary to confirm whether the grand jury was in fact taken from both divisions.

### 3.     Requests 18 and 20

Mr. Huizar's Requests 18 and 20 seek grand juror attendance records. The grand jury in this case was impaneled in October 2019 and first indicted Mr. Huizar in July 2020. The grand jury then filed a superseding indictment in November 2020, more than a year after it was impaneled and nine months into the pandemic. The requested attendance records will assist Mr. Huizar in determining whether the ongoing pandemic had a constitutionally or statutorily significant impact on the composition of the grand jury that ultimately indicted him.

Specifically, the attendance records will assist Mr. Huizar in understanding how or if the COVID-19 pandemic affected the grand jury that indicted him. Attendance records would show, for example, whether grand jurors were excused after they were empaneled and why, and whether new grand jurors (as opposed to alternates) were empaneled after the start of the grand jury proceedings. The attendance records are especially pertinent in this case where the grand jury sat for more than a year and did so at a truly unprecedented time when assembling, retaining, or replacing a fair cross section of any community is uniquely difficult. *See, e.g.*, *United States v. Davis*, 2020 WL 5653332, at *2 (D. Colo. 2020) (holding ends of justice served by granting trial continuance because the court was "experienc[ing] difficulty, due to various public health directives and general health concerns, obtaining an adequate cross-section of the community for jury selection"). Attendance records would provide information about whether increased recusals during the pandemic systematically caused distinctive groups

to be excluded or replaced over this extended period in a manner that violated Mr. Huizar's Sixth Amendment or statutory rights or the Fourteenth Amendment. *Cf. Sullivan*, 2020 WL 5944433, at *4 (granting § 1867(f) motion and agreeing that "the grounds for excusal and the disposition of juror qualifications [during the COVID-19 pandemic] are directly relevant to whether the grand jury was selected at random").[4]

Orders have issued since January 2020 that changed the composition of some of the grand juries, either by substituting jurors or forepersons, or by discharging or extending a grand jury's term. *See* Docket Entry 70 at 17; *United States v. Potts*, 20-CR-0128-JGB, Docket Entry 34, Decl. of Counsel ¶ 6 (explaining that a letter from the Clerk of the Court indicated "that some orders regarding grand juries have been signed since January 1, 2020," including "orders replacing a grand juror with one of the alternate grand jurors"). This District's Jury Plan provides some information as to how the Jury Wheel is created, how potential grand jurors are excused, and how a grand jury is selected from the Jury Wheel. *See, e.g.*, Jury Plan §11(b)(iii) ("Individual Requests for Postponement or Excuse"); *id.* §11(c)(ii) ("Individual Showing of Undue Hardship or Extreme Inconvenience"). The Jury Plan does not, however, provide any information as to how *empaneled* grand jurors are excused (or who excuses them) when the reason for excusal occurs after the grand jury has been empaneled; nor does the Jury Plan explain how or if new grand jurors (as opposed to alternates) are empaneled after grand jury proceedings have already begun. *See, generally*, Jury Plan; United States District Court, Central District of California, "Grand Jury Terms of Service," https://www.cacd.uscourts.gov/jurors/grand-jury-terms-service. *See* 18 U.S.C. § 3321 ("Every grand jury impaneled before any district court shall consist of not less than

---

[4] COVID-19 has disproportionately affected cognizable distinctive groups in this District. *See, e.g.*, Jill Cowan and Matthew Block, *In Los Angeles, the Virus is Pummeling Those Who Can Least Afford to Fall Ill*, N.Y. TIMES (Jan. 29, 2021), https://www.nytimes.com/interactive/2021/01/29/us/los-angeles-county-covid-rates.html (compiling data showing predominately Latino, working-class neighborhoods in Los Angeles had roughly five times as many COVID-19 infections as more affluent, White neighborhoods).

7

sixteen nor more than twenty-three persons. If less than sixteen of the persons summoned attend, they shall be placed on the grand jury, and the court shall order the marshal to summon, either immediately or for a day fixed, from the body of the district, and not from the bystanders, a sufficient number of persons to complete the grand jury."). In the absence of information regarding these procedures, the attendance records will allow Mr. Huizar to know whether, and if so, why, such excusals and after-empanelment replacements occurred such that further information about those processes and procedures may be necessary.

\* \* \*

Mr. Huizar has an independent statutory right to inspect the "records or papers used by the jury commissioner or clerk in connection with the jury selection process" requested here. 28 U.S.C § 1867(f). These records "may be necessary in the preparation or presentation of a motion" under the statute. *Id.*

### III. CONCLUSION

For the reasons stated above, Mr. Huizar respectfully renews his request and asks this Court to grant his Renewed Motion to Inspect the Grand Jury Selection Records, Requests 8, 9, 17, 18, 19, and 20, or in the alternative refer his requests to the Chief Judge.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 8, 2021

CAREL ALÉ
CHARLES SNYDER
Deputy Federal Public Defender

8