CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Carel Alé (Bar No. 283717)
(E-Mail: Carel_Ale@fd.org)
Charles Snyder (Bar No. 287246)
(E-Mail: Charles_Snyder@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-0326-JFW |
| Plaintiff, | |
| v. | **SUPPLEMENT:**<br>**JOINT STATEMENT** |
| JOSE LUIS HUIZAR, | |
| Defendant. | |

**JOINT STATEMENT**

Pursuant to the Court's October 29, 2020 Order, the parties file the below Joint Statement.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: March 8, 2021                    By _____

Carel Ale
Charles Snyder
Deputy Federal Public Defenders

Dated: March 8, 2021                    Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

_____

MACK E. JENKINS
VERONICA DRAGALIN
MELISSA MILLS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

i

# **TABLE OF CONTENTS**

**Requests**

8.   The records or data of any prospective juror removed from the Western Division's 2019 Master Jury Wheel or transferred to another Master Jury Wheel after their names were run through the National Change of Address database.  The records or data should include, as available, Race, Gender, Ethnicity, Year of Birth, Zip Code, County, and Jury Division. .......................................................................................... 1

9.   Information regarding how the National Change of Address database is produced or compiled and when and how often it is updated. .................... 2

17.   The Juror Number for each grand juror who returned the Indictment in this case on July 30, 2020. ............................................................................ 3

18.   The attendance record and reason for absence by date of each grand juror who returned the Indictment in this case on July 30, 2020................ 6

19.   The Juror Number for each grand juror who returned the Superseding Indictment in this case on November 12, 2020......................................... 13

20.   The attendance record and reason for absence by date of each grand juror who returned the Indictment in this case on November 12, 2020. ... 16

1

## **Table of Authorities**

2

**CASES**

3

*Government of Canal Zone v. Davis,*
  592 F.2d 887 (5th Cir. 1979) ..................................................................... 12, 21

4

*In re Special Grand Jury (for Anchorage, Alaska),*
  674 F.2d 778 (9th Cir. 1982) ........................................................................ 9, 19

5

6

*Taylor v. Louisiana,*
  419 U.S. 522 (1975).......................................................................................... 8, 18

7

*Test v. United States,*
  420 U.S. 28 (1975) (*per curiam*) .............................................. 7, 12, 17, 21

8

9

*United States v. Armstrong,*
  621 F.2d 951 (9th Cir. 1980) ............................................................................ 2, 4

10

*United States v. Bagcho,*
  923 F.3d 1131 (D.C. Cir. 2019) ................................................................... 11, 21

11

12

*United States v. Cannady,*
  54 F. 3d 544 (9th Cir. 1995) ............................................................................ 6, 16

13

*United States v. Cloud,*
  No. 19-cr-02032-SMJ, 2020 WL 4381608 (E.D. Wa. July 27, 2020) ................. 6, 16

14

15

*United States v. Curry,*
  993 F.2d 43 (4th Cir. 1993) ........................................................................... 11, 21

16

*United States v. Davis,*
  2020 WL 5653332 (D. Colo. 2020)............................................................... 8, 18, 21

17

18

*United States v. Diaz,*
  236 F.R.D. 470 (N.D. Cal. 2006)........................................................... 10, 13, 19, 23

19

*United States v. Footracer,*
  16 Fed. App'x 595 (9th Cir. 2001) ................................................................. 6, 16

20

21

*United States v. Fuentes,*
  2008 WL 2557949 (E.D. Cal. 2008)..........................................................*passim*

22

*United States v. Garner,*
  663 F.2d 834 (9th Cir. 1981) .................................................................. 10, 13, 20, 22

23

24

*United States v. Goodlow,*
  597 F.2d 159 (9th Cir. 1979) ....................................................................... 12, 22

25

*United States v. Holmes,*
  2020 WL 5408163 (N.D. Cal. 2020) No. 18-cr-00258-EJD-1 (N.D. Cal)................ 11

26

27

*United States v. Lawson,*
  670 F.2d 923 (10th Cir. 1982) ...................................................................... 11, 21

28

iii

*United States v. Leverage Funding Systems, Inc.*,
  637 F.2d 645 (9th Cir. 1980), *cert. denied*, 452 U.S. 961 (1980) .........................8, 18

*United States v. Mitchell*,
  502 F.3d 931 (9th Cir. 2007) ...............................................................8, 18

*United States v. R. Enterprises, Inc.*,
  498 U.S. 292 (1991)..........................................................................5, 7, 15

*United States v. Rodriguez*,
  924 F. Supp. 2d 1108 (C.D. Cal. 2013) ....................................................6, 16

*United States v. Royal*,
  100 F.3d 1019 (1st Cir. 1996)...............................................................11, 21

*United States v. Sells Engineering, Inc.*,
  463 U.S. 418 (1983).............................................................................14, 23

*United States v. Sullivan*,
  2020 WL 5944433 (N.D. Cal. 2020) .................................................*passim*

*United States v. Tuttle*,
  729 F.2d 1325 (11th Cir. 1984) ...............................................................6, 16

*United States v. Williamson*,
  903 F.3d 124 (D.C. Cir. 2018)...............................................................11, 21

**STATUTES**

28 U.S.C. § 84..........................................................................................6, 16

28 U.S.C. § 1861...........................................................................................2

28 U.S.C. § 1867.............................................................................7, 12, 17, 21

**RULES**

Federal Rules of Criminal Procedure Rule 6.......................................*passim*

**TREATISES**

Wright & Miller, 1 Fed. Prac. & Proc. Crim. § 106 (4th ed. 2020) .......................14, 24

iv

**JOINT STATEMENT**

Pursuant to the Court's October 29, 2020 Order, the parties provide the following positions and responses with respect defendant's Renewed Motion to Inspect Grand Juror Selection Records.

