Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Attorney for Defendant
Shen Zhen New World I, LLC

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOSE LUIS HUIZAR, ET AL.,<br><br>                    Defendants. | CR-20-326(A)-JFW<br><br>**DEFENDANT SHEN ZHEN NEW WORLD I, LLC'S NOTICE OF MOTION; MOTION TO SEVER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing Date: October 15, 2021**<br>**Hearing Time: 9:00 a.m.** |

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

        PLEASE TAKE NOTICE that on October 15, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, defendant Shen Zhen New World I, LLC will move this Honorable Court for a severance of its trial from that of the co-defendants, pursuant to Rule 14 of the Federal Rules of Criminal Procedure.

1        This Motion is based on the attached Memorandum of Points and

2   Authorities, all pleadings and files in this matter, and such evidence and argument

3   as may presented at the hearing on this motion.

4

5                                Respectfully submitted,

6   Dated: August 9, 2021          **LAW OFFICES OF RICHARD M.**

7                                **STEINGARD**

8

9

10                    By:   /s/ Richard M. Steingard

11                         Richard M. Steingard
                           Attorney for Defendant

12                         **SHEN ZHEN NEW WORLD I, LLC**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.   LEGAL FRAMEWORK ........................................................................................2

III.   FACTUAL AND PROCEDURAL BACKGROUND ...................................5
      A.   Count 1–RICO .................................................................................6
      B.   Count 2 - 17–Honest Services Fraud ...................................10
      C.   Count 18 - 21–Travel Act Violations ..................................12
      D.   Count 22 - 23–Federal Program Bribery .............................13
      E.   Count 22, 24 - 41–Bribery, Money Laundering,
          Obstruction of Justice, False Statements,
          Loan Fraud, and Tax Evasion ..............................................13

IV.   ARGUMENT ........................................................................................................14
      A.   Jury's ability to compartmentalize evidence .......................16
      B.   Use of limiting instructions ....................................................17
      C.   Nature of evidence and legal concepts involved .................20
      D.   Possibility of unreliable verdict ...........................................21

V.   CONCLUSION ....................................................................................................23

1

# TABLE OF AUTHORITIES

2

3  <u>**FEDERAL CASES**</u>

4

5  *Bruton v. United States,*
   391 U.S. 123 (1968)....................................................................20, 22

6

7  *Citizens United v. FEC,*
   558 U.S. 310 (2010)..............................................................................3

8

9  *Kelly v. United States,*
   140 S.Ct. 1565 (2020).........................................................................2

10

11  *McDonnell v. United States,*
   136 S.Ct. 2355 (2016) ............................................... 2-4, 18, 22

12

13  *Nash v. United States,*
   54 F.2d 1006 (2d Cir. 1932)..............................................................18

14

15  *McCutcheon v. FEC,*
   572 U.S. 185 (2014)..............................................................................3

16

17  *Skilling v. United States,*
   561 U.S. 358 (2010)..............................................................................2

18

19  *United States v. Baker,*
   10 F.3d 1374 (9th Cir. 1993) .............................................................21

20

21  *United States v. Blankenship,*
   382 F.3d 1110 (11th Cir. 2004) ........................................................21

22

23  *United States v. Cassano,*
   132 F.3d 646 (11th Cir. 1998) ..........................................................21

24

25  *United States v. DeRosa,*
   670 F.2d 889 (9th Cir. 1982) ............................................................23

26

27  *United States v. Donaway,*
   447 F.2d 940 (9th Cir. 1971) .............................................. 15-16

28

LAW
OFFICES OF
RICHARD M.
STEINGARD

*United States v. Fernandez,*
    388 F.3d 1199 (9th Cir. 2004) ........................................................ 15-16, 23

*United States v. Gallo,*
    668 F.Supp. 736 (E.D.N.Y. 1987) ........................................................ 21-23

*United States v. Garner,*
    837 F.2d 1404 (7th Cir. 1987) ...............................................................22

*United States v. Hernandez-Orellana,*
    539 F.3d 994 (9th Cir. 2008) ..................................................................14

*United States v. Johnson,*
    820 F.2d 1065 (9th Cir. 1987) ...............................................................14

*United States v. Lewis,*
    787 F.2d 1318 (9th Cir. 1985) ...............................................................19

*United States v. Mayfield,*
    189 F.3d 895 (9th Cir. 1999) ..................................................................15

*United States v. Miller,*
    874 F.2d 1255 (9th Cir. 1988) ...............................................................19

*United States v. Nordby,*
    225 F.3d 1053 (9th Cir. 2000) ...............................................................21

*United States v. Sampol,*
    636 F.2d 621 (D.C. Cir. 1980) ...........................................................19, 21

*United States v. Sullivan,*
    522 F.3d 967 (9th Cir. 2008) ..................................................................16

*United States v. Sun-Diamond Growers of California,*
    526 U.S. 398 (1999).................................................................................2

*United States v. Vaccaro,*
    816 F.2d 443 (9th Cir. 1987) ..................................................................14

LAW
OFFICES OF
RICHARD M.
STEINGARD

*United States v. Weatherspoon,*
   410 F.3d 1142 (9th Cir. 2005) ....................................................................19

*Zafiro v. United States,*
   506 U.S. 534 (1993)........................................................... 14-15, 22

## **CALIFORNIA PENAL CODE**

Cal. Penal Code § 67............................................................................ 20

Cal. Penal Code § 67.5......................................................................... 20

