# Exhibit D

**Law Offices of**
**Richard M. Steingard**

800 Wilshire Boulevard
Suite 1050
Los Angeles, California 90017
(213) 260-9449 office
(213) 260-9450 fax
www.steingardlaw.com

June 14, 2021

Mack Jenkins                                              Via U.S. Mail and E-Mail
Veronica Dragalin
Melissa Mills
United States Attorney's Office
Central District of California
1500 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012

      Re:   *United States v. Huizar, et al.*
             Case No. CR 20-326(A)-JFW

Dear Mack,

      We are writing in response to your letter, dated May 28, 2021.  While we disagree with much of what you wrote, we focus on two parts, Sections I and V, where you discuss the "Overt Act Project" and our purported "Reverse Proffer Requests."  We apologize for not responding sooner but decided to postpone sending this letter until we received and reviewed the transcript of the May 10, 2021, hearing, which we have attached.  All citations below are to that transcript.

      To recap, when we appeared in court on May 10, 2021, the Court heard argument on the disputed pretrial dates, including the timing for the government's production of exhibit and witness lists.  During the argument, in support of our request for an earlier disclosure date, we pointed out that there was an enormous amount of wiretaps interceptions, emails, and text messages, and that we were unaware which ones the government intended to use at trial. (20-21.)  As an example, we referred to our discovery of an email that corresponded with one of the overt acts. (21-22.)

      Although the Court stated it was disinclined to grant our request for a June 2021 disclosure date, it stated that it was sympathetic to our situation and proposed an alternate approach:

June 14, 2021
Jenkins
Page 2

Maybe there is an alternative where we could have the Government provide each defendant with the documents that they expect -- without putting them on the list, just a range of documents that they expect are relevant to what they intend to offer at trial and walk through some of these exhibits with each defense counsel to give them a little more focus. And then when the exhibit list is produced in January, it will make a little more sense…
So it's in everybody's interest, it seems to me, starting with the Government, to start making those informal disclosures to defense with respect to these exhibits with a view that the date that I gave in January to come up with a formal list, and that at least takes steps to accomplish what I think your -- the legitimate issues that you're raising with respect to what do I do with these millions of pieces of paper. (24-25.)

We responded to the Court's suggestion, "That will work. We will work with the Government if the Government is willing to sit down with us or however we want to do it to educate us on these 452 overt acts and the other exhibits they're going to use, the transcripts they're going to rely on. That absolutely will work. From that we will create a Government exhibit list. We will create it. We don't need it from them at that juncture. And we're more than happy to work on it that way in a more informal basis, and we can start on that next week." (25.)

When the Court inquired of the government's willingness to disclose the exhibits, you responded, "The short answer is yes…. we are happy to share that portion of our work product because we believe it is helpful for them to see the evidence in our view, the strength of that evidence… we are happy to produce them." (25-26.)

The Court concluded by asking that we "embark upon this effort to meet and confer." (27.)

The next day, May 11, 2021, we emailed you to begin the meet and confer process. Though the Court had suggested that the government meet with each counsel to review the exhibits pertinent to his or her client, we suggested that the government conduct four meetings with each meeting relating to the exhibits for a specific defendants' part of the case. For instance, one meeting would address the exhibits that would be presented against defendants Huizar, Chan and Shen Zhen New World, while another meeting would concern the exhibits that would pertain to defendants Huizar, Chan, Lee, and 940 Hill. As we wrote, "In this way, the government could efficiently address the trial exhibits (by Bates number so we can

June 14, 2021
Jenkins
Page 3

easily find them) and witnesses for the various counts and overt acts without having to repeat it for each defendant." We twice stated that we were "open to suggestions" or "alternative ideas" on how else to address these issues.

Two- and one-half weeks later, you responded to advise us that you were in the process of conducting an "Overt Act Project" to locate the exhibits that correspond to the overt acts and would provide them "in the coming months." You made no mention of meeting with counsel, as the Court had proposed, to provide the other evidence discussed at the hearing: that is, the wiretap recordings, emails, and text messages that the government may introduce at trial. Instead, you repeatedly insisted that we are seeking reverse proffers, even though we never made such a request in court or in our email. Having mischaracterized our request and reframed the issue, you advised that the government was not obligated to provide a defendant with a reverse proffer.

It has now been one month since you agreed in court to work with us to provide the trial exhibits; other than the above-referenced letter, we have not heard from you. We appreciate your efforts with respect to the "Overt Act Project," although we are concerned with the unspecific and open-ended timing for actually producing the information. We suggest that the government consider providing the overt act exhibits on a rolling basis, rather than disclosing the information after the project is completed. In this way, we can expeditiously begin examining the overt act exhibits that are relevant to our respective cases.

As to the other trial exhibits referenced at the hearing and in our email, we are unclear of your position or whether the government is reneging on its in-court statements. **To be clear, we have not, and are not, requesting a reverse proffer**. As stated in court and in the email, we ask that you meet with us to review the trial exhibits that will be introduced at trial; to quote the Court, "we could have the Government provide each defendant with the documents that they expect -- without putting them on the list, just a range of documents that they expect are relevant to what they intend to offer at trial." If you prefer to do this one attorney at a time, as the Court suggested, rather than in the manner we proposed, we are agreeable. If you have another approach, we will certainly consider it.

Lastly, rather than continue with a letter writing campaign, we propose a joint call with all counsel to address this and any other outstanding issues. Assuming you are agreeable, please email us with some available dates for next week and we will arrange the call.

June 14, 2021
Jenkins
Page 4

     Thank you.  As you can tell, we are eager to begin reviewing the government's trial exhibits.  We look forward to hearing from you soon.

