TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (SBN: 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
VERONICA DRAGALIN (SBN: 281370)
MELISSA MILLS (SBN: 248529)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
      1500 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-2091/0647/0627
      Facsimile: (213) 894-7631
      E-mail: Mack.Jenkins@usdoj.gov
              Veronica.Dragalin@usdoj.gov
              Melissa.Mills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-326(A)-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF DATE FOR GOVERNMENT'S DISCLOSURE OF EXHIBIT LIST (CR 209) |
| v. | |
| JOSE LUIS HUIZAR, et al. | |
| Defendants. | Date:      September 20, 2021<br>Time:      8:00 a.m.<br>Location: Courtroom of the Hon.<br>           John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Veronica Dragalin, and Melissa Mills, hereby files its Opposition to Defendants' Motion for Reconsideration of Date for Government's Disclosure of Exhibit List (CR 209).

1    This opposition is based upon the attached memorandum of points

2 and authorities, the files and records in this case, and such further

3 evidence and argument as the Court may permit.

4

5  Dated: August 30, 2021            Respectfully submitted,

6                                    TRACY L. WILKISON
                                     Acting United States Attorney
7
                                     SCOTT M. GARRINGER
8                                    Assistant United States Attorney
                                     Chief, Criminal Division
9

10

11                                   _____
                                     MACK E. JENKINS
12                                   VERONICA DRAGALIN
                                     MELISSA MILLS
13                                   Assistant United States Attorneys

14                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.   BACKGROUND**

3    On May 5, 2021, defendants first asked this Court to set a

4 deadline of June 15, 2021 for the disclosure of the government's

5 exhibit list.[1]  (CR 182 at 6, 9-11.)  After a joint filing and an

6 extensive hearing, the Court rejected that request and set the

7 deadline for the government's draft exhibit list as February 15,

8 2022.  (CR 187.)  Now, despite the extensive efforts already made by

9 the government – which exceed the Court's order and far exceed the

10 typical practice in cases in this district with respect to creation

11 and provision of government work product – defendants return to this

12 Court seeking to further expand the requests previously denied by the

13 Court.  These demands seek work product to which defendants are not

14 legally entitled, that are not currently in the government's

15 possession, and that otherwise unfairly burden the government and

16 fail to recognize the significant steps taken to date to aid the

17 defendants' trial preparation.

18    After the May 10, 2021 Court hearing setting the pre-trial

19 deadlines, the government began "working on identifying Bates-stamped

20 versions of the documents quoted or cited in the First Superseding

21 Indictment."[2]  (Def. Ex. C at 3.)  Consistent with its continued

22

23    [1] An exhibit list typically includes simply a generic and brief
description of the exhibit and a number for its identification.  It
24 does not include, for example, associated Bates numbers, references
to relevant overt acts, categorization by relevance, or the actual
25 exhibit itself.

26    [2] As the government has repeatedly explained to defense counsel,
while the Complaint affidavit and indictment presentation to the
27 grand jury relied on the FBI agent's testimony and review of relevant
documents, that early case presentation did not use or rely on Bates-
28 stamped versions of documents produced in discovery.  Thus, the
government is now reviewing the discovery, which is also available to
*(footnote cont'd on next page)*

efforts to facilitate defendants' trial preparation simultaneous with its own preparation for trial and exceeding the requirements of any discovery obligation, the government agreed to share that specific work product with all counsel.  (Id.)  In addition, not only did the government agree to produce this Bates-stamped enumerated list of exhibits well in advance of the Court's deadline for an exhibit list, the government offered to organize the list by Overt Act.  (Id.)  The government noted this would "make it even easier than a traditional exhibit list to identify specific documents relevant to each respective defendant/scheme."  (Id.)  The government noted to the defense that to create this product, the government was "using the same process that has been available to the defense during the pendency of this case (e.g., searching the discovery database for dates and quoted language to find the corresponding email, text message, linesheet/wire call, etc. by Bates number)."  (Id.)

Consistent with its commitment to exceed the obligations of the Court's pre-trial order, on August 2, 2021, the government produced to the defense a detailed index: (a) listing 470 documents; (b) providing the Bates number; (c) file name; (d) production volume; (e) corresponding Overt Act number; and (f) where applicable, substantive count number (the "enhanced index").  The government provided this enhanced index – which greatly exceeds the content and functionality of a standard exhibit list - more than nine months before trial.

Nevertheless, defendants want more.  They now ask the Court to reconsider its prior ruling, because the government declined

the defense, to identify Bates-stamped versions of the documents quoted, summarized, or referenced in the indictment, or otherwise relied on in the indictment and Complaint affidavit.

1  defendants' directive for "a series of four meeting sessions on
2  different days, each focusing on the government's evidence as it
3  relates to the various aspects of the case."  (Def. Ex. C at 1.)
4  Defendants "expect the government at each session to trek through the
5  overt acts as it applies to each defendant's case, but also identify
6  any additional recordings/transcripts, emails, text messages, etc.,
7  that are not specifically referenced in the FSI but which will be
8  presented at trial."  (Id.)

