TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (SBN: 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
VERONICA DRAGALIN (SBN: 281370)
MELISSA MILLS (SBN: 248529)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-2091/0647/0627
     Facsimile:  (213) 894-7631
     E-mail: Mack.Jenkins@usdoj.gov
             Veronica.Dragalin@usdoj.gov
             Melissa.Mills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-326(A)-JFW |
| Plaintiff, | GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANTS DAE YONG LEE, 940 HILL, AND SHEN ZHEN NEW WORLD I, LLC'S MOTIONS TO SEVER (CR 200 AND CR 201) |
| v. | |
| JOSE LUIS HUIZAR, et al. | |
| Defendants. | Date:    October 15, 2021<br>Time:    8:00 a.m.<br>Location: Courtroom of the Hon.<br>          John F. Walter |

     Plaintiff United States of America, by and through its counsel
of record, the Acting United States Attorney for the Central District
of California and Assistant United States Attorneys Mack E. Jenkins,

Veronica Dragalin, and Melissa Mills, hereby files its Omnibus[1] Opposition to defendants DAE YONG LEE and 940 HILL's Motion to Sever (CR 200) and defendant SHEN ZHEN NEW WORLD I, LLC's Motion to Sever (CR 201).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 7, 2021          Respectfully submitted,

                                  TRACY L. WILKISON
                                  Acting United States Attorney

                                  SCOTT M. GARRINGER
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  /S/
                                  _____
                                  MACK E. JENKINS
                                  VERONICA DRAGALIN
                                  MELISSA MILLS
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

---

[1] In order to make the Court's review more efficient, the government responds to both severance motions in this single filing, which does not exceed the 25-page limit.

2

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................1

TABLE OF AUTHORITIES...............................................1

I.    INTRODUCTION.................................................1

II.   FACTUAL BACKGROUND..........................................2

III.  ARGUMENT....................................................5

      A.    Legal Standard........................................5

      B.    Defendants Fail to Meet the Heavy Burden of Showing
            Undue Prejudice Warranting Severance..................6

            1.    A Joint Trial Where the Indictment Charges All
                  Defendants in a Single Honest Services Scheme Is
                  Analogous to a Conspiracy Case..................8

            2.    The Court's Jury Instructions Will Mitigate
                  Against Any Undue Prejudice....................16

            3.    Different Degrees of Culpability Do Not Require
                  Severance, Particularly Where Risk of Prejudice
                  Is Slight......................................20

      C.    A Joint Trial Will Promote Efficiency and Serve the
            Interests of Justice.................................24

IV.   CONCLUSION.................................................25

1

## TABLE OF AUTHORITIES

2    **Cases**                                                          **Page(s)**

3    Bourjaily v. United States,
         483 U.S. 171 (1987) ......................................... 10
4

     Bruton v. United States,
5        391 U.S. 123 (1968) ......................................... 16

6    Richardson v. Marsh,
         481 U.S. 200 (1987) ...................................... 5, 24
7

8    Robinson v. United States,
         33 F.2d 238 (9th Cir. 1929) ................................. 8

9    Sendejas v. United States,
         428 F.2d 1040 (9th Cir. 1970) .............................. 11
10

11   United States v. Blankenship,
         382 F.3d 1110 (11th Cir. 2004) ............................. 14

12   United States v. Boone,
         628 F.3d 927 (7th Cir. 2010) ..................... 10, 11, 14
13

14   United States v. Burke,
         789 F. Supp. 2d 395 (E.D.N.Y. 2011) ....................... 14

15   United States v. DeRosa,
         637 F.2d 889 (9th Cir. 1982) ........................... 20, 21
16

17   United States v. DiNome,
         954 F.2d 839 (2d Cir. 1992) ................................ 13

18   United States v. Escalante,
         637 F.2d 1197 (9th Cir. 1980) ........................... 6, 15
19

20   United States v. Fernandez,
         388 F.3d 1199 (9th Cir. 2004) ........................... 9, 15

21   United States v. Gilbert,
         504 F. Supp. 565 (S.D.N.Y. 1980) .......................... 20
22

23   United States v. Hanley,
         190 F.3d 1017 (9th Cir. 1999) .............................. 16

24   United States v. Hernandez-Orellana,
         539 F.3d 994 (9th Cir. 2008) ........................... 7, 20
25

26   United States v. Lewis,
         787 F.2d 1318 (9th Cir. 1986) .............................. 17

27   United States v. Lothian,
         976 F.2d 1257 (9th Cir. 1992) ........................... 8, 11
28

United States v. Marcello,
    731 F.2d 1354 (9th Cir. 1984) ............................... 19

United States v. McDonald,
    576 F.2d 1350 (9th Cir. 1978) ............................... 6

United States v. Miller,
    874 F.2d 1255 (9th Cir. 1989) ............................... 17

United States v. Nelson,
    137 F.3d 1094 (9th Cir. 1998) ............................... 16

United States v. Sampol,
    636 F.2d 621 (D.C. Cir. 1980) ........................... 13, 17

United States v. Shkreli,
    260 F. Supp. 3d 247 (E.D.N.Y. 2017) ........................ 20

United States v. Stapleton,
    293 F.3d 1111 (9th Cir. 2002) ............................... 9

United States v. Sullivan,
    522 F.3d 967 (9th Cir. 2008) ............................. 7, 10

United States v. Van Cauwenberghe,
    827 F.2d 424 (9th Cir. 1987) ........................ 16, 19-20

United States v. Vasquez-Velasco,
    15 F.3d 833 (9th Cir. 1994) ................................ 20

United States v. Weatherspoon,
    410 F.3d 1142 (9th Cir. 2005) ............................... 17

United States v. Zavala-Serra,
    853 F.2d 1512 (9th Cir. 1988) ........................... 11-12

Zafiro v. United States,
    506 U.S. 534 (1993) .......................... 5, 15, 18-19

