Richard M. Steingard (SBN 106374)
rsteingard@SteingardLaw.com
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone: (213) 260-9449
Facsimile: (213) 260-9450

Attorney for Defendant
Shen Zhen New World I, LLC

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSE LUIS HUIZAR, ET AL., <br><br> Defendants. | CR-20-326(A)-JFW <br><br> **DEFENDANT SHEN ZHEN NEW WORLD I, LLC'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO SEVER** <br><br> **Hearing Date: October 15, 2021** <br> **Hearing Time: 8:00 a.m.** |

Defendant Shen Zhen New World I, LLC submits this reply to the government's opposition to its motion to sever.

                                        Respectfully submitted,

Dated: September 27, 2021     **LAW OFFICES OF RICHARD M. STEINGARD**


                              By:  /s/ Richard M. Steingard
                                   Richard M. Steingard
                                   Attorney for Defendant
                                   **SHEN ZHEN NEW WORLD I, LLC**

i

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT ................................................................................................. 3
     A.   The Government Ignores SZNW's Challenges
          to Its Trial Evidence and Theories of Prosecution ............................... 3
     B.   The Government's Application of Conspiracy Law
          to the Honest Services Fraud Schemes is Flawed ............................... 5
     C.   The Government's Argument That Limiting Instructions
          Are Sufficient and That the Jury Will Compartmentalize
          Evidence is False ................................................................................ 12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Grey v. Henderson,*
    788 F. Supp. 683 (E.D.N.Y. 1991) ................................................................4

*Kotteakos v. United States,*
    328 U.S. 750 (1946) ........................................................................................9

*Llaca v. Duncan,*
    2004 WL 964113 (S.D.N.Y. 2004) ................................................................4

*Nash v. United States,*
    54 F.2d 1006 (2d Cir. 1932) ........................................................................13

*United States v. Adams,*
    2011 WL 13161193 (N.D. W. Va. 2011) ....................................................12

*United States v. Blankenship,*
    382 F.3d 1110 (11th Cir. 2004) ..................................................................13

*United States v. Bloch,*
    696 F.2d 1213 (9th Cir. 1982) ......................................................................8

*United States v. Boone,*
    628 F.3d 927 (7th Cir. 2010) ..................................................................6, 10

*United States v. Bryant,*
    885 F. Supp. 2d 749 (D.N.J. 2012) ...............................................................7

*United States v. Cassano,*
    132 F.3d 646 (11th Cir. 1998) ............................................................. 13-14

*United States v. Chandler,*
    388 F.3d 796 (11th Cir. 2004) ......................................................................9

*United States v. Crockett,*
    813 F.2d 1310 (4th Cir. 1987) ......................................................................9

*United States v. Duran,*
    189 F.3d 1071 (9th Cir. 1999) ............................................................................ 9

*United States v. Escalante,*
    637 F.2d 1197 (9th Cir. 1980) ............................................................................ 3

*United States v. Feldman,*
    1997 WL 687726 (D. Kansas 1997) ................................................................ 12

*United States v. Fernandez,*
    388 F.3d 1199 (9th Cir. 2004) ............................................................................ 9

*United States v. Gallo,*
    668 F.Supp. 736 (E.D.N.Y. 1987) ................................................................... 14

*United States v. Jimenez Recio,*
    537 U.S. 270 (2003) ........................................................................................... 8

*United States v. Little,*
    753 F.2d 1420 (9th Cir. 1984) ............................................................................ 9

*United States v. Lothian,*
    976 F.2d 1257 (9th Cir. 1992) ............................................................................ 6

*United States v. McDonald,*
    576 F.2d 1350 (9th Cir. 1978) ............................................................................ 3

*United States v. Needham,*
    2012 WL 6755386 (D. Minn. 2012) ................................................................ 12

*United States v. Ring,*
    706 F.3d 460 (D.C. Cir. 2013) ............................................................................ 7

*United States v. Shabani,*
    513 U.S. 10 (1994) ............................................................................................. 9

*United States v. Stolica,*
    2009 WL 2849003 (S.D. Illinois 2009) ........................................................... 12

*United States v. Suhl,*
    885 F.3d 1106 (8th Cir. 2018) ..........................................................................7

