CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CAREL ALE (Bar No. 283717)
Email: Carel_Ale@fd.org
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
ADAM OLIN (Bar No. 298380)
(Email: Adam_Olin@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for José Luis Huizar

[And on Behalf of Defendants Raymond Chan
And Shen Zhen New World I, LLC]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES, | Case No. 20-CR-326-JFW |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF MOTIONS TO DISMISS AND/OR STRIKE** |
| JOSE LUIS HUIZAR, RAYMOND SHE WAH CHAN, and SHEN ZHEN NEW WORLD I, LLC, | Date:  November 15, 2021<br>Time:  8:00 a.m.<br>Ctrm:  7A – Hon. John F. Walter |
| Defendants. | |

Defendants José Luis Huizar, Raymond Chan, and Shen Zhen New World I, LLC ("SZNW") hereby file this reply in support of their Motion to Dismiss and/or Strike, ECF No. 235, and Supplemental Motion to Dismiss Counts 2–17, ECF No. 251. This reply is supported by the attached memorandum of authorities and all other records in this case.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: November 4, 2021       By   *s/Carel Alé*
                                         Carel Alé
                                         Charles Snyder
                                         Adam Olin
                                         Deputy Federal Public Defenders
                                         Attorneys for Defendant
                                         José Luis Huizar

                                         [And on behalf of Defendants Raymond Chan
                                         And Shen Zhen New World I, LLC]

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT .......................................................................................................... 1

    A.    Applicable Law ................................................................................... 1

        1.    Bribery After *McDonnell* and *Sun-Diamond* Requires a "Specific" Matter Be Identified "At the Time" of the Agreement .... 2

        2.    "Stream of Benefits," "Retainer," and "As Opportunities Arise" Are Separate and Distinct Theories of Bribery ................................. 4

        3.    The "Retainer" Theory Does Not Meet *McDonnell*'s Specificity Requirements ..................................................................................... 6

        4.    What Is Proscribable Criminal Conduct Is at the Heart of Defendants' Motions to Dismiss/Strike and the Case at Large ......... 7

    B.    Count 1: The Court Should Strike Prejudicial and Legally Invalid Surplusage From the FSI ................................................................... 8

        1.    The Court May Strike Inessential, Prejudicial Allegations .............. 8

        2.    The FSI Is Overrun with Prejudicial, Misdirecting Allegations ...... 9

    C.    Counts 2–17 ...................................................................................... 12

        1.    The Court Should Strike the "Means and Methods" Allegation Relating to "Introducing or Voting on City Resolutions" as it Relates to Wei Huang and SZNW ................................................... 12

        2.    Count 2 is Time Barred ................................................................... 13

        3.    Counts 2–17 Charge Multiple Schemes ......................................... 17

    D.    Counts 18–21: The State-law Predicate Is Broader than the Generic Federal Definition of Bribery ......................................................... 19

        1.    While *Perrin* and *Chi* Are Instructive, Bribery Involving a Public Official Is Different from Commercial Bribery ................... 21

iii

2.    Generic "Bribery" as Used in the Travel Act Requires a *Quid Pro Quo* and an Official Act when Involving Public Officials .......22

3.    The Government's Interpretation of California Penal Code §§ 67, 67.5, and 68 Is Contrary to the California Supreme Court's Interpretation of these Statutes ...........................................24

E.    Counts 22, 23, and 29 Must Be Dismissed as Duplicitous Because Each Alleges Multiple § 666 Bribes and Some *Quids* and *Quos* are Outside of the Statute of Limitations .......................................................25

1.    Each Act of Bribery Is a Separate Offense Under § 666................25

2.    "Continuing Offense" Analysis Applies Only to Statute of Limitations (Not Duplicity) and the Court Should Strike Untimely Allegations from the § 666 Counts..................................28

F.    Constitutional Challenges ........................................................................31

1.    § 666 is Unconstitutional and the Government Does Not Meaningfully Address the Issues Raised........................................31

2.    Honest Services Fraud is Unconstitutional As-Applied.................33

3.    Incorporating the Broader California Bribery Through RICO, the Travel Act, and Money Laundering Renders the Counts Unconstitutional As-Applied ..........................................................34

III. CONCLUSION....................................................................................................34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Gustafson v. Alloyd Co., Inc.*,
   513 U.S. 561 (1995)..................................................................................3

*Luken v. Christensen Grp. Inc.*,
   2016 WL 5920092 (W.D. Wash. 2016) .............................................14

*McCormick v. United States*,
   500 U.S. 257 (1991)..................................................................................7

*McDonnell v. United States*,
   __U.S.__, 136 S.Ct. 2355 (2016) ............................................*passim*

*Perrin v. United States*,
   444 U.S. 37 (1979)....................................................................................20

*Toussie v. United States*,
   397 U.S. 112 (1970)............................................................................28, 29

*United States v. Agne*,
   214 F.3d 47 (1st Cir. 2000).....................................................................13

*United States v. Bennett*,
   161 F.3d 171 (3d Cir. 1998) ..................................................................14

*United States v. Chi*,
   936 F.3d 888 (9th Cir. 2019) .....................................................20, 21, 22

*United States v. Choy*,
   309 F.3d 602 (9th Cir. 2002) ...................................................................2

*United States v. Cicco*,
   938 F.2d 441 (3d Cir. 1991) ..................................................................26

*United States v. Cooper*,
   384 F. Supp. 2d 958 (W.D. Va. 2005).....................................................9

*United States v. Crary*,
   No. 13-CR-35-M-DLC, 2013 WL 6054607 (D. Mont. Nov. 15, 2013) ...........31

*United States v. Cureton*,
 739 F.3d 1032 (7th Cir. 2014) .................................................................25

*United States v. Earnest*,
 No. 19-CR-01850-AJB, 2021 WL 3829129 (S.D. Cal. May 5, 2021)..............25

*United States v Esterman*,
 135 F. Supp. 2d 917 (N.D. Ill. 2001).......................................................15

*United States v. Frega*,
 179 F.3d 793 (1999) ..............................................................................24

*United States v. Ganim*,
 510 F.3d 134 (2d Cir. 2007) ...............................................................4, 6

*United States v. Gonzalez*,
 No. 06-CR-726-WHP, 2008 WL 3914877 (S.D.N.Y. Aug. 26, 2008) .............31

*United States v Grass*,
 274 F. Supp. 2d 648 (M.D. Pa. 2003).....................................................15

*United States v. Hines*,
 541 F.3d 833 (8th Cir. 2008) ................................................................27

*United States v. Jones*,
 676 F. Supp. 2d 500 (W.D. Tex. 2009) ..................................................29

*United States v. Kelly*,
 2012 WL 425969 (W.D. Pa. 2012).........................................................18

*United States v. Kemp*,
 500 F.3d 257 (3d Cir. 2007) .................................................................18

*United States v. Kincaid-Chauncey*,
 556 F.3d 923 (9th Cir. 2009) .............................................................5, 6

*United States v. Langford*,
 No. 08-CR-245-S, 2009 WL 10671369 (N.D. Ala. July 2, 2009) ....................26

*United States v. LeMay*,
 330 F. Supp. 628 (D. Mont. 1971)........................................................10

*United States v. Lopez–Cotto*,
 884 F.3d 1 (1st Cir. 2018).................................................................5, 6

*United States v. Lyman*,
    592 F.2d 496 (9th Cir. 1978) ................................................................14

*United States v. Mancuso*,
    718 F.3d 780 (9th Cir. 2013) ...............................................................31

*United States v. Martin*,
    803 F.3d 581 (11th Cir. 2015) ..............................................................14

*United States v. Meffert*,
    No. 09-CR-374-EEF, 2010 WL 2360776 (E.D. La. June 7, 2010)...................29

*United States v. Mizrachi*,
    48 F.3d 651 (2d Cir. 1995) .................................................................14

*United States v. Mullins*,
    613 F.3d 1273 (10th Cir. 2010) ............................................................14

*United States v. Musto*,
    No. 10-CR-338-ARC, 2012 WL 5879609 (M.D. Pa. Nov. 21, 2012) ..............29

*United States v. Newell*,
    658 F.3d 1 (1st Cir. 2011)...............................................................27, 28

*United States v. Ng Lap Seng*,
    934 F.3d 110 (2d Cir. 2019) ...........................................................32, 33

*United States v. Niven*,
    952 F.2d 289 (9th Cir. 1991) ..............................................................29

*United States v. Percoco*,
    13 F.4th 180 (2d Cir. Sept. 8, 2021) ......................................................5

*United States v. Polanco*,
    2008 WL 2891076 (D. Puerto Rico Apr. 4, 2008) ......................................30

*United States v. Reese*,
    254 F. Supp. 3d 1045 (D. Neb. 2017) ...................................................31

*United States v. Rentz*,
    777 F.3d 1105 (10th Cir. 2015) (en banc)...............................................25

*United States v. Sanderson*,
   966 F.2d 184 (6th Cir. 1992) ...................................................................27

*United States v. Schopp*,
   938 F. 3d 1053 (9th Cir. 2019) ...............................................................23

*United States v. Serpico*,
   320 F.3d 691 (7th Cir. 2003) ...................................................................14

*United States v. Silver*,
   948 F.3d 538 (2d Cir. 2020) ...................................................4, 5, 6, 25

*United States v. Skelos*,
   988 F.3d 645 (2d Cir. 2021) .................................................................5, 7

*United States v. Sun-Diamond Growers of Cal.*,
   526 U.S. 398 (1999).............................................................2, 3, 4, 24

*United States v. Thomas*,
   759 F.3d 659 (8th Cir. 1985) ...................................................................18

*United States v. Tutein*,
   122 F. Supp. 2d 575 (D.V.I. 2000) ........................................................27

*United States v. Ubakanma*,
   215 F.3d 421 (4th Cir. 2000) ...........................................................14, 15

