CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CAREL ALE (Bar No. 283717)
(E-Mail: Carel_Ale@fd.org)
CHARLES SNYDER (Bar No. 287246)
(E-Mail: Charles_Snyder@fd.org)
ADAM OLIN (Bar No. 298380)
(E-Mail: Adam_Olin@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-4740
Facsimile: (213) 894-0081

Attorneys for Defendant
José Luis Huizar

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-0326-JFW |
| Plaintiff, | |
| v. | **NOTICE OF MOTION AND MOTION TO SUPRESS INFORMATION OBTAINED PURSUANT TO PROFFER AGREEMENT; DECLARATION OF VICKI PODBERESKY IN SUPPORT; EXHIBITS** |
| JOSE LUIS HUIZAR, *et al.*, | |
| Defendants. | |
| | Hearing Date: January 31, 2021 |
| | Time: 8:00 a.m. |
| | Courtroom: 7 A - Hon. John F. Walter |

TO: ACTING UNITED STATES ATTORNEY AND HER COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, on January 31, 2021 at 8:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable John F. Walter, United States District Judge, Defendant José Luis Huizar will move to suppress any information obtained pursuant to the parties' December 13, 2018 Proffer Agreement:

## **MOTION TO SUPRESS**

Defendant José Luis Huizar, hereby moves this Honorable Court for an order suppressing all information provided to the government pursuant to the parties' December 13, 2018 Proffer Agreement. The Proffer Agreement is a binding contract that by its terms expressly prohibits the government from using information obtained pursuant to that agreement against Mr. Huizar in its case-in-chief and in connection with any sentencing proceeding with certain exceptions.

This motion is based on the Fifth Amendment to the United States Constitution, the attached Memorandum of Points and Authorities, the declaration of Vicki I. Podberesky, all files and records in this case, and any further evidence as may be adduced at the hearing on this motion.

Respectfully submitted,
CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: November 15, 2021          /s/ *Carel Alé*

Carel Alé
Charles J. Snyder
Adam Olin
Deputy Federal Public Defenders
Attorneys for Jose Luis Huizar

2

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS .......................................................................... 2

    A.    Proffer Agreement ................................................................................ 2

    B.    Proffers ................................................................................................. 3

III. LEGAL ANALYSIS .................................................................................. 5

    A.    Applicable Law .................................................................................... 5

        1.    Proffer Agreements Are Analyzed under Contract Law, But With Added Solicitude for the Constitutional Rights of the Defendant ................................................................................ 5

        2.    The Government Is Held to Meticulous Standards of Promise and Performance and Ambiguities in Agreements are Construed Against the Government .................................. 6

        3.    Basic Principles of Contract Law Allow a Party to Cure a Breach ................................................................................... 8

        4.    Parties Have a Duty of Good Faith and Fair Dealing ..................... 10

        5.    Equitable Estoppel is Applicable Against the Government ........... 10

    B.    The Alleged Breach was Cured and the Government Is Bound to the Terms of the Proffer Agreement ................................................. 11

        1.    Extrinsic Evidence Establishes Huizar Reasonably Understood the Proffer Agreement to Follow Basic Contract Law and that Huizar Cured Any Alleged Breach ................................................. 12

    C.    The Government Violated Huizar's Due Process Rights and Its Duty of Good Faith and Fair Dealing by Continuing to Request Performance Pursuant to the Proffer Agreement ................................................. 16

    D.    The Government is Estopped from Rescinding the Proffer Agreement .... 19

IV. CONCLUSION ........................................................................................ 22

1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Breazeale v. Victim Services, Inc.*,
    878 F.3d 759 (9th Cir. 2017) ..................................................................... 7

*Campbell v. Smith*,
    770 F.3d 540 (7th Cir. 2014) .................................................................... 15

*Hartjes v. Endicott*,
    456 F.3d 786 (7th Cir. 2006) ...................................................................... 9

*Heckler v. Cty. Health Servs. of Crawford Cty., Inc.*,
    467 U.S. 51 (1984) ................................................................................... 10

*Perez-Gonzalez v. Lashbrook*,
    904 F.3d 557 (7th Cir. 2018) ...................................................................... 9

*Puckett v. United States*,
    556 U.S. 129 (2009) ................................................................................. 16

*Santobello v. New York*,
    404 U.S. 257 (1971) ................................................................................. 14

*Sulit v. Schiltgen*,
    213 F.3d 449 (9th Cir. 2000) .................................................................... 10

*United States v. $87,118.00 in U.S. Currency*,
    95 F.3d 511 (7th Cir. 1996) ........................................................................ 6

*United States v. Atkinson*,
    259 F.3d 648 (7th Cir. 2001) ...................................................................... 8

*United States v. Branam*,
    231 F.3d 931 (5th Cir. 2000) .................................................................... 12

*United States v. Brown*,
    5 F.4th 913 (8th Cir. 2021) ....................................................................... 15

*United States v. Carrillo*,
    709 F.2d 35 (9th Cir. 1983) ........................................................................ 6

*United States v. Chiu,*
    109 F.3d 624 (9th Cir. 1997) ...................................................................... 6

*United States v. Clark,*
    218 F.3d 1092 (9th Cir. 2000) ........................................................... 6, 7, 21

*United States v. De la Fuente,*
    8 F.3d 1333 (9th Cir. 1993) ........................................................ 11, 12, 16, 18

*United States v. Diaz-Jimenez,*
    622 F.3d 692 (7th Cir. 2010) (Posner, J.) ........................................ 9, 13, 15, 16

*United States v. Farmer,*
    543 F.3d 363 (7th Cir. 2008) ............................................................. 6, 8, 17

*United States v. Gamboa-Cardenas,*
    508 F.3d 491 (9th Cir. 2007) ............................................................ 10, 20

*United States v. Garcia,*
    956 F.2d 41 (4th Cir. 1992) .................................................................... 12

*United States v. Georgia-Pacific Co.,*
    421 F.2d 92 (9th Cir. 1970) ......................................................... 10, 19, 20

