TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (SBN: 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
VERONICA DRAGALIN (SBN: 281370)
MELISSA MILLS (SBN: 248529)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2091/0647/0627
    Facsimile: (213) 894-7631
    E-mail: Mack.Jenkins@usdoj.gov
          Veronica.Dragalin@usdoj.gov
          Melissa.Mills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>JOSE LUIS HUIZAR, et al.<br><br>    Defendants. | No. CR 20-326(A)-JFW-1<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT JOSE HUIZAR'S AMENDED MOTION TO SUPPRESS INFORMATION OBTAINED PURSUANT TO PROFFER AGREEMENT (CR 312); DECLARATION OF VERONICA DRAGALIN; EXHIBITS 1-4<br><br>Date:      January 31, 2022<br>Time:      8:00 a.m.<br>Location: Courtroom of the Hon.<br>          John F. Walter |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Veronica Dragalin, and Melissa Mills, hereby files its Opposition to defendant JOSE HUIZAR's Amended Motion to Suppress Information Obtained Pursuant to Proffer Agreement (CR 312).

1     This opposition is based upon the attached memorandum of points

2 and authorities, the Declaration of Veronica Dragalin and attached

3 exhibits, the files and records in this case, and such further

4 evidence and argument as the Court may permit.

5  Dated: December 20, 2021       Respectfully submitted,

6                         TRACY L. WILKISON
                        United States Attorney

7

8                         SCOTT M. GARRINGER
                        Assistant United States Attorney
                        Chief, Criminal Division

9

10

11                         MACK E. JENKINS
                        VERONICA DRAGALIN

12                         MELISSA MILLS
                        Assistant United States Attorneys

13

14                         Attorneys for Plaintiff
                        UNITED STATES OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION.................................................1

II.   RELEVANT FACTUAL BACKGROUND..................................1

    A.   Defendant Agrees His Statements Can Be Used Against
        Him "For Any Purpose" If He Lies During Any Proffer.......1

    B.   The Government Notifies Defendant It Will Use His Lies
        and Proffer Statements Against Him........................3

    C.   Government Secures Independent Access to Defendant's
        Phone Through a Federal Search Warrant....................4

    D.   Defendant Fails to Identify What He Actually Seeks to
        Suppress..................................................6

III.  ARGUMENT....................................................7

    A.   The Express Terms of the Proffer Agreement Allow the
        Government to Use Defendants' Statements Even in the
        Absence of a Breach.......................................7

        1.   Defendant's Lies in His Prosecution for False
            Statements............................................8

        2.   Defendant's Proffer Statements for Cross-
            Examination and to Refute Defense Arguments..........9

    B.   Because Defendant Lied, the Government May Introduce
        All of His Proffer Statements at Trial...................11

        1.   After a Breach, the Government May Use
            Defendant's Proffer Statements for Any Purpose......12

        2.   Defendant Has No Right to "Cure" False Statements...13

        3.   Defendant Fails to Meet the High Burden to Show
            the Government Committed Misconduct.................17

    C.   The Government May Use Information Provided by Defense
        Counsel Absent a Breach..................................18

    D.   Evidence Seized Pursuant to a Search Warrant Is Not
        Governed by the Proffer Agreement........................20

IV.   CONCLUSION.................................................21

**TABLE OF EXHIBITS**

| Exhibit | Description | Page(s):Line(s) |
|---------|-------------|-----------------|
| 1 | March 23, 2020 E-mail Chain with Defense Counsel | 5:15 |
| 2 | March 31, 2020 Application for Search Warrant | 5:1, 12, 15, 23; 20:26; 21:1 |
| 3 | April 1, 2020 E-mail Chain with Defense Counsel | 5:6; 21:1 |
| 4 | June 22, 2020 E-mail Chain with Defense Counsel | 4:7 |

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

Harris v. New York,
    401 U.S. 222 (1971)...........................................11

In re Grand Jury Subpoena to Janan,
    325 F. App'x 551 (9th Cir. 2009).........................19, 20

United States v. Awadallah,
    202 F. Supp. 2d 82 (S.D.N.Y. 2002)..........................16

United States v. Beaver,
    515 F.3d 730 (7th Cir. 2008)................................16

United States v. Chiu,
    109 F.3d 624 (9th Cir. 1997)..............................8, 19

United States v. D.P.,
    720 F. App'x 390 (9th Cir. 2018).............................8

United States v. Diaz-Jimenez,
    622 F.3d 692 (7th Cir. 2010)................................14

United States v. Johnston,
    617 F. App'x 706 (9th Cir. 2015)..........................15, 16

United States v. Mandujano,
    425 U.S. 564 (1976)..........................................9

