UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES

Case No.   **CR 20-326(A)-JFW**                                         Dated: December 29, 2021

===========================================================================
PRESENT:   HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

| Shannon Reilly | None Present | Mack Eric Jenkins |
| Courtroom Deputy | Court Reporter | Veronica Dragalin |
| | | Melissa E. Mills |
| | | Asst. U.S. Attorney |
| | | **Not Present** |

===========================================================================
U.S.A. vs (Dfts listed below) - **Not Present**          Attorneys for Defendants - **Not Present**

1. Jose Luis Huizar                                      1. Carel Alé, DFPD; Charles James Snyder, DFPD
2. Raymond She Wah Chan                                  2. Harland W Braun, Retained
4. Shen Zhen New World I, LLC                            4. Richard M. Steingard, Retained
5. Dae Yong Lee                                          5. Ariel A Neuman, Retained
6. 940 Hill, LLC                                         6. Ariel A Neuman, Retained

**PROCEEDINGS (IN CHAMBERS):**   **ORDER DENYING DEFENDANTS 940 HILL, LLC AND DAE YONG LEE'S MOTION TO STRIKE LANGUAGE FROM COUNT 5 [filed 9/7/2021; Docket No. 229];**

**ORDER DENYING DEFENDANTS 940 HILL, LLC AND DAE YONG LEE'S MOTION TO STRIKE LANGUAGE FROM COUNT 25 [filed 9/7/2021; Docket No. 231]**

On September 7, 2021, Defendants 940 Hill, LLC ("940 Hill") and Dae Yong Lee ("Lee") filed a Motion to Strike Language from Count 5 and a Motion to Strike Language from Count 25. On October 14, 2021, the Government filed its Omnibus Opposition. On November 4, 2021, 940 Hill and Lee filed their Replies. The Court finds that these matters are appropriate for decision without oral argument. The hearing was vacated and the matters were taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

Initials of Deputy Clerk __sr__

I.  **BACKGROUND**

A.  **Relevant Factual Allegations in the First Superseding Indictment**[1]

The allegations against Defendants 940 Hill and Lee in the First Superseding Indictment ("FSI") focus on the development of a property located at 940 Hill Street located in Council District 14 ("CD-14") of the City of Los Angeles (the "City").  FSI ¶¶ 22-23. Defendants 940 Hill and Lee[2] were planning on building a mixed-use development on the property, which would include 14,000 square feet of commercial space and over 200 residential units (the "940 Hill Project").  FSI ¶ 23.

Labor Organization A, an unincorporated association of individuals and labor organizations, filed an appeal that prevented the 940 Hill Project from advancing through the City approval process. FSI Count 1, Overt Act 85. The appeal would ultimately reach the Planning and Land Use Management ("PLUM") Committee, which is a body appointed by the City Council President that oversees many of the most significant commercial and residential development projects in the City of Los Angeles.  FSI ¶¶ 2, 8, Count 1, Overt Act 85. Defendant Jose Luis Huizar ("Huizar"), the Councilmember for CD-14, was the Chair of the PLUM Committee.  FSI ¶ 8, Count 1, Overt Act, 85.

On August 8, 2016, after Labor Organization A filed the appeal, Lee called Justin Kim and asked him to obtain Huizar's assistance in "dealing with the appeal."  FSI, Count 1, Overt Act 85. Justin Kim was a real estate appraiser and consultant for real estate developers with projects in the City and a major fundraiser for Huizar.  FSI ¶ 33.  On August 9, 2016, Lee e-mailed a copy of the appeal to Kim, which Kim forwarded to Huizar's Special Assistant, George Esparza. FSI ¶¶ 13, Count 1, Overt Act 86.

On September 1, 2016, Huizar received a written brief from a city staffer regarding the 940 Hill Project, which noted that "Justin Kim will be requesting your support in denying the appeal," and that a certain component of the appeal would reach the PLUM Committee and the City Council. FSI, Count 1, Overt Act 87. That same night, Huizar, George Esparza, and Justin Kim had dinner together and visited a Korean karaoke establishment, where Kim asked Huizar for assistance with the appeal on the 940 Hill Project.  FSI, Count 1, Overt Act 88.  After Huizar agreed to help, Justin Kim called Lee and asked him to join the group, which Lee did.  *Id.*

The next day, on September 2, 2016, George Esparza and Justin Kim met for lunch in Los Angeles.  FSI, Count 1, Overt Act 89.  At Huizar's direction, Esparza advised Kim that Huizar would not assist with the 940 Hill Project for free and that Huizar would require a financial benefit in exchange for his help ensuring that the 940 Hill Project moved forward through the City approval process.  *Id.*  On September 3, 2016, Justin Kim met with Lee, and advised Lee that Huizar's assistance on the 940 Hill Project would require that Huizar receive a financial benefit.  FSI, Count 1, Overt Act 90.

---

[1] For the purposes of these motions, the Court accepts the facts as alleged in the First Superseding Indictment as true.

