CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CAREL ALÉ (Bar No. 283717)
Email: Carel_Ale@fd.org
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
ADAM OLIN (Bar No. 298380)
Email: Adam_Olin@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for José Luis Huizar

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSÉ LUIS HUIZAR, *et al.*, <br><br> Defendants. | Case No. 20-CR-326-JFW-1 <br><br> **JOSE LUIS HUIZAR'S REPLY ISO MOTION TO SUPPRESS INFORMATION OBTAINED PURSUANT TO PROFFER AGREEMENT (ECF No. 312); DECLARATION; EXHIBITS** <br><br> Hearing Date: January 31, 2022 <br> Hearing Time: 8:00 a.m. |

**Table of Contents**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 1

    A.    The Proffer Agreement was Ambiguous and the Government Ignores its Post-Notice Statements and Conduct Evidencing that Ambiguity .................................................................................................. 1

        1.    No Clause Limits the Government's Ability to Waive A Breach, Allow for a Cure, or Seek Continued Performance ............. 3

        2.    The Government's Statements and Conduct Post-Notice Evidence the Ambiguity in the Proffer Agreement ........................... 4

    B.    Even if the Government Did Not Waive the Breach or Accept a Cure, it is Estopped from Offering Documents and Statements in its Case in Chief ............................................................................... 8

III. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Dep't of Homeland Sec'y v. Regents of Univ. of Cal.*,
   591 U.S.___ (2020) ..................................................................................10

*Harris v. New York*,
   401 U.S. 222 (1971) ....................................................................................6

*Pauly v. U.S. Dept. of Agri.*,
   348 F.3d 1143 (9th Cir. 2003) ....................................................................8

*St Regist Paper Co. v. United States*,
   368 U.S. 208 (1961) ..................................................................................10

*United States v. Chiu*,
   109 F.3d 624 (9th Cir. 1997) ......................................................................6

*United States v. Farmer*,
   543 F.3d 363 (7th Cir. 2008) ......................................................................7

*United States v. Gamboa-Cardenas*,
   508 F.3d 491 (9th Cir. 2007) ..................................................................8, 9

*United States v. Hallahan*,
   756 F.3d 962 (7th Cir. 2014) ......................................................................3

*United States v. Miller*,
   151 F.3d 957 (9th Cir. 1998) ......................................................................6

*United States v. Plascencia–Orozco*,
   852 F.3d 910 (9th Cir. 2017) ......................................................................6

*United States v. Under Seal*,
   902 F.3d 412 ...............................................................................................3

*Watkins v. U.S. Army*,
   875 F.2d 699 (9th Cir. 1989) ..................................................................8, 9

**Other Authorities**

23 Williston on Contracts § 63:8 (4th ed.) ......................................................3

23 Williston on Contracts § 63:9 (4th ed.) ......................................................3

**TABLE OF EXHIBITS**

| Exhibit | Description | Page(s) and Line(s) |
|---|---|---|
| 1 | Extract of March 17, 2020 Search and Seizure Warrant for Huizar's Phone | 2, n.2:21-22. |
| 2 | Extract of 302 Report of Execution of March 17, 2020 Search and Seizure Warrant | 2, n.2:22-24. |
| 3 | March 30, 2020 Email Correspondence between Vicki I. Podberesky and the government | 2, n.2:24-26. |
| 4 | Extract of 302 Report of the government's January 5, 2021 interview of Jesse Leon | 5, n.6:27-28. |

## REPLY IN SUPPORT OF MOTION TO SUPPRESS

### I. INTRODUCTION

A contracting party's ability to waive a breach is black letter contract law. When the government gave notice that it believed defendant Jose Huizar ("Huizar") breached the Proffer Agreement, the government had the choice to elect its remedy. It is *unrebutted* that the government chose to allow Huizar to clarify any perceived misstatements and continue performing pursuant to the Proffer Agreement. For months after the notice of breach, the government requested and obtained "attorney proffers" from Huizar's counsel and continued cooperation from Huizar. Contract law principles are clear here: where a contracting party waives a breach and continues to request the benefit of the contract, the parties are held to the terms of the agreement.

The government gives *no reason* why it continued to request and accept performance pursuant to a Proffer Agreement it now claims was no longer valid at the time of its requests. The government attempts to divert attention from its own statements and conduct and how those statements and conduct evidence the ambiguity in the Proffer Agreement. It was because of the government's statements and conduct that Huizar continued to perform and waive his constitutional rights. This Court should hold the government to its promise and to its obligation to engage with criminal defendants with the most meticulous standards of both promise and performance.

