1   CUAUHTEMOC ORTEGA (Bar No. 257443)
    Federal Public Defender
2   CAREL ALE (Bar No. 283717)
    Email: Carel_Ale@fd.org
3   CHARLES J. SNYDER (Bar No. 287246)
    Email: Charles_Snyder@fd.org
4   ADAM OLIN (Bar No. 298380)
    Email: Adam_Olin@fd.org
5   Deputy Federal Public Defenders
    321 East 2nd Street
6   Los Angeles, California 90012-4202
    Telephone: (213) 894-2854
7   Facsimile: (213) 894-0081

8   Attorneys for Jose Huizar

9   [And on Behalf of Defendants Ray Chan
    and Shen Zhen New World I, LLC]

10

11

12

13

14                    **UNITED STATES DISTRICT COURT**

15                   **CENTRAL DISTRICT OF CALIFORNIA**

16                          **WESTERN DIVISION**

17

18   UNITED STATES OF AMERICA,              Case No. CR-20-326-JFW

19              Plaintiff,

             v.                             **REPLY ISO MOTION TO DISMISS**
20                                          **COUNTS 22 AND 23**

21   JOSE LUIS HUIZAR,                      Date:  February 28, 2022
     RAYMOND SHE WAH CHAN                   Time:  8:00 a.m.
22   SHEN ZHEN NEW WORLD I, LLC,            Ctrm:  7A – Hon. John F. Walter

23              Defendants.

24

25

26

27

28

**REPLY**

**1.** In opposing Huizar's duplicity motion, the government argued that Counts 22 and 23 each charged a *single* stream-of-benefits bribe directed at obtaining assistance with the L.A. Grand Hotel on an as-needed basis.  The Court accepted that claim and rejected Huizar's duplicity challenge, concluding that each count alleged only a single offense.  Now, apparently realizing the implications that position when paired together with *Yashar*, the government contends that Huizar "ignores what the Court recognized in its ruling" – that Counts 22 and 23 "in fact charge[] a stream of benefits in exchange for a stream of official acts, *not a single bribe*."  Opp'n at 7:17-19 (emph. added).

This head-spinning reversal bears no relationship to what the Court actually held, let alone the government's position last month.  Indeed, mirroring the government's earlier arguments, the Court's duplicity holding and reasoning could not have been clearer:

> [T]he First Superseding Indictment can be read to charge *only one violation in each count*.  For example, the counts can be read to allege that *the stream of benefits* from October 28, 2015, to December of 2018 including casino gambling chips, accommodations, travel expenses, and the $575,000 used as collateral to secure Mr. Huizar's personal loan from Bank 1 *were cumulatively offered with the intent to influence Mr. Huizar in connection with the L.A. Grand Hotel project as opportunities arose.*

Docket No. 346, 1/7/22 at 46:5-14 (emph. added).

That holding was one of the two key propositions established by the Court's prior ruling: *first*, that Counts 22 and 23 are not duplicitous because each charges *one* stream-of-benefits bribe directed at obtaining assistance on the L.A. Grand Hotel project on an as-needed basis; and *second* that § 666 is not a continuing offense for limitations purposes.  From those propositions, a *third* also springs as a matter of law: the unitary bribes charged in Counts 22 and 23 are time-barred if all of their elements existed more than five years before the Indictment was returned, regardless of what happened after.  *United States v. Yashar*, 166 F.3d 873, 879-80 (7th Cir. 1999).

Accepting these propositions, this motion poses a straightforward, previously-unaddressed question: did all of the elements of the *unitary* bribes alleged in Counts 22

1

1  and 23 – which the Court described as a "stream of benefits . . . including casino

2  gambling chips, accommodations, travel expenses, and the $575,000 used as collateral

3  to secure Mr. Huizar's loan . . . cumulatively offered with the intent to influence Mr.

4  Huizar in connection with the L.A. Grand Hotel project as opportunities arose" – exist

5  more than five years before the Indictment was returned?

6          Any fair reading of the FSI reveals the answer to that question to be "yes."  Not

7  only is there no principled basis for shaving off a single, cumulative stream-of-benefits

8  bribe starting in October 2015 from the allegedly identical and identically-motivated

9  conduct that came before, but both counts explicitly refer to the 2014 loan.  So if, as the

10  government previously argued and the Court previously held, the alleged stream-of-

11  benefits bribe involving the L.A. Grand Hotel is all part of a single § 666 offense, every

12  element of that offense existed as far back as February 2013, and certainly no later than

13  2014 when Huizar allegedly accepted collateral intending to be influenced in

14  connection with the project.  Under well-established statute of limitations principles for

15  non-continuing offenses, the entire offense is therefore untimely as a matter of law.

16  *Yashar*, 166 F.3d at 879-80; *United States v. Drebin*, 557 F.2d 1316, 1333 (9th Cir.

17  1977).

