# Exhibit C





# United States Department of Justice

### United States Attorney's Office
### Central District of California

---

*Veronica Dragalin*  
*Phone:*  
*E-mail:*

*1500 United States Courthouse*  
*312 North Spring Street*  
*Los Angeles, California 90012*

April 28, 2021

**VIA E-MAIL**

Carel Ale  
Charles Snyder  
Office of the Federal Public Defender  
321 E. 2nd Street  
Los Angeles, CA 90012

      Re:    <u>United States v. Huizar,</u> CR No. 20-326(A)-JFW  
              Response to Huizar Discovery Requests: 1/13/21 Letter and 4/9/21 E-mail

Dear Ms. Ale and Mr. Snyder:

We have received your January 13, 2021 letter requesting six categories of discovery under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, and their progeny. In response to our email that certain requests contained in that letter were unduly broad and/or vague, we then received your April 9, 2021 e-mail clarifying your original requests.

Several of the categories seek information pertaining to individuals and entities that fall into different categories: (1) defendant Huizar; (2) co-defendants; (3) cooperator trial witnesses; (4) other trial witnesses; and (5) non-trial witnesses. As you know, the government's discovery obligations differ depending on (a) the status of the individual, (b) the timing of the production, (c) whether countervailing concerns (e.g., unrelated investigations, privacy, safety) affect the discoverability of certain information or the timing or format of its production. For example, under Rule 16, we agree to make available to defendant Huizar all of his digital evidence seized from him (including all emails and cell-phone records regardless of any determination of its relevance or privacy concerns). However, Rule 16 does not apply to written or recorded statements of *other* individuals or to items obtained from or belonging to *other* individuals, such as a witness interviewed during the course of this investigation who may not ultimately testify at trial.[1] At this stage, we have not identified everyone who will testify at trial, as things regularly change depending on which defendants ultimately proceed to trial, the disposition of pre-trial motions, the development of additional evidence, and various other factors.

---

        [1] <u>Brady</u> may apply to portions of such information, but not Rule 16.

April 28, 2021
Page 2

While you address the issue of materiality in a footnote in your letter, several categories nevertheless seek overbroad information that fail to meet even the broadest interpretation of materiality. For example, in request 1, you seek "all unproduced communications" involving any member of the prosecution team and "any officer, agent, or employee" of the City of Los Angeles, without tethering the request to any subject matter or even to this case. Such a broad request would include any communication between the U.S. Attorney's Office and FBI and any City employee, even if the subject of the communication was a completely unrelated investigation. It would also include various non-substantive email communications with counsel for the City about logistics, such as the date and time for a call, which are not subject to discovery. Requiring the collection and processing of such immaterial communications and then producing such a "document dump" would necessarily cause undue delay to the parties' motions and trial preparations; this is why Rule 16 contains the boundaries that it does. While your April 9, 2021 e-mail provided "non-exclusive examples" of communications you seek that helps us understand the type of additional information you seek, the e-mail does not actually narrow the broad request as we requested in our response to your initial letter.

As a related threshold matter, given the length of the investigation and the number of subjects, many of your broad requests will require extensive review of documents in multiple forms and from multiple sources, which will be on top of the voluminous (and, in some cases, redundant) productions previously provided. Given the nature of your requests, they will also require further time processing for production, including by making any necessary redactions since your requests require review of attorney work product, internal deliberative process of the USAO, and the review of handwritten notes. This is all relevant context for the timing of potential productions.

 **(1) Request 1: Communications**

As to <u>request 1</u>, we have previously produced relevant documents responsive to this request. The government will continue to produce communications with the individuals specifically named in request 1. As noted above, because "any" City "officer, agent, or employee" without regard to topical area is an overly broad request, please identify particular individuals by name or provide defined topic areas to the extent you believe communications with such individuals or of such topics are missing from the production. Please also provide a threshold showing of materiality. *See* <u>United States v. Stever</u>, 603 F.2d 747, 752 (9th Cir. 2010).

  a. <u>E-mails and Text Messages</u>

We have previously provided relevant documents responsive to this request. As you know, the productions to date have included reports of interviews and meetings between the prosecution team and individuals (including defendants, cooperators, other witnesses), as well as substantive email communications and text messages with the individuals and their respective attorneys, where applicable.[2] *See, e.g.*, Casino_2006987 (e-mail from counsel for George Esparza to

---

[2] As noted above, the government's discovery obligations do not extend to agent and/or AUSA communications (e-mails, text messages, voicemails, or notes of calls) with a witness or
*(footnote cont'd on next page)*

April 28, 2021
Page 3

prosecution team); Casino_2007243 (e-mail from counsel for Morrie Goldman to prosecution team); Casino_0343284 (text message between cooperating source and agent).

