Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Attorney for Defendant
Shen Zhen New World I, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 20-326-JFW |
| Plaintiff, | |
| v. | JOINT FILING RE SUBPOENAS AND NON-DISCLOSURE ORDER; DECLARATION OF CASSIE D. PALMER IN SUPPORT OF GOVERNMENT'S POSITION RE SUBPOENAS AND NON-DISCLOSURE ORDER; EXHIBITS A-E |
| JOSE LUIS HUIZAR, *et al.*, | |
| Defendant. | |

i

1    Pursuant to the Court's order (ECF 197), defendants Shen Zhen New World I,

2  LLC and Jose Huizar, and plaintiff United States of America, by and through their

3  respective counsel, hereby file this joint brief regarding the defendants' issuance of

4  subpoenas with non-disclosure orders.

5

6    Dated: March 29, 2022                Respectfully submitted,

7                                         TRACY L. WILKISON
                                          United States Attorney

8                                         SCOTT S. GARRINGER
                                          Assistant United States Attorney
9                                         Chief, Criminal Division

10                                          /s/ Cassie D. Palmer
11                                        MACK E. JENKINS
                                          VERONICA DRAGALIN
12                                        MELISSA MILLS
                                          CASSIE D. PALMER
13                                        Assistant United States Attorneys

14                                        Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA
15

16    Dated: March 29, 2022                 /s/
                                          CAREL ALE
17                                        CHARLES SNYDER
                                          ADAM OLIN
18                                        Attorneys for Defendant
                                          JOSE LUIS HIUZAR
19

20    Dated: March 29, 2022                 /s/
21                                        RICHARD M. STEINGARD
                                          Attorney for Defendant
22                                        SHEN ZHEN NEW WORLD I, LLC

23

24

25

26

27

28
                                          ii

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................... 1

II.    DEFENDANTS' POSITION ........................................................... 1

III.   GOVERNMENT'S POSITION........................................................ 6
      A.    The Court Should Grant the Government Access to
           Any Documents Returned in Response to the Subpoenas .................... 8
      B.    The Court Should Decline to Issue the Requested NDOs................... 12

1

# **TABLE OF AUTHORITIES**

2

## **FEDERAL CASES**

3

4

*Beacon Journal Publishing Co. v. Unger*,
    532 F. Supp. 55 (N.D. Ohio 1982) ........................................13

5

6

*Bowman Dairy Co. v. United States*,
    341 U.S. 214 (1951)..........................................................16

7

8

*Briggs v. Goodwin*,
    698 F.2d 486 (D.C. Cir.) .....................................................5

9

10

*Butterworth v. Smith*,
    494 U.S. 624 (1990)..........................................................16

11

12

*Hickman v. Taylor*,
    329 U.S. 495 (1947)...........................................................2

13

14

*Holmgren v. State Farm Mutual Auto. Ins. Co.,*
    976 F.2d 573 (9th Cir. 1992) ...............................................3

15

16

*In re Application of the United States for an Order Pursuant to
28 U.S.C. § 1651(a) for Order Precluding Notice of Grand Jury Subpoena,*
    No. 17-MC-01604 (BAH), 2017 WL 3278929 (D.D.C. July 7, 2017) .........13

17

18

*In re Grand Jury Investigation,*
    599 F.2d 1224 (3d Cir. 1979) ..............................................3

19

20

*In re Grand Jury Proceedings,*
    417 F.3d 18 (1st Cir. 2005)............................................ 16-17

21

22

*In re Grand Jury Subpoena Duces Tecum,*
    575 F. Supp. 93 (S.D.N.Y. 1983) .........................................13

23

24

*In re Grand Jury Subpoena Duces Tecum,*
    797 F.2d 676 (8th Cir. 1986) .............................................13

25

26

*In re Grand Jury Subpoena to Google, LLC,*
    No. 20-MC-1327 (JO), 2020 WL 3637379 (E.D.N.Y. June 19, 2020).........13

27

28

iv

*In re Subpoena to Testify Before Grand Jury,*
    864 F.2d 1559 (11th Cir. 1989) .................................................................. 17

*In re Terkeltoub*,
    256 F. Supp. 683 (S.D.N.Y. 1966) ............................................................... 5

*Matter of Subpoena 2018R00776,*
    947 F.3d 148 (3d Cir. 2020) ........................................................................ 16

*United States v. Alonzo,*
    No. CR 15-009-DSF, Dkt. 46 (C.D. Cal. June 16, 2015) .............. 7, 10, 14-15

*United States v. Beckford,*
    964 F. Supp. 1010 (E.D. Va. 1997) ......................................... 2, 4, 8, 14-15

*United States v. Brown,*
    No. CR 19-579-RGK, Dkt. 119 (C.D. Cal. Sept. 11, 2020) ......................... 17

*United States v. Eshkol,*
    108 F.3d 1025 (9th Cir. 1997) ..................................................................... 2

*United States v. Estes,*
    No. CR 3:15-015-LRH-VPC, 2015 WL 5193567 (D. Nev. Sept. 4, 2015) .... 9

*United States v. Fort,*
    472 F.3d 1106 (9th Cir. 2007) ..................................................................... 5

*United States v. Fox,*
    275 F. Supp. 2d 1006 (D. Neb. 2003).......................................................... 16

*United States v. Gigliotti,*
    No. CR 15-204-RJD-RER, Dkt. 107 (E.D.N.Y. Nov. 17, 2015) ................. 12

*United States v. Gurolla,*
    333 F.3d 944 (9th Cir. 2003) ....................................................................... 2

