CUAUHTÉMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CAREL ALE  (Bar No. 283717)
(E-Mail: Carel_Ale@fd.org)
CHARLES J. SNYDER (Bar No. 287246)
(E-Mail: Charles_Snyder@fd.org)
ADAM OLIN (Bar No. 298380)
(E-Mail: Adam_Olin@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JOSÉ LUIS HUIZAR

[And on Behalf of All Defendants]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 20-CR-326-JFW-1 |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANT JOSÉ LUIS HUIZAR'S REPLY ISO MOTION TO COMPEL [ECF NO. 381]** |
| JOSÉ LUIS HUIZAR, *et al.*, | |
| Defendant. | Hearing Date:   April 25, 2022 |
| | Hearing Time:   8:00 a.m. |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ............................................................................................. 1

II. ARGUMENT ................................................................................................... 2

    A.     The Government Must Produce the Full Devices ................................... 2

        1.     The Devices Are Within the "Possession, Custody, or Control" of the Government ................................................................... 2

        2.     The Devices' Contents Are Material ........................................ 5

    B.     The Government Must Produce Communications With Counsel ............... 6

III. CONCLUSION ................................................................................................ 9

# TABLE OF AUTHORITIES

**PAGE(S)**

**Federal Cases**

*Kyles v. Whitley*,
   514 U.S. 419 (1995) ...................................................................................... 6

*United States v. Collins*,
   409 F. Supp. 3d 228 (S.D.N.Y. 2019) ........................................................ 2

*United States v. Hernandez-Meza*,
   720 F.3d 760 (9th Cir. 2013) .................................................................. 5, 8

*United States v. Howell*,
   231 F.3d 615 (9th Cir. 2000) ....................................................................... 7

*United States v. Kilroy*,
   523 F. Supp. 206 (E.D. Wisc. 1981) ........................................................... 4

*United States v. Muniz-Jaquez*,
   718 F.3d 1180 (9th Cir. 2013) ..................................................................... 5

*United States v. Sager*,
   227 F.3d 1138 (9th Cir. 2000) ..................................................................... 7

*United States v. Salyer*,
   271 F.R.D. 148 (E.D. Cal. 2010) ................................................................ 3

*United States v. Santiago*,
   46 F.3d 885 (9th Cir. 1995) ......................................................................... 2

*United States v. Soto-Zuniga*,
   837 F.3d 992 (9th Cir. 2016) ....................................................................... 5

*United States v. Stein*,
   488 F. Supp. 2d 350 (S.D.N.Y. 2007) ........................................................ 4

*United States v. Sudikoff*,
   36 F. Supp. 2d 1196 (C.D. Cal. 1999) ..................................................... 6, 7

*United States v. Tomasetta*,
   2012 WL 896152 (S.D.N.Y. Mar. 16, 2012) .............................................. 4

# I. INTRODUCTION

Defendants moved to compel discovery that goes to the heart of the government's case: records that show the complete picture of what their cooperating witnesses and other key individuals were doing during the relevant period, and the means and manner by which they came to their final, government-approved narratives. The government concedes it has physical possession of the vast majority of the items sought, and does not appear to dispute it could obtain the rest were it to simply invoke its rights under the cooperation plea agreements. But instead of producing this discovery, the government advances a crabbed understanding of what it means to "possess" something. In doing so, the government functionally instructs the Court to redefine "possession," which is all Rule 16(a)(1)(E) requires, to mean whether the government can search the items consistent with the Fourth Amendment. The Court should decline to deviate from the plain text of the rule. And as for the communications between the government and counsel for various interviewees, the items are plainly material. Defendants are constitutionally entitled at trial to attack—or not attack, depending on the withheld discovery—the conduct of the investigation. There is no legitimate basis to resist production of these unprivileged communications which would show the depth of the enmeshment between the government and numerous key interviewees seeking to curry its favor.

For these reasons, Mr. Huizar respectfully requests that the Court grant the Motion to Compel.[1]

---

[1] The parties have resolved the request for Mr. Huizar's phone and withdraw that portion of the motion without prejudice.

