CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Carel Alé (Bar No. 283717)
(E-Mail: Carel_Ale@fd.org)
Charles Snyder (Bar No. 287246)
(E-Mail: Charles_Snyder@fd.org)
Adam Olin (Bar No. 298380)
(E-Mail: Adam_Olin@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-4740
Facsimile: (213) 894-0081

Attorneys for Defendant
JOSÉ LUIS HUIZAR

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSÉ LUIS HUIZAR, *et al.*,<br><br>    Defendants. | Case No. 20-CR-0326-JFW<br><br>**JOINT STATEMENT RE: DEFENDANTS' MOTION TO COMPEL [ECF NO. 381]** |

Pursuant to the Court's order issued at the March 7, 2022 hearing, defendant José Luis Huizar, on behalf of all defendants, and plaintiff United States of America, through their respective counsel, hereby file this joint statement regarding defendants' Motion to Compel, ECF No. 381.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  April 18, 2022         By:  /s/ Adam Olin
                                      Carel Alé

1

2

Charles J. Snyder
Adam Olin

3

4

Attorneys for Defendant
JOSÉ LUIS HUIZAR

5

6

[And on Behalf of Defendants]

7

DATED:  April 18, 2022          By: _/s/ Veronica Dragalin___

8

9

10

Mack E. Jenkins
Veronica Dragalin
Cassie D. Palmer
Susan S. Har

11

12

Attorneys for Plaintiff
UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# JOINT STATEMENT

## I.   GEORGE ESPARZA'S DEVICES/ACCOUNTS

### A.   Defendants' Position

George Esparza is the key cooperator in the government's case. His produced 302s suggest he will be expected to testify regarding the core of the charged RICO conspiracy and underlying acts. Esparza's contemporaneous conduct, communications, and interactions with critical witnesses, including Justin Kim, are essential for defendants to prepare to cross-examine him at trial. The limited portions produced to date—whether initially acquired by search warrant or later by consent—do not reflect the full breadth of Esparza's conduct. They instead correspond to the portions the government, while searching the entire devices, believed were relevant to their investigation, a necessarily different consideration than what would be material to a defense. Hence, issues which the government has, through its charging decisions, deemed irrelevant are nevertheless germane to defense strategy. For example, one early reason the government gave for not providing the full devices was that the phones contained information about other politicians. The cooperators' dealings with other politicians would tend to show that they were not, as the government claims, working to prop up a CD-14 enterprise but working across districts with multiple politicians in furtherance of their own individual political ambitions. The full contents of the devices are material within the meaning of Rule 16(a)(1)(E)(i).

These materials are also squarely within the government's possession, custody, or control, which is what Rule 16(a)(1)(E) requires. The government obtained them by warrant and by consent, and Rule 16(a)(1)(E) only demands that the government have possession of the materials, not that the government has unfettered authority to search them. But more to the point, Esparza executed a cooperation plea agreement by which he bound himself to voluntarily produce any "documents, records, or other tangible evidence" to the government upon request. *See United States v. Esparza*, 2:20-CR-208-JFW, ECF No. 9 at 3. Hence, even to the extent the government stands on the argument

that it does not "possess" the forensic copies of the devices it acquired by search warrant, it has the authority to require Esparza to produce to it the full requested devices. That power renders Esparza's devices within the government's power to hand over.

### B.  Government's Opposition

<u>Devices Are Not in the Government's Possession.</u>  Imaged copies of the digital devices at issue are not in the government's possession within the meaning of Rule 16 because the government has no legal authority to re-access the copies or the devices <u>after</u> (1) the court-authorized time to search the devices for relevant and identified evidence pursuant to the warrants has long lapsed, and (2) the limited purpose for accessing the devices in the first instance (<u>i.e.</u>, seizure of enumerated categories of items)—as authorized by the warrant and by Esparza's consent—has been completed. This is particularly true where Esparza has specifically objected to further searches without any justification, thereby affirmatively asserting his Fourth Amendment rights, right to privacy, and other related rights and privileges.  An individual who signs a cooperation plea agreement does not abandon those rights.

