1  **UNITED STATES DISTRICT COURT**

2  **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3  **HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE**

4

5  UNITED STATES OF AMERICA,        )
                                    )
6          PLAINTIFF,               )    CASE NO.
                                    )
7          vs.                      )    CR 20-326-JFW
                                    )
8  JOSE LUIS HUIZAR, et al.,        )
                                    )    PAGES 1 TO 41
9          DEFENDANTS.              )
  _____)

10

11

12

13                 **REPORTER'S TRANSCRIPT OF**
                     **STATUS HEARING**
14                 **FRIDAY, MARCH 25, 2022**
                       **8:56 A.M.**
15                 **LOS ANGELES, CALIFORNIA**

16

17

18

19

20

21

22

23  _____

24            **MIRANDA ALGORRI, CSR 12743, RPR, CRR**
              FEDERAL OFFICIAL COURT REPORTER
              350 WEST 1ST STREET, SUITE 4455
25            LOS ANGELES, CALIFORNIA 90012
              MIRANDAALGORRI@GMAIL.COM

1        **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4        NICOLA T. HANNA
         UNITED STATES ATTORNEY
5        BY:  MACK JENKINS
         BY:  VERONICA DRAGALIN
6        BY:  CASSIE PALMER
         Assistant United States Attorneys
7        United States Courthouse
         312 North Spring Street
8        Los Angeles, California 90012

9

    **FOR THE DEFENDANT HUIZAR:**

10

         HILARY L. POTASHNER
11       FEDERAL PUBLIC DEFENDER
         BY:  CAREL ALÉ
12       BY:  ADAM OLIN
         Deputy Federal Public Defenders
13       Central District of California
         321 East Second Street
14       Los Angeles, California 90012

15

    **FOR DEFENDANT CHAN:**

16

         BRAUN & BRAUN, LLP
17       BY:  HARLAND BRAUN
         10880 Wilshire Boulevard
18       Suite 1020
         Los Angeles, California 90024

19

20   **FOR THE DEFENDANT SHENZHEN NEW WORLD I AND DEFENDANT CHAN:**

21       LAW OFFICES OF RICHARD M. STEINGARD
         BY:  RICHARD M. STEINGARD
22       800 Wilshire Boulevard
         Suite 1050
23       Los Angeles, California 90017

24

25

1        **APPEARANCES OF COUNSEL CON'T:**

2

**FOR THE DEFENDANTS LEE AND 940 HILL:**
3

        BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG & RHOW
4       BY:  ARIEL A. NEUMAN
        1875 Century Park East
5       23rd Floor
        Los Angeles, California 90067
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|  |  |  |
|---|---|---|
|  | 1 | **LOS ANGELES, CALIFORNIA; FRIDAY, MARCH 25, 2022** |
|  | 2 | **8:56 A.M.** |
|  | 3 | --- |
|  | 4 |  |
| 08:56AM | 5 | THE CLERK:  Calling item 2, CR 20-326(A)-JFW, |
|  | 6 | United States of America versus Jose Luis Huizar, et al. |
|  | 7 | Counsel, please state your appearances. |
|  | 8 | MR. JENKINS:  Good morning, Your Honor. |
|  | 9 | Mack Jenkins, Veronica Dragalin, Special Agent |
| 08:56AM | 10 | Andrew Civetti, and AUSA Cassie Palmer on behalf of the |
|  | 11 | United States. |
|  | 12 | MS. ALÉ:  Good morning, Your Honor. |
|  | 13 | Carel Alé from the Federal Public Defender's |
|  | 14 | Office along with Adam Olin for Mr. Huizar who has waived his |
| 08:57AM | 15 | appearance for today. |
|  | 16 | MR. BRAUN:  Good morning, Your Honor. |
|  | 17 | Harland Braun, B-r-a-u-n, for Mr. Chan who is |
|  | 18 | present in the audience. |
|  | 19 | MR. NEUMAN:  Good morning, Your Honor. |
| 08:57AM | 20 | Ariel Neuman for Dae Yong Lee whose waiver is on |
|  | 21 | file and for 940 Hill, LLC. |
|  | 22 | MR. STEINGARD:  Good morning. |
|  | 23 | Richard Steingard for ShenZhen New World I. |
|  | 24 | THE COURT:  All right.  Good morning to all.  In |
| 08:57AM | 25 | light of the Court's calendar, I wasn't able to set this matter |

for status conference based upon the issues that have arisen
with respect to modifying the scheduling order until this
morning.  I'm not sure how much we will be able to accomplish
this morning because we have a deliberating jury.

In any event, by way of background, on May 13 in
docket No. 187, I continued the trial in this case and set
various agreed-upon pretrial dates in an effort to manage this
complex case.  In February of 2022 in docket No. 368, I
continued the trial to October 18th over the objection of
Co-defendants Lee and SZNW and set revised pretrial dates based
upon that new trial date.

Then on March 7 of 2022, I severed Mr. Lee and
940 Hill and Mr. Steingard's client SZNW, and we discussed and
tentatively agreed to trial dates for the severed trials, the
first of which was for Mr. Neuman's client, and that trial date
was agreed to -- tentatively agreed to commence on June 14th.
And as to Mr. Steingard's client, it was tentatively agreed to
for August 2nd of 2022.

The Court did not set any new pretrial dates
because I was confident -- it turned out overly confident --
that counsel would be able to agree on new dates.  But based
upon docket Nos. 403, 404, 407, and 408, apparently I was
incorrect in terms of whether or not counsel would be able to
come to an agreement.

I can tell you that -- well, I can tell you today

that I'm not going to sit here and negotiate the dates with

you.  This is my least favorite exercise in terms of coming up

with dates.  And I find it, quite frankly, disappointing that

counsel couldn't come up with agreed-upon dates.  But I have

09:00AM   some suggestions.

First, let me tell the Government that any

attempt to modify this schedule based on the Court's case that

I tried in *Elmezayen* is not helpful nor persuasive.  This case

is far more complex than *Elmezayen*.  Although there were a lot

09:01AM   of trial exhibits in *Elmezayen*, most of them were not very

controversial, and we were able to manage that case on pretrial

filings and disclosures which cut the case down from a

three-week trial -- we ended up -- somebody has correctly

counted the days.  I don't remember, or course.  It was a

09:01AM   nine-day trial which was originally estimated for three or four

weeks.  But this case is far different than *Elmezayen*.  I don't

know why you picked that case.

