1              **UNITED STATES DISTRICT COURT**

2        **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3         **HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE**

4

5   **UNITED STATES OF AMERICA,**     )
                                )

6           **PLAINTIFF,**       )    **CASE NO.**
                                )

7             **vs.**        )    **CR 20-326-JFW**
                                )

8   **JOSE LUIS HUIZAR, et al.,**    )
                                )    **PAGES 1 TO 37**

9           **DEFENDANTS.**      )

10

11

12

13              **REPORTER'S TRANSCRIPT OF**
                  **MOTION TO COMPEL**

14           **MONDAY, AUGUST 8, 2022**
                    **8:28 A.M.**

15         **LOS ANGELES, CALIFORNIA**

16

17

18

19

20

21

22

23   _____

24       **MIRANDA ALGORRI, CSR 12743, RPR, CRR**
       FEDERAL OFFICIAL COURT REPORTER
       350 WEST 1ST STREET, SUITE 4455

25       LOS ANGELES, CALIFORNIA 90012
       MIRANDAALGORRI@GMAIL.COM

```
 1                    APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFF:

 4        NICOLA T. HANNA
          UNITED STATES ATTORNEY
 5        BY:  MACK JENKINS
          BY:  SUSAN HAR
 6        BY:  JAMARI BUXTON
          Assistant United States Attorneys
 7        United States Courthouse
          312 North Spring Street
 8        Los Angeles, California 90012

 9

10   FOR THE DEFENDANT HUIZAR:

11        HILARY L. POTASHNER
          FEDERAL PUBLIC DEFENDER
12        BY:  CAREL ALÉ
          BY:  ADAM OLIN
13        Deputy Federal Public Defenders
          Central District of California
14        321 East Second Street
          Los Angeles, California 90012

15

16   FOR DEFENDANT CHAN:

17        BRAUN & BRAUN, LLP
          BY:  HARLAND BRAUN
18        10880 Wilshire Boulevard
          Suite 1020
19        Los Angeles, California 90024

20   FOR THE DEFENDANT SHEN ZHEN NEW WORLD I:

21        LAW OFFICES OF RICHARD M. STEINGARD
          BY:  RICHARD M. STEINGARD
22        800 Wilshire Boulevard
          Suite 1050
23        Los Angeles, California 90017

24

25
```

**LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 8, 2022**

**8:28 A.M.**

---

08:28AM   THE CLERK:  Calling item 2, CR 20-326A-JFW, United States of America versus Shen Zhen New World I, LLC.

Please state your appearances.

MR. JENKINS:  Good morning, Your Honor. Mack Jenkins, Susan Har, Jamari Buxton, and also joining us at counsel table is Special Agent Andy Civetti on behalf of the United States.

MR. STEINGARD:  Good morning, Your Honor. Richard Steingard for Shen Zhen New World I, LLC.

MR. BRAUN:  Good morning, Your Honor. Harland Braun, B-r-a-u-n, for Ray Chan who is present in the audience.

MR. OLIN:  Good morning, Your Honor.  Adam Olin and Carel Alé on behalf of Mr. Huizar who has waived his presence today.

THE COURT:  Good morning to all.  Counsel can remain seated at counsel table, or you can use the lectern, whichever you prefer.  If you do remain at counsel table, make sure you have a microphone close to you.  And also, if you feel comfortable when you're speaking, you can remove your mask.

This matter is on the Court's calendar for a

hearing on the Motion to Compel discovery that was filed on
July 19th.  It appears as docket No. 613.  That motion included
Exhibits A through G that were filed under seal.  The
Government filed its opposition on July 27th of -- actually,
the Government filed its opposition on July 21st.  It appears
as -- no.  It's July 27th.  It appears as docket No. 613.  And
then the defendants filed a reply.

In the motion, the defendants move the Court for
an order compelling the Government to disclose their
conversation with -- the conversations with Terrance Jones who
is Mr. George Esparza's attorney, those conversations occurring
during the month of March of 2020.  The defendants argue that
Esparza had been cooperating for approximately 16 months, and
while the parties were engaged in plea negotiations with the
Government, Esparza and his counsel had several conversations
and discussions that ultimately resulted in the factual basis
for Esparza's plea of guilty which was attached as an exhibit
to his plea agreement.

Prior to the filing of this motion, counsel --
defense counsel requested in an e-mail dated May 17th any
memorandum, notes or -- any memorandum or notes of the
prosecutors' and agent's conversation with Esparza's attorney
Jones that defendants claim were necessary to, quote,
"improperly help enlighten Esparza's recollection" as well as
an accounting of those conversations.  I don't quite understand

what an accounting is, but we'll get to that in a minute.  In
its e-mail on June 3rd, the Government advised that, based upon
a reasonably diligent search, it did not possess any notes by
Government counsel other than what the Government had already
produced.

Then there was further e-mail back and forth in
June with respect to respective positions.  The parties
ultimately conferred, and in a July 14th e-mail to defense
counsel, the Government again explained that the conversations
with Jones -- Mr. Jones that were at issue generated no *Brady*
information.  And the e-mail indicated, "We reviewed, and our
position is that there is no *Brady*, and I nor any agents have
notes of phone calls with Mr. Jones."  The Government adds that
they're not sure what there is to litigate.  The Government
points out that the communications as *Brady* have already been
litigated and resolved and denied in a prior motion.

According to defense counsel -- I believe it was
Mr. Steingard -- indicated that he spoke to Esparza's counsel
Mr. Jones and stated he cannot recall the substance of his
conversations with the Government.  As a result, this motion
was filed.

