1  Richard M. Steingard (SBN 106374)
   *rsteingard@SteingardLaw.com*
2  LAW OFFICES OF RICHARD M. STEINGARD
   800 Wilshire Boulevard, Suite 1050
3  Los Angeles, California 90017
   Telephone:  (213) 260-9449
4  Facsimile:   (213) 260-9450

5  Attorney for Defendant
6  Shen Zhen New World I, LLC

7
8              IN THE UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,          CR-20-326(A)-JFW

                Plaintiff,
12
                                      **JOINT MOTION *IN LIMINE* NO. 1:**
13        v.                          **SHEN ZHEN NEW WORLD I,**
                                      **LLC'S MOTION TO EXCLUDE**
14 SHEN ZHEN NEW WORLD I, LLC,        **EVIDENCE OF JOSE HUIZAR**
                                      **AND GEORGE ESPARZA'S ACTS**
                Defendant.            **OF CONCEALMENT;**
15                                    **DECLARATION OF RICHARD M.**
                                      **STEINGARD**
16
                                      Date:   September 23, 2022
17                                    Time:  8:00 a.m.
                                      Crtrm: 7A
18

19
                                      Trial Date: October 25, 2022
20

21                                    Assigned to Hon. John F. Walter

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Identification of Matters in Dispute** ..............................................................1

**SZNW's Motion** ...............................................................................................2

I.    INTRODUCTION ...................................................................................2

II.   STATEMENT OF RELEVANT FACTS .................................................2

      A.    Huizar and Esparza's Attempts to Conceal Their Las Vegas
           Trips and Related Matters .......................................................3

      B.    Huizar's Email to Esparza to be Careful What They Say
           on the Phone .............................................................................4

      C.    Huizar's Refusal to Sign a Politically-Exposed-Person
           ("PEP") Form...........................................................................4

      D.    Huizar and Esparza's Structuring of Australian Currency
           Exchanges and Attempts to Conceal Their Identities  .............5

III.  ARGUMENT ...........................................................................................5

      A.    Evidence of Huizar and Esparza's Concealment is Irrelevant ..............6

      B.    The Evidence is Improper Character Evidence .....................................8

      C.    The Evidence is Inadmissible Hearsay .................................................8

      D.    The Evidence is More Prejudicial Than Probative................................9

**Government's Opposition** ............................................................................10

I.    INTRODUCTION .................................................................................10

II.   FACTUAL BACKGROUND ................................................................12

III.  ARGUMENT .........................................................................................14

      A.    Huizar's and Esparza's Acts of Concealment Are
           Highly Relevant and Admissible Against SZNW, a Co-Schemer
           in and Beneficiary of the L.A. Grand Hotel Bribery Scheme.............14

      B.    The Acts of Concealment Do Not Constitute
           Character Evidence ..............................................................................18

      C.    The Acts of Concealment Involving Out-of-Court
           Declarations are Co-Conspirator Statements .....................................19

      D.    A Rule 403 Analysis Favors Admitting the Highly
           Probative Acts of Concealment)..........................................................20

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

III.    CONCLUSION ...........................................................................................21

**SZNW'S Reply** ...........................................................................................22

**Declaration of Richard M. Steingard**...............................................................23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW
OFFICES OF
RICHARD M.
STEINGARD

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Gerritsen v. Warner Bros. Entertainment, Inc.*,
116 F.Supp. 3d 1104 (C.D. Cal. 2015) ........................................................24

*New York Cent. & H.R.R. Co. v. United States*,
212 U.S. 481 (1909).................................................................................25

*Lo v. United States*,
2022 WL 1014902 (W.D. Wash. Apr. 5, 2022) ...........................................27

*Sandoval v. Cty. of San Diego*,
985 F.3d 657 (9th Cir. 2021) .......................................................................14

*Sendejas v. United States*,
428 F.2d 1040 (9th Cir. 1970) ....................................................................20

*United States v. Anderson*,
741 F.3d 938 (9th Cir. 2013) .......................................................................19

*United States v. Bryant*,
885 F. Supp. 2d 749 (D.N.J. 2012)...............................................2, 7, 17, 27

*United States v. Caraway*,
534 F.3d 1290 (10th Cir. 2008) ...................................................................21

*United States v. Curtin*,
489 F.3d 935 (9th Cir. 2007) .......................................................................14

*United States v. Dearing*,
504 F.3d 897 (9th Cir. 2007) ...............................................................15, 22

*United States v. DeGeorge*,
380 F.3d 1203 (9th Cir. 2004) ....................................................................19

*United States v. Diez*,
515 F.2d 892 (5th Cir. 1975) .................................................................16, 23

LAW
OFFICES OF
RICHARD M.
STEINGARD

*United States v. Dixon*,
    201 F.3d 1223 (9th Cir. 2000) ........................................................................6

*United States v. Flores*,
    901 F.3d 1150 (9th Cir. 2018) ......................................................................27

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) ......................................................................20

*United States v. Lothian*,
    976 F.2d 1257 (9th Cir. 1992) ............................................................... 15-16

*United States v. Lloyd*,
    807 F.3d 1128 (9th Cir. 2015) ......................................................................20

*United States v. Mende*,
    43 F.3d 1298 (9th Cir. 1995) ........................................................................20

*United States v. Myers*,
    550 F.2d 1036 (5th Cir. 1977) .................................................................6, 22

*United States v. Robinson*,
    33 F.2d 238 (9th Cir.1929) ...........................................................................15

*United States v. Rogers*,
    321 F.3d 1226 (9th Cir. 2003) ......................................................................14

*United States v. Silverman*,
    861 F.2d 571 (9th Cir. 1988) ..........................................................................6

*United States v. Sullivan*,
    522 F.3d 967 (9th Cir. 2008) ........................................................................14

*United States v. Upton*,
    559 F.3d 3 (1st Cir. 2009)................................................................. 15-16, 23

*United States v. Vizcarra-Martinez*,
    677 F.3d 944 (9th Cir. 2012) ........................................................................25

LAW
OFFICES OF
RICHARD M.
STEINGARD

**FEDERAL STATUTES**

18 U.S.C. § 1956 ....................................................................................23

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 401 ...............................................................................5, 14

Fed. R. Evid. 402 ....................................................................................5

Fed. R. Evid. 403 ....................................................................................9

Fed. R. Evid. 404 .........................................................................5, 8, 18-19

Fed. R. Evid. 801 .........................................................................5, 8, 19-20

**CALIFORNIA CIVIL CODE**

Cal. Civ. Code § 2295 ..............................................................................24

**MISCELLANEOUS AUTHORITY**

Ninth Circuit Manual of Model Criminal Jury Instruction 4.18
("Flight/Concealment of Identity,") (March 2018).......................................6

