Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Attorney for Defendant
Shen Zhen New World I, LLC

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHEN ZHEN NEW WORLD I, LLC,<br><br>Defendant. | CR-20-326(A)-JFW<br><br>**JOINT MOTION *IN* LIMINE NO. 7: SHEN ZHEN NEW WORLD I, LLC'S MOTION TO EXCLUDE EVIDENCE OF INNOCENT OR IRRELEVANT ACTS OR ALTERNATIVELY, FOR LIMITING INSTRUCTIONS; DECLARATION OF RICHARD M. STEINGARD**<br><br>Date:   September 23, 2022<br>Time:  8:00 a.m.<br>Crtrm: 7A<br><br>Trial Date: October 25, 2022<br><br>Assigned to Hon. John F. Walter |

# **TABLE OF CONTENTS**

**Identification of Matters in Dispute** ...................................................................1

**SZNW's Motion** .......................................................................................................2

I.     INTRODUCTION ...............................................................................................2

II.    STATEMENT OF FACTS ................................................................................2

      A.    SZNW's Request for Huizar's Assistance Regarding a Visa
            for an SZNW Employee ................................................................3

      B.    SZNW's Request for Huizar's Assistance on Union-Related
            Issues .............................................................................................3

      C.    SZNW's Request for Huizar's Assistance Regarding a
            Dispute with a Parking Lot Vendor ...........................................4

      D.    SZNW's Request for Huizar's Assistance in Obtaining Media
            Coverage for a School Graduation ............................................4

III.   ARGUMENT ......................................................................................................6

      A.    Evidence of Pay-to-Play Scheme Within the City
            Is Direct Evidence of Defendant's Crimes ...............................6

      B.    Alternatively, the Court Should Give a Limiting Instruction
            During Trial and In its final jury charge ..................................9

**Government's Opposition** ......................................................................................11

I.     INTRODUCTION .............................................................................................11

II.    ARGUMENT ....................................................................................................12

      A.    Defendant's Asks and Huizar's Responses Are Admissible,
            Probative Evidence of Their Corrupt Relationship .............12

      B.    An In-Trial Limiting Instruction Is Not Appropriate
            or Necessary ...............................................................................16

III.   CONCLUSION .................................................................................................18

**SZNW's Reply** .......................................................................................................19

**Declaration of Richard M. Steingard** ................................................................24

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*City of Los Angeles v. Santa Monica Baykeeper,*
  254 F.3d 882 (9th Cir. 2001) .......................................................................20

*McCutcheon v. Federal Election Com'n,*
  572 U.S. 185 (2014)........................................................................................6

*McDonnell v. United States,*
  136 S.Ct. 2355 (2016)...............................................2, 6-8, 12, 14-16, 19, 21

*Milgard Tempering, Inc. v. Selas Corp. of Am.,*
  902 F.2d 703 (9th Cir. 1990) .......................................................................20

*Thomas v. Bible,*
  983 F.2d 152 (9th Cir. 1993) .......................................................................15

*United States v. Frega,*
  179 F.3d 793 (9th Cir. 1999) ............................................................... 15, 20-21

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 401 .............................................................................................9

Fed. R. Evid. 402 .............................................................................................9

**STATUTES**

18 U.S.C. § 666 ............................................................................................. 13-14

**TABLE OF EXHIBITS**

| Exhibit | Description | Page(s) |
|---|---|---|
| A | May 17, 2013 & June 17, 2013, Emails Between Harris Chan & George Esparza (Casino_0004097-8 & 0004146-7) | 3:13 |
| B | June 2013 Text Messages Between Jose Huizar & Harris Chan Text Messages; July 13, 2013, Email Between Harris Chan & George Esparza; September 20, 2013, Email Between Jose Huizar & Staffer (Casino 0004240, 0000041, & 2068655-8) | 3:24 |
| C | March 2015 Text Message Between Jose Huizar & Ricky Zheng; June 2016 Text Message Between George Esparza & Virginia Clark (Casino_2084830 & 2084809-11) | 4:2 |
| D | September 2013 – January 2014 Emails & Text Messages Between Jose Huizar, Harris Chan, & Ray Chan (Casino_0000048, 0000098-9, 0000101-2, 2084771-4, 2084780-1, 2084812, 2084815-6, 2084813-4, 2084819-20, 2084782-3 & 2084829) | 4:15 |
| E | May 9, 2017, Line Sheets for Phone Calls Between Wei Huang, Ricky Zheng, Jose Huizar George Esparza, and/or Rick Coca (Casino_0055678-9, 0054670-1, 0054673-5, 0055042-3, 005781-3 & 0055049-51) | 4:25 |
| F | August 8, 2016, Email Between Shawn Kuk & George Esparza; August 16, 2016, Text Message Between George Esparza & Ricky Zheng; December 16, 2016, Email Between George Esparza & Jose Huizar; December 19, 2016, Email Between Jose Huizar, Ricky Zheng & Wei Huang (Casino_0006419, 0044335 & 2084839) | 5:11 |
| G | October 19, 2016, Email Between Wei Huang & Ricky Zheng; October 18, 2016, Text Messages Between Ricky Zheng & George Esparza (Casino_0001473-6, 0006213-4 & 2084840-4) | 5:19 |

