Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Attorney for Defendant
Shen Zhen New World I, LLC

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHEN ZHEN NEW WORLD I, LLC,<br><br>Defendant. | CR-20-326(A)-JFW<br><br>**JOINT MOTION *IN LIMINE* NO. 8: SHEN ZHEN NEW WORLD I, LLC'S MOTION TO EXCLUDE IMPROPER QUESTIONS TO PROSPECTIVE WITNESS ROSE FISTROVIC; DECLARATION OF RICHARD M. STEINGARD**<br><br>Date:   September 23, 2022<br>Time:  8:00 a.m.<br>Crtrm: 7A<br><br>Trial Date: October 25, 2022<br><br>Assigned to Hon. John F. Walter |

LAW
OFFICES OF
RICHARD M.
STEINGARD

i

# **<u>TABLE OF CONTENTS</u>**

**<u>Identification of Matters in Dispute</u>** ................................................................1

**<u>SZNW's Motion</u>** ..................................................................................................2

I.    INTRODUCTION ..................................................................................2

II.   STATEMENT OF RELEVANT FACTS ...............................................2
      A.    Psomas' Work for SZNW...........................................................2
      B.    Interview of Rose Fistrovic......................................................4

III.   ARGUMENT ..........................................................................................6
      A.    The Proffered Evidence is Irrelevant.......................................6
      B.    Interview of Rose Fistrovic......................................................4
      C.    The Probative Value of the Proffered Evidence
           is Substantially Outweighed by the Danger of Unfair Prejudice ..........7

**<u>Government's Opposition</u>** ..................................................................................9

I.    OVERVIEW ...........................................................................................9

II.   ARGUMENT ........................................................................................10

III.  CONCLUSION .....................................................................................12

**<u>SZNW's Reply</u>** ................................................................................................13

Declaration of Richard M. Steingard ................................................................16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Burgess v. Premier Corp.,*
    727 F.2d 826 (9th Cir. 1984) ........................................................11

*Hemphill v. New York,*
    142 S. Ct. 681 (2022) ...................................................................14

*London v. Standard Oil Co. of California,*
    417 F.2d 820 (9th Cir. 1969) ................................................ 11-12

*Primiano v. Cook,*
    598 F.3d 558 (9th Cir. 2010) ................................................ 11-12

*United States v. Beltran-Rios,*
    878 F.2d 1208 (9th Cir. 1989) ....................................................13

*United States v. Figueroa-Lopez,*
    125 F.3d 1241 (9th Cir. 1997) .......................................................7

*United States v. Osazuwu,*
    564 F.3d 1169 (9th Cir. 2009) ....................................................13

*United States v. Segall,*
    833 F.2d 144 (9th Cir. 1987) ................................................ 10-12

*United States v. Sine,*
    493 F.3d 1021 (9th Cir. 2007) .............................................. 13-14

*United States v. Stinson,*
    647 F.3d 1196 (9th Cir. 2011) .......................................................7

## FEDERAL RULES OF EVIDENCE

Fed. R. Evid. 401 ................................................................................6

Fed. R. Evid. 403 ........................................................................... 6-7

LAW
OFFICES OF
RICHARD M.
STEINGARD

Fed. R. Evid. 607 ...................................................................................10

Fed. R. Evid. 611 ...................................................................................10

Fed. R. Evid. 701 ................................................................................6, 12

Fed. R. Evid. 702 ........................................................................6-7, 11-12

Fed. R. Evid. 801 ......................................................................................6

Fed. R. Evid. 802 ......................................................................................6

**MISCELLANEOUS AUTHORITIES**

Ninth Circuit Model Criminal Jury Instructions Nos. 1.7, 6.9 [Credibility of Witnesses] (2022 ed.)...............................................................................11

LAW
OFFICES OF
RICHARD M.
STEINGARD

## **TABLE OF EXHIBITS**

| **Exhibit** | **Description** | **Page** |
|:---:|---|:---:|
| A | Psomas April 26, 2018, EIR Schedule | 3:15 |
| B | Psomas June 22, 2018, EIR Schedule | 3:19 |
| C | Psomas July 13, 2018, EIR Schedule | 4:2 |
| D | January 27, 2022, Transcript of Rose Fistrovic Interview | 4:21 |

LAW
OFFICES OF
RICHARD M.
STEINGARD

v

## <u>IDENTIFICATION OF MATTERS IN DISPUTE</u>

**Defendant's Position:**  SZNW moves this Court for an order excluding improper testimony by prospective witness Rose Fistrovic. Ms. Fistrovic worked for a construction and engineering firm, Psomas, which SZNW retained in 2017 as part of the redevelopment of the LA Grand Hotel.  Ms. Fistrovic was the project manager.  During an earlier interview, the government asked Ms. Fistrovic whether Psomas would have taken SZNW as a client if it had known the "true facts" about Wei Huang's relationship with Jose Huizar.  The questions ask for improper lay opinion testimony and incorrectly assume that Huang and Huizar had a briber-bribee relationship.