> **8.** **The records or data of any prospective juror removed from the Western Division's 2019 Master Jury Wheel or transferred to another Master Jury Wheel after their names were run through the National Change of Address database. The records or data should include, as available, Race, Gender, Ethnicity, Year of Birth, Zip Code, County, and Jury Division.**

Government Position

Defendant's claim of an unqualified entitlement to any and all material related to the selection of grand juries that he believes could be relevant to a possible motion is mistaken. This Court has already made clear that, "without an order of the Chief Judge, Defendant is only entitled to inspect, reproduce and copy Jury Selection Records relating to the 2019 Western Division Master Jury Wheel." (CR 71) In seeking such an order for additional grand jury records, defendant must now make a showing as to why he needs the requested materials, so that the Court may determine whether to produce the records.[1]

In support of this renewed request, defendant has reiterated the facts and arguments offered in his original motion. It is for the Chief Judge to consider whether those facts and arguments justify disclosure of these particular Court records. The government is unaware of whether the Court maintains any records responsive to this request. Assuming the Court does have responsive records, the government lacks

---

[1] The government's response (CR 66) to defendant's original motion explains why defendant does not have an unqualified right to records related to jury selection beyond those identified as Juror Selection Records. The requirement that defendant provide some justification for his purported need for additional records is also implicit in this Court's order denying defendant access to those records without further order from the Chief Judge. (CR 71)

1

information as to the sensitivity of such records, the equities in protecting them from disclosure, the administrative burden associated with their production, or how those factors should be properly balanced against defendant's stated purpose for requesting the information.  The government thus defers to the Court as to the disposition of this request for records.

Defendant's Response

Mr. Huizar is entitled to inspect records related to the Court's use of the National Change of Address Database ("NCOA") to finalize the Master Jury Wheel. *See United States v. Armstrong*, 621 F.2d 951, 955 (9th Cir. 1980) ("The right to inspect, produce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion granted in section 1867(f) extends not only to the grand jury panel, but also to the master wheel." (citation omitted)). The use of the NCOA to finalize the Master Jury Wheel is not outlined in this District's Jury Plan or otherwise available. This information is necessary to evaluate and prepare a motion pursuant to the Jury Selection and Service Act, 28 U.S.C. § 1861, *et seq.*, ("JSSA") or the Constitution. *See* Martin Decl. at ¶ 4.

The government suggests that Mr. Huizar's right to these documents is premised on the Court's balancing of his stated purpose against the burden or equities of disclosure. The government offers no support or citation for the proposition that any such balancing test is required by or exists under the Jury Plan, the statute, or the Constitution. Instead, the statute and caselaw make clear that Mr. Huizar's right to inspect records that may be necessary to a motion is "unqualified" and does not yield to such balancing tests.

1

**9.     Information regarding how the National Change of Address database is produced or compiled and when and how often it is updated.**

Government Position

Defendant's claim of an unqualified entitlement to any and all material related to the selection of grand juries that he believes could be relevant to a possible motion is mistaken.  This Court has already made clear that, "without an order of the Chief Judge, Defendant is only entitled to inspect, reproduce and copy Jury Selection Records relating to the 2019 Western Division Master Jury Wheel."  (CR 71)  In seeking such an order for additional grand jury records, defendant must now make a showing as to why he needs the requested materials, so that the Court may determine whether to produce the records.[2]

In support of this renewed request, defendant has reiterated the facts and arguments offered in his original motion.  It is for the Chief Judge to consider whether those facts and arguments justify disclosure of these particular Court records.  The government is unaware of whether the Court maintains any records responsive to this request.  Assuming the Court does have responsive records, the government lacks information as to the sensitivity of such records, the equities in protecting them from disclosure, the administrative burden associated with their production, or how those factors should be properly balanced against defendant's stated purpose for requesting the information.  The government thus defers to the Court as to the disposition of this request for records.

---

[2] The government's response (CR 66) to defendant's original motion explains why defendant does not have an unqualified right to records related to jury selection beyond those identified as Juror Selection Records.  The requirement that defendant provide some justification for his purported need for additional records is also implicit in this Court's order denying defendant access to those records without further order from the Chief Judge.  (CR 71)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Defendant's Response</u>

Mr. Huizar is entitled to inspect records related to the Court's use of the National Change of Address Database ("NCOA") to finalize the Master Jury Wheel. *See Armstrong*, 621 F.2d at 955 ("The right to inspect, produce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion granted in section 1867(f) extends not only to the grand jury panel, but also to the master wheel." (citation omitted)). The use of the NCOA to finalize the Master Jury Wheel is not outlined in this District's Jury Plan or otherwise available. This information is necessary to evaluate and prepare a motion pursuant to the JSSA or the Constitution. *See* Martin Decl. at ¶ 4.

The government suggests that Mr. Huizar's right to these documents is premised on the Court's balancing of his stated purpose against the burden or equities of disclosure. The government offers no support or citation for the proposition that any such balancing test is required by or exists under the Jury Plan, the statute, or the Constitution. Instead, the statute and caselaw make clear that Mr. Huizar's right to inspect records that may be necessary to a motion is "unqualified" and does not yield to such balancing tests.

**17.  The Juror Number for each grand juror who returned the Indictment in this case on July 30, 2020.**

<u>Government Position</u>

The government objects to this request.  Defendant appears to suggest that because the Clerk of Court provided, along with clerical records for four pools from the Western Division of the Central District of California, a separate clerical record pertaining to one pool from the Southern Division, he is entitled to investigate whether the Court violated its own Jury Plan by mingling those divisions in its jury-selection process.  The government does not read the facts presented by defendant — that in addition to responsive records for the Western Division, the Clerk of Court also produced one separately maintained record for a different division — to support his

3

apparent assumption that the Court failed to maintain a distinct Master Jury Wheel for each individual division in accordance with its own Jury Plan. The Court's administrative procedures with respect to the grand jury should be entitled to the same presumption of regularity that grand jury proceedings themselves are afforded. See, e.g., United States v. R. Enterprises, Inc., 498 U.S. 292, 300-01 (1991). Absent facts supporting a belief to the contrary, the Court is presumed to have acted in accordance with the Jury Plan, and the request should be denied.

If the Court is inclined to entertain this request, simply informing defendant as to whether or not the Court selected his grand jury in accordance with the process described in the Jury Plan may be more efficient than producing voluminous grand jury records.