Cal. Penal Code § 68............................................................................ 20

## **FEDERAL RULES OF CRIMINAL PROCEDURE**

Rule 14 ..................................................................................... 14-15

## **FEDERAL STATUTES**

18 U.S.C. § 201 .................................................................................. 2

18 U.S.C. § 666 ................................................................................. 20

18 U.S.C. § 1343 ................................................................................ 3

18 U.S.C. § 1346 ................................................................................ 2

18 U.S.C. § 1349 ................................................................................ 3

LAW
OFFICES OF
RICHARD M.
STEINGARD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## __INTRODUCTION__

Defendant Shen Zhen New World I, LLC ("SZNW") brings this motion to sever its trial from that of its co-defendants. The nature of the case and the manner in which it is charged make a joint trial of all defendants impractical, unmanageable, and, from an evidentiary standpoint, virtually impossible for a jury to follow.

The 138-page, 41-count First Superseding Indictment ("FSI") charges two defendants—Jose Huizar and Raymond Chan—with one count of violating the Racketeer Influenced and Corrupt Organization ("RICO") statute, as well as innumerable bribery schemes, false statements, loan fraud, tax evasion, structuring and money laundering. Two other defendants—Dae Yong Lee and 940 Hill, LLC—are charged along with Huizar and Chan in another standalone bribery scheme. For its part, SZNW is alleged to have been engaged in one pay-to-play bribery scheme concerning the building of a 77-story tower at the site of the LA Grand Hotel. The FSI charges SZNW with this singular scheme in three Honest Services Fraud counts, four Travel Act violations, and one Federal Program Bribery count.

As the charges suggest, the allegations against the different defendants concern unrelated alleged schemes and are only joined together by a single common denominator: a connection to Jose Huizar. Even still, none of the counts charge all the defendants, the vast majority of the allegations do not concern SZNW, and most of the government's evidence is inadmissible against SZNW. Indeed, because the government lacks evidence showing a *quid pro quo* arrangement between Huizar and Wei Huang or SZNW, its case against SZNW rests largely on its desire to present inadmissible evidence of *other* alleged bribery schemes against *other* developers. By showing the jury that *other* developers paid

LAW
OFFICES OF
RICHARD M.
STEINGARD

1    Huizar bribes to benefit *their* projects, the government hopes to fill its *quid pro quo*
2    void with SZNW by arguing or implying that Wei Huang and SZNW *must* have
3    done the same.  The evidence of these other bribery schemes is prejudicial
4    propensity evidence that would not be admitted into evidence if SZNW was tried
5    alone, which is precisely why the government wants a joint trial.

6        Limiting instructions at a joint trial are not a realistic option, as SZNW's
7    counsel would continuously be asking the Court to instruct the jury <u>not</u> to consider
8    most of the government's evidence, testimonial and otherwise.  Because of the
9    vastness of the government's case, it is unreasonable to ask or expect the jury to
10   follow such instructions, isolate SZNW from the evidence against the other
11   defendants, compartmentalize the different schemes, understand the various
12   statutes at issue with no taint or spillover.  For these reasons and those that follow,
13   SZNW requests a severance from the trial of its co-defendants.

## II.

## LEGAL FRAMEWORK

16       In the last two decades, the Supreme Court has repeatedly addressed the
17   requirements of federal anti-corruption provisions, each time narrowing the
18   statutes' reach.  *See, e.g.*, *United States v. Sun-Diamond Growers of California*,
19   526 U.S. 398, 409, 414 (1999) (federal bribery pursuant to 18 U.S.C. §
20   201(c)(1)(A) requires a link between things of value conferred upon a public
21   official and a specific "official act" for or because of which it was given); *Skilling*
22   *v. United States*, 561 U.S. 358, 408 (2010) (honest services under 18 U.S.C. § 1346
23   is limited in its application to bribery and kickback schemes); *McDonnell v. United*
24   *States,* 136 S.Ct. 2355, 2371-72 (2016) (tightening definition of "official act" in an
25   honest services fraud prosecution); *Kelly v. United States*, 140 S.Ct. 1565, 1568
26   (2020) (bridge closing scheme aimed at punishing a political adversary not a
27   violation of federal program fraud or wire fraud laws because the scheme did not
28   aim to obtain money or property).

1    Likewise, during the same time period, the Supreme Court has also
2    addressed the importance of the *quid pro quo* requirement in the First Amendment
3    context.  The Court has consistently emphasized that while the government can
4    forbid true corruption – that is, the "direct exchange of an official act for money" –
5    it "may not target … the political access such [financial] support may afford."
6    *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014).  Rather, only payments "to control
7    the exercise of an officeholder's official duties" warrant intervention. *Id.* at 207.
8    That is because "[i]ngratiation and access … are not corruption."  *Citizens United*
9    *v. FEC*, 558 U.S. 310, 360 (2010).  In other words, paying for "access"— the
10   ability to get a call answered or a meeting scheduled is constitutionally protected
11   speech and an intrinsic part of our political system.  *McCutcheon,* 185 U.S. at 207-
12   208.

13   In one of the Court's more recent cases, *McDonnell v. United States,* the
14   government charged the former Governor of Virginia and his wife with a bribery
15   scheme – in exchange for loans, gifts, and other benefits received from the CEO of
16   a dietary supplement company, the Governor agreed to perform "official acts" such
17   as arranging meetings, hosting events at the Governor's mansion, and contacting
18   government officials to promote the products of the company.  136 S.Ct. at 2361.
19   The benefits received included private plane flights, ball gowns, a Rolex, the use of
20   a Ferrari, and substantial personal loans—what the Court called a "tawdry tale[] of
21   Ferraris, Rolexes, and ball gowns."  *Id.* at 2375.