Sincerely,

Richard M. Steingard
On Behalf of All Counsel

Cc:   Carel Ale
      Charles Snyder
      Harland Braun
      Ariel Neuman
      Ray Seilie

```
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3          HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE

 4

 5   UNITED STATES OF AMERICA,       )
                                     )
 6              PLAINTIFF,           )      CASE NO.
                                     )
 7              vs.                  )      CR 20-326-JFW
                                     )
 8   JOSE LUIS HUIZAR, et al.,       )
                                     )      PAGES 1 TO 40
 9              DEFENDANTS.          )
     _____)
10

11

12

13                  REPORTER'S TRANSCRIPT OF
                        STATUS CONFERENCE
14                   MONDAY, MAY 10, 2021
                          8:08 A.M.
15                  LOS ANGELES, CALIFORNIA

16

17

18

19

20

21

22
     _____
23

24          MIRANDA ALGORRI, CSR 12743, RPR, CRR
                FEDERAL OFFICIAL COURT REPORTER
                 350 WEST 1ST STREET, SUITE 4455
25               LOS ANGELES, CALIFORNIA 90012
                    MIRANDAALGORRI@GMAIL.COM
```

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4        NICOLA T. HANNA
         UNITED STATES ATTORNEY
5        BY:  MACK JENKINS
         BY:  VERONICA DRAGALIN
6        BY:  MELISSA MILLS
         Assistant United States Attorneys
7        United States Courthouse
         312 North Spring Street
8        Los Angeles, California 90012

9

     **FOR THE DEFENDANT HUIZAR:**
10
         HILARY L. POTASHNER
11       FEDERAL PUBLIC DEFENDER
         BY:  CAREL ALE
12       BY:  CHARLES SNYDER
         Deputy Federal Public Defenders
13       Central District of California
         321 East Second Street
14       Los Angeles, California 90012

15
     **FOR DEFENDANT CHAN:**
16
         BRAUN & BRAUN, LLP
17       BY:  HARLAND BRAUN
         10880 Wilshire Boulevard
18       Suite 1020
         Los Angeles, California 90024
19

20   **FOR THE DEFENDANT SHEN ZHEN NEW WORLD I:**

21       LAW OFFICES OF RICHARD M. STEINGARD
         BY:  RICHARD M. STEINGARD
22       800 Wilshire Boulevard
         Suite 1050
23       Los Angeles, California 90017

24

25

1                    **APPEARANCES OF COUNSEL CONTINUED:**

2

3       **FOR THE DEFENDANTS LEE AND 940 HILL:**

4             BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG & RHOW
              BY:  ARIEL A. NEUMAN
5             1875 Century Park East
              23rd Floor
6             Los Angeles, California 90067

7

        **KOREAN INTERPRETERS:**
8
              Julie Wagner
9             Annie Lee

10

        **ALSO PRESENT:**
11
              Special Agent Andrew Civetti
12            Special Agent Barbara Johnson
              Special Agent Tony Logan
13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, MAY 10, 2021

 2                              8:08 A.M.

 3                                 ---

 4

 5              THE CLERK:  Calling CR 20-326(A)-JFW,

 6   United States of America versus Jose Luis Huizar, et al.

 7              Counsel, please state your appearances.

 8              MR. JENKINS:  Good morning, Your Honor.

 9              Mack Jenkins, Veronica Dragalin, Melissa Mills on

10   behalf of the United States, all at counsel table.  Also from

11   the FBI, Special Agents Andrew Civetti, Tony Logan, and

12   Barbara Johnson in the audience.

13              MS. ALÉ:  Good morning, Your Honor.

14              Carel Alé and Charles Snyder from the Federal

15   Public Defender's Office representing Mr. Jose Huizar who is

16   present and out of custody.

17              MR. BRAUN:  Good morning, Your Honor.

18              Harland Braun, B-r-a-u-n, for Mr. Chan who is

19   present.

20              THE COURT:  All right.  Mr. Braun, good to see

21   you.  I hope you're feeling better.

22              MR. BRAUN:  I am.  Thank you, Your Honor.

23              MR. STEINGARD:  Richard Steingard for Shen Zen

24   New World.

25              MR. NEUMAN:  Good morning, Your Honor.
```

```
 1              Ariel Neuman for Dae Yong Lee who is here being
 2    assisted by the Korean interpreter and 940 Hill, LLC.
 3              THE COURT:  Would the Korean interpreters state
 4    her appearance, spell her name, and confirm that their oaths
 5    are on file.
 6              INTERPRETER WAGNER:  Good morning.  My name is
 7    Julie Wagner, court certification number 300979.  My name is
 8    spelled J-u-l-i-e W-a-g-n-e-r.
 9              INTERPRETER LEE:  Good morning, Your Honor.  The
10    other interpreter for the Korean language, Annie Lee, 301157,
11    oath on file.  Thank you.
12              THE COURT:  All right.  Good morning to all.
13              This matter is on the Court's calendar for a
14    status conference.  At our last status conference on April 5th,
15    we discussed the stipulation that had been submitted or filed
16    by counsel in the end of March setting forth various pretrial
17    deadlines as well as a May 24th of '22 trial date.  At the
18    hearing we discussed the proposed schedule and the trial date,
19    and as a result of those discussions, we continued the matter
20    until today so that counsel can have an opportunity to meet and
21    confer and arrive at some new dates consistent with or at least
22    more consistent with what I had indicated that was my desire to
23    conclude the pretrial motion practice by the end of this year
24    and have a trial date in 2022.
25              The parties did meet and confer, and I appreciate
```

 1    your efforts in that regard.  The result of that meet and

 2    confer was a joint status report regarding a request for

 3    setting a trial and the related dates that was filed on May 5th

 4    and appears as docket No. 182.

 5              The parties have agreed to various dates that are

 6    set forth in the stipulation as well as the proposed order

 7    which is docket No. 182-1 with the exception of four categories

 8    of documents or four categories of deadlines that we will

 9    discuss this morning.

10              The parties are closer to what I had discussed in

11    terms of my preference in terms of dates, but I appreciate

12    counsel's efforts, and I am agreeable to the pretrial motion

13    which you have now separated into severance motions and

14    dismissal motions and suppression motions.  As I indicated at

15    the last hearing, I viewed the suppression motions to be

16    perhaps more complex than the other motions.

17              I don't know why we have a hearing date for all

18    of the pretrial motions, the severance motions, and the motions

19    to dismiss on November 15th.  Perhaps someone can enlighten me

20    for why, if we have the severance motions that are going to be

21    filed on August 9, oppositions September 7th, and the

22    oppositions on the 27th, why we can't have a hearing on those

23    motions in October rather than waiting for the next series of

24    motions which are presumably going to be the motions to dismiss

25    and then hear all of those motions in November.

1           MR. STEINGARD:  Your Honor, I'm guilty of that.

2    This was my idea.  We thought that the Court might -- can I

3    take -- am I allowed to take this off when I talk to you?

4           THE COURT:  Sure.

5           MR. STEINGARD:  Thank you.

6           This was my idea that you would want to handle

7    all of -- the hearing on the motions at one time as opposed to

8    bifurcated due to severance and then come back and do the

9    motion to dismiss.  We for sure can set up an extra pretrial

10   motions hearing date for just the severance motions if you

11   prefer that.

12          THE COURT:  I would prefer having -- of course it

13   depends upon how many are going to be filed.  If there's one

14   severance motion, then it's easy to hear on the same date as

15   the motion to dismiss.  But since I'm not going to ask counsel

16   to commit in terms of what you're going to file, I think I

17   would rather have a separate earlier hearing date for the

18   severance motions.  That way I can start working on those

19   motions, have the hearing date, get those motions resolved and

20   decided, and then move on to the next batch of motions which

21   are going to be the motions to dismiss.

22          That hearing date of November 15th makes sense in

23   light of the fact that the replies are going to be due on

24   October 25th.  It doesn't give me a whole lot of time for the

25   hearing.  But to the extent that I find that I can't accomplish