9      In making such an unprecedented demand, defendants were
10 essentially ordering the government to prepare and provide four
11 separate reverse proffers specially tailored to each defendant.  (Id.
12 at 5.)  As the government explained to defendants, "reverse proffers
13 in general are very rare and there is no rule, case law, or court
14 order directing the government to provide such a service.  Indeed,
15 the case law is clear that the defense is not entitled to a dress
16 rehearsal of the government's trial, much less four of them."  (Id.)
17 Notably, defendants' requests and statements made explicitly clear
18 that they were seeking reverse proffers to make their trial
19 preparation easier not to resolve their cases.  Reverse proffers are
20 not provided as a shortcut to defense trial preparation by
21 piggybacking on ongoing government work product.  The government
22 asserts that nothing in the Court's order or its comments at the May
23 10 hearing demonstrated that the Court sought to compel the
24 government to take such extraordinary steps at this stage of the
25 proceeding.

26     Defendants now ask this Court to reconsider its prior ruling and
27 set a deadline of October 1, 2021 for the government's draft exhibit
28 list – over four months before the Court's current deadline and more

3

than seven months before trial.  Defendants fail to meet the standard for reconsideration and cite no cases to support their position that they can compel the government to create work product for their use on their preferred timetable as a substitute for their own trial preparation.

## II.  ARGUMENT

### A.   Legal Standard

A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  Kona Enterprises v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).  To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  Id.  "A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."  Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).

"A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden."  Arteaga v. Asset Acceptance, LLC, 733 F. Supp. 2d 1218, 1236 (E.D. Cal. 2010).  "Nor is reconsideration to be used to ask the court to rethink what it has already thought."  Id.

### B.   Defendants Fail to Meet the Standard for Reconsideration

The only change in circumstance between the Court's order setting a February 15, 2022 deadline for the government's draft exhibit list is that government has already taken significant steps

4

1    to exceed, both temporally and substantively, this deadline.

2    Specifically, the government has produced to the defense an enhanced

3    index listing 470 documents, providing the Bates number, file name,

4    and production volume, as well as the corresponding Overt Act number

5    and, where applicable, substantive count number.  Only two

6    substantive counts (Counts 37 and 38) are not otherwise covered by

7    the Overt Acts in Count One in the FSI.[3]  Therefore, the <u>evidence</u>

8    <u>supporting the Overt Acts of Count One will also prove the other 38</u>

9    <u>substantive counts</u> in the FSI (Counts 2-36 and 39-41).  Defendants'

10   claim that the government has provided "a batch of exhibits

11   corresponding to just four of the 40 non-RICO substantive counts" is

12   therefore misleading.  (CR 209 at 3.)

13        While defendants improperly frame the issue as one of "the

14   government's disclosure" (<u>id.</u>), as the government has repeatedly made

15   clear in numerous meet-and-confers and as stated on the record to the

16   Court, the issue is not the government refusing to disclose material

17   in its possession.  The issue is whether defendants can force the

18   government to create something for defendants' use at a time that is

19   optimally convenient to defendants, notwithstanding that defendants

20   can create that very same work product on their own.  Defendants fail

21   to cite any cases – because none exist – supporting their contention

22   that they can compel the government to create an enhanced index that

23   goes far beyond a traditional exhibit list.

24        Having heard the parties' positions and arguments, this Court

25   set a deadline for the government's draft exhibit list and witness

26

27        [3] Those two counts charge defendant HUIZAR with making false
     statements to a financial institution in connection with a
28   residential loan (Count 37), and defendants LEE and 940 HILL with
     altering records to obstruct a federal investigation (Count 38).

list on February 15, 2022, three months before trial.  Defendants now ask the Court to reconsider that order and require the government to provide its draft exhibit list more than <u>seven months before trial</u>, and approximately 10 days after the resolution of the instant motion.[4]  Such a deadline is unfeasible and unnecessary.

Given the Court's order setting pre-trial motions deadlines and a trial date of May 24, 2022, the government has focused on completing discovery, walking defense counsel through the discovery and answering their questions, responding to defense letters on various topics, resolving discovery disputes and technological issues, meeting with defense team members to discuss potential case resolutions, and responding to pre-trial motions, in addition to preparing for trial.  Moreover, two sets of defendants have filed motions to sever, which are currently pending, and which could mean the government may have to prepare for multiple trials on different dates, affecting the exhibit list(s).  In addition, the government continues to engage in discussions with defendants on discovery issues to resolve disputes without the need for the Court's intervention, and to respond to (thus far) a motion by defendants LEE and 940 HILL to compel further discovery, as well as the instant motion.  Despite these and other competing interests and obligations, including on matters in this case and others, the government has produced an early batch of exhibits for 75 Overt Acts many months in

---

[4] It is unclear in defendants' motion if they further expect the government to create and complete the previously offered enhanced index that not only lists exhibits but provides Bates numbers and corresponding Overt Acts and Count numbers by their significantly advanced deadline.  The government would object to any such order and presumes their current request relates only to a standard exhibit list.