**Statutes**

18 U.S.C. § 666 ............................................... 2

18 U.S.C. § 1001 .............................................. 2

18 U.S.C. § 1014 ............................................. 2-3

18 U.S.C. § 1341.............................................. 1

18 U.S.C. § 1343 .............................................. 1

18 U.S.C. § 1519 .............................................. 2

18 U.S.C. § 1952 .............................................. 2

18 U.S.C. § 1956 ............................................... 2

18 U.S.C. § 1962 ............................................... 1

26 U.S.C. § 7201 ............................................... 3

31 U.S.C. § 5324 ............................................... 2

**Other**

Fed. R. Evid. 401 ............................................. 11

Fed. R. Evid. 801............................................ 10, 12

Fed. R. Crim. Proc. 14 ..................................... 5, 6, 18

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      This case is about public officials commodifying their powerful
4 positions with the City of Los Angeles due to their greed for money
5 and power. It is also about wealthy businesspersons who fed this
6 appetite by illicitly purchasing favored treatment from these
7 officials to fuel their own greed while in pursuit of lucrative
8 advantages during a booming development era in downtown Los Angeles.
9 The First Superseding Indictment ("FSI") charges all defendants with
10 a scheme to defraud the City of Los Angeles and its citizens of their
11 right to the honest services of their public officials, in violation
12 of 18 U.S.C. §§ 1341, 1343, and 1346.  (CR 71, FSI ¶¶ 44-46, Counts
13 2-17.)  The FSI also charges defendants JOSE HUIZAR and RAYMOND CHAN
14 (the public officials) with RICO conspiracy in violation of 18 U.S.C.
15 § 1962(d).  (FSI Count 1.)  While defendants WEI HUANG, SHEN ZHEN NEW
16 WORLD I, LLC ("SZNW"), DAE YONG LEE ("LEE"), and 940 HILL, LLC ("940
17 HILL") (collectively, the "Developer Defendants") are not charged in
18 Count One, the alleged means and methods of the scheme to defraud are
19 nearly identical to the means by which the object of the RICO
20 conspiracy was to be accomplished. (Compare FSI ¶ 45 with FSI ¶ 42.)
21 The honest services scheme and the RICO conspiracy scheme cover the
22 same time-period,[1] and implicate the same public officials,
23 consultants, and developers.  (FSI ¶¶ 40, 44.)  Thus, at trial, proof
24 of the overt acts of the RICO conspiracy will also prove the honest
25 services scheme.  Although the Developer Defendants are not charged

26

27

28      [1] Contrary to defendant SZNW's claim that the "evidence spans
approximately 15 years" (CR 201 at 20), the alleged honest services
scheme and RICO conspiracy span less than 8 years.

with the same substantive violations as defendant HUIZAR, defendant HUIZAR committed additional crimes in furtherance of and to conceal the honest services scheme he executed with the Developer Defendants.

As such, much of the most compelling evidence at trial will be admissible against all four defendants who participated in a joint honest services scheme.[2]  Nevertheless, the Developer Defendants have filed two motions to sever (CR 200 and CR 201), requesting separate trials from the very person they both are alleged to have bribed and both for the same general purpose.  Because the Developer Defendants have failed to overcome the high burden of showing undue prejudice warranting severance, this Court should deny the severance motions. A joint trial will promote efficiency for the Court, witnesses, and parties and serve the interests of justice.

## II.  FACTUAL BACKGROUND

In addition to the joint honest services scheme, each defendant is charged with additional substantive crimes that all flow from and are related to the central underlying honest services scheme, which essentially operated as a bribery pay-to-play scheme.  These additional crimes include violations of other bribery-related laws, such as Federal Program Bribery in violation of 18 U.S.C. § 666 (charged against all defendants), and Travel Act in violation of 18 U.S.C. § 1952(a)(3) (charged against defendants HUIZAR, HUANG, and SZNW).  They also include crimes relating to the co-schemers' efforts

_____

[2] Because defendant LEE is the corporate representative of defendant 940 HILL, LLC and represented by the same counsel, those two defendants at trial will be treated as one and the same. Defendants HUIZAR, CHAN, and SZNW are the additional three defendants.  If defendant HUANG, who is currently a fugitive, is apprehended before trial, the evidence against him and SZNW will be identical, as defendant HUANG was the Chairman and agent of SZNW.

to conceal their bribery scheme, including Obstruction of Justice in violation of 18 U.S.C. § 1519 (charged against defendants LEE and HILL), False Statements in violation of 18 U.S.C. § 1001 (charged against defendants HUIZAR and CHAN), Money Laundering in violation of 18 U.S.C. § 1956, Structuring in violation of 31 U.S.C. § 5324, False Statements to a Financial Institution, in violation of 18 U.S.C. § 1014, and Tax Evasion in violation of 26 U.S.C. § 7201 (charged against defendant HUIZAR only).

Defendant HUIZAR's additional crimes committed in furtherance of and to conceal the honest services scheme implicate the Developer Defendants directly.  For example, defendant HUANG, Chairman and President of defendant SZNW, is alleged to have directly participated in the L.A. Grand Hotel Bribery Scheme (O.A. 1-84), and is charged, along with defendant SZNW, with substantive crimes arising out of that scheme (Counts 2-4, 18-21, 23).  The FSI alleges and specifically mentions defendant HUANG in various other acts in furtherance of the scheme including defendant HUIZAR's solicitation of campaign contributions from developers, including from defendant HUANG (O.A. 351), defendant HUIZAR's solicitation of contributions to a high school, including from defendant HUANG (O.A. 353), defendant HUIZAR's money laundering and structuring arising out of a trip to Australia with defendant HUANG (O.A. 361, 365, 366), the co-schemers' concern about detection on defendant HUANG's private jet flights to Las Vegas (O.A. 429-433), defendant HUIZAR's concealment of a large cash sum at his residence, including cash accepted from defendant HAUNG (O.A. 445), defendant HUIZAR's witness tampering relating to defendant HUANG (O.A. 446), and defendant CHAN's false statements regarding his knowledge of the corrupt relationship between

3

1  defendants HUANG and HUIZAR (O.A. 452).