*United States v. Sun-Diamond Growers of America,*
    526 U.S. 398 (1999) ..........................................................................................7

*United States v. Taren-Palma,*
    997 F.2d 525 (9th Cir. 1993) ............................................................................9

*United States v. Thornton,*
    197 F.3d 241 (7th Cir. 1999) ............................................................................9

*United States v. Walker,*
    25 F.3d 540 (7th Cir. 1994) ..............................................................................9

**FEDERAL RULES OF EVIDENCE**

Rule 801 ..................................................................................................................... 2

**FEDERAL STATUTES**

18 U.S.C. § 201 ................................................................................................... 6-7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The government and defense agree that Defendant Shen Zhen New World I, LLC ("SZNW") is only alleged to have been involved in one of the many schemes identified in the First Superseding Indictment ("FSI"). Labelled the "L.A. Grand Hotel Bribery Scheme," the alleged scheme – which involved SZNW's building of a 77-story tower at the L.A. Grand Hotel's location – is unique, independent, and completely unrelated to the five-plus other schemes named in the FSI.[1] The parties further agree that the other schemes cited in the FSI bear no connection to the "L.A. Grand Hotel Bribery Scheme"—indeed, except for a single common denominator, Jose Huizar, there is literally no overlap between SZNW's alleged misconduct and that of the other schemes' alleged participants, charged and uncharged.

Despite these concessions, the government opposes SZNW's severance motion by advancing the seemingly contradictory claim that all defendants are part of a *single* scheme. From there, the government takes another giant leap, analogizing this alleged solitary scheme to a conspiracy case. Though SZNW is not charged with conspiracy, the government argues that a severance is unnecessary, and no spillover evidence will accrue, because under conspiracy law *all* evidence related to *all* schemes is admissible against *all* defendants, regardless of how disparate or remote that evidence may be.

---

[1] We use the expression "five-plus" schemes because, in addition to the "L.A. Grand Hotel Bribery Scheme," the "940 Hill Bribery Scheme" and the "Project M Bribery Scheme," the FSI refers to *multiple* schemes in connection with the Luxe Hotel (the "Luxe Hotel Bribery Scheme*s*") and Businessperson A (the "Businessperson A Scheme*s*").

Realizing the implausibility of this argument, the government offers an alternative basis for denying a severance, asserting that at a joint trial, the Court can simply tell the jury to ignore the "other schemes" evidence when it considers SZNW's guilt, thereby alleviating its injurious impact. According to the government, with such limiting instructions, the jury will "easily" be able to compartmentalize the evidence against each defendant.

As we discuss below, the government is wrong on both its primary and fallback arguments. As to the former, the comparison to a conspiracy case and the application of conspiracy law only goes so far. Because the FSI alleges *multiple* fraud schemes, the proper analogy would be to *multiple* conspiracies. In the context of multiple conspiracies, Rule 801(d)(2)(E) of the Federal Rules of Evidence limits the introduction of co-conspirator's statements to those defendants shown to be *members* of *that* conspiracy. Applied to the instant case, evidence (including co-conspirator's statements) tending to prove the so-called "L.A. Grand Hotel Bribery Scheme" may be admissible against SZNW, but evidence and statements concerning the other schemes is surely not.

As to the government's secondary argument against severance – that the Court's limiting instructions will prevent any improper prejudicial spillover – the government downplays and underestimates what a joint trial would look like in the context of this case. As made clear by the 452 overt acts in the RICO count (370 of which do not apply to the "L.A. Grand Hotel Scheme") and the numerous additional allegations in the 40 non-RICO counts (32 of which SZNW is not charged with), there is very little evidence that is common to, and admissible against, all defendants. Consequently, for most witnesses, evidence, and allegations, one or more defense counsel would justifiably object to its introduction, requiring the Court to give recurring limiting instructions, each time directing the jury about which defendants they may – and may not – consider the evidence. The frequency of these objections and limiting instructions would not

only disrupt the trial, but it would also confuse the jury and make it impossible for them to understand and follow the case.