*United States v. Walsh*,
   194 F.3d 37 (2d Cir. 1999) ......................................................................13

*United States v. Yashar*,
   166 F.3d 873 (7th Cir. 1999) .......................................................28, 29, 30

*United States v. Yates*,
   __F.4th __, 2021 WL 4699251 (9th Cir. Oct. 8, 2021).........................34

**State Cases**

*People v. Gaio*,
   81 Cal. App. 4th 919 (2000) ...........................................................21, 24

**Federal Statutes and Rules**

18 U.S.C. § 201.......................................................22, 23, 24, 27, 32

18 U.S.C. § 208 .................................................................................23

18 U.S.C. § 209 .................................................................................23

18 U.S.C. § 641 .................................................................................31

18 U.S.C. § 666 ............................................................................*passim*

18 U.S.C. § 1343 ........................................................................16. 24

18 U.S.C. § 1346 ..............................................................................24

18 U.S.C. § 1349 ..............................................................................24

18 U.S.C. § 1951 ..............................................................................24

18 U.S.C. § 1956 ..............................................................................21

Fed. R. Crim. P. 7 ....................................................................8, 9, 10, 11

**State Statutes**

Cal. Penal Code § 67 ........................................................................24

Cal. Penal Code § 67.5 .....................................................................24

Cal. Penal Code § 68 ........................................................................24

Cal. Penal Code § 69 ..................................................................19, 24

**Other Authorities**

Anti-Gambling Statutes, Public L. No. 87-228,
  https:// www.jfklibrary.org/asset-viewer/archives/USDJ/MF159/USDJ-
  MF159-001 ...............................................................................23

Black's Law Dictionary ......................................................................20

*Former Deputy Mayor*, U.S. Attorney's Office C.D. Cal. (Nov. 30, 2020),
  https://tinyurl.com/DOJ-article-2 .........................................17

*Illicit Benefits*, U.S. Attorney's Office C.D. Cal. (Jun. 23, 2020),
  https://tinyurl.com/DOJ-article-1; .........................................17

1

## TABLE OF ARGUMENTS AND JOINERS

| Argument Section | Joining Defendants |
|:---:|:---:|
| II.B. | All |
| II.C.1. | SZNW |
| II.C.2. | All |
| II.C.3 | All |
| III.D. | Huizar and SZNW |
| III.E. | All |
| III.F. | All |

# I. INTRODUCTION

Generally lacking facts resembling the kind of specific and focused *quid pro quo* required by the federal bribery statutes, the government cobbled together an indictment which, even if proven, consists mostly of "tawdry tales." *McDonnell v. United States*, __U.S.__, 136 S.Ct. 2355, 2375 (2016). In its opposition, the government cherry-picks caselaw and sows confusion by mixing and matching various bribery theories. It ignores a fundamental lesson of *McDonnell*, that federal bribery statutes require that a specific, focused, and concrete matter be identified up front, at the time of the agreement. When examined under the standard set by the Supreme Court in *McDonnell*, it becomes clear that the majority of the government's case fails to allege actionable bribery.

The government's opposition is the most recent sign that it intends to try defendants by overwhelming the jury with an avalanche of allegations of unseemly behavior. Its strategy of reducing the jury's role to answering the single question of whether defendants *seem* "corrupt" in an everyday sense is deliberate—that is an easier burden than what *McDonnell* and federal law require. The relief sought by defendants' motions would clarify the issues for the Court, defendants, and the jury, and ensure that what is actually on trial is proscribable criminal conduct, not local politics or other conduct the federal government finds merely objectionable. Defendants' motions should be granted.

# II. ARGUMENT

## A.  Applicable Law

Prior to discussing the defendants' arguments on the individual counts, the opposition includes a section entitled "Applicable Law for Charged Statutes." (ECF No. 259 ("Opp.") at 8–11.) The government's explanation ignores the crucial teachings of *McDonnell*; it also makes clear that the government is conflating three separate and

distinct theories of bribery prosecution known as the "stream of benefits," "as opportunities arise," and "retainer" theories.[1]

The differences between these theories are not merely academic; they each describe a different type of agreement and conduct, and the government's conflation of the three theories—and its use of "stream of benefits" as an umbrella term for these distinct theories—obscures the lines between what the government is alleging is legal and illegal conduct.[2] Moreover, as we discuss below, at least one of the theories does not meet *McDonnell*'s specificity requirements and is no longer viable.

### 1.   Bribery After *McDonnell* and *Sun-Diamond* Requires a "Specific" Matter Be Identified "At the Time" of the Agreement

Prior to *McDonnell*, nearly everything an official accepted could be interpreted as a *quid* and nearly everything they did could count as a *quo*. *See McDonnell*, 136 S. Ct. at 2372. As *McDonnell* noted, this expansive definition swept in routine courtesies that "conscientious public officials" perform for constituents "all the time." *Id.* Such a broad conception of bribery liability "cast a pall of potential prosecution" over any officials who "arrange meetings for constituents, contact other officials on their behalf, [or] include them in events." *Id.* Looking to avoid the federalism and vagueness concerns inherent with such an expansive term, the Court looked to and incorporated 18 U.S.C. § 201's definition of bribery into the Hobbs Act and honest services statutes. It held that

---

[1] Government counsel recently advised they view these terms as interchangeable. Defense counsel has reached out to the government for more clarity on their position.

[2] The government's theory of prosecution is a critical part of the indictment in so far as the government is bound to the set of facts supporting those theories. *See United States v. Choy*, 309 F.3d 602, 607 (9th Cir. 2002) ("The theory on which [the defendant] was convicted constituted a fatal variance from the offense alleged in the indictment" because the defendant was "indicted [] for giving 'a thing of value (to wit, $5,000)' to a public official" but "was convicted [] on the theory that giving the $5,000 to a private individual indirectly conferred value [] on a public official. This version of the purported bribe involves a set of facts distinctly different from that set forth in the indictment.").

an act is "official" only if it is a "decision or action" taken on a "specific and focused" matter. *Id.* The Court explained that the prosecutor must "[f]irst . . . *identify*" a "*specific and focused*" matter that "may at any time be pending" or "may by law be brought before a public official." *Id.* at 2368, 72 (citation omitted) (emphases added). Then, the Government must prove that the official agreed to "t[ake] an action 'on' *that*" matter "*at the time* of the alleged quid pro quo." *Id.* at 2368, 71 (emphases added). The Court repeatedly underscored the need for "something specific and focused"—"the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." *Id.* at 2369, 72, 74. Such requirements would be meaningless if the matter was not identified *at the time* the illegal conduct was complete.

The Supreme Court's decision in *McDonnell* was written with the backdrop of *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398 (1999), and incorporated its reasoning.[3] In *Sun-Diamond* the Solicitor General advocated a position like that which the government at times advances in this case: "that § 201(c)(1)(A) requires only a showing that a 'gift was motivated, at least in part, by the recipient's *capacity to exercise governmental power or influence* in the donor's favor' without necessarily showing that it was connected to a particular official act." 526 U.S. at 405–06. The Supreme Court rejected such a reading. In its view, defining a payment "for or because of an official act performed or to be performed" meant "for or because of some *particular* official act of whatever identity[.]" *Id.* at 406 (emphasis added). The Supreme Court explained,

> It is linguistically possible, of course, for the phrase to mean
> "for or because of official acts in general, without specification
> as to which one"—just as the question "Do you like any
> composer?" could mean "Do you like all composers, no matter
> what their names or music?" But the former seems to us the

---

[3] *Sun-Diamond* interpreted § 201's "official act" in subsection (c), criminalizing illegal gratuities, while *McDonnell* interpreted "official act" in subsection (b), criminalizing bribery. Terms within a section are typically given the same meaning. *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995) (explaining the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning") (citations omitted).

more natural meaning, especially given the complex structure of the provision before us here. Why go through the trouble of requiring that the gift be made "for or because of any official act performed or to be performed by such public official," and then defining "official act" (in § 201(a)(3)) to mean "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity," when, if the Government's interpretation were correct, it would have sufficed to say "for or because of such official's ability to favor the donor in executing the functions of his office"? The insistence upon an "official act," carefully defined, seems pregnant with the requirement that some particular official act be identified and proved.

*Id. McDonnell* is simply the other side of the coin that *Sun-Diamond* minted. Taking the teachings of both *McDonnell* and *Sun-Diamond*, whatever form the agreement takes, a "particular official act," *Sun-Diamond*, 526 U.S. at 406, or "specific and focused" "matter" must be decided "at the time," *McDonnell*, 136 S. Ct. at 2372, of that alleged agreement.

### 2.    "Stream of Benefits," "Retainer," and "As Opportunities Arise" Are Separate and Distinct Theories of Bribery

The terms of the alleged illegal agreement—and the theories behind their prosecutions—are thus important. Although sometimes mistaken as interchangeable, the "stream of benefits," "retainer," and "as opportunities arise" theories are distinct theories of bribery liability and describe different types of agreements, containing different terms.

Under an "as opportunities arise" theory, the parties enter an agreement whereby a benefit is conferred for one or more official acts on specific matters identified at the time of that agreement, as the opportunity to take official action on those specific, previously identified matters arises. *See United States v. Ganim*, 510 F.3d 134, 144–45 (2d Cir. 2007). *See also United States v. Silver*, 948 F.3d 538, 558 (2d Cir. 2020) (explaining *McDonnell* "provide[d] a narrowing gloss on . . . *Ganim*'s 'as the

opportunities arise' theory" that requires that "a particular question or matter must be identified at the time the official makes a promise or accepts a payment"); *United States v. Skelos*, 988 F.3d 645, 656 (2d Cir. 2021) (clarifying that the Second Circuit has "confirmed the ongoing validity of the 'as opportunities arise' theory of bribery," but "recogniz[ing] that faithfulness to *McDonnell* requires some limitation on that theory"); *United States v. Percoco*, 13 F.4th 180, 190 (2d Cir. Sept. 8, 2021) (explaining that a "jury instruction . . . was 'too open-ended' [where] it failed to convey that the defendants could not be convicted of honest-services fraud unless they promised to undertake official action on a specific question or matter").