*United States v. Guyton,*
    37 F. Supp. 3d 840 (E.D. La. 2014) ........................................................ 14

*United States v. Hallahan,*
    756 F.3d 962 (7th Cir. 2014) .................................................................... 9

*United States v. Hallam,*
    472 F.2d 168 (9th Cir. 1973) (per curiam) ............................................... 15

*United States v. Henry,*
    758 F.3d 427 (D.C.C. 2014) .............................................................. 10, 17

*United States v. Jones,*
    58 F.3d 688 (D.C.C. 1995) ................................................................. 17, 18

*United States v. Lutchman,*
    910 F.3d 33 (2d Cir. 2018) ....................................................................... 8

*United States v. Moncivais,*
    492 F.3d 652 (6th Cir. 2007) .................................................................... 8

3

*United States v. Packwood,*
   687 F. Supp. 471 (N.D. Cal. 1987).....................................................9, 12, 15, 17

*United States v. Packwood,*
   848 F.2d 1009 (9th Cir. 1988) .................................................................18

*United States v. Partida-Parra,*
   859 F.2d 629 (9th Cir. 1988) ...................................................................17

*United States v. Plascencia–Orozco,*
   852 F.3d 910 (9th Cir. 2017) .....................................................................7

*United States v. Purser,*
   747 F.3d 284 (5th Cir. 2014) .........................................................9, 15, 16

*United States v. Rivera-Rodriguez,*
   489 F.3d 48 (1st Cir. 2007)..................................................................8, 21

*United States v. Saxena,*
   229 F.3d 1 (1st Cir. 2000)....................................................................8, 16

*United States v. Thompson,*
   403 F.3d 1037 (8th Cir. 2005) ...................................................................7

*United States v. Under Seal,*
   902 F.3d 412 (4th Cir. 2018) ................................................................9, 10

*United States v. Vaval,*
   404 F.3d 144 (2d Cir. 2005) .......................................................................8

*United States v. Wang,*
   404 F.Supp.2d 1159 (N.D. Cal. 2005).......................................................20

*Watkins v. U.S. Army,*
   875 F.2d 699 (9th Cir. 1989) ...................................................11, 19, 20

**Other Authorities**

Restatement (First) of Contracts § 309 (1932) ......................................................28

Restatement (Second) of Contracts § 90(1) (Am. L. Inst. 1981) ....................16, 25

23 Williston on Contracts § 63:9 (4th ed.) ..........................................16, 20, 21, 27

4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On December 18, 2019, José Luis Huizar and the government executed a Proffer Agreement. Through the agreement, Huizar agreed to provide information to the government and answer its questions. The government, in turn, agreed that, with limited exceptions, it would not use Mr. Huizar's statements against him either in its case-in-chief or offer in evidence in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by Mr. Huizar. The agreement also explained that "any information provided by [counsel] on behalf of [Mr. Huizar] is covered by [the Proffer Agreement] as if it had been provided by" Mr. Huizar.

Mr. Huizar initially met with the government on December 18, 2018, January 3, 2019, and April 10, 2019.

On December 13, 2019, Assistant United States Attorneys Mack Jenkins and Veronica Dragalin called Mr. Huizar's then-counsel. AUSA Jenkins advised her that the government believed and had evidence that Mr. Huizar lied at the April 10, 2019 proffer. In other words, the government alleged that Huizar breached the Proffer Agreement's condition to be completely truthful and candid with the government. AUSA Jenkins explained that he believed Mr. Huizar lied in connection with the alleged "the 940 Hill Scheme." Huizar's counsel told the government that they would like an opportunity to rectify any perceived misstatements and continue to cooperate with the government.

That is exactly what the parties did. After that December phone call, Huizar, through counsel proffered several more times with the government and provided an image of his cellphone, the physical phone, and the password to that phone all pursuant to the Proffer Agreement.

In response to additional proffers and evidence, AUSA Jenkins told Huizar's counsel that the attorney proffers were "productive," that the government "was much more convinced," "would call that significant progress," told counsel that Huizar should "continue" to be "encouraged."

AUSA Jenkins' statements and requests to Huizar following the December 13, 2019 phone call clearly indicated that the parties were still acting pursuant to the Proffer Agreement and that the parties' were still bound to their obligations in the Proffer Agreement. The government, like all contracting parties, has a duty of good faith and fair dealing. Here, it did not merely stand aside while Huizar continued providing information and evidence—it plainly acted affirmatively in requesting and accepting that information.

Both the government's explicit statements to Huizar's counsel and its conduct evince that Huizar reasonably understood that any alleged breach of the Proffer Agreement could be and was cured. The government is bound to its obligations under the Proffer Agreement. The Court should hold the government to the terms of the Proffer Agreement and grant the order suppressing any information obtained pursuant to the Proffer Agreement.

## II. STATEMENT OF FACTS

### A.   Proffer Agreement

On December 13, 2018, Assistant United States Attorney Mack E. Jenkins ("AUSA Jenkins") emailed Mr. Huizar's counsel, Vicki I. Podberesky and Mary Andrues, a proffer letter agreement ("Proffer Agreement") related to the government's investigation of Mr. Huizar. Declaration of Vicki I. Podberesky ("Podberesky Decl."), Ex. A. The Proffer Agreement, which was addressed to Ms. Podberesky and Ms. Andrus, set out the terms and conditions by which the United States Attorney's Office ("USAO") would meet with Mr. Huizar "for the purpose of making a proffer in connection with the above referenced matter," which stated "Jose Huizar." *Id.* at 1. The agreement explained that it was "limited to the statements made by your client at the meeting to be held on December 18, 2018 and at any future meetings with the government that expressly occur under the terms of this proffer letter and does not apply to any statements made by your client at any other time, whether oral, written or recorded[.]" *Id.* at ¶ (1)(c). It explained that "*any information* provided by you on behalf of your client is covered by this agreement as if it had been provided by your client[.]" *Id.* at ¶ (1)(d) (emphasis added).