United States v. Miller,
    151 F. 3d 957 (9th Cir. 1998)...............................10

United States v. Packwood,
    687 F. Supp. 471 (N.D. Cal. 1987).........................13, 14

United States v. Petrosian,
    446 F. App'x 826 (9th Cir. 2011)............................12

United States v. Plummer,
    941 F.2d 799 (9th Cir. 1991)................................10

United States v. Purpera,
    844 F. App'x 614 (4th Cir. 2021)............................16

United States v. Salas-Camacho,
    859 F.2d 788 (9th Cir. 1988)................................15

United States v. Sarihifard,
       155 F.3d 301 (4th Cir. 1998)..................................16

United States v. Veal,
       153 F.3d 1233 (11th Cir. 1998)...............................9

Watkins v. U.S. Army,
       875 F.2d 699 (9th Cir. 1989)................................17

**Statutes**

18 U.S.C. § 371..............................................12

18 U.S.C. § 1001.............................................3, 12

18 U.S.C. § 1001(a)(2).......................................2, 4

1                        **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        While purporting to cooperate with the government's expansive

4    corruption investigation into him, defendant JOSE HUIZAR made several

5    deliberately false statements to federal investigators and sought to

6    distance himself from various corrupt activities.  This included

7    facts relating to HUIZAR's role in the 940 Hill Scheme, namely his

8    financial interest, expectation, and attempts to obtain hundreds of

9    thousands of dollars in bribe money that originated from co-defendant

10   DAVID LEE.  CR 71 (First Superseding Indictment ("FSI")) at pp. 30-

11   37, Overt Acts 85-118.  Defendant was charged with false statements

12   for his lies during the proffer sessions with the government.  Id. at

13   p. 126, Count 40.  Despite the express provisions in the Proffer

14   Agreement that defendant and his counsel read, signed, and agreed to,

15   he now seeks to dig himself out of the hole he created by

16   unilaterally distorting the terms of his written Proffer Agreement.

17   Without any legal support, HUIZAR invents an apparent retroactive

18   false statement cure via the actions of his counsel who had

19   unsuccessfully sought to salvage defendant's poor cooperation

20   performance and secure a pre-indictment plea agreement.  No such

21   belated cure or false statement immunity exists in the terms of the

22   Proffer Agreement or in the law.  The Court should deny defendant's

23   Motion to Suppress Information Obtained Pursuant to Proffer

24   Agreement.  CR 312 ("Def. Mot.").

25   **II.   RELEVANT FACTUAL BACKGROUND**

26       **A.    Defendant Agrees His Statements Can Be Used Against Him
                 "For Any Purpose" If He Lies During Any Proffer**

27

28       Soon after the FBI executed multiple federal search warrants as

part of an expansive corruption investigation into the City of Los Angeles, including at HUIZAR's City Hall office and his home, on November 7, 2018, his then attorneys contacted the government and expressed his desire to cooperate with the investigation.  On December 18, 2018, the government executed a proffer agreement with defendant HUIZAR and his attorneys.  CR 312-2 (Def. Ex. A) (hereinafter "Proffer Agmt.").  In the first paragraph, the agreement warned defendant that "lying to the federal government is a crime under 18 U.S.C. § 1001."  (Id. at ¶ 1(f).)  It also provided that "this agreement does not provide any protections to your client not expressly set forth herein." (¶ 1(e).)

In paragraph 3, the parties agreed that "this Office will not offer in evidence in its case-in-chief, or offer in evidence in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by your client at the meeting," except as otherwise provided in paragraphs four, five, and six.  (Id. at ¶ 3.)

In paragraph 4, the Proffer Agreement provided that the Office may use: "(a) information derived directly or indirectly from the meeting for the purpose of obtaining and pursuing leads to other evidence, which evidence may be used for any purpose, including any prosecution of your client; and (b) statements made by you or your client at the meeting and all evidence obtained directly or indirectly from those statements for the purpose of cross-examination should your client testify, or to refute or counter at any stage of the proceedings (including this Office's case-in-chief at trial) any evidence, argument, statement or representation offered by or on behalf of your client in connection with any proceeding."  (¶ 4.)

In Paragraph 5, the agreement provided: "This Office reserves the right to use any statements or information provided by your client in any prosecution for false statements, obstruction of justice or perjury." (¶ 5.)

In Paragraph 6, the agreement provided that defendant's "**complete truthfulness and candor are express material conditions to the undertakings of this Office set forth in this letter**" (bold in original); that the "Office may use against your client for any purpose (including sentencing) any statements made or other information provided by your client during the meeting" if the Office were to "conclude that your client has knowingly withheld material information from this Office or otherwise not been completely truthful and candid"; and defendant acknowledged: "**I understand that, if I lie, the government may use all my statements against me for any purpose, including prosecution for violation of 18 U.S.C. § 1001**")," which defendant also initialed (¶ 6) (bold in original).