[2] Lee, a real estate owner and developer, was the majority owner of 940 Hill. FSI ¶ 23.

In or around January 2017, George Esparza advised Justin Kim that it would cost approximately $1.2 million to $1.4 million to convince Huizar to favorably resolve the appeal and allow the 940 Hill Project to move forward in the City approval process. FSI, Count 1, Overt Act 94. In February 2017, George Esparza and Justin Kim negotiated the amount of the "bribe." FSI, Count 1, Overt Act 96. Kim conveyed Lee's counteroffer of $500,000 cash ($300,000 for Huizar and $200,000 for Kim) to George Esparza, who then conveyed that counteroffer to Huizar. *Id.*

On February 21, 2017, Defendant Huizar told George Esparza that he would talk to Lobbyist C, a close associate of the Executive Director of Labor Organization A, to encourage Labor Organization A to withdraw the appeal. FSI, Count 1, Overt Act 99. Huizar also told Esparza that the appeal could be denied in the PLUM Committee. *Id.* Thereafter, Huizar discussed the appeal with Lobbyist C and advised Lobbyist C that he would oppose the appeal in the PLUM Committee. FSI, Count 1, Over Act 100. Lobbyist C agreed to discuss the issue with the Executive Director of Labor Organization A. *Id.*

On March 3, 2017, George Esparza received a text message from Lobbyist C regarding the appeal on the 940 Hill Project, which stated: "Appeal dropped today." FSI, Count 1, Overt Act 103. Esparza then informed Justin Kim, who informed Lee, that Huizar had held up his end of the bargain and that the appeal had been resolved. FSI, Count 1, Overt Acts 103, 104.

On March 14, 2017, Justin Kim met with Lee at Lee's office in Los Angeles and received cash from Lee, which was part of the agreed upon "bribe" for Huizar's assistance in resolving the appeal. FSI, Count 1, Overt Act 105. Kim kept some cash for himself for facilitating the bribe payment, but delivered $200,000 of that cash to George Esparza. FSI, Count 1, Overt Acts 107, 109. When Esparza attempted to deliver the cash to Huizar, Huizar told Esparza to hold on to and hide the money at Esparza's residence until Huizar asked for it. FSI, Count 1, Overt Act 109. Huizar told Esparza that he could keep $100,000 of the $300,000 total amount Huizar expected to receive from Lee. *Id.*

In July 2017, Lee provided an additional $100,000 in cash to Kim, which Lee intended to be paid to Huizar as an additional part of the "bribe" for Huizar's assistance in resolving the appeal, but Kim decided to keep the money for himself. FSI, Count 1, Overt Act 110. Although Huizar later asked Esparza for the cash, Esparza never responded and never provided Huizar with the cash. *See* FSI, Count 1, Overt Acts 113-118.

    **B.    The Relevant Counts**

        1.    <u>Count Five</u>

In Count Five of the FSI, Defendants 940 Hill and Lee are charged with honest services wire fraud in violation of 18 U.S.C. §§ 1343 and 1346. The FSI alleges that Defendants Huizar, Lee, and 940 Hill "knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud the City of Los Angeles and its citizens of their right to the honest services of their public officials through bribery . . . ." More specifically, the FSI alleges that, in exchange for bribes from defendants Lee and 940 Hill, Huizar and George Esparza agreed to perform and performed the following types of "official acts," among others: (1) "voting on projects in various City

Initials of Deputy Clerk   sr

Page 3 of 14

committees, including the PLUM Committee, and City Council;" and (2) "using their office to negotiate with and exert pressure on labor unions to resolve issues on projects." FSI ¶ 45(b).

Defendants 940 Hill and Lee move for an order: (1) striking the allegation that Defendant Huizar and George Esparza performed an "official act" in exchange for bribes by "using their office to negotiate with and exert pressure on labor unions to resolve issues on projects;" and (2) clarifying that 940 Hill and Lee cannot be convicted of Count Five based solely on proof that Huizar and Esparza negotiated with or pressured labor unions in exchange for the alleged bribe. Motion to Strike Language from Count 5 (Docket No. 229) at 8.

        2.        <u>Count Twenty-Five</u>

In Count Twenty-Five of the FSI, Defendants 940 Hill and Lee are charged with bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(2). The FSI alleges that Defendants 940 Hill and Lee "corruptly gave, offered, and agreed to give something of value to a person, intending to influence and reward Jose Luis Huizar in connection with a business, transaction, and series of transactions of the City of Los Angeles having a value of $5,000 or more." FSI ¶ 52. More specifically, the FSI alleges that Defendants 940 Hill and Lee "gave, offered, and agreed to give Huizar, George Esparza, and Justin Kim $500,000 in cash, intending to influence and reward Huizar and Esparza in connection with the 940 Hill Project, including in: (1) pressuring Labor Organization A to dismiss its appeal against the 940 Hill Project and (2) voting to deny Labor Organization A's appeal against the 940 Hill Project in the PLUM Committee." *Id.*

Defendants 940 Hill and Lee move to strike the language "pressuring Labor Organization A to dismiss its appeal against the 940 Hill Project" from Count Twenty-Five, and move for an order that the Government may not attempt to prove the charge alleged in Count Twenty-Five on this theory.