### II. ARGUMENT[1]

**A. The Proffer Agreement was Ambiguous and the Government Ignores its Post-Notice Statements and Conduct Evidencing that Ambiguity**

The government does not meaningfully address Huizar's ambiguity argument and sidesteps Huizar's claim that if there was an alleged breach, the government waived the

---

[1] Huizar's motion seeks to prevent the government from using information in its case-in-chief obtained pursuant to the Proffer Agreement which includes documents produced by counsel pursuant to the Proffer Agreement and statements made by Huizar and counsel other than in the manner expressly allowed by the Proffer Agreement.

1

breach and Huizar cured it to the express satisfaction of the government.[2] The government cannot justify its conduct and statements post-notice and it ignores that its conduct and statements evidence the ambiguity inherent in the Proffer Agreement. The government fails to cite a single case where a court has endorsed the government's request for continued cooperation and waiver of constitutional rights as it did in this case. Instead, the government ignores those basic contract principles which are not beneficial to its cause and diverts attention to arguments that it deems easier to refute but were not raised by Huizar. The government should be prohibited from using in its case-in-chief information, including Huizar's statements or documents, obtained pursuant to the Proffer Agreement.[3]

The government's opposition fails to address the well-understood contract law principle that a contracting party can elect its remedy, either terminating the agreement, waiving the breach, or allowing a cure and continued performance. *See United States v. Hallahan*, 756 F.3d 962, 973 (7th Cir. 2014) (citing 23 Williston on Contracts § 63:8 (4th

---

Although the government states that Huizar "continues to enjoy the benefits of the Proffer Agreement," (Opp'n at 18), the government has listed documents produced pursuant to the Proffer Agreement on its preliminary exhibit list. Those documents are also at issue in another defense motion. (*See* ECF No. 275.)

[2] The government agrees that contract principles apply to the interpretation of the Proffer Agreement. (*See* Opp'n at 7-8 (attempting to "[a]pply[] contract principles to interpret[ing] the Proffer Agreement").)

[3] While Huizar is not seeking to suppress the contents of his phone, the government is wrong that Huizar's cooperation did not assist the government in its possession and investigation of the phone. The government obtained a warrant to confiscate Huizar's phone on March 17, 2020. (Ex. 1 (Search and Seizure Warrant for Huizar's phone).) On March 30, 2020, the FBI went to Huizar's home to execute the warrant and took possession of Huizar's phone. (Ex. 2 (302 Report of the Search and Seizure pursuant to the Mar. 17, 2020 Warrant).)

That same day, Huizar and his counsel, in the spirit of the parties' continuing cooperation pursuant to the Proffer Agreement, advised the government that the phone it took was likely not the phone it was interested in but a different phone. (Ex. 3 (March 30, 2020 Email from AUSA Jenkins) ("Thank you again to your client and you for identifying this issue and promptly raising it with us.").)

The government sought the *second* March 31, 2020 warrant the government attaches to its opposition, (Opp'n, Ex. 2), for the other phone only after Huizar and his counsel alerted the government of its error. (*Id.*) Given that the government has not been able to gain access to Huizar's phone in the nearly two years it's been in its possession, it may have been years before the government realized its error but-for Huizar's then ongoing cooperation.

2

ed.)); § 63:9. Waiver of or estoppel to assert breach, 23 Williston on Contracts § 63:9 (4th ed.) ("[T]he general rule is that a contracting party who, with knowledge of a breach by the other party, receives and accepts payment or other performance of the contract will be held to have waived the breach."); *United States v. Under Seal*, 902 F.3d 412, 418–19 ("the government, as with any other injured party, had the right to waive that breach"). The government fails to point to any clause in the Proffer Agreement that unambiguously prohibited the government's waiver or request for continued performance and cure. Instead, the evidence is clear and unrebutted that the government continued to seek and accept performance pursuant to the Proffer Agreement.[4]

    1.    <u>No Clause Limits the Government's Ability to Waive a Breach, Allow for a Cure, or Seek Continued Performance</u>

Ignoring its prior statements and conduct, the government points to several clauses in the Proffer Agreement it claims unambiguously prevent the government from waiving a breach, allowing for a cure, or seeking continued performance. None do.