18          **2.** The government labels this result "absurd," but it flows inexorably from the

19  Court's prior ruling.  Tacitly recognizing that (but never openly acknowledging it), the

20  Opposition focuses primarily on countermanding the Court's duplicity holding, arguing

21  throughout as though the alleged stream-of-benefits bribe involving the L.A. Grand

22  Hotel is not a single offense.[1]

23

24          [1] The government's reversal on the duplicity issue is more than a little ironic
25  given its false claim that Huizar is seeking reconsideration.  While Huizar previously
   argued that certain *portions* of Counts 22 and 23 should be time-barred under a
26  transaction-specific unit of prosecution, he never argued that the entire counts should
   be dismissed – because he disputed the premise that multiple qualifying transactions
27  could be aggregated into a single § 666 bribery count.  It was only when the Court
   adopted the government's duplicity point and Huizar's statute-of-limitations point that
28  the focused basis for this motion came into existence.  That the Court might have said

1          **a.** For example, the government cites *United States v. Keen*, 676 F.3d 981 (11th

2     Cir. 2012), and *United States v. Askia*, 893 F.3d 1110 (8th Cir. 2018), but both are

3     distinguishable on this critical point.

4          In *Keen*, the government alleged that the defendant engaged in separate

5     violations of § 666 in March 2003 and again in October 2003.  *Keen*, 676 F.3d at 992.

6     While both offenses were grouped under a single Count, the duplicity issue was never

7     litigated, and the government never successfully argued that both offenses were part of

8     a single stream-of-benefits bribe.  At trial, the government then made clear that it was

9     pursuing each separate transaction "as an individual count." *Id.*  The *Keen* Court held

10    that there was nothing unfair about allowing the government to pursue the October

11    2003 offense separately from the March 2003 offense because the defendant did not

12    demonstrate any "inconsistency" in the government's position.  *Id.*  The court also held

13    that pursuing the October 2003 offense was proper because it involved the

14    "independent commission of a second § 666 offense." *Id.*

15         While never litigated in *Keen*, the opinion's logic makes clear that the Eleventh

16    Circuit was treating each qualifying transaction as a separate § 666 offense, rather than

17    as one cumulative bribe directed at the same object.  Huizar advanced exactly that

18    position at the duplicity stage, but it was rejected, with the Court adopting the

19    government's claim that the stream-of-benefits bribe involving the L.A. Grand Hotel

20    was all one cumulative offense.  Thus, unlike in *Keen*, there is no "first offense" and

21    "second offense" in this case.  To the contrary, if there was a single cumulative § 666

22    bribe aimed at obtaining Huizar's assistance with the L.A. Grand Hotel, that bribe

23    necessarily included all of the similar and similarly-motivated conduct, rendering the

24

25    ────────────────────

26    something in light of different arguments on a different record does not mean that it
      said something to decide an unraised issue. *Webster v. Fall*, 266 U.S. 507, 511 (1925)

27    ("Questions which merely lurk in the record, neither brought to the attention of the
      court nor ruled upon, are not to be considered as having been so decided[.]").  At

28    bottom, a reconsideration motion asks the Court to go back and revisit arguments and
      rulings previously made.  This motion asks the Court to go forward and carry the logic
      of its January 7 order to its rightful conclusion.

                                            3

1   one and only offense in this case untimely.  And unlike in *Keen*, holding otherwise

2   *would be* inconsistent with the government's successful position at the duplicity stage.

3          In *Askia*, the Eighth Circuit traced the same analytical path as *Keen*, but did so

4   even more explicitly.  There, the government alleged that the defendant engaged in

5   multiple acts that separately violated § 666's embezzlement provision both inside and

6   outside the statute of limitations.  893 F.3d at 1120.  When rejecting the defendant's

7   argument that the untimely charges barred the timely ones, the *Askia* Court first

8   expressed its view that § 666 offenses do not continue over time: "[o]nce the elements

9   are established – *i.e.,* an agent of an organization, which receives certain federal funds,

10  unlawfully takes at least $5,000 from the organization – the crime is complete."  *Id.* at

11  1119.  Based on that transaction-specific unit-of-prosecution analysis, the Court held:

12  "*[i]f, as we have decided, each § 666(a)(1)(A) violation is a separate criminal offense .*

13  *. .* we see no reason why those violations that occurred within the statute of limitations

14  cannot be prosecuted" because others occurred without.  *Id.* at 1120 (emph. added).

15         As in *Keen*, that is the exact opposite of what the government argued and the

16  Court held in this case, where it concluded that multiple qualifying transactions were

17  not *separate* criminal offenses, but were instead a *single* cumulative § 666 violation

18  aimed at securing assistance with the L.A. Grand Hotel.  Thus, the lynchpin premise in

19  both *Keen* and *Askia* – that each qualifying transaction was a separate § 666 offense, so

20  the untimeliness of some did not impact the timeliness of others – is the opposite of the

21  rule in this case.  Because this case is proceeding under the opposite rule, logical and

22  legal consistency produce the opposite result.