For cooperators and other trial witnesses, the government will continue to produce substantive e-mail and text communications between the prosecution team and the witness and/or counsel for the witness to the extent such communications constitute Brady, Giglio, or Jencks Act material. The government will agree to produce all such discovery in its possession no later than 60 days before trial,[3] provided the defense agrees to produce Jencks Act material, including defense counsel email and text communications, of defense witnesses 30 days prior to trial.

      b.      AUSA Notes

To date, the government has not produced AUSA notes reflecting communications between the prosecution team and individuals (including defendants, cooperators, other witnesses) and/or their respective attorneys. For defendants, cooperators, and trial witnesses, the government will review AUSA notes, and to the extent such notes contain Brady, Giglio, or Jencks Act material, the government will agree to produce all such discovery in its possession (with appropriate redactions for attorney mental impressions where applicable) no later than 60 days before trial provided the defense agrees to produce Jencks Act material, including defense counsel notes, of defense witnesses 30 days prior to trial.

      c.      Proffer, Non-Target, and Immunity Letters

For defendants, cooperators, and trial witnesses, the government will produce proffer letters, non-target letters, and immunity letter agreements, to the extent such letters exist. We anticipate producing most of these letters in the next 30 days and will produce all such letters in the government's possession no later than 60 days before trial. We do not intend to produce such letters for non-trial witnesses because over countervailing privacy concerns, and because such records do not constitute Giglio material.

      d.      Draft Plea Agreements and NPAs

For cooperators who testify in the government's case-in-chief, the government will produce drafts of plea agreements (and related factual basis documents) exchanged with defense counsel and substantive e-mail communications with defense counsel reflecting plea negotiations. To the extent the Hazens and/or [Company M] corporate representatives who personally participated in the negotiation of their respective company's resolution testify in the government's case-in-chief, the government will produce drafts of Non-Prosecution Agreements (and related factual basis documents) exchanged with defense counsel and substantive e-mail communications with

---

defense counsel regarding scheduling, logistics, other cases, or other non-substantive communications.

    [3] To the extent Jencks Act material is created within 60 days of trial as part of ordinary trial preparation, the government will produce such documents as soon as practicable once they are finalized, Bates stamped, and any necessary redactions are made.

April 28, 2021
Page 4

defense counsel reflecting NPA negotiations.  The government will produce these records at least 60 days before trial.  If a company employee testifies as a government witness but does not have personal knowledge of the aforementioned negotiations, these drafts are immaterial to the credibility of the witness and thus will not be produced.

      e.      Attorney Proffers

To date, the government has not produced agent and AUSA notes documenting conversations between the prosecution team and an individual's attorney outside the presence of that individual unless counsel represented s/he was providing verbatim information from his client or otherwise intended the communication to be a statement of his/her client.  *See, e.g.*, Casino_2006987 (e-mail from counsel for George Esparza to prosecution team); Casino_2007243 (e-mail from counsel for Morrie Goldman to prosecution team).  Such communications do not constitute Jencks Act statements unless the attorney is also a trial witness.

To better understand your request here, please confirm whether it is your position that attorney proffers that are clearly conveyed to be merely an attorney's proffer of what information s/he expects his/her client to say constitute Jencks Act statements or Giglio material.  Please also provide your authority for this specific proposition.  If so, we note that during this investigation, attorneys for defendants Huizar, Huang, Shen Zhen New World I, LLC, and Lee/940 Hill LLC have all made fairly extensive proffers to the government.  Several of those presentations/submissions to the USAO were labeled "confidential settlement communications" pursuant to Federal Rules of Evidence, Rule 408.

In light of that, **please clarify whether it is your position that**: (a) notes of such conversations should be produced to all defendants; (b) to the extent they are Jencks statements, we can admit such statements as affirmative evidence of your client's statements as a statement by a party opponent; (c) to the extent we believe your clients' statements in subsequent interviews or at trial conflict with those attorney proffers, the government may rely on your attorney proffer statements to impeach your clients at trial.