*United States v. Horn,*
    811 F. Supp. 739 (D.N.H. 1992)........................................................... 3-4, 14

v

*United States v. Jenkins*,
    895 F. Supp. 1389 (D. Haw. 1995).......................................................... 10-11

*United States v. Jenkins*,
    No. 02 Cr. 1384 (RCC), 2003 WL 1461477 (S.D.N.Y. Mar. 21, 2003).......16

*United States v. June,*
    No. 10-30021, 2011 WL 5330788 (D. Mass. 2011)........................................3

*United States v. Lambeth,*
    No. CR 2:08-00115-JCM, 2010 WL 4117681 (D. Nev. Oct. 8, 2010)...........9

*United States v. Layfield,*
    No. CR 18-124-MWF, Dkt. 212
    (C.D. Cal. Mar. 16, 2021)....................................................7, 10-11, 13-14, 17

*United States v. Levy,*
    577 F.2d 200 (3rd Cir. 1978) ....................................................................5, 15

*United States v. McDermon*,
    No. CR 16-613-JAK, Dkt. 65 (C.D.Cal. Oct. 12, 2016) ......................... 10-11

*United States v. McLaughlin,*
    No. CR 2:10-00547-RLH-GWF, 2012 U.S. Dist. LEXIS
    (D. Nev. Oct. 9, 2012) ...............................................................................9, 14

*United States v. Najarian,*
    164 F.R.D. 484 (D. Minn. 1995) ...............................................................7, 14

*United States v. Nobles,*
    422  U.S. 225 (1975)...............................................................................2-4, 15

*United States v. Nixon,*
    418 U.S. 683 (1974).....................................................................................8, 11

*United States v. Reyes,*
    162 F.R.D. 468 (S.D.N.Y. 1995)....................................................................2

*United States v. Roque,*
    No. CR 13-829 PA, 2014 WL 12691605 (C.D. Cal. Aug. 18, 2014) ...........14

*United States v. Sellers,*
    275 F.R.D. 620 (D. Nev. 2011) ............................................................. 7, 9, 12

*United States v. Sleugh,*
    896 F.3d 1007 (9th Cir. 2018) .......................................................................... 2

*United States v. Tomison*,
    969 F. Supp. 587 (E.D. Cal. 1997) ................................................................. 4

*United States v. Venecia*,
    No. CR 96-449-FR, 1997 WL 325328 (D. Or. May 16, 1997) ............. 5, 9-10

*United States v. Walton*,
    602 F.2d 1176 (4th Cir. 1979) ...................................................................... 16

**MISCELLANEOUS SOURCES**

Federal Rule of Criminal Procedure 6 ...................................................................... 12

Federal Rule of Criminal Procedure 16 .................................................. 6, 10-11, 16

Federal Rule of Criminal Procedure 17 ............................................................passim

Central District of California, Local Criminal Rule 17-4 .................................... 2, 14

Federal Grand Jury Practice, U.S. Dep't of Just.,
Office of Legal Educ. (2008 ed.) .......................................................................... 12

12 U.S.C. § 3420 ...................................................................................................... 12

18 U.S.C. § 2705 .......................................................................................... 12-13, 16

18 U.S.C. § 3771 ...................................................................................................... 16

28 U.S.C. § 1651 ...................................................................................................... 12

U.S. Const. Amend. VI ............................................................................................... 1

vii

# INDEX OF EXHIBITS

| Exhibit | Description | Page(s) |
|---------|-------------|---------|
| A | Minute order issued on June 16, 2015, in *United States v. Guillermo Francisco Alonzo*, CR 2:15-009-DSF, C.D. Cal., Dkt. 46 | Palmer Declaration 3:6 |
| B | Minute order issued on October 12, 2016, in *United States v. Luke Willis McDermon*, CR 2:16-613-JAK, C.D. Cal., Dkt. 65 | Palmer Declaration 3:9 |
| C | Minute order issued on March 16, 2021, in *United States v. Philip J. Layfield*, CR 2:18-124-MWF, C.D. Cal., Dkt. 212 | Palmer Declaration 3:12 |
| D | Letter to the court submitted on behalf of the United States Attorney's Office for the Eastern District of New York on November 6, 2015, in *United States v. Angelo Gigliotti, et al.*, CR 1:15-204-RJD-RER, E.D.N.Y., Dkt. 107 | Palmer Declaration 3:15 |
| E | Minute order issued on September 11, 2020, in *United States v. Jerome Brown*, CR 2:19-579-RGK, C.D. Cal., Dkt. 119 | Palmer Declaration 3:20 |

viii

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.**

## **INTRODUCTION**

On March 10, 2022, defendants Shen Zhen New World I, LLC ("SZNW") and Jose Huizar filed an application with the Court seeking early return subpoenas which included non-disclosure orders.    Pursuant to this Court's order (ECF 197), the parties have met and conferred and submit this joint filing reflecting their respective positions.

## **II.**

## **DEFENDANTS' POSITION**

In order to prevent disclosure of the defense strategy, defendants SZNW and Jose Huizar seek non-disclosure (or "gag") orders to prevent the subpoenas' recipients from revealing the issuance of the subpoenas, their requests, or the production of any responsive documents.  The government has advised that it does not seek to review the in camera subpoena application or the issued subpoenas if the Court finds that disclosure would reveal defense strategies, but only challenge a non-disclosure order on the subpoenas' recipients and an order prohibiting the recipients from disclosing any produced documents to the government.