1

## II. ARGUMENT

**A.    The Government Must Produce the Full Devices**

  1.    <u>The Devices Are Within the "Possession, Custody, or Control" of the Government</u>

*First*, the full devices are within the government's possession, custody, or control, which is all Rule 16(a)(1)(E) requires. Despite having full forensic copies of each of the devices, the government's opposition takes the position that only the warrant returns (*i.e.*, the items the case agent believed were related to the investigation) are in the "possession" of the government for purposes of Rule 16(a)(1)(E). But this technical gloss is found neither in the text of the Rule nor in precedent interpreting it. The Ninth Circuit has instead given "possession" a more pragmatic meaning, deeming even material within the sole possession of various federal agencies, rather than the U.S. Attorney's Office, subject to Rule 16(a)(1)(E) in the appropriate circumstances. *See, e.g.*, *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (government has "possession" for Rule 16(a)(1)(E) of documents at the Bureau of Prisons because prosecutors had knowledge of their existence and the ability to obtain them). Thus, the government's assertion that it "has no legal authority to re-access the digital devices or accounts," ECF No. 418 at 17, misses the point. Defendants are not asking the government to "search" the unproduced portions of the devices, they are asking the government to produce items it concededly has.

The two cases the government cites do not disturb this commonsense conclusion. In the first case, the government acquired an individual's iCloud account by warrant and searched the entire account for responsive documents. *United States v. Collins*, 409 F. Supp. 3d 228, 243 (S.D.N.Y. 2019). After defendants moved to compel the government to either search the non-responsive data for *Brady* and Rule 16 material or produce the data to defendants, the Court observed "the Government already conducted a search for Brady/Rule 16 Material when it searched Individual-5's iCloud data for responsive documents." *Id*. In other words, the government in *Collins* had in effect stated it had

2

already complied with Rule 16 with respect to the non-responsive data. The government has made no such representation here,[2] and are instead converting defendants' Rule 16 discovery request into a demand that the government "search" data the Fourth Amendment forbids it to do. And in the second case, the defendants sought "access" to third-parties' computers, servers, and digital accounts. *United States v. Salyer*, 271 F.R.D. 148, 165 (E.D. Cal. 2010). The government responded in opposition that it "imaged and promptly returned the company's computers" and "offered copies of all of this data" to defendant, which is what defendants here propose. *Salyer*, 2:10-CR-61-TLN, ECF No. 110 at 16–17 (Gov't Opp. to MTC). Hence, the *Salyer* court, in its conclusory seriatim order addressing 87 requests, rejected the defendant's request that the government produce items that it did not already possess. Neither case resolves the issues here.

*Second*, requiring the government to comply with Rule 16 would not impermissibly infringe on the device holders' Fourth Amendment rights. The Fourth Amendment is a protection against "searches and seizures" by the *government*; it is not a freestanding right to privacy enforceable against all comers.[3] Why defendants' Rule 16-authorized review of items in the possession of the government would rise to a Fourth Amendment violation is left unsaid and legally unsupported. Moreover, Esparza has already consented to a search of his devices. That the consent form authorizes "agents to take any items which they determine may be related to their investigation," ECF No. 418-4 at 3, is not a meaningful limitation. It is instead a total delegation of authority to the

---

[2] The government's opposition, while chastising defendants for their understanding of the extent of the case agent's review of the complete devices, does little to enlighten. *See generally* ECF No. 418 at 21–22 & n.9. But regardless of whether there was a Fourth Amendment violation, it appears undisputed that the case agent reviewed each communication in order to determine whether it was responsive and should therefore be seized.

[3] The government's pivot, arguing defendants' own devices would be subject to production, is puzzling. *See* ECF No. 418 at 23. Defendants have invoked Rule 16 to request specific items material to their defenses; they have not taken any position with respect to other items unsought by any party, and there is no reason for the Court to render an advisory opinion to that effect.

3

government to take what they please. Neither Esparza's nor the other device holders' emails to the government[4] accordingly have any bearing on whether the full devices are within the government's possession. And while the government expounds at length about the privacy interests at stake, that is justification for a protective order, not a basis to resist discovery.