<u>No Threshold Showing of Materiality.</u>  Defendants' implied admission that they seek a fishing expedition does not satisfy the requisite threshold showing of materiality under Rule 16, and defendants have not otherwise met their burden to make a "presentation of facts" that would tend to show the devices contain information helpful to the defense, particularly considering the amount of impeachment evidence already provided by the government.

### C.  Defendants' Reply

The government's legal authority to itself search the devices is not the relevant question for Rule 16, which requires only possession. Even if it were, the government has rendered Esparza's devices within its possession by executing a contract with him that allows it to obtain them upon demand. Moreover, Esparza's consent functionally gave the government the unfettered right to take whatever it wished; it is not a meaningful limitation. As the Court is aware, Esparza was in routine contact with many of the key

individuals during the relevant period, and defendants are entitled to analyze the extent and nature of those contacts even if the case agent does not deem them "related" to the government's view of the scope of the investigation. That some impeachment evidence has already been produced does not affect whether the items are material.

## II.   JUSTIN KIM'S DEVICES/ACCOUNTS

### A.   Defendants' Position

For the same reasons stated above, Kim's devices and accounts should be produced, in light of Kim's cooperation plea agreement. *See United States v. Kim*, 2:20-CR-154-JFW, ECF No. 7 (Cooperation Plea Agreement) at 3.

### B.   Government's Opposition

For the same reasons stated above, the devices are not in the government's possession and defendants have made no threshold showing of materiality.   This is particularly true where Kim has specifically objected to further searches without any justification, thereby affirmatively asserting his Fourth Amendment rights, right to privacy, and other related rights and privileges.

### C.   Defendants' Reply

Kim is the government's key cooperator in its case against Defendants Dae Yong Lee and 940 Hill, LLC. As with Esparza, it is apparent from the limited materials the government produced that it did not produce all materials in its possession relating to Kim's conduct. And as it did with Esparza, the government previously took the position that it needed to withhold certain information about Kim because of its relationship to ongoing investigations that involved other elected officials. Accordingly, and in light of his cooperation plea agreement, complete versions of Kim's devices and accounts should be produced to defense counsel for the same reasons that Esparza's should be. *See United States v. Kim*, 2:20-CR-154-JFW, ECF No. 7 (Cooperation Plea Agreement) at 3.

## III.   RICKY ZHENG'S DEVICES/ACCOUNTS

### A.   Defendants' Position

The government has possession of a full forensic copy of Zheng's phone that it acquired via search warrant. ECF No. 418 at 16; *see also id.* at 10 ("As authorized by the search warrants and as customary, agents created a complete mirror of the [ESI]…."). This information is in the possession of the government, within the meaning of Rule 16(a)(1)(E), regardless of whether the government may search it anew. As with Esparza, the limited portions seized and already produced reflect only the items the case agent deemed relevant to the government's investigation and case when executing the warrant. The full extent of the relationships between these critical individuals, including Zheng, is material to the defense, even where the government may not view the contacts as relevant to allegations of misconduct by the defendants.

### B.    Government's Opposition

For the same reasons stated in the Esparza opposition, the devices are not in the government's possession and defendants have made no threshold showing of materiality. This is particularly true where Zheng has specifically objected to further searches without any justification, thereby affirmatively asserting all relevant rights and privileges, and the government has already provided significant impeachment evidence related to him.

### C.    Defendants' Reply

Defendants incorporate their reasons stated above.

## IV.    GEORGE CHIANG'S DEVICES/ACCOUNTS

### A.    Defendants' Position

For the reasons stated above, Chiang's devices and accounts should be produced, in light of Chiang's cooperation plea agreement. *See United States v. Chiang*, 2:20-CR-203-JFW, ECF No. 7 (Cooperation Plea Agreement) at 3.

### B.    Government's Opposition

For the same reasons stated in the Esparza opposition, the devices are not in the government's possession and defendants have made no threshold showing of materiality. This is particularly true where Chiang specifically objected to further searches without

any justification, thereby affirmatively asserting all relevant rights and privileges, and the government has already provided significant impeachment evidence related to him.

### C.    Defendants' Reply

Defendants incorporate their reasons stated above.