In any event, second, I don't agree that, because

the trials have been severed, that the severance requires a

09:02AM   reduction in the pretrial conference -- the pretrial dates that

govern the preparation of the actions for trial.  The whole

purpose of the Court's scheduling order is to give all counsel

an opportunity to resolve as many issues as can be resolved

pretrial so that we can all be comfortable that, when we do

09:02AM   start the trial, all of these pretrial issues have been

1    resolved and, based upon my experience in complex cases, one of

2    which was the *Elmezayen* case, it significantly reduces the time

3    that it takes to try a case.  That's the goal that I have in

4    this case, and that's the goal we have all had since the

09:03AM    5    beginning of this case.

6              The schedule also gives the Court an opportunity

7    to spend its limited resources to resolve these pretrial issues

8    so that we have a streamlined trial which I think is beneficial

9    for all concerned.  Some of the schedules that have been

09:03AM    10    proposed simply don't give me enough time.

11             The consistent backlog that we have of criminal

12    cases and the consistent failure to fill our remaining openings

13    have basically required the Court to stop trying civil cases

14    until we can devote our energies to resolving all of the

09:04AM    15    criminal cases that we have, many of which are custody cases.

16    And every trial date that I set is always subject to

17    continuance because, if I have a custody case, that custody

18    case is going to take priority over any non-custody case which

19    this case certainly is a non-custody case.

09:04AM    20             So with that, I'm somewhat confused and, quite

21    frankly, I started this very early -- I looked at it over the

22    weekend, and then started it very early this morning.  Again,

23    my least favorite exercise is to try to figure out dates.

24             Let me just begin to make sure I have an

09:05AM    25    understanding of what the dispute is.  The Government has

|     |     |
| --- | --- |
| 1 | proposed a schedule for each of the three trials, and that |
| 2 | schedule is set forth on page 11 of the Government's filing |
| 3 | which is docket No. 403.  So that's where we begin. |
| 4 | You have also -- I just noticed this because I'm |
| 5 | looking at the order that appears as docket No. 30 -- 368.  So |
| 6 | the Government has also modified the agreed-upon dates in the |
| 7 | order that I signed which is 368 in column No. 3 of |
| 8 | docket No. 403; is that correct? |
| 9 | MS. DRAGALIN:  Yes, Your Honor. |
| 10 | THE COURT:  Okay.  So that's where we begin. |
| 11 | Then the first set of issues with respect to |
| 12 | dates are Mr. Neuman's client, and those -- Mr. Neuman, again, |
| 13 | I'm working back and forth with the number of different |
| 14 | documents.  So your docket No. 404 has a joint trial court |
| 15 | order which is column No. 1.  Those dates run or are copied |
| 16 | from the existing dates in the order 368? |
| 17 | MR. NEUMAN:  Correct. |
| 18 | THE COURT:  Is that correct? |
| 19 | MR. NEUMAN:  Yes. |
| 20 | THE COURT:  Okay.  And then you figured out the |
| 21 | dates before trial.  And then you have another column which is |
| 22 | the Government's proposal column.  Those dates don't appear to |
| 23 | be consistent with the dates that the Government has proposed |
| 24 | in 403. |
| 25 | MR. NEUMAN:  Correct.  This was the proposal that |

09:05AM (line 5)
09:06AM (line 10)
09:06AM (line 15)
09:07AM (line 20)
09:07AM (line 25)

we thought we were negotiating immediately after severance that

week -- or actually that day I contacted Government counsel to

negotiate dates.  They sent the dates that are in this

column 3.

09:07AM        THE COURT:  All right.  So those aren't dates

that ended up in the joint -- in their docket 403.

               MR. NEUMAN:  That's correct.  These are the dates

we were negotiating back to.  So the last column is our

response to their initial proposal which, as you will see,

09:08AM  largely accepts it but does modify a few dates.  And it was

after that that on I believe it was the following -- I think we

sent this on a Thursday and on a Monday they sent what appears

in 403.

               THE COURT:  All right.  So the dates that appear

09:08AM  in 403, the Government's proposed dates do not appear in your

document.

               MR. NEUMAN:  That's correct because what I was

operating off of is what was originally proposed by the

Government and then just apparently taken back.

09:08AM        THE COURT:  All right.  I have to go back again.

I'm not going to sit here and go through these dates.  So it

doesn't seem to me like these dates are that much -- there's

that much difference in these dates.

               MR. NEUMAN:  Between 403 and these dates,

09:09AM  Your Honor, or between our --

 1          THE COURT:  Between 403.

 2          MR. NEUMAN:  There are, Your Honor.  The most

 3   significant is that the proposal both that they originally

 4   proposed and that we responded to set the disclosure dates

09:09AM   5   largely in April for most witness exhibit -- excuse me --

 6   witness list, exhibit list.  They have MIL filings in April, a

 7   hearing on MIL's in early May whereas the new proposal in 403

 8   puts all of that basically at the end of May, early June except

 9   for the MIL hearing.  Basically there would be no further

09:09AM  10   disclosures except a *Giglio/Brady* declaration until May 23rd.

11          THE COURT:  I guess this doesn't answer the

12   question in terms of what has been disclosed.

13          MR. NEUMAN:  I talked about it in the filing, but

14   I'm happy to discuss it with the Court.

09:10AM  15          THE COURT:  Again, I'm not going to sit here and

16   go through each of these dates.  I was looking at the schedule

17   for the -- the original schedule for the May 24th, '22, trial

18   which is docket No. 187.  I thought those dates were probably

19   most relevant dates because at one point in time I had advised

09:10AM  20   all counsel that they should continue to work -- continue to

21   work consistent with those dates and, even if I continued the

22   trial, I thought that those pretrial dates were in the

23   ballpark.