In addition to the meet and confers where the
Government confirms that it doesn't have any *Brady* with respect
to these conversations, the conversation is unclear that gives
rise to this as a result of the e-mail that Mr. Jenkins sent to

1     Mr. Jones including enclosing a revised factual basis for the

2     plea -- for his plea.  And it referenced a conversation between

3     Mr. Jones and one of the former prosecution team members

4     Ms. Dragalin who is no longer with the Government.

08:34AM    5          Mr. Steingard, so that's the -- that's the

6     conversation that you're focused on, that is, the

7     March 23rd, 2020 e-mail from Mr. Jenkins?

8          MR. STEINGARD:  I will give you the typical

9     lawyer reaction answer, yes and no.  I should grab a

08:35AM   10     microphone.  Yes and no, Your Honor.  That is certainly where

11    the pivot occurs.  But the phraseology in the e-mail that

12    you're referencing, Exhibit C, is -- and I'm quoting, "We have

13    gone through it," meaning the factual basis, "based on

14    conversations," plural, "with you," et cetera.

08:35AM   15          THE COURT:  Right.  So it's the March 20 however

16    many conversations there were.

17          MR. STEINGARD:  You're correct.

18          THE COURT:  So as I understand it, that's the

19    focus of the motion.  You want me to order the Government to

08:35AM   20    prepare a memorandum detailing those conversations when the

21    Government has already stated and represented to you that there

22    is no *Brady* material associated with those conversations;

23    correct?

24          MR. STEINGARD:  In essence, to cut to the core,

08:36AM   25    yes.  That's what we're asking, Your Honor.  I think it's a

1   little more nuanced than you might have described it, but yes.

2              THE COURT:  What do we expect to gain from -- is

3   that what you're referring to as an accounting of those

4   conversations?

08:36AM    5              MR. STEINGARD:  You are not the first person who

6   has pointed out to me that that is a poor phrase, and we

7   changed it, I believe, in the motion to call it a summary, a

8   detailed summary.  I think, when you write an e-mail, sometimes

9   you bang out something and later look at it and regret it.

08:36AM   10              So the accounting, in my mind at the time, was

11   simply what -- it's just what happened, Your Honor.  We know --

12   I don't know if you want to get into argument now.

13              THE COURT:  Sure.  Go ahead and argue.

14              MR. STEINGARD:  It would be great if I believed

08:36AM   15   that the Government's perception of *Brady* and my perception of

16   *Brady* matched.  But I think that that's just not the case.  And

17   while I take them at their word that, based on their perception

18   of *Brady*, there is nothing to produce, there was a clear pivot

19   that occurred, a change that occurred based on conversations

08:37AM   20   that they had with Mr. Esparza's attorney from one factual

21   basis that was extremely limited and narrow to a factual basis

22   that the Government drafted containing a variety of e-mails,

23   text messages, phone calls including, as we put in the motion,

24   even what Mr. Esparza was thinking about during a conversation

08:37AM   25   even though he never previously mentioned that.

1          This all comes on top of arrangements being made

2     to interview Mr. Esparza specifically about this topic.

3          THE COURT:  But these are all -- these are all

4     the natural progression of dealing with defense counsel, a

08:38AM  5     cooperating defendant, and the Government.  I mean, you have

6     many, many years of experience of negotiating cooperation plea

7     agreements, and there's nothing improper about the Government

8     and counsel for a cooperating defendant as well as the

9     defendant to have the cooperating defendant or the cooperating

08:38AM 10     witness's memory refreshed with documents, with conversations.

11     And you have been provided with all that.  You have a wealth of

12     information to cross-examine Mr. Esparza.

13          It's similar to what we went through with

14     Mr. Kim.  It was the same issue with respect to Mr. Kim.  There

08:38AM 15     were two issues.  One prevented the Government from getting

16     into attorney/client relationship or invading the

17     attorney/client privilege by asking -- I don't know who they

18     were going to ask, but in any event, I precluded it.

19          It was the same thing throughout the course of

08:39AM 20     the interviews with Mr. Kim.  There were conversations with the

21     Government, and those conversations came out during the course

22     of cross-examination of Mr. Kim very effectively through

23     cross-examination by Mr. Neuman given all of the materials that

24     the Government had disclosed.  I don't see this being any

08:39AM 25     different than the Kim scenario.

So he pivoted.  That is the nature of a
cooperating defendant's plea agreement.  You have what you need
to cross-examine him.

MR. STEINGARD:  I hear that, Your Honor.  I think
it's important from our standpoint to be able to show the jury
what Mr. Esparza's state of mind was at one point.  Something
was said by his attorney to the Government that made the
Government feel like we need to tell this man some new facts,
some facts that he's never previously mentioned.  I'm not
claiming that there's improper coaching.  That's
cross-examination.

THE COURT:  That's the thrust of what I get from
the motion is basically somehow these are clandestine phone
calls which improperly suggested, because there were no notes
taken by the Government or no notes taken by the agents of
these conversations, that there was somehow some improper
shaping of Esparza's testimony for purposes of including it in
the proffer -- not in the proffer, in the ultimate factual
basis for the plea which ultimately Esparza, when I took his
plea, affirmed that everything in there was true.

To the extent it's not true, to the extent that
the state of mind becomes an issue, you have the ability to
cross-examine him.

How the Government is going to be able to sit
down and recreate something that happened in 2020, one, is

problematic and, two, I don't think is required under the law

based upon the Government's representation that there's no

*Brady* material.

I sat through all of the issues with respect to

Kim and the trial, and there were many opportunities to argue

about *Brady* during that trial.  But that issue was never

raised.