LAW
OFFICES OF
RICHARD M.
STEINGARD

# TABLE OF EXHIBITS

| Exhibit | Description | Page |
|---|---|---|
| A | 3/27/2015 Text Message Between Jose Huizar and George Esparza (Casino_2084682) | 3:14 |
| B | 5/2/2016 Text Message Between George Esparza and Ricky Zheng (Casino_2084719) | 3:19 |
| C | 8/5/2016 Text Message Between George Esparza and Ricky Zheng (Casino_2084729) | 3:24 |
| D | 5/15/2016 Text Messages Between George Esparza and Ricky Zheng (Casino_2084727) | 3:28, 13:18, 17:2 |
| E | 2/4/2017 Text Message Between George Esparza and Ricky Zheng (Casino_2084769) | 4:5, 17:4 |
| F | 7/14/2016 Email Between Jose Huizar and George Esparza (Casino_0005656) | 4:10 |
| G | 9/2/2015 FD-302 Interview Report of Quyen "Michael" Trang (Casino_0384779) | 5:2 |
| H | Photographs Depicting George Esparza's Exchange of Australian Currency | 5:12 |

LAW OFFICES OF RICHARD M. STEINGARD

## <u>IDENTIFICATION OF MATTERS IN DISPUTE</u>

**Defendant's Position:**  SZNW moves this Court for an order excluding all alleged acts of concealment by Jose Huizar and George Esparza.  *Their* acts of concealment are not evidence of *SZNW or Wei Huang's* intent.

**Government's Position:** Evidence that Jose Huizar and George Esparza took steps to conceal the L.A. Grand Hotel bribery scheme and their involvement in it (which helped protect the scheme and the benefits Huizar and Esparza could derive) is highly-relevant to central matters in this case.  These acts of concealment tend to show that the scheme existed and that defendant and its owner, Wei Huang, were involved in the scheme; that defendant and Huang acted with corrupt intent when they gave Huizar and Esparza various benefits as part of the scheme; and that Huizar and Esparza understood the corrupt nature of the benefits.

The acts of concealment do not constitute inadmissible character evidence, as defendant claims.  Rather, the acts are direct and circumstantial evidence of the scheme, its methods, and defendant's and Huang's intent, and they are inextricably intertwined with the charged scheme.  The government will lay the proper foundation for admission of the acts of concealment at trial, largely as admissible co-schemer statements under Rule 801(d)(2)(E).

Any potential risk of prejudice to defendant, which is minimal, pales in comparison to the probative value of this powerful, relevant evidence.

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JOINT MOTION *IN LIMINE* NO. 1:
## SZNW'S MOTION TO EXCLUDE EVIDENCE OF
## JOSE HUIZAR AND GEORGE ESPARZA'S ACTS OF CONCEALMENT

### I.     INTRODUCTION

Shen Zhen New World I, LLC ("SZNW") moves this Court for an order excluding all evidence showing acts of concealment by SZNW's alleged co-schemers.  The government seeks to introduce numerous occasions when Jose Huizar and his aide, George Esparza, attempted to hide their conduct and activities. Most of Huizar and Esparza's acts of concealment involve private communications between the two of them in which they appear to have intentionally excluded SZNW and Huang.  These include Huizar's refusal to complete a casino's disclosure form for elected officials; an email message from Huizar to Esparza cautioning that they should be careful what they say over the telephone; and Huizar and Esparza's efforts to structure transactions while exchanging Australian currency into U.S. currency.

Huizar and Esparza's alleged acts of concealment are irrelevant to SZNW. Evidence of an alleged *bribee's* attempts to conceal his or her actions is irrelevant as to the alleged *briber*.  *United States v. Bryant*, 885 F. Supp. 2d 749, 761-2 (D.N.J. 2012).  For this and other reasons set forth below, evidence of Huizar and Esparza's alleged acts of concealment should be excluded.[1]

### II.     STATEMENT OF FACTS

The following acts of concealment are drawn from the government's exhibit list.  To be clear, SZNW objects to the introduction of all Huizar and Esparza's acts of concealment, whether presented through documents, audio recordings, or testimony.

---

[1]     In a separate *in limine* motion, SZNW moves to exclude Huizar's alleged his alleged concealment of approximately $130,000 seized from his house.  *See* MIL No. 11.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A.     Huizar and Esparza's Attempts to Conceal Their Las Vegas Trips and
       Related Matters

On some of Huizar and Esparza's trips to Las Vegas, they exchanged text messages indicating an intent to conceal their identities or addressing related matters. These text messages included the following:

1.     On March 27, 2015, Huizar texted Esparza, "Told my kids I was going to az so don't say anything about Vegas." Esparza responded, "ok." Shortly thereafter, presumably on the way to the airport, Esparza sent a series of texts to Huizar about their driver, such as, "The driver recognized you as the councilman. Keep it professional;" "He lives in garvanza [sic];" "I don't trust this guy… I don't get a good vibe from him;" "Let's be careful." (Govt. Ex. 284B, Casino_2084682, attached as Exhibit A.)

2.     Within a text string involving a trip to Las Vegas, on May 2, 2016, Esparza texted Ricky Zheng two names, "George esparza [sic] Juan Hernandez." The context of Esparza's text message is unclear, but the name "Juan Hernandez" may have referred to Huizar. (Govt. Ex. 285G, Casino_2084719-25, attached as Exhibit B.)

Similarly, within a text string that may have involved a Las Vegas trip, on August 5, 2016, Ricky Zheng texted Esparza, "Need your name." Esparza responded, "George Esparza [sic] Juan Rodrigez [sic]." Again, the context of Esparza's text message is unclear, but the name "Juan Rodrigez" may have referred to Huizar. (Govt. Ex. 285K, Casino_2084729-36, attached as Exhibit C.)

3.     Within a text string involving Las Vegas, on May 15, 2016, Esparza texted Zheng that Huizar "wants me to cash chips," adding an expletive to express his frustration at being told to do so. (Govt. Ex. 285H, Casino_2084727-8, attached as Exhibit D.)

4.     In a text string involving a Las Vegas trip, on February 4, 2017, Esparza texted Zheng, "Make sure Jose doesn't go in private room. He's going to

try to use my player card but make sure they check id."  Later that day, Esparza sent Zheng the same message, stating, "If we go downstairs, make sure they check his ID bro."  (Govt. Ex. 285Q, Casino_2084769-70, attached as Exhibit E.)

B.    Huizar's Email to Esparza to be Careful What They Say on the Phone

On July 14, 2016, while Huizar and Esparza were in Las Vegas, Huizar emailed Esparza, "We should limit types of conversations we just had on phone. For future reference. My bad."  (Govt. Ex. 493, Casino_0005656, attached as Exhibit F.)