LAW
OFFICES OF
RICHARD M.
STEINGARD

## **IDENTIFICATION OF MATTERS IN DISPUTE**

**Defendant's Position:** SZNW moves this Court for an order excluding SZNW and Wei Huang's requests of Jose Huizar and his office staff that he arrange meetings, make phone calls, and attend to other assorted actions that do not qualify as "official acts."  In *McDonnell*, Chief Justice Roberts, writing for a unanimous court, characterized such conduct as "innocent" or "irrelevant" acts. Clearly, requests that are irrelevant are inadmissible; those that are merely innocent acts require a foundational basis for their admission—absent one, they too are inadmissible.  Alternatively, should the Court admit these acts, SZNW asks that the Court provide an in-trial and end-of-trial instruction to the jury which states that the specific event or item of evidence cannot qualify as an "official act" and is only being admitted for whatever limited purpose the Court bases its admission.

**Government's Position:** Defendant's asks, and Huizar's responses, are probative evidence of their transactional and corrupt relationship and of defendant's criminal intent.  The evidence is not of a prejudicial or inflammatory nature, and any risk of jury confusion will be addressed by the jury instructions and special verdict form.  The Court's prior rulings denying defendants' motion to dismiss and strike largely addressed many of these same acts.

The government would be highly prejudiced by the exclusion of this large and significant category of its evidence reflecting many charged acts and demonstrating the mutually beneficial nature of defendant and Huizar's corrupt relationship.

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

1

2

3

4

## JOINT MOTION IN LIMINE NO. 7
## SZNW'S MOTION TO EXCLUDE EVIDENCE OF INNOCENT OR IRRELEVANT ACTS OR ALTERNATIVELY, FOR A LIMITING INSTRUCTIONS

5

### I.    INTRODUCTION

6

7

8

9

10

11

12

13

14

15

Shen Zhen New World I, LLC ("SZNW") moves this Court for an order excluding evidence of SZNW's requests to Jose Huizar and his office staff for assistance with routine matters, such as making phone calls, arranging meetings, assisting with employee visas, and arranging media coverage of an event, and Huizar and his office's assistance with those requests.  These types of requests and the elected official's responsive assistance are not "official acts" and, therefore, cannot support a bribery charge.  *McDonnell v. United States*, 136 S.Ct. 2355 (2016).  Indeed, in *McDonnell*, Chief Justice Roberts—speaking for a unanimous Court—characterized an elected official's assistance with such requests as "innocent acts" or "irrelevant."  136 S.Ct. at 2371.

16

17

18

19

20

21

22

For the reasons that follow, SZNW submits that its requests to Huizar and his responses, described below, should be excluded.  Alternatively, if the requests and responses are admitted, SZNW asks that the Court give the jury a limiting instruction whenever such evidence is introduced, advising the jury that SZNW's requests and Huizar's responses are not "official acts," that this evidence is only being offered for some other limited purpose—whatever that may be—and that the jury may not consider or rely on this evidence as proof of an "official act."

23

### II.   STATEMENT OF FACTS

24

25

26

27

28

Between 2013 and 2017, SZNW, through its owner Wei Huang or its agents, requested Jose Huizar or his office's assistance on several matters.  Huizar responded by providing, either personally or through staff members, the requested assistance.  SZNW objects to the introduction of all SZNW relatively routine

1 requests to Huizar for assistance and Huizar and his office's responses, whether

2 presented through documents, audio recordings, or testimony.

3    The government's trial exhibit list identifies the following requests by

4 SZNW to Huizar, George Esparza, and other members of Huizar's office, and

5 Huizar, Esparza, and the staff's responses.

6    A.    SZNW's Request for Huizar's Assistance Regarding a Visa for an

7          SZNW Employee

8    On May 17, 2013, Harris Chan, a SZNW employee, emailed Esparza

9 requesting that Huizar sign a draft letter to the U.S. Consulate in China regarding

10 an SZNW employee's pending visa application.  After revising the letter, Huizar

11 did so.  On June 17, 2013, Harris Chan emailed Esparza again, noting that the U.S.

12 Consulate had not acknowledged the receipt of Huizar's letter and asking if he

13 (Esparza) would forward Huizar's letter to the appropriate person at the Consulate.

14 (Govt. Exs. 261-2, Casino_0004097-8 & 0004146-7, attached collectively as

15 Exhibit A.)

16    B.    SZNW's Request for Huizar's Assistance on Union-Related Issues

17    In June 2013, Huizar and Harris Chan exchanged text messages regarding

18 Huizar's discussions with Tom Walsh, a union leader, about a former SZNW

19 employee who was a member of the local union.  On July 12, 2013, Harris Chan

20 emailed Esparza, asking if Huizar would recommend a labor consultant to analyze

21 SZNW's current union agreement.  Esparza forwarded the email to Huizar, asking

22 if he (Esparza) should arrange a meeting with Walsh.  Huizar responded that he

23 should arrange such a meeting.  On September 20, 2013, Huizar emailed a staffer

24 to contact Walsh to invite him to dinner with Huang and Huizar on October 10,

25 2013.  (Govt. Exs. 264-5 & 286A, Casino 0004240, 0000041, & 2068655-8,

26 attached collectively as Exhibit B.)