**Government's Position**: Should defendant open the door by eliciting opinion evidence from Ms. Fistrovic about whether she thought or had reason to believe there was anything usual, wrong, improper, or illegal about the L.A. Grand Hotel Project, the government is entitled under Rules 607, 611, and 701 to probe the basis for that testimony, including the facts she did <u>not</u> consider in reaching that opinion.

The government would be unfairly prejudiced if it were not permitted to probe credibility of the defendant-elicited testimony by Ms. Fistrovic.

## JOINT MOTION IN LIMINE NO. 8
## SZNW'S MOTION TO EXCLUDE IMPROPER QUESTIONS
## TO PROSPECTIVE WITNESS ROSE FISTROVIC

### I.     INTRODUCTION

Shen Zhen New World I, LLC ("SZNW") moves this Court for an order precluding the government from asking improper questions of a prospective witness, Rose Fistrovic.  Ms. Fistrovic is employed as a project manager by Psomas, a prominent construction management and engineering firm. SZNW and its owner, Wei Huang, hired Psomas to work on the plans to expand the LA Grand Hotel.  Ms. Fistrovic was Psomas' project manager on the job.

During a pre-trial interview, the government posed several questions to Ms. Fistrovic, such as whether Psomas and Ms. Fistrovic would have taken on the project if they had known Huang "had a close relationship with and had provided financial benefits to Councilmember Huizar," and "would that have been a red flag for whatever reason for you?"  SZNW submits that such questions are improper, and that the government should be barred from asking these and similar improper questions.

### II.     STATEMENT OF RELEVANT FACTS

### A.     Psomas' Work for SZNW

In August 2016, representatives from SZNW and its owner, Wei Huang, met with representatives from the City of Los Angeles and presented them with a proposal to expand the LA Grand Hotel.  The development project was met with general approval by the City representatives and SZNW and Huang decided to move forward with the project.

In the days following the meeting, Huang asked Jose Huizar if he could recommend some land use consultants that would be able to assist with the project. In December 2016, Huizar provided such a list, which included Joel Miller.  Mr. Miller was employed by Psomas, a construction management and engineering

firm.  In 2017, SZNW and Huang hired Psomas to manage the filing of plans for the project with the City Planning Department and prepare an Environmental Impact Report ("EIR") to present to the City.[1]

Psomas assigned Rose Fistrovic, one of their project managers, to spearhead the effort.  Working with architects, lawyers, and consultants, Ms. Fistrovic prepared the plans to file with the City and did so on June 7, 2018.  Ms. Fistrovic and her team also undertook various aspects of the EIR.  The preparations to complete an EIR typically take several years before it is finalized and brought before the City Council or any of its committees, such as the PLUM Committee, which Huizar then chaired.

On April 26, 2018—six weeks before Psomas filed plans with the City for the expansion project—Ms. Fistrovic distributed to the project team a schedule of target dates for various EIR-related tasks; at that time, her schedule did not estimate when the EIR would be brought before the PLUM Committee or the City Council.  (Casino_0714333, 0817778-9, attached as Exhibit A.)[2]  On June 22, 2018—shortly after the plans with the City had been filed—Psomas revised its target dates by pushing them back.  Psomas estimated that under the best of circumstances, the matter would not be brought to the PLUM Committee before December 14, 2020.  (Casino_0714018, 0818344-6, attached as Exhibit B.)  Three weeks later, on July 13, 2018, Psomas again revised its schedule, pushing back several target dates but maintaining its estimation that the EIR would not get to the

---

[1]     SZNW and Huang also hired Psomas to work on a development project for a different hotel that they owned, the Universal Sheraton.  The government seeks to admit evidence concerning SZNW's project at the Universal Sheraton.  SZNW opposes the admission of such evidence, which we address in a different *in limine* motion, MIL No. 2.

[2]     SZNW anticipates admitting these and the other attached exhibits at trial.

LAW OFFICES OF RICHARD M. STEINGARD

PLUM Committee before December 14, 2020.  (Casino_0818309, 0817160-2, attached as Exhibit C.)