Defendant's Response

The documents provided pursuant to the Court's October 29, 2020 Order included information from *both* the Western and Southern divisions. *See* Martin Decl. ¶ 3.a. Specifically, in its November 10, 2020 letter, the Clerk of the Court attached lists of jurors summoned for grand jury service. The attached documents pertained to five "pools" of jurors. One of the pools attached was numbered "801190901." *See* February 24, 2021 Declaration of Jeffrey Martin ("Second Martin Decl.") ¶ 3. *See also* Declaration of Counsel, Exhibit 1. The participant numbers in pool 801190901 match the participant numbers in a spreadsheet provided by the Clerk of the Court entitled, "13_JMS_Export_2019_Southern REDACTED." *See id.* ¶ 5. In other words, one of the "pools" from which the grand jury was selected was not from the Western division where Mr. Huizar was indicted.

The Jury Plan, however, explains that litigants entitled to trial by jury "shall have the right to grand and petit juries selected at random from a fair cross section of the community *in the division* wherein the Court convenes." Jury Plan § 2 (emphasis added). The Central District of California is divided into three statutory divisions. These

4

divisions are not simply the locations where courthouses sit—rather, they are meaningful political subdivisions. *Compare* 28 U.S.C. § 84(c) ("The Central District [of California] comprises 3 divisions," Eastern, Western, and Southern which each sit in different cities) *with id.* § 84(a) (explaining that the Northern District of California has no divisions but does have courthouses in three different cities). Accordingly, courts in this district have recognized that "the issue is whether the *division* . . . represents a cross section of the community." *United States v. Irurita-Ramirez*, 838 F. Supp. 1385, 1387 (C.D. Cal. 1993) (emphasis added). *See United States v. Rodriguez*, 924 F. Supp. 2d 1108, 1114 & 1123 (C.D. Cal. 2013) (considering "the absolute disparities in the Southern Division" and explaining that the Central District's Jury Plan functions on a divisional basis); *see also United States v. Cannady*, 54 F. 3d 544, 546-47 (9th Cir. 1995) (treating the "community" in question as the division); *United States v. Footracer*, 16 Fed. App'x 595 (9th Cir. 2001) (unpublished) (implicitly recognizing that a litigant may have a fair cross-section claim if transferred to a different division); *United States v. Tuttle*, 729 F.2d 1325, 1327 (11th Cir. 1984) (assessing fair cross section claim based division). Information regarding juror numbers of those who served on the grand jury that indicted Mr. Huizar would allow Mr. Huizar to determine if both divisions were in fact used as the evidence strongly suggests. Second Martin Decl. ¶ 9. *Accord United States v. Sullivan*, 2020 WL 5944433, at *4 (N.D. Cal. 2020) (granting request seeking juror numbers for grand jurors who returned the indictment because they provide direct insight into the manner the court selected, excused, deferred or disqualified jurors); *United States v. Cloud*, No. 19-cr-02032-SMJ, 2020 WL 4381608, at *5 (E.D. Wa. July 27, 2020) (granting "request [for] the juror numbers of those who served on the grand jury that returned the indictments in this case").

The government asserts that it "does not read the facts" to support Mr. Huizar's contention that the Master Jury Wheel was selected from different divisions. The government does not point to any misreading or inconsistency with Mr. Huizar's

interpretation of the Clerk of the Court's letter or the documents nor does it offer another interpretation of that evidence. Mr. Huizar has provided evidence, in the form of an expert declaration and samples of the excel spreadsheets provided by the Clerk of the Court, showing that the juror numbers in Mr. Huizar's "jury pools" also included jurors from the Southern Division. That evidence certainly "supports a belief" that the Clerk did not act in accordance with the Jury Plan.[3]

At this stage, Mr. Huizar need not establish that there has been a violation of the Jury Plan, that his motion will succeed, or that each document he seeks will be pertinent to the motion. *See, e.g.*, *Test v. United States*, 420 U.S. 28, 30 (1975) (*per curiam*) ("[W]ithout inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge."). Rather, the information Mr. Huizar seeks need only be potentially "necessary in the preparation or presentation of a motion" challenging the jury selection process. 28 U.S.C. §1867(f). This evidence is necessary for Mr. Huizar's potential motion and he is entitled to the information sought through this request.

**18.     The attendance record and reason for absence by date of each grand juror who returned the Indictment in this case on July 30, 2020.**

<u>Government Position</u>

The government objects to this request.  Defendant has articulated no legally cognizable justification for obtaining the sensitive grand jury material that he requests. Defendant's motion posits only that he seeks to determine "how or if" the COVID-19 pandemic impacted the composition of the grand jury that indicted him.  It appears that

---

[3] To be clear, there is no presumption that the Clerk acted in accordance with the Jury Plan. The government cites *United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991), in support of that proposition. *Supra* at 5. But that case is not on point. The Supreme Court in *R. Enterprises* was concerned with the grand jury itself and the proceedings before it, not the Clerk's administration of the grand jury or its selection. *See* 498 U.S. at 300-01 (explaining that in "this case, the focus of our inquiry is the limit imposed on a grand jury by Federal Rule of Criminal Procedure 17(c)" and explaining, "absent a strong showing to the contrary, that a *grand jury* acts within the legitimate scope of its authority") (emphasis added).

defendant hopes to find support for a motion alleging that, in the grand jury voting on his indictment, members of certain demographic groups were absent or excused more often than people belonging to other demographic groups, which defendant might then ascribe to pandemic-related reasons.[4]   Such a motion would be destined to fail, because it is well settled that defendant is not entitled to an empaneled grand jury with any particular demographic characteristics:

> The Sixth Amendment imposes 'no requirement that [grand or] petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition.'

United States v. Mitchell, 502 F.3d 931, 951 (9th Cir. 2007) (quoting Taylor v. Louisiana, 419 U.S. 522, 538 (1975)).  Rather, defendant is entitled to a grand jury that was selected from a pool representing a fair-cross section of the community.  This grand jury was selected and empaneled in October 2019, months before the COVID-19 pandemic gained a foothold in the Central District of California in March 2020.  Thus, the pandemic cannot have had a "constitutionally or statutorily significant impact" on defendant's right to have the pool reflect a fair cross-section of the community — no matter what the demographic composition of his particular grand jury ultimately might have been.