22   McDonnell and his wife were convicted of honest services fraud under 18
23   U.S.C. §§ 1343 and 1349.  *Id.* at 2365.  In a unanimous opinion, the Court reversed
24   the convictions and found that the Governor's acts were in fact commonplace for
25   an elected official, and that a criminal prosecution based on such conduct
26   potentially rendered the "official act" element superfluous by capturing "nearly
27   any activity by a public official."  *Id.* at 2368, 2374.  Specifically, the Court
28   pointed to potential constitutional violations with the government's broad

interpretation of the statutes: "[in] the Government's view, nearly everything a public official accepts – from a campaign contribution to lunch – counts as a *quid;* and nearly everything a public official does – from arranging a meeting to inviting a guest to an event – counts as a *quo*." *Id.* at 2372.  The Court worried this would have a chilling effect:

> But conscientious public officials arrange meetings for constituents, contact other officials on their behalf, and include them in events all the time. The basic compact underlying representative government assumes that public officials will hear from their constituents and act appropriately on their concerns – whether it is the union official worried about a plant closing or the homeowners who wonder why it took five days to restore power to their neighborhood after a storm. The Government's position could cast a pall of potential prosecution over these relationships if the union had given a campaign contribution in the past or the homeowners invited the official to join them on their annual outing to the ballgame. Officials might wonder whether they could respond to even the most commonplace requests for assistance, and citizens with legitimate concerns might shrink from participating in democratic discourse.

*Id.*  The Court also noted that the government's interpretation created vagueness issues – "[i]nvoking so shapeless a provision to condemn someone to prison for up to 15 years raises the serious concern that the provision does not comport with the Constitution's guarantee of due process" – as well as "significant federalism concerns" by interfering with "the prerogative [of the states] to regulate the permissible scope of interactions between state officials and their constituents."  *Id.* at 2373 (internal citations omitted).

As in *McDonnell*, the government lacks evidence in this case of a viable "official act" with regard to SZNW.  The various acts which the FSI alleges meet the "*quo*" requirement either: (1) do not qualify as a "decision or action on any question, matter, cause, suit, proceeding, or controversy" as required by

*McDonnell;* or (2) were neither requested by Wei Huang or SZNW, nor promised or committed by Huizar.  For example, the first category would include Wei Huang's request to Huizar for the names of possible land use consultants and Huizar's subsequent recommendations; Huang's inquiries to Huizar about various zoning and labor issues, and Huizar arranging meetings with the appropriate officials; and Huang's request for a letter of recommendation to a college for his son and Huizar's drafting of such a letter.  These are typical matters of concern for a local businessman which are routinely acted on by elected officials such as a city council member.

On the other hand, the second category would include the FSI's allegations that Huizar presented motions and resolutions in committees to benefit the L.A. Grand Hotel Project, voted on the L.A. Grand Hotel Project in various city committees such as the PLUM Committee and City Council, took action in the PLUM Committee to expedite the approval process of the L.A. Grand Hotel Project, and exerted pressure on other city officials to influence the approval process of the L.A. Grand Hotel Project (although some check both boxes).  There is no evidence that Wei Huang requested this conduct, or that Huizar, Esparza, Chan or anyone else promised, agreed to, or executed such actions.

To make up for this glaring deficiency in its case, the FSI attempts to connect SZNW to the allegations against other completely unrelated Chinese developers against whom it <u>may</u> have actual evidence of a *quid pro quo*, be it bags of cash, promises of favoritism, or votes in favor of a project.  The government's aim is to lead the jury to conclude that Huizar, Esparza, Chan, Huang, and SZNW *must* have behaved similarly.  A severance will prevent the government from proceeding in this manner.

///

///

///



# III.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 2020, a federal grand jury issued a First Superseding Indictment ("FSI") alleging 41 counts against six defendants.[1]  Because of the Court's familiarity with the case, and for the sake of brevity, we discuss the lengthy FSI in the most general terms.

### A. Count 1—RICO

Although SZNW is not charged in the RICO count, we review it here because, according to the government, it contains an outline of its case against all defendants.  It also provides the Court with a measure of the extraordinarily broad scope of the government's allegations and evidence.

The RICO count contains 452 overt acts ("OA") spanning a period of at least eight years, broken into nine sections that concern Huizar's and/or Chan's alleged participation in a criminal enterprise.  The various sections include numerous pay-to-play bribery schemes—only one of which concerns SZNW—as well as money laundering, loan fraud, tax evasion, obstruction of justice, witness tampering, and false statements to the government, none of which directly apply to SZNW.  The alleged bribery schemes are all overlapping, but each has its own unique fact pattern and participants: one addresses SZNW, another defendants Lee and 940 Hill LLC, while the others concern non-defendant entities or individuals.

As can best be determined, defendant Huizar is the sole connection between the many schemes which otherwise involve different combinations of defendants, uncharged companies and individuals, government cooperators, and prospective witnesses.  The chart below provides an overview of the RICO count:

//

//

//

---

[1]     Defendant Wei Huang is not before the Court.