```
1   what I need to accomplish to rule on the 15th, I may continue
2   it, but that date is fine.
3              So I would think that we could have perhaps an
4   October 15th hearing date on the severance motions.  Those
5   replies are due on September 27th, and October 15th should give
6   me enough time to rule on the severance motions.
7              MR. STEINGARD:  Can we do this, Your Honor, just
8   so we don't all start grabbing calendars and looking and going
9   back and forth, can we look at your October 15th hearing date
10  and submit a revised stipulation?
11             THE COURT:  Sure.  That's what I had hoped we
12  would do is talk about some of these dates and prepare a
13  revised stipulation although I don't think there will be that
14  many changes.
15             The suppression motions, the dates for filing
16  November 1st, December 6th for the oppositions, the replies
17  January 3rd, and a hearing on January 31st, I think those dates
18  make sense.  To the extent that I can hear those earlier, I
19  just may simply advance the January 31st hearing date.  But for
20  purposes for the next stipulation, why don't we just keep those
21  dates fixed.
22             Mr. Steingard, you're going to be in charge of
23  this redrafting?
24             MR. STEINGARD:  Usually it is the Government, but
25  I will take it on.
```

1          THE COURT:  Okay.  Lead counsel for the defense?

2          MR. STEINGARD:  Sure.

3          THE COURT:  Then why don't you remain at the

4   lectern so we can discuss these.

5          The next issues that are raised, I actually have

6   an issue with the next category.  And I hate to -- I hate to

7   talk about dates that have been agreed to, but for my own

8   purposes, I'm going to ask the Government, in terms of the

9   expert disclosure, we have December -- I'm sorry --

10  February 1st of next year.  I find that in these -- in most

11  cases, that the expert testimony typically raises a number of

12  issues that entail or involve a substantial amount of time on

13  behalf of counsel as well as the Court to resolve.

14         My question to the Government today this morning

15  is what experts do you intend to call and what subject matters,

16  how many, and why can't we have those experts designated by,

17  say, December 1st?

18         MR. JENKINS:  Yes, Your Honor.  The first way to

19  answer that question is we believe --

20         THE COURT:  You can remain seated.  Just pull the

21  microphone closer.  I know it's awkward because you're taller

22  than most to lean into the microphone.

23         MR. JENKINS:  Thank you, Your Honor.

24         The first way we would answer is part of the

25  reason we set that date is we also believe it's helpful to

1    generally only notice experts that we intend to use obviously,

2    and so we had planned to schedule the notice date sometime

3    after the suppression hearing date, and that's the first basis

4    for why it chronologically follows the motion to suppress

5    hearings.  For example, if the Court excluded certain phone

6    extractions which are done via a Cellebrite program, there may

7    not be a need for a Cellebrite expert.  So that is why

8    chronologically it falls in there.

9              To answer Your Honor's specific question,

10   generally the experts we anticipate at this point very broadly

11   to call would be various experts on city processes such as

12   planning, the management and operation of city committees such

13   as the Planning and Land Use Management Committee that

14   Defendant Huizar chaired.

15             We also would intend to call various law

16   enforcement experts related to law enforcement executions,

17   again, perhaps of a Cellebrite extraction, the installation of

18   an audio/video bug in Defendant Chan and Co-defendant

19   George Chang's office.  There will also be potentially language

20   experts.  Defendant Chan and Defendant Lee both are intercepted

21   speaking their native language.  So there would be

22   authenticated or the need to authenticate transcripts.

23             The others I can think of right now -- I think

24   those are the most significant ones right now.  So generally we

25   can outline most of that and their anticipated testimony.

1          THE COURT:  Well, the problem that I anticipate

2   with some of these experts, although the -- they don't sound

3   like they fall into what I have characterized in other cases as

4   the guilt experts, the -- I require -- after the experts are

5   disclosed, I require an offer of proof as to what the expert is

6   going to testify to, and then I require counsel to meet and

7   confer and prepare a joint statement as to what counsel

8   believes is admissible and what counsel believes is not

9   admissible.  And then I have a series of hearings to hopefully

10  resolve those issues well in advance of trial so that, when the

11  expert gets on the stand, everybody knows exactly what the

12  opinions are that that expert is going to express, and defense

13  counsel, having all of that information available to them, are

14  then prepared to conduct a cross-examination of those experts.

15          So given what you have told me, it sounds to me

16  like this is going to be a significant -- there's going to be a

17  significant number of experts, and I want to start this process

18  earlier than later because I know from experience that these --

19  that these -- this type of expert testimony is typically hotly,

20  hotly contested.

21          For example, I don't know why you need a law

22  enforcement expert to talk about the bug.  You had a law

23  enforcement person who actually did the installation.  So what

24  kind of expertise does one need in order to tell the jury on a

25  certain day pursuant to a court order whatever happened in

1    terms of how the bug was installed, it was installed.  It was

2    operational.  And the result of the bug was presumably a video

3    that you're going to offer to the jury.  I don't see that's any

4    kind of expert testimony unless I'm missing something.

5              MR. JENKINS:  I don't think, Your Honor -- that

6    is what I was going to point out.  I believe the descriptions

7    are different than many experts where largely they will be

8    noncontroversial.  And, you know, not speaking on behalf of

9    counsel, but I believe we can resolve much of this in advance

10   of trial.

11             I think it's different than sort of the guilt

12   experts, as Your Honor pointed out, that this is a racketeering

13   case against a gang alleging that they participate in

14   kidnappings and murders and we had an expert talking about the

15   gang involved in these types of activities --

16             THE COURT:  And all the coded language that goes

17   along with the --

18             MR. JENKINS:  Indeed.  And then inferring that

19   these defendants are essentially members of the enterprise

20   simply because they're a member of the gang.  We are sort of in

21   a different racketeering arena, as I see it.  So I think, as I

22   pointed out, I believe much of these are foundational experts,

23   technical experts, sort of chain-of-custody experts that can be

24   resolved.  We're certainly happy to begin that process now to

25   discuss those things and see whether or not those things can be

1   reached by stipulation and then would obviate the need for any

2   sort of additional filings or expert notice.

3            THE COURT:  Let me ask Mr. Steingard.  Are the

4   defense experts contemplated to be responsive to the defense --

5   to the Government's experts, or do you have a whole -- does the

6   defense team have a whole litany or list of experts on other

7   issues?

8            MR. STEINGARD:  Your Honor, to the extent that we

9   have collaborated, we haven't even gotten to experts yet.  We

10  have had some general conversations as a team.  We have

11  broached some subjects that are mutual to all of us, but nobody

12  is putting pen to paper on who is calling which experts at this

13  juncture.  I suspect from the sounds of what Mr. Jenkins is

14  talking about, like, there will be potential issues with the

15  city -- what you call the city processes expert depending on

16  how far they go and what they have to say.  Law enforcement

17  extraction of Cellebrite, I can't imagine there would even be

18  an expert and the language expert.

19            To the extent the Government will tell us what

20  they are using, we will know well in advance whether we're

21  going to have language issues, and we can resolve those, I

22  would think, among ourselves and litigate that with Your Honor.

23            THE COURT:  Well, yeah.  In terms of any language

24  issues, with respect to translations, again, I require counsel

25  to meet and confer, go over each of the transcripts that are

1    going to be used at trial, and resolve any disputes if there's

2    a foreign language involved.  And if you can't resolve the

3    disputes, prepare a joint statement, and I will resolve it.

4              Again, all of this is with a view toward

5    streamlining what looks to be like a long trial.  And these

6    case management techniques eliminate a lot of the issues at

7    trial so we can really focus on what, in my view, matters in

8    this case.

9              MR. STEINGARD:  I think I'm speaking for the

10   defense.  We're in complete agreement front-ending these issues

11   now will make the trial much smoother.  We're spilling over a

12   little bit into the witness and exhibit list.  We're going to

13   get to that in a minute.  But what you're talking about doing

14   with, for instance, the language interpretations and

15   translations, we are completely in favor of.

16             So I would say, to the extent Your Honor wants to

17   advance the February 1 date, I think we can speak for all

18   defense counsel we're in agreement with that.

19             THE COURT:  What I was going to suggest, the

20   Government's expert disclosure take place on November 1st and

21   defense experts on January 1st.

22             MR. STEINGARD:  May I suggest, Your Honor, just

23   to push it away from the holiday a little bit, for the defense

24   side can we make that perhaps a January 15 date?  And, again, I

25   don't want to mislead the Court.  To the extent we have experts