1    advance of trial.

2         An October 1, 2021 deadline to complete its exhibits list would

3    mean the deadline would be in advance of the resolution of the

4    severance motions, six weeks before the resolution of motions to

5    dismiss the indictment, and months before the resolution of

6    suppression motions and in limine motions, which could significantly

7    alter admissible evidence at trial.  The filing and resolution of

8    these motions, as well as potential pre-trial resolutions, may

9    significantly alter the government's case-in-chief, and therefore its

10   exhibit list.  These were factors raised by the government and

11   accounted for by the Court in its decision to set the instant

12   deadline.  Moreover, given the high level of detail in the FSI, the

13   over 400 Overt Acts, the fact that the overwhelming majority of the

14   evidence underpinning these charges has been in defense counsel's

15   possession for many months, and that the defense has the same tools

16   as the government to search for and identify evidence relevant to the

17   detailed indictment,[5] defendants' claim that they need an exhibit

18   list nearly eight months before trial is not compelling.

19        As the government explained to the defense, its "offer to share

20   this work product with the defense goes well beyond the government's

21   discovery obligations, beyond the Court's order, and is

22   extraordinarily rare."  (Def. Ex. E at 2.)  Nevertheless, in the

23   spirit of cooperation and in attempt to reduce the need for Court

24   intervention and resource-intensive motion practice, the government

25   agreed take these steps.  Then, when defendants objected to the

26   government's plan, the government reconfigured its own work plan ——

27   _____

28        [5] A process the government has, on more than one occasion,
     walked defense counsel through for that purpose.

                                    7

1   the primary purpose of which is to aid the government in preparing

2   its trial exhibits —— to accommodate each of the defendants' stated

3   concerns by creating the enhanced index rolling production process.

4   Still unhappy with the government's ever-expanding accommodations,

5   defendants have shown no reciprocal spirit of cooperation, ignored

6   the government's request for a similar advance provision of their own

7   lists,[6] and instead filed this motion demanding more.

8        The government respectfully requests that the Court deny

9   defendants' motion to reconsider setting an early deadline for the

10  government's draft exhibit list.  The government will provide its

11  draft exhibit list to the defense when it is complete, and certainly

12  no later than the Court's deadline of February 15, 2022.

13       **C.   If the Court Advances the Exhibit List Deadline, It Should
          Be by No More than Two Months to Allow the Government
14        Sufficient Time to Comply**

15       As outlined above, the government has focused resources on

16  various aspects of this case instead of creating a traditional

17  exhibit list, including compiling the more comprehensive enhanced

18  index.  It appears that defendants are unsatisfied with the

19  government's efforts, and that they instead demand a traditional

20  exhibit list on a faster timetable.  If the Court agrees to

21  reconsider its earlier exhibit deadline as defendants urge, the

22  government will have to refocus and reprioritize its efforts on

23  creating the exhibit list.  Completing the exhibit list by October 1,

24  2021, particularly given the various pending motions that have been

25  filed and that are outstanding, is not feasible.  Thus, if the Court

26  advances the deadline, the government respectfully requests a

27

28       [6] At the hearing, the Court also said it was contemplating
    advancing the dates of certain of defendants' obligations.

8

1  deadline of no sooner than December 15, 2021, for its draft exhibit
2  list.

3       **D.    The Government Is Under No Obligation to Share Its Work
               Product with the Defense**

4

5       If the government must refocus its resources on creating an
6  exhibit list in advance of the current deadline, it will pause its
7  efforts on the enhanced index project to comply with the Court's
8  order.[7]  Nothing in the discovery rules, case law, or the Court's
9  prior rulings requires the government to create and distribute its
10 work product (i.e., the enhanced index) for defendants' benefit,
11 especially so far in advance of trial.  Forcing the government to
12 complete and share the enhanced index would contravene the general
13 principle that the government has no duty to create material for the
14 defendant's use.  See, e.g., United States v. Sukumolachan, 610 F.2d
15 685, 687 (9th Cir. 1980) (defendant had no right to "compel the
16 government to make voiceprint analyses of the recordings available
17 for his use"); Richards v. Solem, 693 F.2d 760, 766 (8th Cir. 1982)
18 ("Although the state has a duty to disclose evidence, it does not
19 have a duty to create evidence.").  Finally, the government requests
20 that in any order issued in response to this Motion, the Court
21 clarify for the record that it is not ordering the creation of or any
22 production schedule for any enhanced index.

23 **III. CONCLUSION**

24      For the foregoing reasons, the government respectfully requests
25 that this Court deny the defendants' motion for reconsideration.

26

27

---

28      [7] As it stands, the government may need to amend the previously
proffered rolling production timetable.

9