2      The joint trial in this case would include four defendants: two

3  public officials and two developers.  While the honest services

4  scheme implicated several development projects in downtown Los

5  Angeles, the scheme operated in the same manner and had, as defendant

6  SZNW recognizes, "a single common denominator: a connection to JOSE

7  HUIZAR."  (CR 201 at 1.)  Specifically, the FSI alleges that the RICO

8  enterprise and honest services scheme implicated four major

9  development projects in defendant HUIZAR's district, CD-14: the L.A.

10  Grand Hotel Project, the 940 Hill Project, the Luxe Hotel Project,

11  and Project M.  At trial, the government will prove how the City

12  development and approval process operated, the powerful role

13  defendant HUIZAR played both on the City Council and as the Chair of

14  the Planning and Land Use Management Committee, and the way in which

15  public officials (defendants HUIZAR and CHAN and their co-schemers)

16  were able to abuse the City process to illicitly solicit and accept

17  benefits from consultants and developers in exchange for their

18  agreement to commit official acts on development projects, including

19  on an "as needed" basis.  Percipient witnesses, cooperators, law

20  enforcement agents, and experts will testify about how the scheme

21  operated to the benefit of all four defendants.

22      The government will also present evidence of the benefits

23  offered and provided by various developers and consultants, including

24  the Developer Defendants, in exchange for official acts and

25  agreements to commit official acts to advantage their respective

26  development projects.  Because bribery requires a *quid pro quo*, proof

27  of the corrupt intent on both sides of the equation will be

28  interrelated, meaning that evidence of the public officials' corrupt

4

1    intent is probative of the developers' corrupt intent and vice versa.

2    As such, this evidence will be admissible, relevant, and probative

3    against all four defendants who participated in the charged joint

4    honest services scheme.

5    **III.  ARGUMENT**

6        **A.   Legal Standard**

7        As the Supreme Court has recognized, "[t]here is a preference in

8    the federal system for joint trials of defendants who are indicted

9    together."  Zafiro v. United States, 506 U.S. 534, 537 (1993).  Joint

10   trials "play a vital role in the criminal justice system."

11   Richardson v. Marsh, 481 U.S. 200, 209 (1987).  They promote

12   efficiency and "serve the interests of justice by avoiding the

13   scandal and inequity of inconsistent verdicts."  Id. at 210.  "For

14   these reasons, [courts] repeatedly have approved of joint trials."

15   Zafiro, 506 U.S. at 537.  "Moreover, Rule 14 does not require

16   severance even if prejudice is shown; rather, it leaves the tailoring

17   of the relief to be granted, if any, to the district court's sound

18   discretion."  Id.  "When the risk of prejudice is high, a district

19   court is more likely to determine that separate trials are necessary,

20   but ... less drastic measures, such as limiting instructions, often

21   will suffice to cure any risk of prejudice."  Id. at 538-539.

22       The Supreme Court has also recognized that "it is well settled

23   that defendants are not entitled to severance merely because they may

24   have a better chance of acquittal in separate trials."  Id. at 540.

25   In Richardson v. Marsh, the Supreme Court observed:

26           It would impair both the efficiency and the fairness of the
             criminal justice system to require ... that prosecutors
27           bring separate proceedings, presenting the same evidence
             again and again, requiring victims and witnesses to repeat
28           the inconvenience (and sometimes trauma) of testifying, and

1
2
3
4

> randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability - advantages which sometimes operate to the defendant's benefit.

481 U.S. at 209-10.

Under Rule 14, the defendant has the burden of proving "clear," "manifest," or "undue" prejudice from a court's denial of a severance motion and the resulting joint trial.  United States v. McDonald, 576 F.2d 1350, 1355 (9th Cir. 1978).  A defendant:

> must show more than that a separate trial would have given him a better chance for acquittal.  He must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant.

United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir. 1980).  "In other words, the prejudice must have been of such magnitude that the defendant was denied a fair trial.  Clearly, this is not an easy burden to meet."  Id. (internal citations omitted).

## B. Defendants Fail to Meet the Heavy Burden of Showing Undue Prejudice Warranting Severance

The Ninth Circuit has developed a four-part test to aid the district court's determination regarding severance, including: "(1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [defendant] could show, with some particularity, a risk that the joint trial would compromise a

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Hernandez-Orellana, 539 F.3d 994, 1001 (9th Cir. 2008). "The most important factors are whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury." United States v. Sullivan, 522 F.3d 967, 981-82 (9th Cir. 2008).

As discussed below, each of the four factors supports a joint trial here. As to the first and third factors, the joint trial in this case would include four defendants who are all charged in the exact same honest services bribery scheme stemming from their similar conduct involving the same former City Councilmember seeking similar illicit favors. Although certain of the evidence and the legal concepts in this case are arguably complex, the evidence and legal concepts all stem from the central and commonly understood crime of bribery and are well within the competence of an ordinary juror. A jury may reasonably be expected to collate and appraise the individual evidence against each defendant. As to the second factor, this Court's diligent and tailored jury instructions on the limited purposes for which certain evidence may be used, both during trial and at the conclusion of evidence, will sufficiently mitigate against any unfair prejudice. As to the fourth factor, there is no particular or credible risk that a joint trial of the Developer Defendants alongside the public officials that each schemed to bribe would compromise any specific trial right or prevent the jury from making a reliable judgment about guilt or innocence.

1          1.   A Joint Trial Where the Indictment Charges All
                Defendants in a Single Honest Services Scheme Is
2               Analogous to a Conspiracy Case

3          While the Developer Defendants recognize that joint trials are

4    particularly appropriate where co-defendants are charged with

5    conspiracy, defendants in both motions overlook a fundamental flaw in

6    their argument that the absence of a charged conspiracy in this case

7    will lead to a spillover of inadmissible evidence and therefore

8    warrants separate trials.  See, e.g., CR 200 at 1, 13; CR 201 at 17.