There is only one legitimate reason for a joint trial – conservation of judicial resources.  When stacked against the certainty of prejudicial spillover evidence based on the introduction of "other schemes" and other inadmissible evidence, the necessity of near-constant objections and requests for limiting instructions, and the understandable inability of a jury to simultaneously absorb, assess, memorize, and compartmentalize a month's worth of evidence on a per-defendant basis, a severance is appropriate and warranted.

## II.

## ARGUMENT

### A. The Government Ignores SZNW's Challenges to Its Trial Evidence and Theories of Prosecution

In arguing against a severance, the government incorrectly claims that "the defendant has the burden of proving 'clear,' 'manifest,' or 'undue' prejudice from a court's denial of a severance motion and the resulting joint trial."  (ECF No. 228 at 6, quoting *United States v. McDonald*, 576 F.2d 1350, 1355 (9th Cir. 1978)).  Continuing, the government asserts that "[a] defendant: must show more than that a separate trial would have given him a better chance for acquittal. He must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant." *Id.*, quoting *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980).

In fact, these arguments are inapplicable to the defendants' severance motions; they only relate to the *appellate court's* standard of review when considering a trial court's denial of a severance motion.  The government's failure

to see this distinction raises a larger point that the government misunderstands. Appellate courts review a trial record to determine *retrospectively* whether the admissibility of spillover evidence prejudiced the defendant. But this Court, sitting as the trial court, does not have the luxury of a trial transcript and appellate record upon which to gauge whether to grant a severance motion. Instead, the Court must look *prospectively* at the government's and defenses' anticipated evidence and the parties' theories and strategies for presenting their cases to assess whether a severance is appropriate. *Llaca v. Duncan*, 2004 WL 964113, *19 (S.D.N.Y. 2004) ("while a trial court must decide a severance motion prospectively, based on its discretionary assessments of the strategies and evidence as forecast by the parties, an appellate court has the full trial record by which [it] may, within the ambit of [its] review powers, determine the existence of irreconcilable conflict and its possible effect on the verdict") (internal quotations omitted); *Grey v. Henderson*, 788 F. Supp. 683, 696 (E.D.N.Y. 1991) (same).

A prospective examination of the evidence should look beyond the indictment and assess the government's evidence, or lack thereof, concerning the elements of the various offenses, and SZNW's challenges to that evidence. Such a review would include whether there is evidence proving (1) a *quid pro quo* arrangement between Huizar and Huang involving the L.A. Grand Hotel Project; (2) an agreement between Huizar and Huang for Huizar to commit an official act in connection with that project in exchange for benefits; (3) an official act, or an agreement to commit an official act, by Huizar to benefit Huang, SZNW, and the L.A. Grand Hotel Project; and (4) a linkage between the benefits Huang allegedly conferred and Huizar's official act, or agreed upon official act, benefitting the L.A. Grand Hotel Project. As stated in SZNW's motion, the government lacks any direct or circumstantial evidence showing the required *quid pro quo* arrangement, benefits conferred in exchange for an official act, an official act or an agreement to commit an official act, and linkage between the two. Thus, SZNW submits that the

government – through a joint trial – intends to fill its *quid pro quo* void by showing the jury that *other* developers paid Huizar bribes to benefit *their* projects, arguing or implying that Wei Huang and SZNW *must* have done the same.

In its opposition, the government does not dispute SZNW's factual account or rebut its arguments about the absence of a *quid pro quo*, an official act, an agreement, or linkage. Rather, the government attempts to dodge the issue entirely, claiming in a footnote that these and other challenges to the government's case are "meritless arguments regarding the government's theory for the case… better suited for a motion to dismiss." (ECF No. 228 at 20, n.6.)[2]

The government's unwillingness to engage in this discussion should not deter the Court from doing so. The Court must consider the potential that in the absence of any such evidence, the government will argue, or the jury will conclude, that Huang and Huizar had a *quid pro quo* arrangement based on the government's introduction of the "other schemes" evidence. To avoid this from occurring, and because the "other schemes" evidence is inadmissible if SZNW was tried alone, a severance is warranted.