In a "retainer" theory case, the payor confers a benefit pursuant to an agreement that the payor will later identify the specific matter or official act and that the official will act on that later-identified matter or official act. *See Silver*, 948 F.3d at 553 n.7; *United States v. Kincaid-Chauncey*, 556 F.3d 923, 944 (9th Cir. 2009) (explaining that under the "retainer" theory the evidence would have to show "that the government official has received payments or other items of value with the understanding that when the payor comes calling, the government official will do whatever is asked").

The "stream of benefits" theory requires an agreement that the payor will provide a "stream" of benefits for one or more official actions on specific matters identified at the time of the agreement is made. *See United States v. Lopez–Cotto*, 884 F.3d 1, 8 (1st Cir. 2018) ("When a defendant is indicted on the stream of benefits approach, the prosecution must prove an agreement for the ongoing stream of benefits rather than an agreement for stand-alone bribes."); *see also id.* (explaining a stream-of-benefits example: "a government official awarded or agreed to award government contracts worth a total of $5,000 (or more) to a landscaping company in exchange for the official's receipt, over time, of a series of discounted landscape work at his home").

In *Silver*, the Second Circuit addressed the inappropriate commingling of these three different theories of bribery prosecution. Initially, the court recognized that "[t]he terms 'as the opportunities arise,' 'stream of benefits,' and 'retainer' have been used

interchangeably by other courts." *Id.* (citations omitted). But the Court went on to note that the theories were different, stating,

> Our holding is limited to the 'as the opportunities arise' theory as set forth in *Ganim—i.e.*, a promise to "exercise particular kinds of influence . . . as specific opportunities ar[i]se." We express no opinion and need not reach the issue of whether the acceptance of a bribe with a promise to perform an official act in the future upon designation of the official act by the bribe payor at that later date (in essence a retainer) would run afoul of the honest services fraud statutes or the Hobbs Act. That case is simply not before us.

*Id.* (internal citation omitted). In a concurring opinion, Judge Lohier expounded on this very point, noting that the majority opinion "recognizes each theory [referring to 'stream of benefits' and 'retainer'] as different from the 'as opportunities arise' theory in doctrinally significant ways." *Id.* at 578.

More important than the mere labels, each theory addresses different *conduct*. That is, each theory describes a different type of agreement, and different terms of consideration and performance between the alleged bribe giver and receiver. As such, the facts at trial will be different depending on the theory of prosecution and different conduct may or may not support different theories. There is no Ninth Circuit precedent post-*McDonnell*, but the Second Circuit provides the most thorough and useful framework to evaluate allegations of bribery that lie outside of the basic *quid pro quo* arrangement.

### 3. The "Retainer" Theory Does Not Meet *McDonnell*'s Specificity Requirements

The retainer theory criminalizes an official receiving payments or other items of value "with the understanding that when the payor comes calling, the government official will do whatever is asked." *Kincaid-Chauncey*, 556 F.3d at 944. The conduct captured by the retainer theory thus does not include an "identified," "specific and focused" matter "at the time" of the *quid pro quo*—in other words, it has a *quid* with no *quo*. *Cf. Silver*,

948 F.3d at 556–57 (explaining that if "[t]he official has not agreed to take official action on a properly defined—focused, concrete and specific—question or matter[,] [t]he official has failed to offer a *quo*."). *McDonnell* may not "require identification of a particular act of influence," but it does require "that, at the time the defendant accepted the relevant payment, he understood he was expected to take official action on a specific and focused question or matter." *Skelos*, 988 F.3d at 656 (citations omitted). A promise with no identified specific and focused matter at the time of the agreement—conduct covered under a retainer theory (and, as explained in defendants' motion, alleged in this case)—fails to meet the specificity requirements of *McDonnell*, and is not proscribable criminal conduct.

### 4. What Is Proscribable Criminal Conduct Is at the Heart of Defendants' Motions to Dismiss/Strike and the Case at Large

The government's statement of "Applicable Law" is wrong—it omits the key requirement under *McDonnell* that at the time of the agreement the payee agree to take official action on an identified concrete and focused matter, and it conflates legal theories of bribery. By merging distinct bribery theories, whether intentionally or not, the government creates a broader net of prohibited conduct than federal law allows.

The need for specificity is paramount when the alleged conduct or alleged agreements touch on core First Amendment and federalism concerns. Our system of representative democracy contemplates robust relationships between the people and those they choose to represent them. "Serving constituents and supporting legislation that will benefit the district and individuals and groups therein is the everyday business of a legislator." *McCormick v. United States*, 500 U.S. 257, 272 (1991). "Whatever ethical considerations and appearances may indicate, to hold that legislators commit [a] federal crime . . . when they act for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment" of congressional intent and the political world. *Id.*

These realities motivated the Court in *McDonnell* to clarify that federal bribery liability requires specificity as to the agreed upon *quo* at the time of the agreement. *McDonnell*, 136 S. Ct. at 2372. While the specific issue before the *McDonnell* Court was the scope of an "official act," the concerns animating its decision are equally present here, where the government's interpretation of proscribable conduct under the RICO statute gives rise to the exact same vagueness concerns *McDonnell* sought to avoid. What is and isn't proscribable conduct and what bribery theories are constitutionally cognizable after *McDonnell* are significant for defendants' motions to dismiss and/or strike and for the case at large.

**B.    Count 1: The Court Should Strike Prejudicial and Legally Invalid Surplusage From the FSI**

The government does not contest that large swathes of the First Superseding Indictment ("FSI") contain a series of conduct and benefits which, even if proven, would not establish bribery within the meaning of the charged statutes.[4] Defendants' motion asks the Court to strike these allegations because they pose a significant risk of misleading the jury as to what constitutes a crime and misdirecting defendants in contesting the charges. That is especially so where the government intends to submit a "trial indictment" to the jury. Instead of responding to the merits, the government contends that it may simply allege both essential elements and a "broad range of evidence" without clarifying which is which. (*See* Opp. at 14.) But because the line between those two categories implicates complex legal issues, defendants will suffer prejudice unless the Court strikes the surplusage.

**1.    The Court May Strike Inessential, Prejudicial Allegations**

Rule 7 requires the government to allege a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Cr. P. 7(c). The FSI fails to fulfill its responsibility to concisely convey the essential elements of the

---

[4] These include many of the overt acts (ECF No. 235 ("MTD") at 13–22), "Means and Methods," (*id.* at 23–26), and other allegations, (*e.g.*, *id.* at 29).

charged offenses. Instead, the government contends that none of the language should be stricken because "the jury can consider a broad range of evidence." (Opp. at 14.) But an indictment is not a repository for all the evidence the government may wish to introduce at trial; it is meant to contain the "essential facts." Thus, courts may strike allegations relevant within the extremely broad meaning of Rule of Evidence 401 when they do not constitute essential facts. *See, e.g.*, *United States v. Cooper*, 384 F. Supp. 2d 958, 960 (W.D. Va. 2005) ("[Rule 7(c)] does not contemplate the inclusion of every piece of evidence that ultimately may be relevant to building a case against the defendant. If it did, a criminal indictment would be free to grow from a 'plain and concise' statement of 'essential' facts to an unreadable monstrosity discussing every piece of evidence that would be conceivably relevant at trial."). Thus, the Court may strike inessential allegations from the FSI even if related evidence may eventually be admissible at trial.[5]

## 2. The FSI Is Overrun with Prejudicial, Misdirecting Allegations

The surplusage here prejudices defendants by creating a significant risk of juror confusion and inhibiting defendants in their preparation to contest the charges. As set forth in defendants' motion, the exact contours between legal and illegal conduct by elected officials is blurred and ever-shifting. But each of the bribery-related counts (including RICO conspiracy) requires the government to prove that either Huizar, Esparza, or Chan agreed to perform an official act in return for a benefit. It therefore matters whether each overt act alleges conduct the government asserts constitutes an agreed-upon official act that would support a conviction. Alternatively, the government may be contending that the conduct reflected in any given overt act is circumstantial evidence of an agreement by Huizar to perform some *other* conduct which constitutes an

---

[5] The government's claim that there is "no authority limiting the government's proof to the statutorily enumerated predicated acts," (Opp. at 13), therefore misses the mark. Defendants moved to strike the FSI's inclusion of certain prejudicial language which only serve to confuse the issues; whether the government may properly introduce it at trial is another matter reserved for later.

official act within the meaning of the charged statutes. This same analysis holds true for the more than 450 overt acts alleged in the FSI. But even now, after the government filed its comprehensive opposition to defendants' motions, defendants remain in the dark about precisely how the government asserts they violated the charged statutes.

Thus, as drafted, the FSI risks misleading jurors into believing that proving certain non-official act conduct may suffice to establish guilt. Each allegation will have different levels of evidentiary support, and jurors will be free to pick and choose between them. And without a verdict form so riddled with special interrogatories as to become unwieldy, defendants may be convicted for constitutionally protected conduct. In concrete terms, jurors might conclude that the evidence at trial establishes that Huizar agreed to perform one act, but not another, in return for a benefit. Because the precise nature of the official act matters under *McDonnell*, it is necessary to communicate to the jury—and to defendants—what the government actually alleges.

Defendants are also prejudiced by the government burying the essential allegations among a forest of non-official act evidence. Despite describing the purpose of the overt acts "to highlight where defendants should focus their challenges," (Opp. at 12), defendants remain unsure which allegations reflect the charged official acts, and which are merely background. Without clarity as to which acts the government contends are "official"—*i.e.*, "essential" within the meaning of Rule 7(c)—defendants are forced to investigate and contest each overt act alleged, regardless of whether, if proven, it would establish guilt under the charged statutes. *Cf. United States v. LeMay*, 330 F. Supp. 628 (D. Mont. 1971) ("However, if the surplusage, unproved by the prosecution, has the effect of misleading the defendant as to the actual offense against which he is defending, the indictment is incurably invalidated."). Hence, striking the legally insufficient and inessential language from the FSI would accurately communicate the charges against defendants and allow them to adequately respond to the charges.