2

The Proffer Agreement required Mr. Huizar to "respond truthfully and completely to any and all questions . . . at the meeting," *id.* at ¶ (2), and, with noted exceptions, bound the government from "offer[ing] in evidence in its case-in-chief, or offer in evidence in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by your client at the meeting," *id.* at ¶ (3). It also clarified that:

> Your client's complete truthfulness and candor are express material conditions to the undertakings of this Office set forth in this letter. Therefore, if this Office should ever conclude that your client has knowingly withheld material information from this Office or otherwise not been completely truthful and candid, this Office may use against you for any purpose . . . any statements made or other information provided by your client during the meeting. If this Office so concludes, it will notify you before making any use of such statements or other information.

*Id.* at ¶ 6 (emphasis omitted).[1]

## B.  Proffers

On December 18, 2018, Huizar, along with his counsel, Podberesky and Andreus executed the Proffer Agreement at the beginning of a proffer with the government. The Proffer Agreement was signed by Huizar, Huizar's counsel, and AUSA Jenkins.

On January 3, 2019, and again on April 10, 2019, Huizar, his counsel and the government met for proffer sessions.

On December 13, 2019, AUSAs Jenkins and Dragalin called Huizar's counsel about this matter. Podberesky Decl. at ¶ 8. AUSA Jenkins told Huizar's counsel that the government believed Huizar lied about his involvement in the alleged 940 Hill Scheme during the April 10, 2019 proffer. *Id.* at ¶ 8. Further, AUSA Jenkins to Huizar's counsel

---

[1] The other exceptions applied to "information derived directly or indirectly from the meeting for the purpose of obtaining and pursuing leads to other evidence, which may be used for any purpose including any prosecution of your client"; "statements made by you or your client at the meeting and all evidence obtained directly or indirectly from those statements for the purpose of cross-examination should your client testify, or to refute or counter at any stage of the proceedings (including this Office's case-in-chief at trial) any evidence, argument, statement or representation offered by or on behalf of your client in connection with any proceeding"; "the right to use any statements or information provided . . . in any prosecution for false statements, obstruction of justice, or perjury[.]" Podberesky Decl., Ex. A at ¶ (4) & (5).

3

that it believed he had not been forthcoming in connection with the alleged 940 Hill Scheme because Huizar did not raise the topic until the government listed it for discussion at the April 10, 2019 proffer. *Id.*

On January 22, 2020, Huizar's counsel spoke with AUSAs Jenkins and Dragalin on the phone. *Id.* at ¶ 10. The government identified four individuals about whom they wanted Mr. Huizar to provide information. *Id.*

On March 18, 2020, Huizar's counsel spoke with AUSAs Jenkins and Dragalin and followed up on their conversation the next day. Podberesky Decl., Ex. B. Huizar's counsel explained that they were "in the process of speaking with our client about the subject matters you identified for us" and discussed the parties' negotiations over the production of Huizar's cellphone. *Id.*

AUSA Jenkins replied later that day. *Id.* He stated that,

> As we have maintained, we remain very interested in hearing whether your client is willing to accept responsibility regarding the three schemes we have repeatedly outlined, and whether we can expect an **attorney proffer** regarding the four additional names we initially provided in our January 22, 2020, phone call and again yesterday. Can you please let us know by 6 p.m. today what information, if any, your client is willing to provide regarding those names and what facts he willing to admit regarding the schemes? For example, now that there has been a public filing and guilty plea related to the Justin Kim scheme, is your client finally ready to come clean on this scheme? (If he still needs a factual basis for it, we direct you to the Information connected to Kim's plea.)

*Id.* (original emphasis omitted; emphasis added).

The following day, on March 20, 2020, Huizar's counsel spoke with AUSAs Jenkins and Dragalin. *Id.* at ¶ 13. On that call, Huizar's counsel provided the government with the information the government requested regarding the 940 Hill Scheme and the four additional individuals. *Id.* In response to the attorney proffer, AUSA Jenkins stated that the government was "much more convinced" and "would call that significant progress." *Id.* at ¶ 14. AUSA Jenkins said he would "continue you to be encouraged." *Id.*

On March 24, 2020, Huizar's counsel made another attorney proffer to the government. *Id.*, Ex. C. AUSA Dragalin followed up that call with an email. *Id.* AUSA

4

Dragalin explained that the government "wanted to provide some additional specific facts to help jog your client's memory." *Id.* AUSA Dragalin provided details about an alleged September 28, 2018 meeting between Executive M and Huizar, a text message exchange between Morrie Goldman and Executive M, and text messages between Huizar and George Chiang regarding "the Paradigm scheme" (related to Luxe Hotel Scheme). *Id.* at ¶ 16. AUSA Dragalin instructed Huizar's counsel to "[p]lease have [Huizar] review his phone for these messages and let us know if that jogged his memory." *Id.*

In May 2020, Huizar voluntarily provided an image of his cellphone, his actual cellphone, as well as the cellphone password to the government pursuant to the Proffer Agreement. *Id.* at ¶ 17.

On May 15, 2020, Huizar's counsel reached out to the government about the status of the parties' negotiations. *Id.*, Ex. D. AUSA Jenkins replied that the parties had last left off their discussions after having "some **productive attorney proffers**" and that the government had "then asked some follow up questions for which [the government] was still awaiting answers" and "are still interested in those answers." *Id.* (emphasis added).

### III. LEGAL ANALYSIS

**A.    Applicable Law**

    **1.    Proffer Agreements Are Analyzed under Contract Law, But With Added Solicitude for the Constitutional Rights of the Defendant**

Proffer agreements, like plea agreements, are analyzed under contract law. *United States v. Carrillo*, 709 F.2d 35, 36 (9th Cir. 1983) ("A cooperation agreement is analogous to a plea bargain agreement. Thus, like a plea agreement, an agreement to cooperate may be analyzed in terms of contract law standards.") (citing *United States v. Garcia*, 519 F.2d 1343, 1345 n. 2 (9th Cir. 1980)); *see also United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000) ("'In construing the terms of an agreement and the parties' obligations under it, the courts generally employ traditional contract principles.'") (citing G. Nicholas Herman, Plea Bargaining, § 10:04, at 190 (1997)). Accordingly, courts "apply contract principles to the interpretation of a proffer

5

agreement." *United States v. Chiu*, 109 F.3d 624, 625 (9th Cir. 1997); *United States v. $87,118.00 in U.S. Currency*, 95 F.3d 511, 516 (7th Cir. 1996) ("As a general proposition, pre-trial agreements such as cooperation and proffer agreements are interpreted according to principles of contract law.").