The Proffer Agreement contained no provision permitting defendant to "cure" a breach or false statement.  Neither did it require that the Court make any finding before the government declares a breach and uses the information against him "for any purpose."

Pursuant to the December 18, 2018 proffer agreement, defendant HUIZAR participated in three proffer sessions with the government on December 18, 2018, January 3, 2019, and April 10, 2019.  Def. Mot. at 1.

### B.   The Government Notifies Defendant It Will Use His Lies and Proffer Statements Against Him

As defendant HUIZAR concedes, on December 13, 2019, the

3

government satisfied the agreed upon breach provisions of the Proffer

Agreement.  That is, it formally informed defendant HUIZAR's counsel

that "the government believed HUIZAR lied about his involvement in

the alleged 940 Hill Scheme during the April 10, 2019 proffer."  Def.

Mot. at 3.  The government later memorialized its declaration of a

breach of the proffer agreement in writing, per the terms of the

Proffer Agreement.  Dragalin Decl. ¶ 5, Gov. Ex. 4.  Specifically, on

June 22, 2020, the government noted:

> [I]n the interest of documentation, as we have stated to
> you on multiple occasions, we believe Mr. Huizar
> intentionally withheld information, misled, and lied to us
> regarding material information during his proffer sessions.
> (The easiest, but not only, example relates to when he
> denied having any interest in or ever asking for any share
> of the bribe cash from David Lee via Justin Kim.) For that
> reason, per the terms of the executed proffer letter dated
> 12/13/18, we find that he has breached his proffer
> agreement and we intend to use his statements for all
> purposes, including in charging documents and against him
> at trial.

Id.

Thereafter, the grand jury returned an indictment and then

superseding indictment charging defendant HUIZAR with, among other

things, a violation of 18 U.S.C. § 1001(a)(2), for making false

statements during the proffer on April 10, 2019.  FSI, Overt Act 449

and Count 40.

### C.  Government Secures Independent Access to Defendant's Phone Through a Federal Search Warrant

Defendant falsely claims in his motion that he "voluntarily"

provided an image of his phone, the physical phone, and password to

his phone (Def. Mot. at 5, 13-14, 17).  What defendant fails to

mention is that his attorneys provided a hard drive containing an

image of his phone and his physical iPhone 7 only after the

government advised he must do so in response to federal search

warrants.  Dragalin Decl. ¶¶ 3-4, Gov. Ex. 2 at 22-23 (March 1, 2020 application for search warrant, describing that the government obtained a search warrant to search "a hard-drive containing the forensic cell phone extraction of HUIZAR's Personal Phone"), 2 (search warrant for iPhone 7 "currently maintained in the custody of the Andrues/Podberesky law firm"); Gov. Ex. 3 at 1 (April 1, 2020 e-mail from government informing defense counsel that the government "obtained yet another warrant to seize/search the prior phone that you are providing to SA Civetti today").  The affidavit for the search warrant was not based on any affirmative admissions from defendant's proffer statements, although the Proffer Agreement expressly provided for that option.[1]  Id. at ¶ 3, Gov. Ex. 2. Defendant also misleadingly omits that he actually never provided the password to his iTunes because he claimed he forgot it.  Id. at ¶ 2, Gov. Ex. 1 at 2 (e-mail from government explaining that agents could not access the forensic image of HUIZAR's phone and needed his iTunes password), 1 (e-mail from the government asking of an "update on the Itunes password to access the forensic image of Mr. Huizar's personal phone"), 1 (e-mail response from defense counsel, writing: "As to the itunes password from 2018 he cannot recall it.").  To this day, agents have been unable to bypass the password-protected forensic image of defendant's phone or his physical iPhone 7.  Id. at ¶ 3, Gov. Ex. 2 at 22 ("To date, I have been unable to access the data on the hard-drive, because it requires an iTunes password that HUIZAR's

---

[1] "The Office *may use information derived directly or indirectly* from the meeting *for the purpose of obtaining and pursuing leads to other evidence*, which evidence may be used for any purpose, including any prosecution of your client[.]" Proffer Agmt. at ¶ 4(a) (emphasis added).

1  counsel has represented that HUIZAR does not recall.").  Therefore,
2  no evidence has yet been seized from those devices.

### D.  Defendant Fails to Identify What He Actually Seeks to Suppress

Defendant now moves to suppress "any information obtained pursuant to the Proffer Agreement" (Def. Mot. at 2), and argues that "the government should be equitably estopped from using any information obtained pursuant to the Proffer Agreement" (id. at 21). But confusingly, defendant never articulates what specific "information" he seeks to suppress.  Further, as stated above, by the Proffer Agreement's express terms, the government is permitted to use "information derived directly or indirectly" pursuant to the Proffer Agreement in various ways, even without any breach.  See Proffer Agmt. ¶ 4.