## II.    **LEGAL STANDARD**

"The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Cr. P. 7(c)(1). In evaluating whether an indictment charges a cognizable offense, "the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The Court "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged. The indictment either states an offense or it doesn't. There is no reason to conduct an evidentiary hearing." *Id.* "[A]n indictment is sufficient if: (1) it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend; and (2) it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Hill*, 279 F.3d 731, 741 (9th Cir. 2002).

Federal Rule of Criminal Procedure 7(d) authorizes the Court, upon the defendant's motion, to "strike surplusage from the indictment or information." Fed. R. Cr. P. 7(d). "The purpose of Rule 7(d) is to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Ramirez*, 710 F.2d 535, 545 (9th Cir. 1983).

"[I]nformation that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion." *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006). "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (quotations and citations omitted).

### III.   DISCUSSION

#### A.   Count Five: Honest Services Wire Fraud in Violation of 18 U.S.C. § 1343

Defendants 940 Hill and Lee argue that "using [Huizar's] office to negotiate with and exert pressure on labor unions to resolve issues on projects" does not, as a matter of law, constitute an "official act" for the purposes of Count Five and thus that such language should be stricken from Count Five of the First Superseding Indictment. While the Court agrees that "negotiating with and exerting pressure on labor unions to resolve issues on projects" -- without more -- does not fit the definition of "official act," the Court concludes that the Government has alleged "something more," such that striking the language is not warranted. *See McDonnell v. United States*, 136 S. Ct. 2355, 2361, 2370 (2016)

An honest services wire fraud based on bribery allegations, as alleged in Count Five, requires the Government to prove a *quid pro quo*, i.e., the payment of something of value in exchange for an "official act."[3]  *See United States v. Garrido*, 713 F.3d 985, 996-97 (9th Cir. 2013); *McDonnell v. United States*, 136 S. Ct. 2355, 2365 (2016).  In *United States v. McDonnell,* 136 S. Ct. 2355 (2016), the Supreme Court set forth the requirements for proving an "official act." First, the Government must identify a "question, matter, cause, suit, proceeding or controversy." *Id.* at 2369.  That "question, matter, cause, suit, proceeding or controversy" "must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." *Id.* at 2369, 2372.  "The matter must also be something specific and focused that is 'pending' or 'may by law be brought' before a public official." *Id*. at 2372.  "'Pending' and 'may by law be brought'" suggest something that is relatively circumscribed -- the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." *Id.* at 2369.

Second, the public official must "make a decision or take an action *on* that 'question, matter, cause, suit, proceeding or controversy,' or agree to do so." *Id.* at 2370. "That decision or action may include using his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official." *Id.* at 2372. "Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so) -- without more -- does not fit that definition of 'official

---

[3]"The Supreme Court has construed . . . honest services fraud to require proof of bribery. Thus, courts commonly construe [honest services fraud] as requiring an 'official act' as defined in the federal bribery statute, 18 U.S.C. § 201" even though the honest services fraud statute does not use that term. *Dimora v. United States*, 973 F.3d 496, 500 (6th Cir. 2020), cert. denied, 141 S. Ct. 1693 (2021) (internal citations omitted).

act.'" *Id.* "Of course, this is not to say that setting up a meeting, hosting an event, or making a phone call is always an innocent act, or is irrelevant, in cases like this one.  If an official sets up a meeting, hosts an event, or makes a phone call on a question or matter that is or could be pending before another official, that could serve as evidence of an agreement to take an official act." *Id.* at 2371.

Importantly, "a public official is not required to actually make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy'; it is enough that the official agree to do so." *Id.* at 2370-71.  "The agreement need not be explicit, and the public official need not specify the means that he will use to perform his end of the bargain.  Nor must the public official in fact intend to perform the 'official act,' so long as he agrees to do so." *Id.* at 2371.  "It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged *quid pro quo*." *Id.*

The Court concludes, and Defendants 940 Hill and Lee do not dispute, that the Government has alleged all of the elements of an "official act" required by the Supreme Court's decision in *McDonnell*.  First, the Government has (a) identified a "question, matter, cause, suit, proceeding or controversy" (b)  that "involves a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee (c) that is specific and focused that is pending or may by law be brought before a public official.  Specifically, the Government has identified Labor Organization A's appeal, which would ultimately reach the PLUM Committee (chaired by Defendant Huizar), as the relevant "question, matter, cause, suit, proceeding, or controversy" that meets these requirements. Second, the Government has alleged facts demonstrating that Huizar made a decision or took an action on that matter or agreed to do so, including that Huizar agreed to "deal[ ] with the appeal", "deny[ ] the appeal," assist or help with the appeal, "resolve the appeal," "ensur[e] the 940 Hill Project moved forward through the City approval process," and/or "oppose the appeal in the PLUM Committee," in exchange for $300,000 cash.  *See* FSI, Count 1, Overt Acts 85-100.  Ultimately, it will be up to the jury, based on the evidence at trial, to determine whether Huizar agreed to perform or performed an "official act," such as opposing the appeal in the PLUM Committee, at the time of the alleged quid pro quo.