The government first points to the supposed clarity of ¶6 of the Proffer Agreement. (Opp'n at 11:20-23.) The part of ¶6 the government relies on, which states that the government can use all of an individual's statements for any purpose if he lies, simply says nothing about whether the government can waive a breach, allow for a cure, or seek continued performance as it did here. The government offers no analysis or reason as to why that paragraph unambiguously limits the government's ability to waive a breach or lie, allow for a cure, or demand continued performance.

Similarly, the government argues that ¶1(e) is unambiguous but its argument again misses the mark. Paragraph 1(e), states that there are no "protections" not otherwise included in the Proffer Agreement. The government's ability to waive a breach or allow

---

[4] The government curiously and without citation asserts that it is "undisputed that defendant never 'cured' or 'remedied' his false statements . . . ." (Opp'n at 9:1-3.) But that was squarely at issue in the Motion, (Mot. at 11:14-15 ("The Alleged Breach was Cured . . . .")), and prior counsel's declaration remains unrebutted on that fact, (Mot., Podberesky Decl. ¶14.)

3

a cure is not a "protection" afforded to a defendant or witness nor does the government explain how it contorts the term to reach that conclusion. (*See generally id.* at 13.)

Finally, the government simply states that no explicit clause allowed for the government to waive the breach or allowed for cure. (*Id.* at 13:2-4.) But the lack of a clause does not preclude the generally understood ability of contracting parties to waive or cure breaches. Interestingly, the government points to "standard language in plea agreements in this District" that lays out a method for when a breach can be cured. (*Id.* at 14, n.3.) While this is generally irrelevant to explain what the parties in this case contracted for amongst themselves, it does highlight that when the government seeks to limit a party's ability to cure, it is explicit. It made no such limitations here.[5]

    2.    <u>The Government's Statements and Conduct Post-Notice Evidence the Ambiguity in the Proffer Agreement</u>

The government's arguments that the terms of the Proffer Agreement unambiguously preclude the government's waiver or a cure ring particularly hollow when viewed alongside the government's statement to prior counsel and the government's statements and conduct requesting further information and performance.

After the government noticed the breach, it accepted Huizar's clarification and requested additional performance from Huizar about his and others' conduct, multiple times, while dangling a continued pre-indictment resolution. (*See* Mot., Ex. B (March 19, 2020 email stating "As we have maintained, we remain very interested in hearing . . . whether we can expect an attorney proffer regarding the four additional names" and discussing "resolv[ing] his case pre-indictment").) For example,

- It is *unrebutted* that when the government gave notice of the alleged breach in December 2019, prior counsel asked and the government agreed to

---

[5] The government's arguments evince a belief that there remained an option where the government could notice the breach, continue to exact performance, and yet obtain the full remedy of the breach. No such contractual remedy exists.

4

provide Huizar an opportunity to clarify any perceived misstatements. (Mot., Podberesky Decl. ¶ 8.)[6]

- It is *unrebutted* that in January 2020, after the government noticed the alleged breach, AUSA Jenkins sought an "attorney proffer" on other individuals. (Mot., Podberesky Decl., Ex. B (AUSA Jenkins inquiring whether the government "can expect an attorney proffer regarding the four additional names").)

- It is *unrebutted* that on March 20, 2020 after a telephonic attorney proffer, AUSA Jenkins told prior defense counsel that the government was "much more convinced," "would call that significant progress," and told prior defense counsel to "continue" to be "encouraged." (Mot., Podberesky Decl. ¶14.)

- It is *unrebutted* that on March 24, 2020 prior counsel made another attorney proffer. (*Id.* at ¶15.) Following that attorney proffer, AUSA Dragalin subsequently requested additional information and requested that Huizar review text messages on his phone (presumably messages in the same phone the government states it has been unable to access). (*Id.* at ¶16, Ex. C (March 24, 2020 email from AUSA Dragalin requesting additional information about other schemes).)

- And it is *unrebutted* that on May 15, 2020, AUSA Jenkins emailed prior counsel acknowledging the "productive attorney proffers" Huizar's counsel provided after the noticed breach and requesting additional information. (Mot., Podberesky Decl., Ex. D.)

The government completely ignores these statements and conduct. It offers no explanation as to why it continued to request Huizar's performance and, consequently

---

[6] That the government allowed clarifications of past statements is unsurprising. In fact, that is a practice this prosecution team employed with other witnesses in this case. (*See, e.g.*, Ex. 4 (302 Report of Jesse Leon), at Casino_2007449 (noting that "After reviewing FBI 302's LEON requested to amend information related to [previous] interviews" and that "All requested changes were discussed with the FBI and USAO office during the review and acknowledged by the government").)