23         Indeed, that is effectively what the Seventh Circuit held in *Yashar*.  In *Yashar*, an

24  Indictment returned in August 1997 charged the defendant with violating § 666's

25  embezzlement provision by improperly receiving payments between September 1991

26  and September 1992.  166 F.3d at 875.  Both parties agreed that § 666 was not a

27  continuing offense for statute-of-limitations purposes, but the government argued that

28  the charged offense was "a continuing course of conduct that straddles the limitations

1  period." *Id.* at 876.  "Because [the defendant's] conduct [was] permissibly charged as

2  one offense and some conduct f[ell] within the limitations period, the government

3  assert[ed] that there [wa]s no limitations problem." *Id.*

4       The Seventh Circuit's rejected the government's position partly on a legal basis,

5  concluding that § 666 is not a continuing offense, so the time starts from the moment

6  the elements exist.  But the more salient point for present purposes is its application of

7  that legal basis to the facts.  As in this case, but unlike in *Keen* and *Askia*, the *Yashar*

8  Court assumed that the government could charge a single § 666 count in scheme-like

9  fashion stretching over a year-long period of time.  *Id.* at 880 ("The government has

10  charged a scheme that took place from September 1, 1991 until September 1, 1992").

11  Despite the factually continuing nature of the charge, however, the Seventh Circuit held

12  that, if all of the elements existed outside the limitations period, the count was untimely

13  even if the criminal conduct continued into the five-year window.  *Id.*  Based on that

14  conclusion, the Seventh Circuit remanded to the district court to determine whether all

15  of the elements of the *single* offense existed outside the limitations period, which would

16  have rendered the entire offense untimely even if the criminal conduct continued into

17  the allowable time.  When the case was returned to the trial court, the government

18  moved to dismiss the Indictment with prejudice.  *See United States v. Michael Yashar*;

19  CR-98-10-MIS, Docket No. 40 (N.D. Ill. March 8, 1999).

20       Conceptually, *Yashar* is the *only* case with the same premises as this one (1) a

21  single § 666 offense, explicitly prosecuted as such, comprised of a course of conduct

22  stretching over an extended period of time, and (2) a holding that § 666 is not a

23  continuing offense for limitations purposes.  In light of those premises, *Yashar* pointed

24  to the exact result Huizar that is now advancing: if all of the elements of the cumulative

25  offense existed outside the limitations period, the entire offense is untimely "regardless

26  of whether the defendant continues to engage in criminal conduct."  *Id.* at 879-80.

27       **b.** Taking a slightly different tack, the Opposition also asserts that the unitary

28  bribes alleged in Counts 22 and 23 represent a distinct and separately-chargeable subset

of a course of conduct involving Huang and Huizar that, according to the FSI, continued in an undifferentiated pattern from February 2013 to February 2018. For example, the Opposition argues that "[t]he earlier corrupt agreement from February 2013 to November 12, 2015 involved *different* things of value and certain official acts outside the § 666 limitations period." Opp'n at 9:13-16 (emph. in orig.)

Not only does this argument employ the transaction-specific unit of prosecution that the government successfully resisted at the duplicity stage (and is now estopped from asserting), it contradicts (1) Counts 22 and 23's explicit references to the 2014 loan, (2) the FSI's detailed allegations about the L.A. Grand Hotel bribe beginning in 2013, (3) the government's repeated representations that the official acts in Counts 22 and 23 are the same as the ones in Counts 1-17, *see* Docket No. 235-1, Snyder Decl. ISO Mot'n to Dismiss, Ex. 1, and (4) the Court's holding that the alleged stream of benefits flowing from Huang to Huizar was offered not with the intent to influence specific acts, but was "cumulatively offered with the intent to influence Mr. Huizar in connection with the L.A. Grand Hotel project as opportunities arose." Further, even setting blatant inconsistency aside, the Opposition makes no effort to present a fair and intellectually-sound basis for carving up an unbroken course of conduct with the same objective into a (1) February 2013-November 12, 2015 stream-of-benefits bribe directed at obtaining assistance on the L.A. Grand Hotel, and (2) a November 13, 2015-December 2018 stream-of-benefits bribe directed at obtaining assistance on the L.A. Grand Hotel. Nor could it, because it is a transparently-artificial attempt to end-run the statute of limitations.

**3.** It should go without saying that charging instruments and statutory crimes are not prosecutorial playthings, capable of being endlessly stretched or compressed like putty at each procedural stage to maximize government advantage. *Brown v. Ohio*, 432 U.S. 161, 169 (1977) (the Constitution does not offer "such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units"). The government previously argued and the

1    Court previously held that Counts 22 and 23 charge a unitary stream-of-benefits bribe

2    directed at obtaining assistance on the L.A. Grand Hotel project on an as-needed basis.

3    The FSI makes abundantly clear that that alleged bribe began well outside the

4    limitations period.  Under *Yashar* and well-established principles for non-continuing

5    offenses, Counts 22 and 23 are therefore untimely and must be dismissed.

6

7                                                         Respectfully submitted,

8                                                         CUAUHTEMOC ORTEGA
                                                          Federal Public Defender
9
        Dated: February 14, 2022               /s/ *Charles J. Snyder*
10                                             _____
                                                          Carel Alé
11                                                        Charles J. Snyder
                                                          Adam Olin
12                                                        Attorneys for Jose Huizar

13                                                        [And on Behalf of Defendants Ray Chan
                                                          and Shen Zhen New World I, LLC]

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          7