    **(2)**    **Request 2: Submissions to USAO**

As to request 2, your April 9, 2021 e-mail clarified that you seek: (i) "All documents from any affirmative factual presentation that a target, subject, or witness made to the prosecution team in connection with this investigation, as well as notes from those presentations"; and (ii) "Any feedback or communications between the presenter or counsel for the presenter and anyone on the prosecution team about the presentation, either before or after it occurred."  We interpret your request for "factual presentation or submission" to refer to something other than witness interviews, which have been documented in reports of interviews and produced, along with agent notes (and are covered in request 1 above).  We therefore assume that this request refers to attorney presentations to the USAO in connection with plea negotiations and settlement, which are already covered by the above requests and responses.

April 28, 2021
Page 5

### (3) Request 3: Decisions to Enter into NPAs

As to <u>request 3</u>, the government will not produce documents that reflect its charging decisions, as such material is protected by Rule 16(a)(2) and the attorney work product doctrine. We disagree with your assertion in the April 9, 2021 e-mail that the government waived the attorney work product privilege due to the unremarkable event of publicly announcing the NPAs in press releases. Please provide us authority for this specific proposition. If this were sufficient to trigger waiver, the public filing of every plea agreement – which also incorporates the parties' considerations in return for the agreement – would also trigger waiver and render Rule 16(a)(2) meaningless.

### (4) Request 4: All E-mail and Cellphone Records

As to <u>request 4</u>, as noted above, for digital evidence seized from your client, we will provide a complete copy of all e-mail records obtained pursuant to federal search warrants, and copies of the full extractions for cellphones seized from your client pursuant to federal search warrants regardless of any scope determination made by the searching agent pursuant to the terms of the warrant. **<u>Please provide a hard drive for this material</u>**.

For evidence seized from other co-defendants, cooperating witnesses, and non-trial witnesses, the government produced copies of e-mail and cellphone records seized within the judicially authorized scope of various federal search warrants and retained as evidence. Although the original full e-mail and cellphone records are booked into evidence for authenticity purposes, the search warrants only permit the search and seizure of pertinent material within the scope of Attachment B for a limited amount of time (now expired). All information seized pursuant to Attachment B of the search warrants has been produced. The AUSAs have not reviewed any information outside of the scope of such warrants and the government has no present judicial authority to search such out of scope material.

The digital evidence seized pursuant to warrants and produced in this case was extensive and, particularly given the nature of the evidence, contains private and sensitive material, including of and relating to public officials. For example, e-mail records for 8 accounts constitute over 140,000 pages of discovery. Cellphone records for 20 accounts constitute over 157,000 pages of discovery. You are requesting information outside the scope of federal search warrants, without identifying any particular type of information that you believe is material to the defense or <u>Brady</u> and missing from the already produced voluminous discovery. If there are such categories of information for any particular witness, please bring it to our attention and explain why it is necessary for your defense or <u>Brady</u>. Please also provide specific legal authority for the blanket and voluminous production of out of scope digital evidence seized from every person in the case. Absent such authority or particularity, this again appears to seek another unwarranted resource-intensive data dump type of discovery for a fishing expedition. Countervailing privacy interests, the need for efficient trial preparation by all parties, and the fact that such production vastly exceeds our discovery obligations support our view that this request is unreasonable and unduly burdensome.

April 28, 2021
Page 6

### (5) Request 5: Expert Notice

As to request 5, the government will provide its expert notice reasonably in advance of trial, which at this time has not yet been set. Note, however, that the government has already produced reports of interviews of certain individuals who may ultimately testify as experts on the topics reflected in the reports (*e.g.*, ▮▮▮▮▮▮▮ may testify about the development process in CD-14 based on his experience as the Planning Deputy; ▮▮▮▮▮▮▮ may testify about the City Planning Commission process based on his experience as a Commissioner, etc.). We propose the following schedule: (1) February 2, 2022 for the government's expert notice; (2) March 1, 2022 for defense expert notice.

### (6) Request 6: Unrecorded Information

As to request 6, your original letter and April 9, 2021 e-mail refer to "unrecorded" information. By definition, we understand this to refer to information that has not been documented in any way. The government has been and will continue to comply with all of its discovery obligations, including documenting Brady, Giglio, or Jencks Act material of which it becomes aware. If you are aware of any "unrecorded" information that you believe was omitted from the production, please promptly bring it to our attention, including the basis for your belief, and we will diligently inquire with the appropriate sources.

Please let us know if you have any questions or would like to further discuss any of the matters raised above.

Very truly yours,

*/s/ Veronica Dragalin*

MACK E. JENKINS
VERONICA DRAGALIN
MELISSA MILLS
Assistant United States Attorneys
Public Corruption & Civil Rights Section

Cc: Harland Braun; Richard Steingard; Ariel Neuman; Ray Seilie