The defendants clearly have a Sixth  Amendment right to subpoena documents for use in their defense at trial.  *See* U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . .  to have compulsory process for obtaining witnesses in his favor.")  This constitutional right is effectuated, in part, through Rule 17, Federal Rules of Criminal Procedure, which provides that, among other things, a criminal defendant may subpoena the production of "books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c). The rule also states that "[t]he court may direct the witness to produce the designated items in court *before trial*…"  (*Id.*; emphasis added)

1

The Ninth Circuit recognizes that a defendant's Rule 17(c) subpoena application, as well as other pleadings that may contain or reveal defense strategies, may be filed under seal and/or *in camera* in order to protect the defense's trial strategy. *See e.g.*, *United States v. Sleugh*, 896 F.3d 1007, 1010 (9th Cir. 2018) (noting that Rule 17(c) applications "are often filed *ex parte* and under seal."); *United States v Gurolla*, 333 F.3d 944, 948 (9th Cir. 2003) (approving of *in camera* submission regarding anticipated testimony supporting an entrapment defense in order to balance rights under the Fifth and Sixth Amendments); *United States v. Eshkol*, 108 F.3d 1025, 1028 (9th Cir. 1997) (approving of *in camera* proffers to prevent disclosure of defense theory, and suggesting that defense counsel should have sought to make such a proffer in order to protect his client). Indeed, the Central District's Local Rules incorporate a non-disclosure provision into a Rule 17 subpoena, stating that "a subpoena is issued pursuant to an application under seal, the issuance or service of the subpoena *shall not be disclosed to anyone*, except as necessary to the Marshal's service, or upon order of the Court." L.Cr.R. 17-4 (emphasis added).

For the same reasons—to preserve confidentiality of defense strategies—other out-of-district courts are in accord. *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995) (Rule 17 subpoenas may be submitted and considered on *ex parte* basis "in order to prevent premature disclosure of the defendant's confidential trial preparations and trial strategy to the government"); *United States v. Beckford*, 964 F. Supp. 1010, 1027 (E.D. Va. 1997) (". . . Rule 17(c) implements this essential constitutional right [of compulsory process]. Forcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the Government places an unconstitutional limitation on the defendant's right to compulsory process.").

Equally important, the work-product doctrine applies to all aspects of criminal litigation, including subpoena applications. *United States v. Nobles*, 422 U.S. 225, 236

2

(1975).  "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  *Id.* at 238.  That is so because in "performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).  The duties that are afforded protection under the work-product privilege are vast.  "Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . ."  *Id.* at 510-11.  "The work-product doctrine . . . protects from discovery materials prepared or collected by an attorney in the course of preparation for possible litigation."  *In re Grand Jury Investigation*, 599 F.2d 1224, 1228 (3d Cir. 1979) (citing *Hickman*, 329 U.S. 495); *see also United States v. Horn*, 811 F. Supp. 739, 746 (D.N.H. 1992), *rev'd on other grounds*, 29 F.3d 754 (1st Cir. 1994); *United States v. June*, No. 10-30021, 2011 WL 5330788, at *2 (D. Mass. 2011).

Courts have concluded that "defense counsel's selection and compilation of documents in preparation for pretrial discovery fall within the highly-protected category of opinion work product," and that "the selection process itself reveals counsel's mental impressions as to how evidence relates to issues and defenses in the litigation."  *Horn*, 811 F. Supp. at 746 (citations omitted).  *Cf. Holmgren v. State Farm Mutual Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) ("The primary purpose of the work product rule is to prevent exploitation of a party's efforts in preparing for litigation.") (citation omitted).  "Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless

3

interference." *Nobles*, 422 U.S. at 237.  In a "criminal proceeding where important constitutional rights of due process under the Fifth Amendment and effective assistance of counsel under the Sixth Amendment are at stake, along with the liberty interests of the defendant[], this work product deserves special protection."  *Horn*, 811 F. Supp. at 747 (citing *Nobles*, 422 U.S. at 238).

With these underlying principles in mind, defendants here seek a non-disclosure order because the government's review of the responsive documents would reveal trial strategies and attorney work-product.  The identities of the parties to whom the subpoenas would issue, as well as the categories of documents requested and any responsive materials, would disclose meaningful aspects of the defendants' trial strategy—information that is based on defense counsels' consideration of the case, their work product, and the communications between defense counsel, all of which the government has no right to know.  *See, e.g.*, *United States v. Tomison*, 969 F. Supp. 587, 594 (E.D. Cal. 1997) ("forcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the government places an unconstitutional limitation on the defendant's right to compulsory process") (citations omitted); *Beckford*, 964 F.Supp. at 1027 ("In the absence of *ex parte* procedure, however, the constitutionally-prohibited 'Hobson's choice' would be forced upon all defendants . . . with respect to the issuance of Rule 17(c) pre-trial subpoenas duces tecum.").

Under Rule 17(c), this Court has the authority to issue the non-disclosure order, as well as to permit the defendants to review the documents confidentially.  As one court stated, "Rule 17(c) authorizes the court to permit documents obtained by a subpoena duces tecum to be inspected by 'the parties and their attorneys.'  However, the court is authorized under Rule 17(c) to use its discretion in determining whether to allow inspection by any of the parties.  *The court may decide not to require the disclosure of documents produced pursuant to a Rule 17(c) subpoena to the*

4

*government upon some showing that the defense would be harmed in some manner by the government's access to these documents."* United States v. Venecia, 1997 WL 325328, *5 (D. Or. May 16, 1997) (emphasis added).