*Third,* the devices and accounts for the cooperating witnesses[5] are also in the government's possession for purposes of Rule 16(a)(1)(e) because those individuals bound themselves as part of their plea agreements to produce any "documents, records, or other tangible evidence" upon request of the government. *See, e.g.*, *United States v. Goldman*, 2:20-CR-369-JFW, ECF No. 9 (Cooperation Plea Agreement) at 3. Given the government's unfettered ability to require these individuals to provide documents, courts have found that the government "possesses" them within the pragmatic meaning of Rule 16(a)(1)(e). *See, e.g.*, *United States v. Stein*, 488 F. Supp. 2d 350, 360–64 (S.D.N.Y. 2007) (holding deferred prosecution agreement that entitled government to demand production of documents from signatory rendered the documents within the government's "possession, custody, or control" and thus discoverable under Rule 16); *United States v. Kilroy*, 523 F. Supp. 206 (E.D. Wisc. 1981) (directing government to use its "best efforts" to obtain documents from third party cooperating with the government "in the preparation of the case and is making available to the Government for retention in the Government's files any records which [third party] has and which the Government wants"); *see also United States v. Tomasetta*, 2012 WL 896152, at *5 (S.D.N.Y. Mar. 16, 2012) ("If the Government has a written agreement with the third party giving it the legal right to obtain documents upon demand, however, the

---

[4] The means by which the government elicited these emails, following unrecorded phone conversations with cooperators and other potential key witnesses, only underscores why the full scope of communications between the government and such counsel is material to the defense.

[5] Those individuals include Esparza, Kim, Chiang, and Goldman.

4

Government may be in 'control' of such materials, even if in the possession of third parties.").[6]

### 2. The Devices' Contents Are Material

"Materiality is a low threshold; it is satisfied so long as [the items sought] would have helped [to] prepare a defense." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013). Importantly, a sought item can be "material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path." *Id.* (cleaned up); *see also United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Even inculpatory evidence may be relevant. A defendant who knows that the government has evidence that renders his planned defense useless can alter his trial strategy. Or he can seek a plea agreement instead of going to trial."); *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) ("The materiality standard normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.") (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).

The complete devices are patently material. For one, they are a necessarily limited slice of the conduct of the cooperators and other key figures. For example, Esparza or Kim's interactions with other government officials would allow defendants to develop a defense that Esparza and Kim were acting on their own behalf, rather than in the interests of an alleged CD-14 RICO enterprise. The interactions between the various interviewees, unless on their face related to the government's understanding of the charged schemes,

---

[6] The Court should reject the government's parade of horribles that it contends would result from adopting the commonsense position that documents the government can compel production of are in its possession. *See* ECF No. 418 at 26 n.12. It is of course of the government's own devise that these documents are in its possession; cooperation plea agreements are contracts of adhesion where the government, not the cooperating witness, required the clause permitting the government's demand of documents. The government cannot on the one hand insist on the right to have any documents it wishes while at the same time disavowing that very access.

would likely have not been deemed "related" to the investigation and therefore not within the scope of the warrant returns.

* * *

The government's case stands and falls with the testimony, or lack of testimony, of numerous individuals engaged in varying levels of cooperation with the government. As apparently even the government agrees, many of these individuals are liars. Defendants should not be required to accept only a portion of those individuals' devices and accounts handpicked by the case agent, who cannot reasonably prophesize defense strategy. *See United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1202 (C.D. Cal. 1999) ("Neither the government nor the Court is aware of the details of the defense strategy and therefore neither the government nor the Court can accurately determine which variations are important."). The complete devices and accounts are material, and hence subject to production under Rule 16(a)(1)(E)(i).

**B.    The Government Must Produce Communications With Counsel**

Communications between the government and counsel for the individuals identified in the Motion to Compel are material and must be produced under Rule 16(a)(1)(E)(i). As an initial matter, it is unclear from the government's opposition which communications it intends on producing. The government concedes only that it will produce "certain substantive communications between the government and counsel for witnesses where appropriate." ECF No. 418 at 29. Which "substantive communications" are appropriate for production, and which substantive communications the government does not intend on producing absent a court order, is left unsaid.