## V.    BUSINESSPERSON A'S DEVICES/ACCOUNTS

### A.    Defendants' Position

Businessperson A executed a consent for the government to search his phone for items "related to their investigation." The government asserts it searched in conformance with search warrants authorized in November 2018 but the plain meaning of the waiver, "related to their investigation," is broader than the November 2018 warrant. Even if the government did limit its own search of the device in this way, that does not change the expansive and plain meaning of the waiver. The government should produce the entire copy of the device for the same reasons as for Zheng.

### B.    Government's Opposition

For the same reasons stated in the Esparza opposition, the devices are not in the government's possession and defendants have made no threshold showing of materiality. For Businessperson A, the government searched the cellphone pursuant to a limited consent for items "related to their investigation," which agents identified by following the "items to be seized" in the November 2018 omnibus search warrant.  (CR 381-6, Def. Ex. E (Businessperson A consent); Gov. Ex. 2 (1/27/21 FBI report).)  The government has no legal authority to access information on the phone beyond this limited consent. This is particularly true where Businessperson A has specifically objected to further searches without any justification, thereby affirmatively asserting all relevant rights and privileges, and the government has already provided significant impeachment evidence related to him.

### C.    Defendants' Reply

Defendants incorporate their reasons stated above.

## VI.    SHAWN KUK'S DEVICES/ACCOUNTS

### A.    Defendants' Position

The government obtained a copy of Kuk's devices and accounts by search warrant. ECF No. 418 at 16. They should be produced for the same reasons as for Zheng.

### B.    Government's Opposition

For the same reasons stated in the Esparza opposition, the devices are not in the government's possession and defendants have made no threshold showing of materiality. This is particularly true where Kuk has specifically objected to further searches without any justification, thereby affirmatively asserting all relevant rights and privileges, and the government has already provided significant impeachment evidence related to him.

### C.    Defendants' Reply

Defendants incorporate their reasons stated above.

## VII.   JOHN CARLIN'S DEVICES/ACCOUNTS

### A.    Defendants' Position

The government obtained a copy of Carlin's devices and accounts by search warrant. ECF No. 418 at 16. They should be produced for the same reasons as for Zheng.

### B.    Government's Opposition

For the same reasons stated in the Esparza opposition, the devices are not in the government's possession and defendants have made no threshold showing of materiality. This is particularly true where Carlin has specifically objected to further searches without any justification, thereby affirmatively asserting all relevant rights and privileges.

### C.    Defendants' Reply

Defendants incorporate their reasons stated above.

## VIII.  MORRIE GOLDMAN'S DEVICES/ACCOUNTS

### A.    Defendants' Position

The government's opposition states it does not possess any forensic images of Goldman's devices or accounts. ECF No. 418-1 at ¶ 6. But because Goldman's cooperation plea agreement, as with Esparza's, requires him to produce all "documents,

records, or other tangible evidence" upon request of the government, those items are within its possession for purposes of Rule 16. *See United States v. Goldman*, 2:20-CR-369-JFW, ECF No. 9 (Cooperation Plea Agreement) at 3. The government should produce them for the reasons explained with respect to Esparza.

### B. Government's Opposition

The government never obtained search warrants or consents for Morrie Goldman's digital devices or accounts and has no such items in its possession. An individual who signs a cooperation plea agreement does not abandon Constitutional and privacy rights. Defendants have made no threshold showing of materiality. Moreover, the government has already provided significant impeachment evidence related to Goldman.

### C. Defendants' Reply

Defendants incorporate their reasons stated above.

## IX. EXECUTIVE M'S DEVICES/ACCOUNTS

### A. Defendants' Position

The government obtained a copy of Executive M's devices and accounts by search warrant. ECF No. 418 at 16. They should be produced for the same reasons as for Zheng.

### B. Government's Opposition

For the same reasons stated in the Esparza opposition, the devices are not in the government's possession and defendants have made no threshold showing of materiality. This is particularly true where Executive M has specifically objected to further searches without any justification, thereby affirmatively asserting all relevant rights and privileges, and the government has already provided significant impeachment evidence related to him.

### C. Defendants' Reply

Defendants incorporate their reasons stated above.