24          MR. NEUMAN:  That's what we were operating under

09:11AM  25   as well, Your Honor, when we were -- when we responded to the

```
      1    Government's initial proposal trying to align with those dates

      2    in 187 -- document 187 -- excuse me -- accounting for the fact

      3    that the trial had been continued by a couple weeks and giving

      4    them a little space because they said they needed a little

09:11AM   5    breathing room but largely trying to track those dates, and the

      6    Government doesn't agree.

      7              THE COURT:  All right.  So, Mr. Jenkins, what's

      8    the problem?

      9              MR. JENKINS:  Your Honor, I will let

09:11AM  10    AUSA Dragalin, with the Court's indulgence, respond.

     11              THE COURT:  Okay.

     12              MS. DRAGALIN:  Your Honor, we have produced a

     13    draft exhibit list and draft witness list to Defendant Lee's

     14    counsel.  I would estimate that about 90 percent of our

09:11AM  15    exhibits are already identified on that list.  We are

     16    continuing to finalize our exhibit list so that, by the time we

     17    have the court-required meet and confer, we're actually talking

     18    about the documents that will be introduced at trial.  So we're

     19    finalizing that.  We're going through that process now.  We're

09:12AM  20    setting witness prep sessions.  In our experience, when we meet

     21    with witnesses again to prepare them for trial, some of whom we

     22    haven't spoken to in two years, we may identify additional

     23    documents that we need to add to our exhibit list for purposes

     24    of trying this case.

09:12AM  25              So all we're asking for is to get a more
```

finalized -- an actual final exhibit list that we're ready to

present to the defense so that we're having meet and confer

efforts about actual documents that would be exhibits at trial.

So we have identified the universe of key

documents already for all defendants for their respective

cases, and we're just asking for a little bit more time to

finalize our trial preparations when we meet with witnesses and

can come up with the admissible evidence that the Government

ultimately intends to introduce at these respective trials.

THE COURT:  So what's the difference in the

current dates with respect to the -- with the exhibits?  Do you

have May 23rd as your -- Government's pretrial exhibit list.

And, Mr. Neuman, you have --

MR. NEUMAN:  April 4th.

THE COURT:  I thought it was April 15th.  I'm

sorry.  April 4th.

MR. NEUMAN:  That's what the Government

originally proposed was April 15th.  That was the day -- two

days after severance.  Now they've gone back and said May 23rd.

We came back to the April 15th date and said April 4th is more

in line with the Court's comments about continuing to prepare.

And that's where we kind of came up with that day and trying to

get the witness and exhibit list finalized in advance to the

motion in limine because -- I don't want to get into the

details, but there's a number of issues with the draft,

especially exhibit list, that we have been given.

THE COURT:  So how many exhibits have been listed on this exhibit list?

MR. NEUMAN:  It's hard to say exactly, Your Honor.  And this is one of the things I sent to counsel last night.  There's 103 that we can identify.  Some of those, though, are attachments to e-mails identified as separate documents.  There seems to be duplicates.  And in the Government's status report, there's at least an indication that there's going to be 200 exhibits for the 940 Hill trial.  Now, that may not be the case, but there's an indication of that. I'm glad to hear we have 90 percent of them, but that doesn't appear consistent with what was in the status report.

MS. DRAGALIN:  To be clear, the Government stated it will be less than 200.  That's an overestimation to set a -- to inform the Court that we don't think this trial will be that complicated.  The David Lee trial is relatively straightforward, not very document heavy.  So 200 was a maximum outside boundary.  We expected it to be less than 200.

THE COURT:  So it's not that complicated, and there are not that many exhibits.  Why isn't the Government able to produce the exhibits next week?

MS. DRAGALIN:  We have produced the exhibits we have already identified.  We're asking for a chance to meet with our witnesses and add 10 percent more exhibits while we

```
 1    finalize our trial preparation.
 2              THE COURT:  So you have actually produced paper
 3    copies of the exhibits to the defense?
 4              MS. DRAGALIN:  We have given them the Bates
 5    numbers to the exact documents that we intend to use as
 6    exhibits.
 7              THE COURT:  And they're on a list somewhere?
 8              MS. DRAGALIN:  Yes.  They're in -- we gave that
 9    list in an Excel form to the Government -- to the defense.
10              MR. NEUMAN:  Like I said, Your Honor, there's a
11    lot of problems -- there's a lot of duplications on the list.
12    There are -- there's a number of issues.  I don't want to get
13    the Court involved in the nitty-gritty of it.
14              But I'm fine with them if they need to add a
15    couple documents as we go.  But the representation to us was
16    this is an early draft exhibit list.  We can't get you the full
17    exhibit list until this May 23rd date.  The Court had indicated
18    they should be ready to do it within a week of severance.  We
19    suggested two or three weeks from severance, and we're told no.
20              So I don't know why they need until May 23rd.  If
21    they need to add a document or two after April 4th when we're
22    asking for disclosure, I'm not looking to jam them here.  I'm
23    looking to figure out where in this massive discovery their
24    exhibits are going to be pulled from.
25              Even this week they identified additional
```

1    documents to us that they apparently knew about but didn't

2    disclose on the exhibit list.  So there's an issue here.

3              THE COURT:  More importantly, there's a

4    meet-and-confer process.  So that's where the -- that's where

09:17AM    5    the issues -- even if you disclose 90 -- if there's another

6    10 percent to disclose, as Mr. Neuman is indicating, he doesn't

7    mind if those come later because ultimately at the

8    meet-and-confer process you're going to sit down and have all

9    of the exhibits, and that's going to generate the final

09:17AM   10    pretrial exhibit stipulation.  And you will be able to discuss

11    each of those exhibits and what their -- and formulate any

12    objections that you may have.  And if you don't have any

13    objections, there's going to be a place in the pretrial exhibit

14    stipulation.

09:17AM   15              So all of this jockeying back and forth with

16    respect to trial exhibits to me is a nonissue because

17    ultimately the meet-and-confer process -- or the meet and

18    confer is really the main event that is going to be

19    determinative of how many of these exhibits are going to be

09:18AM   20    pre-admitted and how many are going to be objected to and then

21    how are we going to resolve those objections.

22              MR. NEUMAN:  Understood.  I think what we're

23    trying to do is build in a buffer there where we can look at

24    these exhibits, examine them, and come to that meet and confer

09:18AM   25    in a meaningful way and also address any issues in the motions

1    in limine that need to be addressed whereas the Government has

2    a much shorter time frame for that to occur much closer to

3    trial.

4              THE COURT:  But if you have 90 percent of them,

09:18AM    5    you should be able to sit down and do that now.

6              MR. NEUMAN:  That wasn't my impression until this

7    moment, Your Honor.

8              THE COURT:  Okay.  All right.

9              MR. NEUMAN:  I do think -- the other issue,

09:18AM    10   Your Honor -- and this is up to the Court's preference -- I

11   would go with what the Court previously said about having

12   motions in limine heard earlier and resolved earlier.

13             THE COURT:  Well, the problem that you folks are

14   going to run into is that I only have a limited amount of

09:19AM    15   resources to devote to this case.