I have now dealt with these prosecutors for a

number of years, and I believe firmly that they fully

understand their obligations under *Brady*.  As I have warned

them on many, many occasions, if it turns out they have

violated their *Brady* violations, then they are going to bear

the consequences.

MR. STEINGARD:  Your Honor, I hear you.  I

just -- when you're on this side of the coin, you just view it

so differently than the Government espouses it and the Court is

saying it.

THE COURT:  I've been on your side of the coin,

and I know how frustrating it is when you're dealing with

cooperating witnesses.  But I also know how effective it is to

cross-examine cooperating witnesses.  And Mr. Kim was an

absolute horrible witness because of all of the impeachment

material that the Government had provided consistent with its

obligations.

And he, in fact -- in fact, if my memory serves

1    me -- Mr. Jenkins can correct me if I'm wrong -- his attorney

2    was actually apoplectic at what Mr. Neuman was doing to him in

3    terms of cross-examining him with all this material.  And

4    Mr. Neuman at one point in time asked me to instruct Mr. Kim's

08:43AM    5    lawyer, whose name I can't remember right now, to not make any

6    statements.

7                    He was sitting right where -- right behind

8    Agent Civetti, and at a break he expressed his displeasure at

9    how Mr. Neuman was, in effect, effectively cross-examining him.

08:43AM    10                    Did I get that right, Mr. Jenkins?

11                    MR. JENKINS:  You did, Your Honor.

12                    MR. STEINGARD:  Your Honor, I hear what you're

13    saying.  I don't want to belabor the point.  I think our papers

14    laid out something -- something that --

08:43AM    15                    THE COURT:  I understand --

16                    MR. STEINGARD:  Something that the lawyer said --

17                    THE COURT:  I was particularly impressed with

18    your side-by-side comparison of these new paragraphs and how

19    the, as you call it, the pivot changed in the factual basis.

08:43AM    20    To me, that's going to be effective cross-examination.

21                    Mr. Esparza -- did you watch any of Esparza's

22    testimony?

23                    MR. STEINGARD:  I did see his testimony.

24                    THE COURT:  He's an interesting -- he's an

08:44AM    25    interesting witness.  I thought that he was very candid when he

didn't know something.  Or when he testified to a fact that was
not in favor of the Government, he had no hesitation.  He was
just there and testifying to what he could remember and what he
could recall.

08:44AM      MR. STEINGARD:  Your Honor, again, you've given
me your thoughts, and I haven't been able to persuade you to
move off of them.  So I will submit it -- unless my co-counsel
who joined in the motion have something, I will submit it on
behalf of my client.

08:44AM      MR. BRAUN:  We will submit it, Your Honor.

THE COURT:  Public defender?

MR. OLIN:  No, Your Honor.  Thank you.

THE COURT:  All right.  I'm not going to belabor
the ruling.  I have ruled on a similar motion although I
08:45AM  understand -- I know it was different.  However, the legal
principles and the legal standard apply to this motion.  So I'm
going to incorporate my ruling in the motion that I made during
the hearing on April 25th as my ruling in this motion.

I simply find that the defendants' suggestion
08:45AM  that the Government be required to prepare a summary of those
conversations in March of 2020 with Mr. Jones, Mr. Esparza's
attorney, are not required under the law based upon the
Government's representation that there were no -- there is no
*Brady* material in connection with those issues.  The Government
08:46AM  has turned over all of the information with respect to the

1    negotiations, and all of the drafts of the factual basis are

2    included in the motion as Exhibit A.

3              In light of the Government's representation that

4    it lacks *Brady* material re the Esparza factual basis which

08:46AM   5    includes, because I thought that was a very important point

6    that Mr. Steingard made, includes any oral *Brady* evidence.  In

7    absence of that, I find it is unnecessary to require the

8    Government to prepare the summary of those contacts.  So the

9    motion will be denied.

08:47AM   10             All right.  The next motion or next issue relates

11   to -- this is a joint filing regarding the Government's

12   disclosure of its witness and exhibit lists.  As I'm able to

13   piece through the joint statement -- I guess this joint

14   statement seeks guidance.  Let me provide some background.

08:48AM   15             It really relates -- it begins with the

16   stipulation and order that has been entered in this case, and

17   that was the stipulation and order that was filed on April 6th

18   setting forth the pretrial dates for the severed trial of

19   Mr. Steingard's client which is currently set for October 18th

08:48AM   20   of 2022.

21             This joint filing regarding the Government's

22   disclosure of its witness list is specific to Mr. Steingard's

23   client Shen Zhen New World.

24             After I severed the cases on March 7th and

08:49AM   25   ordered the parties to meet and confer regarding dates, the

parties couldn't agree on dates.  So I ended up holding a

hearing -- I believe it was on March 25th -- where we set or

talked about dates.  And that hearing ultimately resulted in

the order that I referred to as docket No. 428 which set the

08:49AM   trial for Mr. Steingard's client of October 18th of 2022 and

set forth briefing and hearing schedule for motions and other

pretrial deadlines that's set forth in the order which I

ultimately accepted and signed.  That was obviously after the

March 25th of 2022 hearing.

08:50AM           Prior to the stipulation and order being signed

and as a result of the discussions that I had with Government

counsel regarding the status of exhibits -- and that discussion

was with Ms. Dragalin who indicated -- we're talking about the

disclosure, the informal list of documents.  And Mr. Steingard

08:50AM   talked about or discussed the various variations that he had

received, and the last one was in January.  He didn't consider

that to be an exhibit list -- the trial exhibit list and

acknowledges that, if the Government thinks it's a trial list,

then he thinks he must have it.