C.    Huizar's Refusal to Sign a Politically-Exposed-Person ("PEP") Form

On July 7, 2015, Huizar, Huang, and others gambled at a private baccarat table at the Palazzo Casino in Las Vegas. At some point, Huang went to dinner. Huizar also left the baccarat room, leaving a pile of chips on the table, and went to the public part of the casino to play blackjack.  Around this same time, a casino official reviewed the flight manifest for the casino's airplane that brought Huang, Huizar, and others to Las Vegas and discovered that Huizar was an elected official. The casino's policy was to have elected officials complete a Politically Exposed Person ("PEP") form to ensure that public funds are not being used for gambling.

While Huizar was playing blackjack, a casino representative approached and asked that he complete a form entitled "Credit Application Supplemental Form." Huizar responded that he was not interested in credit.  The representative stated that the form was not a credit application but was to verify his source of income or wealth, and that he needed to complete the form because he was an elected official. Huizar again said he would not complete the form.  He was not agitated; he simply declined.

A casino representative then escorted Huizar out of the gambling area. Huizar was not allowed to return to the baccarat table where he had left behind a

pile of chips.  When Huang returned to the baccarat table, he played the chips that Huizar left behind.  (Casino_0384779-81, attached as Exhibit G.)[2]

        D.     <u>Huizar and Esparza's Structuring of Australian Currency Exchanges and Attempts to Conceal Their Identities</u>

In early 2016, Huang, Huizar, Esparza, and others travelled to Australia where, among other things, they gambled.  Upon their return to California, Huizar and Esparza exchanged their casino winnings, which were in Australian dollars, into U.S. currency.  They did so in structured amounts, presumably to circumvent the exchange brokerages' Currency Transaction Reports requirement and, possibly, for tax evasion purposes.  The government seeks to admit four photographs depicting Esparza's exchange of Australian currency.  (Govt. Exs. 243-6, attached as Exhibit H.)[3]

## III.    ARGUMENT

Evidence of concealment by Huizar and Esparza should be excluded for at least four reasons:  they are irrelevant under Fed. R. Evid. 401 and 402; inadmissible character evidence in violation of Fed. R. Evid. 404; inadmissible hearsay pursuant to Fed. R. Evid. 801(d)(2)(E), and their probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.

*//*

---

[2]    Huizar's refusal to sign the PEP form is also detailed in various casino records from the Palazzo-Venetian resort, including some that are contained in one of the government's trial exhibits, Govt. Ex. 159G.  The documents in the trial exhibit referring to Huizar's refusal to sign the PEP form should also be excluded. Because this trial exhibit is 767 pages, we have not attached it to this motion but will provide it to the Court upon request.

[3]    Huizar and Esparza's attempts to exchange currency in structured amounts also constitute a form of money laundering and should be excluded on that basis as well.  *See* MIL No. 11.

A.   <u>Evidence of Huizar and Esparza's Concealment is Irrelevant</u>

Generally speaking, the Ninth Circuit has expressed grave reservations about the admission of concealment-type evidence due to its inherently ambiguous and potentially inflammatory nature.  *See* Ninth Circuit Manual of Model Criminal Jury Instruction 4.18 ("Flight/Concealment of Identity,") (March 2018) ("…caution is warranted because evidence of flight can be consistent with innocence") (*citing United States v. Dixon*, 201 F.3d 1223, 1232 (9th Cir. 2000)); *see also United States v. Silverman*, 861 F.2d 571, 580-82 (9th Cir. 1988)  ("Flight and concealment of identity can be consistent with innocence, or with guilt of misconduct unknown to the Government"); *id*. at n.3 ("Although many of our cases have involved flight rather than concealment, the principles … apply equally to both.").

In the context of a flight instruction, the Ninth Circuit has cited with approval the Fifth Circuit's cautious approach to admitting this evidence and the requirement that the government establish four inferences:  "(1) from the defendant's behavior to flight [or concealment]; (2) from flight [or concealment] to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."  *See Silverman*, 861 F.2d at 581  ("Because of the inherent unreliability of evidence of flight, and the danger of prejudice its use may entail … a flight instruction is improper unless the evidence is sufficient to furnish reasonable support for all four of the necessary inferences.") (*citing United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977)).  The Ninth Circuit has urged courts to be sensitive to the facts of the particular case, considering factors such as the timing of the concealment activity, whether it occurred after the defendant knew the police suspected him or her of a particular crime, and the connection between the concealment and the actual crime(s) charged.  *Id.* at 581-82.

Here, it bears emphasizing that the government's concealment evidence is not that of the defendant on trial—SZNW—but rather of Huizar and Esparza. This fact alone warrants the exclusion of the concealment evidence. But even applying the four-part *Myers* test, the evidence should be excluded: none of the necessary links are present.

Moreover, evidence of Huizar and Esparza's acts of concealment are simply irrelevant to SZNW. In *United States v. Bryant*, the defendant was a New Jersey State Senator who also worked as a lawyer at a law firm. 885 F. Supp. 2d at 751. Bryant was accused of taking bribes from Eric Wisler, an attorney at a different law firm who represented a developer doing business in Bryant's district. The government alleged that Wisler paid a monthly retainer to Bryant's law firm, which constituted a bribe. *Id.* at 751-52. During trial, the government presented evidence of Wisler's concealment, to wit, Wisler took steps to keep the retainer secret from the rest of the lawyers in his firm. The government claimed this showed Wisler and Bryant's corrupt intent. *Id.* at 761-62.[4]

The trial court granted the defendant's Rule 29 motion for judgment of acquittal. The court noted that "[t]o establish a corrupt intent, the Government may present circumstantial evidence of concealment as clandestine arrangements are clandestine for a reason, presumably a corrupt one." *Id.* at 758 (cleaned up). Nonetheless, the court noted that there was no evidence of concealment by the alleged bribee (Bryant). Indeed, Bryant's law partner was fully aware of the retainer. The court found that the government had presented insufficient evidence that Bryant had the requisite corrupt intent and rejected the government's argument that the *briber's* concealment of the retainer agreement was probative of the *bribee's* intent.

///

---

[4]   The opinion does not indicate whether Bryant objected to this evidence although, based on the Court's findings, it was clearly irrelevant to his intent.

LAW OFFICES OF RICHARD M. STEINGARD

The court stated,

> Instead, this evidence is more probative of proving [the briber's] intent to influence. Phrased differently, the evidence tends to prove the motivation behind [the briber's] actions rather than those of Senator Bryant. Importantly, however, [the briber's] intent cannot be imputed to Bryant in a bribery context – the Government has to separately establish the official's own intent. *Id*. at 761 (cleaned up).