27    In March 2015, Huizar texted with Ricky Zheng to arrange a dinner between

28 Huang and Walsh.  In June 2016, Esparza texted with SZNW's General Manager,

Virginia Clark, regarding when Huang would be in Los Angeles to meet with Walsh.  (Govt. Exs. 282B & 292A, Casino_2084830 & 2084809-11, attached collectively as Exhibit C.)

C.     SZNW's Request for Huizar's Assistance Regarding a Dispute with a Parking Lot Vendor

Between September 2013 and January 2014, Huizar, Harris Chan, and Ray Chan exchanged emails and text messages regarding Huizar's attempt to facilitate the resolution of a dispute between SZNW and Shahram and Michael Delijani, the owners of a parking lot that serviced the LA Grand Hotel.  The emails included a letter from Huang to the Delijanis with a proposal to resolve the dispute, and a memo from Ray Chan outlining possible resolutions to the dispute.  The emails and text messages also reflect that Huizar attended meetings with the Delijanis and dinners with the Delijanis and Huang.  (Govt. Exs. 266, 268-9, 286B-C, 287A-D, 287F, 287H, & 287L, Casino_0000048, 0000098-9, 0000101-2, 2084771-4, 2084780-1, 2084812, 2084815-6, 2084813-4, 2084819-20, 2084782-3 & 2084829, attached collectively as Exhibit D.)

D.     SZNW's Request for Huizar's Assistance in Obtaining Media Coverage for a School Graduation

On May 9, 2017, Huang and Ricky Zheng called Huizar and requested that he arrange media coverage for the graduation ceremony at American University Preparatory ("AUP"), a high school owned by Huang and located in the LA Grand Hotel.  Thereafter, there were a series of phone calls between Huang, Huizar, Zheng, Esparza, and/or Rick Coca (a Huizar staffer), about securing the media's coverage for the graduation.  (Govt. Exs. 387-8, 399-401, & 404-6,



Casino_0055678-9, 0054670-1, 0054673-5, 0055042-3, 005781-3 & 0055049-51, attached collectively as Exhibit E.)[1]

E.     SZNW's Requests for Huizar's Assistance in Regard to the Expansion of the LA Grand Hotel

On August 8, 2016, in response to Huang request to Huizar for a list of land use consultants to assist with the LA Grand's expansion project, Shawn Kuk, a Huizar staffer, emailed Esparza a list of land use consultants. On August 16, 2016, Esparza texted Zheng that Huizar wanted a phone conference with Huang and that he (Huizar) would have the recommendations by then. On December 16, 2016, Esparza forwarded Kuk's list of land use consultants to Huizar. On December 19, 2016, Huizar sent Zheng a paired down list of consultants, which Zheng forwarded to Huang. (Govt. Exs. 32-3 & 285M, Casino_0006419, 0044335 & 2084839, attached collectively as Exhibit F.)

On October 19, 2016, Huang emailed Zheng a draft letter and asked that he forward it to Huang. The draft letter, in Chinese and English, was from Huizar to Huang outlining the LA Grand Hotel's expansion project and stating that Huang needed to be present in Los Angeles for an upcoming meeting. That same day, Zheng forwarded the letter to Huizar. On October 18, 2016,[2] Zheng and Esparza exchanged text messages about the letter: Zheng stated that Huang wanted the letter right away; Esparza said Huizar was working on it. (Govt. Exs. 30-1 & 285N, Casino_0001473-6, 0006213-4 & 2084840-4, attached as Exhibit G.)

//

//

---

[1]     Because the government has not yet provided transcripts for these conversations, we have attached the wiretap's line sheets for the calls. We are not lodging the audio recordings of the calls but will do so upon the Court's request.

[2]     The emails' seeming inconsistency in dates is likely due to the fact that Huang's October 19, 2016 email was sent from China.

LAW OFFICES OF RICHARD M. STEINGARD

1

2    **III.    ARGUMENT**

3        A.    The Court should exclude evidence of SZNW's requests to Huizar for

4              assistance and Huizar's assistance

5        Over the past half-century, the Supreme Court recognized that a bribery

6    conviction cannot be based on an elected official arranging a meeting or

7    performing some other relatively routine action.  In *McCutcheon v. Federal*

8    *Election Com'n,* 572 U.S. 185 (2014), the Court stated as follows:

9            In a series of cases over the past 40 years, we have spelled out how to

10           draw the constitutional line between the permissible goal of avoiding

11           corruption in the political process and the impermissible desire simply

12           to limit political speech. We have said that government regulation

             may not target the general gratitude a candidate may feel toward those

13           who support him or his allies, or the political access such support may

14           afford. 'Ingratiation and access ... are not corruption.' They embody a

15           central feature of democracy -- that constituents support candidates

             who share their beliefs and interests, and candidates who are elected

16           can be expected to be responsive to those concerns.

17   *Id.* at 192 (internal citation omitted).