In the context of this case, these dates are important, as Huizar's tenure on the City Council was set to expire in 2020—he was being termed out and, per the City's rules, his successor would take office on the second Monday in December, in this case, December 14, 2020.  In other words, under Psomas' "best case" projections, Huizar would have left the City Council and the PLUM Committee *before* either deliberative body considered the EIR.

In November 2018, while Psomas was still in the early stages of preparing the EIR, federal agents executed search warrants at Huizar's home and office. Following the searches, Huizar refused to resign from the City Council.  However, by November 15, 2018, the City Council had stripped him of all committee assignments, including his position on the PLUM Committee.[3]  Thus, five month after SZNW filed its plans with the City for the LA Grand Hotel expansion project, there was no possibility that Huizar would be involved in the PLUM Committee's consideration of the project.

B.    Interview of Rose Fistrovic

On January 27, 2022, long after the First Superseding Indictment issued, federal prosecutors and agents interviewed Ms. Fistrovic.  The interview was recorded.  (Transcript of Rose Fistrovic Interview, Jan. 27, 2022, attached as Exhibit D.)  During the interview, Ms. Fistrovic recounted her background, answered the prosecutors' questions about her interview with defense counsel, explained the scope of the LA Grand Hotel expansion project, and reviewed some Psomas documents related to the project.  (*Id.*)  In a nutshell, Ms. Fistrovic stated

---

[3]    *See* https://www.latimes.com/local/lanow/la-me-ln-huizar-committees-20181115-story.html#:~:text=California-,After%20FBI%20raid%2C%20L.A.%20Councilman%20Jose%20Huizar%20is%20stripped%20of,raided%20his%20home%20and%20offices.

LAW OFFICES OF RICHARD M. STEINGARD

there was nothing improper, unusual or different about the project from other large development projects.  (*Id.*)

At the end of the interview, the following exchange occurred:

AUSA:        I guess, you know- just- I don't know how familiar you are with the indictment or any news reports about the case, but let me just ask a hypothetical, which you know, is hypothetical because nothing's been proven in court yet, but you know, if at the time that you were engaged to work on this project if you knew that Chairman Huang, the owner of these two hotels had a close relationship with and had provided financial benefits to Councilmember Huizar, would that have been a red flag for whatever reason for you?

Ms. Fistrovic:   Absolutely. I think we would definitely bring- I would bring that up to our council, to our management, to our things because Psomas as a company would not wanna be involved. Most likely.

AUSA:        Yeah. And I, you know, I realize that, you know, I might be asking sort of a question to which the answer is obvious, but if you could just articulate for us, you know, what about that may give pause or raise concerns, you know, what about it specifically would be concerning or potentially concerning?

Ms. Fistrovic:   Well, I think unethical acts and we probably wouldn't care to work for somebody like that and present it in front of the city. If we know that something down deep was not right and you know, definitely, I think that's not what we are all about. You know, we would treat every, every client with a high regards and respect and we would do a great work for anybody we work for. But in this situation, we would definitely wanna think and research and decide before we would proceed with any work for sure.

(*Id.* at p. 34.)

The government's witness list identifies Ms. Fistrovic as a witness.  Its exhibit list indicates that Ms. Fistrovic will testify in connection with 27 exhibits,

and her name is included in the descriptions of another 3 exhibits.  If not called by the government, SZNW may call Ms. Fistrovic as a witness in the defense case.

## III.   ARGUMENT

Ms. Fistrovic's statement that she and her firm may not have worked for SZNW had they known that Huang had provided financial benefits to Huizar is inadmissible for three reasons: first, it is irrelevant under Fed. R. Evid. 401 and 402; second, it is improper opinion evidence under Fed. R. Evid. 801 and 802; and third, its probative value is substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403.

### A.  The Proffered Evidence is Irrelevant

The government's proposed questions are not of consequence to a determination of any element of the charged offense.  See Fed. R. Evid. 401 ("Evidence is relevant if: (1) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action").  The prosecutor, having steered Ms. Fistrovic to consider the indictment and "news reports about the case," asked her "a question to which the answer is obvious:" basically, if Huang was bribing Huizar, as was alleged in the FSI and reported in the media, "would that have been a red flag for whatever reason for you."  In fact, whether Psomas or Ms. Fistrovic would have agreed to take on a project based on unproven allegations that they were not aware of is wholly speculative and irrelevant to the case.