Defendant relies on United States v. Sullivan, 2020 WL 5944433 (N.D. Cal. 2020), and United States v. Davis, 2020 WL 5653332 (D. Colo. 2020), as support for

---

[4] Defendant does not succinctly spell out the precise basis for his intended motion that he believes the grand jury attendance records would support.  To the extent that defendant may also seek to discern whether some grand jurors who voted to indict him were not present for every session preceding the indictment vote, that use would similarly fail to support his request.  Any such attendance pattern would provide him no basis for relief, because the sole attendance requirement — that a quorum was present for every grand jury session — was satisfied and is not in dispute.  United States v. Leverage Funding Systems, Inc., 637 F.2d 645 (9th Cir. 1980), cert. denied, 452 U.S. 961 (1980) ("An indictment is valid if (1) the grand jury returning the indictment consisted of between 16 and 23 jurors, (2) every grand jury session was attended by at least 16 jurors, and (3) at least 12 jurors vote to indict.  Nothing requires that every juror voting to indict attend every session.")

7

the proposition that attendance records are needed to shed light on whether his grand jury was drawn from a fair cross-section of the community.  Mot. at 8-9.  These cases do not help him.  In <u>Sullivan</u>, the motion and order were premised on the assumption that the grand jury was selected during the pandemic — which the grand jury here was not.  2020 WL 5944433 at *1; see also 3:20-CR-337-WHO, CR 20, at 1.  <u>Davis</u> similarly involved the mid-pandemic selection of trial jurors.  2020 WL 5653332 at *1. In stark contrast to those two cases, the process by which defendant's grand jury was selected in October 2019 could not possibly have been impacted by the pandemic, which began months later.  Indeed, defendant's motion indicates that, at best, any jury-composition arguments would pertain only to "*empaneled* grand jurors" and "after-empanelment" procedures.  Mot. at 9, 10 (emphasis in original).  Defendant has identified no non-frivolous legal theories that post-empanelment grand jury attendance records could possibly inform, and the government is aware of none.

To the extent that grand jury attendance and excusal records sought here would reveal the names of grand jurors, the Jury Plan is clear that this information "shall not be disclosed except on order of the Court."  Jury Plan § 8.  The Ninth Circuit has suggested (without deciding) that attendance records are protected by the doctrine of grand jury secrecy.  <u>In re Special Grand Jury (for Anchorage, Alaska)</u>, 674 F.2d 778, 782 (9th Cir. 1982) ("It would be reasonable to hold that [a request for attendance records and roll sheets] runs afoul of the doctrine of grand jury secrecy.").  Even if the names were redacted — a protective measure that defendant's request does not specifically seek — grand jury attendance records may still be subject to grand jury secrecy rules.  In <u>United States v. Fuentes</u>, 2008 WL 2557949, *3 (E.D. Cal. June 24, 2008), the court held that grand jury attendance records were covered by both Rule 6(e) and the broader doctrine of grand jury secrecy.  Noting that disclosure of attendance records could impede the freedom and integrity of the grand jury's deliberative process,

8

1    the court in <u>Fuentes</u> found that the defendant had "offered no practical need" for this

2    information and denied the request.  <u>Id.</u>

3         Courts have repeatedly denied requests for grand jury attendance records absent

4    a showing of particularized need for the information.  <u>United States v. Diaz</u>, 236 F.R.D.

5    470, 480 (N.D. Cal. 2006) (holding that "because the requested records of grand jury

6    roll sheets, attendance information and utilization reports are not purely ministerial,

7    defendants must demonstrate particularized need for disclosure"; finding that the

8    requested records were protected by Rule 6(e); and denying requests because defendant

9    had "not demonstrated any interest great enough to overcome the traditional interests of

10   grand jury secrecy."); <u>Fuentes</u>, 2008 WL 2557949, *3 (holding that grand juror

11   attendance records were "protected by both Rule 6(e) and general principles of grand

12   jury secrecy," and denying request for such records where "counsel for defendants have

13   offered no practical need for disclosure of such information"); <u>see also</u> <u>United States v.</u>

14   <u>Garner</u>, 663 F.2d 834, 840 (9th Cir. 1981) (affirming denial of evidentiarily

15   unsupported request for grand juror attendance records on defense theory that a quorum

16   of grand jurors had not directly heard evidence on the indictment).

17        Because defendant has failed to demonstrate a particularized need, or indeed to

18   show any legitimate purpose for the requested grand jury attendance and excusal

19   records, his request should be denied.

20        <u>Defendant's Response</u>

21        The grand jury attendance records are necessary for Mr. Huizar's evaluation of a

22   potential claim. Mr. Huizar does not need to meet some threshold showing of specificity

23   to obtain the records sought here. The government cites cases concerning records that are

24   covered by Federal Rules of Criminal Procedure Rule 6(e) and are inapposite.[5]

25

26        [5] On February 5, 2021, the parties met and conferred about these requests. At that
27   time, defense counsel advised the government that Mr. Huizar did not seek any juror
     identifying information through any of his requests. To the extent that there remains

28                                              9

The attendance records will assist Mr. Huizar in understanding how or if the COVID-19 pandemic affected the grand jury that indicted him. Specifically, attendance records would show whether grand jurors were excused after they were empaneled and why, and whether new grand jurors (as opposed to alternates) were empaneled after the start of the grand jury proceedings. The government objects to this request because Mr. Huizar has not shown a particularized need for such information or a meritorious claim. No such showing is necessary. "Because the right of access to jury selection records is unqualified, a district court may not premise the grant or denial of a motion to inspect upon a showing of probable success on the merits of a challenge to the jury selection provisions." *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996). The statute creates "no basis to require a defendant to submit a sworn statement, much less to plausibly allege a violation of his right to a jury that represents a fair cross section of the community, when seeking to inspect jury records as an initial step in deciding whether to file a motion under the Act." *United States v. Bagcho*, 923 F.3d 1131, 1136 (D.C. Cir. 2019) (alteration and citations omitted). *See United States v. Williamson*, 903 F.3d 124, 133 (D.C. Cir. 2018) (district court erred in denying defendant access to jury commission record where the denial was based in part on defendant's failure to "plausibly allege a violation of his right to a jury that represents a fair cross section of the community"); *United States v. Curry*, 993 F.2d 43, 44 (4th Cir. 1993) (rejecting government's argument that defendant was "required to submit a sworn affidavit showing why the list would be necessary" and remanding to allow review of jury list and opportunity to move for new trial); *United States v. Lawson*, 670 F.2d 923, 926 (10th Cir. 1982) (remanding case