LAW
OFFICES OF
RICHARD M.
STEINGARD

| Scheme | Overt Acts | Defendants | Alleged Scheme |
|--------|-----------|-----------|----------------|
| 1 | 1-84 | Huizar Chan SZNW | <u>L.A. Grand Hotel Bribery Scheme</u> *Discussed below* |
| 2 | 85-118 | Huizar Chan Lee 940 Hill | <u>940 Hill Bribery Scheme</u> Defendants Lee and 940 Hill LLC, along with Justin Kim, allegedly paid a $500,000 bribe to Huizar and Esparza in exchange for getting a union appeal dismissed which was impeding a development project called the 940 Hill Project[2] |
| 3 | 119-240 | Huizar Chan | <u>Luxe Hotel Bribery Scheme</u> Jia Yuan USA Co. and Chairman Fuer Yuan allegedly bribed Huizar, Chan, and George Chiang in exchange for their assistance in expediting the approval process for the Luxe Hotel Project[3] |
| 4 | 241-300 | Huizar Chan | <u>Project M Bribery Scheme</u> Company M and several individuals allegedly bribed Huizar in exchange for his assistance in the approval process for a project in the Arts District |

---

[2]      Justin Kim pled guilty to one count of federal program bribery, while George Esparza pled guilty to one RICO count.  Both are cooperating with the government in the hopes of leniency and are awaiting sentencing.

[3]      George Chiang pled guilty to one RICO count, is cooperating with the government in the hope of leniency and is awaiting sentence.  Jia Yuan USA Co, entered into a non-prosecution agreement with the government which required that it pay a fine of approximately $1 million.

LAW OFFICES OF RICHARD M. STEINGARD

| 5 | 301-339 | Huizar Chan | Businessperson A Scheme<br>Businessperson A allegedly bribed Huizar and Esparza in exchange for Huizar promoting Businessperson A's business |
|---|---------|-------------|------------------------------------------------------------------|
| 6 | 340-361 | Huizar Chan | Additional Pay-to-Play Schemes<br>Numerous individuals and entities were allegedly involved in pay-to-play schemes with Huizar concerning development projects and businesses |
| 7 | 361-428 | Huizar | Defendant Huizar's Concealment of Illicit Benefits<br>Huizar and Esparza allegedly attempted to conceal benefits received from Wei Huang concerning a trip to Australia; Huizar allegedly laundered the funds from his trips to Las Vegas with Wei Huang through family members |
| 8 | 429-445 | Huizar | Additional Concealment of Pay-to-Play Schemes<br>Huizar and Esparza allegedly made additional efforts to conceal their activities |
| 9 | 446-452 | Huizar Chan | Obstructionist Conduct<br>Huizar and Chan allegedly attempted to affect witnesses' testimony and allegedly made false statement to government agents |

Regarding SZNW, the FSI alleges it engaged in the "L.A. Grand Hotel Bribery Scheme," a reference to Wei Huang's and SZNW's proposal to build a 77-story tower adjacent to the LA Grand Hotel (commonly referred to as the "Tower Project").  At its essence, the FSI claims that Wei Huang and, by association, SZNW, bribed Huizar and/or Esparza by (a) giving them all-expenses-paid trips to

LAW OFFICES OF RICHARD M. STEINGARD

gamble in Las Vegas (OA 3-22), and (b) agreeing to provide a bank with collateral so that Huizar qualified for a loan to settle a sexual harassment lawsuit against him (OA 23-49).  In exchange, Huizar allegedly provided Huang and SZNW with favorable treatment for the Tower Project or agreed to do so.

As to the *quid pro quo* and "official acts" for the "L.A. Grand Hotel Bribery Scheme," the FSI is rather circumspect.  As the government knows, most – but not quite all – of the so-called bribes to Huizar occurred long before Huang and SZNW contemplated the construction of such a project, including the majority of the Las Vegas trips and Wei Huang's assistance to Huizar with the loan.  Further, there are relatively few overt acts in the RICO count that reference the Tower Project.  For instance, (1) Overt Act 68 alleges that a former employee of SZNW told Esparza that Wei Huang would "lay out 'everything in front of' defendant Huizar" on a proposed trip to Mexico – a trip that Huizar did not attend – which the FSI assumes concerned the Tower Project; (2) Overt Act 69 claims that Esparza told a "city staffer" that Huang had "leverage" over Huizar, which the FSI also assumes is related to the Tower Project; and (3) Overt Act 70 states that an SZNW employee attempted to arrange a meeting between Huang, Huizar and Huizar's staff to discuss the Tower Project, to which Huizar responded that he would prefer to first have dinner with Wei Huang.  By any standard, these allegations and others in the RICO count fail to allege a *quid pro quo*, any "official acts", or any illegal conduct.[4]

In contrast, the FSI includes numerous overt acts that reference *legal* "requests" that Wei Huang and, by association, SZNW, allegedly made to Huizar and Esparza.  (OA 50-70.)  These include an SZNW employee asking Huizar for assistance in aiding another employee to obtain a visa, Huang's request to Huizar if

---

[4]      As we discuss below, the substantive counts against SZNW add little to the government's *quid pro quo* theory.

he would write a letter supporting his son's application to a college, an SZNW employee's request for Huizar to arrange a meeting with union representatives to resolve a labor dispute, and Huang's inquiry to Huizar for any recommended land use consultants.  (OAs 50, 52, 53, and 60, respectively.)  As the Supreme Court has held, these requests and the others in the RICO count are of the type that elected officials are routinely called upon to perform and do not qualify as an "official act."  *McDonnell,* 136 S.Ct. at 2370-71.