```
 1    that we know we're going to call, I don't think it's an issue.
 2    That may still be in play when we get to January.  But we
 3    should have a much better idea by then.  So we would ask -- I
 4    would propose, if you don't mind, giving us a little bit of
 5    time after the holidays.
 6              As it is right now, we agreed to our reply briefs
 7    for the suppression motions to run through the holidays.  We
 8    would prefer not to have to deal with experts during that time
 9    as well.
10              THE COURT:  Mr. Jenkins, what about the
11    Government's disclosure?  If we're looking at January 15th for
12    the defense, I would assume the Government -- I would agree to
13    a December 15th disclosure for the Government.
14              MR. JENKINS:  Yes.  That would be our request,
15    Your Honor, and we can meet that date.
16              THE COURT:  All right.  Then those will be the
17    dates for the expert.  The Government disclosure December 15th
18    and the defense disclosure on January 15th.
19              And, again, these dates, if it becomes impossible
20    or if there's some extraordinary event that happens that these
21    dates need to be moved, I'm just trying to get a sense now of
22    what I view my work to be and counsel's work to be to try to
23    get this case ready for trial.
24              MR. STEINGARD:  Very good.
25              THE COURT:  The motion in limine dates are fine.
```

1    Hearing dates are fine.  The final transcript and translations,

2    those are fine.  *Jencks* Act for the Government and defendant

3    are fine.  The charts and summaries are fine.  The defense

4    witness list and the defense exhibit list are fine.  I assume

5    that the dates are close to what you have asked for in terms of

6    the commencement of the trial that that will give the

7    Government sufficient time given the trial estimate to review

8    the exhibits.

9            Although I may -- depending on when we get

10   closer, I may move up the defense exhibit list.  Again, it

11   seems -- it appears to me that, once the Government discloses

12   its exhibits and counsel have an opportunity to go through the

13   meet-and-confer process with respect to the trial exhibits,

14   it's been my experience that the defense, who may be

15   contemplating a number of exhibits, those may fall off the list

16   in light of what the Government is going to produce or is going

17   to intend to offer.  In any event, those dates are fine.  The

18   final pretrial conference, I would rather do it on May 13th

19   rather than May 16th.

20           So that then leads us to the areas that counsel

21   couldn't agree upon.  The first of those areas -- I will

22   address this to Mr. -- address to both counsel.  The Government

23   exhibit list and the witness list, I'm not going to order a

24   June deadline for the production of the exhibit list or the

25   witness list.  I'm also not going to delay those until April.

1           My thought is that the Government should be in a

2    position to provide its exhibit list by the end of January of

3    next year.  And, again, these dates are important, but to the

4    extent that the Government has expressed in the stipulation a

5    concern that they are not going to be able to know all of their

6    exhibits, I hear what you're saying.  But I think the bulk of

7    the exhibits are probably already known.

8           We've been working on this case for a long time.

9    As we get closer to trial, to the extent that the exhibit list

10   doesn't contain certain exhibits because they recently were

11   produced or recently discovered or if there was some

12   inadvertence by not including them on the list, certainly

13   you're not going to be bound by the exhibit list.

14          What we're trying to do is get the bulk of the

15   exhibits to the defense so counsel can begin the

16   meet-and-confer process which I'm going to set forth in an

17   amended Criminal Trial Order so that, as we move closer, we're

18   going to have a resolution in terms of those exhibits with the

19   hope that the majority of them will simply be stipulated to and

20   will be received into evidence on the first day of trial, and

21   then we're not going to have any issues with respect to trial

22   exhibits.

23          Obviously, if there's an objection to a trial

24   exhibit where you can't resolve it, I'll resolve it.  But it

25   seems to me in a case like this there will be very few

1    disputes.  Once the defense gets -- once the defense lawyers

2    have the exhibits and look at the exhibits and are able to

3    discuss the exhibits with their respective clients, they're

4    either going to be, okay, this is fine, we may need this or we

5    may need that but we can take it off the list of disputes and

6    then we can move the ball down the road so, as I said, when the

7    trial begins, we're going to have no disputes.

8                I will hear from Mr. Jenkins as to -- the

9    January 25th, 2022, date is earlier than the April 22nd date.

10   Go ahead.

11               MR. JENKINS:  That is correct.  And, first off,

12   we appreciate and agree with Your Honor.  Part of our concern

13   was simply trying to educate the parties and the Court of what

14   the trial is going to look like without at the same time

15   binding our hands to, as the Court pointed out, recently

16   produced, recently discovered or inadvertent lack of

17   disclosure.

18               So we are comfortable with advancing the date.  I

19   think we can meet it.  But our corollary concern is

20   particularly, if this happens prior to the motion to suppress,

21   there may be either schemes that are charged -- this is a

22   multiple scheme racketeering case.  There are multiple searches

23   executed at locations from phones.  If sort of post-loss of the

24   Government's cases -- and I'm certainly not wishing this upon

25   the Government, but if we were to lose certain portions of the

1  case, the exhibit list as to those items becomes sort of a

2  waste of time for everyone.

3         THE COURT:  It's real easy.  They just are taken

4  off the list.  They're gone.

5         MR. JENKINS:  Prior to that occasion, it would be

6  less helpful for parties to prepare on that.  I'm asking for a

7  little bit after or if the Court would advance the suppression

8  hearing so we can have some window --

9         THE COURT:  But the meet-and-confer process isn't

10  going to take place until sometime after the initial -- what

11  the amended Criminal Trial Order does is requires the

12  Government to prepare a list of trial exhibits.  Then that list

13  is given to defense counsel.  Then there's a period of time for

14  the defense counsel to review that list in which case, if I

15  made adverse rulings to the Government, that period of time you

16  can just take those exhibits off the exhibit list.  Then

17  there's the meet-and-confer process and then the preparation of

18  the joint pretrial exhibit stipulation which sets forth those

19  exhibits to which there are no objection and those exhibits to

20  which there are objections.  And then that's the working

21  document that we keep relying on as we go forward to prepare

22  for trial.

23         It may be a little extra work for the Government,

24  but I don't think that, given the strength and depth of your

25  team, I don't think it's going to be too difficult to

1    accomplish.

2              MR. JENKINS:  I appreciate that and don't

3    disagree with the last comment.  I would just point out and

4    then I would submit that the defense may be moving to exclude

5    otherwise admissible evidence that they don't have objections

6    to foundationally or otherwise but may feel that they should

7    suppress based off constitutional violations.  So it seems like

8    it would be doubling up on the defense's work as well to have

9    sort of the parallel process going on where they don't need to

10   object to exhibits that are being excluded or --

11             THE COURT:  But I will have a ruling on the

12   suppression motions on January 31st.

13             MR. JENKINS:  That is correct, Your Honor.  And

14   then the disclosure date would be --

15             THE COURT:  If you want -- I will put the

16   disclosure date February 15th.  I don't think it's going to be

17   that helpful.  But if that's what you're concerned about,

18   February 15th.

19             MR. JENKINS:  Thank you, Your Honor.  We

20   appreciate it.

21             MR. STEINGARD:  Your Honor, you're going the

22   wrong direction from the defense standpoint.  Let me just

23   explain a couple things.  One of the -- the premise I think of

24   your setting these dates may not be factually correct and that

25   is you think -- you're under the impression, I think, that the

defense pretty much knows what the Government's exhibits are
going to be.  Nothing could be further from the truth.

The Government has given us 93,000 line sheets.
We don't know which -- those are the wiretaps.  We don't know
which recordings they're relying on, which ones they are going
to use.  They have had translated or transcripts of snippets of
some of those wiretaps, not the complete wiretap unless they're
going to perhaps use the whole thing.  Right now we don't know
which wiretaps they're going to use.  We don't know which
e-mails they're going to use.  We don't know which text
messages they are going to use.

We have been given over 2 million pages of
documents with 452 overt acts and said essentially our case is
in there, and we are spending a phenomenal amount of time
trying to figure out what the Government is going to use.  I
don't mean to take up all your time, but can I give you one
example, Your Honor?

THE COURT:  Sure.

MR. STEINGARD:  So there was a -- the Government
gave us about over a million pages of documents that were given
to them pursuant to subpoenas during the course of their
investigation.  There are 83 different custodians I think who
produced -- either individuals or entities that produced
documents.  One of those entities -- most of them I have never
heard of.  But one of those entities is called -- it's an

1    architectural firm called Dimarzio Cato, D-i-m-a-r-z-i-o

2    C-a-t-o.  Dimarzio Cato did some work as an architecture firm

3    for my client Shen Zen.  So when I saw that name, it related to

4    my case.

5             Dimarzio Cato turned over 12,000 pages of

6    documents, primarily e-mails.  I began to review 12,000 pages

7    of e-mails.  It's not like you can search for them, and I don't

8    even know what I'm looking for.  But during that course of that

9    search -- and, by the way, I'm only halfway through it.  During

10   the course of that search, I found an e-mail from a man named

11   Jeff Dimarzio, one of the partners of the firm to Raymond Chan.

12   That e-mail Bates stamped 715172 -- that's the page number --

13   that e-mail contains an expression, a statement by Mr. Dimarzio

14   to Mr. Chan which says -- and I'm reading it --

15   "Chairman Huang's idea is to test the maximum allowable

16   development for its property."

17             Ordinarily I wouldn't even think of that as

18   having any consequence, but it just so happens that is overt

19   act 57 in the Indictment.  There is no way I could have known

20   that.  There is no way I would have found that.  In fact, it

21   was a bit of a fluke because, when you're looking at

22   12,000 pages of e-mails, you move pretty quickly.  And this one

23   I happened to stop and read, and I found overt act 57.

24             We're doing that exercise with 452 different

25   overt acts which the Government has told us is a roadmap for

1  their case.  For some of them, when they say a particular

2  person said a particular thing, we can try and expedite the

3  process by going to that particular wiretap for that particular

4  individual, and we can find it.  It's not an easy process, but

5  we can get there relatively quickly.

6            But for others, Your Honor, this is -- this is

7  what we're spending our time doing.  We are spending our time

8  not preparing the defense but trying to figure out what the

9  Government's case is based on.

10            I say all this, Your Honor, because the

11  Government has made this presentation to the grand jury.  They

12  know where every Bates stamp number, every conversation that

13  they're going to use is.  We are not saying to the Government

14  give it to us on June 15th and it's a final exhibit list.

15  That's what happened in *Grace*.  Your Honor actually has the

16  authority to do that.  That's not what we're asking for.  We're

17  asking for a good faith exhibit list now, a good faith witness

18  list now so we can begin the process of, instead of searching

19  constantly for the next overt act, we can begin looking for the

20  evidence to rebut or clarify or refute that particular overt

21  act.

22            So I'm sounding like I'm begging, and it's not

23  that far from it.  We are asking the Court for the earliest

24  possible witness and exhibit list to expedite our preparation.

25  It just isn't a simple process.  This is not the typical case

1 by any stretch, and we have already talked about that.

2    THE COURT:  But it's -- I hear what you're

3 saying.  I certainly sympathize with you in terms of the amount

4 of materials that have been produced and which are going to

5 require analysis.  But in the same token, the briefing schedule

6 that you have provided and based on our discussions at the last

7 hearing, even if you had all of the Government's exhibits in

8 June, which I'm not going to order, you're working on preparing

9 the various motions.  So there's going to be little time to

10 start reviewing the exhibits in light of what was discussed

11 last time.

12    You know, I guess there's a couple of different

13 ways we can do this.  I could -- I know counsel in this case

14 have worked cooperatively.  Maybe there is an alternative where

15 we could have the Government provide each defendant with the

16 documents that they expect -- without putting them on the list,

17 just a range of documents that they expect are relevant to what

18 they intend to offer at trial and walk through some of these

19 exhibits with each defense counsel to give them a little more

20 focus.  And then when the exhibit list is produced in January,

21 it will make a little more sense.

22    To satisfy your concerns, obviously, if this all

23 goes south, then any trial date that I set is going to be

24 unrealistic because you're not going to be prepared to go to

25 trial.  So it's in everybody's interest, it seems to me,

1   starting with the Government, to start making those informal

2   disclosures to defense with respect to these exhibits with a

3   view that the date that I gave in January to come up with a

4   formal list, and that at least takes steps to accomplish what I

5   think your -- the legitimate issues that you're raising with

6   respect to what do I do with these millions of pieces of paper.

7   I don't have any frame of reference to them other than

8   hopefully finding something that looks like it may be relevant

9   and setting it aside and trying to go find out later on if it

10  is or is not relevant.

11             MR. STEINGARD:  That will work.  We will work

12  with the Government if the Government is willing to sit down

13  with us or however we want to do it to educate us on these 452

14  overt acts and the other exhibits they're going to use, the

15  transcripts they're going to rely on.  That absolutely will

16  work.  From that we will create a Government exhibit list.  We

17  will create it.  We don't need it from them at that juncture.

18  And we're more than happy to work on it that way in a more

19  informal basis, and we can start on that next week.

20             THE COURT:  Mr. Jenkins?

21             MR. JENKINS:  The short answer is yes.  But the

22  assumptions that Mr. Steingard's arguments that we have done

23  these things already, we appreciate the confidence, but that's

24  not how the grand jury process works.  And we are doing exactly

25  what the -- he would like us to do now.  So we are creating and

1    we are prepared to, when we resolve these things -- for

2    example, I have never heard or seen that Bates number.  But I

3    have gone through the overt acts and looked for quotes, and so

4    you can search by date that he referenced, the exact quote he

5    referenced, the reference to the company and find these things.

6    But we have to do those things ourselves and find the Bates

7    number as well.

8                 THE COURT:  Maybe if you sit with defense counsel

9    and explain how your process works and how you're doing it, it

10   will be easier for defense counsel than to do it on their own.

11                MR. JENKINS:  Absolutely.  We just haven't done

12   that yet.  So my only response back is that we are in the

13   process of doing that exact thing.  So we are happy to share

14   that portion of our work product because we believe it is

15   helpful for them to see the evidence in our view, the strength

16   of that evidence.  We're just trying to set the timelines as

17   the Court pointed out.

18                We will also be responding to motions at certain

19   points and writing our own motions.  And the discovery as all

20   of defense counsel -- and we would agree -- we are still trying

21   to figure out a lot of the kinks in that process.  So we are

22   doing a lot of parallel track things, but we are happy to

23   produce them.  This is not something that we are withholding or

24   we have some magic exhibit list with exact Bates numbers

25   somewhere.  That is simply not the case.

 1          But we have talked to all defense counsel.  We

 2   have been working productively, and I'm happy to go about that

 3   with the Court's indulgence that, again, we don't have a strict

 4   timeline or there is no exclusionary penalty for not meeting

 5   certain deadlines.

 6          THE COURT:  Until I get a sense that either the

 7   Government or defense is not acting in good faith, there aren't

 8   going to be any penalties.  What we're trying to do is trying

 9   to -- we are trying to manage this case in the most efficient

10   way so that we have a trial that can be put on both from the

11   Government and the defense in an efficient manner and also a

12   very clear manner so the jury can focus on what is really

13   important in the case and make whatever determination.

14          So what I'm going to do is I'm going to keep the

15   Government exhibit list date -- I forgot now what the date is.

16          MR. JENKINS:  February 15, 2022.

17          THE COURT:  February 15.  Then I will ask counsel

18   to embark upon this effort to meet and confer and maybe have a

19   status conference at some point in time later to see how that

20   process is going.  Certainly by the time we are going to have a

21   hearing on the first wave of the pretrial motions, I will be --

22   I'm sure counsel will be able to inform me at that point in

23   time how the exhibit issue is progressing.  That will then

24   determine what we do with these dates.  But I think this is a

25   healthy and important step in order to have everybody on the