9    Specifically, all defendants in this case are charged in a single

10   honest service bribery scheme, alleged to have operated in the same

11   way, which makes this case analogous to a conspiracy case, including

12   for purposes of a severance analysis.

13         The Ninth Circuit has long recognized that "mail and wire fraud

14   are treated like conspiracy in several respects.  Similar evidentiary

15   rules apply.  Just as acts and statements of co-conspirators are

16   admissible against other conspirators, so too are the statements and

17   acts of co-participants in a scheme to defraud admissible against

18   other participants."  United States v. Lothian, 976 F.2d 1257, 1262

19   (9th Cir. 1992) (citing Robinson v. United States, 33 F.2d 238, 240

20   (9th Cir. 1929) ("[I]f a conspiracy exists in fact [as when a scheme

21   to defraud is shared by several], the rules of evidence are the same

22   as where a conspiracy is charged.") (alterations in original)).

23   The law is also well-settled that co-schemers are liable for the acts

24   of other participants in a scheme to defraud to the same extent as

25   they would be in a charged conspiracy.  See Lothian, 976 F.2d at 1263

26   ("Like co-conspirators, knowing participants in the scheme are

27   legally liable for their co-schemers' use of the mails or wires.")

28   (cleaned up); United States v. Stapleton, 293 F.3d 1111, 1120 (9th

                                    8

Cir. 2002) ("[T]he substantive law of this circuit is that co-schemer liability for mail or wire fraud does not require proof of a conspiracy.  We have held that co-schemer liability is possible for knowing participants in the fraudulent scheme for which the mails or wires were used.") (charges included only substantive fraud offenses and no conspiracy); see also Ninth Circuit Model Jury Instruction No. 8.122 ("If you decide that the defendant was a member of a scheme to defraud and that the defendant had the intent to defraud, the defendant may be responsible for other co-schemers' actions during the course of and in furtherance of the scheme, even if the defendant did not know what they said or did.").

When viewed through this lens, the same rationale that favors joint trials in conspiracy cases applies to this case, which charges all defendants in a single honest services bribery scheme.  See, e.g., United States v. Fernandez, 388 F.3d 1199, 1241 (9th Cir. 2004) ("a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials").

A central issue at trial will be whether the Developer Defendants had the requisite corrupt intent in providing benefits to defendant HUIZAR.  That corrupt intent will be informed by whether defendant HUIZAR illicitly solicited bribes in return for his official acts.  "[B]ecause a person's state of mind is rarely susceptible of proof by direct evidence, specific intent to defraud may be, and most often is, inferred from the totality of the circumstances, including indirect and circumstantial evidence."

1   United States v. Boone, 628 F.3d 927, 936 (7th Cir. 2010) (cleaned

2   up); see also United States v. Sullivan, 522 F.3d 967, 974 (9th Cir.

3   2008) ("It is settled law that intent to defraud may be established

4   by circumstantial evidence.  Intent may be inferred from

5   misrepresentations made by the defendants, and the scheme itself may

6   be probative circumstantial evidence of an intent to defraud.")

7   (cleaned up).

8            a.   Defendants' Prejudice Analysis Is Fundamentally
                  Flawed
9

10       Based on the above legal framework, defendant SZNW is incorrect

11   in arguing that statements made by co-schemers HUIZAR and George

12   Esparza in furtherance of the bribery scheme are "inapplicable to and

13   inadmissible against SZNW."  CR 201 at 18-19.  As defendant SZNW

14   recognizes, the co-schemers' "attempts to conceal their identities

15   and/or avoid contact with law enforcement reflect an awareness of

16   wrongdoing."  Id. at 19.  This is directly relevant to the Developer

17   Defendants' intent during their interactions with these co-schemers.

18   That is, the jury can properly infer a nefarious and corrupt

19   relationship between defendant HUIZAR/Esparza and defendant SZNW

20   based on the co-schemers' statements and conduct, which are thus

21   admissible against defendant SZNW.  See, e.g., Boone, 628 F.3d at 935

22   (evidence of co-schemers' conduct "was directly relevant to establish

23   a critical component of the scheme" and therefore admissible as

24   "direct evidence of the offense [theft of honest services]" and to

25   establish defendant's knowledge).  The admission of co-conspirator

26   statements pursuant to Federal Rule of Evidence 801(d)(2)(E) requires

27   only that: (1) the declaration was made during the life of a

28   conspiracy; (2) it was made in furtherance of the conspiracy; and (3)

there is, including the co-conspirator's declaration itself, sufficient proof of the existence of the conspiracy and of the defendant's connection to it.  See Bourjaily v. United States, 483 U.S. 171, 173, 181 (1987).  The defendant need not be present at the time the co-conspirator made the statement.  Sendejas v. United States, 428 F.2d 1040, 1045 (9th Cir. 1970) ("It is well settled that a conversation between two co-conspirators which takes place out of the presence of a third co-conspirator is admissible into evidence against the third co-conspirator.").  As articulated above, these same rules apply to co-schemers.  See, e.g., Lothian, 976 F.2d 1257, 1262.

For the same reasons, defendant LEE is incorrect in arguing that "the post hoc recordings of Kim and Mr. Lee, and any circumstantial evidence regarding the specifics of the alleged payment from Mr. Lee's perspective (e.g., what he did or did not tell others, whether and how he accounted for it, etc.), shed no light on Huizar's knowledge or intent."  CR 200 at 14.  Defendant LEE's statements in furtherance of the scheme -- whether during the scheme or "post hoc" --- and his conduct in attempting to conceal the bribe payment, are all directly relevant to and thus admissible against defendant HUIZAR.  See United States v. Tille, 729 F.2d 615, 620 (9th Cir. 1984) (admitting co-conspirator statements made to informant related to concealment of the conspiracy).  This is because that evidence makes it more probable that the $500,000 cash payment by defendant LEE was intended as a bribe to defendant HUIZAR and co-schemer Esparza needing concealment and shady accounting rather than a legitimate business transaction.  See Fed. R. Evid. 401; Boone, 628 F.3d at 937 ("[e]ven evidence unrelated to [defendant] directly was

1  relevant in that it showed that the dealings regarding that property
2  were not routine").