B. The Government's Application of Conspiracy Law to the Honest Services Fraud Schemes is Flawed

As noted above, the government agrees with SZNW that the RICO and honest services fraud counts allege a series of "separate" and "discrete" schemes. (ECF No. 228 at 20, 23-24.) Each scheme – or, in the government's words, "project/scheme" – includes its own alleged circumstances, participants, projects,

---

[2] The government feels less constrained when it comes to discussing some of the alleged inculpatory evidence. *See e.g.*, *id*. at 4 ("At trial, the government will prove … the powerful role defendant HUIZAR played both on the City Council and as the Chair of the [PLUM] Committee, and the way in which public officials … were able to abuse the City process to illicitly solicit and accept benefits from consultants and developers in exchange for their agreement to commit official acts on development projects…").

goals, dates, evidence, *quids*, *quos*, and issues. (*Id*. at 23-24.) Yet, the central and

goals, dates, evidence, *quids*, *quos*, and issues. (*Id*. at 23-24.) Yet, the central and overriding theme of the government's opposition to a severance is that the evidence of each scheme is admissible against all defendants because all defendants "participated in a joint honest services fraud scheme." (ECF No. 228 at 2.)³

From this dubious proposition the government notes that in certain circumstances, evidentiary rules applicable to a conspiracy may apply to a fraud scheme. (*Id*. at 8, citing *United States v. Lothian*, 976 F.2d 1257 (9th Cir. 1992)). With this as its premise, the government surmises that if all participants in a conspiracy case are liable for the acts of their co-conspirators, then all participants in a fraud scheme are necessarily liable for the acts of all co-schemers. (*Id*.) Thus, the government concludes, all evidence of all the various schemes is admissible against all defendants, and that "the jury can properly infer a nefarious and corrupt relationship between defendant HUIZAR/Esparza and defendant SZNW based on the co-schemers' statements and conduct, which are thus admissible against defendant SZNW." (*Id*. at 10, citing *United States v. Boone*, 628 F.3d 927, 935 (7th Cir. 2010)).

The government's argument is fatally flawed in several respects. As a preliminary matter, *Lothian*'s treatment of wire/mail fraud as in some respects similar to conspiracy should not apply in the honest services/bribery context. In particular, unlike conspiracy, honest services fraud and bribery do not require a "meeting of the minds" between the alleged briber and bribee; this is apparent in the language and structure of the federal bribery statute, 18 U.S.C. § 201, which criminalizes offering/giving a bribe and receiving/taking a bribe in separate

---

³ As discussed in defendants' Supplemental Motion to Dismiss, if the government intended that the many separate and distinct schemes constitute a single honest services fraud scheme, the honest services fraud counts are mispled and should be dismissed. (ECF No. 251.)

sections. *See, e.g.*, 18 U.S.C. § 201 (criminalizing bribe offering in subsection (c)(1)(A) and taking in (c)(1)(B)); *United States v. Sun-Diamond Growers of America*, 526 U.S. 398, 404 (1999) (describing separate crimes under § 201(b)(1) and (b)(2)); *United States v. Suhl*, 885 F.3d 1106, 1112-13 (8th Cir. 2018) (holding no meeting of the minds required between bribe payors and payee: "A payor defendant completes the crimes of honest-services and federal-funds bribery as soon as he gives or offers payment in exchange for an official act, even if the payee does nothing or immediately turns him in to law enforcement"); *United States v. Ring*, 706 F.3d 460, 467 (D.C. Cir. 2013) ("… Defendant may be guilty of honest-services bribery where he offers an official something of value with a specific intent to effect a quid pro quo even if that official emphatically refuses to accept.") As such, the briber and bribee are not part of the same scheme, nor does the hearsay of a co-schemer statement fall within a firmly rooted hearsay exception or possess the same indicia of reliability that exists in the co-conspirator context.

      In addition, the government is mistaken in its claim that "proof of the corrupt intent on both sides of the equation will be interrelated, meaning that *evidence of the public officials' corrupt intent is probative of the developers' corrupt intent and vice versa*." (ECF No. 228 at 4-5; emphasis added.) This proposition lacks citation, and for good reason as it is incorrect – there is no innate transference of a briber's or bribee's intent to the other. As one court succinctly stated, "[A briber's] intent cannot be imputed to [a bribee] in a bribery context – the Government has to separately establish the official's own intent." *United States v. Bryant*, 885 F. Supp. 2d 749, 761 (D.N.J. 2012). For the same reason, contrary to the government's claim, evidence of an alleged bribee's attempts to conceal his actions – suggesting a possible consciousness of guilt – is inadmissible against the alleged briber. *Id*. at 761-62 ("Because of the lack of evidence regarding [the alleged bribee's], as opposed to [the briber's], efforts to conceal, the Government's concealment theory to prove [the bribee's] intent necessarily falls short.")