The government's cited cases denying motions to strike are inapposite because in those cases there were no risks of confusing the jury or impeding defendants from

effectively contesting the charges. Each involved defendants seeking to strike language which did not pose a risk of misleading the defendants as to which facts were "essential," Fed. R. Cr. P. 7(c), in establishing violations of the charged statutes. In *United States v. Cisneros*, for example, the moving defendant was charged with conspiring to withhold information from and make misrepresentations to various government entities, including the FBI during background investigations. 26 F. Supp. 2d 24, 31 (D.D.C. 1998).[6] The defendant sought to strike portions of the indictment including "references to the duties of the FBI and IRS," "the mission of HUD," and "reference to previous background investigation." *Id.* at 55. While the court denied the motion because the targeted language was "either [an] essential element[] of the charges . . . or provide[d] useful and important background information," *id.*, there was no ambiguity as to which category each passage fell into.[7]

In contrast, what does, and does not, constitute illegal conduct by political figures in legally complex areas including political fundraising and constituent service is at the core of this case. Even now, instead of conceding that many overt acts and "Means and Methods" identified in defendants' motion do not constitute official acts within the meaning of the charged statutes, the government ignores the core of the argument, leaving defendants continuing to guess what are the "essential facts" of the FSI. There is no legitimate basis for the government to refuse to disclose its theories of criminality now that it has charged defendants. The Court should strike the surplusage detailed in defendants' motions so that they may adequately prepare for trial.

---

[6] The government describes the charging instrument in *Cisneros* as a "bribery indictment." (Opp. at 14.) The actual charges do not include bribery; they centered on a cabinet secretary lying during his background investigation and confirmation process about hush money payments made to his mistress. *See Cisneros*, 26 F. Supp. 2d at 32–33 (recounting factual allegations).

[7] *Cisneros* is also distinguishable as defendants here are charged with a series of substantive bribery and honest–services wire fraud counts which are predicated on the very same overt acts alleged regarding RICO conspiracy.

1   **C.   Counts 2–17**

2        **1.   The Court Should Strike the "Means and Methods"**

3        **Allegation Relating to "Introducing or Voting on City**

4        **Resolutions" as it Relates to Wei Huang and SZNW**

5        In the preamble to the honest services fraud counts, one of the "Means and

6   Methods" of the alleged schemes is that Huizar "(7) introduce[ed] or vot[ed] on City

7   resolutions to enhance the professional reputation and marketability of businesspersons

8   in the City." (FSI, Counts 2–17, ¶ 45(b)(7).) Insofar as this claim references Wei Huang

9   and SZNW, defendants ask that it be stricken because (1) the FSI does not allege that the

10   City resolution honoring Wei Huang was an "official act," and (2) even if it did, it would

11   be time barred since it occurred in 2014, clearly outside the five-year statute of

12   limitations. (MTD at 23–26.)

13        The government does not address either of these arguments, or others raised in this

14   section of defendants' motion. Rather, the government vaguely directs the Court to "the

15   reasons outlined above in Section III.C" of its brief, adding "defendants have failed to

16   establish a legal or factual basis" for striking this clause. (Opp. at 15–16.) But the defense

17   has done both: it has established a legal basis (the statute of limitations bars prosecution)

18   and a factual basis (the resolution occurred in 2014 and is not alleged as an "official act").

19   (MTD at 26–29.)

20        Further, the inclusion of the City's resolution for Wei Huang will unfairly

21   prejudice SZNW. While the FSI does not allege that the Wei Huang resolution was an

22   "official act," it does allege Huizar's involvement with *other* resolutions for *other*

23   individuals involved in *other* alleged schemes are "official acts." (*See* FSI, Count 1, OA

24   184; FSI, Count 27 (resolution for Jia Yuan and Luxe Hotel Project); Count 1, OAs 334–

25   337; Count 30 (resolution for Businessperson A).) Allowing the introduction of the City's

26   resolution for Wei Huang —for whatever probative value the government believes it

27   possesses—may lead the jury to believe that it too was an "official act," as the

28   government alleges with respect to other City resolutions. To avoid confusing the jury

that some resolutions are "official acts" while others are not, the allegation in the "Means and Methods" section should be stricken or clarified to ensure that it does not pertain to Wei Huang or SZNW.

### 2.      Count 2 is Time Barred

Count 2 concerns the 2014 loan from Wei Huang and SZNW to Huizar. The defendants' motion points out that it is time barred, did not "affect" a financial institution, and is improperly pled. (MTD at 26–29.) In response, the government attempts to reframe the issue, claiming, "Defendants ask this Court to dismiss Count 2 as time-barred because the FSI fails to properly plead *how* a financial institution was 'affected.'" (Opp. at 16, emphasis in original.) True, the FSI does not properly plead how a financial institution was "affected,"[8] but that is not why the count is time barred. Plus, the count should be dismissed because the bank loan to Huizar was fully secured—in fact, it was *over*collateralized—and, as such, the collateral did not and could not have "affected" the bank.

The government initially suggests that there is a split in the circuits, and that "Defendant's reliance on out-of-Circuit cases" is inconsistent with Ninth Circuit law. (Opp. at 18.) The government cites only one case from the Ninth Circuit—the same case cited by the defendants, *United States v. Stargell*—in which the Court explicitly stated that it "*join[ed] with our sister circuits*" to require that the bank sustain a 'new or increased risk of loss.'" 738 F.3d 1018, 1022 (9th Cir. 2013) (emphasis added). In fact, all circuits are generally in agreement that for a bank to be "affected," it must have sustained a new or increased risk of loss. *United States v. Agne*, 214 F.3d 47 (1st Cir. 2000) (explaining that there was no evidence of even a risk of loss to a financial

---

[8] The government claims that its pleading error was rectified by its letter to SZNW's counsel, in lieu of a bill of particulars, clarifying the name of the bank that was purportedly "affected" by the loan. (Opp. at 4.) Absent a stipulation, pleading deficiencies in an indictment are not cured in this fashion. *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) ("a bill of particulars or discovery cannot save a defective indictment").

institution and that "at minimum, there needs to be some impact on the financial institution to support a conviction"); *United States v. Mizrachi*, 48 F.3d 651 (2d Cir. 1995) (construing "affecting" a financial institution to include victimization of the institution); *United States v. Bennett*, 161 F.3d 171 (3d Cir. 1998) (holding financial institution "affected" after it had to pay $18 million to settle litigation and suffered negative publicity that harmed its reputation); *United States v. Ubakanma*, 215 F.3d 421 (4th Cir. 2000) ("there are no facts indicating that the financial institutions themselves were harmed or victimized in any way, or that they were intended to be so harmed or victimized by the fraud scheme"); *United States v. Serpico*, 320 F.3d 691, 694 (7th Cir. 2003) (fraud affects a financial institution if a bank is exposed to a risk of loss even if the institution never suffers an actual loss); *United States v. Mullins*, 613 F.3d 1273, 1280 (10th Cir. 2010) ("'new or increased risk of loss' is plainly a material, detrimental effect on a financial institution, and falls squarely within the proper scope of the statute"); *United States v. Martin*, 803 F.3d 581 (11th Cir. 2015) ("increased risk sufficiently affected a financial institution").

Next, the government strings together a few "facts" to claim that the bank was at risk. The government states that (1) "the allegations in the FSI make clear that the collateral . . . to secure a loan . . . was in fact a bribe and therefore part of the fraudulent scheme;" (2) the loan was therefore "secured by Huang's fraudulent collateral;" and (3) "[l]ike in *Stargell*, 'because the [collateral funds] were fraudulent, the banks were exposed to the risk of loss on each loan involved in the scheme' and the fraudulent loan thus "affected" the bank regardless of whether there was actual financial loss.'" (Opp. at 7–18.)

Unravelling this muddle, the government's first claim—"allegations in the FSI make clear" that the collateral "was in fact a bribe"—is transparently meritless. As this Court well knows, allegations in an indictment are not evidence or a substitute for proof. *United States v. Lyman*, 592 F.2d 496, 502 (9th Cir. 1978) ("An indictment is not evidence"); *Luken v. Christensen Grp. Inc.*, 2016 WL 5920092, *2 (W.D. Wash. 2016)

1    ("allegations are not evidence"). Undoubtedly, the Court will so instruct the jury at the

2    beginning and end of the trial, yet the government has made this unproven and heavily

3    disputed claim as the factual starting point for its argument.

4            The government's second claim—that funds used to collateralize the loan were

5    "fraudulent"—is equally off base. The FSI does not even allege that the collateral for the

6    loan was fraudulent; rather, it merely states that funds were "wired from a bank account

7    in Hong Kong to an attorney trust account in Arcadia, California." (FSI, Count 1, OA

8    40.) Indeed, other than the government's self-serving claim *now*—essentially, "we

9    declare that the collateral was fraudulent"—there is no allegation (or evidence) that these

10   funds were "fraudulent."