With regards to proffer agreements, courts are mindful to "remember[ ] that the contract is part of an ongoing criminal proceeding." *$87,118.00 in U.S. Currency*, 95 F.3d at 516–17. "[P]roffer agreements that are a part of ongoing criminal proceedings are 'unique contracts and the ordinary contract principles are supplemented with a concern that the bargaining process not violate the defendant's rights to fundamental fairness under the Due Process Clause.'" *United States v. Farmer*, 543 F.3d 363, 374 (7th Cir. 2008).

In construing an agreement between the government and a criminal defendant, the Ninth Circuit has explained that courts "proceed in three steps: First, we ask whether 'the terms of the plea agreement on their face have a clear and unambiguous meaning.' If they do, then we 'will not look to extrinsic evidence to determine their meaning.' If not, then we turn to 'the facts of the case to determine what the parties reasonably understood to be the terms of the agreement. Finally, if ambiguities still remain, we construe those ambiguities against the government." *United States v. Plascencia–Orozco*, 852 F.3d 910, 919 (9th Cir. 2017) (citing *Clark*, 218 F.3d at 1095).

**2.    The Government Is Held to Meticulous Standards of Promise and Performance and Ambiguities in Agreements are Construed Against the Government**

"In the context of plea bargains," and necessarily proffer agreements, "traditional black letter rules applicable to commercial contracts between private parties often yield, as they must, to substantive and procedural requirements, including federal or state rules of criminal procedure, that protect the various rights of the accused." *Breazeale v. Victim Services, Inc.*, 878 F.3d 759, 769 (9th Cir. 2017). The Ninth Circuit has explained that this relationship between contract law principles and criminal procedure is unique:

6

> First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights-to concerns for the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." This means that both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements. This is particularly appropriate where, as would usually be the case, the Government has proffered the terms or prepared a written agreement-for the same reason that dictate that approach in interpreting private contracts.

*Clark*, 218 F.3d at 1095 (citing 5 Wayne R. Lafave, Jerold H. Israel & Nancy J. King, Criminal Procedure, § 21.2(d), at 57 (2d ed.1999) (quoting *United States v. Harvey*, 791 F.2d 294 (4th Cir. 1986) (alterations omitted)). *See United States v. Thompson*, 403 F.3d 1037, 1039 (8th Cir. 2005) (agreeing with the Fourth Circuit "that 'with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights-to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government.'") (citing *Harvey*, 791 F.2d at 300).

Accordingly, and because a defendant obtains an agreement only at the expense of his constitutional rights, prosecutors are held to meticulous standards of both promise and performance. *See United States v. Rivera-Rodriguez*, 489 F.3d 48, 57 (1st Cir. 2007) ("Because defendants must ultimately waive fundamental rights as a result of entering into any plea agreement, we hold prosecutors engaging in plea bargaining to the most meticulous standards of both promise and performance.") (citation omitted); *United States v. Vaval*, 404 F.3d 144, 153 (2d Cir. 2005) ("[W]e construe plea agreements strictly against the government and do not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness."); *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007) ("Because a defendant obtains a plea agreement only at the expense of his constitutional rights, prosecutors are held to

7

meticulous standards of performance.") (citing *Vaval*, 404 F.3d at 152-53); *Farmer*, 543 F.3d at 374 ("We hold the government to 'the literal terms' of the agreement, as well as the 'most meticulous standards of both promise and performance' to insure the integrity of the bargaining process involved in proffers."); *United States v. Atkinson*, 259 F.3d 648, 654 (7th Cir. 2001) ("[T]o insure the integrity of the plea bargaining process, the most meticulous standards of both promise and performance must be met by the government.") (citation omitted).

"Satisfying this obligation requires more than lip service on a prosecutor's part. The *Santobello* rule 'proscribes not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them.'" *United States v. Saxena*, 229 F.3d 1, 6 (1st Cir. 2000) (citing *Santobello v. New York*, 404 U.S. 257, 261-262 (1971)). Because of this, courts construe agreements in criminal cases strictly against the government. *See United States v. Lutchman*, 910 F.3d 33, 37 (2d Cir. 2018) ("courts construe plea agreements strictly against the Government, which is usually the party that drafts the agreement and ordinarily has certain awesome advantages in bargaining power") (citations omitted). As such, and "[a]s is the case with other contracts, ambiguities in a plea agreement are construed against the government as its drafter." *United States v. Under Seal*, 902 F.3d 412, 417–18 (4th Cir. 2018) (citation omitted). *See Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 564 (7th Cir. 2018) ("When language in a plea agreement is ambiguous, . . . we look to the parties' reasonable expectations and construe ambiguities against the government as the drafter.") (citations omitted).

### 3. Basic Principles of Contract Law Allow a Party to Cure a Breach

"The need to give a breaching party notice of the breach and an adequate opportunity to cure it is basic to contract law." *United States v. Packwood*, 687 F. Supp.

471, 475 (N.D. Cal. 1987) (citing § 241(d), Restatement of Contracts (Second)).[2] Particularly "[w]here the government is seeking to deprive the defendant of a liberty interest based upon a perceived breach of an ambiguous agreement, lack of notice or an opportunity to cure results in a fundamental denial of due process." *Id.*

"In contract law, although a breach is a breach, if it causes no harm then all that the other party is entitled to by way of remedy is nominal damages, which means, as a practical matter, no relief." *United States v. Diaz-Jimenez*, 622 F.3d 692, 694 (7th Cir. 2010) (Posner, J.) (citing *Habitat Educ. Center v. U.S. Forest Serv.*, 607 F.3d 453, 460–61 (7th Cir. 2010)) (holding that the government committed a "serious breach" of the plea agreement and remanding for resentencing). "The breach must be material or substantial, not merely technical." *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006) (citing *United States v. Brown*, 425 F.3d 681, 682 (9th Cir. 2005)).