Defendant dedicates most of his motion to a discussion of information provided by his attorneys purportedly in an effort to "cure" his breach of the Proffer Agreement and the production of his digital devices during a time when the parties were outlining the framework for a pre-indictment plea agreement.  In an effort to cure defendant's failure to identify with any particularity the specific remedy he seeks in this motion, for purposes of this opposition, the government will address the government's ability to use the following categories of evidence pursuant to the Proffer Agreement: (1) defendant's proffer session lies in his prosecution for false statements; (2) defendant's proffer statements to refute defendant's arguments at any stage of the proceeding, including to cross-examine defendant at trial if he testifies; (3) all of defendant's proffer statements for any purpose because of his breach; (4) information

6

1  from defendant but conveyed through his defense counsel after the

2  government's notification of a breach; and (5) any evidence (not yet)

3  seized from defendant's devices pursuant to federal search warrants.

4  **III. ARGUMENT**

5      Pursuant to the express terms of the Proffer Agreement and Ninth

6  Circuit law, the government has the right to introduce defendant's

7  lies in his prosecution for false statements and may cross-examine

8  defendant with any proffer statements should he testify at trial.  In

9  addition, because defendant breached the Proffer Agreement by making

10  false statements, the government may introduce any of defendant's

11  proffer statements for any purpose, including in its case-in-chief at

12  trial.  The government can also rely on information provided by

13  defendant's counsel as part of a proffer for any purpose in its

14  investigation; nevertheless, the government represents it will not

15  seek to introduce those statements in its case-in-chief at trial.

16  Lastly, to the extent agents are successful in bypassing the

17  password-protection on defendant's devices, any evidence obtained

18  from those devices for which the government had an independent and

19  lawful federal search warrant is not governed by defendant's Proffer

20  Agreement.

21      **A.  The Express Terms of the Proffer Agreement Allow the**
   **Government to Use Defendants' Statements Even in the**

22          **Absence of a Breach**

23      Defendant asks this Court to "require the government to fulfill

24  its obligations pursuant to the agreement" (Def. Mot. at 16), and to

25  "be bound to perform pursuant to the parties' agreement" (id. at 21).

26  The government agrees the Court should enforce the Proffer Agreement,

27  including both parties' rights under the express terms of the

28  agreement, which also specifically contemplates breach rights.

Ignoring the express provisions of the Proffer Agreement, defendant asks the Court to "suppress any information obtained pursuant to that agreement." Id. Applying contract principles to interpret the Proffer Agreement, the express terms clearly allow the government to use proffer information in various ways even in the absence of a breach. See United States v. Chiu, 109 F.3d 624, 625 (9th Cir. 1997) (applying "contract principles to the interpretation of a proffer agreement"); see also United States v. D.P., 720 F. App'x 390, 392 (9th Cir. 2018) ("strict adherence to the language of the agreement is necessary to both aid the government in its investigation while protecting the rights of the defendant").

### 1.   Defendant's Lies in His Prosecution for False Statements

The Proffer Agreement explicitly provides that defendant can be prosecuted for making false statements and that his proffer statements can be used in his prosecution for false statements. Proffer Agmt. at ¶¶ 5, 6. Defendant does not explicitly state in his motion that the Proffer Agreement precludes his prosecution for false statements or the government's use of his lies for such a prosecution. Nor does he deny that he actually lied during his proffer in April 2019. However, throughout the motion, defendant relies heavily on the false premise that the Proffer Agreement gave him a right to "cure" or "remedy" the false statements. See Def. Mot. at 12 (arguing that "Huizar (and the government) understood that breaches could be cured" and that the government "unequivocally invited Huizar to cure the alleged breach"), 13 (claiming Huizar "cured the alleged breach").

8

1    As a threshold matter, it is undisputed that defendant never

2    "cured" or "remedied" his false statements regarding the 940 Hill

3    scheme.  Accordingly, it is nonsensical to argue that defendant cured

4    a lie by telling another unrelated truth.