The Court has also considered the allegation specifically at issue: whether "using [Huizar's] office to negotiate with and exert pressure on labor unions to resolve issues on projects" can constitute an "official act."  The Court agrees that negotiating and exerting pressure on labor unions to resolve issues on projects does not typically, without more, constitute an official act.  However, in this case, the specific circumstances and method by which Huizar allegedly negotiated and exerted pressure on Labor Organization A, evidences the performance of an "official act" or an agreement to perform an official act.   Specifically, the FSI alleges that, in pressuring Labor Organization A to dismiss its appeal, Huizar indicated that he would "oppose the appeal in the PLUM Committee."  FSI, Count 1, Overt Act 100.  In other words, on a matter that would ultimately be pending before a committee that Huizar himself chaired, Huizar stated that he had decided to oppose the appeal.  That may be considered a decision or action *on* Labor Organization A's appeal, or at the very least, evidences an agreement to make that decision or take that action on Labor Organization A's appeal.  *See McDonnell*, 136 S. Ct. at 2370 ("For example, a decision or action to initiate a research study -- or a decision or an action on a qualifying step, such as narrowing down the list of potential research topics -- would qualify as an

'official act.'"); *id.* at 2372 ("Of course, this is not to say that setting up a meeting, hosting an event or making a phone call is always an innocent act, or is irrelevant, in cases like this one."). And, importantly, as the Supreme Court explained, it is not necessary that Huizar *actually* made a decision or took the action on Labor Organization A's appeal, or even that he intended to do so -- what matters is that Huizar *agreed* to do so.

In order to strike the relevant allegation from Count Five, the allegation must be irrelevant and prejudicial. The Court concludes that the allegation is neither irrelevant nor prejudicial, and thus should not be stricken. The action allegedly taken by Huizar (and Esparza) in "using their office to negotiate and exert pressure" on Labor Organization A to dismiss an appeal that would ultimately be pending before the PLUM Committee is certainly relevant as it evidences, *at the very least*, an agreement to perform an "official act." To the extent Defendants 940 Hill and Lee argue that the allegation is prejudicial because it implies an overly broad definition of "official act," the Court concludes that any such prejudice will be addressed and eliminated through the Court's clear instructions to the jury at trial. Moreover, because the "official act" requirement will be narrowly defined for the jury in accordance with the Supreme Court's decision in *McDonnell*, the Court concludes that there are no constitutional concerns raised by the Court's decision. *See McDonnell*, 136 S. Ct. at 2372-73.

For the foregoing reasons, Defendant 940 Hill and Lee's Motion to Strike Language from Count 5 is **DENIED**.

### B.   Count Twenty-Five: Federal Program Bribery in Violation of 18 U.S.C. § 666(a)(2)

As mentioned *supra*, Count Twenty-Five of the FSI charges Defendants 940 Hill and Lee with violating 18 U.S.C. § 666(a)(2), which prohibits federal program bribery. It applies to local governments, such as the City of Los Angeles, that receive "benefits in excess of $10,000." Specifically, Section 666(a)(2) makes it a crime to corruptly give, offer, or agree to give "anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more." 18 U.S.C. § 666(a)(2). The statute is intended to "protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery." *Sabri v. United States*, 541 U.S. 600, 606 (2004) (internal quotation marks and citation omitted).

In Count Twenty-Five, the FSI alleges that Defendants 940 Hill and Lee violated 18 U.S.C. § 666(a)(2) on the grounds that they "gave offered, and agreed to give Huizar, George Esparza, and Justin Kim $500,000 in cash, intending to influence and reward Huizar and Esparza in connection with the 940 Hill Project, including in: (1) pressuring Labor Organization A to dismiss its appeal against the 940 Hill Project and (2) voting to deny Labor Organization A's appeal against the 940 Hill Project in the PLUM Committee." FSI ¶ 52. Defendants 940 Hill and Lee argue that "pressuring Labor Organization A to dismiss its appeal against the 940 Hill Project" does not constitute conduct "in connection with any business, transaction, or series of transactions" of the City of Los Angeles, and thus that such language must be stricken from the FSI.