5

Huizar's waiver of his constitutional rights, if it believed the Proffer Agreement was no longer binding on the parties. (*See generally* Opp'n) Under the government's version of events, Huizar and his counsel willingly provided additional information and knowingly continued waiving Huizar's constitutional rights for no reason, knowing the government deemed the Proffer Agreement had been terminated and offered Huizar no protections or benefit. That version of events is false and contradicted by prior counsel's unrebutted declaration. (Mot., Podberesky Decl. ¶8.)

The government instead rebuts arguments not raised by Huizar. (*See, e.g.*, Opp'n at 9:5-23 (protesting that Huizar is attempting to "avoid prosecution" for the §1001 through the Motion); *id.* at 9-10 (arguing that information obtained pursuant to the Proffer Agreement can be used in cross-examination or in rebuttal.) The question of whether proffer information can be used in rebuttal or cross-examination is distinct from whether the government is bound to the terms of the Proffer Agreement granting Huizar direct-use immunity after the government waived the breach, acknowledged the cure, and continued to request performance pursuant to the Proffer Agreement. The government's cited cases, (Opp'n at 10:5-11:14), principally pertaining to the use of proffer information for rebuttal purposes, simply have no application to Huizar's arguments. *See United States v. Chiu*, 109 F.3d 624 (9th Cir. 1997) (government did not breach agreement by using proffer information to prepare witness for trial against defendant), *United States v. Miller*, 151 F.3d 957 (9th Cir. 1998) (government did not breach agreement by using proffer information to rebut defense Safety Valve argument), *Harris v. New York*, 401 U.S. 222 (1971) (information obtained in violation of defendant's right to remain silent could be used for impeachment purposes).

As with any contract, any ambiguities are interpreted against the government, the drafting party. *See United States v. Plascencia–Orozco*, 852 F.3d 910, 919 (9th Cir. 2017). Here, the Proffer Agreement had no clause unambiguously prohibiting the government's waiver or a breaching party's ability to cure. The government provides no evidence as to why it continued to exact performance if it believed then that Huizar's

6

alleged breach terminated the Proffer Agreement. It is clear—from the parties continued communications and the government's specific request for "proffers"—that the government requested further performance under the Proffer Agreement after it noticed the breach precisely because the Proffer Agreement was still operative. At a minimum, if the government believed the parties were no longer bound by the Proffer Agreement after the alleged breach, the government's duty of good faith and fair dealing obligated the government to stop requesting further performance.[7]

\* \* \*

The Proffer Agreement was ambiguous, the government waived any alleged breach, allowed Huizar to cure it, and requested Huizar's continued performance. There is no clause unambiguously prohibiting the government from waiving a breach or allowing a party to cure, and requesting continued performance as it did in this case. The government's conduct and statement are evidence of that ambiguity in the Proffer Agreement.

Ultimately, "proffer agreements that are a part of ongoing criminal proceedings are 'unique contracts and the ordinary contract principles are supplemented with a concern that the bargaining process not violate the defendant's rights to fundamental fairness under the Due Process Clause.'" *United States v. Farmer*, 543 F.3d 363, 374 (7th Cir. 2008). The government's statements and conduct in this case violated that fundamental fairness owed to ever defendant. The government should be prohibited from using information obtained pursuant to the Proffer Agreement in its case in chief.

---

[7] The government did not address Huizar's argument that the government violated its duty of good faith and fair dealing by requesting Huizar continue performing under the Proffer Agreement. (Mot. at 16-18.)

7

**B.     Even if the Government Did Not Waive the Breach or Accept a Cure, it is Estopped from Offering Documents and Statements in its Case in Chief**

Even if the government had not waived the breach and requested continued performance from Huizar, the government should be estopped from abandoning its promise to continue performing pursuant to the Proffer Agreement.[8]

When the government told Huizar's counsel that Huizar could clarify any perceived misstatements and continued requesting performance, the government was promising to continue the parties' cooperation pursuant to the terms of the Proffer Agreement. (*See* Mot., Podberesky Decl. ¶8.) It is a promise that the government affirmed when it told prior counsel after an additional attorney proffer that the information constituted "*significant progress*" and requested still more attorney proffers. (*Id.* ¶14 (emphasis added).)