Here, for the reasons set forth in defendants' subpoena application, the government would potentially obtain a tactical advantage through a review of the responsive documents. "The government's knowledge of any part of the defense strategy might benefit the government in its further investigation of the case, in the subtle process of pretrial discussion with potential witnesses, in the selection of jurors, or in the dynamics of trial itself." *United States v. Levy*, 577 F.2d 200, 208 (3rd Cir. 1978) (dismissing indictment where government invaded the defense camp and learned defense strategies). "The prosecution makes a host of discretionary and judgmental decisions in preparing its case. It would be virtually impossible for [a defendant] or a court to sort out how any particular piece of information in the possession of the prosecution was consciously or subconsciously factored into each of those decisions. Mere possession by the prosecution of otherwise confidential knowledge about the defense's strategy or position is sufficient in itself to establish detriment to the criminal defendant." *Briggs v. Goodwin*, 698 F.2d 486, 494-95 (D.C. Cir.), *reh'g granted and opinion vacated on other grounds*, 712 F.2d 1444 (D.C. Cir. 1983). *See also In re Terkeltoub*, 256 F. Supp. 683, 685 (S.D.N.Y. 1966) ("The defendant has the right to prepare in secret…").

Based on the grounds set forth above and in defendants' subpoena application, the government should not be permitted insight into the defendants' defense, or be able to buttress its case, from documents that the defense obtains from the subpoenas' recipients. Contrary to the government's claims, below, the defendants do not seek to "deny the government access to documents in response to subpoenas." Rather,

5

defendants seek to prepare their case in confidence, no different than the government,[1] and to produce any such documents to be used at trial under the timetables set forth in Rule 16 and this Court's scheduling order.  Further, contrary to the government's argument, the defendants' requested non-disclosure order does not impede or inhibit the government's contact with prospective witnesses or preclude the government from obtaining the same documents from the subpoena recipients if the government makes an independent request.

To be sure, the government has mined its participation in other cases (including in other districts) to find a few court orders denying the positions that defendants are taking.  Defendants are unaware of the charges in those cases, the underlying facts, and the grounds upon which the subpoenas and non-disclosure orders were sought; consequently, defendants lack the ability to address or distinguish these cases.  However, contrary to the government's suggestion, counsel submit that this is not the sole body of law in this district, since the government would not be aware of cases in which a court *granted* a defendant's ex parte, in camera subpoena request like those the defendants are seeking.

Defendants submit that each case must be examined on its own merits, and that in *this* case, under the circumstances presented, the Court should permit a non-disclosure order to issue with the subpoenas, including maintaining the confidentiality of any responsive documents.

### III.

### GOVERNMENT'S POSITION

On July 12, 2021, the Court denied without prejudice an <u>ex parte</u> application for Issuance of Early-Return Subpoenas Duces Tecum filed by defendant SZNW, which

---

[1]  The discovery materials reveal innumerable instances—pre- and post-indictment—by which the government sought to maintain the confidentiality of its investigation, including telling virtually every witness interviewed not to disclose that they spoke with or provided information to the government.

was filed <u>in camera</u> and under seal.  (Dkt. 197.)  The Court found defendant's briefing "inadequate as to the request for the issuance of a 'gag' order on a third party recipient of a Rule 17(c) subpoena."  (<u>Id.</u>)  The Court ordered that, to the extent the defendant filed a revised application requesting such a "gag" order, "Defendant shall provide notice to the Government of its request when it files the revised Ex Parte Application.  Within five days of notifying the Government of its request, the parties shall meet and confer and prepare a joint statement, setting forth their positions on this limited legal issue with citations to relevant authority.  The joint statement shall be filed within five days of the parties' conference."  (<u>Id.</u>)

By this response, the government addresses the full reach of the "gag" order defendants SZNW and Huizar seek, which would deny the government access to documents returned in response to the subpoenas and also prevent third-party recipients from (1) disclosing the fact of or (2) contents in the subpoenas, and (3) providing the documents requested to the government or its agencies.

This request is improper.  As judges in this District have repeatedly recognized, "Defendant[s] [are] free, like the Government, to request documents voluntarily from anyone."  <u>United States v. Layfield,</u> No. CR 18-124-MWF, Dkt. 212 at *4-6 (C.D. Cal. Mar. 16, 2021) (Declaration of Cassie D. Palmer ("Palmer Decl."), Ex. C).  But having chosen to avail themselves of the compulsory benefits of Rule 17, they "cannot unilaterally use helpful information without allowing the Government to rebut using harmful evidence gleaned from the same."  <u>United States v. Alonzo</u>, No. CR 15-009-DSF, Dkt. 46 at *3 (C.D. Cal. June 16, 2015) (Palmer Decl., Ex. A).  While defendants may, in narrow circumstances, make <u>in camera</u> applications for subpoenas <u>duces tecum</u> pursuant to Federal Rule of Criminal Procedure 17(c), "it does not follow that the defendant is entitled to strategic advantage or tactical surprise."  <u>United States v. Sellers</u>, 275 F.R.D. 620, 625 (D. Nev. 2011).  Here, defendants SZNW and Huizar not only have requested that their *application* and any *orders* issuing the subpoenas remain

in camera but also that the *subpoenas themselves* and *any documents* returned remain in camera and not be shared with the government.  And defendants have gone even further by requesting that the Court "gag" the subpoena recipients by prohibiting them from disclosing the fact of or content of the subpoenas "to any federal law enforcement agency or the United States Attorney's Office."  Defendants' requests are unsupported by the facts and are at odds with the law and principles of basic fairness.[2]  The Court should make available to the government any documents produced in response to the subpoenas and decline to issue the requested non-disclosure orders ("NDOs").