But in any event, the full set of communications is material to the defense. Without restating the above discussion of the meaning of materiality, it is well-established that defendants may properly challenge the government's case at trial by attacking the character and quality of the investigation. *Kyles v. Whitley*, 514 U.S. 419, 445 (1995) (defense can "attack not only the probative value of crucial physical evidence and the circumstances in which it was found, but the thoroughness and even the good faith of the

investigation, as well"); *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) ("In *Kyles v. Whitley*, the Court explained that information which might have raised opportunities to attack the thoroughness and even good faith of the investigation constitutes exculpatory, material evidence.") (cleaned up). Attacking the means by which the government has handled cooperating witnesses is a core strategy. *See Sudikoff*, 36 F. Supp. 2d at 1203 ("Thus, the Court concludes that information that reveals the process by which an accomplice witness and the government reach a leniency agreement is relevant to the witness's credibility because it reveals the witness's motive to testify against the defendant."). "To tell the jury that it may assess the product of an investigation, but that it may not analyze the quality of the investigation that produced the product, illogically removes from the jury potentially relevant information." *United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000).

These contacts between counsel for various relevant individuals and the government—and timing of those conversations—are essential to understanding the thoroughness and character of the investigation. As set forth in the Motion to Compel, the sudden recantations by Morrie Goldman and Businessperson A[7] came during an ongoing proffering relationship between those individuals, their lawyers, and the government. *See generally* ECF No. 381 at 22–23. The process by which Goldman's counsel—and thereby Goldman himself—came to understand the "bigger picture and from the FBI's view point," leading to the reversal, is a critical area of defense. Defendants need not simply accept the government's preferred version of Goldman's statements, but may instead probe the contacts between counsel and the government to test whether it came not from Goldman's independent recollection, or from an attempt to provide the government desired testimony to maximize § 5K1.1 credit.

Defendants are not limited to a narrow range of potential emails that contain explicit statements of the interviewees' positions. If, for example, the government

---

[7] Goldman and Businessperson A are cited in order to illustrate why these communications are material, but the same is true for each of the individuals identified in defendants' motion.

7

scheduled and held three unrecorded and undocumented calls with Goldman's counsel in between the sessions, that fact, as reflected in "non-substantive" scheduling communications or calendar entries, is material to preparing a defense, and could be used to cross Goldman, his counsel, or government agents.[8]

It bears noting that this is a concrete concern. As discussed in Mr. Huizar's Motion to Suppress related to the proffer agreement, ECF No. 282, the government spoke with Mr. Huizar's prior counsel following a proffer session in order to express to prior counsel that it believed Mr. Huizar had been untruthful on certain points. *See* ECF No. 282-1 (Podberesky Decl.) at ¶ 8. Following further proffers, the government, on the phone, told prior counsel that it was "much more convinced" and that they would "call that significant progress." *Id.* ¶ 14. The government also told prior counsel that she should continue "to be encouraged" about Mr. Huizar's "truthfulness and helpfulness." *Id.* It is not difficult to imagine how these sorts of backchannel communications between the government and counsel for individuals seeking leniency affect an individual's "view point."[9]

The government certainly may contest that any such contact happened with any of the individuals named in the motion. But defendants are entitled under Rule 16 to these items to prepare and present, or even to abandon, a defense sounding in this theory. The items are therefore material and must be produced under Rule 16.[10]

---

[8] And even if no such communications existed, the request is material because it would cause defendants to take another tack in defending the case. *Hernandez-Meza*, 720 F.3d at 768.

[9] The government therefore misapprehends the items sought. *See* ECF No. 418 at 30 ("Presumably, defendants are arguing that they are entitled to materials reflecting 'unrecorded conversations' with witnesses' counsel about whether the government believed or doubted a witness account at any given time.").

[10] The government moreover misconceives the items sought as subject to production only under *Brady/Giglio* or as Jencks Act material, and therefore recharacterizes defendants' request as modifying the disclosure deadlines. *See* ECF No. 418 at 30. But as the papers reflect, there is instead a fundamental disagreement between the government and defendants over the scope of the government's discovery obligations under both Rule 16 and *Brady/Giglio*. As set forth in the papers, these communications are both, and regardless of the deadline for the latter, they should be produced under Rule 16 promptly.

8

## III. CONCLUSION

For the above reasons, Mr. Huizar respectfully requests the Court grant the Motion to Compel.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 14, 2022          By  */s/ Adam Olin*

Carel Alé
Charles J. Snyder
Adam Olin
Deputy Federal Public Defenders
Attorneys for José Luis Huizar