## X. COMMUNICATIONS WITH COUNSEL FOR INTERVIEWED INDIVIDUALS[1]

### A. Defendants' Position

Defendants request the production of all communications and evidence of communications, including scheduling notices, non-privileged notes, or other documentation of communications between the government and: (i) George Esparza; (ii) Justin Kim; (iii) Ricky Zheng; (iv) George Chiang; (v) Businessperson A; (vi) Jonathan Zuniga; (vii) Shawn Kuk; (viii) Morrie Goldman; (ix) Company M; (x) Executive M; (xi) Company D; (xii) Chairman D; (xiii) Greg Sun; (xiv) Michael Bai; and (xv) Councilmember D, and/or their counsel.

These items are material within the meaning of Rule 16(a)(1)(E)(i), and defendants should not be limited to receiving communications the government deems "substantive." Defendants are entitled to challenge the manner in which the investigation was conducted, including the means by which the government coalesced around a coherent factual theory from the many competing narratives told by various interviewed third parties. The government's decision to dole out non-prosecution agreements to certain individuals, plea agreements to others, and no agreements to yet others (thereby reasonably ensuring they would not testify out of concern of prosecution), was necessarily the product of extensive back-and-forth with those individuals and their counsel. The manner by which certain individuals' stories changed through the investigation is patently material to the defense. As an example, the 302 for the later interview at which Goldman recanted his prior interview statements notes that his counsel "advised [him] to conduct a more critical analysis from a bigger picture and from the FBI's view point." *See generally* ECF No. 381 at 23 (setting forth Goldman's recantation). The frequency and the nature of communications between Goldman's counsel and the government—*e.g.*, were there numerous emails scheduling calls—are

---

[1] Counsel believe these items are most efficiently addressed categorically.

material to preparing a defense including by allowing the defense to probe the government's involvement in his shifting story, and how the FBI's "view point" impacted Goldman. *See also id.* at 23 (setting forth similar reversal by Businessperson A).

There is moreover no basis to separate out testifying versus non-testifying individuals from the scope of this request. After having engaged in protracted interactions with all these individuals and their counsel,[2] one can reasonably assume the government intends on calling the individuals who were willing to testify as the government wished. How the investigation dealt with non-testifying individuals (*i.e.*, those not willing to so testify or whose testimony does not support the government's theories) is material to the defense. For example, did the government continue attempting to speak to interviewees who denied that the defendants had engaged in criminal conduct? Or did they quickly focus on willing cooperators caught in lies like Esparza and Kim? Hence, these communications and contacts are material even for individuals the government does not intend on calling at trial.

## B.    Government's Opposition

No Threshold Showing of Materiality.  Defendants' implied admission that they seek a fishing expedition into a broad swath of the prosecution team's communications with other individuals' counsel, prosecutors' calendars, and related materials does not satisfy the requisite threshold showing of materiality under Rule 16, and defendants have not otherwise met their burden to make a "presentation of facts" that would tend to show these materials contain information helpful to the defense.

This is particularly true where defendants seek attorney communications (1) vis-à-vis non-testifying witnesses, and (2) as it relates to testifying witnesses, purportedly reflecting unrecorded conversations with the witnesses' counsel, or for inferences of a prosecutor's credibility opinion, which is irrelevant and not Brady.  Discovery rules and

---

[2] Indeed, the government's opposition to the Motion to Compel suggests there are "thousands of emails" with counsel for these individuals. ECF No. 418 at 31.

cases treat testifying witnesses differently from non-testifying individuals. The government has already provided and will continue to produce any underlying exculpatory <u>facts</u> learned from witnesses' counsel and any benefits provided or offered to a testifying witness via his/her counsel, consistent with its obligations under <u>Brady/Giglio</u>.

### C.    Defendants' Reply

The scope and nature of contacts between the government and key figures in the investigation are squarely within the permissible bounds of a trial defense, and thus material for Rule 16(a)(1)(E)(i). Rather than a "fishing expedition," already-produced discovery reflects numerous individuals radically altered their accounts while their counsel conducted unrecorded conversations with the government. Defendants are entitled to investigate this and challenge it at trial.

## XI.    HUIZAR'S PHONE

The parties have resolved this item via meeting and conferring.