16             MR. NEUMAN:  Right.

17             THE COURT:  I have already devoted a significant

18   amount of time ruling on all the pretrial motions which I'm

19   more than willing to do because obviously this is a very

09:19AM    20   important case to both sides and it presents very interesting

21   issues.

22             But, quite frankly, we're running out of room to

23   continue to spend that kind of time.  I want to have the

24   motions in limine heard -- filed and heard much earlier because

09:19AM    25   it's going to take me -- given my calendar and given what I

1   have coming up, it's going to take me a significant amount of

2   time to rule on those motions in limine.  I haven't seen them.

3   I don't know how complicated they are.

4            The alternative is, what's going to happen to you

09:19AM   5   folks is all the motions in limine are going to get filed close

6   to the trial date.  I'm not going to be able to rule on the

7   motions in limine in a timely fashion because they're going to

8   be very important to the conduct of the trial.  So what's going

9   to happen is you're going to get a ruling on the morning of

09:20AM   10  trial on motions in limine or we're going to continue the trial

11  to allow you to govern the preparation of the trial in

12  accordance with the rulings on the motions in limine.

13            MR. NEUMAN:  We are in accord with the Court's

14  preference, and the Government is trying to move that, quite

09:20AM   15  frankly.

16            THE COURT:  So --

17            MR. NEUMAN:  We need to work that out.

18            THE COURT:  You need to work it out.  And the

19  motions in limine are going to be driven by what's happening in

09:20AM   20  the pretrial exhibit stipulation, or are there other motions in

21  limine that can be prepared and filed earlier based upon other

22  issues you have in the case?

23            MR. NEUMAN:  They need to be worked out based on

24  the witnesses and exhibit lists, and we're trying to meet and

09:20AM   25  confer with the Government on it to move it along so that they

| | |
|---|---|
| | 1 |

can be resolved as quickly as possible. I think both sides are

working in good faith to do that. We do need these disclosures

because, as I say, despite counsel's comments, there's a lot of

problems with this draft exhibit list. I don't want to file

09:21AM 5   motions in limine on a draft exhibit list that has issues that

are going to be corrected, you know, in a week or two.

7       THE COURT: And trust me, if that happens and I

rule on something that's going to be changed and the ruling

becomes moot or not important, then I'm going to start ordering

09:21AM 10  sanctions against everybody in this case.

11      MR. NEUMAN: Nobody wants that. It's a waste of

time for everybody. That's why I would like to get these lists

as close to final. I get it there might be a couple documents

at the end of the day. I think it can be much more final than

09:21AM 15  it is, quite frankly, by this week but certainly by the end of

next week or early the following week. And then, if there's a

few stragglers that come, that's what always happens. Every

case is like that.

19      THE COURT: What concerns me is that counsel have

09:22AM 20  over the past however many months worked cooperative in these

scheduling issues, and it seems that there's some reason that

it's not -- that spirit of cooperation has ended. I'm not

casting any -- it appears to me it's the Government who wants

to shorten all these time periods.

09:22AM 25      MS. DRAGALIN: Your Honor, we have gone from one

big trial where we agreed to very early deadlines to now having

three separate trials, the first two of which are now much

shorter and will be much more streamlined.  So we are proposing

adjusted schedules for those two early trials that are more

09:22AM   consistent with what that type of case warrants, one that's

not -- does not involve proving a RICO conspiracy, does not

involve having dozens and dozens of witnesses.  So that is what

has changed in the meantime.

            We have been working hard on it.  We have not

09:23AM   paused in our efforts to working on the exhibit lists.  We're

continuing those efforts to this day.  It's ongoing and not yet

in its final set.  We're asking for --

            THE COURT:  The question is why not?  I mean, you

have all these documents.  You have a good sense of what the

09:23AM   documents are.  It's been my experience that what happens in

this pretrial exhibit stipulation is that the Government wants

to make sure that they covered all the bases and put as many on

there.  But based upon what Mr. Neuman is saying and how I deal

with these issues, if there are documents that are not on the

09:23AM   list that straggle in, you're not going to be precluded from

using them.

            I guess I just don't understand why the

Government can't produce immediately all of the proposed

exhibits that they intend to use in the Lee trial.  I mean,

09:24AM   this is not rocket science.  You've got a number of assistants

1   who are working on this case.  You have a very good case agent.

2   And you should be able to pull these documents -- I practiced

3   law for 40 years.  I know what it takes to put documents

4   together.  It just doesn't seem to me to be that difficult of

5   an exercise, especially when you're not going to be precluded

6   from adding a late document to the list.

7                    MS. DRAGALIN:  Understood, Your Honor.  And we --

8                    THE COURT:  You keep saying understood and you

9   keep saying 90 percent, but why hasn't it been done earlier?

10                   MS. DRAGALIN:  We will comply with the Court's

11   order to produce an updated list, whatever the Court --

12                   THE COURT:  The problem is I don't want to make

13   orders.  I want counsel to be able to sit down and, consistent

14   with my comments throughout the course of this case, to be able

15   to resolve these things and not all of a sudden just take some

16   arbitrary position saying, okay, we've got three trials and

17   here are the new dates and we're not going to negotiate.

18                   That is inconsistent with the way that we have

19   handled this case up to this point in time, and I don't want it

20   to deteriorate any further because we're all going to be

21   together for a long time and many days and I want this to go as

22   smoothly as possible.

23                   I understand there may be issues that come up,

24   and I'm going to rule on those issues.  But these things to me

25   are just a waste of time and they're silly.

1        MS. DRAGALIN:  We will make sure that we have

2    enough staffing on this case to meet all of the obligations the

3    Government has.  We can add additional prosecutors --

4        THE COURT:  How many more prosecutors do you need

09:26AM    5    to add to -- somebody in this case -- and I, quite frankly,

6    think that Agent Civetti has a good handle on these

7    documents -- to be able to sit down for a couple days with a

8    room full of documents, wherever they are, whatever they may

9    be, pull all of the documents, all of the trial team get

09:26AM   10    together and say, okay, let's go through 200 pieces of paper or

11    200 exhibits and is this something that should be on the list?

12    We don't know.  Put it on the list in an abundance of caution

13    if it's not on the list and then get it to Mr. Neuman and then

14    go from there.