08:51AM           In any event, we were discussing various

disclosures, and I suggested to the Government that, in light

of their representation, that 90 percent of the exhibits had

been disclosed to Mr. Steingard that it should have been easy

for the Government to produce those exhibits, and I suggested

08:51AM   the following Monday might be a good date.

1          Mr. Steingard suggested that, if the March 28th

2    didn't work, that we could move it to April and agreed he could

3    work with Government counsel.

4          As a result, the Government -- prior, actually,

08:52AM  5    to the stipulation of April 6th, on April 4th I think -- this

6    is according to my notes -- the Government provided

7    Mr. Steingard with two lists.  One was a trial exhibit list

8    which contained 630 trial exhibits, and the other was a witness

9    list which contained 46 witnesses.  I'm not sure -- I didn't

08:52AM  10   have a lot of time to go through this this weekend.

11         I'm not sure what happens next except what I

12   think this joint statement is all about and that is the

13   Government recognizing that it had an obligation to disclose

14   the Government's witness list and the Government's exhibit list

08:53AM  15   pursuant to the order that I had signed, which is

16   docket No. 428.  On June 7th, which was the deadline to make

17   that disclosure, they did disclose a witness list which someone

18   has characterized as 36 witnesses -- 13 were deleted from the

19   original list which that was provided in early April -- and an

08:53AM  20   exhibit list which now contains 387 exhibits which has -- 500

21   of the original exhibits were eliminated and 200 new exhibits

22   were added.  Somebody has calculated 75 percent reduction.

23         The Government, as I understand it, they take the

24   position, based upon the Court's comments at a hearing -- I'm

08:54AM  25   not quite sure what the hearing is -- that "We're not going to

play gotcha," and this was at page 10 of the joint statement,

"recognizing the obvious need for flexibility" -- and I'm

quoting from the joint statement.  The Court also noted -- now

I'm quoting from one of the hearings -- "As we get closer to

08:54AM   the trial, to the extent the exhibit list does not contain

certain exhibits because they were recently produced or

recently discovered or if there was some inadvertence by not

including them in the list, certainly you're not going to be

bound by that exhibit list.

08:55AM   The Government somehow now relies on those

statements to justify its position that the -- in response to

Mr. Steingard's complaint about the -- not so much complaining

about the June 7th disclosure, but the real issue arises, as I

understand it, when the Government chose to add new exhibits

08:55AM   and two witnesses who had been disclosed in April but were not

on the June 7th witness list in July.  And that was discovered

during the course of the various meet and confers with respect

to the motions in limine.

The Government to me in its joint statement takes

08:56AM   a very cavalier attitude based upon my comments that the

June 7th witness and exhibit lists were not firm deadlines and

somehow it's a draft.  And certainly, with respect to the April

production, I can understand those comments.  But certainly,

once a court order is signed requiring disclosures, as this one

08:56AM   does on June 7th, 2022, I don't see how the Government can

1    basically take -- basically take the position with

2    Mr. Steingard, hey, don't worry about it.  We're far away from

3    trial, and we can modify or update this witness and exhibit

4    list as we see fit.  That's just totally inconsistent with the

08:57AM  5    court order that I signed and also inconsistent with what you

6    rely on in terms of my statements.

7         Obviously, as we get closer to trial, to the

8    extent the exhibit list didn't contain certain exhibits because

9    they were recently produced or recently discovered or, if there

08:57AM  10    was inadvertence, then you're not going to be bound by the

11    exhibit list, and you can update the exhibit list.  But I don't

12    see how those comments apply to what you have done with respect

13    to the July production because there's absolutely no

14    justification under any of the points that I made in my

08:57AM  15    comments as to why you wouldn't be bound by the exhibit list.

16    You just simply take the position that this is a -- tantamount

17    to a draft that we can change based upon whatever we want.

18         So I'm troubled by the Government's position with

19    respect to these exhibits.

08:58AM  20         MR. JENKINS:  Your Honor, we understand and hear

21    the Court's frustration.  That is certainly not our intent to

22    be cavalier by any regards.  In fact, our position is

23    precisely, in our view, in line with the Court's comments that

24    the post-July production were the result of both categories

08:58AM  25    that the Court has identified that it would essentially forgive

our failure to timely comply, specifically --

THE COURT:  But the problem is there's no showing of that.  Your portion of the joint statement just takes the position that you could treat this as a draft, and there was no effort to justify under any of my comments as to why these specific documents were either recently discovered or there was some inadvertence.  There's just simply no showing of that.

I admittedly went through this quickly over the weekend, but I didn't see anything.  To me it was just a strident position by the Government we can do whatever we want with respect to this exhibit list and witness list because we're so far away from trial.

That doesn't help Mr. Steingard because Mr. Steingard needs some certainty in terms of what the trial exhibits and witness lists are going to be because obviously he's now spent some time on one of these motions in limine, which remind me to talk to -- raise that -- these 11 or 12 motions in limine.

But he's now worked up a motion in limine with respect to I believe it was the money laundering count based upon the Government's failure to include certain documents.  And the witnesses I'm not so concerned about because those witnesses were disclosed earlier in April.  So he's wasted his time, as I understand it, preparing that motion.  He doesn't have unlimited resources like the Federal Government has.

1      MR. JENKINS:  Your Honor, so, respectfully, I

2 think the Court did overlook our specific citations to both

3 inadvertence and documents that were recently discovered.