The court emphasized that "any efforts Wisler may have made to conceal the Retainer Agreement tend to prove his intent to influence rather than Bryant's intent to be influenced." *Id*. at 762. "Because of the lack of evidence regarding Bryant's, as opposed to Wisler's, efforts to conceal, the Government's concealment theory to prove [the bribee's] intent necessarily falls short." *Id.*

The *Bryant* court's reasoning applies equally here.

B.   The Evidence is Improper Character Evidence.

Evidence of Huizar and Esparza's concealment is improper character evidence under FRE 404(a) in that it tends to show that they were of poor character, or possessed a character trait of furtiveness or stealth, in order to prove that they acted in accordance with the character or trait as to the alleged crimes. FRE 404(a). It also constitutes "other acts" evidence on the part of Huizar and Esparza that is inadmissible for any of the purposes stated in Rule 404(b). As discussed above, while such evidence may arguably be relevant to establish Huizar and Esparza's corrupt intent, it is not relevant to any issue in this trial – that is, the intent of SZNW.

C.   The Evidence is Inadmissible Hearsay.

As argued in SZNW's *in limine* motion to exclude hearsay evidence (MIL No. 7), Huizar and Esparza's communications are inadmissible hearsay which do not satisfy the requirements for co-schemer statements under FRE 801(d)(2)(E). The use of this exception is not appropriate in this context, where Huizar and Esparza's text and emails messages were private, there is no evidence they were

shared with Huang or anyone from SZNW, nor is there evidence that they were working with SZNW or Huang toward a common goal. Huizar and Esparza may have operated clandestinely, suggestive of corrupt intent, but Huang and SZNW acted with transparency, suggesting they did not view their conduct as illegal.[5]

D.   <u>The Evidence is More Prejudicial Than Probative</u>

Finally, introduction of the concealment evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403. The concept of separately analyzing the briber and bribee's intent is conceptually difficult. By severing the defendants, the Court was concerned with the prejudicial impact of Huizar and Esparza's misconduct that SZNW and Huang were not involved in. Allowing the government to introduce concealment evidence requires complex limiting instructions explaining that the jury must compartmentalize this evidence and consider it for a limited purpose—a purpose that is a non-issue in the case.

In addition, the concealment evidence is significantly prejudicial as it implies that Huizar and Esparza were aware they were doing something illegal. Given that Huang and SZNW did not make any attempts at concealment, whatever may be the minimal probative value of the evidence is substantially outweighed by confusion of the issues, misleading of the jury, and unfair prejudice.

---

[5]   For instance, casino records show that in 2014 and 2015, Huang was asked to sign PEP forms, which he did.

LAW OFFICES OF RICHARD M. STEINGARD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## GOVERNMENT'S OPPOSITION

### I.     INTRODUCTION

An act of concealment by then-CD-14 Councilmember Jose Huizar -- his refusal to sign a form identifying himself as a "Politically Exposed Person" ("PEP") while on an extravagant, all-expense-paid Las Vegas trip and gambling with thousands of dollars in chips provided by Wei Huang, defendant Shen Zhen New World I, LLC's ("SZNW" or "defendant") owner -- is what sparked the instant and wide ranging federal criminal investigation that resulted in the charges spelled out in the First Superseding Indictment ("FSI"), including the extensive L.A. Grand Hotel bribery scheme with SZNW.  Throughout the life of defendant's scheme, which netted Huizar over a million dollars in benefits, Huizar and his Special Assistant George Esparza (another public official), took steps both small and large to conceal their illegal conduct, and to protect and further the scheme with defendant itself, including by disguising Huizar's identity with fake names, avoiding situations that required Huizar to show identification, having Esparza cash out the gambling chips defendant provided to Huizar, structuring currency transactions (involving defendant's bribes) to avoid bank reporting requirements, and enlisting Huizar's family members to launder defendant's bribe money.

The purpose of these acts was simple and yet critical: they were necessary to keep the L.A. Grand Hotel bribery scheme alive and lucrative.  The acts enabled Huizar to keep getting what he wanted (more of the defendant-provided benefits and bribes), and likewise ensured that SZNW could get what it was paying for: Huizar's support of the L.A. Grand Hotel redevelopment/expansion project, which would all but guarantee the success of Huang's/SZNW's audacious plan to build the largest skyscraper west of the Mississippi.  Moreover, revealing the scheme would not just mean the scheme's failure, it would mean criminal exposure for all parties.  Huizar's and Esparza's acts of concealment thus substantially benefitted all co-schemers, including defendant, and were pivotal to the scheme, which the

FSI makes clear in its description of the methods and means of the scheme.  (See FSI ¶ 45(c).)

Notwithstanding the concealment allegations in the FSI, defendant's motion in limine seeks to exclude "all evidence showing acts of concealment by SZNW's alleged co-schemers," whether "presented through documents, audio recordings, or testimony."  (Mot. at 1 (emphasis added).)  In particular, SZNW claims that Huizar's and Esparza's acts of concealment to benefit defendant's scheme are irrelevant to SZNW, who purportedly did not commit the acts in question (ignoring that some of the acts directly involved Huang's right-hand guy/SZNW agent Ricky Zheng); that the acts constitute inadmissible character evidence; that they do not meet the definition of admissible co-conspirator statements; and that their probative value is substantially outweighed by dangers of prejudice, confusion, and misleading the jury.  Each argument is wrong.

*First*, Huizar's and Esparza's acts of concealment are highly relevant in this case, just as they were in the Lee/940 Hill trial, where this same type of evidence featured prominently.  The acts tend to show, for instance, that an illegal bribery scheme existed and that Huang/SZNW were key participants in that scheme.  They tend to show that Huang/SZNW had corrupt intent when defendant lavished Huizar with gambling chips, all-expenses paid trips, and other benefits.  And they tend to show that Huizar fully understood the corrupt nature of the relationship and of the benefits.  Indeed, the fact that Huizar -- a skilled politician and professional people-reader -- chose to zealously and consistently conceal the benefits he received from defendant (and his relationship with Huang) makes it more probable that Huang intended, and communicated to Huizar that he intended, to enter into a corrupt relationship with him.  The acts are thus probative of SZNW's intent, and the methods and means of the bribery scheme, among other things.  And because Huizar and Esparza, SZNW's co-schemers, performed the acts of concealment in

furtherance of the scheme, those acts are admissible against SZNW as though SZNW had itself taken steps to conceal (which it also did).

Second, contrary to defendant's assertion, the government is not offering the acts of concealment to establish, through character evidence, that Huizar, Esparza, or anyone else acted in conformance with a particular character trait; rather, it is offering the acts because they are powerful, direct and circumstantial evidence of the L.A. Grand Hotel bribery scheme, its methods, and SZNW's intent. And because the acts are inextricably intertwined with the charged L.A. Grand Hotel bribery scheme, they cannot constitute "other acts" evidence, as defendant claims.