18       Two years later, the Court revisited this issue.  In *McDonnell,* a Virginia

19   businessman named Jonnie Williams gave a variety of gifts to Virginia's

20   Governor, Robert McDonnell, including travel on Williams' private airplane,

21   designer clothing, $15,000 toward the cost of the Governor's daughter's wedding,

22   a $10,000 wedding gift, a Rolex watch for the Governor's wife to give him as a

23   Christmas present, use of Williams' Ferrari and vacation home, and three loans

24   totaling $120,000.  At the time these gifts were provided, Williams sought

25   McDonnell's assistance with a nutritional supplement called Anatabloc.  The

26   supplement had been developed and marketed by a Virginia-based company

27   named Star Scientific; Williams was the CEO of Star Scientific.  Williams wanted

28   Virginia's public universities to undertake studies of the root substance of

Anatabloc, called anatabine, which would be a critical step in obtaining FDA approval for Anatabloc as an anti-inflammatory drug.

The Governor took several actions to promote the supplement, including hosting a "kickoff" luncheon at the Governor's mansion to launch the product to which he invited Williams and state university researchers; hosting a healthcare industry reception at the Governor's mansion to which he again invited Williams and the state university's researchers; and meeting with high-ranking Virginia officials and advising them that he (McDonnell) took the supplement, it was working well for him, he thought it would be good for state employees, and asking that they meet with representatives from Williams' company.

Based on McDonnell's acceptance of the above-described gifts in exchange for the above-described "official acts," he was indicted for *inter alia* honest services fraud.  He was convicted at trial, which was affirmed by the Fourth Circuit.  The Supreme Court reversed the conviction, holding that the jury instructions were flawed because they misled the jury into believing that McDonnell's statements and actions about Anatabloc could constitute "official acts."  The Court reasoned as follows:

> [A]n "official act" is a decision or action on a "question, matter, cause, suit, proceeding or controversy." The "question, matter, cause, suit, proceeding or controversy" must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is "pending" or "may by law be brought" before a public official. To qualify as an "official act," the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding or controversy," or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official. *Setting up a meeting, talking to another official, or*

LAW
OFFICES OF
RICHARD M.
STEINGARD

*organizing an event (or agreeing to do so)—without more—does not fit that definition of "official act."*

136 S.Ct. at 2371-2 (emphasis added).

The Court also provided guidance for when a seemingly routine act by an elected official might qualify as an "official act." The Court made clear that "hosting an event, meeting with other officials, or speaking with interested parties is not, standing alone, a 'decision or action' within the meaning of [the federal bribery statute], even if the event, meeting, or speech is related to a pending question or matter." *Id.* at 2370. However, the Court also stated, "[T]his is not to say that setting up a meeting, hosting an event, or making a phone call is always an innocent act, or is irrelevant in cases like this one. If an official sets up a meeting, hosts an event, or makes a phone call on a question or matter that is or could be pending before another official, that could serve as evidence of an agreement to take an official act." *Id*. at 2371.

*McDonnell* is, of course, controlling and must be applied to the instant case. Here, the government seeks to present evidence that SZNW requested Huizar's assistance, and Huizar provided such assistance, on matters that are identical to or remarkably similar to those in *McDonnell*. For instance, SZNW asked Huizar to make phone calls and arrange meetings to help resolve a parking dispute and union-related issues. Along the same lines, SZNW asked for Huizar's assistance in writing letters to facilitate visa applications, arranging media coverage for the AUP graduation, and providing lists of recommended labor and land use consultants. These are routine requests by donors and fundraisers and equally routine for elected officials and their staff. Indeed, In the recent *940 Hill/Lee* trial, a government witness, Shawn Kuk, testified that it was "fairly common for politicians, when a major fundraiser asks them to look at something or for information about something, to respond to them" and that there was "nothing

LAW
OFFICES OF
RICHARD M.
STEINGARD

unusual about a fundraiser asking for information from [Huizar's] office about something that affected them."  (RT 6/17/22 at p. 839.)

As *McDonnell* makes clear, none of SZNW's requests, or Huizar's responsive actions, constitute an "official act."  Rather, they are "innocent acts" or "irrelevant."  *Id.* at 2371.  From an evidentiary standpoint, the distinction between the two – innocent versus irrelevant – seems blurred.  For purposes of this motion, if the Court finds that a request-and-response is the former, absent an evidentiary basis for its admission, it should be excluded.  If the Court finds it is the latter, it is clearly inadmissible.  FRE 401 & 402.

       B.    <u>Alternatively, the Court should give a limiting instruction during trial and in its final jury charge</u>

If the Court admits SZNW's requests and Huizar's assistance, the jury should be given a limiting instruction during trial when such evidence is received that clarifies both the manner in which the jury should—and should not—consider this evidence.  Without timely limiting instructions, jurors are likely to wrongly believe that SZNW's requests for "legal" favors, and Huizar's acquiescence to these requests, can establish the illegal *quid pro quo* arrangement necessary for a federal bribery conviction.[3]  A limiting instruction during trial is particularly appropriate since the government has advised the Court that there will be extensive

---

[3]    In a recent pleading in the *940 Hill/Lee* case, the government argued that Lee's *lawful* (that is, non-"official act") requests to Huizar were proof of his *illegal* conduct.  (ECF 599 at p. 14 ("When defendant LEE forwarded the CREED appeal to Kim, it was reasonably foreseeable to LEE that Kim would use an interstate wire to seek CD-14's help on the issue, *because that is exactly what Kim had done in the past in response to these types of requests from defendant LEE.*") (Emphasis added).).  Because SZNW's requests to Huizar regarding the expansion of the LA Grand Hotel were routine matters – providing a list of recommended land use consultants and sending a letter outlining the project – this his argument should also be excluded as it is inapplicable to the facts of this case.