### B.  The Proffered Evidence is Improper Opinion Evidence

Although lay witnesses are permitted to offer opinion testimony, any opinions offered must be (a) rationally based on the witness's perceptions, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702, the rule that governs expert witness testimony.  Fed. R. Evid. 701.  Ms. Fistrovic's proffered statements do not meet these qualifications

– it is not based on her perception as she clearly knew nothing about Huang's relationship with Huizar, and it is not helpful to understanding her testimony or determining a fact in issue.  To the extent it may require specialized knowledge, it falls into the scope of Rule 702; the government did not designate Ms. Fistrovic as an expert witness and there is no indication they view her as such.  *See* Fed. R. Evid. 702; *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246-47 (9th Cir. 1997) (testimony based on the education, training, and experience of the witness is specialized knowledge governed by Rule 702 requiring gatekeeping by trial court).[4]

C. The Probative Value of the Proffered Evidence is Substantially Outweighed by the Danger of Unfair Prejudice

Lastly, whatever may be the minimal probative value of these hypothetical questions is substantially outweighed by its prejudicial impact.  FRE 403.  Simply, the questions presume SZNW and Huang's guilt; as Ms. Fistrovic put it, "Well, I think unethical acts and we probably wouldn't care to work for somebody like that."  If these views are permitted, the defense would need to educate Ms. Fistrovic about various underlying facts that she also may not be aware of (*e.g.*, Huang hired a law firm to insure that the collateral and loan transaction was handled legally and properly; Huang never asked Huizar for anything improper with respect to the expansion project or otherwise), as well as the law (*e.g.*, there is no evidence Huang requested that Huizar perform or agree to perform an "official act" in connection with the expansion project or otherwise, which is a required element in a bribery prosecution) to try to reconsider or dissuade her from her position.  This would only exacerbate the problems created by the improper

---

[4]     Even if Ms. Fistrovic qualified as an expert (she has not been so designated), the hypothetical questions at issue are improper.  *United States v. Stinson*, 647 F.3d 1196, 1213-15 (9th Cir. 2011) (hypothetical questions posed to expert witnesses "must not require the expert to assume facts that are not in evidence").

1    questions in the first place.  To avoid such prejudicial, confusing, and time-
2    consuming matters, the government should be barred from asking Ms. Fistrovic "if
3    you had known …" type questions.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## GOVERNMENT'S OPPOSITION

### I.   OVERVIEW

The government intends to call Rose Fistrovic as a percipient witness at trial to testify about her work as a project manager for Psomas on two of defendant SZNW's redevelopment projects: the L.A. Grand Hotel Project and the Sheraton Universal Project.  The government's theory is not that there was anything illicit about Ms. Fistrovic's work but rather that she was part of a legitimate team of consultants defendant hired while simultaneously using illegitimate means to provide financial benefits to Jose Huizar and George Esparza in exchange for Huizar's acts in favor of the L.A. Grand Hotel Project.  During the government's interview of Ms. Fistrovic, Ms. Fistrovic made clear that she did not know of certain "red flags," including Huizar and Wei Huang's close relationship or that Huang provided Huizar with financial benefits and that, had she known these things, Psomas would not have taken defendant on as a client.

The parties' dispute is circumscribed.  During the meet-and-confer process for the motions in limine, the government offered that, on direct examination, it would not pose to Ms. Fistrovic questions of this nature, including whether she would have considered as "red flags" the nature of Huizar and Huang's relationship and what she would have done, if anything, had she known such information.  Out of basic fairness, the government advised that such questions, however, would be on the table if defense counsel opened the door by cross-examining Ms. Fistrovic for her opinion about whether, based upon her prior experience and work on the L.A. Grand Hotel Project, she believed there was anything unusual, wrong, improper, or illegal about the Project.

Defense counsel refused the government's offer.  Defendant seeks to have it both ways: it believes it is entitled to ask such questions but then block the government from probing the same topics in response.

9

The government disagrees.  To the extent the Court permits defense counsel to elicit such opinion evidence from Ms. Fistrovic on cross-examination pursuant to Federal Rule of Evidence 701, the government should be permitted to question Ms. Fistrovic on redirect about the bases for her lay opinion, including the facts upon which her opinion is based and any facts she did *not* consider in reaching that opinion.  In other words, the government should be permitted to point out that Ms. Fistrovic's opinion is based upon incomplete information, consistent with the government's theory that defendant kept its legitimate consultants in the dark about its illicit scheme.  Defendant similarly could open the door to this topic by arguing or otherwise suggesting (in opening statement or through examination of other witnesses) that other agents working for defendant on either of defendant's two properties (the L.A. Grand Hotel and the Sheraton Universal) believed there was nothing concerning or improper about the work they were doing or about Huizar and Huang's relationship, based on what they knew about that relationship.  If defendant elects to raise this topic, the government must be permitted to ask questions regarding the same, so as not to leave a false impression with the jury.