---

ambiguity, Mr. Huizar would support a protective order protecting personal identifying information. *See, e.g.*, *Sullivan*, 2020 WL 5944433, at *5 ("If any of the records disclosed under this Order contain personal identifying information about individual grand jurors, the Clerk of the Court shall redact that information."); *United States v. Holmes*, No. 18-cr-00258-EJD-1, 2020 WL 5408163, at *8 (N.D. Cal. 2020) ("Consistent with 28 U.S.C. § 1867(f), the materials may not be disclosed, shown or distributed in any manner to third parties.").

where district court erred by denying motion to inspect and copy jury selection materials pursuant to § 1867(f)); *Government of Canal Zone v. Davis*, 592 F.2d 887, 889 (5th Cir. 1979) (reversing convictions and remanding where district court erred in denying defendant access to jury selection records and explaining that "whether or not the accompanying affidavit established a prima facie case of defective jury selection process is of no import" under *Test*).

To the extent that any showing must be made, the statute only contemplates that the records or papers are exempt from non-disclosure if they are exempt by the district court plan or "*may* be necessary in the preparation or presentation of a motion" pursuant to the statute. 28 U.S.C. § 1867(f) (emphasis added). This condition is permissive and met here. Mr. Huizar has submitted an expert declaration stating the attendance records are necessary to his evaluation and preparation of a potential motion. *See* Martin Decl. ¶ 2.

Although neither the statue nor caselaw requires a greater showing, Mr. Huizar has provided that, too. He has explained that the Jury Plan offers no information as to what the procedures are for excusing grand jurors once they are empaneled or if and how new grand jurors (as opposed to alternates) are chosen and empaneled after the grand jury proceedings have begun. *See* Motion at 7-8. He has spelled out that the attendance records would provide information about whether increased recusals during the pandemic systematically caused distinctive groups to be excluded or replaced over this extended period in a manner that violated his rights. *Id.* at 7.

Whether the "determination of juror disqualifications, excuses, exemptions, and exclusions" of the empaneled grand jury was done "on the basis of objective criteria only," *United States v. Goodlow*, 597 F.2d 159, 162 (9th Cir. 1979), or new grand jurors were from "random selection," *id.*, implicates the district's compliance with the JSSA. No information is available as to how empaneled grand jurors are excused after grand jury proceedings begin. And if new grand jurors were empaneled after grand jury

11

proceedings began, Mr. Huizar has a right to probe the pandemic's impact on the pool from which those new jurors were selected. In other words, it is not the case that "the process by which defendant's grand jury was selected in October 2019 could not possibly have been impacted by the pandemic," if new, replacement jurors were chosen from a pool compiled during the pandemic or if the criteria for excusal of the grand jurors was not objective or was itself impacted by the pandemic. The attendance records would reveal whether the degree of grand jurors excusals or empanelment of new grand jurors raise a specter of substantial violation of the JSSA such that more information about those processes would be necessary.

The government's cited cases requiring a showing of particularized need are inapposite. In *United States v. Garner*, 663 F.2d 834 (9th Cir. 1981), for example, the defendant sought attendance records to show that a quorum did not directly hear the evidence. *Id.* at 840. The court denied that request because the district court had already "ordered full disclosure of all testimony given before the grand jury," and the record "establish[ed] that the grand jurors who voted for the indictment had before them a complete transcript of all testimony taken by the previous grand jurors regarding the matter." *Id.* In other words, the attendance records were unnecessary. *United States v. Fuentes*, 07-cr-00248-WBS, 2008 WL 2557949 (E.D. Cal. 2008), also misses the mark. There, the defendant sought attendance records not through his right under the Jury Plan, JSSA, or the Constitution, but pursuant to the *public's* right of access to court records. *Id.*, Docket Entry 192 at 3; *id.* at 6 (characterizing records as ministerial court "records mandated under Rules 6(b)(2), 6(c), 6(d), and 6(f)"). The *Fuentes* court did not have occasion to determine whether the attendance records were "records or papers" covered by the statute or whether the defendant's individual and "unqualified" right pursuant to the JSSA or the Constitution warranted disclosure. The government's reliance on *United States v. Diaz*, 236 F.R.D. 470 (N.D. Cal. 2006) is similarly inapt. *See id.* at 480-81 (discussing disclosure of "nonministerial" grand jury records pursuant to Rule 6 and

explaining that "[d]efendants may access nonministerial records upon a showing of need" that would "overcome the traditional interests of grand jury secrecy").

As the government notes, this Circuit has not held that attendance records are protected by grand jury secrecy but has posited attendance records might reasonable be protected. This Court should not heed that suggestion. Attendance records are not the sort of documents requiring protection. In *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983), the Supreme Court explained that protecting the secrecy of "grand jury proceedings" is necessary in order to ensure that witnesses come forward voluntarily and "testify fully and frankly"; that those targeted by the grand jury's investigation neither flee nor influence grand jurors' votes; and that those who the grand jury declines to prosecute are not publicly shamed for having been accused of wrongdoing. *Id.* at 424 (internal quotation marks omitted). Disclosure of attendance records like those sought here implicates none of those concerns and do not threatened the secrecy of the proceedings. *See also* Wright & Miller, 1 Fed. Prac. & Proc. Crim. § 106 (4th ed. 2020) ("material or information that would not tend to reveal what took place in the grand jury room or is derived independently from the grand jury process typically is not covered" by Rule 6(e)).