The list of Huang's "requests" also includes that in April 2014, "Huizar introduced and signed a resolution before the City Council recognizing Huang for his achievements and contributions to the economy of CD-14, which the City Council adopted and signed."  (OA 55.)  But the FSI does not allege that Wei Huang *requested* this resolution. Further, as the Court already observed, a City Council resolution is hardly a "real benefit" for which someone would "pay [] thousands and thousands of dollars…" (Reporter's Transcript, Aug 5, 2020 at 43-44).[5]

Lastly, the overt acts in the SZNW-related section allege political donations involving Huizar, Chan, Esparza, Wei Huang, SZNW, and others.  (OA 71-84.) Yet, the FSI does not charge Huizar, Huang, SZNW or anyone else with illegal campaign contributions; and the substantive charges against Huang and SZNW do

---

[5]     To the Court's point, on the same day that Huizar sought a resolution commending Wei Huang for his contributions to the city, the members of the LA City Council presented and adopted *18* other resolutions, including such inauspicious events as: (1) declaring it "renter's day;" (2) recognizing a group called Military on Motorcycle Safety (M.O.M.S.); (3) naming a street intersection the Jesse Allen Wilkes Memorial Intersection; (4) declaring May 4, 2014 to be LA Union Station Day; (5) thanking a group called Fiesta Broadway (sponsored by Councilmember Huizar); (6) recognizing Steven Rosenthal for being named California Lawyer of the Year by *California Lawyer* magazine; (7) congratulating news reporter Bill Whitaker on his selection to be a host on the TV show *60 Minutes*; and (8) recognizing volunteers who work at the LA Public Library. http://clkrep.lacity.org/onlinedocs/2014/14-0004-S1_misc_04-23-14.pdf.

not allege that they gave campaign contributions to Huizar in exchange for favorable treatment towards the Tower Project.

**B. Counts 2 – 17—Honest Services Fraud**

The Honest Services Fraud counts largely track the RICO count's overt acts. No single count charges all the defendants. Instead, the various counts charge different defendants with different alleged acts, as indicated in the chart below:

| Count | Defendant | Alleged Acts |
|:-----:|:---------:|:-------------|
| 2 | Huizar, Chan & SZNW | LA Grand Hotel Project<br>$570,000 bank wire from Huizar's Wells Fargo account to pay lawsuit settlement |
| 3 | Huizar, Chan & SZNW | LA Grand Hotel Project<br>Email from Huang forwarded by Executive Director E to Huizar |
| 4 | Huizar, Chan & SZNW | LA Grand Hotel Project<br>Email from Huizar to Executive Director E providing recommendations for consultants |
| 5 | Huizar, Lee, & 940 Hill | 940 Hill Project<br>Email from Justin Kim to Esparza with copy of labor union appeal |
| 6 | Huizar | Luxe Hotel Project<br>Wire bank transfer of $11,000 from Canadian Bank to Union Bank in Pasadena, California |
| 7 | Huizar | Luxe Hotel Project<br>Wire bank transfer of $11,000 from Canadian bank to Union Bank in Pasadena, California |

| 8 | Huizar | <u>Luxe Hotel Project</u><br>Wire bank transfer of $11,000 from Canadian Bank to Union Bank in Pasadena, California |
|---|---|---|
| 9 | Huizar | <u>Luxe Hotel Project</u><br>Wire bank transfer of $11,000 from Canadian Bank to Union Bank in Pasadena, California |
| 10 | Huizar | <u>Luxe Hotel Project</u><br>Wire bank transfer of $11,000 from Canadian Bank to Union Bank in Pasadena, California |
| 11 | Huizar | <u>Luxe Hotel Project</u><br>Wire bank transfer of $11,000 from Canadian Bank to Union Bank in Pasadena, California |
| 12 | Chan | <u>Luxe Hotel Project</u><br>Wire bank transfer of $36,432.74 from Synergy Chase Bank to Chan's East West Bank account |
| 13 | Chan | <u>Luxe Hotel Project</u><br>Bank wire of $33,507.23 from Synergy Chase Bank account to Chan's East West bank account |
| 14 | Huizar & Chan | <u>Luxe Hotel Project</u><br>Email from Esparza to Huizar |
| 15 | Huizar & Chan | <u>Luxe Hotel Project</u><br>Email from Huizar to his fundraiser |
| 16 | Huizar | <u>Businessperson A</u><br>Mailing of an envelope with check in the amount of $25,000 to PAC B |

LAW
OFFICES OF
RICHARD M.
STEINGARD

| 17 | Huizar | Businessperson A<br>Mailing of an envelope containing two checks to PAC A |
|---|---|---|

As to the alleged *quid pro quo* for the Honest Services Fraud counts, the introduction to these counts cites the following "official acts" as applicable to *all defendants*: "(1) presenting motions and resolutions in various City committees to benefit projects; (2) voting on projects in various City committees, including the PLUM Committee, and City Council; (3) taking, or not taking, action in the PLUM Committee to expedite or delay the approval process and affect project costs; (4) exerting pressure on other City officials to influence the approval process of projects; (5) using their office to negotiate with and exert pressure on labor unions to resolve issues on projects; (6) leveraging voting and scheduling power to pressure developers with projects pending before the City to affect their business practices; and (7) introducing or voting on City resolutions to enhance the professional reputation and marketability of businesspersons in the City." (Count 2-17, ¶ 45b.)[6]