```
 1   same page.  I will also set the Government's witness list on
 2   the same date, February 15th.
 3              MR. JENKINS:  Understood, Your Honor.  Thank you.
 4              THE COURT:  All right.  Anything else you want to
 5   add, Mr. Steingard, on that issue?
 6              MR. STEINGARD:  No, Your Honor.  We're going to
 7   work with the Government.  If there's an issue, if we feel
 8   frustrated, we're going to come back to you.
 9              THE COURT:  Right.  And I encourage you -- I
10   don't encourage you, but if there is an issue, I would
11   encourage you to bring it to the attention of the Court as
12   early as possible so I can figure out what the problem is and
13   hopefully resolve the problem so we can move forward.
14              MR. STEINGARD:  We won't be shy.
15              THE COURT:  All right.  There's only two other
16   categories.  The 404(b) evidence, the Government says there's a
17   lot of things that are -- I don't see that there's going to be
18   a significant amount of 404(b) evidence, so I'm going to leave
19   the Government's proposed date of February 1st as the operative
20   date.  Do you anticipate any 404(b) evidence?  I mean, you have
21   enough witnesses and exhibits in this case that I doubt -- I
22   don't doubt.  I shouldn't say that.  I can't imagine how -- I
23   can't imagine the 404(b) evidence in this case.
24              MR. JENKINS:  I don't anticipate -- typically in
25   corruption cases there is little amount.  Usually the
```

1    defendants have a relatively strong record.  As to

2    Defendant Huizar, he's charged -- and Defendant Chan, they're

3    charged with the racketeering offense where we alleged most of

4    the conduct we believe relevant to that enterprise.  That's not

5    to say there is not going to be a lot of 404(b) because we have

6    charged it as to them, as to the other defendants,

7    Defendant Lee.

8              There is one incident we are also aware of

9    involving allegations of money laundering which we have

10   discussed briefly with defense counsel, but I do not anticipate

11   significant additional 404(b).  However, we have interviewed

12   over hundreds of witnesses, and at some point when we go back

13   to re-interview them for trial preparation, they may make some

14   additional allegation that, if we find credible, we will seek

15   to admit.  We are not there yet.

16             The universal 404(b) I expect to be small and

17   defined, and we are, I think so far at least, on the same page

18   at least what that looks for Defendant Lee specifically.

19             THE COURT:  All right.  So I'm going to leave

20   that February 1st date.  Same thing with the *Brady* and *Giglio*.

21   I will leave the date as March 25th.

22             I assume, based on our discussion the last time,

23   that the Government -- I don't assume.  I know the Government

24   recognizes its obligations under *Brady* and is producing

25   whatever *Brady* material on an ongoing basis.  We're not going