3      Although not charged in the instant indictment, Justin Kim is a
4  co-schemer in the 940 Hill Bribery Scheme and pled guilty to the same
5  before this Court.  Thus, defendant LEE's statements to Kim in
6  furtherance of concealing the scheme are admissible against (co-
7  schemer) defendant LEE and (co-schemer) defendant HUIZAR, as are
8  defendant HUIZAR's statements to Kim against defendant LEE.  As a co-
9  schemer, defendant LEE's statements to non-schemers in furtherance of
10 the scheme are also admissible against defendant HUIZAR.  See United
11 States v. Zavala-Serra, 853 F.2d 1512, 1516 (9th Cir. 1988) (co-
12 conspirator statements need not be made to another member of the
13 conspiracy in order to be admissible under Federal Rule
14 801(d)(2)(E)).

15     Accordingly, Ninth Circuit law on co-schemer liability and the
16 resulting evidence rules make much of the evidence admissible against
17 all of the co-schemers who participated in the scheme.  Thus, for
18 example, all of defendant HUIZAR's statements and conduct in
19 furtherance of the L.A. Grand Hotel Bribery Scheme is admissible
20 against defendant SZNW, including defendant HUIZAR's statements to
21 co-schemer Esparza (O.A. 429-433), his efforts to conceal the bribe
22 payments he received by smuggling Australian cash into the country
23 (O.A. 361-366, Counts 35-36), laundering cash from defendant HUANG
24 through his family members (O.A. 367-400, Counts 31-34), failing to
25 report the benefits on Forms 700 and tax returns (O.A. 437-444, Count
26 41), stashing cash at his residence (O.A. 445), and failing to
27 disclose defendant HUANG's purported "loan" on his mortgage
28 application (Count 37).  Defendant HUIZAR's attempted witness

                                12

1   tampering of co-schemer Esparza with respect to defendant HUANG (O.A.
2   446-447) is also admissible against defendant SZNW.  In addition,
3   defendant HUIZAR's conduct in soliciting campaign contributions from
4   defendant HUANG (O.A. 351) and contributions to High School A from
5   defendant HUANG (O.A. 353) as part of the established pay-to-play
6   scheme, is admissible against defendant SZNW.  Similarly, defendant
7   CHAN's false statements to conceal the L.A. Grand Hotel Bribery
8   Scheme are admissible against defendant SZNW (O.A. 452, Count 39).
9   Thus, while defendant SZNW mistakenly points to "money laundering,
10  loan fraud, tax evasion, obstruction of justice, witness tampering,
11  and false statements to the government" as crimes charged that do not
12  "directly apply to SZNW" (CR 201 at 6), defendant SZNW fails to
13  recognize the proper legal standard for admissibility.  Co-schemers'
14  conduct giving rise to these additional charges flow from the
15  underlying L.A. Grand Hotel Bribery Scheme, and they demonstrate an
16  effort to conceal the bribery scheme by co-schemers; this evidence is
17  therefore admissible against defendant SZNW.  Similarly, defendant
18  HUIZAR's false statements attempting to conceal his participation in
19  the 940 Hill Bribery Scheme (Count 40) with defendants LEE and 940
20  Hill are admissible against defendants LEE and 940 HILL.

21              b.   *Defendants' Case Citations on Prejudice Have No*
22                   *Resemblance to the Instant Matter*

23       This case is readily distinguishable from the cases the
24  Developer Defendants rely on to support severance, where defendants
25  faced joint trials on crimes that were drastically different from
26  each other (as opposed to here where they are not dissimilar and
27  instead linked by the thread of a common scheme, common co-schemer,
28  and common illegal conduct).  For example, United States v. Sampol,

on which both Developer Defendants rely (see CR 200 at 9, CR 201 at 19), involved "a prosecution arising out of assassination of the former Chilean ambassador to the United States and an American associate, [where] seven defendants were charged with conspiracy to murder foreign official, murder of foreign official, first-degree murder, and murder by use of explosives to blow up a vehicle engaged in interstate commerce." 636 F.2d 621 (D.C. Cir. 1980).  One defendant "was indicted on two counts of making false statements to a grand jury, and one count of misprision of a felony.  He was not alleged to have been a member of the conspiracy to kill Orlando Letelier, nor to have participated in the murders in any way."  Id. at 642.  United States v. DiNome, on which defendant LEE relies (CR 200 at 9), involved two defendants who were convicted only of mail and wire fraud after a joint trial with co-defendants charged with RICO, "including vicious murders, loansharking, auto theft, pornography, and firearms trafficking." 954 F.2d 839, 844 (2d Cir. 1992).  The other cases on which defendants rely involved similar egregious circumstances and are similarly inapt to the honest services bribery scheme here.  See United States v. Burke, 789 F. Supp. 2d 395, 399 (E.D.N.Y. 2011) (defendant charged with witness tampering was facing trial with co-defendants "charged with participating in comparatively violent criminal acts, including three murders, several robberies and assaults as predicate acts of an alleged RICO conspiracy spanning three decades"); United States v. Blankenship, 382 F.3d 1110, 1123 (11th Cir. 2004) (noting that severance is mandated where "gruesome evidence against one defendant overwhelms the de minimus evidence against the co-defendant(s)") (citation omitted).