Even if it were appropriate to treat an honest services fraud scheme like conspiracy for evidentiary purposes, the FSI does not allege a *single* scheme but *multiple* schemes: it literally spells them out throughout the RICO and honest services fraud counts, and government counsel has said so in court. During its explanation of the case, the government confirmed that the FSI charges multiple schemes. (*E.g.*, 8/5/20 RT 6 (AUSA Jenkins: "I will focus now… on the specific schemes"); 7-17 (summarizing "the Project E bribery scheme"); 17 ("Project C… relates to a separate project and separate developer"); 23 ("Project D relates to a separate Chinese national developer with a separate hotel and project in Council District 14"); 49 ("Project M… relates to a domestic development company, Company M and its project in the Arts District"); 44 ("And I believe that concludes the five schemes, Your Honor")). The government cannot now conflate these separate and distinct schemes into a single fraud scheme to reap some perceived evidentiary benefit.

In fact, if the FSI's schemes are analogized to a conspiracy, the correct parallel argument would be to *multiple* conspiracies, not a *single* conspiracy. A single conspiracy exists where there is "one overall agreement." *United States v. Bloch,* 696 F.2d 1213, 1215 (9th Cir. 1982), *abrogated on other grounds by United States v. Jimenez Recio,* 537 U.S. 270 (2003).

> A single conspiracy can only be demonstrated by proof that an overall agreement existed among the conspirators. Furthermore, the evidence must show that each defendant knew, or had reason to know, that his benefits were probably dependent upon the success of the entire operation. Typically, the inference of an overall agreement is drawn from proof of a single objective ... or from proof that the key participants and the method of operation remained constant throughout the conspiracy. The inference that a defendant had reason to believe that his benefits were dependent upon the success of the entire venture may be drawn from proof that the coconspirators knew of each other's participation or actually benefitted from the activities of his coconspirators.

*United States v. Fernandez*, 388 F.3d 1199, 1226 (9th Cir. 2004), *as amended*, 425 F.3d 1248 (9th Cir. 2005) (quoting *United States v. Duran*, 189 F.3d 1071, 1080 (9th Cir. 1999)). In contrast, multiple conspiracies involve "some evidence of separate agreements and purposes." *United States v. Taren-Palma,* 997 F.2d 525, 530 (9th Cir. 1993), *overruled on other grounds, United States v. Shabani,* 513 U.S. 10 (1994); *United States v. Thornton*, 197 F.3d 241, 254 (7th Cir. 1999), citing *United States v. Walker*, 25 F.3d 540, 547 (7th Cir. 1994) ("Multiple conspiracies exist when there are separate agreements to effectuate distinct purposes."). Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals. *United States v. Little,* 753 F.2d 1420, 1448 (9th Cir. 1984); *United States v. Crockett,* 813 F.2d 1310, 1317 (4th Cir. 1987) (finding a single conspiracy because "[t]he conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product.").

      Here, the various disparate alleged schemes – each with its own unique set of facts, participants, goals, and evidence – do not constitute, and cannot be analogized to, a single conspiracy. *Kotteakos v. United States*, 328 U.S. 750, 752 (1946) (characterizing several "separate and independent groups, none of which had any connection with any other" but all connected to a single person, as "separate spokes meeting at a common center … without the rim of the wheel to enclose the spokes" and finding that this "made out a case, not of a single conspiracy, but of several") (citations and internal quotations omitted); *United States v. Chandler*, 388 F.3d 796, 807 (11th Cir. 2004) (citing *Kotteakos*, 328 U.S. at 754–55 (no connection between spokes means "there is not a single conspiracy, but rather as many conspiracies as there are spokes.")). Because the multiple schemes in the FSI are more comparable to multiple conspiracies, evidence admissible against one member of a specific scheme/conspiracy would only be

9

admissible against the other members of that specific scheme/conspiracy. Thus, evidence and statements concerning the five-plus other alleged schemes which are unrelated to SZNW are inadmissible against SZNW.