11           Importantly, the fact that the bank used the collateral to secure the loan, which the

12   government alleges was a bribe, is an insufficient basis on which to claim that the bank

13   was "affected." *See, e.g.*, *Ubakanma*, 215 F.3d at 426 (noting that "the funds involved in

14   the fraud scheme were transferred into and out of accounts at various financial

15   institutions" but "there are no facts indicating that the financial institutions themselves

16   were harmed or victimized in any way"); *United States v Grass*, 274 F. Supp. 2d 648,

17   656 (M.D. Pa. 2003) (explaining that two financial institutions "were merely used as a

18   conduit to transfer funds procured through a wire fraud," and thus the "losses that these

19   institutions suffered . . . [we]re nothing more than routine transaction fees and lost

20   income"—had the defendants "procured these transactions legally, the listed financial

21   institutions would have lost this same income and incurred these same

22   expenses"); *United States v Esterman*, 135 F. Supp. 2d 917, 920 (N.D. Ill. 2001) (stating

23   that the scheme "did not have any cognizable impact" on the financial institution, which

24

25

26

27

28

15

"was called upon to do nothing more than to honor the authorizations that were wholly regular from the bank's perspective").[9]

The government's third claim—an attempt to shoehorn its claim that Huang and SZNW provided "fraudulent collateral" into the *Stargell* opinion—is equally misplaced. In *Stargell*, the defendant prepared and filed bogus tax returns as part of a scheme to obtain refund anticipation loans ("RALs") from banks. 738 F.3d at 1021. The IRS uncovered some of the fraudulent returns and declined to issue refunds, resulting in the banks that made the loans sustaining actual losses. Under these circumstances, the Court agreed with the government that "because the returns were fraudulent, the banks 'were exposed to the risk of loss on each loan involved in the scheme.'" *Id*. at 1022.

Quite obviously, the facts in *Stargell* are completely different than the circumstances at hand. The government's effort to equate the claimed "risk" facing the bank in the instant case (*i.e.*, funds from a Hong Kong bank that fully secured and *overcollateralized* the loan), to the very real danger to the bank in *Stargell* (*i.e.*, fraudulent tax returns used to support a series of bank loans), is baseless. Unlike in *Stargell*, the bank here was never at any risk, as exemplified by its normal and routine action applying the posted collateral to the outstanding balance after Huizar defaulted on the loan. (FSI, Count 1, OA 49.)

---

[9] The government's rebuttal does not provide any case law to the contrary, but instead chastises the defendants' "reliance on other courts interpreting different statutes." (Opp. at 18.) The government's opposition brief is replete with cases from "other courts," and, more importantly, the point remains that courts routinely consider other statute's use of the phrase "affecting a financial institution" when considering its application to § 3293(2). Indeed, the issue in *Stargell*—the only in-circuit case cited by the government—was unrelated to the statute of limitations and involved "affecting a financial institution" in the context of a challenge to the sufficiency of a wire fraud conviction under 18 U.S.C. § 1343.

### 3.   Counts 2–17 Charge Multiple Schemes

From the wording of the government's Complaint,[10] Indictment, and FSI which anchor this prosecution, to its press releases trumpeting the charges,[11] to its statements in court,[12] to its very own pleadings,[13] the government has consistently described this case as a series of "separate" and "distinct" bribery schemes involving different defendants, different development projects, and different bribe arrangements. Yet, in response to defendants' Supplemental Motion to Dismiss, the government ignores its many prior representations and declares that, in actuality, Counts 2–17 charge "multiple <u>executions</u> of the single scheme to defraud by various combinations of defendants." (Opp. at 5 (emphasis in original).)

Attempting to backtrack from its previous position, the government then strains to find facets of the different five-plus alleged schemes that may overlap. The government notes that one defendant—Ray Chan—is charged in the L.A. Grand Hotel Scheme and two Luxe Hotel schemes and "mentioned" in other overt acts; one cooperator—George Esparza—was "integral" to the L.A. Grand Hotel and 940 Hill schemes, and "mentioned" in other schemes. Another cooperator—Justin Kim—was "integral" to the 940 Hill scheme and had tangential connections to other schemes; and a third cooperator—George Chiang—was "integral" in one of the Luxe Hotel schemes, "aware" of some of Chan's non-criminal activity, and "involved" in fundraising with SZNW. (Opp. at 26–28.) The government also asserts that there is evidence the defendants "knew about each other"

---

[10] (ECF No. 1 ¶¶ 36, 74.)

[11] *See Los Angeles Councilman Jose Huizar Arrested on Federal RICO Charge that Alleges He Agreed to Accept at Least $1.5 Million in Illicit Benefits*, U.S. Attorney's Office C.D. Cal. (Jun. 23, 2020), https://tinyurl.com/DOJ-article-1; *New Indictment in RICO Case Against Former L.A. City Councilman Jose Huizar Adds 5 Defendants, Including a Former Deputy Mayor*, U.S. Attorney's Office C.D. Cal. (Nov. 30, 2020), https://tinyurl.com/DOJ-article-2.

[12] Hr'g Tr., Aug. 5, 2020, at 6, 7, 23, 44; Hr'g Tr., December 4, 2020, at 5; Hr'g Tr., December 8, 2020, at 9.

[13] (ECF No. 228 at 12–24.)

17

(based on two isolated comments by defendant Lee *after* the investigation became public, in which he speculated that "Huizar was probably not just caught up with one or two things" and never mentioned any of the other defendants or "spokes") and that the defendants "had a common goal to keep defendant Huizar in power through bribes," (*id.* at 28), a strange claim since Huizar would mandatorily "term out" of his City Council position in 2020.

According to the government, these purported links establish a single "hub and spoke" conspiracy and thereby distinguish *Kotteakos* and its progeny. (Opp. at 28.) The government states, "As is clear from the allegations in the indictment, the crossover between the various CD-14 Enterprise members and associates draws a rim around the hub-and-spoke conspiracy alleged in the indictment." (*Id.*)

This argument represents a serious misunderstanding of the *Kotteakos* line of cases and a gross distortion of the overall facts of this case. "*Kotteakos* and its progeny make clear that there must be overlap among the spokes, not just between the hub and the various spokes." *United States v. Kemp*, 500 F.3d 257, 291 (3d Cir. 2007). Further, the fact that the two conspiracies may overlap at times "does not prove that there was only one conspiracy." *United States v. Thomas*, 759 F.3d 659, 667 (8th Cir. 1985). As another court explained,

> In order to establish interdependence between the spokes, it must be shown that their "combined efforts" were "required to insure the success of the venture." If the spokes did not depend on each other, aid each other, or share any interest in the others' success, merely having the "same goal" is insufficient to establish interdependence. It must be shown that "the activities of the spoke participants were, to some degree, interdependent or mutually supportive." The inquiry, therefore, must focus on the "character of the agreements" between the spoke participants, and not on the relationship between the hub and spoke members.

*United States v. Kelly*, 2012 WL 425969, *6 (W.D. Pa. 2012) (internal citations omitted).

Here, there are no "combined efforts" to "insure the success of the venture." It is undisputed that the spokes (the so-called Developer Defendants) did not "depend on each other, aid each other, or share any interest in the others' success." *See, e.g.*, Hr'g Tr., Dec. 8, 2020, at 9. The spokes were neither "interdependent" nor "mutually supportive." In fact, the government does not allege *any* communication between the spokes or coordination of efforts, much less an agreement between them.

To quote the government, the various alleged "project/schemes" were "separate" and "distinct." (ECF 228 at 23–24.) Besides a single connection to a "hub" defendant, there are no commonalities or agreements among the alleged schemes or the "spoke" defendants. Because the government insists that Counts 2–17 charge a single scheme, they should be dismissed.

## D.   Counts 18–21: The State-law Predicate Is Broader than the Generic Federal Definition of Bribery

In their motion to dismiss, defendants argue that the Travel Act counts should be dismissed because the state bribery statutes which are alleged as the predicate offenses are broader than the generic federal definition of "bribery." The California statutes, Penal Code ("CPC") §§ 67, 67.5, and 68, do not require a *quid pro quo*, an official act, or linkage between acceptance of any bribe and an official action, all of which are characteristics of the "ordinary, contemporary, common meaning" of "bribery" when the Travel Act was enacted in 1961. Applying the categorical approach espoused by the Supreme Court, Counts 18–21 fail to state an offense and the counts must be dismissed.

In its opposition, the government agrees that this Court should apply the categorical approach to determine whether the charged California statutes may serve as predicates for "unlawful activity" under the Travel Act. (Opp. at 29 (citing *United States v. Chi*, 936 F.3d 888, 894–95 (9th Cir. 2019).) The government concurs that this Court should compare the predicate state bribery statutes charged in the Travel Act counts to the generic federal definition of bribery to determine whether they are a categorical

match. *Id.* The government also agrees that the generic federal definition of bribery is to be determined at the time of the Travel Act's passage in 1961. *Id.* at 30, 32, 34.

As to whether generic federal bribery requires an official act, the government plays it both ways. At first, it suggests that *McDonnell*'s "official act" holding was a new rule that suddenly sprang into existence in 2016 and thus could not possibly have been part of the 1961 generic definition. *Id.* at 30–31, 35 n.15 ("Unsurprisingly, nothing in the ordinary, contemporary, common definition of bribery in 1961 embraced the future constraints that the *McDonnell* Court would place on one particular federal bribery statute 55 years later"). But then the government repeatedly acknowledges that an official act is indeed a required element of generic bribery.

This acknowledgment first occurs in its analysis of the Ninth Circuit's holding in *Chi*. (Opp. at 33.) Although that case involved an entirely different statute, the government treats it as dispositive to the current one (the defense disagrees, *see infra*). Notably, however, the government points to *Chi*'s finding that a foreign bribery statute "necessarily required the type of official action or official exercise of discretion required by the charged U.S. [money laundering] statute." (*Id.* at 34); *see also Chi*, 936 F.3d at 892 n.6 (element of foreign statute included "a *quid pro quo* for exercising [the defendant's] official duties.") Next, the government claims that the Black's Law Dictionary definition of "bribery" is *the* definition for 1961 Travel Act Bribery. But Black's definition includes four alternate descriptions, two of which include variations of "official action" in the definition (the final two address "rewards" or gratuities). (Opp. at 34–35.) And finally, the government acknowledges that Counts 18–21 indeed allege a *quid pro quo*, an official act, and linkage between the two, but criticizes the defendants for pointing out the contradiction between the counts' application of state bribery law (which does not require such evidence) and the FSI (which does). (*Id.* at 37.)