When there is a breach, "[i]t is well established that breaches of contract can generally be waived by the injured party." *United States v. Under Seal*, 902 F.3d 412, 418–19 (4th Cir. 2018). *See also United States v. Hallahan*, 756 F.3d 962, 973 (7th Cir. 2014) ("[T]he rule is that where one party commits a material breach, the non-breaching party may elect to terminate the entire agreement or seek to enforce the remainder of the contract.") (citing 23 Williston on Contracts § 63:8 (4th ed.)). "[T]he general rule is that a contracting party who, with knowledge of a breach by the other party, receives and accepts payment or other performance of the contract will be held to have waived the breach." § 63:9. Waiver of or estoppel to assert breach, 23 Williston on Contracts § 63:9 (4th ed.). *See Under Seal*, 902 F.3d at 418–19 ("Thus, even though [Defendant-]Appellant's failure to testify truthfully and completely could have amounted to a breach of his duties under the plea agreement, the government, as with any other injured party, had the right to waive that breach.").

---

[2] "Cure, . . . is the removal of legal defect or correction of legal error; that is, performance of the contract." *United States v. Purser*, 747 F.3d 284, 294 (5th Cir. 2014) (citing Black's Law Dictionary 439 (9th ed. 2009)).

### 4.  Parties Have a Duty of Good Faith and Fair Dealing

It is a general principle of contract law that, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 90(1) (Am. L. Inst. 1981). Agreements between the government and criminal defendants are no different—"[t]he bargained-for promises are bolstered by an implied obligation of good faith and fair dealing." *United States v. Henry*, 758 F.3d 427, 431 (D.C.C. 2014).

### 5.  Equitable Estoppel is Applicable Against the Government

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases," *Heckler v. Cty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59 (1984), and is recognized as part of federal common law. *Sulit v. Schiltgen*, 213 F.3d 449, 453 (9th Cir. 2000) ("equitable estoppel is an element of federal common law"). In the Ninth Circuit, equitable estoppel contains four elements: "(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970) (citing *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104, 84 A.L.R.2d 454 (9th Cir. 1960)). *See United States v. Gamboa-Cardenas*, 508 F.3d 491, 502 (9th Cir. 2007) ("To establish grounds for estoppel against the government, appellees must first demonstrate that the four traditional elements of equitable estoppel are met.").

Two additional elements must be satisfied beyond those required for traditional estoppel when a party seeks to estop the government. "First, a party seeking to raise estoppel against the government must establish affirmative misconduct going beyond mere negligence; even then, estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." *Watkins v. U.S. Army*, 875 F.2d 699, 707 (9th Cir. 1989)

(alterations omitted) (citing *Wagner v. Dir., Fed. Emergency Mgmt. Agency*, 847 F.2d 515, 519 (9th Cir. 1988)).

"There is no single test for detecting the presence of affirmative misconduct; each case must be decided on its own particular facts and circumstances. Affirmative misconduct does require an affirmative misrepresentation or affirmative concealment of a material fact by the government, although it does not require that the government intend to mislead a party." *Watkins*, 875 F.2d at 707 (citations omitted). *See id.* at 708 (finding affirmative misconduct where "the Army did not [merely] stand aside while Watkins reenlisted or accepted a promotion; it plainly acted affirmatively in admitting, reclassifying, reenlisting, retaining, and promoting" and involved "ongoing active misrepresentations"). Whether the government's conduct will result in a serious injustice and that the public interest will not be damaged, "involves a balancing of interests in individual cases. *Id.*

## B.     The Alleged Breach was Cured and the Government Is Bound to the Terms of the Proffer Agreement

The Proffer Agreement is silent as to what process a party must undertake when declaring a breach and silent as to either party's rights when a breach has occurred or been declared. *See generally* Podberesky Decl., Ex. A. Reviewing the extrinsic evidence, as this Court must when an agreement is ambiguous, *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993), it is clear that Huizar (and the government) reasonably understood that basic contract law governing breaches applied to the Proffer Agreement, *see also United States v. Packwood*, 687 F. Supp. 471, 474 (N.D. Cal. 1987) ("It is surely not defense counsel's burden in such negotiations to spell out the government's remedies in the event of a breach. The responsibility for failing to do that—and any resulting ambiguity—must be laid at the government's door.").[3]

---

[3] Had the government intended to preclude a breaching defendant from curing an alleged breach, it certainly knows how to incorporate such preclusive language in an

1.   **Extrinsic Evidence Establishes Huizar Reasonably Understood the Proffer Agreement to Follow Basic Contract Law and that Huizar Cured Any Alleged Breach**

The extrinsic evidence demonstrates that consistent with basic contract law, Huizar (and the government) understood that breaches could be cured and intended to allow and did allow for the alleged breach to be cured. *See United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993) ("the court must determine what the defendant reasonably understood to be the terms of the agreement").

On December 13, 2019, AUSA Jenkins told Huizar's counsel that he believed Huizar lied to the government during the April 10, 2019 proffer in violation of the Proffer Agreement. Podberesky Decl. at ¶ 8. During that call, Huizar's counsel told the government that it would like to see if Huizar could rectify any perceived misstatements and continue to provide information to the government. *Id.* at ¶ 8. By at least January 22, 2020, the government spoke to Huizar's counsel to request additional information about four individuals. *Id.* at ¶ 10. To the extent there remained ambiguity in the parties' prior communications, AUSA Jenkins March 20, 2020 email unequivocally invited Huizar to cure the alleged breach and requested that he continue performing pursuant to the Proffer Agreement. AUSA Jenkins reiterated,

> we remain very interested in hearing whether your client is willing to accept responsibility . . . and whether we can expect an attorney proffer regarding the four additional names we initially provided in our January 22, 2020 phone call and again yesterday. Can you please let us know by **6 p.m. today** what information, if any, your client is willing to provide regarding

---

agreement. *See, e.g., United States v. Branam*, 231 F.3d 931, 932–33 (5th Cir. 2000) (reviewing a "plea agreement [that] included a section setting out specific procedures for determining whether the plea agreement had been breached" that provided a "reasonable opportunity to explain or cure"); *see also United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (finding a plea agreement ambiguous where "[t]he government knows the word 'voluntary,' and could have avoided any ambiguity by using it").