5    Next, nowhere in the Proffer Agreement is there a provision

6    giving defendant a right to avoid prosecution by somehow "curing" or

7    "remedying" his commission of a crime.  That would be an absurd

8    result and not one recognized in the law.  In the "constitutional

9    process of securing a witness' testimony, perjury simply has no place

10   whatever." United States v. Mandujano, 425 U.S. 564, 576 (1976)

11   (plurality).  When a defendant has been provided some form of

12   "immunity to preserve his right against self-incrimination, he must

13   choose either to relinquish his Fifth Amendment right and testify

14   truthfully, knowing that his statements cannot be used against him in

15   a subsequent criminal prosecution regarding the matter being

16   investigated, or continue to assert the privilege and suffer the

17   consequences. *There is no third option for testifying falsely*

18   *without incurring potential prosecution for perjury or false*

19   *statements*." United States v. Veal, 153 F.3d 1233, 1241 (11th Cir.

20   1998) (emphasis added).

21   Here, under the express terms of the agreement, the government

22   may prosecute defendant for false statements and can use his false

23   statements in that prosecution.

24       2.   Defendant's Proffer Statements for Cross-Examination
        and to Refute Defense Arguments

25

26   The express terms of the Proffer Agreement also provide that the

27   government may use defendant's proffer statements "for the purpose of

28   cross-examination should your client testify, or to refute or counter

1    at any stage of the proceedings (including this Office's case-in-
2    chief at trial) any evidence, argument, statement or representation
3    offered by or on behalf of your client in connection with any
4    proceeding."  Proffer Agmt. at ¶ 4(b).

5        The Ninth Circuit has upheld the enforceability of this
6    provision in a proffer agreement. United States v. Miller, 151 F. 3d
7    957 (9th Cir. 1998).  In Miller, the defendant signed a proffer
8    agreement containing similar language to Paragraph 4(b).  Id. at 961.
9    The government used Miller's proffer statements to rebut evidence
10   that he presented at sentencing.  Id. at 958.  Miller argued both
11   that this use of his statements violated the proffer agreement and
12   that the proffer agreement's terms were vague and should therefore be
13   construed against the government.  Id. at 962.  The Ninth Circuit
14   rejected Miller's arguments, finding that the government's use of
15   Miller's proffer testimony was sanctioned by the proffer agreement
16   and that the allegedly ambiguous terms would only be construed
17   against the government if both parties' interpretations lay within
18   the "zone of reasonableness," which, given the clarity of the proffer
19   agreement, Miller's interpretations did not.  Id. (citing United
20   States v. Plummer, 941 F.2d 799, 804 (9th Cir. 1991)).

21       Thus, pursuant to the express terms of the Proffer Agreement,
22   the government may use defendant's proffer statements to cross-
23   examine defendant should he testify, and to refute or counter
24   defendant's arguments at any stage of the proceedings, including in
25   motions.  This comports with the general principle that our criminal
26   justice system does not recognize a defendant's right to make false
27   statements.  "[T]here is hardly justification for letting the
28   defendant affirmatively resort to perjurious testimony in reliance on

the Government's disability to challenge his credibility." <u>Harris v. New York</u>, 401 U.S. 222, 225 (1971) (citation omitted). "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." <u>Id.</u> In short, "[t]he shield provided by <u>Miranda</u> [or the Proffer Agreement] cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." <u>Id.</u> at 226. Thus, if statements at a proffer session contradict a defendant's position at any later stage of the proceedings, the government may use defendant's proffer admissions to refute those inconsistent statements.

**B.   Because Defendant Lied, the Government May Introduce All of His Proffer Statements at Trial**

Here, because defendant lied during the April 2019 proffer session, under the express terms of the Proffer Agreement, the lies triggered the government's right to use all of defendant's proffer statements for any purpose, not only to contradict inconsistent statements. The Proffer Agreement unambiguously stated: "I understand that, if I lie, the government may use all my statements against me for any purpose." Def. Ex. A at ¶ 6. Here, again, defendant does not contest that he lied; he simply attempts to evade the express sanction he agreed to if he did by inventing a unilateral cure provision. Def. Mot. at 19-21.

1.  **After a Breach, the Government May Use Defendant's Proffer Statements for Any Purpose**

The Ninth Circuit has held that a defendant's proffer statements can be admitted at trial if a defendant lies during the proffer.  In United States v. Petrosian, 446 F. App'x 826, 828 (9th Cir. 2011), the defendant appealed his conviction after a jury found him guilty of providing false statements to a government agency, in violation of 18 U.S.C. § 1001, and conspiring to defraud the United States, in violation of 18 U.S.C. § 371.  The Ninth Circuit held that "[t]he district court properly admitted the statements Petrosian made during a proffer session" and that the "district court's finding that Petrosian was not completely truthful was not clearly erroneous."[2] Id.  The proffer statements were admitted at trial to prove both the false statement and conspiracy charges.  The Ninth Circuit affirmed both convictions and relied on defendant's own proffer statements as evidence supporting each conviction.  As to the false statement conviction, the defendant had "told a special agent in his May 10, 2006 interview that he had never negotiated checks for cash.  The trial evidence, including the testimony of his clients and his own proffer statements, indicated otherwise." Id. at 828-29.  In sustaining the conspiracy conviction, the Ninth Circuit noted that "Petrosian's own proffer statements provided ample details about his scheme to convert checks into cash to assist his clients in defrauding the government of tax revenues." Id.