In order to reach this result, Defendants 940 Hill and Lee argue that the "in connection with" language of Section 666 must be construed narrowly to avoid the constitutional concerns of representative government, federalism, and vagueness raised by the Supreme Court in *McDonnell*. In order to avoid those constitutional concerns, they argue that Section 666(a)(2) should be construed "as limited to the payment or offer of payment to a government official to effectuate, or cause another government official to effectuate, *a governmental business decision or transaction*." Motion to Strike Language From Count Twenty-Five (Docket No. 231) at 17 (emphasis in original). They contend that such a construction would render Section 666(a)(2) "inapplicable to a public official's informal attempt to persuade a constituent to make a *private decision*, such as the decision to withdraw an administrative appeal of a development permit." *Id.* at 19. In essence, Defendants 940 Hill and Lee contend that the Court should import a requirement somewhat similar to the "official act" requirement (as interpreted by *McDonnell*) into Section 666. The Court declines Defendants 940 Hill and Lee's invitation. Not only does the statutory language of Section 666 not support such a construction, the Court concludes that the constitutional concerns raised in *McDonnell* are not implicated by Section 666.

        1.       The Constitutional Concerns Raised in *McDonnell* Were Specific to the Statutory Language of the Statute and the Context of that Case.

The constitutional concerns raised by the Supreme Court in *McDonnell* arose out of the specific statute at issue and the Government's proposed expansive and limitless interpretation of "official act." In *McDonnell*, the Supreme Court was solely concerned with the interpretation of "official act" under the general federal bribery statute, 18 U.S.C. § 201. The parties had agreed to define honest services fraud (the relevant crime with which McDonnell was charged) with reference to that statute.[4] *See McDonnell*, 136 S. Ct. at 2365. Section 201 makes it a crime for a "public official or person selected to be a public official, directly or indirectly, corruptly" to demand, seek, receive, accept, or agree to "receive anything of value" in return for being "influenced in the performance of any official act." 18 U.S.C. § 201(b)(2); *McDonnell*, 136 S. Ct. at 2365. It also makes it a crime for a person to "directly or indirectly, corruptly" to give, offer or promise "anything of value to any public official" with intent "to influence any official act." 18 U.S.C. § 201(b)(1). Section 201(a)(3) defines "official act" as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit."

Importantly, in *McDonnell*, the Government advocated for an expansive and boundless interpretation of the statutorily defined term "official act." The Supreme Court described the Government's position as follows:

> According to the Government, "Congress used intentionally broad language" in § 201(a)(3) to embrace "*any* decision or action, on *any question* or matter, that may at *any time* be pending, or which may by law be brought before *any* public official, in such official's official capacity." The Government concludes that the term "official act" therefore encompasses nearly any activity by a public official. In the

---

[4] Based on the parties' arguments, it appears that the parties have made the same agreement in this case with respect to the honest services fraud counts.

> Government's view, "official act" specifically includes arranging a meeting, contacting another public official, or hosting an event -- without more -- concerning any subject, including a broad policy issue such as Virginia's economic development.

*McDonnell*, 136 S. Ct. at 2367 (internal citations omitted).  In other words, under the Government's view, 18 U.S.C. § 201 would have made it a crime for a public official to "corruptly" receive or agree to "receive anything of value" in return for merely arranging a meeting, contacting another official, or hosting an event on any subject.  Similarly, it would have made it a crime for a person to "corruptly" give, offer, or promise anything of value to a public official with the intent that the official arrange a meeting, contact another official, or host an event on any subject.

In rejecting the Government's expansive interpretation, the Supreme Court primarily relied on the text of the statute and familiar canons of statutory construction, and ultimately gave "official act" the definition discussed *supra* in connection with Count Five.  Only after interpreting the statutory text did the Supreme Court buttress its conclusion with the "significant" constitutional concerns raised by the Government's expansive interpretation of "official act."  The Supreme Court concluded that, "[i]n addition to being inconsistent with both text and precedent, the Government's expansive interpretation of 'official act' would raise significant constitutional concerns."  *McDonnell*, 136 S. Ct. at 2372.  Specifically, the Supreme Court set forth three constitutional concerns arising out of the Government's broad interpretation of "official act": (1) concerns regarding the basic compact underlying representational government; (2) vagueness; and (3) federalism concerns.  *McDonnell*, 136 S. Ct. at 2372-73.  All three of these constitutional concerns were implicated because, under the Government's interpretation of the statutory language, the statute would have reached nearly anything a public official does without any limits on the exercise of prosecutorial discretion.

With respect to the concern regarding the compact underlying representational government, the Supreme Court stated:

> In the Government's view, nearly anything a public official accepts -- from a campaign contribution to lunch -- counts as a *quid*; and nearly anything a public official does -- from arranging a meeting to inviting a guest to an event -- counts as a *quo*.
>
> But conscientious public officials arrange meetings for constituents, contact other officials on their behalf, and include them in events all the time.  The basic compact underlying representative government *assumes* that public officials will hear from their constituents and act appropriately on their concerns -- whether it is the union official worried about a plant closing or the homeowners who wonder why it took five days to restore power to their neighborhood after a storm.  The Government's position could cast a pall of potential prosecution over these relationships if the union had given a campaign contribution in the past or the homeowners invited the official to join them on their annual outing to the ballgame. Officials might wonder whether they could respond to even the most commonplace requests for assistance, and citizens with legitimate concerns might shrink from participating in democratic discourse.