The government takes issue with Huizar's contention that it engaged in affirmative misconduct. (*See* Opp'n at 17:12-14.) But the conduct necessary to meet this standard for purposes of equitable estoppel against the government—as evidence in *Gamboa-Cardenas* and *Watkins v. U.S. Army*, 875 F.2d 699 (9th Cir. 1989)—need not take the form of bad faith action on behalf of the government as the government appears to confuse. In other words, the weight of the test is on the intentionality of the conduct and the seriousness of the resulting harm, even in the civil context. That is particularly so in the criminal context, where even something as simple as a change in position can constitute affirmative misconduct.

For example, in *Gamboa-Cardenas*, it was the prosecution's affirmative change in its position as to the defendant's Safety Valve eligibility after the defendant relied on the government's original representation that the Ninth Circuit found to amount to

---

[8] In the operative motion Huizar posited that equitable estoppel against the government requires a showing of two additional factors as contemplated by *United States v. Gamboa-Cardenas*, 508 F.3d 491, 502 (9th Cir. 2007) (citing *Pauly v. U.S. Dept. of Agri.*, 348 F.3d 1143, 1149 (9th Cir. 2003)). (*See* Mot. at 10.) While the Ninth Circuit did not explain its inclusion of these factors in a criminal case, there are good reasons to reconsider these additional factors in the context of a criminal case, where a litigant's constitutional rights are distinct from those arising in civil cases against the government such as *Pauly*. In any case, the facts of this case meet those additional factors.

8

affirmative misconduct. 508 F.3d at 502 ("find[ing] that the government's abrupt change of position regarding safety valve relief . . . goes beyond 'mere negligence'"). Similarly, in *Watkins* (a civil case), the Ninth Circuit found misconduct where the government's "conduct went far beyond a mere failure to inform or assist," but where it "plainly acted affirmatively in admitting, reclassifying, reenlisting, retaining, and promoting" the plaintiff. 875 F.2d at 708. In these cases, it was not bad-faith misconduct that was necessary to obtain promissory estoppel but intentional conduct by the government (beyond mere negligence) that the defendant or person detrimentally relied on. In the criminal context, it was affirmative conduct which caused reliance and implicated a defendant's Due Process rights which was sufficient to meet this standard. That makes sense given that in the criminal context the government is held to the highest standards of fairness and good faith.

        The government engaged in exactly the sort of affirmative conduct causing detrimental reliance here. It is unrebutted that the government represented to Huizar that he could rectify any perceived misstatements and that the parties would continue performing pursuant to the terms of the Proffer Agreement. (Mot., Podberesky Decl. at ¶8.) The government certainly never told Huizar or his counsel otherwise. (*See id.; see generally* Opp'n) Huizar relied on the government's representation to waive his constitutional rights and continue cooperating with the government to his detriment. *See Gamboa-Cardenas*, 508 F.3d at 504 (explaining that defendant detrimentally relied on government's statement of his eligibility for Safety Valve relief when he waived his right to testify at trial). Huizar relied on the government's statement when he continued to help the government in its investigation, providing *more* information about events and individuals in the case, and alerting the government that it had confiscated *the wrong phone*. *See supra* n.4.[9]

---

[9] The government does not address the second factor unique when seeking equitable estoppel against the government, that related to the public interest. (*See*

9

As a general principle, "the government must turn square corners when dealing with people," *Dep't of Homeland Sec'y v. Regents of Univ. of Cal.*, 591 U.S.\_\_\_,17 (2020) (citing *St Regist Paper Co. v. United States*, 368 U.S. 208, 299 (1961) (Black, J., dissenting)), and nowhere is that more true than in the criminal context where liberty interests are at stake. Under any fair reading, the government's statements would reasonably have been expected to cause Huizar to rely on those statements to his detriment. And the record is clear that he did. The government's conduct in this case did not comport with standards of utmost fairness required of prosecutors or, most urgently, the fairness required by the Due Process Clause. The government should be estopped from using any statements or documents obtained pursuant to the Proffer Agreement as direct evidence against Huizar.

### III. CONCLUSION

For the foregoing reasons, Huizar respectfully requests that the Court suppress or prohibit the government from using against Huizar any statements or documents obtained pursuant to the Proffer Agreement.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: January 15, 2022        By     */s/ Carel Alé*
Carel Alé
Charles J. Snyder
Adam Olin
Deputy Federal Public Defenders
Attorneys for José Huizar

---

*generally* Opp'n at 17-18.) For the reasons previously stated, it is in the public interest for residents of the Central District of California and criminal defendants who are prosecuted in it to have confidence that the government will engage with defendants fairly and in good faith and not take advantage of a defendant's perilous position or lack of leverage to lure defendants into waiving their constitutional rights to their detriment. (Mot. at 21.)