**A.   The Court Should Grant the Government Access to Any Documents Returned in Response to the Subpoenas**

Federal Rule of Criminal Procedure 17(c) gives the Court discretion to "permit the parties and their attorneys to inspect all or part" of any materials returned in response to Rule 17 subpoenas.  Fed. R. Crim. P. 17(c)(1).  Disclosure of subpoenaed records to the government generally is proper because it is rarely prejudicial.  See, e.g., United States v. Najarian, 164 F.R.D. 484, 488 (D. Minn. 1995) ("[I]n our view, the evidentiary documents, which the Defendant may appropriately request, do not, even inferentially, disclose any of his work product or litigation strategies."); United States v. Beckford, 964 F. Supp. 1010, 1030 (E.D. Va. 1997) ("In most instances, it will not be necessary to disclose trial strategy, divulge witnesses or work product, or implicate a privacy right merely to make the application for issuance of a pre-trial subpoena duces tecum.  And, a party seeking to proceed ex parte will have to meet a heavy burden to proceed in that fashion.").  Under Rule 17(c), the party seeking documents must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  United States v. Nixon, 418 U.S. 683, 700 (1974).  Given this required showing, some

---

[2] Defendants repeatedly reference "the reasons set forth in defendants' subpoena application," which, of course, the government has not seen.  The government accordingly is unable to address directly any specific arguments contained in the application,

8

1  courts have permitted defendants to withhold the subpoena *application* from the

2  government "in certain limited circumstances . . . where notice of a subpoena <u>duces</u>

3  <u>tecum</u> would compromise defense counsel's trial strategy." <u>United States v. Estes</u>, No.

4  CR 3:15-015-LRH-VPC, 2015 WL 5193567, at *2 (D. Nev. Sept. 4, 2015).  The

5  government is not requesting disclosure of defendants' application here.

6       In contrast to a subpoena *application*, however, disclosure of *subpoenaed*

7  *records* carries little risk of prejudice to the defendant.  This is because the records

8  themselves are unlikely to reveal defense strategy, as they do not reveal *why* the

9  defense sought the records or *how* it intends to use them.  Thus, courts typically allow

10  for disclosure of subpoenaed records to the government even if the application remains

11  <u>in camera</u>.  <u>See, e.g.</u>, <u>Sellers</u>, 275 F.R.D. at 625; <u>United States v. Lambeth</u>, No. CR

12  2:08-00115-JCM, 2010 WL 4117681, at *4-6 (D. Nev. Oct. 8, 2010) (holding that

13  while defendant's subpoena requests could be filed <u>in camera</u> to avoid disclosing trial

14  strategy to the government, both defense and government counsel were entitled to

15  inspect the documents produced); <u>United States v. McLaughlin</u>, No. CR 2:10-00547-

16  RLH-GWF, 2012 U.S. Dist. LEXIS 145772, *7-8 (D. Nev. Oct. 9, 2012) (granting Rule

17  17(c) subpoena "only to the extent that Defendant serves the subpoena and the

18  produced information to the Government").

19       The district court's reasoning in <u>United States v. Venecia</u>, No. CR No. 96-449-

20  FR, 1997 WL 325328, at *5 (D. Or. May 16, 1997), is instructive.  There, the defendant

21  filed various Rule 17 subpoenas under seal, which the government moved to quash and

22  unseal and also moved to compel production of the subpoenaed documents.  In

23  evaluating the government's motion to compel, the district court reasoned it was

24  "authorized under Rule 17(c) to use its discretion in determining whether to allow

25  inspection by any of the parties.  The court may decide not to require the disclosure of

26  documents produced pursuant to a Rule 17(c) subpoena to the government upon some

27  showing that the defense would be harmed in some manner by the government's access

28

9

to these documents."  1997 WL 325328, at *5.  Applying this standard, the court declined to unseal the defendant's application, which arguably contained information relating to defense strategy, but ordered the defendant to provide copies of the subpoenaed documents to the government, reasoning the documents themselves did "not reveal any strategy of the defense."  Id.

Several courts in this District have similarly construed Rule 17 in granting the government access to subpoenaed documents.  For example, in United States v. McDermon, No. CR 16-613-JAK, Dkt. 65 (C.D.Cal. Oct. 12, 2016) (Palmer Decl., Ex. B), Judge Kronstadt reasoned that "[b]asic fairness" justified the production of documents to the government "absent unique or compelling circumstances":

> Rule 17 does not state that materials produced in response to a subpoena are to be made available only to one side.  Basic fairness warrants their production to both sides, absent unique or compelling circumstances, none of which has been shown here.  Having elected to seek the materials through the subpoenas, Defendant cannot justify keeping them from the Government unless and until Defendant concludes that his discovery obligation requires their disclosure under Fed. R. Crim. P. 16.

Id. at *3-4.  Similarly, in Alonzo, Judge Fischer agreed that "[b]asic fairness requires the disclosure of the subpoena and responses."  Palmer Decl., Ex. A at *3.  Judge Fischer reasoned that "Rule 17(c) makes no provision for allowing only one party access to the documents."  Id. (quoting United States v. Jenkins, 895 F. Supp. 1389, 1394 (D. Haw. 1995)).  Thus, a "[d]efendant cannot unilaterally use helpful information without allowing the Government to rebut using harmful evidence gleaned from the same."  Id. (quotation omitted).  Finally, in Layfield, the defendant argued (1) the government should not have access to the subpoenaed documents because that would put the parties on an even playing field and (2) his reciprocal discovery obligations under Rule 16 would ensure that the demands of "our adversary system were met."  Palmer Decl., Ex. C (Layfield) at *4-6.  In rejecting defendant's arguments and allowing the government to inspect the subpoenaed documents, Judge Fitzgerald

1  reasoned that "[n]othing in the language or structure of Rule 17" favored defendant's

2  views. Id.