09:26AM   15        MS. DRAGALIN:  We did that, Your Honor.  That is

16    the process we went through, and we produced to them what we

17    came up with by January 11th and then more recently by

18    March 9th.  And so we have --

19        THE COURT:  So to me there should be no issues.

09:26AM   20    I'm not going to spend the rest of the morning trying to figure

21    out who did what to whom in this thing.  Based on what

22    everybody is saying is that this process has moved smoothly

23    along and you should be prepared to sit down and meet and

24    confer because all of the exhibits are out there and Mr. Neuman

09:27AM   25    has them and he can sit there with his team and review them and

then you can get together next week and come up with a pretrial

exhibit stipulation.  I'm not saying that's going to be the

date, but what you're telling me is that it's all done, but I

don't believe it.

09:27AM      MS. DRAGALIN:  It's done with the exception of we

are going to meet with witnesses and we may identify additional

things we want to add to the list.  So as long as the

Government has that opportunity, we are -- I don't think there

is a dispute.

09:27AM      THE COURT:  Well, no one is depriving you of that

opportunity.

      MS. DRAGALIN:  Then there is no issue,

Your Honor.

      THE COURT:  Okay.

09:27AM      MR. NEUMAN:  I guess we will see.  It sounds to

me like we should go back and try again in terms of dates with

the Government in terms of motions in limine and so on.

      THE COURT:  Let me hear from Mr. Steingard

because the second trial -- the first trial to me is not -- the

09:28AM  scheduling, although we're getting close to it, is not as

difficult as some of the issues that Mr. Steingard's trial is

going to present because his trial apparently is going to be

several weeks long.

      MR. NEUMAN:  The only last comment, Your Honor,

09:28AM  is I think that's part of the point is that our trial is going

1    first and a lot of these dates that we have asked for from the

2    Government that they, quite frankly, proposed originally have

3    nothing to do with their trial.  They don't interfere, don't

4    get in the way.  That's why I was just surprised that we ended

09:28AM   5    up here.  We will work with them and see if we can work this

6    out.

7                    MR. STEINGARD:  Good morning again, Your Honor.

8                    THE COURT:  I don't understand where you got your

9    dates.

09:28AM   10                   MR. STEINGARD:  Which dates?

11                   THE COURT:  Docket No. 407.

12                   MR. STEINGARD:  Right.  Sure.  So --

13                   THE COURT:  Actually, your Government current

14   proposal -- so you did use the -- for your column on page 11 on

09:29AM   15   the current proposal, you did use docket No. 403.

16                   MR. STEINGARD:  We did.  The middle column,

17   Your Honor, as you can see on 407 is simply where the

18   negotiations began.

19                   THE COURT:  Okay.

09:29AM   20                   MR. STEINGARD:  The negotiations went from it

21   should be the middle column to the left column, our proposal,

22   and then the next thing we know, we have the Government's

23   proposal which the Court has already discussed.

24                   THE COURT:  So how many exhibits do you have?

09:30AM   25                   MR. STEINGARD:  Well, none.

| | | |
|---|---|---|
| | 1 | THE COURT:  None? |
| | 2 | MR. STEINGARD:  None.  We don't have any |
| | 3 | exhibits.  We have not been given the draft exhibit list or a |
| | 4 | draft witness list that was afforded to Mr. Neuman.  That's not |
| 09:30AM | 5 | to say that that might not work in our case.  It just hasn't |
| | 6 | been -- hasn't been offered or broached. |
| | 7 | Discussions sort of broke down.  Unfortunately, |
| | 8 | they just sort of broke down, Your Honor.  I'd like to |
| | 9 | resurrect them, but right now -- I think the Court's input |
| 09:30AM | 10 | today will resurrect those discussions. |
| | 11 | The Government's current proposal, that which is |
| | 12 | in their filing 403, actually has us getting the witness and |
| | 13 | exhibit lists after we have filed and litigated the motions in |
| | 14 | limine. |
| 09:30AM | 15 | THE COURT:  So when are we going to litigate the |
| | 16 | motions in limine?  So that would be easy for me to decide |
| | 17 | because there would be no motions in limine. |
| | 18 | MR. STEINGARD:  It works for the Court. |
| | 19 | THE COURT:  I like that part of the schedule. |
| 09:31AM | 20 | MR. STEINGARD:  But I think the Court gets -- |
| | 21 | humor aside, I think the Court gets my point which is that the |
| | 22 | Government's proposal, which puts everything on the ShenZhen |
| | 23 | case -- nothing happens in March.  Nothing happens in April. |
| | 24 | Nothing happens in May.  Ironically, during the Neuman -- I'm |
| 09:31AM | 25 | sorry -- the Neuman trial -- the 940 Hill trial -- the Neuman |

```
 1   trial must be another case.
 2            THE COURT:  That will come afterwards.
 3            MR. STEINGARD:  Right.  And I'm happy to
 4   represent him.
 5            THE COURT:  For free?
 6            MR. STEINGARD:  I can't hear you, Your Honor.
 7            THE COURT:  For free?
 8            MR. STEINGARD:  I still can't hear you.
 9            THE COURT:  Oh, okay.
10            MR. STEINGARD:  The dates don't work.
11            THE COURT:  Mr. Braun wants to be your
12   co-counsel.
13            MR. STEINGARD:  Good by me.
14            The dates of the Government's current proposal
15   don't work, clearly, for a variety of reasons including the
16   fact that they have -- the earliest dates they have actually
17   occurred during the 940 Hill trial.  My dates -- I tried to
18   give them a buffer where all of the litigation or the work we
19   did together would end by mid-May.  That would give them a
20   month to focus strictly on the 940 Hill trial, maybe more than
21   Mr. Neuman would like, and then resume after that trial ends,
22   about ten days after it ends.
23            I thought that was a nice structure.  We get the
24   filings out of the way, exhibit list, witness list, motions in
25   limine.  We work together.  We get those into the Court.  We
```

1    then give -- I was giving the Government a break because they

2    do have a trial to attend to.  And then resuming the activities

3    at the very end of -- at the very end of June.

4              THE COURT:  Well, let me ask the Government.

09:33AM  5    What's the status of the exhibits with respect to

6    Mr. Steingard's case?

7              MS. DRAGALIN:  We have produced the exhibit list

8    to all defendants, and it lists all exhibits for the joint big

9    trial.  That list then shows which exhibits correspond to which

09:33AM  10   counts.  So we have produced a list that --

11             THE COURT:  That was produced consistent with the

12   earlier deadline on February 15th?

13             MS. DRAGALIN:  Yes.  It was produced in January,

14   Your Honor.

09:33AM  15            MR. STEINGARD:  That was the -- we talked about

16   an informal -- the list goes way back.  The Government, with

17   the Court's push, gave us an informal list of documents that

18   correlate between an overt act in the RICO and the discovery.