4 Specifically, on page 17 of the joint filing it reads, lines 3

09:00AM 5 to 7, that the June 7th exhibit list --

6      THE COURT:  Wait a minute.  What line?

7      MR. JENKINS:  Starting at line 2 of page 17.

8      THE COURT:  Okay.

9      MR. JENKINS:  Beginning halfway towards the end

09:00AM 10 of line 2 that the June 7 exhibit list inadvertently omitted a

11 subset of the relevant concealment text messages while

12 identifying others, and that oversight was caught early through

13 the meet-and-confer process is to be expected.

14      THE COURT:  Right.  But that's a conclusion.

09:00AM 15 There's no declaration.  What is the inadvertence?

16      MR. JENKINS:  The inadvertence that it was not

17 located during the review process.  Certain ones were, and

18 other ones were not.

19      THE COURT:  That's just a conclusion.  There's no

09:01AM 20 declaration by any prosecutor telling me that, you know, we did

21 this, we did this, we did this, and on a certain day we did

22 this and on that day we did this, and then ultimately we found

23 these documents.  That constitutes inadvertence.  Just

24 concluding that it was inadvertent doesn't give me any comfort

09:01AM 25 that you aren't taking the position that I have articulated.

1    MR. JENKINS:  Understood, Your Honor.  Then we

2    would be, to the extent there is new material, we would provide

3    such a declaration.  We were, again, citing the Court's

4    comments, we were tailoring our arguments to those comments.

09:01AM    5    THE COURT:  You were tailoring the argument, but

6    there's no evidence supporting the argument.

7    MR. JENKINS:  Understood, Your Honor.  And we

8    would like to supplement that with a declaration because, on

9    page 18 at lines 24 through the end, it cites an example,

09:02AM    10    meaning -- including there's additional examples -- and I

11    understand this is not supported by a declaration, but it can

12    be.  For example, in a recent interview with the defendant's

13    architects, DeMarzio/Kato, the Government learned that the

14    architecture firm had worked on projects for Wei Huang and

09:02AM    15    defendant's parent company as early as 2002 in China.

16    THE COURT:  Those aren't the documents

17    Mr. Steingard is concerned about, as I understand.

18    MR. JENKINS:  I think he's concerned about

19    anything past June 7th, Your Honor.

09:02AM    20    Just one last final point is that, with respect

21    to Mr. Steingard wasting his time, as we argued in our

22    opposition, his motion in limine is categorical meaning it

23    covers money laundering.  So money laundering text messages, if

24    the Court grants that motion, would be excluded.  So we

09:02AM    25    disagree, respectfully, that he's wasted his time because, as

we pointed out, his motion in limine covers these new items that he is focused on.

So we don't believe -- again, we take the Court's point that it isn't simply the date for which we produced these things.  But in a prejudice analysis, we continue to assert, Your Honor, that both related to his trial preparation and his motion practice there has been none.

And we can support, again, the basis for our failures to timely comply by declarations, but we do believe a prejudice analysis is appropriate, and we believe it has not been shown, Your Honor.

THE COURT:  All right.  The other point is that the Government relies on the joint pretrial exhibit -- joint pretrial exhibit stipulation that's due to be filed on August 23rd.  I noted on the order -- I was looking at this -- the conference regarding the exhibit list occurred on -- it was supposed to occur according to this order on July 26th.

Was that conference held?

MR. JENKINS:  It was, Your Honor.

THE COURT:  What was the -- what was the upshot of the conference regarding the exhibit list?  What was your -- what was your folks' understanding as to what that conference was supposed to do?

MR. JENKINS:  Yes, Your Honor.  Consistent with the conference in the Lee trial, I can tell you how it went,

1    and then Mr. Steingard can also contribute.  But we met

2    virtually because of COVID issues by video.  We went through

3    literally exhibit-by-exhibit, the positions of the defense in

4    terms of any relevant -- or any objections.

09:04AM    5         To the extent we could respond to them sort of

6    shortly without debating each exhibit, we provided -- for

7    example, Mr. Steingard asked why is this relevant?  And we

8    would give some high level analysis.  That may or may not

9    change his ultimate position.

09:04AM   10         We did that exhibit-by-exhibit.  To the extent

11    some exhibits were -- for example, photographs by categories,

12    at some point we analyzed it by category so it didn't take

13    multiple days.  I believe today, based off that conversation,

14    Mr. Steingard is going to present us with his written

09:05AM   15    positions.  So this was all verbal.  We went through it again

16    sort of a tentative, we would object to this, let's talk about

17    this exhibit, let's talk about these categories.  To the extent

18    that changed anything on Mr. Steingard or the Government's

19    position, we will amend that.

09:05AM   20         Today Mr. Steingard is going to get his, we will

21    say, most updated position on each of those exhibits.  We will

22    in turn evaluate whether we modify, for example, through

23    redactions or eliminate exhibits or be prepared to litigate

24    them.  And then we are still on track to file them later this

09:05AM   25    month, Your Honor.

1          THE COURT:  So the joint pretrial exhibit

2    stipulation is going to contain a list of all of the -- all of

3    the exhibits and the objections, if any, and the responses to

4    the objections?

09:05AM    5          MR. JENKINS:  Yes, Your Honor.

6          THE COURT:  And that's going to be filed on

7    August 23rd?

8          MR. JENKINS:  Yes, Your Honor.

9          THE COURT:  So I take it that the conference

09:06AM   10    regarding the exhibit list, that the -- that all of the

11    exhibits that were not only produced on -- in April but also in

12    June and those that were produced in July are included in that

13    list?

14          MR. JENKINS:  That is correct, Your Honor.

09:06AM   15          THE COURT:  So I guess my question,

16    Mr. Steingard, to you is I understand your frustration with the

17    tenor and tone of the Government's response to your concerns

18    about the late discovered exhibits, but what's the prejudice

19    that you have suffered with respect to the late disclosure

09:07AM   20    other than an irritant of having to -- in any event, I won't

21    comment.