Third, the government need not show, as defendant claims, that SZNW was a participant in concealment communications for them to qualify as co-conspirator statements. Nor is defendant correct that the government is incapable of laying a foundation for their admission.

Finally, any risk of prejudice to defendant (which under the circumstances is minimal, at best) pales in comparison to the probative value of this powerful, highly relevant evidence of the scheme, its existence, and how it was able to progress.

The Court should deny defendant's motion.

## II.    FACTUAL BACKGROUND

At trial, the government will show that, as part of the L.A. Grand Hotel bribery scheme, Huizar, Esparza, Zheng, Huang, and others engaged in an array of acts of concealment.

Between March 2013 and July 2015, defendant (through Huang and Zheng) and Huizar and Esparza took (at least) nine trips to Las Vegas, all paid for by Huang. (FSI pp. 16-17 OA 4-12.)  For each of those nine trips, the group stayed and played at the Wynn and/or the Palazzo/Venetian. (Id.)  During the ninth trip (July 7-8, 2015), Palazzo staff approached Huizar with the PEP form while he was gambling with Zheng and Esparza. Huizar refused to sign the form and was

escorted out of the gaming area by hotel security, leaving behind almost $18,000 in gambling chips at another table.  Huang, after returning to the gaming area, played the chips that Huizar left behind.  After the PEP incident in July 2015, defendant and his co-schemers made a decision to attempt to avoid scrutiny of their association with one another: they took a break from the Palazzo.  Instead, they began to play and stay largely at the Cosmopolitan and Caesar's Palace.  (Id. p. 17 OA 13-22.)

The co-schemers also ramped up their concealment efforts.  These efforts included Huizar (1) adopting various fake names to shield his identity from people/entities with whom the co-schemers engaged (see Def. Exs. B, C); (2) asking, in advance of flights on private jets with Huang and his entourage, or before joining Huang, SZNW agent Ricky Zheng, Esparza, and others at casinos, whether he would be required to brandish identification (see FSI OA 429-430); (3) reminding Esparza that he and Huizar should limit their phone conversations regarding illegal activity, presumably because investigators could be listening (see id. OA 432-433); (4) having Esparza, as opposed Huizar, cash thousands of dollars in gambling chips Huizar received from Huang during many of their approximately nineteen Las Vegas trips (see Def. Ex. D); (5) directing Esparza to exchange Australian currency (received from Huang) in multiple installments to evade triggering bank reporting requirements (see FSI OA 362-366); and (6) enlisting Huizar's family members to launder large amounts of money Huizar had received from Huang (see FSI OA 367-428).  The government will establish these acts of concealment through witness testimony, recordings, communications, and photographs.

///

///

///



LAW
OFFICES OF
RICHARD M.
STEINGARD

III.   **ARGUMENT**

A.     Huizar's and Esparza's Acts of Concealment Are Highly Relevant and Admissible Against SZNW, a Co-Schemer in and Beneficiary of the L.A. Grand Hotel Bribery Scheme

Evidence is relevant if "it has <u>any</u> tendency to make a fact more or less probable than it would be without the evidence" and the "the fact is of consequence in determining the action.  Fed. R. Evid. 401 (emphasis added).  Relevance is a "low bar."  <u>Sandoval v. Cty. of San Diego</u>, 985 F.3d 657, 666 (9th Cir. 2021).  "To be 'relevant,' evidence need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same.  All that is required is a 'tendency' to establish the fact at issue."  <u>United States v. Curtin</u>, 489 F.3d 935, 943 (9th Cir. 2007).

The acts of concealment at issue here vault well above the low bar required of relevant evidence.  Among other things, they tend to show that the L.A. Grand Hotel bribery scheme did, in fact, occur.  They tend to show that Huang/SZNW participated in that scheme.  They tend to show that Huang/SZNW supplied Huizar with a torrent of benefits to buy Huizar's support in connection with SZNW's ambitious L.A. Grand Hotel expansion project-- a corrupt arrangement that Huizar went to great lengths to hide, including by concealing the benefits he received from Huang/SZNW.  For that same reason, they tend to show that Huizar fully understood that Huang intended to engage in a corrupt relationship, dispelling the notion that Huang patronized Huizar innocuously.  And, they tend to show that Huang also sought to conceal his corrupt relationship with Huizar.

The evidence is thus highly relevant to SZNW's intent in connection with the scheme to defraud.  <u>See</u> <u>United States v. Rogers</u>, 321 F.3d 1226, 1230 (9th Cir. 2003) ("It is settled law that intent to defraud may be established by circumstantial evidence."); <u>United States v. Sullivan</u>, 522 F.3d 967, 974 (9th Cir. 2008) ("[T]he scheme itself may be probative circumstantial evidence of an intent to defraud.");

1    United States v. Dearing, 504 F.3d 897, 901 (9th Cir. 2007) (a jury may also infer

2    fraudulent intent "from efforts to conceal the unlawful activity.")  It is likewise

3    relevant to SZNW's motive, and the methods and means used by the participants in

4    the bribery scheme, all of which the government plans to spotlight in the upcoming

5    trial.

6          Defendant argues that the concealment evidence is irrelevant because the

7    "government's [] evidence is not that of the defendant on trial—SZNW—but rather

8    of Huizar and Esparza."  (Mot. at 6.)  Defendant is wrong.

9          "Just as acts and statements of co-conspirators are admissible against other

10   conspirators, so too are the statements and acts of co-participants in a scheme to

11   defraud admissible against other participants."  United States v. Lothian, 976 F.2d

12   1257, 1262 (9th Cir. 1992); see Robinson v. United States, 33 F.2d 238, 240 (9th

13   Cir.1929) ("[I]f a conspiracy exists in fact [as when a scheme to defraud is shared

14   by several], the rules of evidence are the same as where a conspiracy is charged.")

15   Like co-conspirators, "knowing participants in the scheme are legally liable for

16   their co-schemers' use of [] wires" provided these acts are performed in

17   furtherance of the conspiracy.  See Lothian, 976 F.2d at 1262.

18   That is the case here, where Huizar's and Esparza's acts of concealment

19   unquestionably protected and furthered the L.A. Grand Hotel bribery scheme.