LAW
OFFICES OF
RICHARD M.
STEINGARD

1  evidence and expects the trial to last at least one month.  The instruction should be
2  given at the end of the case as well .

3       SZNW proposes that the following instruction be given to the jury during
4  trial, modified as the Court sees fit:

5       You [are about to receive/have received] evidence that (describe the
6       request or assistance -- *e.g.,* "a Shen Zhen New World employee
7       asked Huizar to arrange a meeting regarding a parking lot dispute").
        There is nothing illegal or improper about this (request from Shen
8       Zhen New World/assistance by Huizar). It is common and entirely
9       permissible for constituents to make such requests of their elected
10      official and for elected officials to provide such assistance to their
11      constituents. This (request by Shen Zhen New World/assistance by
        Huizar) does not constitute an "official act" for which the *quid pro*
12      *quo* necessary for bribery may be based. You may consider this
13      evidence solely for the limited purpose of [insert evidentiary basis]
14      and for no other purpose.

15      In a recent email exchange with government counsel, the government
16 declined to agree to such an instruction.

17

18

19

20

21

22

23

24

25

26

27

28

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

<u>**GOVERNMENT'S OPPOSITION**</u>

2

## I.   INTRODUCTION

3

At trial, the government will show that defendant Shen Zhen New World I,

4

LLC ("SZNW" or "defendant"), the domestic subsidiary of the Chinese parent

5

company Shen Zhen New World Group, acting primarily through its owner,

6

fugitive co-defendant and Chinese national Wei Huang, began developing a

7

corrupt relationship with Jose Huizar[4] starting in 2013.  In 2013, Huizar was a

8

member of the PLUM Committee and the Councilmember of the district where

9

defendant owned one of his only two properties in Los Angeles and in the United

10

States.  Over the years, defendant fostered and furthered its relationship through a

11

lavish stream of benefits in exchange for ongoing timely access to, and political

12

favors by, Huizar--to ultimately include official acts in connection with the L.A.

13

Grand Hotel Project.

14

Examples of the transactional nature of this corrupt relationship between

15

defendant and Huizar are specifically alleged in the FSI as overt acts of the RICO

16

conspiracy and as predicate wires for the honest services fraud counts against

17

defendant.  Defendant's "asks" and Huizar's "responses" agreeing to assist--be it a

18

letter supporting a visa application or defendant's financing, intermediation in a

19

parking lot or union dispute impacting defendant's property or securing media

20

presence for an important event--are thus neither innocent nor irrelevant acts.  To

21

the contrary, they are the formative stepping-stones along defendant and Huizar's

22

corrupt path, all of which escalated over time and was punctuated by defendant's

23

showering of benefits like extravagant trips to Vegas, Australia, and Pebble Beach,

24

cash in the form of gambling chips, and over half-a-million-dollars as collateral for

25

26

27

28

---

[4]      References to Huizar encompass Jose Huizar, Huizar's Office, and other
public officials working at his direction, like George Esparza.



Jose Huizar's personal loan to help save his powerful City position, which was poised to significantly benefit defendant and Huang.

Defendant moves to exclude evidence of these highly probative asks and responses on the exceedingly narrow basis that they are not "official acts" within the meaning of <u>McDonnell</u>.[5] But this argument has already been largely rejected by the Court after prior extensive motion practice. (<u>See</u> 1/7/2022 Hr'g Tr. at 16:18-20:1 (Court denying defendants' motions to dismiss and strike allegations from the indictment that defendants argued were not "official acts").) This strawman argument again fails because it erroneously conflates anything that is "not an official act" with being <u>inadmissible</u>. Even if they do not pertain to <u>McDonnell</u> official acts, defendant's asks, and Huizar's responses to those asks, are admissible as significant, relevant evidence of the nature of their relationship and of defendant's corrupt motive and intent for that relationship, specifically as it relates to each of the charged counts.

The Court should therefore deny defendant's motion.

## II.     ARGUMENT

A.     <u>Defendant's Asks and Huizar's Responses Are Admissible, Probative Evidence of Their Corrupt Relationship</u>

A critical issue at trial will be the nature of the relationship between defendant (a developer with two properties in Los Angeles, including in CD-14) and CD-14 Councilmember Jose Huizar and in particular, the defendant's intent and motives for that relationship. It will also be necessary for the government to establish that defendant and Huang were not simply victims of extortionist or pressure tactics by a powerful and avaricious councilmember (a defense previously proffered by defendants SZNW and Huang). Thus, the government will seek to

---

[5]     <u>United States v. McDonnell</u>, 136 S. Ct. 2355 (2016).

establish that defendant (1) sought to develop and further a transactional and corrupt relationship to gain access to, and political favors (including official acts) by, Huizar, (2) in exchange for providing various financial benefits.  Defendant is charged with a years-long scheme to defraud the City of Los Angeles and its citizens of the right to the honest services of public officials, as well as with federal program bribery under 18 U.S.C. § 666 and violations of the Travel Act--all stemming from defendant's relationship with Huizar.  Evidence of the specific interactions between defendant and Huizar are therefore highly relevant.