## II.   ARGUMENT

The government's position is supported by the Federal Rules of Evidence and Ninth Circuit precedent.  Here, defendant would be the one raising a new topic on cross-examination, which would then allow the government to question Ms. Fistrovic on the same topic and to attack the credibility of her opinion.  Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility."); Fed. R. Evid. 611 (the scope of cross-examination includes both "the subject matter of the direct examination" and "matters affecting the witness's credibility"); see United States v. Segall, 833 F.2d 144, 148 (9th Cir. 1987) (government was permitted to elicit testimony on a new topic on redirect after the defense attorney "'opened the door' to the testimony by introducing on cross-examination evidence which created the false impression," and noting the

LAW OFFICES OF RICHARD M. STEINGARD

testimony on redirect also was "admissible to remove any unfair prejudice which might have resulted from the evidence [defendant's counsel] introduced on cross-examination") (citing Burgess v. Premier Corp., 727 F.2d 826, 834 (9th Cir.1984); London v. Standard Oil Co. of California, 417 F.2d 820, 825 (9th Cir. 1969) (testimony on a topic that otherwise may have been excluded was admissible after the party who opposed its admission first elicited testimony on that topic; having chosen to elicit evidence on the topic, the opponent "was entitled to explore the same issue"))).

Under these circumstances, the government may inquire as to the bases for Ms. Fistrovic's opinion testimony, including its limitations (i.e., that it is based upon incomplete information), any contrary evidence, and other matters that may undermine its credibility.  See Segall, 833 F.2d at 148; Ninth Circuit Model Criminal Jury Instructions Nos. 1.7, 6.9 [Credibility of Witnesses] (2022 ed.) (in considering the testimony of a witness, jurors may take into account the following: "the witness's opportunity and ability to see or hear or know the things testified to," "whether other evidence contradicted the witness's testimony," "the reasonableness of the witness's testimony in light of all the evidence," and "any other factors that bear on believability") (emphasis added); cf. Primiano v. Cook, 598 F.3d 558, 564–65 (9th Cir. 2010) ("Shaky but admissible [expert opinion] evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

Defendant complains that Ms. Fistrovic's testimony would constitute improper lay opinion or opinion expert testimony.  However, because the government has agreed not to ask Ms. Fistrovic about these topics on direct examination, it would be defendant--not the government--that elicits such opinion testimony in the first instance.  Presumably, to the extent defendant chooses to do so, it would ask Ms. Fistrovic's opinion based upon her perception and first-hand knowledge, rather than based upon scientific or technical knowledge within the

LAW
OFFICES OF
RICHARD M.
STEINGARD

scope of Federal Rule of Evidence 702.  <u>See</u> Fed. R. Evid. 701, 702.  To the extent defendant elicits such opinion testimony, the government is entitled to a fulsome cross-examination of that testimony.  <u>Segall</u>, 833 F.2d at 148; <u>London</u>, 417 F.2d at 825; <u>cf.</u> <u>Primiano</u>, 598 F.3d at 564–65.

### III.   CONCLUSION

For these reasons, if defendant opts to open the door to these topics, the government should be entitled to explore them fully, in order "to remove any unfair prejudice which might [result] from the evidence [defendant's counsel] introduce[s] on cross-examination."  <u>Segall</u>, 833 F.2d at 148.



LAW
OFFICES OF
RICHARD M.
STEINGARD

12

## SZNW'S REPLY

The government agrees that it will not pose the identified improper questions to Rose Fistrovic during her direct examination.  The issue is thus largely resolved. The government also claims to reserve its right to pose additional questions to Ms. Fistrovic should SZNW "open the door" on cross examination.  Generally speaking, SZNW does not disagree with this proposition.

SZNW does disagree, however, that asking Ms. Fistrovic if she observed anything unusual, wrong, improper, or illegal about the Tower Hotel Project – the parties' expect her answer would be "no" – would "open the door" to the disputed (or similar) questions: (1) whether Psomas and Ms. Fistrovic would have taken on the project if they had known Huang "had a close relationship with and had provided financial benefits to Councilmember Huizar," and (2) "would that have been a red flag for whatever reason for you?"