Mr. Huizar is entitled to the attendance records requested here. Mr. Huizar has shown that this information is necessary (and at a minimum "may be necessary") to his evaluation and preparation of a motion pursuant to the JSSA.

### 19. The Juror Number for each grand juror who returned the Superseding Indictment in this case on November 12, 2020.

<u>Government Position</u>

The government objects to this request. Defendant appears to suggest that because the Clerk of Court provided, along with clerical records for four pools from the Western Division of the Central District of California, a separate clerical record pertaining to one pool from the Southern Division, he is entitled to investigate whether

13

the Court violated its own Jury Plan by mingling those divisions in its jury-selection process. The government does not read the facts presented by defendant — that in addition to responsive records for the Western Division, the Clerk of Court also produced one separately maintained record for a different division — to support his apparent assumption that the Court failed to maintain a distinct Master Jury Wheel for each individual division in accordance with its own Jury Plan. The Court's administrative procedures with respect to the grand jury should be entitled to the same presumption of regularity that grand jury proceedings themselves are afforded. See, e.g., United States v. R. Enterprises, Inc., 498 U.S. 292, 300-01 (1991). Absent facts supporting a belief to the contrary, the Court is presumed to have acted in accordance with the Jury Plan, and the request should be denied.

If the Court is inclined to entertain this request, simply informing defendant as to whether or not the Court selected his grand jury in accordance with the process described in the Jury Plan may be more efficient than producing voluminous grand jury records.

<u>Defendant's Response</u>

The documents provided pursuant to the Court's October 29, 2020 Order included information from *both* the Western and Southern divisions. *See* Martin Decl. ¶ 3.a. Specifically, in its November 10, 2020 letter, the Clerk of the Court attached lists of jurors summoned for grand jury service. The attached documents pertained to five "pools" of jurors. One of the pools attached was numbered "801190901." *See* Second Martin Decl. ¶ 3; *See also* Declaration of Counsel, Exhibit 1. The participant numbers in pool 801190901 match the participant numbers in a spreadsheet provided by the Clerk of the Court entitled, "13_JMS_Export_2019_Southern REDACTED." *See id.* ¶ 5. In other words, one of the "pools" from which the grand jury was selected was not from the Western division where Mr. Huizar was indicted.

14

The Jury Plan, however, explains that litigants entitled to trial by jury "shall have the right to grand and petit juries selected at random from a fair cross section of the community *in the division* wherein the Court convenes." Jury Plan § 2 (emphasis added). The Central District of California is divided into three statutory divisions. These divisions are not simply the locations where courthouses sit—rather, they are meaningful political subdivisions. *Compare* 28 U.S.C. § 84(c) ("The Central District [of California] comprises 3 divisions," Eastern, Western, and Southern which each sit in different cities) *with id.* § 84(a) (explaining that the Northern District of California has no divisions but does have courthouses in three different cities). Accordingly, courts in this district have recognized that "the issue is whether the *division* . . . represents a cross section of the community." *United States v. Irurita-Ramirez*, 838 F. Supp. 1385, 1387 (C.D. Cal. 1993) (emphasis added). *See United States v. Rodriguez*, 924 F. Supp. 2d 1108, 1114 & 1123 (C.D. Cal. 2013) (considering "the absolute disparities in the Southern Division" and explaining that the Central District's Jury Plan functions on a divisional basis); *see also United States v. Cannady*, 54 F. 3d 544, 546-47 (9th Cir. 1995) (treating the "community" in question as the division); *United States v. Footracer*, 16 Fed. App'x 595 (9th Cir. 2001) (unpublished) (implicitly recognizing that a litigant may have a fair cross-section claim if transferred to a different division); *United States v. Tuttle*, 729 F.2d 1325, 1327 (11th Cir. 1984) (assessing fair cross section claim based division). Information regarding juror numbers of those who served on the grand jury that indicted Mr. Huizar would allow Mr. Huizar to determine if both divisions were in fact used as the evidence strongly suggests. Second Martin Decl. at ¶ 9. *Accord Sullivan*, 2020 WL 5944433, at *4 (granting request seeking juror numbers for grand jurors who returned the indictment because they provide direct insight into the manner the court selected, excused, deferred or disqualified jurors); *Cloud*, 2020 WL 4381608, at *5 (granting "request [for] the juror numbers of those who served on the grand jury that returned the indictments in this case").

15

The government asserts that it "does not read the facts" to support Mr. Huizar's contention that the Master Jury Wheel was selected from different divisions. The government does not point to any misreading or inconsistency with Mr. Huizar's interpretation of the Clerk of the Court's letter or the documents nor does it offer another interpretation of that evidence. Mr. Huizar has provided evidence, in the form of an expert declaration and samples of the excel spreadsheets provided by the Clerk of the Court, showing that the juror numbers in Mr. Huizar's "jury pools" also included jurors from the Southern Division. That evidence certainly "supports a belief" that the Clerk did not act in accordance with the Jury Plan.[6]

At this stage, Mr. Huizar need not establish that there has been a violation of the Jury Plan, that his motion will succeed, or that each document he seeks will be pertinent to the motion. *See, e.g.*, *Test*, 420 U.S. at 30 ("[W]ithout inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge."). Rather, the information Mr. Huizar seeks need only be potentially "necessary in the preparation or presentation of a motion" challenging the jury selection process. 28 U.S.C. §1867(f). This evidence is necessary for Mr. Huizar's potential motion and he is entitled to the information sought through this request.

**20. The attendance record and reason for absence by date of each grand juror who returned the Indictment in this case on November 12, 2020.**

Government Position

The government objects to this request. Defendant has articulated no legally cognizable justification for obtaining the sensitive grand jury material that he requests. Defendant's motion posits only that he seeks to determine "how or if" the COVID-19 pandemic impacted the composition of the grand jury that indicted him. It appears that

---

[6]Again, there is no presumption that the Clerk acted in accordance with the Jury Plan. *Supra* n.3.