## C. Counts 18 - 21—Travel Act Violations

Count 18 alleges that in January 2016, Wei Huang and SZNW gave Huizar benefits in the form of group expenses and Australian currency.  Count 19 alleges in April and May 2016, Wei Huang and SZNW gave Huizar benefits in the form of group expenses and gambling chips in Las Vegas.  Count 20 alleges that in August 2016, Wei Huang and SZNW gave Huizar benefits in the form of additional group expenses and gambling chips in Las Vegas.  As to all three counts, the FSI charges that Wei Huang and SZNW did so "in exchange for defendant Huizar agreeing to

---

[6]     When SZNW's counsel sought clarification of which of these acts applied to SZNW, the government responded by advising counsel to look at the overt acts in the RICO count.  As discussed above, the overt acts in the RICO count that reference the Tower Project do not constitute "official acts."

perform official acts to benefit the LA Grand Hotel Project."  In charging these three counts, the FSI does not identify the "official acts" that Huizar purportedly agreed to perform.

### D. Counts 22 - 23—Federal Program Bribery

Count 23 claims that SZNW conferred benefits or, as per the FSI, bribes to Huizar during the Las Vegas trips and through a loan to Huizar.  The FSI claims that in exchange for the alleged benefits, Chairman Huang and SZNW "intend[ed] to influence and reward Huizar in connection with the L.A. Grand Hotel Project, including: (1) presenting motions and resolutions in various City committees to benefit the L.A. Grand Hotel Project; (2) voting on the L.A. Grand Hotel Project in various City committees, including the PLUM Committee, and City Council; (3) taking action in the PLUM Committee to expedite the approval process of the L.A. Grand Hotel Project; and (4) exerting pressure on other City officials to influence the approval process of the L.A. Grand Hotel Project." (Count 23.)  Once again, there is no evidence that Wei Huang or SZNW requested any such actions from Huizar, Huizar promised any of these alleged actions, or that these acts ever occurred.

### E.  Counts 22, 24 - 41—Bribery, Money Laundering, Obstruction of Justice, False Statements, Loan Fraud, and Tax Evasion

Counts 24-41 do not charge SZNW.  Rather, they contain a slew of charges against the co-defendants, including bribery, money laundering, obstruction of justice, false statements, loan fraud, and tax evasion, as indicated in the chart below:

| Counts | Defendants | Charge |
|--------|------------|--------|
| 24 | Huizar | Soliciting a bribe in exchange for official acts relating to the 940 Hill Project |
| 25 | Lee & 940 Hill LLC | Paying a bribe in exchange for official acts relating to the 940 Hill Project |

| 26-30 | Huizar (all counts) & Chan (count 27 only) | Soliciting bribe in exchange for official acts relating to various development projects |
|---|---|---|
| 31-35 | Huizar | Money laundering |
| 36 | Huizar | Structuring cash transactions to evade the CTR reporting requirements |
| 37 | Huizar | False statement in a loan application |
| 38 | Lee & 940 Hill LLC | Obstruction of Justice |
| 39 | Huizar | False statement to a government agent |
| 40 | Chan | False statement to a government agent |
| 41 | Huizar | Tax evasion |

The FSI concludes with six separate forfeiture allegations under six different statutes, each one addressing different counts and applying to different defendants.

## IV.

## **ARGUMENT**

Rule 14 (a), Federal Rules of Criminal Procedure, provides, in relevant part, "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

The Court has "wide discretion in ruling on a severance motion." *United States v. Vaccaro*, 816 F.2d 443, 449 (9th Cir. 1987) (overruled on other grounds); *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987). For judicial efficiency purposes, severance motions are disfavored. *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008), citing *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (finding that there is a "preference for joint trials where defendants have been jointly indicted"). Nonetheless, "[t]he court must weigh, case by case, the advantage and economy of a joint trial to the

LAW OFFICES OF RICHARD M. STEINGARD

administration of justice against possible prejudice to a defendant." *United States v. Donaway*, 447 F.2d 940, 943 (9th Cir. 1971).

"Although joinder is generally favored because it promotes efficiency, Rule 14 provides that the trials may be severed when it is apparent that a joint trial would cause prejudice." *United States v. Mayfield*, 189 F.3d 895, 899 (9th Cir. 1999) (reversing district court's denial of severance motion). Thus, a severance is appropriate

> if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.

*Zafiro*, 506 U.S. at 539.

The Ninth Circuit applies a four-part test to assess the prejudicial effect of a joint trial, asking:

> (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant;
> (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used;
> (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and
> (4) whether [defendants] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004). Of these four considerations, "the most important factors are whether the jury can

compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury." *United States v. Sullivan*, 522 F.3d 967, 981-982 (9th Cir. 2008); *Fernandez*, 388 F.3d at 1241.  In the instant case, an examination of the four factors supports a severance.