```
 1    to wait until a certain deadline.  My idea with this deadline
 2    is almost meaningless because, by that point in time, all the
 3    Brady and Giglio information will have been produced on a
 4    rolling basis.
 5                 MR. JENKINS:  Yes.  That is how we have viewed
 6    it, and that is how we are operating, Your Honor.
 7                 THE COURT:  All right.
 8                 MR. SNYDER:  There is one thing I want to add.
 9                 THE COURT:  You have to sit, pull the microphone
10    close to you.  The court reporter can't make a record and --
11                 MR. SNYDER:  Can I take off my mask?
12                 THE COURT:  Sure.
13                 MR. SNYDER:  Just one thing about that.
14                 THE COURT:  You're still not close enough to the
15    microphone.
16                 MR. SNYDER:  I don't know if the mic is working,
17    Your Honor.
18                 So the only thing I would say about that -- and I
19    agree, in general, that our preference is obviously to work
20    together with the Government, and we think they have, you
21    know -- we have a lot of confidence that they're going to do
22    everything in good faith.
23                 There has been some differentiation between Brady
24    and Giglio material, you know, with an idea that they don't
25    know exactly who they may call in the future.  And so the
```

1    *Giglio* material would come later because they're not quite

2    sure.

3              I think we do have a pretty good sense of --

4    certainly with respect to the cooperators.  These people have

5    signed publicly disclosed cooperation agreements.  There is no

6    question that, if there is a trial, those people are going to

7    testify.

8              And so, you know, in terms of the timing of *Brady*

9    and *Giglio*, I just wanted to make sure that it was the Court's

10   understanding that all that stuff is being disclosed as it

11   happens because there is no point in waiting for several months

12   until we get 60 days out from trial, for example, to start

13   disclosing *Giglio* material.

14             THE COURT:  Yes.  But *Giglio* material is for

15   cross-examination.  I mean, that -- there's such a small amount

16   of that material that is going to be of any assistance in

17   cross-examination.  And then cross-examining a cooperating

18   witness about what he may have said to an agent in an

19   interview, I mean that's just a routine matter that you have

20   done a hundred times.

21             MR. SNYDER:  The only thing I would say is that

22   to some degree I agree which makes it -- there's no problem

23   with producing it early because, if it is routine, then there

24   shouldn't be an issue.

25             But the other thing is, you know, I think that

 1  sometimes something that the Government says, you know, you're

 2  just going to be using it on cross, but oftentimes it's the

 3  case where we have to do additional investigation.  Someone

 4  says something or we find out, you know, a hint of perhaps

 5  criminality or untruthfulness somewhere else and we start

 6  scratching and all of a sudden we uncover a bunch of additional

 7  things.  So that's the only reason why I bring it up.

 8          Again, like I said, I think we are happy to work

 9  with the Government, and we are confident that they will work

10  with us.  But just that we're not having some differentiation

11  between *Brady* and *Giglio* which is actually a subset of *Brady*

12  and that things are just being turned over when they're found

13  and we're not holding things back until a certain point in time

14  when you know a witness is going to testify at trial.

15          MR. NEUMAN:  Your Honor, if I may just to add on.

16          THE COURT:  You can add on, but I'm going to

17  continue, as I indicated, the date of March 25th of 2022 for

18  the *Brady/Giglio*.  So when you do the revised stip, you can use

19  that date.

20          MR. NEUMAN:  That is fine, Your Honor.  The only

21  thing I would say on that point is, as to my client Mr. Lee and

22  940 Hill, the Government's case really is built on a single

23  cooperator.  There is no way for them to do their presentation

24  at trial without that witness.  It's Justin Kim.  So I would

25  ask for everything to be disclosed as soon as possible because

1   waiting until March 25th on that is just completely an

2   unrealistic picture of what the trial is going to look like as

3   to my clients.

4           THE COURT:  What are you talking about?  *Giglio*

5   material?  It's not going to be a -- how is it not going to be

6   a realistic picture?  I mean, Mr. Kim -- I took Mr. Kim's plea.

7   I remember sitting through the very long factual basis for the

8   plea.  So he's going to get on the stand, and Mr. Kim is going

9   to testify presumably consistent with the factual basis for his

10  plea, and I'm sure he has a lot more to say.  You will have

11  your *Giglio* material which whatever it is it is, and you will

12  be able to cross-examine him.

13          MR. NEUMAN:  Well, Your Honor, some of it is

14  actually related, as I understand it from some of my

15  conversations with the Government, some of it may be even

16  related to other matters that we need to investigate.  So given

17  the importance of this witness to the presentation against my

18  client, I think I'm just asking -- and I will confer with the

19  Government.  We're in the middle of a meet and confer on this

20  point.  But I may come back to the Court specifically.

21          THE COURT:  That is fine.  Just meet and confer

22  with the Government, and if there's an issue that needs to be

23  resolved, raise it with me.  I hear what you're saying.

24          MR. NEUMAN:  Thank you, Your Honor.

25          THE COURT:  So the final item is the trial date