1    While the FSI alleges additional conduct related to the pay-to-
2    play bribery scheme by defendant HUIZAR and crimes against defendant
3    HUIZAR arising out of his efforts to conceal the pay-to-play scheme
4    in which the Developer Defendants were active and charged
5    participants, the additional crimes are not of a "provocative nature"
6    and do not implicate "gruesome evidence" of murders, like in the
7    cases relied on by defendants and whose courts cited such
8    inflammatory facts as the basis to sever.  There is plainly no such
9    inflammatory imbalance of evidence improperly tilting the scales
10   here.  Instead, additional evidence of defendant HUIZAR's corrupt
11   solicitation of additional bribes from other developers will be
12   proper for the jury to consider against the Developer Defendants
13   because it demonstrates the manner in which the scheme operated.
14   See, e.g., Boone, 628 F.3d at 936 ("Evidence that similarly-bold
15   requests were made by [a co-schemer] and members of her office to
16   other persons at their initial contacts with the office was relevant
17   to demonstrate the manner in which the scheme operated, and to
18   establish that [defendant], as housing coordinator, had knowledge of
19   that scheme and acted in furtherance of it.").  While some of the
20   evidence pertaining to separate components of the scheme may not
21   directly implicate the Developer Defendants (e.g., Project M Bribery
22   Scheme, Luxe Hotel Bribery Scheme, Businessperson A Schemes), this
23   evidence is of the same nature and character as the crimes charged
24   against the Developer Defendants and will not provoke an improper
25   emotional response from the jury.  Simply put, the additional
26   allegations against co-schemer HUIZAR do not present a risk of undue
27   prejudice warranting separate trials for the Developer Defendants.
28

1    If the Court concludes that any particular evidence pertaining
2    to the honest services bribery scheme is unduly prejudicial to the
3    Developer Defendants, this Court is capable of crafting, with the aid
4    of the parties, instructions to assist the jury in compartmentalizing
5    the evidence, which is the standard and preferred practice in such
6    isolated scenarios.  As in most cases, the "drastic measure[]" of
7    severance is not required here, where jury instructions will "suffice
8    to cure any risk of prejudice."  See Zafiro, 506 U.S. at 537.

9            2.   The Court's Jury Instructions Will Mitigate Against
                  Any Undue Prejudice
10
11    "The prejudicial effect of evidence relating to the guilt of
12    codefendants is generally held to be neutralized by careful
13    instruction by the trial judge."  Escalante, 637 F.2d 1197, 1201.
14    "Generally, when evidence is heard by the jury that ... is applicable
15    only to limited defendants or in a limited manner, a cautionary
16    instruction from the judge is sufficient to cure any prejudice to the
17    defendant."  Id.  The Ninth Circuit has "repeatedly held that a
18    district court's careful and frequent limiting instructions to the
19    jury, explaining how and against whom certain evidence may be
20    considered, can reduce or eliminate any possibility of prejudice
21    arising from a joint trial."  Fernandez, 388 F.3d 1199, 1243.  Thus,
22    a defendant "seeking severance based on the 'spillover' effect of
23    evidence admitted against a co-defendant must also demonstrate the
24    insufficiency of limiting instructions given by the judge."  United
25    States v. Hanley, 190 F.3d 1017, 1027 (9th Cir. 1999) (quoting United
26    States v. Nelson, 137 F.3d 1094, 1108 (9th Cir.)).  For example, in
27    United States v. Van Cauwenberghe, the defendant argued "that he
28    suffered from aspersions of guilt by association with the more

                                    16

culpable [co-defendant]." 827 F.2d 424, 432 (9th Cir. 1987).  The Ninth Circuit rejected that argument, noting that "[w]hen, as here, the district court instructed the jury to consider the guilt or innocence of each co-defendant separately, in light of the evidence against that defendant, the jury is presumed to have obeyed." Id. (citations omitted).  Defendants offer nothing that contravenes this standard Ninth Circuit guidance regarding potential spillover evidence here.

Instead, defendants again rely on inapposite cases in attempt to prop up a failing claim: here, that limiting instructions would be insufficient.  See CR 200 at 13 (relying on Bruton and Miller); CR 201 at 19-20 (relying on Bruton, Miller, Weatherspoon, Lewis, and Sampol).  Defendants have not identified any potential Bruton statements, so their reliance on Bruton v. United States, 391 U.S. 123 (1968), to argue the danger of jurors ignoring jury instructions is misplaced.  The Supreme Court's concern about the limits of jury instructions applied in the context "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial," which are not present here.  Id. at 135.  Although the FSI charges false statements made by defendant HUIZAR and defendant CHAN to conceal their involvement in the bribery scheme implicating the Developer Defendants, those false statements do not present a Bruton issue because they do not at all inculpate,

1    much less "powerfully incriminate[e]," the other defendants.[3]

2    Accordingly, defendants' <u>Bruton</u> claim is a red herring.

3        Both defendants also rely on <u>United States v. Miller</u>, 874 F.2d

4    1255, 1263 (9th Cir. 1989), which held that limiting instructions on

5    polygraph evidence were insufficient to cure prejudice; this is

6    inapposite to the issue of severance.  The other cases relied on by

7    defendant SZNW similarly identify shortcomings of particular limiting

8    instructions in unrelated contexts and do not support defendants'

9    arguments that they are entitled to separate trials.  <u>See United</u>

10   <u>States v. Weatherspoon</u>, 410 F.3d 1142, 1151 (9th Cir. 2005) (holding

11   that "the curative instructions offered here did not neutralize the

12   harm of the improper statements" made by a prosecutor); <u>United States</u>

13   <u>v. Lewis</u>, 787 F.2d 1318, 1323 (9th Cir.), <u>opinion amended on denial</u>

14   <u>of reh'g</u>, 798 F.2d 1250 (9th Cir. 1986) (district court failed to

15   timely instruct the jury regarding evidence of defendant's prior

16   conviction); <u>Sampol</u>, 636 F.2d 621 (limiting instructions "could not

17   provide their intended protection against prejudice in the face of

18   [the] emotional evidence" regarding murder plot that defendant was

19   not alleged to have participated in).  Defendants' reliance on these

20

21        [3] Indeed, defendant HUIZAR's alleged false statements do not

22   even mention defendants LEE and 940 HILL: "Specifically, regarding
     the 940 Hill Project bribery scheme, defendant HUIZAR falsely stated

23   that: (a) he told George Esparza that the hundreds of thousands of
     dollars cash payment Justin Kim provided to Esparza was 'yours, I do

24   not want it'; and (b) he did not discuss Esparza giving defendant
     HUIZAR the money from Kim in April 2018." (FSI Count 40.)  Defendant

25   CHAN's alleged false statements exculpate, rather than inculpate,
     defendant HUANG: "Specifically, defendant CHAN falsely stated that:

26   (a) he was 'not involved' and had 'no involvement' in the settlement
     of Jose Luis Huizar's 2013 sexual harassment lawsuit; (b) 'Chairman

27   [Wei Huang] doesn't have anything ... in front of Jose [Huizar]'s
     district ... that needs Jose [Huizar]'s help or involvement'; and (c)

28   '[Huang] never asked Jose [Huizar] for anything,' including help on
     Huang's hotel."  (FSI Count 39.)