Moreover, the government's reliance on *United States v. Boone* is badly misplaced. In *Boone*, two public officials – an Alderperson and her housing coordinator – were charged with honest services mail fraud, federal program bribery, and false statements. 628 F.3d 927 (7th Cir. 2010). Prior to trial, the Alderperson pled guilty, leaving Boone, the housing coordinator, to be tried alone on a single pay-to-play fraud count, two bribery counts, and a false statement count.[4]

The jury convicted Boone of the fraud and false statement charges. On appeal, Boone argued that the trial court erred in admitting "testimony of shakedowns which did not involve Boone." *Id*. at 929. Notably, the trial judge admitted this evidence because it was purportedly "inexplicably intertwined" with the charged offense, a rationale that the appellate court explicitly rejected. *Id*. at 933. Still, the Court held that "the evidence of extortion by and against others was relevant to rebut Boone's defense of a lack of knowledge of the scheme" and show that he "must have known of the scheme." *Id*. at 936. In doing so, the Court criticized the very argument that the government now advances – that "its use of such evidence is unbounded" – and cautioned that its ruling contained inherent limitations:

> There are limits on the extent to which the government may introduce evidence of the scheme. The district court must consider whether such evidence survives the Rule 403 balancing test of probative value and prejudice. *As evidence regarding the scheme moves farther, both temporally and in terms of the defendant's involvement, from the defendant's actions*

---

[4] The sole issue in the instant motion is whether the Court should grant SZNW a severance. Because Boone was tried alone, severance was not addressed at his trial or on appeal.

> *that form the crux of the criminal claim, that balance may well tip in favor of exclusion. Moreover, the definition of the scheme itself is a limiting principle, in that only evidence of the same scheme as opposed to a related or distinct scheme, is admissible...* Because of the defense that Boone chose to present, however, and the nature of the scheme that the government alleged, that evidence was properly admitted in this case. *Id*. (emphasis added.)

Applied here, *Boone* hardly stands for the "boundless" evidentiary ruling that the government seeks. Unlike SZNW, Boone was a member of Alderperson's staff, and the evidence of other shakedowns was used to show his knowledge, or intentional lack of knowledge, within the Alderperson's office. This is quite different from seeking to use evidence of other schemes involving completely unrelated events and individuals to try to prove that Huizar had a *quid pro quo* arrangement with SZNW. Further, as the *Boone* Court noted, in considering whether to admit "other schemes" evidence, the further the scheme moves "from the defendant's actions that form the crux of the criminal claim" the more reason to exclude its introduction from evidence. In the instant case, the government agrees that there is no connection whatsoever between SZNW and the other schemes, so the distance between the "crux" of SZNW's actions and the other schemes could not be any greater. Lastly, because "the definition of the scheme itself is a limiting principle… only evidence of the same scheme as opposed to a related or distinct scheme, is admissible." This "limiting principle" means that the government's evidence of the 940 Hill Bribery Scheme, the Luxe Hotel Bribery Schemes, the Project M Bribery Scheme, and the Businessperson A Schemes – that is, all the extraneous schemes that the government seeks to introduce against SZNW – is inadmissible. Thus, rather than supporting the admissibility of the "other schemes" evidence, *Boone* actually cuts the other way.