Contrary to the government's assertions, the question presented here is a novel issue, in no way foreclosed by the Supreme Court's holding in *Perrin v. United States*, 444 U.S. 37, 49–50 (1979) (commercial bribery included in generic "bribery" definition),

nor by the Ninth Circuit's holding in *Chi*, *supra* (foreign bribery statute fell within the generic definition of bribery as contemplated at the time the relevant money laundering statute was passed in 2001). As much as the government would like to wedge the predicate statutes at issue here into the commercial bribery context that was at issue in *Perrin* and *Chi*, the context is different and critical: generic bribery involving an elected official requires an official act, a *quid pro quo*, and linkage between the two. The California statutes at issue, as interpreted by the California courts, have no such requirement. *See People v. Gaio*, 81 Cal. App. 4th 919, 930–31 (2000) (discussed *infra*). As such, they are broader than the generic federal definition and cannot serve as Travel Act bribery predicates.

### 1. While *Perrin* and *Chi* Are Instructive, Bribery Involving a Public Official Is Different from Commercial Bribery

The government incorrectly claims that *Perrin* and *Chi* preclude the defenses' argument that generic bribery requires an official act, *quid pro quo*, and linkage between the two. (*See* Opp. 30–31.) While both *Perrin* and *Chi* are instructive for the Courts' use of the categorical approach (an approach the government and defense agree this Court should adopt), both cases arose out of the commercial arena. In *Perrin*, the Supreme Court rejected the idea that Travel Act "bribery" should be defined as it was at common law, holding that the term instead should be considered according to its generic ("ordinary, contemporary") meaning, which included commercial bribery. 444 U.S. at 42–45. The Court did not put forward a comprehensive definition of bribery, other than to say it included commercial bribery. (*Id.* at 48–49.)[14]

In *Chi*, the Ninth Circuit addressed 18 U.S.C. § 1956, a money laundering statute passed by Congress in 2001. There, a South Korean seismologist was convicted of receiving money from English and American businesses in exchange for recommending and purchasing the company's products for government use. Applying the categorical

---

[14] The defense agrees that federal bribery includes commercial bribery, but that is of little import since commercial bribery is not at issue in this case.

approach, the Court concluded that the South Korean statute fell within the generic definition of bribery as it was defined in the 2001 statute. 936 F.3d at 890–91. *Chi* thus is in a distinct realm than the instant case—it involved a *different* federal statute passed in a *different* era involving a *different* (foreign) predicate statute, in the *commercial* context. The latter element is crucial: in footnote 7, the Court clarified that the Constitutional considerations in *McDonnell* were not applicable because the scientist "was charged with a crime for engaging in a *quid pro quo* exchange with foreign businesses, not the people he served. Similarly, by virtue of applying to 'offenses against a foreign nation,' the indictment and jury instructions did nothing to implicate the issues of federalism present in *McDonnell*." *Id.* at 898 n.7.[15]

The government does not address any of these major distinctions, including that the current case involves an elected public official, and the *McDonnell* federalism considerations are very much at issue. Neither *Perrin* nor *Chi* addressed the generic definition of bribery in this context.

## 2. Generic "Bribery" as Used in the Travel Act Requires a *Quid Pro Quo* and an Official Act when Involving Public Officials

In seeking to avoid issues unique to cases involving a public official, the government misconstrues the defense's position as a conflation of federal generic bribery with 18 U.S.C. § 201. The government argues that "[l]ike the money laundering statute in *Chi*, the Travel Act contains no reference to § 201, nor any other clue of a

---

[15] In *Chi,* the government acknowledged the importance of a *quid pro quo* and an official act particularly in cases involving elected public officials, although it argued that Dr. Chi's conduct satisfied *McDonnell's* official act requirement and that "any vagueness concerns were mitigated by the instructions requiring the jury to find that Chi engaged in a *quid pro quo*." *See United States v. Chi*, Brief For The United States, Ninth Circuit Case No. 17-50358, pages 44–45 ("To be sure, the Court in *McDonnell* also found that the government's 'expansive' reading of 'official act' raised 'significant constitutional concerns,' *i.e.*, (1) potential interference in the ability of elected public officials to respond to the needs of constituents, (2) notice concerns due to the vagueness of the government's definition, and (3) 'setting standards of good government for local and state officials,' in contravention of federalism principles.")

22

congressional intent to adopt the elements of that separate statute." (Opp. at 32 ("Indeed, § 201 was not even in existence when the Travel Act was enacted in 1961.").) The government cites *Chi* for the proposition that there are lots of bribery provisions in the federal code; why, it asks, should § 201 be more significant than any of the others? (Opp. at 33, citing 936 F.3d at 896–97.)

There is, in fact, good reason why 18 U.S.C. § 201 is critical to an understanding of Travel Act "bribery." Both the Travel Act, part of Public Law 87-228, also known as "The Anti-Gambling Statutes," and the federal bribery statutes including 18 U.S.C. § 201—part of Public Law 87-849 also known as "The Conflict of Interest Provisions"— were passed by the 87th Congress, which sat from January 3, 1961, to January 3, 1963, during the final weeks of the Eisenhower administration and the first two years of the Kennedy administration. These Acts were among its major accomplishments and were debated contemporaneously. *See* Anti-Gambling Statutes, Public L. No. 87-228, https://www.jfklibrary.org/asset-viewer/archives/USDJ/MF159/USDJ-MF159-001 (last visited October 25, 2021). That is, the same Congress that considered and passed the Travel Act using the term "bribery" simultaneously drafted and debated the federal bribery statute.[16] Although the bribery law was chronologically enacted after the Travel Act, "[s]imilar legislation had been supported by the Eisenhower Administration and had been under consideration by the House Judiciary Committee from 1959 through 1961." *See* Congressional Quarterly Almanac, *id.* Unlike the 2001 money laundering statute at issue in *Chi*, § 201 indeed offers a congressional clue as to Travel Act "bribery."[17]

The government is wrong to suggest that *McDonnell* created a completely new rule of law. *McDonnell* confirmed a narrow reading of an "official act" to mean what it

---

[16] The same act included other conflict of interest provisions, but none inform the use of the term "bribery." *See, e.g.*, 18 U.S.C. §§ 208, 209.

[17] Even were the temporal overlap nonexistent, courts consider relevant federal statutes, particularly those that are similarly named. *See, e.g.*, *United States v. Schopp*, 938 F. 3d 1053 (9th Cir. 2019) (generic meaning of "sexual exploitation of children" set forth in federal statute of a similar name).

23

says, *see* 18 U.S.C. § 201(a)(3), and it relied on *Sun-Diamond*'s explanation of a limited definition, *see McDonnell*, 136 S. Ct. at 2370 (citing *Sun Diamond*, 138 F.3d 961). What is significant about *McDonnell* is that it was interpreting honest services fraud, codified at 18 U.S.C. §§ 1343, 1346, and 1349, as well as Hobbs Act extortion, found at 18 U.S.C. § 1951 and *not* § 201. But, because it was a bribery case involving an elected official, the Court read § 201's "official act" and *quid pro quo* requirements into those statutes. The same must be true of Travel Act "bribery" involving an elected official.

> **3.** **The Government's Interpretation of California Penal Code §§ 67, 67.5, and 68 Is Contrary to the California Supreme Court's Interpretation of these Statutes**

The government urges this Court to review the language of the California Penal Code sections charged as Travel Act predicates and determine that they include "the type of official action or discharge of duty contemplated by the operative bribery definition." (Opp. at 35 (referring to CPC § 67); *see also id*. at 35–36 CPC (§ 67.5); *id*. at 36 (CPC § 68).) That exact argument was rejected by the California appellate court in *People v. Gaio*, 81 Cal. App. 4th at 930–31.

In *Gaio*, the defendant argued that the language of § 67's reference to "intent to influence him in respect to any act, decision, vote, opinion, or other proceeding" was nearly identical to § 201's definition of "official act" as "any decision or action on any question, matter, cause, suit, proceeding, or controversy." *Id*. (comparing CPC § 67 to 18 U.S.C. § 201). The Court disagreed, finding that *Sun-Diamond* did not apply to California bribery, and that a bribe under CPC §§ 67.5 and 69 did not need to be tied to a specific official action. *Id*. at 930–31, 33; *see also United States v. Frega*, 179 F.3d 793, 805 (1999) ("Linkage between a payment and a specific official decision is not required under California bribery law."). The government's proposal that this Court rule contrary to a state court's interpretation of its own statute runs into the very federalism concerns raised in *McDonnell*. 136 S. Ct. at 2373. As interpreted by the California courts, the bribery

predicates alleged here are defined more broadly than the generic definition and thus cannot serve as predicates.

**E.    Counts 22, 23, and 29 Must Be Dismissed as Duplicitous Because Each Alleges Multiple § 666 Bribes and Some *Quids* and *Quos* are Outside of the Statute of Limitations**

   **1.    Each Act of Bribery Is a Separate Offense Under § 666**

The opposition neither analyzes the elements of § 666, nor attempts to define the unit of prosecution, nor responds to defendants' on-point duplicity cases. Instead, mixing and matching legal concepts, the government argues that Counts 22, 23, and 29 are not duplicitous because the counts allege an "ongoing stream-of-benefits" bribery scheme"[18] and that § 666 is a "continuing offense," and suggests that prosecutors can redefine the elements of the offense based on how they choose to charge individual cases. (Opp. at 38–41.) These confusing arguments are misdirected and wrong.