1          those names and what facts he [is] willing to admit regarding

2          the three schemes?

3   *Id.*, Ex.  B (emphasis in the original). The government then specifically referenced the

4   "Justin Kim" scheme, the scheme the government alleged Huizar lied about at the April

5   10, 2019 proffer, and invited Huizar to cure his prior statement. "[N]ow that there has

6   been a public filing and guilty plea related to the Justin Kim bribery scheme, is your

7   client finally ready to come clean on this scheme?" *Id.*

8          On March 20, 2020, Huizar, through counsel, provided the requested information

9   and cured the alleged breach. *See* Ex. A at ¶ (1)(d) ("any information provided by you on

10  behalf of your client is covered by this agreement as if it had been provided by your

11  client"). That the alleged breach was in fact cured is evidenced by the government's

12  statements to Huizar's counsel on the March 20, 2020 call. *See* Podberesky Decl. at ¶ 14.

13  *See also Diaz-Jimenez*, 622 F.3d at 696 ("a corrective statement would be analogous to

14  a contract party's curing his breach before it did any harm to the other party").

15  Importantly, Huizar's cure of the alleged breach is also evidenced by the government's

16  conduct and statements after the March 20, 2020 call.

17         On March 24, 2020, Huizar's counsel had another call with AUSAs Jenkins and

18  Dragalin. *Id.* at ¶ 15. Following that call, AUSA Dragalin emailed Huizar's counsel. *Id.*

19  at ¶ 16, Ex. C. In that email, the government did not further press Huizar about the 940

20  Hill scheme or suggest that the information provided on March 20th had not been wholly

21  truthful. Instead, the government requested more and new information about other

22  schemes. AUSA Dragalin asked about communications between Huizar and Executive

23  M (the alleged Project M scheme) and Huizar's communications about the "Paradigm

24  scheme," which is related to the alleged Luxe Hotel scheme. *Id.* The government

25  requested that Huizar review his text messages to help "jog his memory." *Id.*

26         In May 2020, Huizar then provided an image of his cellphone, his actual cellphone,

27  and the password to his cellphone voluntarily pursuant to the Proffer Agreement. In a

28

13

1   May 15, 2020 email, AUSA Jenkins confirmed the "productive" nature of the prior

2   "attorney proffers." Ex. D.[4]

3         The government's statements, correspondence, acceptance of Huizar's cellphone

4   and passwords, and continued requests for Huizar's performance make clear that Huizar

5   reasonably understood, and indeed that the parties understood, the Proffer Agreement

6   followed basic contract law with regards to alleged breaches.

7         Moreover, the government's conduct is an explicit acknowledgment that the

8   government was still inuring benefit from Huizar's cooperation. *See, e.g.*, *United States*

9   *v. Guyton*, 37 F. Supp. 3d 840, 857 (E.D. La. 2014) (explaining that "[w]hile the

10  Government may have experienced a slight delay in realizing these benefits, it was

11  certainly not wholly deprived," since "at the end of the Government's case-in-chief, [the

12  prosecutor] contends he asked [defense counsel] whether [defendant] was 'willing' to

13  testify" "demonstrat[ing] the Government still believed it could benefit from the

14  cooperation" and as such "the breach was not so substantial as to be considered

15  material"). Not only did the government get Huizar's cellphone pursuant to the Proffer

16  Agreement, it received information about other individuals and alleged schemes as well.

17  *See* Ex. D. "The government has received the substance of the reasonably expected

18  benefit of its bargain." *Packwood*, 687 F. Supp. at 475. "[D]ue respect for the integrity

19  of plea bargains demands that once a defendant has carried out his part of the bargain the

20  Government must fulfill its part." *United States v. Hallam*, 472 F.2d 168, 169 (9th Cir.

21  1973) (per curiam). *See also Diaz-Jimenez*, 622 F.3d at 694 (explaining that "when the

22  breach of a plea agreement is, in the court's view, insubstantial, immaterial, technical—

23  in short, minor—or cured on the spot," it is "in either case undeserving of substantial

24  relief").

25

26  ───────────────

27        [4] Even if Huizar had not cured the alleged breach, the government waived the
    breach. "[T]he general rule is that a contracting party who, with knowledge of a breach

28  by the other party, receives and accepts payment or other performance of the contract
    will be held to have waived the breach." § 63:9. Waiver of or estoppel to assert breach,
    23 Williston on Contracts § 63:9 (4th ed.).

                                        14

At a minimum, even if the government's explicit statements—that it was "much more convinced," found the information in the attorney proffer to constitute "significant progress," and considered the attorney proffers "productive"—could be deemed equivocal, the government's request for and acceptance of Huizar's continued performance *after* the cure is not. *See* 23 Williston on Contracts § 63:9 (4th ed.) ("An express *or implied* waiver excuses the failure to perform a condition.") (emphasis added); *cf. Campbell v. Smith*, 770 F.3d 540, 547–48 (7th Cir. 2014) (finding that despite prosecutor's initial breach of the plea agreement's sentencing recommendation, "the prosecutor's silence when defense counsel discussed the plea bargain can be understood as tacit agreement with it, and that tacit agreement effected a cure"); *United States v. Brown*, 5 F.4th 913, 916 (8th Cir. 2021) (looking to the government's "conduct even aside from the sentencing memorandum" to determine breach).