---

[2] Here, defendant does not dispute that he lied during the April 2019 proffer and that a breach occurred, so a court finding is not required.  However, if the Court believes such a finding is necessary, the government can submit evidence to prove that a breach occurred, including each of defendant's full proffer statements

2.  <u>Defendant Has No Right to "Cure" False Statements</u>

Nothing in the Proffer Agreement creates a right for a defendant to "cure" making false statements and committing a crime, giving him a right to avoid prosecution.  To the contrary, the Proffer Agreement states that it "does not provide any protections to your client not expressly set forth herein."  Proffer Agmt. at ¶ 1(e).  Defendant argues that "[t]he Proffer Agreement is silent as to what process a party must undertake when declaring a breach and silent as to either party's rights when a breach has occurred or been declared."  Def. Mot. at 11.  Defendant is wrong on both fronts.  Paragraph 6 expressly provides that if the Office concludes that the defendant "has knowingly withheld material information" or "otherwise not been completely truthful and candid," then the Office's right is to "use against your client for any purpose (including sentencing) any statements made or other information provided by your client during the meeting."  As to the procedure, Paragraph 6 also provides that the Office would notify defendant before making any use of such statements or information, which the government did both orally and in writing in this case.  That the agreement is "silent" on giving defendant any right to "remedy" or "cure" his false statements does not create ambiguity or an opportunity to contort the other express provisions into meaninglessness; it confirms an absence of any right to "cure" the commission of a crime.

Defendant relies on cases that discuss breaches of plea agreements, not proffer agreements, and that involve very different facts.  <u>See</u> CR 312 at 6-9 (citing cases involving plea agreements), 15-16.  For example, defendant repeatedly relies on <u>United States v. Packwood</u>, 687 F. Supp. 471 (N.D. Cal. 1987).  Def. Mot. at 9, 12, 15,

13

17.   In that case, the court examined whether the government could revoke a plea agreement and prosecute defendant for murder after it allowed him to plead guilty to bank robbery.  In that context, the court noted that "contract principles, when viewed in the light of the demands of due process, would seem to require that in a case such as this where the defendant does not know his inaction is being treated as a breach, the government give him timely notice and an opportunity to cure."  Id. at 475.  Defendant also quotes out of context from United States v. Diaz-Jimenez, 622 F.3d 692, 696 (7th Cir. 2010), for the proposition that "a corrective statement would be analogous to a contract party's curing his breach before it did any harm to the other party."  Def. Mot. at 13.  In that case, the court found the prosecutor breached a plea agreement at sentencing by making a statement that "undermined his endorsement of the recommendation in the plea agreement."  Diaz-Jimenez, 622 F.3d at 696.  The court noted that an "unequivocal retraction" could perhaps function as a "corrective statement" to avoid breach, but found no such retraction or corrective statement in that case.  Id.  Defendants cites other similar cases discussing the government's breach of a plea agreement at sentencing.  Def. Mot. at 15-16.  Cases analyzing parties' rights under plea agreements are inapposite,[3] but even if those principles applied to proffer agreements, defendant

---

[3] A proffer agreement and a plea agreement have very different terms.  The standard language in plea agreements in this District, for example, provides that a court must find a breach of the plea agreement to have occurred, and contemplates that a defendant may cure a breach with the express agreement of the USAO in writing.  No such terms regarding a breach exist in the Proffer Agreement.  The clear distinctions in two common Central District of California forms strongly suggest the differences were deliberate.

made no such "unequivocal retraction" or "corrective statement" and the government's investigation was impacted as a result.

Here, defendant affirmatively lied during the proffer session, was put on notice by the government that he lied, and never met again with the government to recant his lie and tell the truth.  Not even defendant's counsel attempted to "cure" the prior lie by admitting the false statements and proffering truthful information.  Defendant claims that on March 20, 2020, his counsel "provided the government with the information the government requested regarding the 940 Hill Scheme and the four additional individuals," citing Paragraph 13 of Ms. Podberesky's declaration.  The declaration says nothing about the substance of the call, that counsel admitted HUIZAR lied, or that HUIZAR was "finally ready to come clean on this scheme," as the government had requested.  Def. Mot. at 12-13; CR 312-1 (Podberesky Decl.) at ¶ 13.