> This concern is substantial. White House counsel who worked in every administration from that of President Reagan to President Obama warn that the Government's "breathtaking expansion of public-corruption law would likely chill federal officials' interactions with the people they serve and thus damage their ability effectively to perform their duties."

*McDonnell*, 136 S. Ct. at 2772 (citations omitted).

With respect to the second and related constitutional concern (vagueness), the Supreme Court explained that, "[u]nder the Government's interpretation, the term 'official act' is not defined 'with sufficient definiteness that ordinary people can understand what conduct is prohibited,' or 'in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Id.* at 2373 (citations omitted). In other words, "[u]nder the 'standardless sweep' of the Government's reading, public officials could be subject to prosecution, without fair notice, for the most prosaic interactions." *Id.* (Internal citations omitted).

Finally, with respect to the third constitutional concern (federalism), the Supreme Court explained:

> The Government's position also raises significant federalism concerns. A State defines itself as a sovereign through "the structure of its government, and the character of those who exercise government authority." That includes the prerogative to regulate the permissible scope of interactions between state officials and their constituents. Here, where a more limited interpretation of "official act" is supported by both text and precedent, we decline to "construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards" of "good government for local and state officials."

*Id.* at 2373 (internal citations omitted).

In essence, the Supreme Court's concerns arose out of the specific statutory language and elements at issue, and in particular out of *the Government's proposed boundless interpretation of that statutory language.* The interpretation advocated by the Government, which was inconsistent with the text of the statute, would have chilled and potentially even criminalized commonplace and legitimate interactions between officials and their constituents.

With this background in mind, the Court will now determine whether an "official act" requirement or a similar requirement should be imported into 18 U.S.C. § 666 to avoid any constitutional concerns raised by the statutory language of § 666.

      2. <u>The Statutory Language of § 666 Does Not Require Proof of an Official Act that Satisfies the *McDonnell* Standard</u>.

As an initial matter, the statutory language of Section 666 does not support importing an "official act" requirement or similar requirement into that statute.

As just discussed, *McDonnell* interpreted bribery as defined by the general federal bribery

statute, 18 U.S.C. § 201, which uses the statutorily defined term, "official act." "Section 666, on the other hand, makes no mention of an 'official act' or a requirement that anything be given in exchange or return for an official act. Section 666 does not define or even use the term 'official act.'" *United States v. Garrido*, 713 F.3d 985, 1001 (9th Cir. 2013). Accordingly, based on the distinct statutory language used in Section 666, several Circuit courts (and many district courts) have refused to import *McDonnell*'s definition of "official act" into 18 U.S.C. § 666.

Indeed, as the Second Circuit first held in *United States v. Boyland*, Section 666 is "more expansive than § 201" and "we do not see that the *McDonnell* standard applie[s]" to the Section 666 counts. 862 F.3d 279, 291 (2nd Cir. 2017). More recently, the Second Circuit expanded its reasoning on this issue:

> As *Boyland* observed, § 201(b)(1)(A) bribery pertains only to "'official acts,'" a term statutorily "limited to acts on pending 'questions, matters, causes suits, proceedings, or controversies.'" By contrast, § 666 prohibits bribery "'in connection with any business, transaction, or series of transactions of [an] organization, government, or agency.'" Nowhere does § 666 mention "official acts." Nowhere does it place any definitional limits on the business or transactions to be influenced—beyond requiring them to be "of" the organization receiving more than $10,000 in federal funding and to have a "value of $5,000 or more." Further, the bribery proscribed by § 666 need not pertain directly to the business or transactions of an organization receiving federal funding; it need only be "in connection with" it. Thus, *Boyland* holds that *McDonnell*'s "official act" standard for the *quo* component of bribery as proscribed by § 201 does not apply to the "more expansive" language of § 666.

*United States v. Ng Lap Seng*, 934 F.3d 110, 133 (2d Cir. 2019), cert. denied, 141 S. Ct. 161 (2020). Other circuits are in accord. *See United States v. Porter*, 886 F.3d 562, 565 (6th Cir. 2018) ("In *McDonnell*, the Supreme Court limited the interpretation of the term "official act" as it appears in § 201, an entirely different statute than the one at issue here."); *United States v. Roberson*, 998 F.3d 1237, 1247 (11th Cir. 2021) ("Consistent with the views of our sister Circuits, we hold that *McDonnell* does not disturb this court's holding in *McNair* and we do not read into section 666 limitations unsupported by the language of the statute."); *United States v. Robles*, 698 Fed. Appx. 905 (9th Cir. 2017) (refusing to review a § 666 conviction based on Supreme Court's decision in *McDonnell* because *McDonnell* addressed the interpretation of a statute other than § 666).

Accordingly, to the extent that 940 Hill and Lee contend that the Court should import the "official act" requirement as interpreted by *McDonnell* (or similar requirement) into 18 U.S.C. § 666(a)(2), the Court rejects that argument as not supported by the statutory text.

        3.    <u>The Constitutional Concerns Raised by *McDonnell* Are Not Implicated by § 666</u>.