3          The government agrees with Judges Kronstadt and Fitzgerald that defendant's

4  reciprocal discovery obligations under Rule 16 are insufficient to ensure basic fairness

5  in this scenario. Palmer Decl., Ex. B (McDermon) at *4 & Ex. C (Layfield) at *2, 4.

6  Rules 16 and 17 are designed for distinct purposes and differ in scope. Rule 16

7  requires the defendant to produce discovery only where "the defendant intends to use

8  the item in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A)(i), (ii).

9  By contrast, Rule 17 is far broader, requiring the item to be "relevant, admissible, and

10  specific." Nixon, 418 U.S. at 700. Further, the respective rules vest responsibility for

11  compliance with different stakeholders. For Rule 16, it is up to the defendant, in

12  coordination with counsel, to decide whether to put on a defense and, if so, what

13  evidence to introduce to support that defense. Thus, whether an item, however

14  received, is intended to be introduced for that defense is potentially very narrow.

15  Conversely, there is no such limitation under Rule 17. Such material need only, by

16  comparison, be relevant, admissible, and specific, and the Court, not the defendant,

17  must make that initial determination before the subpoena is issued at all. While it is

18  certainly possible that materials obtained under Rule 17 could ultimately end up as

19  defense exhibits at trial, there is no requirement that the defendant intend to use the

20  materials at trial. To permit a defendant to decide whether to provide reciprocal

21  discovery of materials obtained under Rule 17 would frustrate the Court's gatekeeper

22  role in deciding the appropriateness of Rule 17 subpoenas in the first place. See

23  Jenkins, 895 F. Supp. at 1395 (finding error in forbidding government from viewing

24  documents produced in response to Rule 17(c) subpoena).

25          Defendants have failed to meet their burden here. Their justification for

26  withholding the documents from the government boils down to a desire for "strategic

27

28

11

advantage [and] tactical surprise," which is neither unique nor compelling.  See Sellers, 275 F.R.D. at 625.

**B.     The Court Should Decline to Issue the Requested NDOs**

The Court similarly should decline to issue defendants' requested NDOs because they have failed to provide a compelling or particularized necessity nor cited legal authority justifying such a drastic measure.

First, NDOs are generally disfavored, and no statute authorizes NDOs for Rule 17(c) subpoenas.  In narrow, law-enforcement investigative contexts, Congress has expressly authorized NDOs by statute.  See, e.g., 18 U.S.C. § 2705(b) (permitting NDOs for certain information obtained under the Stored Communications Act); 12 U.S.C. § 3420 (imposing NDOs on financial institutions in narrow circumstances under the Right to Financial Privacy Act).  Notably, even in the context of pre-indictment criminal investigations, the government may only request *voluntary* non-disclosure for most investigative processes and may not suggest that such non-disclosure is mandatory, absent statutory authority.[3]  See, e.g., United States v. Gigliotti, et al., No. CR 15-204-RJD-RER, Dkt. 107 (E.D.N.Y Nov. 17, 2015) (Palmer Decl., Ex. D) (discussing the circumstances when the government can, and cannot, include NDO language in investigative processes).  And, as a general matter, the grand jury secrecy provisions embodied in Federal Rule of Criminal Procedure 6(e)(2) do not apply to witnesses.  Fed. R. Crim. P 6(e); see also Federal Grand Jury Practice, U.S. Dep't of Just., Office of Legal Educ. (2008 ed.) at § 5.71.  As such, the United States routinely serves grand jury subpoenas duces tecum without the protection of an NDO.

Absent express statutory authority, courts have authorized NDOs in limited circumstances, based on the court's authority to issue extraordinary orders under the All Writs Act, 28 U.S.C. § 1651, and its inherent authority.  Those cases primarily have

---

[3] Despite defendants' suggestion to the contrary, the defense and the government are thus on equal footing in that regard, as both are free to *request* nondisclosure, but neither may *compel* it absent some statutory authority not present here.

arisen in the context of grand jury subpoenas, and courts considering those NDO requests typically have required a showing of *compelling necessity with particularity*. See, e.g., In re Application of the United States for an Order Pursuant to 28 U.S.C. § 1651(a) for Order Precluding Notice of Grand Jury Subpoena, No. 17-MC-01604 (BAH), 2017 WL 3278929, at *3 (D.D.C. July 7, 2017) ("D.D.C. Order") (gathering cases and requiring the government to demonstrate a "compelling necessity . . . shown with particularity" (quoting In re Grand Jury Subpoena Duces Tecum, 797 F.2d 676, 681 (8th Cir. 1986)); In re Grand Jury Subpoena to Google, LLC, No. 20-MC-1327 (JO), 2020 WL 3637379, at *1 (E.D.N.Y. June 19, 2020) (rejecting government's request for NDO, reasoning that "the bare representation that the target of the instant investigation is unaware of its existence does not support a finding that the investigation will suffer harm in the absence of a non-disclosure order"); In re Grand Jury Subpoena Duces Tecum, 575 F. Supp. 93, 94 (S.D.N.Y. 1983) (government failed to meet "particularized showing of need for secrecy"); Beacon Journal Publishing Co. v. Unger, 532 F. Supp. 55, 59 (N.D. Ohio 1982) (secrecy obligation should be "case-specific and based upon the facts and circumstances of each situation as it arises"). And the narrow use of NDOs in these contexts largely rests on the need for "the proper functioning of our grand jury system[, which] depends upon the secrecy of grand jury proceedings," D.D.C. Order, at *2, and concerns unique to covert criminal investigations – namely, that alerting targets to an investigation could cause them to flee, destroy evidence, change patterns of behavior, or intimidate or harm witnesses. See, e.g., 18 U.S.C. § 2705(b).