19   And we did get that.  I don't think it was ever was finalized,

09:33AM  20   but we did get three or four variations of that.  I think the

21   last one was in January.

22             I didn't consider that to be the exhibit list

23   that we're talking about, a trial exhibit list.  But if the

24   Government says that's their trial exhibit list, I now have it

09:34AM  25   apparently.

```
 1              THE COURT:  We put all those dates on hold, the

 2    February 15th and the conference on March 1st and the joint

 3    exhibit stipulation on March 15th pending the ruling on the

 4    severance.

 5              So is that what Mr. Steingard now has?  Is that

 6    the final version of the exhibit list?

 7              MS. DRAGALIN:  It's a version of the exhibit list

 8    that keys each document with Bates numbers to a specific overt

 9    account, and it allows to filter so that -- and it's organized

10    in order of overt acts.  So Mr. Steingard can look at all

11    documents for overt acts 1 through 85, and that would identify

12    the documents that support the ShenZhen scheme.

13              THE COURT:  So I take it then your belief is that

14    you have at least produced the 90 percent number, the

15    90 percent number to Mr. Steingard?

16              MS. DRAGALIN:  Yes.  And it --

17              THE COURT:  It should be easy for you.  Those

18    documents that have been produced to Mr. Steingard are included

19    among the trial exhibits that were anticipated for the entire

20    trial.  So is that true?

21              MS. DRAGALIN:  Yes.

22              THE COURT:  So it shouldn't be difficult to break

23    out the documents that you're going to be offering only in

24    connection with Mr. Steingard's trial because they're all --

25    presumably they're already there.  So somebody just needs to go
```

09:34AM (line 5)
09:34AM (line 10)
09:35AM (line 15)
09:35AM (line 20)
09:35AM (line 25)

through the list and check off that this is one that's going to

be used in Steingard's trial.

     MS. DRAGALIN:  And we identified which those are

by overt act numbers.  So Mr. Steingard has that Excel, and he

09:35AM   can look at overt acts 1 through 85, and that is the list of

documents that support the ShenZhen scheme.

     THE COURT:  Well, it's easy to say.  I'm sure

he's appreciative of the fact that they refer to overt acts.

But he's more concerned with knowing what the actual trial

09:36AM   exhibits are going to be, and then he can make a determination

as to whether or not they're relevant to an overt act.

     So how many exhibits -- if you had to send

Mr. Steingard a list on Monday of all of the exhibits that were

going to be used just for his trial which represent 90 percent

09:36AM   as of today of all of those exhibits, how many exhibits would

be on that list?

     MS. DRAGALIN:  I would approximate about 400,

Your Honor.

     THE COURT:  Okay.

09:36AM     MS. DRAGALIN:  Just to clarify, the 90 percent of

those 400, there are sometimes duplicative documents.  So when

we get closer to the final list, the Government would make sure

that there are no duplicative documents within it.  So in some

ways that list may get smaller, but we may add straggler

09:37AM   documents as we have previously discussed.

1          THE COURT:  So if Mr. Steingard was unable to

2    determine those 400 exhibits on the document that you provided

3    him, you could easily tell him these are the 400?

4          MS. DRAGALIN:  Yes, Your Honor.

09:37AM   5          THE COURT:  Mr. Steingard, are you able to figure

6    out the 400?

7          MR. STEINGARD:  You know, it's simply a matter of

8    who does the exercise.  I'm happy to create what I think is

9    their witness list -- their exhibit list, and I will send it to

09:37AM  10   them and they -- I don't see why I do that exercise, but I'm

11   happy to.  I will send it to them and say, is this it?  And

12   what else is there?  And I assume that they should be able to

13   say in relatively short order, here is what you didn't know or

14   here is what didn't make the list.  The only thing we need is a

09:37AM  15   date for that.  If March 28th doesn't work, we can move it to

16   April 5, April 10.

17          I can work with Government counsel on this.  What

18   I can't do, what I can't agree to is putting it over to

19   July 19th three weeks before trial -- I'm sorry -- July 11th,

09:38AM  20   three weeks before trial which is what their current proposal

21   was which just doesn't work for anybody.

22          THE COURT:  All right.  Let me --

23          MR. STEINGARD:  Can I just stay with that,

24   Your Honor?

09:38AM  25          THE COURT:  Sure.

1                MR. STEINGARD:  Because while the exhibits are

2  one thing, the witness list is another.  And we have not

3  received any witness list, draft or otherwise.  Again, I would

4  think that the Government could be able to get this to us now.

09:38AM  5  But if they need a week or two, understood.  But I think we may

6  need to -- the Court's involvement on something like that as

7  well.  They have us getting the witness list two weeks before

8  trial.

9                 THE COURT:  How many witnesses is the Government

09:38AM  10  going to call in this case?

11                 MS. DRAGALIN:  Your Honor, subject to certain

12  stipulations that maybe would get rid of certain witnesses like

13  agents and custodians, we would estimate that somewhere around

14  40 to 50 witnesses for the ShenZhen trial.

09:39AM  15                 THE COURT:  So you have a pretty good idea who

16  those 40 or 50 witnesses are going to be?

17                 MS. DRAGALIN:  We have an idea of the universe of

18  people that could be included on the witness list, yes.

19                 THE COURT:  So why don't you give Mr. Steingard

09:39AM  20  the list of 50?