22          MR. STEINGARD:  Well, I think, Your Honor, if I

23    can back up for a moment, this has been an issue that we have

24    been -- we started talking about whatever it was, a year and a

09:07AM   25    half, almost two years ago, whenever this case was first

indicted, is how early should there be a production of a

Government exhibit list.  We asked for one day.  The Government

came back with a different date.  We had a hearing.  The Court

agreed with us in some respects, agreed with the Government.

09:07AM   Set a firm date.  That was for a joint trial.  It wasn't the

date we wanted, but it was a date we agreed we had to live with

based on the Court's order.

Fast forward, the Government is turning over at

the Court's behest various interim exhibit lists because

09:07AM   there's over 2 million pages of documents.  We complained about

the pace.  The Court agreed with us that the pace was too slow

but said, I'm not going to change the timetable.  By January we

thought we had almost all the exhibits that the Government was

going to use, if not all.  Perhaps that's too harsh, but

09:08AM   certainly almost all.

THE COURT:  Right.  And that came with the April

production.

MR. STEINGARD:  The April production was -- took

that big list which was for all the defendants and said, here

09:08AM   you are, Shen Zhen New World.  Here are just your exhibits.

And we accepted that and began working on in limine motions and

examining what we understood the trial would be.  In a case of

this size for us, which the Government has already told you

against Shen Zhen is going to be extensive, we begin -- we

09:08AM   began that process --

                    THE COURT:  But you can't -- there is no -- the

Government did what it indicated that it would do in the

March 25th hearing.  And certainly there's no criticism of the

Government that I can see in making that a preliminary draft of

the exhibit list because the whole goal in this is to try to

move the case forward in terms of responding to your legitimate

request for the production of exhibits.

                    MR. STEINGARD:  We're perfectly aligned on that,

Your Honor.  We're appreciative that we all did this and we

were working together again.  We were told at that juncture,

you now have 90 percent of your exhibits.  We just need the

other 10 percent.  Come June 7th we get -- we're told

80 percent of the exhibits we gave you before, they're gone.

                    THE COURT:  But --

                    MR. STEINGARD:  Here's 150 new ones.

                    THE COURT:  So what?

                    MR. STEINGARD:  I agree.  Hang on.

                    THE COURT:  That's the deadline and --

                    MR. STEINGARD:  I agree.  And that's the

deadline, Your Honor.  I agree with you 100 percent.  They made

their shift, and whether it was strategy or whatever, they made

the decision.  Did we waste time playing with exhibits that --

500 exhibits they're not using and not look at 150 they added?

Yes.  But you're right.  That was the firm date.

                    We then began the exchanges of in limines.  We

gave the Government 11 in limines.  They gave us two.  One of

them dealt with the money laundering and specifically pointed

out these witnesses aren't there and, by the way, there are no

records other than these half dozen photographs.

09:10AM

The Government realizing what we had just written

says, okay, we're adding back the two witnesses, and we're

adding in all these bank records and other documents.  Then

they say, by the way, we're not done yet.  We found more

documents that we want to use.

09:11AM

We just received -- we just exchanged in limine

motions, Your Honor.  In other words, the Government gave us

back their oppositions, and we gave the Government our

oppositions.  In the Government's oppositions, they tell us, by

the way, we're adding three more exhibits to our list.

09:11AM

This -- they have a different perception of what

we understood the Court's deadline to mean.  We are not

inflexible as the Government would suggest.  This is not a game

of gotcha.  But every time there's a new exhibit and a new

change and the promise there's more coming, the equation of

09:11AM

this trial changes.

Every time they add an exhibit we have

2.1 million documents to figure out whether there's another

document that may affect that.  That could be a text message.

That could be an e-mail.  That could be a phone call.  That

09:12AM

could be a witness statement.  That could be a record.  That

1    could be a document.  We start fresh with each document.

2              We understood the Court's order to be here are

3    your exhibits.  That's your trial case.  There's a carve-out

4    agreed to by both sides.  There never was, if you look at your

09:12AM    5    schedule of dates, there's not another date for the Government

6    to provide an exhibit list and witness list.  We didn't agree

7    to one.  We never discussed one.

8              THE COURT:  Well, I agree.  That's why I raised

9    the pretrial exhibit stipulation because the Government I

09:12AM    10   thought, at least I took from the joint statement, that they

11   said, well, there's no big deal because we have the conference

12   regarding the exhibit list and we have the joint pretrial

13   exhibit stipulation.

14             But that's not the purpose of the conference with

09:13AM    15   respect to the exhibit list and the joint pretrial exhibit

16   stipulation.  Those exercises are designed to resolve any

17   objections to the exhibits that are on the Government's exhibit

18   list.  So that argument is just simply not well-taken.

19             MR. STEINGARD:  Your Honor, we're working from

09:13AM    20   what we are being given, and what we are being told is this is

21   an ongoing process, what they call an iterative process.  There

22   will be this exhibit list.  Then there will be another exhibit

23   list.

24             THE COURT:  Well, I'm going to put an end to

09:13AM    25   this.  There isn't going to be any other exhibit list.  The

1 first thing I'm going to do is order the Government to file a

2 supplemental brief telling me what these new exhibits are and

3 why they were allegedly recently or inadvertently not

4 disclosed.  And you can file that by August 15th.

09:14AM 5     Then, Mr. Steingard, you can tell me what the

6 prejudice is that you have suffered.  You can file that by

7 August 19th.  Then I will take a look at it and figure out

8 what, if any, penalty should be imposed.