20   Indeed, the very reason the co-schemers took such painstaking efforts to conceal

21   their illegal conduct was to make sure neither the public nor law enforcement

22   found out they were engaged in a bribery scheme, as such detection would have

23   put an end to the scheme and, with it, the ongoing and future benefits for both

24   sides.  Detection also meant likely criminal prosecution for both.  Because

25   concealment was a key feature of the scheme, and all co-schemers involved were

26   incentivized to adhere to this, Huizar's and Esparza's acts of concealment

27   undoubtedly furthered the scheme.  See United States v. Upton, 559 F.3d 3, 14 (1st

28   Cir. 2009) (holding that the co-schemers' failure to file a tax return was an act in

furtherance of the conspiracy and "would have plainly been foreseeable to both conspirators," noting that "[n]ot filing returns was an 'integral and self-evident part of' the conspiracy" because had either defendant not hidden the proceeds, "this would have defeated the primary purpose of the conspiracy"); <u>United States v. Diez</u>, 515 F.2d 892, 897–98 (5th Cir. 1975) (co-conspirator statement and acts aimed at deflecting inquiry from tax evasion scheme held admissible because scheme "by its very nature called for concealment").  Huizar's and Esparza's acts to conceal the lavish financial benefits showered on them by a foreign national billionaire who had recently purchased two major properties that Huizar could benefit was "plainly [] foreseeable" to Huang/SZNW.  <u>See</u> <u>Upton</u>, 559 F.3d at 14. This is because revealing that money flow to the public and to law enforcement "would have defeated the primary purpose of the conspiracy" -- to secretly obtain Huizar's favored treatment on those two properties.  <u>See</u> <u>id.</u>  Accordingly, Huizar's and Esparza's acts are relevant and admissible against SZNW as though SZNW committed the acts itself.  <u>See</u> <u>Lothian</u>, 976 F.2d at 1262; (see Dkt. No. 584 at 28) (instructing the jury in the Lee/940 Hill trial that if the defendant was a member of a scheme to defraud and had the intent to defraud, the defendant may be responsible for other co-schemers' <u>actions</u> during the course of and in furtherance of the scheme, even if the defendant did not know what they said or did, where the act was one that the defendant could reasonably foresee as a necessary and natural consequence of the scheme to defraud.)

Tellingly, four of the five text messages referenced by defendant in his motion involve <u>Ricky Zheng</u>, an SZNW agent.  (<u>See</u> Mot. at 2.)  In two of the text messages, Esparza sends Zheng fake names that Huizar was using ("Juan Hernandez" and "Juan Rodriguez"), reflecting that Zheng/SZNW knew and understood that Huizar felt the need to hide his identity during their activities. (Def. Exs. B, C.)  In another text message, Esparza told Zheng that Huizar had directed him to cash out Huizar's casino chips, reflecting that Zheng/SZNW knew

and understood Huizar was concerned about performing this act himself.  (Def. Ex. D.)  In the fourth text message, Esparza informed Zheng that Huizar sought to use Esparza's player card, again reflecting that Huizar sought to mask his identity while in their midst.  (Def. Ex. E.)  Zheng's involvement in the acts of concealment only underscores that (a) the acts were a <u>key component</u> of the bribery scheme, (b) the acts furthered the scheme and benefitted the participants by allowing the scheme to continue, and (c) Zheng/Huang/SZNW were well aware of, and indeed <u>shared</u>, Huizar's corrupt intent.

Defendant's reliance on <u>United States v. Bryant</u>, 885 F. Supp. 2d 749 (D.N.J. 2012) is misplaced.  Not only is it a single, non-binding district court opinion, but it does not stand for the proposition defendant claims.  The <u>Bryant</u> court did not hold, as defendant argues, that evidence of a bribee's corrupt intent, including acts of concealment, is inadmissible or irrelevant to a briber's corrupt intent.  On the contrary, the court actually <u>admitted</u> evidence of the bribee's acts of concealment at the bench trial.  <u>Id.</u> at 760-61.  Then, in evaluating the evidence after trial, the court stated the uncontroversial propositions that each defendant's state of mind must be determined separately (the government agrees) and that the bribee's intent is not "<u>dispositive</u>" of the briber's intent (the government agrees) but instead is "<u>more</u> probative" of the bribee's intent (the government also agrees).  <u>Id.</u> at 761 (emphases added).  Thus, the court did not hold that the bribee's intent had no probative value whatsoever or was wholly irrelevant to the briber's intent.  Instead, on the facts of that case, the court held that the government failed to meet its burden beyond a reasonable doubt as to the bribee's corrupt intent because the evidence, evaluated as a whole, supported the government's theory of guilt but also "support[ed] a different interpretation" that was consistent with innocence.  <u>Id.</u> at 760-62.  Thus, even under <u>Bryant</u>'s reasoning, Huizar's acts of concealment <u>are</u> admissible and have <u>some</u> probative value as to <u>defendant's</u> corrupt intent.

LAW OFFICES OF RICHARD M. STEINGARD

In any event, the government <u>specifically alleges</u> in the FSI that the various co-schemers, including SZNW, engaged in acts of concealment as a feature of the bribery scheme.  (<u>See</u> FSI ¶ 45(c)) (describing the various methods by which the co-schemer concealed the scheme, including by "storing large amounts of cash in their residences"; "directing payments to family members, associates, and entities to avoid creating a paper trail between [SZNW], [its] proxies and [Huizar/Esparza]"; "using family members and associates to pay expenses"; and "depositing cash at ATMs and banks in amounts under $10,000 to avoid bank reporting requirements.")  At trial, the government must prove up the charged scheme, which will include concealment acts, including Huizar's and Esparza's efforts to evade bank reporting requirements.  (<u>See id.</u> pp. 87-88 OA 362-366.) This evidence, as with other acts of concealment, is necessarily relevant.

       B.    <u>The Acts of Concealment Do Not Constitute Character Evidence</u>

Defendant argues that Rule 404(a) bars the concealment evidence because "it tends to show that [Huizar and Esparza] were of poor character, or possessed a character trait of furtiveness or stealth, in order to prove that they acted in accordance with the character or trait as to the alleged crimes."  (Mot. at 7.)  Not so.

Federal Rule of Evidence 404(a)(1) prohibits admitting "[e]vidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(a)(1). That rule is clearly inapplicable here, where the acts of concealment formed a key component of the bribery scheme, which the government specifically charged in the FSI.  The government is not proving that Huizar and Esparza had poor character or introducing the concealment evidence to show that Huizar/Esparza were somehow acting in conformity with a character trait; rather, the evidence tends to prove that Huizar and Esparza were participants in a bribery scheme with defendant that relied on concealment to keep it going.

LAW
OFFICES OF
RICHARD M.
STEINGARD

Defendant also misses the mark in citing Federal Rule of Evidence 404(b)(1), which bars "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Not only are the acts of concealment relevant to "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," which are specifically permitted uses under the rule, see Fed. R. Evid. 404(b)(2), but the concealment evidence (for the reasons stated above) is also "inextricably intertwined" with the charges in this case and thus does not fall under Rule 404(b).  See United States v. Anderson, 741 F.3d 938, 949 (9th Cir. 2013) ("Other act evidence that is 'inextricably intertwined' with a charged offense is independently admissible and is exempt from the requirements of Rule 404(b)."); United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004) (inextricably intertwined evidence includes evidence of acts that "constitute[] a part of the transaction that serves as the basis for the criminal charge.")