Consistent with the government's theory, the FSI describes examples of defendant's asks, and Huizar's responses and acts to assist defendant, as overt acts for the RICO conspiracy.  Some of those same acts also serve as the predicate wires for the honest services fraud counts that will be before the jury at the October trial.  For instance:

- **OA 50, 51** – Defendant seeks an official letter from Huizar to support a visa application for defendant's employee, which Huizar provides. (FSI pp. 23.)

- **OA 53, 56** – Defendant asks for Huizar's assistance with resolving labor union issues at Huang's two hotels in the City; Huizar obliges. (Id. pp. 23-24.)

- **OA 54** – Defendant seeks Huizar's assistance to negotiate and resolve a parking lot dispute impacting the L.A. Grand Hotel, which Huizar discusses.  (Id.)

- **OA 60, 61, 65, 67** – Defendant seeks Huizar's assistance for hiring a consultant for the L.A. Grand Hotel Project, which Huizar provides. (Id. pp. 25-26.)

○ The 12/19/2016 email from Huizar to Ricky Zheng, a SZNW and Huang employee, providing recommendations for consultants is the predicate wire for **Count Four**.  (Id. pp. 104.)

- **OA 62, 63, 64** – Defendant seeks a letter from Huizar, in his official capacity and using City letterhead, to support defendant's efforts to obtain financing for the L.A. Grand Hotel Project; Huizar complies. (Id. pp. 25-26.)

○ The 10/19/2016 email from Zheng to Huizar forwarding Huang's email and draft letter on this topic is the predicate wire for **Count Three**.  (Id. pp. 103.)

The government has also provided discovery relating to defendant's requests for--and Huizar's response and assistance with--media coverage for a graduation ceremony at American University Preparatory, which is located in defendant's L.A. Grand Hotel.

Citing McDonnell, defendant moves to exclude all of the foregoing evidence on the basis that these acts are not "official acts" and "therefore, cannot support a bribery charge."  (Mot. at 1.)  Defendant's argument fails.

First, as a preliminary legal matter, despite this issue also being previously litigated and resolved by this Court, defendant incorrectly assumes that any "bribery" charge requires an official act; it makes no distinction amongst the three types of charges at issue: honest services wire fraud (Counts 2-4); Travel Act violations (Counts 18-21); and federal program bribery (Count 23).  Yet as this Court has already ruled, the McDonnell definition of "official act" applies to honest services wire fraud, but not to Travel Act violations or federal program bribery.  (1/7/2022 Hr'g Tr. at 63:22-64:11 (McDonnell definition of official acts does not apply to the Travel Act violations; see Dkt. No. 584 at 28 (third element for section 666 violation is that defendant acted with intent to influence or reward

LAW
OFFICES OF
RICHARD M.
STEINGARD

public official "in connection with any business, transaction, or series of transactions of the City involving anything of value of $5,000 or more"; not defined using term "official act"); see also Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993) (explaining that under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.").[6]

Second, each of defendant's asks and Huizar's responses are highly relevant because they are probative of the nature of their relationship, of defendant's years-long scheme to defraud, and of defendant's motives for that relationship--key issues at trial-- regardless of whether they are the predicate "official acts" specified in the charges.  That is, they are part of the "broad range of pertinent evidence" that the jury can consider to evaluate "the nature of the transaction[s]" and to determine whether defendant ultimately provided a bribe in exchange for at least one official act.  McDonnell, 136 S. Ct. at 2371.  That "pertinent" evidence may include acts or events that do not by themselves constitute an "official act" because they may still be evidence of corrupt intent, among other things.  Id. ("Of course, this is not to say that setting up a meeting, hosting an event, or making a phone call is always an innocent act, or is irrelevant, in cases like this one."); see also United States v. Frega, 179 F.3d 793, 806 (9th Cir. 1999) ("While [defendant] may be correct that this evidence did not pertain to 'official acts,' he is wrong in his assertion that the court erred in admitting it.  The evidence is probative of the relationship between [defendant] and the judges."); accord Ninth Circuit Model Criminal Jury Instruction No. 8.20 ("An overt act does not itself have to be unlawful.").

---

[6]    Although not legally required, the federal program bribery and Travel Act counts against defendant allege "official acts" that meet the McDonnell definition.

LAW OFFICES OF RICHARD M. STEINGARD

In other words, evidence of a non-official act is not coextensive with inadmissibility, as defendant erroneously presumes. Indeed, the Supreme Court in <u>McDonnell</u>, the Rules of Evidence, and Ninth Circuit case law all unequivocally establish the opposite.

<u>Finally</u>, the two categories of asks/responses directly pertaining to defendant's L.A. Grand Hotel Project--namely, the official letter in support of defendant's financing efforts for the project and the recommendation for consultants--are additionally admissible and relevant as they are part of the predicate wires for Counts Three and Four, respectively.

An In-Trial Limiting Instruction Is Not Appropriate or Necessary

As explained, the government is entitled to present evidence of the transactions between defendant and Huizar as probative of their corrupt relationship, of defendant's scheme to defraud, and of defendant's <u>mens rea</u>.