In a criminal prosecution, the government may introduce otherwise inadmissible evidence when the defendant 'opens the door' by introducing potentially *misleading* testimony." *United States v. Osazuwu*, 564 F.3d 1169 (9th Cir. 2009) (emphasis added), citing *United States v. Beltran-Rios*, 878 F.2d 1208, 1212 (9th Cir. 1989). If *misleading* testimony is presented, the government may "introduce evidence on the same issue to rebut any *false* impression that might have resulted from the earlier admission." *Id.*, citing *United States v. Sine*, 493 F.3d 1021, 1037 (9th Cir. 2007).

In *Oszauwu*, the defendant challenged his conviction on the grounds that the government had improperly cross-examined him concerning the details of a prior bank fraud conviction. 564 F.3d at 1171, 1175. The government argued the defendant "opened the door" to the questions by presenting potentially misleading testimony. The Ninth Circuit reversed the defendant's conviction. *Id.* at 1177. The defendant did not open the door as he had answered questions *accurately* and did not try to minimize or explain away his conviction. The Court found the situation

LAW
OFFICES OF
RICHARD M.
STEINGARD

1   similar to the situation in *Sine*, where the defendant's accurate testimony that a

2   judge "wrote up some bad things about [him]" in a prior criminal contempt

3   proceeding did not paint a picture of "selflessness and hope" sufficient to open the

4   door to the inadmissible order. *Id*. at 1176, citing 493 F.3d at 1037 (cleaned up).

5   "Presenting a theory of the case that can be effectively rebutted by otherwise-

6   inadmissible evidence … does not by itself open the door to using such evidence;

7   only partial, misleading use of the evidence can do so." *Id*. at 1176, citing 493 F.3d

8   at 1038.[5]

9        As SZNW will not introduce misleading or false testimony, it will not open

10  the door to the improper questions about how Ms. Fistrovic might have acted had

11  she known the "true relationship" between Huang and Huizar.

12  ///

13  ///

14  ///

---

[5]      The Supreme Court recently limited a state court's application of the "open
the door" doctrine. *See Hemphill v. New York*, 142 S.Ct. 681 (2022)) (rejecting the
State's contention that the "open the door" rule under New York law trumped the
Confrontation Clause).



LAW
OFFICES OF
RICHARD M.
STEINGARD

DATED: August 29, 2022               RICHARD M. STEINGARD
                                     Law Offices of Richard M. Steingard


                                By:  /s/
                                     RICHARD M. STEINGARD
                                     Attorney for Defendant Shen Zhen
                                     New World I, LLC

DATED: August 29, 2022               TRACY L. WILKINSON
                                     United States Attorney


                                By:  /s/
                                     MACK JENKINS
                                     SUSAN HAR
                                     CASSIE PALMER
                                     JAMARI BUXTON
                                     Assistant United States Attorneys

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

LAW
OFFICES OF
RICHARD M.
STEINGARD

## <u>DECLARATION OF RICHARD M. STEINGARD</u>

I, Richard M. Steingard, state and declare as follows:

1.      I am an attorney licensed to practice in the state of California and before this Court.  I represent Shen Zhen New World I, LLC ("SZNW") in the above-pending matter and submit this declaration in support of the motion *in limine* to exclude evidence of Jose Huizar and George Esparza's acts of concealment.

2.      SZNW moves this Court for an order excluding improper testimony by prospective witness Rose Fistrovic. Ms. Fistrovic worked for a construction and engineering firm, Psomas, which SZNW retained in 2017 as part of the redevelopment of the LA Grand Hotel.  Ms. Fistrovic was the project manager. During an earlier interview, the government asked Ms. Fistrovic whether Psomas would have taken SZNW as a client if it had known the "true facts" about Wei Huang's relationship with Jose Huizar.  The questions ask for improper lay opinion testimony and incorrectly assume that Huang and Huizar had a briber-bribee relationship.

3.      Counsel for both parties have met and conferred about this motion *in limine*. After discussing the matter, counsel for the government stated that it would not ask Ms. Fistrovic the questions that SZNW identified as objectionable unless SZNW opened the door.  We discussed what SZNW could and could not ask but could not come to an agreement on whether it would open the door in the manner suggested by the government.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of August, 2022 in Los Angeles, California.

_____
Richard M. Steingard

1

## **LOCAL RULE 5-4.3.4 ATTESTATION**

2      I attest and certify that all other signatories listed, and on whose behalf this

3   filing is submitted, concur with the filing's content and have authorized the filing.

4

5    DATED: August 29, 2022          By: _____

6                                         RICHARD M. STEINGARD

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28