16

defendant hopes to find support for a motion alleging that, in the grand jury voting on his indictment, members of certain demographic groups were absent or excused more often than people belonging to other demographic groups, which defendant might then ascribe to pandemic-related reasons.[7]  Such a motion would be destined to fail, because it is well settled that defendant is not entitled to an empaneled grand jury with any particular demographic characteristics:

> The Sixth Amendment imposes 'no requirement that [grand or] petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition.'

United States v. Mitchell, 502 F.3d 931, 951 (9th Cir. 2007) (quoting Taylor v. Louisiana, 419 U.S. 522, 538 (1975)).  Rather, defendant is entitled to a grand jury that was selected from a pool representing a fair-cross section of the community.  This grand jury was selected and empaneled in October 2019, months before the COVID-19 pandemic gained a foothold in the Central District of California in March 2020.  Thus, the pandemic cannot have had a "constitutionally or statutorily significant impact" on defendant's right to have the pool reflect a fair cross-section of the community — no matter what the demographic composition of his particular grand jury ultimately might have been.

Defendant relies on United States v. Sullivan, 2020 WL 5944433 (N.D. Cal. 2020), and United States v. Davis, 2020 WL 5653332 (D. Colo. 2020), as support for

---

[7] Defendant does not succinctly spell out the precise basis for his intended motion that he believes the grand jury attendance records would support.  To the extent that defendant may also seek to discern whether some grand jurors who voted to indict him were not present for every session preceding the indictment vote, that use would similarly fail to support his request.  Any such attendance pattern would provide him no basis for relief, because the sole attendance requirement — that a quorum was present for every grand jury session — was satisfied and is not in dispute.  United States v. Leverage Funding Systems, Inc., 637 F.2d 645 (9th Cir. 1980), cert. denied, 452 U.S. 961 (1980) ("An indictment is valid if (1) the grand jury returning the indictment consisted of between 16 and 23 jurors, (2) every grand jury session was attended by at least 16 jurors, and (3) at least 12 jurors vote to indict.  Nothing requires that every juror voting to indict attend every session.")

17

the proposition that attendance records are needed to shed light on whether his grand jury was drawn from a fair cross-section of the community.  Mot. at 8-9.  These cases do not help him.  In <u>Sullivan</u>, the motion and order were premised on the assumption that the grand jury was selected during the pandemic — which the grand jury here was not.  2020 WL 5944433 at *1; see also 3:20-CR-337-WHO, CR 20, at 1.  <u>Davis</u> similarly involved the mid-pandemic selection of trial jurors.  2020 WL 5653332 at *1. In stark contrast to those two cases, the process by which defendant's grand jury was selected in October 2019 could not possibly have been impacted by the pandemic, which began months later.  Indeed, defendant's motion indicates that, at best, any jury-composition arguments would pertain only to "*empaneled* grand jurors" and "after-empanelment" procedures.  Mot. at 9, 10 (emphasis in original).  Defendant has identified no non-frivolous legal theories that post-empanelment grand jury attendance records could possibly inform, and the government is aware of none.

To the extent that grand jury attendance and excusal records sought here would reveal the names of grand jurors, the Jury Plan is clear that this information "shall not be disclosed except on order of the Court."  Jury Plan § 8.  The Ninth Circuit has suggested (without deciding) that attendance records are protected by the doctrine of grand jury secrecy.  <u>In re Special Grand Jury (for Anchorage, Alaska)</u>, 674 F.2d 778, 782 (9th Cir. 1982) ("It would be reasonable to hold that [a request for attendance records and roll sheets] runs afoul of the doctrine of grand jury secrecy.").  Even if the names were redacted — a protective measure that defendant's request does not specifically seek — grand jury attendance records may still be subject to grand jury secrecy rules.  In <u>United States v. Fuentes</u>, 2008 WL 2557949, *3 (E.D. Cal. June 24, 2008), the court held that grand jury attendance records were covered by both Rule 6(e) and the broader doctrine of grand jury secrecy.  Noting that disclosure of attendance records could impede the freedom and integrity of the grand jury's deliberative process,

18

the court in <u>Fuentes</u> found that the defendant had "offered no practical need" for this information and denied the request.  <u>Id.</u>

Courts have repeatedly denied requests for grand jury attendance records absent a showing of particularized need for the information.  <u>United States v. Diaz</u>, 236 F.R.D. 470, 480 (N.D. Cal. 2006) (holding that "because the requested records of grand jury roll sheets, attendance information and utilization reports are not purely ministerial, defendants must demonstrate particularized need for disclosure"; finding that the requested records were protected by Rule 6(e); and denying requests because defendant had "not demonstrated any interest great enough to overcome the traditional interests of grand jury secrecy."); <u>Fuentes</u>, 2008 WL 2557949, *3 (holding that grand juror attendance records were "protected by both Rule 6(e) and general principles of grand jury secrecy," and denying request for such records where "counsel for defendants have offered no practical need for disclosure of such information"); <u>see also</u> <u>United States v. Garner</u>, 663 F.2d 834, 840 (9th Cir. 1981) (affirming denial of evidentiarily unsupported request for grand juror attendance records on defense theory that a quorum of grand jurors had not directly heard evidence on the indictment).

Because defendant has failed to demonstrate a particularized need, or indeed to show any legitimate purpose for the requested grand jury attendance and excusal records, his request should be denied.

Defendant's Response

The grand jury attendance records are necessary for Mr. Huizar's evaluation of a potential claim. Mr. Huizar does not need to meet some threshold showing of specificity to obtain the records sought here. The government cites cases concerning records that are covered by Federal Rules of Criminal Procedure Rule 6(e) and are inapposite.