### A. <u>Jury's Ability to Compartmentalize Evidence</u>

The first factor, the jury's ability to collate and appraise the evidence against each defendant, favors a severance.  The government's case against the various defendants would be difficult, if not impossible, for a jury to understand and compartmentalize during a joint trial.  All the alleged schemes are complex and temporally overlapping.  Each has various players, events, statements, and documents, but the time periods intersect , thus making a coherent, separate assessment of each scheme virtually impossible.  The Ninth Circuit has noted that joinder is appropriate where co-defendants are charged with conspiracy or RICO charges, as much of the same evidence will be admissible against each of them; even if there is evidence involving only one defendant, it is still relevant to the scope of the agreement or enterprise.  *Fernandez*, 388 F.3d at 1242.  But, here, this reasoning cuts the other way, where the RICO count only charges Huizar and Chan, and the counts against SZNW are all substantive violations.  Because the SZNW charges relate to only one alleged scheme, the great majority of the government's evidence of other schemes is necessarily unrelated to SZNW. *See Donaway*, 447 F.2d at 943 (holding that district court abused its discretion in refusing to grant defendant's motion for severance where the great majority of evidence introduced at the joint trial related only to other defendants).

In fact, in presenting its case against SZNW, the government is counting on its ability to present inadmissible evidence of other alleged bribery schemes. More specifically, the government seeks to show that *other* developers – Chinese and otherwise, charged and uncharged – paid Huizar bribes and provided him with benefits with the expectation that Huizar would commit "official acts" to benefit

*their* projects, and that Huizar in fact promised to commit or engaged in "official acts" for these *other* developers.  In this manner, the government invites the jury to conclude that, like the other developers and schemers, Huang and SZNW *must* have had an improper or corrupt intent in providing benefits to Huizar, *must* have had an expectation that Huizar would perform or agree to perform an "official act" on its project in exchange for the benefits, and Huizar *must* performed or agreed to perform "official acts" in connection with the Tower Project.  This is not proof; it is innuendo, implication, and inadmissible propensity evidence.

## B. Use of Limiting Instructions

The second factor, whether the Court can meaningfully instruct the jury on the admissibility of evidence against a particular defendant, also favors a severance.  Because of the way the case is charged, virtually *all* the evidence will be inadmissible against one or more of the defendants, including SZNW.  Under these circumstances, non-stop limiting instructions to the jury cannot cure the evidentiary taint and spillover that are inherent in a joint trial.

For example, only Huizar and Chan are charged with RICO, but SZNW is named in some overt acts.  As such, the jury will have to be instructed that for defendants Huizar and Chan, it can consider all  the admitted overt act evidence, including that related to SZNW, to determine whether the government proved the RICO count.  But as to SZNW, the jury would need to be told that the allegations involving the other schemes cannot be considered against SZNW *and* that much of the SZNW-related evidence is *legal* conduct under *McDonnell*.  As Judge Learned Hand stated almost 90 years ago, this demands of the jury "a mental gymnastic which is beyond, not only their power, but anybody's else." *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932) (Hand, J.).

Similarly, other overt acts may be connected to Wei Huang or SZNW but, from an evidentiary standpoint, only apply to a co-defendant. As examples, the government will offer "consciousness of guilt" evidence against Huizar, alleging

that during the Las Vegas trips, he and Esparza made statements acknowledging that there was something illegal or inappropriate about their activities.  One overt act claims that on October 28, 2015, Huizar texted Esparza to ask that he "[c]heck to see if [private] airplane checks your id. if they don't, maybe I fly with you guys." (OA 429.)  Another overt act alleges that on February 28, 2016, after Esparza told Huizar he could travel back to Los Angeles with Wei Huang on a private jet, Huizar again asked, "They don't check id?" (OA 430.)  Similarly, on July 13, 2016, Huizar and Esparza had a text exchange regarding whether Huizar should go to Las Vegas because the Chairman had also invited a sheriff.  (OA 431.)  In a later text exchange that same day, Huizar asked whether the casino was checking identifications.  (*Id*.)  The next day, Huizar emailed and texted Esparza that "we should limit types of conversations we just had on phone," and "we should watch what we say on phone," to which Esparza responded, "You're right. We always have to be safe."  (OA 432, 433, respectively.)

The government will undoubtedly claim that Huizar's and Esparza's attempts to conceal their identities and/or avoid contact with law enforcement reflect an awareness of wrongdoing.  Whether that is true or not, this evidence and argument are inapplicable to and inadmissible against SZNW.  An instruction by the Court to the jury that they should only consider this evidence against defendant Huizar would be ineffective as to SZNW—the jury would undoubtedly consider the *context* of Huizar's and Esparza's statements which necessarily, but improperly, insinuate misconduct by Wei Huang and SZNW.  This same issue arises with respect to the alleged false statements by Chan concerning Wei Huang and the Huizar loan.  (Count 1, OA 452; Count 39).

When the jury is required to make such challenging distinctions, even the most conscientious instructions are not enough to prevent the harm sought to be avoided. *See, e.g.*, *United States v. Sampol*, 636 F.2d 621, 647 (D.C. Cir. 1980) (reversing on severance grounds "on no small part ... based upon the fact that

evidence at trial, and even the indictment, failed to compartmentalize the evidence for the benefit of the jury" which could not be cured by the judge's careful instructions); *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 1985) (reversing where joinder of counts resulted in prejudicial evidence not cured by limiting instruction which would "ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities"); *United States v. Miller*, 874 F.2d 1255, 1263 (9th Cir. 1988) ("limiting instructions are not always sufficient to cure the effect of potential prejudice."); *United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir. 2005) ("the curative instructions offered here did not neutralize the harm of the improper statements…").

Because most of the charges and evidence in the FSI do not concern SZNW, "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton v. United States*, 391 U.S. 123, 135 (1968).