```
 1    which was something that I thought we were going to work on and
 2    have an earlier trial date.  I'm not getting any younger.
 3                MR. STEINGARD:  Your Honor, we actually had
 4    conversations looking at our calendars in particular as well as
 5    the work --
 6                THE COURT:  Let me talk about the calendars.  I
 7    don't view all of the throwing in all these cases that
 8    everybody is going to be in trial to be that persuasive
 9    because, as we all know, many of these cases are not going to
10    go to trial that are on the list, especially the public
11    defender who has 20, 30 cases, two- or three-day cases which I
12    don't know but I assume they're not going to go to trial.
13                My goal or my -- in setting a trial date, what is
14    most important to me is that defense counsel and the Government
15    have adequate time to prepare.  All of the other stuff to me
16    is -- it's nice, and I certainly -- if somebody has a trial,
17    I'm not going to set a trial and preclude another judge from
18    going to trial.
19                But if counsel -- and I assume you're all
20    representing to me that this May 24th date is a date that is --
21    may not be the -- well, it's the same date that you picked the
22    last time, but you have now gone back, and you're all -- you
23    all believe that is a trial date that will give you an adequate
24    time -- adequate time on both sides to prepare for trial
25    assuming there is no extraordinary event that happens that
```

1      requires a continuance.  Is that what I'm hearing?

2                  MR. STEINGARD:  That is for my client, yes.

3                  MS. ALÉ:  Your Honor, that is not quite the case

4      for us.  We have a different case than co-defendants have.  We

5      are still going through the discovery as co-defense counsel

6      explained.  At the last hearing, the Government stated that

7      they had an additional terabyte of discovery, and that is a

8      huge amount of discovery.  In fact, they provided two terabytes

9      of discovery that we're still in the process of downloading.

10     We can't possibly know how much of -- how much work we will

11     need to do on that discovery.

12                 And I will just also note for the Court that,

13     although the Government described it as gibberish, it was, in

14     fact, hidden camera footage and the wiretap of five phones from

15     five principal defendants and witnesses.  So although --

16                 THE COURT:  Well, I guess I don't understand

17     what's so difficult about -- my memory was that there was some

18     25 or 30 additional interviews or conversations.  I understand

19     it's time-consuming, but I don't understand the difficulty in

20     reviewing those materials and making a determination as to how

21     they impact your client.  They're just interviews.  So what

22     that they're two-hour interviews and the 302 only summarizes

23     it.  It's a matter of sitting down and listening to the

24     interview, taking a 302, and making your own outline of what

25     was said or sending it to somebody in your office and having a

1   transcript prepared so you can sit down and read it.

2              I understand it's time-consuming, but if you have

3   the materials now -- and we're talking about a May trial

4   date -- there's plenty of time to accomplish a review of those,

5   if I'm hearing right, interviews and the conversations.

6              MS. ALÉ:  Your Honor, it would take my co-counsel

7   in this case and me working full time five months just sitting

8   down listening to -- and watching the video without any lunch

9   breaks or analysis or stopping it.  That's just the discovery,

10  the videos and the audio that's been produced as of last month.

11  That's not including the new production, and that's not

12  reviewing the 2 million plus pages.

13             THE COURT:  Well, there is a fast-forward button

14  on the videos.

15             MS. ALÉ:  You're right, Your Honor.  But when we

16  have somebody's liberty at stake, we wouldn't take those

17  shortcuts.

18             THE COURT:  Then you're going to have to have

19  somebody else in your office help you.

20             MS. ALÉ:  And, Your Honor, I understand that.  We

21  are the Federal Public Defender's Office, and we have a lot of

22  resources, but we do have limited amount of resources.

23             THE COURT:  Based on the -- didn't you sign a

24  joint status report?

25             MS. ALÉ:  Yes, Your Honor.