                                    18

1  cases that have distinct and dispositive evidentiary issues

2  warranting severance implicitly concedes they lack legal support for

3  the actual scenario presented here.

4       Defendant LEE argues that he would have to object and interrupt

5  "testimony with frequent and repetitive limiting instructions."  (CR

6  200 at 12.)  Defendant SZNW similarly argues that "non-stop limiting

7  instructions to the jury cannot cure the evidentiary taint and

8  spillover that are inherent in a joint trial."  (CR 201 at 18.)

9  First, as stated above, the government asserts that defendants

10  significantly overshoot their claim about what evidence will be

11  inadmissible against their clients.  Second, under their rationale,

12  joint trials would never be feasible.  Rather than requiring a

13  question-by-question objection and limiting instruction, the Court

14  has broad discretion to control the presentation of evidence in a

15  manner that is efficient and clear.

16       For example, if the Court rules that evidence of other

17  components of the honest services bribery scheme is inadmissible

18  against the Developer Defendants, the Court can instruct the jury,

19  for instance, before the testimony of lobbyist Morrie Goldman that

20  this witness's testimony is not admissible against the Developer

21  Defendants.[4]  Such an instruction would easily permit the jury to

22  compartmentalize that evidence and consider it for its intended

23  purpose--only against defendant HUIZAR in connection with the crimes

24  involving Project M.  For witnesses who will offer testimony on more

25  than one component of the honest services bribery scheme, such as

26  George Esparza or FBI Special Agent Andrew Civetti, the Court can

27  

28       [4] The Court could also repeat the instruction at the end of
testimony and as part of the closing instructions.

19

instruct the jury as to the admissibility of portions of the
testimony.  Or, if the Court has concerns of potential jury
confusion, the particular witness's testimony could be bifurcated to
separately cover the CD-14 Enterprise, the L.A. Grand Hotel Bribery
Scheme, and the 940 Hill Bribery Scheme to keep the testimony more
distinct in the jury's mind.  As the Supreme Court noted, "Rule 14
does not require severance even if prejudice is shown; rather, it
leaves the tailoring of the relief to be granted, if any, to the
district court's sound discretion."  Zafiro, 506 U.S. at 537.  This
Court has broad discretion to tailor relief short of severance to
address any potential (and credible) threats of undue prejudice.

> ### 3. Different Degrees of Culpability Do Not Require Severance, Particularly Where Risk of Prejudice Is Slight

Defendant LEE argues that his alleged level of culpability is
markedly less than that of the other defendants, warranting a
separate trial.  (CR 200 at 8-10).  Defendant SZNW similarly argues
there is a risk of an unreliable verdict because the *quid pro quo*
evidence against defendant SZNW "is non-existent or, at best, weak,
compared to that present in the other schemes alleged in the
indictment."  (CR 201 at 21-22.)[5]  While defendant LEE points to
"lurid acts of corruption" and the "multi-million dollar
international developer" implicated in the L.A. Grand Hotel Bribery
Scheme (CR 201 at 1), defendant SZNW points to "bags of cash"
exchanged by other co-defendants in the 940 Hill Bribery Scheme (CR

---

[5] Defendant SZNW raises several meritless arguments regarding the government's theory of the case and perceived lack of evidence of an explicit *quid pro quo* with respect to the L.A. Grand Hotel Bribery Scheme.  Those arguments are better suited for a motion to dismiss the indictment.  The government will therefore not specifically address those legally and factually misleading arguments here.

20

200 at 5).  Both Developer Defendants seek to distance and distinguish themselves from each other -- while tellingly pointing at the other as the more guilty-appearing party -- and from defendant HUIZAR; but their arguments fail for the same reasons.

"The fact that there may be more incriminating evidence against one defendant than there is against another, is insufficient to justify a separate trial for the latter." United States v. Marcello, 731 F.2d 1354, 1360 (9th Cir. 1984); see also Van Cauwenberghe, 827 F.2d at 432 ("the mere fact that a criminal defendant is jointly tried with a more culpable codefendant is not alone sufficient to constitute an abuse of the district court's discretion"); Hernandez-Orellana, 539 F.3d at 1002 (rejecting "catchall guilt-by-association argument" and noting that defendant's "burden [is] a heavy one, and the district court's decision not to sever trials seldom will be disturbed").  "The most common reason for severing a trial is where co-defendants present mutually exclusive or irreconcilable defenses." United States v. Vasquez-Velasco, 15 F.3d 833, 846 (9th Cir. 1994). This was a basis for granting a severance in a case relied on by defendant LEE (CR 200 at 14), United States v. Shkreli, 260 F. Supp. 3d 247 (E.D.N.Y. 2017) (granting severance where the "defenses amount to more than simple finger pointing by two defendants").  Severance is also appropriate where a joint trial would inhibit a defendant's right to put on a defense.  For example, in United States v. Gilbert, on which defendant LEE relies (CR 200 at 8), the trial court granted a severance where two defendants argued they required a third co-defendant "Gilbert's exculpatory testimony, foreclosed if they are tried together and Gilbert does not take the stand, or purchased at intolerable 'spillover' cost if Gilbert testifies and is cross-

1    examined on his checkered past." 504 F. Supp. 565, 566 (S.D.N.Y.

2    1980).  Defendants have not identified any such exculpatory

3    testimony, or any other mutually exclusive or irreconcilable defense.