### C. The Government's Argument that Limiting Instructions are Sufficient and that the Jury Will Compartmentalize Evidence is False

In the alternative, the government argues that "if the Court rules that evidence of other components of the honest services bribery scheme is inadmissible against the Developer Defendants," the Court can give limiting instructions and order that the jury simply disregard it. (ECF No. 228 at 19.) This is a standard argument the government frequently advances in its opposition briefs: severances are unnecessary because limiting instructions cure any prejudicial spillover. *See e.g., United States v Feldman*, 1997 WL 687726, *1 (D. Kansas 1997) (in opposing severance, "The government argues that a limiting instruction on this evidence will adequately protect the defendant"); *United States v. Stolica*, 2009 WL 2849003, *3 (S.D. Illinois 2009) (the government opposes severance and "urges that any prejudice that is present can be addressed with appropriate limiting instructions"); *United States v. Needham*, 2012 WL 6755386, *1 (D. Minn. 2012); (opposing severance, the government "argu[es] that the trial court likely will be able to craft a limiting instruction or other mechanism that minimizes or eliminates any prejudice to Defendant"); *United States v. Adams*, 2011 WL 13161193, *1 (N.D. W. Va. 2011) (in opposing severance "the Government argues that defendant has failed to show why limiting instructions would not cure any alleged prejudice").

Undoubtedly, in some cases, this argument can be persuasive and limiting instructions can mitigate prejudicial spillover evidence, but not the instant matter. To state the obvious, there is nothing straightforward or uncomplicated about this case.[5] The FSI alleges five-plus schemes against disparate group of individuals

---

[5] In an understatement, the government concedes that "*certain* of the evidence and the legal concepts in this case are *arguably* complex." (*Id*. at 16; emphasis added.) We do not understand the government's need to diminish the extraordinary complexities of this case. One year ago, during Mr Huizar's initial appearance but before the five other defendants were added to the case, the

and corporation, charged and uncharged, with each scheme creating its own elaborate web of players, facts, and circumstances. The government's evidence to prove these different schemes is different for each scheme, but includes Title III wiretap recordings, surveillance videos from hidden bugs, GPS location tracking devices, years and years of emails and text messages, the accumulation of materials from scores of subpoenas and search warrants, and the testimony of cooperators and immunized witnesses. The legal issues for each scheme are also different but will include subtle distinctions between an illegal bribe and a legal benefit to obtain access to an elected official; what is and is not an official act; corporate liability; *quid pro quos;* official acts; and predicate acts. Some counts require a *quid pro quo* while others may not; some require an official act, while others may not. Some counts appear to require the application of state bribery law. In addition, there are tax counts, false statement counts, money laundering and structuring counts, obstruction of justice counts, and loan fraud counts. Not to mention RICO, which is only charged against defendants Huizar and Chan, and carries with it its own set of convoluted legal and factual issues.

      Based on the intricacies of the facts, law, and issues at trial, the jury's task will be difficult enough without complicating matters further with innumerable instructions concerning the admissibility of certain testimony or items of evidence to a specific defendant or defendants. *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932) (Hand, J.) (describing limiting instructions as requiring of jurors "a mental gymnastic which is beyond, not only their power, but anybody's else"); *United States v. Blankenship*, 382 F.3d 1110, 1123-25 (11th Cir. 2004), citing *United States v. Cassano*, 132 F.3d 646, 651 (11th Cir. 1998) (defendant's right to

---

government stated that this is a complex case and that it had filed a notice of complex case. (8/5/20 RT 61-62.). Perhaps more importantly, during a subsequent appearance with all defendants, the Court repeatedly recognized the complexities of the case. (5/5/20 RT 32, 41, 43, 58.)



be judged based on admissible evidence is compromised "where compelling evidence that is not admissible against one or more of the co-defendants is to be introduced against another co-defendant"; "the sheer number of defendants and charges with different standards of proof and culpability, along with the massive volume of evidence, [may] make[] it nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently").

As the Court stated in *United States v. Gallo*, 668 F.Supp. 736, 753 (E.D.N.Y. 1987), "This case is far too extensive and intricate to expect that a jury would be able to discern the myriad of subtle distinctions and mental gyrations that would be required by the inevitable plethora of limiting instructions necessary." For this reason, the government's claim that the Court's limiting instructions "would easily permit the jury to compartmentalize that evidence and consider it for its intended purpose" lacks all credulity. (ECF No. 228 at 19.) Only so much can be asked of a jury—in this case, a joint trial asks for too much.

Respectfully submitted,

Dated: September 27, 2021  **LAW OFFICES OF RICHARD M. STEINGARD**

By: /s/ Richard M. Steingard
Richard M. Steingard
Attorney for Defendant
**SHEN ZHEN NEW WORLD I, LLC**

14