The unit-of-prosecution analysis asks a simple question: what is "the minimum amount of activity for which criminal liability attaches for each charge under a single criminal statute"? *United States v. Rentz*, 777 F.3d 1105, 1108 (10th Cir. 2015) (Gorsuch, J.) (en banc) (cleaned up). Because "it is Congress who establishes and defines offenses," not prosecutors, "whether a particular course of conduct involves one or more distinct offenses under a statute depends on Congress's choice." *United States v. Cureton*, 739 F.3d 1032, 1041 (7th Cir. 2014). "The unit of prosecution analysis [thus] revolves around a question of statutory interpretation and legislative intent for a particular crime." *United States v. Earnest*, No. 19-CR-01850-AJB, 2021 WL 3829129, at *10 (S.D. Cal. May 5, 2021) (citing *United States v. Keen*, 104 F.3d 1111, 1118 (9th Cir. 1996)).

---

[18] As noted earlier, the government has advised that its references to a "'stream of benefits' bribery scheme," (Opp. at 38–39), is a blanket term for three different theories of bribery liability: the "stream of benefits," "as the opportunities arise," and "retainer" theories of bribery. The government's conflation of these terms is misguided. *Silver*, 948 F.3d at 553 n.7.

The government does not dispute that the minimum activity required for § 666 bribery is (1) a corrupt solicitation (or offer), (2) of anything of value, (3) with the intent of being influenced (or influencing any person) in connection with a qualifying governmental transaction, (4) where the transaction involves anything of at least $5,000 in value. 18 U.S.C. §§ 666(a)(1)(B), (a)(2); *United States v. Cicco*, 938 F.2d 441, 444 (3d Cir. 1991). Indeed, the government emphatically agrees that the crime of bribery is complete (or not) the moment the thing of value is accepted with (or without) the requisite intent regardless of whether the recipient actually does anything in the future. (*See* Opp. at 9–10 ("Essential to the crime of bribery is the public official's agreement to be influenced in the performance of an official act in exchange for a thing of value, not the actual performance of the official act").) Counts 22 and 29 allege that Huizar accepted each thing of value with the intent to be influenced in connection with valuable development projects, and that, for Count 23, SZNW offered each benefit with the intent to influence Huizar in connection with the L.A. Grand Hotel Project. (FSI ¶¶ 49, 50, 56.) The duplicity conclusion is thus straightforward: Counts 22, 23, and 29 charge multiple § 666 bribes and should be dismissed as duplicitous.

This outcome is supported by well-reasoned cases grounded in the language of the statute. For example, in *United States v. Nystrom*, where the government took the exact opposite position to the one it is advancing here,[19] the court examined in detail why each act of bribery is a separate offense under § 666. 2008 WL 4833984, at *5–11 (D.S.D. Nov. 4, 2008). In explaining its conclusion, the court found

> [p]articularly persuasive . . . the fact that [18 U.S.C.] § 201, the predecessor to the bribery component of § 666 with the same 'anything of value' language, punishes each act of

---

[19] The government also took the exact opposite position in *United States v. Langford*, No. 08-CR-245-S, 2009 WL 10671369, at *7 (N.D. Ala. July 2, 2009) ("The government . . . assert[s] that because similar bribery statutes have made individual payments discrete violations and because Congress enacted 18 U.S.C. § 666 to expand federal authority to protect federal funds, § 666 must also be read to proscribe each payment.").

26

bribery as a separate offense even if all of the bribes were made in furtherance of the same scheme or enterprise. It is logical to assume that the bribery component of § 666, enacted to augment and expand the scope of § 201 and to expand the federal government's prosecutorial power, would favor the same interpretation of the appropriate unit of prosecution.

*Id.* at \*11 (citing *United States v. Anderson*, 509 F.2d 312, 333 (D.C. Cir. 1974) ("The only intention we can reasonably ascribe to Congress [under § 201] is that bribers may be punished separately for separate acts of bribery")); *see also United States v. Tutein*, 122 F. Supp. 2d 575, 577–78 (D.V.I. 2000) ("The Court joins those tribunals that have discarded the rule that multiple bribe offers are merely installments of the same transaction or offense. . . . [The § 666 count] is duplicitous, and must be dismissed.").[20]

The problem here is not merely academic. There is a risk of "serious unfairness" when the government can bundle conduct to hide weaker allegations behind stronger ones. As the First Circuit explained in *United States v. Newell*, 658 F.3d 1, 27 (1st Cir.

---

[20] The government argues that the § 666 counts are non-duplicitous, "continuing offenses" because some courts—*when interpreting the separate embezzlement portion of § 666*—have permitted the aggregation of small thefts to meet the $5,000 jurisdictional element of § 666. (Opp. at 39–40.) If those analyses under a different subsection have any relevance to this motion, it is only to bolster defendants' duplicity arguments. Because the embezzlement portion of § 666 has a $5,000 threshold, some courts have held that small thefts can be aggregated *up to the threshold* in order "to ensure that poorly motivated officials do not evade liability under § 666 simply by stealing less than $5000 at a time." *Newell*, 658 F.3d at 24 (summarizing *United States v. Sanderson*, 966 F.2d 184 (6th Cir. 1992), and *United States v. Hines*, 541 F.3d 833 (8th Cir. 2008)). But once the threshold is met and all the elements are satisfied, grouping multiple qualifying thefts under a single count violates the rule against duplicity. *Newell*, 658 F.3d at 22, 28 (dismissing § 666 counts as duplicitous where "each [count] contained descriptions of numerous transactions" and "each of these transactions would seem, on its face, to be enough to make out an independent violation of § 666").

Here, there is no colorable argument that aggregation is necessary to reach the $5,000 threshold where the alleged object of the bribes was assistance with eight- and nine-figure development projects. Thus, under the logic of these cases, Counts 22, 23, and 29 are duplicitous.

27

2011)—a case relied on by the government—when it dismissed several § 666 counts as duplicitous:

> In aggregating multiple instances of the same crime, the prosecution may bundle together alleged offenses that are strongly supported by the evidence with ones that are only moderately, or even weakly, supported by the evidence. . . . In conditions where jurors disagree among themselves as to just which offenses the evidence supports, the defendant may nevertheless wind up convicted because the jurors agree that the evidence showed that he had committed an offense, even if it was ambiguous as to which one.

*Id.* at 27 (emphasis in original).

The bottom line is simple: Counts 22, 23, and 29 allege multiple distinct bribes; they should therefore be dismissed as duplicitous.

## 2. "Continuing Offense" Analysis Applies Only to Statute of Limitations (Not Duplicity) and the Court Should Strike Untimely Allegations from the § 666 Counts

Wrongly collapsing distinct legal concepts, the government argues that Counts 22, 23, and 29 are not duplicitous because § 666 bribery is a "continuing offense." But whether § 666 bribery is a continuing offense bears on the statute of limitations question, not duplicity. When it comes to that question, the government is also wrong.

"[T]he doctrine of continuing offenses [applies] in only limited circumstances." *Toussie v. United States*, 397 U.S. 112, 115 (1970). "Because the continuing offense doctrine extends the statute of limitations, [courts] are admonished to construe that term narrowly." *United States v. Yashar*, 166 F.3d 873, 876 (7th Cir. 1999) (citing *Toussie*, 397 U.S. at 115) (holding § 666 is not a "continuing offense"). A "continuing offense" is a "term of art" that "does not merely mean an offense that continues in a factual sense." *Yashar*, 166 F.3d at 875. Rather, "[a]n offense is deemed 'continuing' . . . *only* when (a) 'the explicit language of the substantive criminal statute compels such a conclusion,' or (b) 'the nature of the crime involved is such that Congress must assuredly have

intended that it be treated as a continuing one.'" *Id.* (quoting *Toussie*, 397 U.S. at 115). Contrary to the government's suggestion, (Opp. at 39), this determination depends on "the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue." *United States v. Niven*, 952 F.2d 289, 293 (9th Cir. 1991); *see also Yashar*, 166 F.3d at 877 ("[T]he active or passive nature of a defendant's actions has never been the benchmark of a continuing offense under *Toussie.* Instead, the focus is on the statutory language. If the statute describes an offense that by its nature continues after the elements have been met, then the offense is a continuing one regardless of the nature of defendant's actions beyond that point.").

No "explicit language" in the statute "compels" that § 666 is a continuing offense, nor is the "nature of [a § 666 crime] such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115. For that reason, virtually every court to address the issue agrees that § 666 bribery is not a "continuing offense." *E.g.*, *United States v. Musto*, No. 10-CR-338-ARC, 2012 WL 5879609, at *4 (M.D. Pa. Nov. 21, 2012) ("The offense laid out in § 666(a)(1)(B) . . . is not an unlawful course of conduct that does perdure, or [one] committed over a period of time as continuing offenses like conspiracy are. Instead, the offense under § 666(a)(1)(B) is discrete, one that is committed and whose limitations period starts to run once all elements of the offense are established, regardless of whether the defendant continues to engage in criminal conduct . . . . [T]he government's attempt to treat the conduct charged in Count 5, which is alleged to violate § 666, the same as a continuing offense in an effort to extend the limitations period [] is rejected.") (cleaned up); *United States v. Meffert*, No. 09-CR-374-EEF, 2010 WL 2360776, at *7 (E.D. La. June 7, 2010) ("The statute of limitations [for § 666 bribery] begins to run when the crime is complete and all of the elements of the crime have been established."); *United States v. Jones*, 676 F. Supp. 2d 500, 518 (W.D. Tex. 2009) ("For bribery charged pursuant to § 666, the statute of limitations begins to run when each element of the statute is met, which is when [] 'anything of value' is exchanged with the requisite intent to influence or be influenced."); *Sunia*, 643

1   F. Supp. 2d at 69 ("The government's primary argument is that its fraud and bribery
2   charges under § 666 are insulated from dismissal on statute of limitations grounds by the
3   'continuing course of criminal conduct' doctrine. . . . This argument is firmly at odds
4   with [*Yashar*, 166 F.3d 873]").[21]

5        The opposition offers no serious reason to depart from the overwhelming weight
6   of authority holding that § 666 is not a continuing offense. As a result, for Huizar, any
7   benefit received or conferred over five years before the Indictment was returned is time-
8   barred. Here, those allegations include several trips to Las Vegas, the $600,000 loan, the
9   LADBS consolidation, and others—specifically, OAs 1–13, 23–45, 50–55, 71. (*See also*
10  Opp. at 4 ("As the government has explained . . . the factual allegations in Count 1
11  provide additional detail underlying the substantive bribery charges").)