Not only is permitting breaching parties to cure basic contract law, but it furthers the policy interests underlying agreements in criminal cases. In *Purser*, for example, the Fifth Circuit found that the government breached the express terms of the plea agreement by advocating for a higher offense level in its position paper than that agreed to in the plea agreement. 747 F.3d at 290-91. In finding the government breached, the Fifth Circuit rejected the government's arguments that the government did not breach the agreement because the breach occurred prior to the sentencing hearing and that the breach should be reviewed pursuant to a harmlessness analysis. *Id.* at 291-93. The Fifth Circuit found, however, that the government had cured the breach by withdrawing its position. *Id.* at 293-94. It explained that with "a cure of breach, the breaching party abides by the agreement." *Id.* at 294. "Allowing the government to cure a plea agreement breach vindicates the 'policy interest in establishing the trust between defendants and prosecutors that is necessary to sustain plea bargaining.'" *Id.* (citing *Puckett v. United States*, 556 U.S. 129, 141 (2009)). *See Puckett*, 556 U.S. at 141 ("a cure promotes the policy interest that are an essential . . . part of the criminal process"). Similarly here, where the government continued to request information from Huizar after the alleged

15

breach was cured, the policy interests of retaining the trust between defendants and prosecutors in this district weigh heavily in favor of the government's continued performance pursuant to the Proffer Agreement.

"[A] mistake is not a bell, and usually can be corrected." *Diaz-Jimenez*, 622 F.3d at 696. And in this case, any alleged mistake was corrected. The extrinsic evidence shows that Huizar (and the government) reasonably understood the Proffer Agreement was subject to the basic principles of contract law that allow a breaching party to cure an alleged breach: the government invited "attorney proffers," Huizar's counsel proffered multiple times to the stated satisfaction of the government, the government accepted Huizar's cellphone and password, and the government continued requesting performance pursuant to the Proffer Agreement. *See De la Fuente*, 8 F.3d at 1340 ("De la Fuente could not have reasonably understood the terms of the plea agreement to offer nothing in exchange for his cooperation; neither, we hope, could the government have entertained such an understanding."). Permitting the government to renege on its obligations under the Proffer Agreement after its benefits would be an unfair "end-run[ ] around" its obligations. *Saxena*, 229 F.3d at 6 (citation omitted). In any case, any ambiguity as to the parties' understanding of the Proffer Agreement is resolved against the government and the government is bound by the terms of the Proffer Agreement.

## C.   The Government Violated Huizar's Due Process Rights and Its Duty of Good Faith and Fair Dealing by Continuing to Request Performance Pursuant to the Proffer Agreement

Even if Huizar's understanding of the validity of the Proffer Agreement government was not reasonable, the government violated Huizar's Due Process Rights and at a minimum, its own duty of good faith and fair dealing by inducing additional cooperation pursuant to the Proffer Agreement. The Court should require the government to fulfill its obligations pursuant to the agreement. *See United States v. Partida-Parra*, 859 F.2d 629, 633 (9th Cir. 1988) ("Where the government breaches a plea bargain, it may be appropriate for the court to order 'specific performance' of the bargain."); *id.*

("When the breach was a failure by the prosecutor to carry out a promise which was fulfillable, then certainly the defendant's request for specific performance should be honored.") (quoting 2 W. Lafave & J. Israel, Criminal Procedure, § 20.2, at 599 (1984).

"[P]roffer agreements that are a part of ongoing criminal proceedings," must not only abide by contract principles but "are supplemented with a concern that the bargaining process not violate the defendant's rights to fundamental fairness under the Due Process Clause.'" *Farmer*, 543 F.3d at 374. *See Packwood*, 687 F. Supp. at 475 ("contract principles, when viewed in the light of the demands of due process, would seem to require" that in a case where the defendant does not know his action, inaction, or statements are a breach, "the government give him timely notice and an opportunity to cure"). As such, prosecutors are held to "meticulous" standards in executing their duties of promise and performance in criminal agreements. *See Farmer*, 543 F.3d at 374 (explaining that courts hold "the government to the literal terms of the agreement, as well as the most meticulous standards of both promise and performance to insure the integrity of the bargaining process involved in proffers"). "The bargained-for promises are bolstered by an implied obligation of good faith and fair dealing." *Henry*, 758 F.3d at 431. *See United States v. Jones*, 58 F.3d 688, 692 (D.C.C. 1995) (explaining that "while the plea agreement did not guarantee [the defendant] a section 5K1.1 motion, we believe it did guarantee fair dealing").

The government failed to meet those exacting standards in this case. After telling Huizar's counsel that they believed Huizar lied during the April 10, 2019 proffer, the government invited Huizar to cure the alleged breach and induced and requested continued performance pursuant to the Proffer Agreement. Huizar, through counsel, proffered several additional times to the government's expressed satisfaction. Perhaps most tellingly, Huizar voluntarily gave and the government accepted an image of his cellphone, the physical phone, and the password to his phone.

Nevertheless, after it received the benefits of Huizar's additional performance, the government reneged on its promise to not use information received pursuant to the

17

Proffer Agreement. *See* Ex. D (AUSA Jenkins describing the additional attorney proffers as "productive"). The government's conduct violated Huizar's Due Process rights by inducing him to further waive his Fifth Amendment right to remain silent and produce evidence to his detriment, in other words, continue performing pursuant to the Proffer Agreement for no benefit at all. Such conduct breaches the government's duty of good faith and fair dealing. *See De la Fuente*, 8 F.3d at 1340 ("We are unwilling to impute to the government the level of cynicism and bad faith implicit in negotiating an agreement under which it persuaded a defendant to help convict his relative by offering what appeared to be a reduced sentence but in fact offered him no benefit."). Inducing performance in this manner is constitutionally unfair. *See id.*; *United States v. Packwood*, 848 F.2d 1009, 1011 (9th Cir. 1988) ("Plea agreements implicate important due process rights, however, and so the process must be fair."); *Jones*, 58 F.3d at 692 (defendant was entitled to an "honest" 5K determination).