The Ninth Circuit has held that prosecution for false statements is appropriate even where a defendant attempts to recant a false statement almost immediately.  See, e.g., United States v. Salas-Camacho, 859 F.2d 788, 791-92 (9th Cir. 1988) ("we reject any contention that the appellant's second denial to Inspector Davidson was not material because it was immediately corrected by a true oral statement").  In Salas-Camacho, the defendant only made his true oral statement once he was confronted with the imminent inspection of his vehicle.  The Ninth Circuit held that this "delayed admission" did not cure or reduce the materiality of his earlier false statement.  Id.  In United States v. Johnston, 617 F. App'x 706 (9th Cir. 2015), the Ninth Circuit also rejected an argument that defendant's attempted correction of a false statement defeated the charge

15

1    "because it did not occur until several hours after she gave the
2    statement and signed a written affidavit attesting to its
3    truthfulness, and after she learned that Special Agent Gowins already
4    possessed information contradicting her initial statement." Id. at
5    708-09.

6         Other Circuits have similarly rejected arguments that defendants
7    can avoid prosecution for false statements by "curing" or recanting
8    false statements. See, e.g., United States v. Purpera, 844 F. App'x
9    614, 633 (4th Cir. 2021) (affirming § 1001 conviction where the
10   defendant "took back" his false statement "within a minute of making
11   it, [allegedly] before the statement could impact or alter the DEA's
12   investigation"); United States v. Beaver, 515 F.3d 730, 742-43 (7th
13   Cir. 2008) (crime is complete and "materiality of [defendant's] false
14   statements must be assessed at the moment he uttered them"); United
15   States v. Sarihifard, 155 F.3d 301, 307 (4th Cir. 1998) (rejecting
16   argument that false statement to grand jury was immaterial because
17   United States Attorney recognized instantly that the defendant's
18   testimony was false and instructed the grand jury to disregard it);
19   United States v. Awadallah, 202 F. Supp. 2d 82, 107-08 (S.D.N.Y.
20   2002), rev'd, 349 F.3d 42 (2d Cir. 2003) ("Some defenses, although
21   graced with a name, seem to be illusory.  The recantation defense,
22   for example, appears to be an illusion often asserted but never
23   found.").

24        Here, too, even if HUIZAR had fully and unequivocally recanted
25   his April 2019 false statements, the government may still prosecute
26   him for the false statements because, provided the government could
27   prove willfulness, the crime was complete the moment he uttered the
28   false statements, and neither the Proffer Agreement nor the law

                                   16

recognize a defendant's right to "cure" or "remedy" the commission of a crime.  Defendant has cited no cases holding that a defendant has the right to "cure" a breach in a proffer agreement.

Applying the clear terms of the proffer agreement, defendant's lies to the government during his April 2019 proffer session triggered the government's right to use any of defendant's past proffer statements against him for any purpose.  Thus, at trial, the government should be allowed to introduce through agent testimony any admissions defendant made during the December 2018, January 2019, and April 2019 proffer sessions.

### 3.  Defendant Fails to Meet the High Burden to Show the Government Committed Misconduct

Similar to his other "suppression" motions, defendant actually raises misconduct claims in this motion.  He argues the government violated his Due Process rights "by inducing additional cooperation pursuant to the Proffer Agreement" (Def. Mot. at 16) and argues that "[t]he government's statements and actions establish misconduct beyond mere negligence" (id. at 10-11, 19).  To establish this misconduct claim, defendant relies on a case with no rational connection to the case at bar, Watkins v. U.S. Army, 875 F.2d 699 (9th Cir. 1989).  See Def. Mot. at 11, 19, 20.  In Watkins, the Ninth Circuit applied the principle of equitable estoppel against the government, to hold that "the Army be estopped from refusing to reenlist Watkins [an Army Sergeant] on the basis of his homosexuality."  Id. at 711.  Defendant cites no cases in which this principle was used in the context of a proffer agreement, or anything close to the issue here.

17

Defendant argues that the government violated his "Due Process rights by inducing him to further waive his Fifth Amendment right to remain silent and produce evidence to his detriment, in other words, continue performing pursuant to the Proffer Agreement for no benefit at all." <u>Id.</u> at 18.  It is unclear what "benefit" defendant expected from his "continued performance" through his defense counsel's statements pursuant to the Proffer Agreement except to identify the framework of a potential plea agreement.  The only benefit promised to a defendant in the Proffer Agreement is a limit on the government's use of the evidence, as specifically delineated in the agreement.  Defendant chose to continue providing information (through his attorneys only) pursuant to the Proffer Agreement.  Defendant continues to enjoy benefits of the Proffer Agreement, in that the government has not and will not use that information in any way beyond the express terms of the Proffer Agreement.