Although the Court will not import the "official act" requirement from a different statute into 18 U.S.C. § 666(a)(2), that is not the end of the inquiry. The Court must consider whether the constitutional concerns raised in *McDonnell* are equally implicated by a broad construction of Section 666(a)(2) and thus mandate a similar or some other narrow or limiting construction of

Section 666. The Court, however, concludes that those constitutional concerns, which uniquely arose out of the Government's boundless interpretation of "official act," are not implicated by Section 666.

As discussed, the Government's expansive interpretation of § 201 in *McDonnell* (which was inconsistent with the statutory text) would have potentially criminalized nearly anything a political official does, including agreeing to accept anything of value in exchange for merely setting up a meeting, contacting another official, or hosting an event on any subject. Although Section 666(a)(2) (like Section 201) contains certain expansive language that *can* be interpreted rather broadly, Congress also imposed certain unique restrictions that apply exclusively to federal programs bribery under 18 U.S.C. § 666(a)(2) that limit its reach and act to constrain the unfettered discretion of federal prosecutors.  Specifically, in order for a defendant to be found guilty of violating 18 U.S.C. § 666(a)(2), the Government must establish the following elements beyond a reasonable doubt: (1) the defendant "corruptly" gave, offered, or agreed to give anything of value to another person, (2) "with intent to influence . . . an agent of an organization or of a State, local, or Indian tribal government, or any agency thereof," (3) "in connection with any business, transaction, or series of transactions of such organization, government, or agency," (4) "involving anything of value of $5,000 or more," and (5) the organization, government, or agency received, in any one year period, benefits in excess of $10,000 under a federal program. *See* 18 U.S.C. § 666(a)(2), (b).

Although the "limiting effect of these requirements may appear minimal," *see Ng Lap Seng*, 934 F.3d at 138, bribery under 18 U.S.C. § 201 as interpreted by the Government in *McDonnell* had virtually *no* limitations.  Indeed, if the Government's interpretation of "official act" in *McDonnell* had been adopted, bribery under 18 U.S.C. § 201 (as imported into honest services fraud) would have reached more expansively than 18 U.S.C. § 666.  For example, the Government's legal interpretation in *McDonnell* was not confined by the value of the "official act," nor was it confined by the amount of money that a state or local government received.  *Cf. McDonnell*, 136 S.Ct. at 2372 (suggesting that certain limitations on the Government's expansive interpretation may have mitigated its constitutional concerns, stating "[b]ut the Government's legal interpretation is not confined to cases involving extravagant gifts or large sums of money.").  The Government's legal interpretation also did not require a "connection with any business, transaction or series of transactions" of the organization, government, or agency.  Indeed, the Court does not interpret the language "in connection with any business, transaction, or series of transactions of such organization, government, or agency" in Section 666 as broadly as the Government interpreted "official act" in *McDonnell,* and certainly does not interpret it as encompassing the mere arrangement of a meeting, without something more.  *Cf. United States v. Donagher*, 520 F. Supp. 3d 1034, 1053 (N.D. Ill. 2021) ("Rather than criminalizing the giving of a bribe for 'nearly anything a public official does -- from arranging a meeting to inviting a guest to an event' . . ., the language of § 666(a)(2) is significantly more circumscribed, limiting its reach to bribes or rewards related to any '*business, transaction, or series of transactions*' of the public official's government unit 'involving anything of value $5,000 or more.'").  The Court concludes that the unique limitations in the Section 666 statute alleviate all three of the constitutional concerns raised by the Government's standardless interpretation of "official act" in *McDonnell*.

In addition, the Court concludes that the federalism concerns raised in *McDonnell* are simply not implicated by Section 666(a)(2) because Congress expressly stated its intent to

regulate the conduct of state and local officials who receive federal funding. As the Second Circuit recently explained in *United States v. Ng Lap Seng*, 934 F.3d 110 (2019):

> At issue in *McDonnell* was the general federal bribery statute, 18 U.S.C. § 201, a broad construction of which, when applied to State officials, risked trenching on the States' "prerogative to regulate the permissible scope of interactions between state officials and their constituents." The Supreme Court did not hold that Congress necessarily lacked the power to legislate in the area. It held only that Congress had not expressly done so in § 201, a statute that, by its terms, applies to federal officials, but whose definition of bribery was borrowed by the parties in *McDonnell* to delineate the charged honest services fraud by a state Governor. It is in that context that the Supreme Court declined to construe § 201 bribery in a way that disrupted the federalism balance, particularly because "a more limited interpretation of 'official act' is supported by both text and precedent."