To put it in context and provide a contrast, the government routinely serves subpoenas after indictment in preparation for trial that do not gag anyone -- victims, witnesses, or other third parties -- from discussing the subpoenas with anyone (not to mention, specifically, the defendant), or from obtaining the documents requested pursuant to the subpoenas. See Palmer Decl., Ex. C (Layfield) at *5 ("The grand jury is

13

a unique institution with its own powers and its own rules.  Once an indictment is returned, the parties are on an equal playing field.").

Defendants' reliance on Local Rule 17-4 to justify their requested NDOs is misplaced.  Local Rule 17-4 provides that if "a subpoena is issued pursuant to an application under seal, <u>the issuance or service</u> of the subpoena shall not be disclosed to anyone. . . ." <u>Id.</u> (emphasis added); <u>United States v. Roque</u>, No. CR 13-829 PA, 2014 WL 12691605, at *1 (C.D. Cal. Aug. 18, 2014) (acknowledging that for good cause, L.R. 17-4 provides for issuance and service of a subpoena without notice to an opposing party).  But Rule 17-4 says nothing about preventing discussion with or disclosure by the subpoenaed party of the records produced in response to a subpoena.

Defendants' reliance on "protected work product" doctrine has some legal grounding but is ultimately unavailing.  Courts navigating these issues have repeatedly held that the categories of documents requested in Rule 17 subpoenas[4] are unlikely to reveal trial strategy.  <u>See, e.g.</u>, <u>Najarian</u>, 164 F.R.D. at 488; <u>Beckford</u>, 964 F. Supp. at 1030; Palmer Decl., Ex. A (<u>Alonzo</u>) at *2-3.  In <u>Alonzo</u>, for example, Judge Fischer

---

[4] The government understands defendants' request for gag orders to relate to their concern that the third-party recipients may reveal to the government the document requests contained in the subpoenas, including the specific wording of those requests, which they contend would reveal defense trial strategy.  Defendants correctly point out that a few courts have, in certain circumstances, held that subpoenas themselves may reveal the defense theory of the case, <u>see, e.g.</u>, <u>United States v. Horn</u>, 811 F. Supp. 739, 746 (D.N.H. 1992), while the government has cited cases finding the opposite.  <u>See. e.g.</u>, Palmer Decl., Ex. A (<u>Alonzo</u>) at *3; <u>Najarian</u>, 164 F.R.D. at 488; <u>McLaughlin</u>, 2012 U.S. Dist. LEXIS 145772, *7-8.  Whether a Rule 17 subpoena itself reveals defense strategy appears to be a fact-specific inquiry, which the government is not in a position to meaningfully address in this case because it is not privy to the subpoena application and arguments contained therein.  However, in light of the countervailing concerns discussed herein, witnesses generally should not be subject to NDOs absent a compelling reason, and Rule 17 subpoenas themselves certainly should not categorically be treated as defense work-product.  That said, the government understands that a Rule 17 subpoena theoretically could reveal defense strategy, though artful drafting by the defense should minimize such a risk.  Thus, to the extent the Court determines that such a risk exists in this specific case and accordingly bars third-party recipients from disclosing the specific document requests contained in defendants' subpoenas, the government respectfully requests that the Court not bar the recipients from disclosing the fact of the subpoenas (which would not reveal defense strategy) or providing the government any documents produced in response to the subpoenas (which would not reveal defense strategy).

14

declined to unseal defendant's Rule 17 *application* on the basis that it contained privileged attorney work product that potentially could reveal defendant's strategy but made available to the government both the *subpoenaed documents* and the *subpoena* itself.  Id.  In so doing, Judge Fisher rejected the defendant's arguments that subpoenas themselves reveal defense strategy, finding such arguments "vague and unconvincing." Id. at *3.  Importantly, the statutes and cases authorizing NDOs (discussed above) are not based upon the confidentiality of the government's trial strategy that may be revealed via the government's grand jury subpoena; rather, they are based on grand jury secrecy and concerns unique to covert criminal investigations.  Defendants' generalized invocation of the work product doctrine fails to meet the compelling, particularized interest standard that is required here.[5]  See cf. United States v. Fox, 275 F. Supp. 2d 1006, 1012 (D. Neb. 2003) ("generalized statements about premature disclosure of 'strategy' or 'work product'" insufficient to justify ex parte consideration of Rule 17 application); see also United States v. Nobles, 422 U.S. 225, 240 (1975) (noting that while the work-product doctrine applies to criminal cases, it is not absolute, and holding that defense counsel, by electing to present as a witness investigator who had interviewed key prosecution witnesses, waived work product privilege with respect to matters covered in investigator's testimony).  To the contrary, as discussed below, the compelling interests weigh against imposing NDOs here.