21                 MS. DRAGALIN:  We haven't yet as a team sat down

22  to put that list together, but we can do so by a date that the

23  Court thinks is reasonable.

24                 THE COURT:  So start off with 50, and then you

09:39AM  25  can --

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | MR. STEINGARD:  That's fine.                                 |
|       | 2  | THE COURT:  -- work down.                                    |
|       | 3  | MR. STEINGARD:  At least it's a start.  Can we               |
|       | 4  | say -- I mean, I can work with the Government.  I assume that |
| 09:39AM | 5 | list can be provided in ten days.  Is that unreasonable?     |
|       | 6  | THE COURT:  I think it can be produced on Monday,            |
|       | 7  | but that's me.                                               |
|       | 8  | MR. STEINGARD:  I didn't want to, you know --                |
|       | 9  | whatever the expression.                                     |
| 09:40AM | 10 | MS. DRAGALIN:  We will take the ten days,                   |
|       | 11 | Your Honor.                                                  |
|       | 12 | MR. STEINGARD:  Ten days.                                    |
|       | 13 | THE COURT:  Again, I was going through all                   |
|       | 14 | this -- in any event, let me -- anything else, Mr. Steingard? |
| 09:40AM | 15 | MR. STEINGARD:  Well, I assume --                           |
|       | 16 | THE COURT:  I have an overall suggestion.                    |
|       | 17 | MR. STEINGARD:  You have made clear you want time            |
|       | 18 | with the motions in limine; so I will work with Government   |
|       | 19 | counsel.                                                     |
| 09:40AM | 20 | THE COURT:  Well, here's another issue that I               |
|       | 21 | have.  It seems to me that -- and I know we're -- I hope that |
|       | 22 | we have considerably advanced the ball this morning.  With   |
|       | 23 | respect to your trial and the Huizar trial, given that -- I  |
|       | 24 | understand that we're running up against some dates -- both  |
| 09:41AM | 25 | sides, quite frankly, are going to need some time to prepare. |

1          It seems to me that what we should consider is

2    moving the Huizar/Chan trial, and that would then open up and

3    everybody have more time to deal with the issues with respect

4    to SZNW's trial.  And, quite frankly, it would probably be more

09:41AM   5    beneficial to Mr. Huizar and Mr. Chan's trial preparation

6    because, as I understand what's going to take place in the two

7    prior trials is that all of the RICO Acts are basically going

8    to be tried in your two trials.

9          That may -- I know the Government probably would

09:42AM  10    not be happy about that, but it would certainly give Mr. Huizar

11    and Mr. Chan's counsel a very good look at what the case is

12    going to be -- how the case is going to unfold, especially in

13    light of spending probably three or four weeks in the combined

14    trials.  Certainly going to understand what the trial exhibits

09:42AM  15    are and certainly going to understand what the witnesses are.

16          And I think it would be beneficial to the

17    Government because the work that's done with respect to

18    preparing each of those trials in terms of trial exhibits,

19    witness preparation is going to be carried over into the

09:42AM  20    Huizar/Chan trial.  And that would open up -- if we did that,

21    then that not only would open up more time for the SZNW trial,

22    but with respect that Mr. Neuman and Government counsel felt

23    they needed a little additional time in connection with that

24    case, it would also allow some flexibility in the continued

09:43AM  25    preparation.

1          As I'm sure all of counsel know, I'm loathe to

2   continue things. But in this case it seems to me that it makes

3   sense. And also from the Court's standpoint, I don't know how

4   much longer I'm going to be able to work seven days a week to

09:43AM   5   try to keep up with the calendar.

6          MR. STEINGARD: Well, your comments are directed

7   to the Government and to the federal defenders about moving the

8   Huizar/Chan trial. That doesn't affect the ShenZhen trial.

9          THE COURT: What does the Huizar/Chan team think

09:44AM   10   about that?

11          MS. ALÉ: Your Honor, I don't think we have an

12   objection to that. I think we're happy to meet with the

13   Government and figure out a date that could work for both

14   parties.

09:44AM   15          I will just simply note that I think, if we push

16   back -- right now it's set at the end of October. If we push

17   back toward November/December, that might create issues with

18   witnesses and the holidays and things like that. But those are

19   things that I'm sure we can handle at a meet and confer.

09:44AM   20          THE COURT: Mr. Braun?

21          MR. BRAUN: We will agree to a later --

22          THE COURT: What I would suggest is that we put

23   the Huizar/Chan trial over to January. That way we're not

24   working through the holidays like we did or at least I did this

09:44AM   25   year. Then we could certainly be flexible with respect to the

1     two pending trials.

2           Let me ask the Government what your thoughts are.

3           MR. JENKINS:  We hear the Court's concerns.  We

4     think that concern is best addressed -- we don't want to

09:45AM   5     continue the Huizar/Chan trial.  This case is to us the most

6     culpable defendants, and in the Government's view, that's the

7     case that should be given priority.  And obviously the Court

8     and the parties are giving it priority.

9           Our way to address that would be to continue the

09:45AM   10    corporation's trial who has a fugitive defendant and an

11    alterego to January and --

12          THE COURT:  Well, that I saw in your papers and I

13    haven't commented on it because I'm not going to do that.

14          MR. JENKINS:  Understood, Your Honor.  Just the

09:45AM   15    Court -- the Court asked the Government's position.  That is

16    ours.  We are happy -- if the Court is directing us to change

17    the Huizar/Chan date, for the record, we are opposed to that,

18    but we will work with the Federal Public Defender's Office.  We

19    have been able to --

09:45AM   20          THE COURT:  If you're opposed to it, we will just

21    continue with the same schedule.  I can tell you that the

22    schedule is going to be compressed, and I'm going to set dates

23    that you're going to have to live with.  And if the

24    compliance -- if you don't comply with those dates, I'm going

09:46AM   25    to preclude evidence.

1      MR. JENKINS:  Understood, Your Honor.  That is

2    certainly the counterpoint to -- so certainly I think we can

3    work it out.  We were just responding to your request.  I think

4    we can work it out.  Ultimately we agree with the Court that we

09:46AM  5    want as much flexibility and to minimize the Court's resources.

6          So if that's the best way to do it, we will work

7    with the Federal Public Defender's Office.  And we want to make

8    sure the Court is available to hear this case, so we will work

9    in our best interests to do that.

09:46AM  10      THE COURT:  If I'm still on the bench.  I will

11    promise you that I'm not going to leave this with someone else.

12    I'm invested in this.  As I said before, I'm interested in the

13    case.  I think it's a fascinating case.  But I also -- and what

14    concerned me about reviewing all these documents is we have got

09:47AM  15    excellent counsel representing -- on all sides of this case.

16    There shouldn't be these kinds of issues that come up.

17          MR. JENKINS:  I will take some responsibility for

18    that, Your Honor.  I recently was in trial.  I deferred to -- I

19    think all counsel on our side have added resources.  We will

09:47AM  20    get back on the same page or at least close to the same page.

21          Part of our concern is we do want the Court to

22    hear this trial.  If the Court will still be available, I

23    promise in January 2023 we will make that work, Your Honor.

24          THE COURT:  So, Mr. Neuman, what are your

09:47AM  25    thoughts?

1          MR. NEUMAN:  In terms of the pretrial dates or in

2   terms of the trial date, Your Honor?