9     I want to make it very clear to the Government

09:14AM 10 that this concept of a moving target exhibit list is going to

11 stop today.  So whatever you need to do to make sure you have

12 all of the exhibits -- I assume they're now all on the list

13 because now you've entered the phase of resolving objections to

14 those exhibits.  So there shouldn't be any additional exhibits;

09:15AM 15 correct?

16     MR. JENKINS:  Your Honor, that's not correct.  It

17 is certainly -- at this stage we don't expect and don't have in

18 mind mining our current discovery for new exhibits.  But that

19 is part of the iterative process.  By that we mean we're

09:15AM 20 looking for documents when we meet with witnesses.  We have

21 people on our witness list we have not spoken to.

22     THE COURT:  I understand that, but that's

23 contemplated in terms of my comments that you're relying on

24 that, if a document hadn't been -- it says recently discovered,

09:15AM 25 and obviously, if you're going to be interviewing witnesses and

1    you recently discover documents, then you can give those to

2    Mr. Steingard.

3                It's not a gotcha, but I'm concerned about the

4    tenor of the Government's position that the July 7th date was

09:15AM  5    just simply a draft of the exhibit list that can be modified by

6    the Government without regard to making, in my view, an

7    adequate showing as to why that modification should be

8    permitted.  So it's not a gotcha.  It's just simply what I take

9    from the joint statement.  I may have misinterpreted, but

09:16AM  10   that's what I got from it.

11                MR. JENKINS:  Yes.  That certainly was not our

12   intention, but we hear the Court's concern, and we will address

13   it.  But to back up to your question, for this August 15th

14   deadline, there are a handful of additional exhibits that we

09:16AM  15   would like to include on that, and we will support those with a

16   declaration.

17                THE COURT:  All right.  The motions in limine, I

18   was shocked when I saw or read that there were some 11 or

19   12 motions in limine that were going to be filed by the defense

09:17AM  20   in this case.  Is that the number?

21                MR. STEINGARD:  The Government has conceded on

22   one issue, so we're down to ten.  I have a list here if

23   Your Honor wants me to hand it up.

24                THE COURT:  No.  I don't need a list.

09:17AM  25                Is the Government going to have any motions in

 1    limine?

 2                    MR. JENKINS:  Two.

 3                    THE COURT:  Two.  So we're back up to 12.  So I

 4    don't know how much work these motions in limine are going to

 5    be.  But I can see from the schedule that we have that I

 6    shouldn't -- I should have allowed myself more time because the

 7    filing of these motions in limine is currently set for

 8    August 29th and we have a hearing date of September 16th which

 9    in the ordinary case would probably give me sufficient time to

10    rule on the motions in limine.  And I assume that many of these

11    motions in limine you're going to want rulings close to

12    November 16th so you can use those rulings to guide your trial

13    preparation.

14                    As I see it -- as I'm going through the schedule

15    right now, the exchange of joint motions in limine oppositions,

16    that was on August 2nd.  That's been accomplished?

17                    MR. STEINGARD:  Yes.

18                    THE COURT:  Now we're just talking about the

19    replies?

20                    MR. STEINGARD:  Correct.  We're down to the

21    replies.

22                    THE COURT:  I'm going to ask that those

23    replies -- and the reply and the filing date are the same

24    dates, August 29th.  I'm going to -- I'm going to move that

25    date up to the 24th.  Is that going to cause any considerable

difficulty?  And the reason I'm doing that is, by the time I

get courtesy copies, that gives me an additional weekend rather

than filing them on the 29th, I lose a weekend to work on those

motions in limine.  So if I have the motions in limine filed on

09:19AM   the 24th, then I can prepare my boxes to take home over the

weekend so I can look at them.

MR. STEINGARD:  The answer is does that affect

us?  You know, the bulk of this, the reply briefs, ten of them

are on the defense and me.  I had targeted the 29th.  I can

09:20AM   certainly attempt that.  But may I make another suggestion,

Your Honor?

THE COURT:  Sure.

MR. STEINGARD:  I'd just like to ask if

Government counsel and I can talk --

09:20AM   THE COURT:  Why don't you pull your mask down.

MR. STEINGARD:  Yes.  I'm going to suggest that

the Government counsel and I talk and we take a look at the

revised -- the schedule of dates and see if we can take a look

at those dates and possibly even consider an extra week or two

09:20AM   at the back end for the trial maybe.

With Your Honor's permission, I just suggest that

you give Mr. Jenkins and his team and me the opportunity to go

over the dates again to see whether they can be modified to

accommodate the Court.

09:20AM   We realized -- when we realized there were so

many in limines, we also realized this was going to tax the

Court to be ready in such a short amount of time.  I think

working together we may be able to effectively propose some new

dates to the Court that don't necessarily require moving up the

09:21AM  date and cramming everything in and making you take home boxes

for the weekend.

THE COURT:  I take home boxes every weekend, but

this is just a different box full of documents.

MR. STEINGARD:  This would be a big box.

09:21AM  THE COURT:  I'm not adverse to that because

the -- quite frankly, the -- I have been in back-to-back

trials, and I'm starting another trial on Wednesday that is

going to -- at least the lawyers think it's going to take some

time to try.

09:21AM  So I would encourage the back end, if you move it

a couple weeks, that would be helpful.  But I will leave it up

to counsel to meet and confer.  I also have obviously a

continuing calendar of criminal trials, and obviously those

trials where the defendant is in custody, I'm going to have to

09:22AM  give priority to those trials.