      C.     The Acts of Concealment Involving Out-of-Court Declarations are Co-Conspirator Statements

Defendant argues that the acts of concealment involving out-of-court statements do not qualify as co-conspirator statements under Rule 801(d)(2)(E) (and are thus hearsay) because "Huizar and Esparza's text and emails messages were private, there is no evidence they were shared with Huang or anyone from SZNW, nor is there evidence that they were working with SZNW or Huang toward a common goal."  (Mot. at 7-8.)  This argument fails.

As a preliminary matter, much of these communications are not being offered for their truth and are therefore nonhearsay.  For instance, a directive by Huizar to Esparza to "check to see if airplane checks your id" or Esparza providing Zheng with fake names for the Vegas trips would not be offered for the *truth of the matter asserted*.

Moreover, co-conspirator statements need not be communicated to other conspirators, including the defendant, to be admissible.  See Sendejas v. United States, 428 F.2d 1040, 1045 (9th Cir. 1970) ("It is well settled that a conversation between two co-conspirators which takes place out of the presence of a third co-conspirator is admissible into evidence against the third co-conspirator."); United States v. Lloyd, 807 F.3d 1128, 1160-61 (9th Cir. 2015) ("It is not necessary that the statement be made to another member of the conspiracy for it to come under [R]ule 801(d)(2)(E).").

Finally, as explained in detail in the government's oppositions to defendant's motions in limine Nos. 4 (Radar Screens) and 6 (Co-Schemer Statements), the government will present ample evidence laying a proper foundation that a conspiracy/scheme existed at the time the various out-of-court communications were made.

D.     A Rule 403 Analysis Favors Admitting the Highly Probative Acts of Concealment

Rule 403 authorizes the Court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403 (emphasis added).  Exclusion under this rule is "an extraordinary remedy to be used sparingly."  United States v. Mende, 43 F.3d 1298, 1302 (9th Cir. 1995) (citation omitted).  Because "[r]elevant evidence is inherently prejudicial, [] it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."  United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000) (cleaned up).

Defendant argues that it will be prejudiced at trial in that "[a]llowing the government to introduce concealment evidence requires complex limiting instructions explaining that the jury must compartmentalize this evidence and

consider it for a limited purpose—a purpose that is a non-issue in the case." (Mot. at 8.) Defendant is wrong. As explained above, Huizar's and Esparza's acts of concealment were a key feature of, and helped further and preserve, the charged bribery scheme. As their co-schemer, which benefitted from the concealment, SZNW is accountable for all their acts, and the jury need not compartmentalize anything.

Defendant claims additional prejudice in that the "concealment evidence . . . implies that Huizar and Esparza were aware they were doing something illegal." (Id. at 8.) But, as explained earlier, this is powerful circumstantial evidence that Huang/SZNW knew their own conduct was illegal, which is highly probative. See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008) ("Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case."). This tips the scales decidedly and warrants against the extraordinary remedy of exclusion.

At bottom, the probative value of the concealment evidence far eclipses any potential prejudice to defendant.

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion should be denied.

LAW OFFICES OF RICHARD M. STEINGARD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SZNW'S REPLY**

As with so many of the oppositions, the government claims that the concealment evidence is "critical" to the case and "highly relevant."  Although brevity was not a concern, the government completely ignores the line of cases in SZNW's motion warning of the unreliability of such evidence, as well as its inherent prejudice, and does not reference or apply the four-part *Myers* test.  Rather, the government cites to cases that upheld the admissibility of concealment evidence *against the person doing the concealing* as proof of *that person's* intent.  *See e.g., United States v. Dearing*, 504 F.3d 897, 901 (9th Cir. 2007).  That is not this case, and the government's cited decisions do not support the government's illogical and unfounded argument that *Huizar and Esparza's* acts and statements of concealment "tend to show that *Huang/SZNW* had <u>corrupt</u> intent."  (Italics added, underline by government.)[6]

At its heart, the government's argument rests on the assumption that *anything* said or done by Huizar and Esparza, whether it was known to Huang or SZNW or whether it was reasonably foreseeable to them, is admissible because Huizar and Esparza are alleged co-schemers.  Yet, the government also contends that it does not have to prove a meeting of the minds between an alleged briber and bribee, which is, of course, is the sole the basis for treating co-schemers as co-conspirators.  *See* MIL No. 7 at 3-4 (explaining that the co-schemer statement exemption rests on agency principles: "When men enter into an agreement for an unlawful end, they become ad hoc agents for one another, and have made a 'partnership in crime.'").  The government can't have it both ways – if a meeting of

---

[6]  While both parties have addressed the acts of concealment evidence as a single issue, SZNW asks that the Court address its objections to each alleged incident individually.

the minds between Huizar and Huang is not required, Huizar's acts of concealment are inadmissible against Huang.[7]

But even if the concept does extend to co-schemers who are not on the same page, the concealment evidence here was not reasonably foreseeable to Huang and SZNW.  In *Upton*, the case cited by the government, the First Circuit addressed an insufficiency claim concerning a conviction for conspiracy to commit concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B). Admissibility was not an issue -- concealment was an element of the crime and the government alleged that the defendants' failure to file tax returns declaring stolen funds as one of the alleged means of carrying out the conspiracy. 559 F.3d at 10-11, 13. Examining the nuances of the statute, the Court found it did not require such agreement where the concealment evidence was integral to the concealment conspiracy and was plainly foreseeable to both defendants (declaring stolen income on one's tax return would defeat the purpose of the conspiracy). *Id.* at 14. This holding is a far cry from the current situation where concealment is neither an element of the alleged offense nor an integral part of it. [8]

Indeed, the government's argument is best reserved for the *Huizar* trial.  The government emphasizes that Count One—the RICO count—charges acts of concealment, ignoring that (1) the specific acts at issue were committed by Huizar,

---

[7]    The government fails to address this inconsistency other than to say  (1) the hearsay statements are not being offered for their truth, without providing whatever purpose they should be admitted; and (2) co-conspirator statements need not be communicated to other conspirators to be admissible, a true statement if Esparza, Huang, and SZNW were actually co-conspirators who had come to a meeting of the minds.