Defendant's specially crafted instruction is based on the same flawed logic supporting its argument for exclusion of this evidence. (<u>See</u> Mot. at 8-9.) Defendant would have this Court incorrectly instruct the jury that "[t]here is <u>nothing</u> illegal or improper" about the asks/responses and that "it is common and entirely permissible for constituents to make such requests . . . for elected officials to provide such assistance." (Mot. at 9 (emphasis added).) As explained, the government will argue, and the jury is entitled to infer, that the asks/responses were illegal and improper insofar that they were the seeds sown to cultivate and test defendant's corrupt relationship with Huizar. And the jury instructions will adequately address what is and is not an official act, just as they did in the Lee/940 Hill trial. Moreover, assuming defendant properly admits evidence supporting the <u>facts</u> that similar requests by constituents are "common" and "permissible," defendant is free to present attorney <u>arguments</u> to the jury regarding the

significance of the asks/responses (just as the government is entitled to argue that the asks/responses are incriminating evidence of a corrupt relationship and defendant's culpable intent).  However, they are not proper jury instructions because they foreclose fair and relevant inferences the jury is entitled to make.  See Ninth Circuit Model Criminal Jury Instructions Introduction (jury instructions are to provide "understandable and accurate explanations of the law" and should be presented in a "neutral, even-handed manner").  Defendant's proposed in-trial limiting instruction is improper because it is inconsistent with the law and misrepresents the facts.

For that matter, no-in trial limiting instruction is necessary.  The asks/responses evidence are not of a prejudicial or inflammatory nature that might warrant a limiting instruction.  Once again, the Court also previously rejected an analogous claim in the prior litigation.  (1/7/2022 Hr'g Tr. at 17:17-24 ("In their reply, defendants do not dispute that the overt acts need not be unlawful . . . . Rather, they claim that these overt acts are prejudicial surplusage because they create a significant risk of juror confusion about what is and isn't a crime . . . . I disagree.").)  In any event, under defendant's theory, the asks/responses present as innocuous and routine matters.  There is no risk of jury confusion, as the substantive honest services wire fraud jury instruction will clearly set forth both the general definition of an official act and detail as an element the specific matter alleged in connection with the official act(s).  (See Dkt. No. 584 [Lee/940 Hill Jury Instructions (Given)] at 23-25 (describing the second element as involving "at least one official act by Jose Huizar or George Esparza on the CREED LA appeal filed against the 940 Hill Project" (emphasis added).)  Furthermore, as government counsel advised the defense and as the Court already indicated it may require, a special verdict form can be crafted to further identify the charged official act(s) where helpful to the jury.  (See 1/7/2022 Hr'g Tr. at 17:24-18:4 ("[T]he Court will

LAW
OFFICES OF
RICHARD M.
STEINGARD

1    require the Government to specify the quos or official acts in the jury instructions
2    that they contend support each of the bribery charges.").)

    **III.    CONCLUSION**

       For the foregoing reasons, defendant's largely recycled motion should be
denied.



LAW
OFFICES OF
RICHARD M.
STEINGARD

## SZNW'S REPLY

Once again, the government claims in its opposition to a motion *in limine* that the evidence at issue is "highly probative", "highly relevant," and "critical" to the case. The evidence at issue concerns what the government previously referred to as "a number of *smaller asks* Huang made of Huizar" (ECF 619 at 7, n.7; emphasis added) and now calls "political favors" that Huizar performed for SZNW and Huang.

To be clear, the parties agree these are not "official acts" that can support a conviction of the charged offenses. The government asserts that some of the charged counts against SZNW do not necessarily require an "official act," but agree that the honest services fraud count does require an "official act" and, further, that *all of the counts* against SZNW *allege* that Huizar's committed an "official act." The government also agrees that under *McDonnell,* certain acts by elected official—such as making phone calls, writing letters, and arranging meetings—cannot constitute "official acts." And the government acknowledges the language in *McDonnell* characterizing such actions – like Huizar's writing a letter for a visa, arranging a meeting to mediate a dispute over parking, and making calls to arrange media attention for an event – as "innocent" or "irrelevant acts."

In the next breath, the government claims that these very acts are neither innocent nor irrelevant and, actually, are "illegal and improper insofar as they were the seeds sown to cultivate and test defendant's corrupt relationship with Huizar" and "[e]xamples of the transactional nature of this corrupt relationship between defendant and Huizar." But this could be argued in every circumstance in which such an action took place, thereby swallowing the very limitations that the Supreme Court placed on such evidence. For instance, in *McDonnell*, the Governor arranged and attended meetings, made phone calls, and promoted a nutritional substitute; these were the very acts that the Court referred to as "innocent" or "irrelevant." They do not immediate assume evidentiary value or

admissibility whenever the government announces its contention that they were "the seeds sown to cultivate and test defendant's corrupt relationship" and part of the "transactional nature of [a] corrupt relationship."