The attendance records will assist Mr. Huizar in understanding how or if the COVID-19 pandemic affected the grand jury that indicted him. Specifically, attendance records would show whether grand jurors were excused after they were empaneled and

why, and whether new grand jurors (as opposed to alternates) were empaneled after the start of the grand jury proceedings. The government objects to this request because Mr. Huizar has not shown a particularized need for such information or a meritorious claim. No such showing is necessary. "Because the right of access to jury selection records is unqualified, a district court may not premise the grant or denial of a motion to inspect upon a showing of probable success on the merits of a challenge to the jury selection provisions." *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996). The statute creates "no basis to require a defendant to submit a sworn statement, much less to plausibly allege a violation of his right to a jury that represents a fair cross section of the community, when seeking to inspect jury records as an initial step in deciding whether to file a motion under the Act." *United States v. Bagcho*, 923 F.3d 1131, 1136 (D.C. Cir. 2019) (alteration and citations omitted). *See United States v. Williamson*, 903 F.3d 124, 133 (D.C. Cir. 2018) (district court erred in denying defendant access to jury commission record where the denial was based in part on defendant's failure to "plausibly allege a violation of his right to a jury that represents a fair cross section of the community"); *United States v. Curry*, 993 F.2d 43, 44 (4th Cir. 1993) (rejecting government's argument that defendant was "required to submit a sworn affidavit showing why the list would be necessary" and remanding to allow review of jury list and opportunity to move for new trial); *United States v. Lawson*, 670 F.2d 923, 926 (10th Cir. 1982) (remanding case where district court erred by denying motion to inspect and copy jury selection materials pursuant to § 1867(f)); *Government of Canal Zone v. Davis*, 592 F.2d 887, 889 (5th Cir. 1979) (reversing convictions and remanding where district court erred in denying defendant access to jury selection records and explaining that "whether or not the accompanying affidavit established a prima facie case of defective jury selection process is of no import" under *Test*).

To the extent that any showing must be made, the statute only contemplates that the records or papers are exempt from non-disclosure if they are exempt by the district

court plan or "*may* be necessary in the preparation or presentation of a motion" pursuant to the statute. 28 U.S.C. § 1867(f) (emphasis added). This condition is permissive and met here. Mr. Huizar has submitted an expert declaration stating the attendance records are necessary to his evaluation and preparation of a potential motion. *See* Martin Decl. at ¶ 2.

Although neither the statue nor caselaw contemplates a greater showing, Mr. Huizar has provided that, too. He has explained that the Jury Plan offers no information as to what the procedures are for excusing grand jurors once they are empaneled or if and how new grand jurors (as opposed to alternates) are chosen and empaneled after the grand jury proceedings have begun. *See* Motion at 7-8. He has spelled out that the attendance records would provide information about whether increased recusals during the pandemic systematically caused distinctive groups to be excluded or replaced over this extended period in a manner that violated his rights. *Id.* at 7.

Whether the "determination of juror disqualifications, excuses, exemptions, and exclusions" of the empaneled grand jury was done "on the basis of objective criteria only," *United States v. Goodlow*, 597 F.2d 159, 162 (9th Cir. 1979), or new grand jurors were from "random selection," *id.*, implicates the district's compliance with the JSSA. No information is available as to how empaneled grand jurors are excused after grand jury proceedings begin. And if new grand jurors were empaneled after grand jury proceedings began, Mr. Huizar has a right to probe the pandemic's impact on the pool from which those new jurors were selected. In other words, it is not the case that "the process by which defendant's grand jury was selected in October 2019 could not possibly have been impacted by the pandemic," if new, replacement jurors were chosen from a pool compiled during the pandemic or if the criteria for excusal of the grand jurors was not objective or was itself impacted by the pandemic. The attendance records would reveal whether the degree of grand juror excusals or empanelment of new grand jurors

21

raise a specter of substantial violation of the JSSA such that more information about those processes would be necessary.

The government's cited cases requiring a showing of particularized need are inapposite. In *United States v. Garner*, 663 F.2d 834 (9th Cir. 1981), for example, the defendant sought attendance records to show that a quorum did not directly hear the evidence. *Id.* at 840. The court denied that request because the district court had already "ordered full disclosure of all testimony given before the grand jury," and the record "establish[ed] that the grand jurors who voted for the indictment had before them a complete transcript of all testimony taken by the previous grand jurors regarding the matter." *Id.* In other words, the attendance records were unnecessary. *United States v. Fuentes*, 07-cr-00248-WBS, 2008 WL 2557949 (E.D. Cal. 2008), also misses the mark. There, the defendant sought attendance records not through his right under the Jury Plan, JSSA, or the Constitution, but pursuant to the *public's* right of access to court records. *Id.*, Docket Entry 192 at 3; *id.* at 6 (characterizing records as ministerial court "records mandated under Rules 6(b)(2), 6(c), 6(d), and 6(f)"). The *Fuentes* court did not have occasion to determine whether the attendance records were "records or papers" covered by the statute or whether the defendant's individual and "unqualified" right pursuant to the JSSA or the Constitution warranted disclosure. The government's reliance on *United States v. Diaz*, 236 F.R.D. 470 (N.D. Cal. 2006) is similarly inapt. *See id.* at 480-81 (discussing disclosure of "nonministerial" grand jury records pursuant to Rule 6 and explaining that "[d]efendants may access nonministerial records upon a showing of need" that would "overcome the traditional interests of grand jury secrecy").

As the government notes, this Circuit has not held that attendance records are protected by grand jury secrecy but has posited attendance records might reasonable be protected. This Court should not heed that suggestion. Attendance records are not the sort of documents requiring protection. In *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983), the Supreme Court explained that protecting the secrecy of "grand jury

proceedings" is necessary in order to ensure that witnesses come forward voluntarily and "testify fully and frankly"; that those targeted by the grand jury's investigation neither flee nor influence grand jurors' votes; and that those who the grand jury declines to prosecute are not publicly shamed for having been accused of wrongdoing. *Id.* at 424 (internal quotation marks omitted). Disclosure of attendance records like those sought here implicates none of those concerns and do not threatened the secrecy of the proceedings. *See also* Wright & Miller, 1 Fed. Prac. & Proc. Crim. § 106 (4th ed. 2020) ("material or information that would not tend to reveal what took place in the grand jury room or is derived independently from the grand jury process typically is not covered" by Rule 6(e)).

Mr. Huizar is entitled to the attendance records requested here. Mr. Huizar has shown that this information is necessary (and at a minimum "may be necessary") to his evaluation and preparation of a motion pursuant to the JSSA.