### C. <u>Nature of Evidence and Legal Concepts Involved</u>

The third factor concerns the nature of the evidence and the legal concepts at issue.  This too supports a severance.  The nature of the government's evidence spans approximately 15 years and as noted above, includes complicated allegations of bribery, money laundering, tax evasion, witness tampering, obstruction of justice and false statements.

The legal issues are equally complex and will include the jury's determination of whether Huizar and Chan constitute a criminal enterprise, what are the predicate acts, what constitutes solicitation of a bribe, whether there was a *quid pro quo*, and what is and is not an "official act," to name just a few  In addition to the many determinations required for RICO and Honest Services Fraud, the Travel Act violations allege violations of California's bribery statutes, Cal.

Penal Code §§ 67 and 67.5, while the Federal Program Bribery counts require proof of a "corrupt" intent. *See* 18 U.S.C. § 666(a)(2).[7]

If SZNW was tried alone, the complexity of these statutes, and the factual nuances of the evidence, would be challenging enough for the jury. In a joint trial with 33 additional charges against the co-defendants involving numerous alleged schemes and crimes, each with its own fact pattern, players, and legal instructions, it is unreasonable to expect a jury to distinguish SZNW from the other defendants, differentiate between the charges against SZNW and the co-defendants, and only consider evidence that is admissible against SZNW. *Cf. United States v. Baker*, 10 F.3d 1374, 1388 (9th Cir. 1993) (noting legal issues in drug case "were not extraordinarily difficult to comprehend, as they might be, for example, in a complex anti-trust case involving abstruse economic theories or an employment discrimination case involving technical statistical evidence and formulae"), overruled on other grounds by *United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000).

### D. Possibility of an Unreliable Verdict

The fourth factor concerns whether a joint trial will compromise a specific right, as well as circumstances which prevent the jury from making a reliable judgment, usually because of the introduction of prejudicial evidence (sometimes called "the reliable judgment" exception). *United States v. Blankenship*, 382 F.3d 1110, 1123-25 (11th Cir. 2004). For instance, the right of a defendant to be judged based on admissible evidence is compromised "where compelling evidence that is not admissible against one or more of the co-defendants is to be introduced against another co-defendant." *Id.* Additionally, "the sheer number of defendants and charges with different standards of proof and culpability, along with the massive

---

[7] Defendant SZNW expects that some or all the charged statutes will be the subjects of a forthcoming motion to dismiss.

LAW OFFICES OF RICHARD M. STEINGARD

volume of evidence, [may] make[] it nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently." *Id*., citing *United States v. Cassano*, 132 F.3d 646, 651 (11th Cir. 1998); *United States v. Gallo*, 668 F.Supp. 736, 753 (E.D.N.Y. 1987) ("This case is far too extensive and intricate to expect that a jury would be able to discern the myriad of subtle distinctions and mental gyrations that would be required by the inevitable plethora of limiting instructions necessary"); *Sampol*, 636 F.2d at 647. Or, the jury may be prevented from making a reliable judgment "where one defendant is being charged with a crime that, while somehow related to the other defendants or their overall scheme, is significantly different from those of the other defendants." *Id.* citing *Zafiro, supra*.

As for the "specific trial right" prong of this factor, at this juncture, it is unclear whether the government will seek to admit statements of a co-defendant which may implicate SZNW. *Bruton*, 391 U.S. at 134. At a status conference earlier in the case, the Court questioned the government about whether it would be seeking to admit the statements of some of the defendants. The government responded that it had not yet made such a determination. Accordingly, this prong cannot yet be assessed.

The "reliable judgment" exception favors a severance for many of the reasons discussed above. The evidence against SZNW in terms of the *quid pro quo* "official act" required by *McDonnell* is, non-existent or, at best, weak, compared to that present in the other schemes alleged in the indictment. *See United States v. Garner*, 837 F.2d 1404, 1413 (7th Cir. 1987) (where there is a "gross disparity" in the evidence pertaining to different defendants, there is a heightened danger that some defendants will suffer "spillover prejudice due to the accumulation of evidence against the others"). The sheer volume of legal questions placed before the jury stemming from a massive indictment charging crimes with similar, yet distinct, elements, is daunting. It is made even more

onerous given the RICO count charging just two of the defendants but including 452 acts, the vast majority of which do not involve SZNW. *See, e.g., United States v. DeRosa*, 670 F.2d 889 (9th Cir. 1982) ("The hazards of joinder may be magnified when a RICO count was used to establish joinder because there is a risk that the prejudicial effect of tarring a defendant with the label of 'racketeer' tainted the conviction on an otherwise valid count") (cleaned up).  The jury will have to sort through a "myriad of subtle distinctions and mental gyrations that [will] be required by the inevitable plethora of limiting instructions necessary." *Gallo*, 668 F.Supp. at 753.  Under these circumstances, the jury will not be able to make a reliable judgment.

   In sum, all four *Fernandez* factors favor a severance.  Although this may mean multiple trials for the Court, under the circumstances of this case, a separate trial is the only way of ensuring that SZNW receives a fair trial.

## V.

## CONCLUSION

   For all the foregoing reasons, SZNW respectfully requests that the Court sever its trial from that of the other defendants.

Respectfully submitted,

Dated: August 9, 2021

**LAW OFFICES OF RICHARD M. STEINGARD**

By:  /s/ Richard M. Steingard

Richard M. Steingard
Attorney for Defendant
**SHEN ZHEN NEW WORLD I, LLC**