```
 1                    THE COURT:  You did sign it?
 2                    MS. ALÉ:  Yes, Your Honor.
 3                    THE COURT:  I'm going to set the trial date as
 4    May 24th of 2022.
 5                    All right.  So I will ask counsel to -- you don't
 6    need to do a -- I hate to have -- well, maybe it makes sense to
 7    do a stipulation and a proposed order with the dates that we
 8    talked about today.  It can't be that much.  I don't need all
 9    of the 20 pages that are included in the status report.
10                    MR. STEINGARD:  We will get you a -- in fact, if
11    you want, it will just be a proposed order that we can file.
12                    THE COURT:  I'm not sure that's going to work.
13    Maybe it's better to have just a couple-page stipulation with a
14    proposed order.
15                    MR. STEINGARD:  That is fine.
16                    THE COURT:  All right.
17                    MR. STEINGARD:  We have your dates, and we will
18    work on that together.  Should be able to have it by the end of
19    the week.
20                    THE COURT:  All right.  Anything else?
21                    MR. NEUMAN:  For ease, Your Honor, if -- rather
22    than putting it all into the stipulation, if we could just note
23    here on the record we are standing on our objections.  We will
24    sign a stipulation nonetheless.  Rather than putting in
25    footnotes, we object to this.  We asked for this date.  Just
```

```
 1    keep it on the record right now, Your Honor.

 2              THE COURT:  Your objection --

 3              MR. NEUMAN:  Regarding the disclosure dates.

 4    Just standing on what we had proposed.

 5              THE COURT:  I'm not so sure it was an objection

 6    other than just you proposed dates and the Government proposed

 7    dates and I have made a determination as to what dates I think

 8    are appropriate.  So you are characterizing that as an

 9    objection?  You're objecting to my dates?

10              MR. NEUMAN:  I'm not agreeing to them,

11    Your Honor.  I don't want to get cute, Your Honor.

12              THE COURT:  To me that is exactly what you're

13    doing, and that is exactly what I'm trying to avoid at this

14    stage of the proceeding, and that is to have counsel work

15    cooperatively and in good faith and not play the gotcha card at

16    some point down the road.  And that's what I -- based upon what

17    you just said, that's what I think you are doing which is not

18    going to bode well in this case.

19              MR. NEUMAN:  I'm sorry --

20              THE COURT:  So whatever you want to say on the

21    record you said on the record.

22              MR. NEUMAN:  Very good.

23              MR. JENKINS:  Nothing further from the

24    Government, Your Honor.

25              MR. STEINGARD:  Nothing further from Shen Zen.
```

1            MS. ALE:  Nothing further from Mr. Huizar.

2            THE COURT:  Mr. Braun, you have been very quiet

3  this morning.

4            MR. BRAUN:  Nothing further, Your Honor.

5            MR. NEUMAN:  Nothing further, Your Honor.

6            THE COURT:  All right.  Thank you very much.

7            (Proceedings concluded at 9:08 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5            I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

 6   COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

 7   THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

 8   PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

 9   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13   THE UNITED STATES.

14

15                    DATED THIS  9TH  DAY OF JUNE, 2021.

16

17

18                    /S/ MIRANDA ALGORRI

19                    _____
                      MIRANDA ALGORRI, CSR NO. 12743, CRR
20                    FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25
```