4         United States v. DeRosa, 637 F.2d 889 (9th Cir. 1982), a case on

5    which defendant SZNW relies (CR 201 at 21), actually illustrates how

6    a joint trial in this case is appropriate.  In DeRosa, the government

7    indicted five defendants connected to drug transactions.  Id. at 892.

8    Count one charged four defendants with participating in a RICO

9    enterprise.  The remaining counts charged "various combinations of

10   the defendants with distributing and attempting to distribute

11   narcotics."  After the presentation of the government's case, the

12   trial judge dismissed the RICO count against two of the defendants.

13   Id.  Those defendants moved for severance, which the trial court

14   denied.  Id. at 897.  The Ninth Circuit held that denial was not an

15   abuse of discretion, id. at 899, even though the "RICO count was the

16   sole basis" for the initial joinder.  Id. at 897.  In making this

17   decision, the court reasoned that the risk of prejudice was "slight,"

18   id. at 898, because "[a]ll of the evidence detailing" one defendant's

19   involvement "would have been admissible in a separate trial"; "[w]ith

20   one exception, none of the evidence that the jury was told not to use

21   against [the defendant] ...  contained any specific reference to

22   [him]"; and "almost all the evidence referring to [the defendant]

23   related to a short time period," meaning "the jury could easily

24   compartmentalize the evidence ... and should have had no trouble

25   following the trial judge's instruction to disregard evidence against

26   [the defendant] in considering his guilt or innocence."  Id. at 898–

27   99.  The court also noted that the trial judge "guided the jury

28

throughout the trial with exemplary instructions." Id. at 899.
These same factors support denial of defendants' Motion.

Here, all of the evidence on Count One to prove the RICO
conspiracy is coextensive with the evidence to prove the honest
services scheme charging all defendants. Even if the Court rules
that evidence of other components of the honest services scheme is
not admissible against the Developer Defendants, a jury could
reasonably compartmentalize the evidence. Like in DeRosa, the
evidence against defendants HUIZAR and CHAN that pertain to other
components of the honest services scheme would not even mention the
Developer Defendants. For example, the evidence pertaining to the
Project M Bribery Scheme or Businessperson A Schemes will not mention
defendants SZNW, LEE, or 940 HILL. While the evidence will implicate
co-defendant HUIZAR, this does not result in "prejudicial propensity
evidence" against the Developer Defendants. (CR 201 at 2, 18.)

Further, like in DeRosa, the evidence against the Developer
Defendants can be compartmentalized because of the specific
development projects at the center of each component and the nature
of the bribes provided. As the FSI itself clearly outlines, the case
is already intrinsically compartmentalized. For example, evidence
against defendant SZNW relates to the L.A. Grand Hotel Project and
benefits provided by defendants HUANG and SZNW to defendant HUIZAR
and Esparza during trips to Las Vegas and Australia and in the form
of a purported "loan." The evidence against defendants LEE and 940
HILL relates to a separate project, the 940 Hill Project, and
involves very different alleged benefits, namely a large sum of cash.
The Project M bribery scheme involves yet another separate
development project, Project M, and a different form of benefit,

23

namely, PAC contributions.  And the Luxe Hotel Bribery Scheme also involves a separate project and yet another different type of (indirect) benefit in the form of consulting fees as well as PAC contributions.  Each of these schemes fall under a distinct FSI header naming the scheme/project that will serve as an easy-to-follow guide for the jury to navigate during its deliberations.[6]  Because the crimes charged against the Developer Defendants arise out of distinct development projects, if necessary, a jury will be able to parse and compartmentalize the evidence and follow the judge's instructions to keep these schemes distinct.  Therefore, even in the event that the Court disagrees with the government's position that all of the evidence is admissible against all defendants to prove the honest services scheme, the Court can still guide the jury with instructions (aided by the FSI), plus any potential prejudice occasioned by joinder would be too "slight" to require severance.

## C.   A Joint Trial Will Promote Efficiency and Serve the Interests of Justice

Defendant LEE argues that "a joint trial would not necessarily be more efficient than a separate trial."  (CR 200 at 14.)  This novel assertion defies logic and precedent; the Developer Defendants are asking this Court and the government to have two separate trials to prove the same bribery scheme twice--once at a trial with only defendants LEE and 940 HILL, and then again at a trial with defendant HUIZAR.  The same numerous percipient witnesses would testify about their conversations with and conduct of defendants HUIZAR, LEE, and 940 HILL, the same experts would testify about the City processes

---

[6] In light of the various counts, schemes, and defendants, the government will propose the Court provide a trial indictment to aid the jury during its deliberations.

1   involved, and the same case agents would testify about the evidence

2   of the scheme seized from digital devices and third parties.  Two

3   separate juries would have to consider all of that same identical

4   evidence and be asked to answer very similar questions about whether

5   it constituted a pay-to-play scheme.

6        Unlike more common gang-related multi-defendant cases in which

7   one particular defendant's separate drug trafficking or firearms

8   offenses could be separated from the rest, the crime alleged here is

9   one that requires two sides of an equation: public officials and

10  developers.  The Developer Defendants do not suggest carving out a

11  separate part of the case that can be tried in isolation, they

12  request to be severed from the very (same) person they (both) are

13  alleged to have bribed for the same purpose.  This would result in

14  having to prove defendant HUIZAR's corrupt pay-to-play scheme in

15  three separate trials — a serious and unwarranted burden on the

16  Court, the jury pool, the government, and the justice system as a

17  whole.  "It would impair both the efficiency and the fairness of the

18  criminal justice system to require ... that prosecutors bring

19  separate proceedings, presenting the same evidence again and again,

20  requiring victims and witnesses to repeat the inconvenience (and

21  sometimes trauma) of testifying[.]"  Richardson, 481 U.S. at 209-10.

22  A joint trial in this case will promote efficiency and "serve the

23  interests of justice[.]"  Id. at 210.

24  **IV.   CONCLUSION**

25       For the foregoing reasons, the government respectfully requests

26  that this Court deny the Developer Defendants' motions to sever.

27

28