12       For SZNW and Chan, who were not named in the original indictment, a calculation
13  of the statute of limitations begins with the date that the Superseding Indictment was
14  returned. *United States v. Polanco*, 2008 WL 2891076 (D. Puerto Rico Apr. 4, 2008)
15  (recommending that charges against defendant added in a superseding indictment be
16  dismissed as time barred), *accepted and affirmed*, No. 07- CR-344-DRD, ECF 238 (June

17
18
19
20
21

22       [21] In opposition to this broad consensus, the government points to a single case for
23  its contention that § 666 is continuing. (Opp. at 39 (citing *United States v. Fitzgerald*,
    514 F. Supp. 3d 721, 756–57 (D. Md. 2021).) But the section the government cites from
24  *Fitzgerald* rejected a motion to dismiss a § 371 conspiracy as duplicitous—not § 666
    bribery. While *Fitzgerald* also denied a motion to dismiss a separate § 666 count as *time*
25  *barred* (again, the "continuing offense" doctrine relates to statute of limitations analyses,
    not duplicity), its outlier reasoning was premised on a fundamental misunderstanding of
26  both the statute and basic bribery law, which, as the government highlights, only requires
27  proof of corrupt intent when the bribe is given—it does not matter how many transactions
    (if any) the official later engaged in. (*See* Opp. at 9–10 ("the government need not prove
28  . . . that the official actually performed any official acts").).

                                             30

27, 2008). Accordingly, as to SZNW and Chan, any benefit conferred or received more than five years before the FSI (returned on November 12, 2020) is time-barred.[22]

Thus, in addition to dismissing Counts 22, 23, and 29 as duplicitous, the Court should strike or dismiss these untimely allegations with prejudice. *See United States v. Gonzalez*, No. 06-CR-726-WHP, 2008 WL 3914877, at *4 (S.D.N.Y. Aug. 26, 2008) ("Count Five, which charges violations of § 666 . . . is time-barred with respect to all conduct alleged prior to [the cutoff date]."); *United States v. Crary*, No. 13-CR-35-M-DLC, 2013 WL 6054607, at *3–4 (D. Mont. Nov. 15, 2013) (holding that 18 U.S.C. § 641 is not a continuing offense, and dismissing untimely allegations in that count); *United States v. Reese*, 254 F. Supp. 3d 1045, 1050 (D. Neb. 2017) (same).

## F.   Constitutional Challenges

### 1.    § 666 is Unconstitutional and the Government Does Not Meaningfully Address the Issues Raised

The government largely ignores defendants' challenge to the constitutionality of § 666 and simply cites several pre-*McDonnell* cases finding that § 666 was constitutional. (Opp. at 46–47 (citing *Sabrina v. United States*, 541 U.S. 600 (2004); *United States v. Bynum*, 327 F.3d 9886 (9th Cir. 2003); *United States v. Rosen*, 716 F.3d 691 (2nd Cir. 2013); *United States v. Spano*, 401 F.3d 837 (7th Cir. 2005)).) To the extent the government addresses the constitutionality of § 666 at all, it argues only that *McDonnell* does not implicate the First Amendment such as to trigger the overbreadth doctrine, (Opp. at 47), and that Congress was within its right to protect federal spending, (Opp. at 48). The government's argument as to the First Amendment ignores the driving

---

[22] Of note, Counts 22 (charging Huizar and Chan) and 23 (charging SZNW) allege that the crime began "on or about October 28, 2015." This is not correct as to Chan or SZNW. Further, the two-week difference between the October 28, 2015 and November 12, 2015 dates matter in at least one respect: one of the Las Vegas trips is alleged to have occurred between October 28 and 30, 2015. (FSI, Count 1, OA 13.) Because this event predates the start of the statute of limitations period for Chan and SZNW, it cannot be a basis for a conviction against them. *United States v. Mancuso*, 718 F.3d 718 F.3d 780, 790–91 (9th Cir. 2013).

31

force and reasoning of *McDonnell* which relied on core First Amendment political speech and associational rights: "normal political interaction between public officials and their constituents." 136 S. Ct. at 2372. (*See* MTD at 53–56.)

The government sidesteps the serious Tenth Amendment concerns implicated by § 666 in this case and ignores its own manual delineating the ambiguities of the statute. (*See* Opp. at 46–48; *see also* MTD at 61 (citing Dep't of Justice Manual, Title 9-1637 § 1001, *The Scope of 18 U.S.C. § 666* (4th ed. 2021-3 Supp.), noting that "[t]he broad language of . . . § 666(a)(1)(A) and its legislative history raise a significant issue regarding the scope of the statute.").) Instead, the government highlights the Second Circuit's finding in *United States v. Ng Lap Seng*, 934 F.3d 110 (2d Cir. 2019), that § 666 does not create serious federalism concerns. (Opp. at 48.)[23] In so doing, it disregards that *Ng Lap Seng* involved foreign citizens and did not involve elected state or local representatives or state or local government—that is, it did not involve the same federalism concerns raised here.[24]

The defendant in *Ng Lap Seng* was a foreign real estate developer who was charged and convicted of bribing two United Nations officials (who did not represent the U.S.) to commit the United Nations to hold its annual convention in the defendant's Macau convention center. 934 F.3d at 117. Relevant here, on appeal, the defendant challenged the district court's jury instructions which included a *McDonnell* official act requirement in the § 666 count but not the Foreign Corrupt Practices Act ("FCPA") count. *Id.* at 130. The Second Circuit held that neither § 666 nor the FCPA required a *McDonnell* official act instruction "because those statues define bribery more expansively than § 201(a)(3) . . . and because none of the constitutional concerns identified in *McDonnell*—vagueness, representative government, federalism—require limiting § 666 and FCPA bribery to

___

[23] The government quotes *Ng Lap Seng* as stating that "No federalism concerns render § 666(a)(2) constitutionally infirm." (Opp. at 47.) That language is not found anywhere in the opinion.

[24] As to the Fifth Amendment vagueness challenge, the government appears to ignore that completely.

32

'official acts.'" *Id.* at 138. The Second Circuit's decision explained that the defendant's concerns about a representative form of government "do not pertain to the FCPA" because "[n]one of its prohibitions operate within our federalist structure of representative government." *Id.* at 137. The U.N. "is not an entity subject to the 'basic compact' of representative government" and "[i]ts members are equal sovereigns, not elected representatives." *Id.* "The same conclusion applies for § 666 *as applied to non-government 'organizations*.' Not only is the U.N. a public international organization outside our federalist structure, but also, it is not an entity subject to the 'basic compact' of representative government." *Id.* (emphasis added). The facts of *Ng Lap Seng* did not touch upon the core constitutional issues of federalism and representative democracy the government relies on it for or which are at issue in this case.[25]

For the reasons previously stated (and largely unaddressed by the government), § 666 is unconstitutional as violative of the First, Fifth, and Tenth Amendments.

## 2.      Honest Services Fraud is Unconstitutional As-Applied

As the defendants' explained in their motion, *Skilling* has generally foreclosed avenues to challenge the honest services fraud statutes. Nevertheless, an as-applied challenge here, where the government puts forth a constitutionally deficient bribery theory, such a challenge is warranted.

While the government claims that "Defendants have been charged with engaging in a typical bribery scheme," (Opp. at 50), the government does not put forth a simple bribery case. It proposes a complicated and vague series of schemes, overlapping in time but otherwise unconnected. As alleged and as-applied here, for the reasons previously

---

[25] While the Second Circuit briefly spoke to § 666's federalism implications, not only was that issue not before the court or the basis of its decision (as the concurrence explicitly stated, refusing to join any part of the opinion relating to *McDonnell*'s application to § 666, *see* 934 F.3d at 146–147), but it was not briefed at all by the parties on appeal. *See generally* Brief for Appellant, *United States v. Ng Lap Seng,* Case No. 18-1725, (No. 59-1), 2018 WL 3830680; Brief for Appellee, *United States v. Ng Lap Seng*, Case No. 18-1725, (No. 87), 2018 WL 4830223; Reply Brief for Appellant, *United States v. Ng Lap Seng*, Case No. 18-1725 (No. 97), 2018 WL 4929587.

explained in the MTD and *supra* at II.A., the honest services fraud as alleged in this case fails to comport with the requirements of *McDonnell* and are unconstitutional.

### 3. Incorporating the Broader California Bribery Through RICO, the Travel Act, and Money Laundering Renders the Counts Unconstitutional As-Applied

Similarly, as stated in defendants' motion and elaborated *supra* at II.D.3., California bribery is broader than the federal definition and its incorporation through the RICO, money laundering, and Travel Acts counts is unconstitutional as applied.

The government is attempting to make an end-run around *McDonnell*. It argues that a "federal charge based on [a] broader state offense would simply be the federal government holding a state official to account for conduct the state has already proscribed." (Opp. at 51.) But surely the Supreme Court did not "intend[] to let in through the back door the very prosecution theory that it tossed out the front." *United States v. Yates*, __F.4th __, 2021 WL 4699251, at *7 (9th Cir. Oct. 8, 2021) (citation and modification omitted). This Court should not allow the federal government to bring through the back door the broad theory of *quid pro quo* bribery the Supreme Court specifically tossed out in *McDonnell*.

### III. CONCLUSION

For the reasons previously stated, the Court should grant the Motions to Dismiss and/or Strike, ECF Nos. 235 and 251.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: November 4, 2021          By   s/Carel Alé

Carel Alé
Charles Snyder
Adam Olin
Deputy Federal Public Defenders
Attorneys for Defendant
José Luis Huizar

[And on behalf of Defendants Raymond Chan
And Shen Zhen New World I, LLC]

34