While the Proffer Agreement did not promise Huizar any particular benefit in the resolution of the case, Huizar was at a minimum entitled to the government's good faith and fair dealing. Without an explicit clause prohibiting curing a breach, Huizar reasonably relied on the basic contract principle allowing a breaching party to cure as well as the government's statements and conduct in believing that the parties were still bound by the Proffer Agreement. *See* Restatement (Second) of Contracts § 90(1) (Am. L. Inst. 1981) (stating "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."). Had the government not made those overtures and representations, no rational defendant would have agreed to continue providing information *and physical evidence* to the government—at their detriment—and further waive their constitutional rights. Accordingly, the government's current attempts to treat the alleged lie as an uncured breach are a breach of the government's own duty of good

18

faith and fair dealing, and the Court countenancing them would violate Huizar's Due Process Rights.

**D.    The Government is Estopped from Rescinding the Proffer Agreement**

The Ninth Circuit "has held that where justice and fair play require it, estoppel will be applied against the government." *Watkins*, 875 F.2d at 706. Justice and fair play require that here.

The government's conduct and words confirmed that the Proffer Agreement followed basic contract law and that Huizar could and did cure the alleged breach and that the parties were still bound to perform pursuant to the Proffer Agreement. There is no question that by at least December 13, 2019, the government knew the facts underlying the alleged breach. Podberesky Decl. at ¶ 8. *See United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970) ("party to be estopped must know the facts"). Nor can there be any doubt that the government intended that Huizar act upon its statements and conduct. *Id*. AUSA Jenkins emailed Huizar's counsel offering Huizar an opportunity to "come clean" and *requesting* an "attorney proffer." Podberesky Decl., Ex. B. From this offer and request, Huizar would have no reason to believe and did not know that the government did not in fact intend to remain bound by the Proffer Agreement. *See Georgia-Pacific Co.*, 421 F.2d at 96. Further, Huizar was justified in relying on the government's representations and Huizar did rely on those representations when he cured the alleged breach to the government's stated and implied satisfaction and *continued* to provide information about other individuals and alleged schemes. *See id.*

The government's statements and actions establish misconduct beyond mere negligence. *See Watkins*, 875 F.2d at 707. After the government knew of the alleged breach, AUSA Jenkins affirmatively requested that Huizar "come clean" and provide an "attorney proffer" about specific people and subject matters. Podberesky Decl., Ex. B. On March 20, 2020, and on several other occasions, Huizar provided that information. *Id.* Huizar then in May 2020 voluntarily provided his cellphone and password pursuant to the Proffer Agreement. *Id.* at ¶ 17. Once Huizar provided that information and

evidence AUSA Jenkins expressed satisfaction with the information and the "productive" attorney proffers and requested *more* information. *Id.* at ¶ 15; Ex. C; Ex. D. *See United States v. Gamboa-Cardenas*, 508 F.3d 491, 504 (9th Cir. 2007) (finding "that the government's abrupt change of position regarding safety valve relief in this case goes beyond 'mere negligence' and would cause a 'serious injustice'" where defendant had relied on that representation in waiving his right to testify at trial); *United States v. Wang*, 404 F.Supp.2d 1159, 1163 (N.D. Cal. 2005) (explaining that "a finding of affirmative misconduct, [ ] requires that the Government 'either intentionally or recklessly mislead[ ] the claimant") (citing *Michigan Express, Inc., v. United States*, 374 F.3d 424, 427 (6th Cir. 2004)). AUSA Jenkins' statements and requests to Huizar's counsel either recklessly or intentionally mislead Huizar to believe that he had cured the alleged breach, that his continued cooperation was pursuant to the Proffer Agreement, and that the parties' were still bound to their obligations in the Proffer Agreement. The government did not merely "stand aside while" Huizar continued providing them information and evidence, "it plainly acted affirmatively" in requesting and accepting that information. *Watkins*, 875 F.2d at 708.

The government's conduct here causes a serious injustice and equitably estopping the government from using information obtained pursuant to the Proffer Agreement not only does no damage to the public interest but in fact strengthens it. Here, the government caused a serious injustice when it continued to coax Huizar into waiving his right to remain silent and persuaded him to provide information and his cellphone and password after it knew of the alleged breach. It is exactly because a defendant waives his constitutional rights that the government's conduct in inducing that waiver here is a serious injustice. *See Rivera-Rodriguez*, 489 F.3d at 57 ("Because defendants must ultimately waive fundamental rights as a result of entering into any plea agreement, we hold prosecutors engaging in plea bargaining to the most meticulous standards of both promise and performance.").

Holding the government to its obligations in the Proffer Agreement will not harm the public's interest in holding criminal defendants accountable. The case against Huizar will no doubt continue and the amount of information the government would be precluded from utilizing is limited (certainly a fraction of that acquired throughout the government's years-long investigation). Instead, it is the public's interest in ensuring confidence in the fair administration of justice that will be fortified when the Court ensures that prosecutors in this district are in fact held to the highest standards of performance and promise. *Id. See Clark*, 218 F.3d at 1095 ("the courts' concerns run even wider than protection of the defendant's individual constitutional rights-to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government.") (citation omitted). Residents of the Central District of California and the criminal defendants who are prosecuted in it, should be confident that if a criminal defendant waives his constitutional rights and proffers with the government, the government will engage with him fairly and in good faith and not mislead or take advantage of the defendant's perilous position to his own detriment.

Accordingly, the government should be equitably estopped from using any information obtained pursuant to the Proffer Agreement and should be bound to perform pursuant to the parties' agreement. § 63:9. Waiver of or estoppel to assert breach, 23 Williston on Contracts § 63:9 (4th ed.) ("the general rule is that a contracting party who, with knowledge of a breach by the other party, receives and accepts payment or other performance of the contract will be held to have waived the breach."). *See* Restatement (First) of Contracts § 309 (1932).

//

//

//

//

//

21

# IV.CONCLUSION

For the reasons stated above, the Court should hold that the government must perform pursuant to the parties' Proffer Agreement and suppress any information obtained pursuant to that agreement.

Respectfully submitted,
CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: November 15, 2021          /s/ *Carel Alé*

Carel Alé
Charles J. Snyder
Adam Olin
Deputy Federal Public Defenders
Attorneys for Jose Huizar