### C. The Government May Use Information Provided by Defense Counsel Absent a Breach

Defendant repeatedly argues that "the government should be equitably estopped from using any information obtained pursuant to the Proffer Agreement" (Def. Mot. at 20, 21), but fails to articulate what "information" he means.  Based on his inchoate argument, defendant seems to be referring at least in part to information provided by his defense counsel on behalf of defendant after the government declared a breach.  Def. Mot. at 17-18.  To make the record clear, the government will not introduce defense counsel's statements at trial in its case-in-chief.

The government, may, however, use that information under the express terms of the Proffer Agreement.  First, under the terms of

the Proffer Agreement, even in the absence of a breach, the government may use proffer information "for the purpose of obtaining and pursuing leads to other evidence, which evidence may be used for any purpose, including any prosecution of your client." Proffer Agmt. at ¶ 4(a). The Ninth Circuit has upheld the government's right to make derivative use of proffer information, including defendant's own statements, at any stage of its prosecution other than in its case-in-chief and at sentencing. See Chiu, 109 F.3d 624. In Chiu, a case on which defendant relies (Def. Mot. at 6), the Ninth Circuit examined whether the government breached a proffer agreement by using statements made by the defendant during a proffer session to prepare government witnesses at trial. 109 F.3d at 625. The proffer agreement in Chiu stated that the government "would not 'offer in evidence in its case-in-chief ... any statements made by the defendant.' The proffer agreement also expressly stated that the government could use the information in other circumstances." Id. at 626. The Ninth Circuit concluded that "[t]he government did not offer at trial any statements made by Chiu during his proffer session and thus did not breach the proffer agreement." Id.

Similarly, in In re Grand Jury Subpoena to Janan, 325 F. App'x 551, 552 (9th Cir. 2009), the Ninth Circuit rejected a defendant's "invitation to adopt an expansive definition of the term 'case-in chief'" in a proffer agreement. Relying on Chiu, the Ninth Circuit defined "case-in-chief" for purposes of the proffer agreement to refer "only to '[t]he evidence presented at trial by a party between the time the party calls the first witness and the time the party rests' or '[t]he part of a trial in which a party presents evidence to support the claim or defense.'" Id. (quoting Black's Law

1   Dictionary 229 (8th ed. 2004)).  The term "case-in-chief" does not

2   encompass preliminary proceedings.  Id.

3       Here, too, the government has not violated or "reneged on its

4   promise to not use information received pursuant to the Proffer

5   Agreement."  Def. Mot. at 17-18.  The government will not introduce

6   defense counsel's statements at trial in its case-in-chief, but it

7   may use that information to pursue leads to other evidence.

8       Second, under the express terms of the Proffer Agreement, the

9   government may use statements made by defense counsel "for the

10  purpose of cross-examination should your client [defendant] testify,

11  or to refute or counter at any stage of the proceedings (including

12  this Office's case-in-chief at trial) any evidence, argument,

13  statement or representation offered by or on behalf of your client in

14  connection with any proceeding."  Proffer Agmt. at ¶ 4(b).

15      Defendant is asking the Court to "hold that the government must

16  perform pursuant to the parties' Proffer Agreement." (Def. Mot. at

17  22).  The government has and will continue to perform pursuant to the

18  express terms of the Proffer Agreement, which allows the government's

19  use of proffer information as set forth in Paragraph 4.  Defendant

20  should not be permitted to escape its terms.

21      **D.   Evidence Seized Pursuant to a Search Warrant Is Not
        Governed by the Proffer Agreement**

22

23      To date, the government has been unsuccessful in searching the

24  hard drive containing a forensic image of defendant's phone and the

25  physical phone because his information is password-protected.

26  Dragalin Decl. ¶ 3, Gov. Ex. 2 at 22.  A motion to suppress this

27  evidence is moot, or premature at best.  In any event, the government

28  seized the hard drive and physical phone pursuant to a federal search

warrant.  Dragalin Decl. ¶¶ 3-4, Gov. Exs. 2-3.  Defendant cannot prevent the government's use of lawfully seized evidence pursuant to a warrant by claiming (incorrectly) that he voluntarily provided it pursuant to a Proffer Agreement.  Because the government had probable cause to obtain the evidence, it did not need defendant's permission pursuant to the Proffer Agreement to seize that evidence, and had no reason to limit itself to the use of that evidence under such an agreement.  That defense counsel politely turned the evidence over to an FBI agent with a warrant in lieu of a formal execution of the warrant does not afford defendant's devices the protection of the Proffer Agreement.  Defendant cites no cases to support his novel theory that defendants can shield the government's use of evidence obtained through a federal search warrant by uttering the magic words "pursuant to the Proffer Agreement."

## IV.  CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to suppress information obtained pursuant to proffer agreement (CR 312).