*Id.* at 137 (internal citations omitted). Section 666, however "presents different text in a different context." *Id.* Importantly, "in § 666, Congress expressly states its intent to reach bribery within State and local governments insofar as they receive federal funding. Thus, to this extent, it was expressly recalibrating the federalism balance." *Id.* And, as the Supreme Court has held, "Congress was within its prerogative [in Section 666] to protect [federal] spending objects from the menace of local administrators on the take." *Sabri v. United States*, 541 U.S. 600, 608 (2004). Accordingly, the Court adopts the Second Circuit's reasoning in *Seng* and concludes that Section 666(a)(2), even broadly construed, does not raise the same federalism concerns that underpinned the Supreme Court's reasoning in *McDonnell*. *Ng Lap Seng*, 934 F.3d at 137-38 (concluding that *McDonnell's* constitutional concern related to federalism does not arise in the context of Section 666); *see also United States v. Donagher*, 520 F. Supp. 3d 1034, 1054 (N.D. Ill. 2021) (relying on the Second Circuit's decision in *Ng Lap Seng* to reject the defendants' constitutional challenge to § 666(a)(2) based on the principle of federalism).

Finally, with respect to Defendants 940 Hill and Lee's vagueness arguments, the Court is "mindful that courts have uniformly rejected vagueness challenges [ ] to § 666," *see Ng Lap Seng*, 934 F.3d at 135, both before and after *McDonnell*. *See e.g.*, *Ng Lap Seng*, 934 F.3d at 135-136 (concluding that § 666 was not vague as applied after *McDonnell*); *United States v. Donagher*, 520 F. Supp. 3d 1034, 1054 (N.D. Ill. 2021) ("Closer reading confirms that *McDonnell* does not suggest a vagueness problem in § 666(a)(2)."); *United States v. Lindberg*, 476 F. Supp. 3d 240, 261 (W.D.N.C. 2020) ("A person of ordinary intelligence is able to understand precisely what types of *quid pro quos* are prohibited by this statute."); *United States v. Hardin*, 874 F.3d 672, 677 (10th Cir. 2017) ("We are [ ] unpersuaded by Defendant's related argument that § 666, as applied to him in this case is impermissibly vague."); Indeed, as the district court for the Northern District of Illinois stated in *United States v. Donagher*, 520 F. Supp. 3d 1034, 1054 (N.D. Ill. 2021):

> Every circuit court to have addressed this issue has held that § 666 is not void for vagueness. While Defendants attempt to downplay these cases on the ground that some of them predate *McDonnell*, that argument falls flat. Far from breaking new ground in this area, *McDonnell* applied long-standing concepts. And numerous courts have rejected challenges to § 666 after *McDonnell*.

*Id.* at 1054 (internal citations omitted).

Likewise, the Court concludes that there is no reason in this case to hold that the statute is unconstitutionally vague as applied to 940 Hill and Lee's conduct alleged in the FSI. To satisfy due process, "a penal statute must define the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 561 U.S. 358, 402–03 (2010) (quotations, citations, and alterations omitted). The Court concludes that the language of § 666(a)(2) (cited *supra*) is more than adequate to alert a reasonable person to the illegality of Defendants 940 Hill and Lee's alleged conduct and to avoid arbitrary enforcement of § 666(a)(2) against them. In Count Twenty Five, the FSI alleges that Defendants Lee and 940 Hill corruptly "gave, offered, and agreed to give Huizar, George Esparza, and Justin Kim $500,000 in cash, intending to influence and reward Huizar and Esparza in connection with the 940 Hill Project, including in: (1) pressuring Labor Organization A to dismiss its appeal against the 940 Hill Project and (2) voting to deny Labor Organization A's appeal against the 940 Hill Project in the PLUM Committee." Such conduct (including the payment of $500,000 in exchange for Huizar and Esparza pressuring Labor Organization A to dismiss its appeal in the PLUM Committee, of which Huizar was the Chair) falls *squarely* within the statutory language of 666(a).

In summary, in absence of any persuasive reason, the Court declines to expand the scope of *McDonnell* beyond the specific circumstances and bribery statute at issue in that case (§ 201), and certainly not to a bribery statute with entirely different elements (§ 666). *See, e.g., United States v. Ferriero,* 866 F.3d 107, 128 (3rd Cir. 2017) ("Although the statutes in *McDonnell* and here both involve bribery, we see no reason for transplanting the conclusions in *McDonnell* that stem solely from the Court's application of general statutory-construction principles to the particular statute at issue in that case."); *United States v. Percoco,* 2017 WL 6314146, at *4 (S.D.N.Y. Dec. 11, 2017) ("While the *McDonnell* opinion touches on constitutional concerns as to the outer bounds of what might qualify as an "official act," it in no way states or implies that all federal bribery statutes that implicate the conduct of government officials are required to have such an element to be constitutional.").

For the foregoing reasons and because the language used in Count Twenty-Five ("pressuring Labor Organization A to dismiss its appeal against the 940 Hill Project") is neither irrelevant nor prejudicial, Defendants 940 Hill and Lee's Motion to Strike Language from Count 25 is **DENIED**.

### IV.   CONCLUSION

For the foregoing reasons, Defendant 940 Hill and Lee's Motion to Strike Language from Count 5 and Motion to Strike Language from Count 25 are **DENIED**.

IT IS SO ORDERED.