The government and FBI have a compelling interest in communicating freely with witnesses, cooperators, and third parties.  The government has not seen the application or requested subpoenas, and accordingly does not know to whom they are directed.  That said, in the context of subpoenas to governmental entities who may be

---

[5] Many of the cases defendants cite relate to topics not at issue here, e.g., cases holding the government should not have access to Rule 17 subpoena *applications*, which the government has not requested, or are factually distinguishable on their face, e.g., United States v. Levy, 577 F.2d 200, 208 (3d Cir. 1978), which involved the government's intrusion into the defense theory of the case through the use of a government informant questioning an unwitting co-defendant about his anticipated defense strategy and which is of no relevance here.

or have been involved in the investigation, it is imperative that the subpoena recipient be able to coordinate with the United States.  See United States v. Fort, 472 F.3d 1106, 1119 (9th Cir. 2007) (federal-state cooperation is "crucial"); United States v. Jenkins, No. 02 Cr. 1384(RCC), 2003 WL 1461477, *5 (S.D.N.Y. Mar. 21, 2003) ("Rule 16(a)(2) bars disclosure of reports generated by local law enforcement agents, even when subpoenaed pursuant to Rule 17(c)."); United States v. Beckford, 964 F. Supp. 1010, 1030 (E.D. Va. 1997) (withholding subpoena application ordinarily "will be unnecessary and thus inappropriate," particularly "for defense subpoenas seeking documents from state law enforcement agencies officially involved in the federal[] investigation of the crimes on trial").  Further, the government has a compelling interest in being able to communicate freely with its witnesses and cooperators and to ensure their protection.  See Bowman Dairy Co. v. United States, 341 U.S. 214, 221 (1951) (directing courts ordering an early subpoena return under Rule 17(c) to "be solicitous to protect against disclosures of the identity of informants"); 18 U.S.C. § 3771 (crime victims have the right "to confer with the attorney for the Government in the case"); United States v. Walton, 602 F.2d 1176, 1179–80 (4th Cir. 1979) ("A witness is not the exclusive properly of either the government or a defendant"; both parties are entitled access to any prospective witness).  And in the context of subpoenas to private parties, NDOs implicate weighty First Amendment concerns.  See, e.g., Butterworth v. Smith, 494 U.S. 624, 626, 630-631 (1990) (invalidating, on First Amendment grounds, application of state grand-jury witness-secrecy rule to the extent it continued to apply after the grand jury investigation had terminated); Matter of Subpoena 2018R00776, 947 F.3d 148, 155-159 (3d Cir. 2020) (applying strict scrutiny and upholding term-limited NDO under 18 U.S.C. § 2705 against First Amendment challenge, noting that NDOs should not extend beyond grand jury term).

　　　　These countervailing concerns are precisely why courts have held that requests for NDOs must be "appropriately tailored," In re Grand Jury Proceedings, 417 F.3d 18,

26 (1st Cir. 2005), and supported by a "compelling necessity," In re Subpoena to Testify Before Grand Jury, 864 F.2d 1559, 1563-1564 (11th Cir. 1989).  Defendants satisfy neither requirement here.

Finally, from a practical perspective, the requested NDOs risk burdening the Court with unnecessary and unwarranted litigation (especially in light of the lack of justification for the NDOs in the first place).  In the government's experience, witnesses often incorrectly believe that defense-issued Rule 17 subpoenas were issued by the government because they are issued by the Court.  As such, parties often contact the government when they receive such subpoenas.  See Ex. C (Layfield) at *3 ("[M]any third parties will consult with the prosecutors and therefore the existence of a subpoena (but not the showing leading to its issuance) will often quickly become known to the Government.").  Of course, government counsel routinely asks if the subpoenas contain any non-disclosure language, but lay witnesses and lawyers alike often fail to identify or understand such NDO language, which risks that innocent, inadvertent disclosures will result in unnecessary and inflammatory litigation.  By way of example, in United States v. Brown, No. CR 19-579-RGK, a case in which the defendant was represented by one of the attorneys representing defendant Huizar, the defense filed a flurry of motions – to dismiss the case, disqualify the AUSAs, exclude evidence, and for sanctions against the LAPD, the City Attorney's Office, and the USAO – on the basis of purported prosecutorial misconduct and violation of the Sixth Amendment after a Los Angeles Deputy City Attorney who received a defense Rule 17 subpoena containing NDO language inadvertently disclosed the contents of the subpoena to an AUSA.  See Dkts. 83 (Application for Sanctions), 85 (Motion to Dismiss, Disqualify AUSAs, and Exclude Evidence), 101 (Gov't Opp'n to Sanctions Motion); 102 (Gov't Opp'n to Motion to Dismiss/Disqualify/Exclude).  The Deputy City Attorney failed to recognize the NDO language, despite the AUSA asking several times if the subpoena contained such language.  Dkts. 101, 101-1 at *1, 4, 6 (Deputy

City Attorney Declaration) ("I believe my error was in not realizing that I was prohibited from discussing the matter with the government w[h]ere the LAPD was the investigating agency.").  Noting "the Sixth Amendment does not guarantee Defendant the right to surprise the Government at trial with the subpoenaed records," the Court denied the defense motions, reasoning that the disclosure was inadvertent and "[h]ad the LAPD simply moved the Court to modify its previous Order to permit the disclosure of the Subpoenaed Records to the USAO, the Court would have in all likelihood granted the motion."  Id., Dkt. 119 (C.D. Cal. Sept. 11, 2020) (Palmer Decl., Ex. E) at *2, 4, 5-6.  The practical difficulties illustrated by the NDO in this case support what courts have recognized again and again: NDOs should be issued only in extraordinary circumstances.  Such circumstances do not exist here.

For these reasons, defendants have failed to show a compelling necessity with particularity for the NDOs they seek.  The Court should decline to issue them.