3          THE COURT:  Continue the trial date, or are we

4   going to try to work with these existing dates and see if we

09:47AM  5   can get --

6          MR. NEUMAN:  I think the problem is there are no

7   existing dates at the moment, Your Honor.  I don't know what

8   Government counsel took away from the Court's comments.  I took

9   away that either what they originally proposed or what we

09:48AM  10  proposed is probably what we should be doing with the ability

11  to add things along the way.  But it seems to me we need to set

12  some dates.

13          I don't at this moment see continuing our trial

14  by a week or two unless we talked about the Court may need to.

09:48AM  15          THE COURT:  Well, whatever happens with respect

16  to my criminal calendar, moving things into the future gives

17  you more certainty that I'm going to have cleaned up the

18  backlog.  But I'm -- right now I'm -- I don't know how many

19  criminal cases I have set for the date that -- what is our

09:48AM  20  date?

21          MR. NEUMAN:  June 14th.

22          THE COURT:  June 14th.  But there are a lot of

23  them.

24          MR. NEUMAN:  Right.

09:49AM  25          THE COURT:  Many of them are in custody.

1          MR. NEUMAN:  I guess, Your Honor, to -- the Court

2    asked my thoughts.  I think we need to get some of these

3    pretrial issues out of the way relatively soon.  I think we

4    need a more final exhibit list, a more final witness list.  We

09:49AM   5    need the motions in limine filed and adjudicated, and we need

6    some of the other disclosures.  We could do that by mid-May and

7    at that point look at the Court's calendar, look at where the

8    Court stands and say does it make sense to kick this into July?

9    Various people, I'm sure, are going to have scheduling things

09:49AM  10    that pop up.  I know I do.

11          But that, to me, makes sense just to get a lot of

12    this resolved in the next month, month and a half as opposed to

13    kicking it down the road to the end of May which is what the

14    Government was proposing.

09:49AM  15          THE COURT:  Well, as I said, I'm not going to sit

16    here and negotiate dates.  So I'm going to ask counsel to meet

17    and confer and come up with some new dates and then file a

18    joint report.

19          But I think -- Mr. Steingard, what about, if we

09:50AM  20    continue the Huizar/Chan trial to January, that's going to give

21    us some better flexibility in terms of -- and I understand the

22    Government's concern.  You know, they have a lot of resources.

23    I'm sure that trial counsel want to be involved in the

24    preparation.  And I know there is no real overlap, but there is

09:50AM  25    an overlap because your case is going to be more significant.

1          So I would think that your case would be -- if we

2    move the -- I'm not suggesting October, but if we move the

3    Huizar/Chan to January, then we have September --

4    September/October time frame that we could fit your case in and

09:50AM  5    work the pretrial dates back from that which would then give a

6    nice clear break.  We could try Mr. Neuman's case.  Then we

7    have a nice clear break, and then we have the next series of

8    dates looking at a September/October trial date.

9          MR. STEINGARD:  Well, I think the starting point

09:51AM  10   will be the discussions between the Huizar/Chan team and the

11   Government to see if that is going to January.  If that is the

12   case, we will work with the Government to see what works.

13         THE COURT:  Well, I think it's already agreed

14   that -- everybody has agreed to January.  If the Government is

09:51AM  15   going to continue with its objection --

16         MR. JENKINS:  We are not based off the Court's

17   comments and ours, what the Court is proposing seems

18   appropriate.

19         MR. STEINGARD:  I think that it may make sense.

09:51AM  20   I'd like to work with the Government if it's all right with

21   you.

22         THE COURT:  As I said, I'm not going to sit here

23   and -- I mean, if I have to, I will sit down and work out all

24   these dates.  But that is my least favorite activity.  And it

09:51AM  25   makes no sense for me to artificially impose dates that don't

```
 1    work because people have -- some people have lives outside the
 2    practice of law.
 3                    MR. STEINGARD:  We will work with the Government
 4    and see if we can modify the trial date, if necessary, to
 5    accommodate their needs, my needs, the Court's needs.  We will
 6    get that done, Your Honor.
 7                    THE COURT:  Okay.  All right.  Is there anything
 8    else?
 9                    MS. DRAGALIN:  Not from the Government,
10    Your Honor.
11                    MS. ALÉ:  Nothing further from the Huizar team.
12                    MR. NEUMAN:  Not at this time, Your Honor.
13                    MR. STEINGARD:  Thank you.  No.
14                    THE COURT:  Shannon made a good point.  Just so I
15    can keep tabs on what you folks are doing, is there a
16    convenient date that you can file a status report?
17                    MR. NEUMAN:  I'd like to get, at least as to my
18    trial, by Tuesday of next week.
19                    THE COURT:  I think with respect to your trial it
20    should be a separate status report.
21                    MR. NEUMAN:  That's fine.
22                    THE COURT:  So I can focus on those dates.  And
23    then -- so is that acceptable sometime next week?
24                    MS. DRAGALIN:  Yes, Your Honor.
25                    THE COURT:  Okay.  So by Tuesday of next week?
```

09:52AM (line 5)
09:52AM (line 10)
09:52AM (line 15)
09:53AM (line 20)
09:53AM (line 25)

1    Wednesday?

2                MR. NEUMAN:  Tuesday or Wednesday.  I want to

3    know what's happening over the next two months.

4                THE COURT:  So let's say Wednesday will be the

09:53AM  5    status report with respect to the Lee/940 Hill dates.  Then a

6    couple weeks for the other status report?

7                MR. STEINGARD:  Yeah.  I think two weeks is good.

8    We can do that in two weeks.

9                THE COURT:  Okay.  So let me -- how about

09:54AM  10   April 8?

11               MR. STEINGARD:  Very good.

12               MS. DRAGALIN:  Yes, Your Honor.

13               THE COURT:  All right.  Thank you very much.

14   Everybody have a pleasant weekend.

09:54AM  15               MR. JENKINS:  Thank you, Your Honor.  You as

16   well.

17               MS. ALÉ:  Thank you, Your Honor.

18               THE COURT:  It may be for naught if we end up

19   with this new B12 variant.

09:54AM  20               (Proceedings concluded at 9:54 a.m.)

21

22

23

24

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5            I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

 6   COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

 7   THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

 8   PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

 9   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13   THE UNITED STATES.

14

15                    DATED THIS  5TH  DAY OF APRIL, 2022.

16

17

18                    /S/ MIRANDA ALGORRI
                      _____
19                    MIRANDA ALGORRI, CSR NO. 12743, CRR
                      FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25
```