As you know, we're still operating under the

effects of all of the continuances that were granted during the

pandemic.  We were able to get Mr. Lee's trial concluded

although I just saw on the docket apparently that -- we

09:23AM  continue the saga with Mr. Lee.

1    In any event, that's fine.  I will wait to hear

2    from counsel.  And if you need any additional time on the

3    August 15th and August 19th date, we can certainly have

4    those -- continue those dates also.

09:23AM    5    MR. JENKINS:  Your Honor, just so we understand,

6    you're talking about a continuance of the trial date at least a

7    couple weeks?

8    THE COURT:  Yeah.  I think that's what

9    Mr. Steingard is suggesting or at least floating because that

09:23AM   10    would -- that would -- the schedule is compressed, and I know

11    from the Lee case how much work is involved by both sides, the

12    defense and the Government.  We worked very hard in that case,

13    and I think we were able to try that case in eight or nine

14    days?

09:24AM   15    MR. JENKINS:  Nine days with jury deliberation,

16    Your Honor.  On that point, our concern particularly, as the

17    Government who has to try all three cases, is that the third

18    trial is going to compress into that schedule.

19    THE COURT:  That one is not until February.

09:24AM   20    MR. JENKINS:  That's correct, but there's

21    advanced deadlines.  And having done the last trial while also

22    trying to respond to multiple e-mails from the next trial's

23    counsel which led to some of the concerns Mr. Steingard is

24    raising in terms of the documents not being produced or being

09:24AM   25    unclear which evidence we're going to pursue because there are

now two new AUSAs who weren't on the case as many years as I

have been, and that you will see in the declaration was part of

the issue.

So we're okay with a continuance, but our

position is ideally that the Huizar trial date would stay and

the Shen Zhen trial would be the last one considering it's an

entity whose sole owner is a fugitive.  Our concern is doing

anything that would compromise the case against the two lead

defendants.

So our request would be that if that trial

date -- I understand the Court's schedule is more compressed

than ours certainly.  But if we move the Shen Zhen trial past

the Huizar trial, we think it would --

THE COURT:  I'm not adverse to that.

MR. STEINGARD:  I think we have had that

conversation.  I think Mr. Jenkins just suggested we put off

the Shen Zhen trial until after the -- we did not agree to that

before.  The Court did not agree to it before.  I had not known

that was going to be suggested now.  It's certainly something I

will talk to Mr. Jenkins and his team about.  But I don't want

to give any misimpressions.  That's not our --

THE COURT:  Well, I didn't -- I'm not sure it's

entirely accurate to say I didn't agree to it.  I didn't accept

the Government's suggestion because you had objected to it.

But I think, in what we're facing in terms of these deadlines,

1    that -- and knowing the amount of work that we put in the Lee

2    case -- I haven't compared the deadlines in the Huizar case

3    with the deadlines -- the dates that those items are due

4    compared to this trial.  But to me that may make more sense to

09:26AM   5    put your client's trial after the Huizar trial.

6              Your individual client is not going to be

7    participating in a trial.  We're talking about a corporate

8    entity.  And certainly you have the -- I don't see what harm it

9    would be for the corporate entity to have its trial after the

09:27AM   10   Huizar trial.  It would certainly eliminate a lot of these

11   issues we're going to be faced with in the next couple months.

12             MR. STEINGARD:  Your Honor, I'm happy to talk to

13   Mr. Jenkins about that, but I don't want to provide any kind of

14   misperception.  This was floated, whatever it was, back in

09:27AM   15   February or March maybe, and we did not want to do that.  I can

16   consult with Mr. Jenkins again and with my client, but our goal

17   was to go to trial sooner rather than later.

18             My suggestion of pushing it back a couple weeks

19   was to accommodate the Court in the compressed schedule, not to

09:27AM   20   suggest that we go third.  So I will talk to Mr. Jenkins about

21   it and my client, and we will have an answer for you relatively

22   soon.

23             THE COURT:  Also give your client an opportunity

24   to appear.

09:27AM   25             MR. STEINGARD:  Actually, I don't represent

1    Wei Huang, but I can let him know he is invited.

2              THE COURT:  He's always welcome.

3              MR. STEINGARD:  I don't even know if people can

4    get out of China these days and whether they can get out the

09:28AM   5    last two plus years since COVID hit.  I don't know that anyone

6    is being allowed out of China.  I know the Government makes

7    much of the fugitive status.  The reality isn't quite that.

8              We will take to heart your comments and have a

9    conversation and see if we can work together.

09:28AM   10             THE COURT:  All right.

11             MR. STEINGARD:  Thank you.

12             THE COURT:  Unless there's -- if these dates

13   aren't moved, I would ask that those motions in limine be filed

14   on the date that I suggested.

09:28AM   15             MR. STEINGARD:  August 24.  Yes.

16             MR. JENKINS:  Yes, Your Honor.  The Government

17   can comply with that reply deadline.

18             THE COURT:  Anything else from the Government?

19             MR. JENKINS:  Nothing from the Government,

09:28AM   20   Your Honor.

21             THE COURT:  Anything else from the defense?

22             MR. STEINGARD:  No.  Thank you, Your Honor.

23             THE COURT:  All right.

24             (Proceedings concluded at 9:28 a.m.)

25

1                 CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5         I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

6  COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

7  THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

8  PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

9  FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10  STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11  ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13  THE UNITED STATES.

14

15                DATED THIS  26TH  DAY OF AUGUST, 2022.

16

17

18                /S/ MIRANDA ALGORRI

19                _____
                  MIRANDA ALGORRI, CSR NO. 12743, CRR

20                FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25