[8]    In *Diez*, another case cited by the government, the Fifth Circuit's holding similarly was based on the nature of the tax evasion conspiracy which inherently calls for concealment. 515 F.2d at 896-98.  Here, concealment is not a part of the offense.

not SZNW, and (2) SZNW is not charged in Count One.  Moreover, in stark contrast to those occasions when Huizar and Esparza attempted to conceal their actions, SZNW and Huang consistently acted with complete openness and transparency – among other things, Huang signed PEP forms when asked, executed CTRs, always used his true name, and overtly provided chips to his guests in full view of casino representatives and cameras.  Using the government's logic, if concealment evidence shows a consciousness of guilt, the lack of concealment would be evidence of an innocent intent.  Yet, as noted above, the government seeks to introduce Huizar and Esparza's acts of concealment under the theory that it shows SZNW and Huang "<u>corrupt</u> intent."   The disconnect is apparent.[9]

The government's attempt to pin SZNW's knowledge of the concealment on Ricky Zheng also fails. First, for most of the acts of concealment, Zheng was not an SZNW employee or its agent. An agent is defined under California law as "one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295. "In determining if an agent relationship exists, the court considers three essential characteristics: (1) an agent or apparent agent holds a power to alter the legal relationships between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal had the right to control the conduct of the agency with respect to matters entrusted to him." *Gerritsen v. Warner Bros. Entertainment, Inc*., 116 F.Supp. 3d 1104, 1146 (C.D.Cal. 2015) (citations omitted). Zheng worked for SZNW for in 2016 for approximately one year; he otherwise had no position with the company.  Moreover, Zheng never had

---

[9]     The solitary occasion when the government could arguably claim an act of concealment by Huang concerns the collateral he provided to East West Bank in support of the bank's loan to Huizar.  The collateral was provided through Grace Luck Holdings, a Hong Kong company.  To be clear,  SZNW does not concede that this action constitutes concealment by SZNW or Huang but has no objection to the government's introduction of the loan/collateral transaction.

LAW OFFICES OF RICHARD M. STEINGARD

the power to alter the legal relationships between SZNW and third parties, nor did he have a fiduciary duty to SZNW or the right to control the conduct of SZNW with respect to any matters.  He attended the Las Vegas and Australia trips as Huang's friend and personal aid; the trips were not sponsored by SZNW and were social events hosted by Huang in his private capacity. There is no conceivable theory under which SZNW could be held responsible for statements and acts of Zheng in these circumstances.  *See New York Cent. & H.R.R. Co. v. United States*, 212 U.S. 481, 492-94 (1909) (a corporation may be held responsible for the acts of its agent within the scope of his employment).

Even were Zheng an agent of SZNW, his receipt of certain text messages does not implicate him in acts of concealment. For instance, Esparza's text to Zheng of the name "Juan Hernandez," which may have referred to Huizar, does not mean that Zheng was involved in concealment.  At this juncture, it's unclear what Esparza meant in sending the text, much less what Zheng understood the message to mean. Similarly, Esparza's texts to make sure Huizar did not use his (Esparza's) player card, does not indicate that Zheng participated or condoned acts of concealment (in fact, he was being advised *not* to allow Huizar to use a name that was not his).

Finally, the government's argues that the concealment evidence is inextricably intertwined to its case.[10]  The government is wrong.  Applying the Circuit's two-part test, the concealment evidence is not part of the charged scheme, and the government does not need to present it in order to tell a coherent story.  *United States v. Vizcarra-Martinez*, 677 F.3d 944, 951 (9th Cir. 2012) (explaining requirements for inextricably intertwined evidence).  In fact, the introduction of a

---

[10]   During the parties' many meet and confer discussions about the *in limine* motions, the government identified the items of evidence in which it intended to argue that they were inextricably intertwined in the case.  The concealment evidence was not among them, suggesting that this argument was an afterthought. .

LAW
OFFICES OF
RICHARD M.
STEINGARD

handful of alleged acts of concealment presents a *distorted* picture of Huizar and Esparza's behavior which, for the most part, was far more open than it was secretive.  Huizar generally used his real name, his own player card, and did not attempt to hide his behavior – all reasons why SZNW and Huang would not have known of the few occasions in which he may have acted furtively.  The government's proffered use of a handful of isolated incidents which were outside the norm presents a misleading picture to the jury, adding to the danger of unfair prejudice.

The government tries to distinguish *Bryant*, noting that the concealment evidence was admitted at trial,  The government omits that the admissibility of the concealment acts was not at issue *because it was a bench trial*.  *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) ("When the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself") (citations omitted); *Lo v. United States*, 2022 WL 1014902 (W.D. Wash. Apr. 5, 2022) (in bench trial, motions *in limine* rulings generally not required). That does not change the trial court's ultimate findings—in a bribery case, evidence of the briber's concealment was insufficient  to prove the element of intent as to the bribee; and viewing the evidence in the light most favorable to the government, no reasonable trier of fact could find the briber's concealment evidence sufficient to prove the bribee's corrupt intent. *Bryant*, 885 F.Supp.2d at 761-62.

///

///

///



LAW OFFICES OF RICHARD M. STEINGARD

DATED: August 29, 2022

RICHARD M. STEINGARD
Law Offices of Richard M. Steingard

By: /s/

RICHARD M. STEINGARD
Attorney for Defendant Shen Zhen
New World I, LLC

DATED: August 29, 2022

TRACY L. WILKINSON
United States Attorney

By: /s/

MACK JENKINS
SUSAN HAR
CASSIE PALMER
JAMARI BUXTON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## <u>DECLARATION OF RICHARD M. STEINGARD</u>

I, Richard M. Steingard, state and declare as follows:

1.      I am an attorney licensed to practice in the state of California and before this Court.  I represent Shen Zhen New World I, LLC ("SZNW") in the above-pending matter and submit this declaration in support of the motion *in limine* to exclude evidence of Jose Huizar and George Esparza's acts of concealment.

2.      SZNW moves this Court for an order excluding all alleged acts of concealment by Jose Huizar and George Esparza.  *Their* acts of concealment are not evidence of *SZNW or Wei Huang's* intent.  In addition, the concealment evidence is significantly prejudicial as it implies that Huizar and Esparza were aware they were doing something illegal.  Given that Huang and SZNW did not make any attempts at concealment, whatever may be the minimal probative value of the evidence is substantially outweighed by confusion of the issues, misleading of the jury, and unfair prejudice.

3.      Counsel for both parties have met and conferred about this motion *in limine*. After discussing the matter, counsel for the government stated that it will seek to introduce such evidence at trial.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of August, 2022 in Los Angeles, California.


_____
Richard M. Steingard



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **LOCAL RULE 5-4.3.4 ATTESTATION**

I attest and certify that all other signatories listed, and on whose behalf this filing is submitted, concur with the filing's content and have authorized the filing.

DATED: August 29, 2022          By: _____
                                          RICHARD M. STEINGARD