The government also claims that SZNW's *in limine* motion "has already been largely rejected by the Court." The government cites the transcript from the hearing on defendants' motions to dismiss or strike portions of the FSI. In doing so, the government omits that the cited passages concerned Huizar and Raymond Chan's motion to strike certain overt acts in *Count 1*, the RICO count, which SZNW is not charged with. (RT 1/7/222 at 7:12-23; 9:7-10.) (COURT: "So I will begin with Count 1 which is the RICO Count… The defendants move to strike many of the overt acts alleged in Count 1…"). Further, in so ruling, the Court applied the standard for a motion to strike surplusage under Rule 7, FRCrP. (*Id*. at 10: 11-25.) That is an altogether different test than deciding the admissibility of evidence at trial. In other words, the Court has not yet deemed the evidence at issue to be admissible.[7]

The government cites *United States v. Frega* for the proposition that evidence of "smaller asks" or "political favors" is admissible to show the relationship between the briber and the bribee. First, *Frega* involved a conviction for federal program bribery which, the government asserts, does not require an

---

[7]   The Ninth Circuit has expressed doubt that the "law of the case" doctrine even applies to a district court's reconsideration of a prior ruling. *See*, *e.g.*, *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) (holding law of the case doctrine is "wholly inapposite" when a district court revisits a ruling in a case over which it retains jurisdiction). The doctrine is not implicated in this situation concerning admissibility of evidence which is clearly different from the issues raised in the motions to dismiss or strike surplusage. *See Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (law of the case doctrine applies where same issue definitively was decided in the previous disposition).

"official act."  Second, *Frega* was decided almost two decades before *McDonnell*, so the passage cited by the government is hardly of precedential value.  Third, in affirming the admission of the evidence, the Court specifically noted that "the jury was properly and *repeatedly* instructed that the bribes must have been intended to influence the judges' official actions."  (Emphasis added.)  As noted below, should the Court admit the evidence at issue, SZNW requests that in-court instructions be given to the jury that are akin to those endorsed by the Court in *Frega*.

In a final effort to admit the evidence, the government states that Huizar's "official letter" in support of SZNW's financing efforts for the Tower Project and his recommended land use consultants are admissible simply because they are charged as the predicate acts for two honest services fraud counts (Counts 3 and 4).  The government cites no law – nor is counsel aware of any – that renders evidence automatically admissible if the charging document lists it as a predicate act for a substantive offense.  Moreover, as the government concedes, the honest services fraud counts require an "official act", and this "political favor" cannot qualify.

The government also challenges SZNW's alternative request for in-trial limiting instructions by highlighting one word in SZNW's proposed instruction – "'[t]here is <u>nothing</u> illegal or improper' about the asks/requests."  (Govt's underline.)  While SZNW believes its proposed instruction is an accurate statement of the law, it is certainly amenable to appropriate modifications.

Where the government and SZNW part ways is the government's contention that the jury does not need to be told what can constitute a *quid pro quo* or an "official act" until the very end of the trial.  The elements of bribery clearly require specialized knowledge and guidance; indeed, until the *McDonnell* decision six years ago, the jury believed that a bribery conviction could be based on a constituent's request that the elected official make a phone call or arrange a meeting.  The jury should be given the parameters of the law during trial, while it receives the evidence. so that it can place the government's case in context.  This is

particularly so when the government advises that its case is extensive, it will call about 40 witnesses, and seek to introduce approximately 500 exhibits.

//

//

1   DATED: August 29, 2022                    RICHARD M. STEINGARD
2                                             Law Offices of Richard M. Steingard

3

4                                      By:   /s/
5                                             RICHARD M. STEINGARD
                                              Attorney for Defendant Shen Zhen
6                                             New World I, LLC

7   DATED: August 29, 2022                    TRACY L. WILKINSON
8                                             United States Attorney

9

10                                     By:   /s/
11                                            MACK JENKINS
                                              SUSAN HAR
12                                            CASSIE PALMER
                                              JAMARI BUXTON
13                                            Assistant United States Attorneys
14
15                                            Attorneys for Plaintiff
16                                            UNITED STATES OF AMERICA

17

18

19

20

21

22

23

24

25

26

27

28

LAW
OFFICES OF
RICHARD M.
STEINGARD

23

## <u>DECLARATION OF RICHARD M. STEINGARD</u>

I, Richard M. Steingard, state and declare as follows:

1.      I am an attorney licensed to practice in the state of California and before this Court.  I represent Shen Zhen New World I, LLC ("SZNW") in the above-pending matter and submit this declaration in support of the motion *in limine* to exclude evidence of Jose Huizar and George Esparza's acts of concealment.

2.      SZNW moves this Court for an order excluding SZNW and Wei Huang's requests of Jose Huizar and his office staff that he arrange meetings, make phone calls, and attend to other assorted actions that do not qualify as "official acts."  In McDonnell, Chief Justice Roberts, writing for a unanimous court, characterized such conduct as "innocent" or "irrelevant" acts.  Clearly, requests that are irrelevant are inadmissible; those that are merely innocent acts require a foundational basis for their admission—absent one, they too are inadmissible.  Alternatively, should the Court admit these acts, SZNW asks that the Court provide an in-trial and end-of-trial instruction to the jury which states that the specific event or item of evidence cannot qualify as an "official act" and is only being admitted for whatever limited purpose the Court bases its admission.

3.      Counsel for both parties have met and conferred about this motion *in limine*. After discussing the matter, counsel for the government stated that it will seek to introduce such evidence at trial.  Additionally, government counsel declined SZNW's proposal that the Court give an in-trial limiting instruction if/when this evidence was presented.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of August, 2022 in Los Angeles, California.

Richard M. Steingard

## **LOCAL RULE 5-4.3.4 ATTESTATION**

I attest and certify that all other signatories listed, and on whose behalf this filing is submitted, concur with the filing's content and have authorized the filing.

DATED: August 29, 2022          By: _____

RICHARD M. STEINGARD