1  Richard M. Steingard (SBN 106374)
   *rsteingard@SteingardLaw.com*
2  LAW OFFICES OF RICHARD M. STEINGARD
   800 Wilshire Boulevard, Suite 1050
3  Los Angeles, California 90017
   Telephone:  (213) 260-9449
4  Facsimile:   (213) 260-9450

5  Attorney for Defendant
6  Shen Zhen New World I, LLC

7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  UNITED STATES OF AMERICA,          CR-20-326(A)-JFW

12              Plaintiff,             **JOINT MOTION *IN LIMINE* NO. 9:**
                                       **SHEN ZHEN NEW WORLD I,**
13       v.                           **LLC'S MOTION TO EXCLUDE**
                                       **EVIDENCE OF OTHER**
14  SHEN ZHEN NEW WORLD I, LLC,        **SCHEMES; DECLARATION OF**
                                       **RICHARD M. STEINGARD**
15              Defendant.

16                                     Date:   September 23, 2022
17                                     Time:  8:00 a.m.
18                                     Crtrm: 7A

19                                     Trial Date: October 25, 2022
20

21                                     Assigned to Hon. John F. Walter

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Identification of Matters in Dispute** ...................................................................1

**SZNW's Motion** ..............................................................................................2

I.    INTRODUCTION ...........................................................................................2

II.   STATEMENT OF FACTS ............................................................................2

III.  ARGUMENT ....................................................................................................5
       A.    The Evidence is Irrelevant ...........................................................5
       B.    The Evidence is Not Inextricably Intertwined .............................5
       C.    The Evidence is Substantially More Prejudicial Than Probative ...........6

**Government's Opposition** ...............................................................................8

I.    INTRODUCTION ...........................................................................................8

II.   ARGUMENT ....................................................................................................8
       A.    Evidence of the Pay-to-Play Scheme Within the City Is Direct
             Evidence of Defendant's Crimes .................................................8
       B.    Evidence of the Pay-to-Play Scheme Is Also Inextricably
             Intertwined ...............................................................................11
       C.    The May 11, 2017 Call Is Highly Relevant ...............................14
       D.    The Evidence Is Not Unduly Prejudicial ...................................15

III.  CONCLUSION ..............................................................................................17

**SZNW's Reply** ................................................................................................18
       A.    "Other Schemes" Evidence ........................................................18
       B.    Zheng and Esparza's May 11, 2017 Conversation .....................22

**Declaration of Richard M. Steingard** ..........................................................25

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

## <u>TABLE OF AUTHORITIES</u>

2

## <u>FEDERAL CASES</u>

3

4

*Kotteakos v. United States*,
5
     328 U.S. 750 (1946) .......................................................................21

6

*Robinson v. United States*,
7
     33 F.2d 238 (9th Cir. 1929) ..................................................... 9-10

8

*United States v. Boone*,
9
     628 F.3d 927 (7th Cir. 2010) ..................................................10, 22

10

*United States v. Daly*,
11
     974 F.2d 1215 (9th Cir. 1992) ..........................................................12

12

*United States v. Dorsey*,
13
     677 F.3d 944 (9th Cir. 2012) .......................................................6, 11

14

*United States v. Fuertes*,
15
     805 F.3d 485 (4th Cir. 2015) ..............................................................5

16

*United States v. Ganoe*,
17
     538 F.3d 1117 (9th Cir. 2008) ..........................................................16

18

*United States v. Garrido*,
19
     713 F.3d 985 (9th Cir. 2013) ..................................................... 8-9, 13

20

*United States v. Gorman*,
21
     613 F.3d 711 (7th Cir. 2010) ..............................................................5

22

*United States v. Green*,
23
     617 F.3d 233 (3d Cir. 2010)................................................................5

24

*United States v. Hankey*,
25
     203 F.3d 1160 (9th Cir. 2000) ..................................................... 15-16

26

*United States v. Holden*,
27
     908 F.3d 395 (9th Cir. 2018) ..............................................................9

28

*United States v. Jinian,*
    725 F.3d 954 (9th Cir. 2013) ........................................................8

*United States v. Livoti,*
    196 F.3d 322 (2d Cir. 1999)........................................................16

*United States v. Lothian,*
    976 F.2d 1257 (9th Cir. 1992) ...............................................9, 21

*United States v. Patterson,*
    819 F.2d 149 (9th Cir. 1987) ....................................................15

*United States v. Ramirez-Jiminez,*
    967 F.2d 1321 (9th Cir. 1992) ....................................................9

*United States v. Silver,*
    948 F.3d 538 (2d Cir. 2020).......................................................13

*United States v. Vizcarra-Martinez,*
    66 F.3d 1006 (9th Cir. 1995) ...............................................5-6, 22

*United States v. Wells,*
    879 F.3d 900 (9th Cir.2018).......................................................6

## **FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 403 ..............................................................................16

Fed. R. Evid. 404 ................................................................4-6, 11, 15

# **TABLE OF EXHIBITS**

| **Exhibit** | **Description** | **Page** |
|---|---|---|
| A | 5/11/2017 Line Sheet of Wiretap-Intercepted Phone Call Between George Esparza and Ricky Zheng | 4:6 |
| B | 6/23/2022 Letter from AUSA Susan Har re FRE 404(b) notice | 4:26 |
| C | Declaration of Richard Steingard | 18:9, 18:28 |
| D | 5/3/2022 Memorandum of Meeting with AUSAs re: Motions in Limine | 18:21 |

LAW
OFFICES OF
RICHARD M.
STEINGARD

v

## IDENTIFICATION OF MATTERS IN DISPUTE

**Defendant's Position:** SZNW moves this Court for an order excluding evidence of other alleged bribery schemes, including but not limited to a conversation between Ricky Zheng and George Esparza concerning a completely unrelated redevelopment project involving Shanghai Construction. The "other schemes" evidence was the basis for SZNW's request for a severance, which the Court granted. These other alleged bribery schemes—involving completely unrelated developers, individuals, and projects—are irrelevant to the case against SZNW and extremely prejudicial.

**Government's Position:** Limited and tailored evidence of the pay-to-play scheme within the City is direct evidence of defendant's charged scheme to defraud and probative of defendant's knowledge and intent. The evidence is also inextricably intertwined to present a comprehensible story of how the pay-to-play scheme worked, including through the use of lackeys and nuanced language. The Shanghai Construction call is a specific example of the pay-to-play scheme in action, involving defendant's own key agent during the relevant time period. This highly probative evidence is not unduly prejudicial, particularly given the other, admissible evidence of defendant's extravagant benefits to public officials.

The government would be highly prejudiced by the exclusion of the pay-to-play scheme, which is the charged scheme against defendant and the basis for all the counts against defendant.

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

## JOINT MOTION IN LIMINE NO. 9
## SHEN ZHEN NEW WORLD I, LLC'S MOTION
## TO EXCLUDE EVIDENCE OF OTHER SCHEMES

### I.    INTRODUCTION

Shen Zhen New World I, LLC ("SZNW") moves this Court for an order excluding all testimony and exhibits of other schemes, including but not limited to (1) testimony of George Esparza that he and Jose Huizar participated in "pay-to-play" schemes with other developers; and (2) a wiretap intercepted call between Esparza and Ricky Zheng on May 11, 2017, in which they discussed a scheme involving a different development project called Shanghai Construction which is unrelated to SZNW.

This evidence should be excluded because it is irrelevant to the charges against SZNW.  Contrary to the government's claim, the Esparza-Zheng call is not "inextricably intertwined" with the charges such that its admission is necessary for the government to tell a coherent story.  Lastly, whatever may be the other scheme evidence's minimal probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury, confusion of the issues and undue consumption of time.

### II.    STATEMENT OF RELEVANT FACTS

On August 9, 2021, defendants SZNW, 940 Hill and David Lee moved to sever their trials, arguing that the allegations against them were separate and distinct from the other schemes charged in the FSI, and that introducing the other schemes evidence at a joint trial would be unfairly prejudicial.  (ECF 200 (940 Hill and Lee) and 201 (SZNW).)  The government opposed the motions, claiming that all the charged defendants were engaged in a single honest services fraud scheme, and that evidence of all the schemes was admissible against all defendants.  (ECF 228.)

LAW
OFFICES OF
RICHARD M.
STEINGARD

At a hearing on January 7, 2022, the Court noted the potential prejudice of introducing the other schemes evidence to the moving defendants in a joint trial:

> In this case, if the Government fails to prove a  single scheme to defraud with respect to Counts 2 through 17, the Court is concerned that the risk of prejudice to 940 Hill and Lee and Shen Zhen will be particularly high if they are tried jointly with the defendants Huizar and Chan.  In that event, one … of the risks of prejudice highlighted by the Supreme Court would be present. Specifically, a substantial amount of evidence would be admitted against co-defendants Huizar and Chan but which would be inadmissible against 940 Hill and Lee and Shen Zhen....  If the Government is unable to satisfy the Court that 940 Hill, Lee, and Shen Zhen were participants in a single scheme, the Court will have to determine whether severance is appropriate. Much of the evidence regarding the projects other than the 940 Hill project will be inadmissible against 940 Hill and Lee, and much of the evidence regarding the projects other than L.A. Grand Hotel will be admiss -- would be inadmissible against Shen Zhen.

(RT 1/7/22: 91-95.)

The Court offered the government the opportunity to submit an evidentiary offer of proof of a single scheme involving all defendants.  (ECF 330.)  On January 21, 2022, the government submitted its offer of proof.  (ECF 353.)  On March 7, 2022, the Court found that the government's offer of proof failed to establish a single scheme and granted defendants' severance motions.  The Court stated:

> After carefully reviewing the Government's offer of proof, the Court concludes the Government has failed to present sufficient evidence from which the Court could find or conclude at this time by a preponderance of the evidence that a single scheme exists. The Government fails to cite to evidence that connects Lee, 940 Hill to SZNW or any of the other developers or schemes alleged in the First Superseding Indictment. . .  The Government's submission only confirms that Lee, 940 Hill's motion for severance should be granted.  The same is true for SZNW."

Despite the Court's ruling, in the recent *940 Hill/Lee* trial, the government elicited testimony from Esparza that he and Huizar engaged in an extensive "pay-

LAW OFFICES OF RICHARD M. STEINGARD

to-play" scheme against other CD-14 developers which was engineered by Huizar and effectuated by Esparza.  On direct and cross-examination, Esparza made clear that the scheme was extensive, applying to all developers.[1]

In addition, the government seeks to admit a recording of a wiretap-intercepted phone call between Esparza and Ricky Zheng on May 11, 2017.  (Govt. Trial Ex. 392, attached as Exhibit A.)  At the time of the call, Zheng was no longer employed at SZNW and, therefore the call cannot be imputed to SZNW.[2]  During the call, Esparza and Zheng discussed a scheme involving Shanghai Construction and its development project in Huizar's district.  Esparza stated that the "Shanghai Chairman" was coming to Los Angeles and that "Hamid," who apparently worked for Shanghai Construction, was proposing a meeting with Huizar.  *Id.*  Esparza said Huizar wanted to know whether Zheng thought they should continue to ignore the Shanghai Construction project as they had been doing for the past year.  *Id.*  Zheng responded that they should "keep ignoring" and that Huizar should not meet with the Shanghai Chairman.  *Id.*

---

[1]    To be clear, SZNW is not alleging that there was anything improper about the government eliciting this testimony.  Prior to trial, the *940 Hill/Lee* defendants did not move to exclude such testimony, nor did they object to its admission during trial.  Indeed, defense counsel's cross-examination of Esparza attempted to underscore the differences between other developers, like Wei Huang, and Mr. Lee.  Thus, it appears that 940 Hill and Mr. Lee sought to introduce the other scheme testimony.  That is not the case here.

[2]    In a letter dated June 23, 2022, the government gave notice that the Esparza Zheng recording may constitute "other act" evidence under Rule 404(b), but then asserted that the conversation is "not evidence that is admissible under Rule 404(b)," "[t]he government does not seek to introduce this communication to prove other crimes or acts by SZNW," and that "this evidence does not fall under Rule 404(b)."  (Letter from Susan Har, June 23, 2022, attached as Exhibit B.)  In addition, the letter erroneously implies that at the time of the call Zheng was SZNW's agent.  In fact, during interviews with the government, Zheng stated that he stopped working for SZNW at the end of 2016.  In any event, in light of the government's position, we do not address the application of Rule 404(b).

LAW OFFICES OF RICHARD M. STEINGARD

1

## III.   ARGUMENT

2

### A.   The Evidence is Irrelevant

3

The Court has already ruled that evidence of Huizar and Esparza's

4

involvement with other "pay-to-play" schemes would be inadmissible against

5

SZNW.  This would include the Esparza-Zheng call on May 11, 2017 about a

6

"pay-to-play" scheme involving Shanghai Construction.  The government should

7

not be permitted to circumvent the Court's ruling through Esparza's testimony, a

8

wiretap intercepted call, or any other witness or exhibit.

9

### B.   The Evidence is Not Inextricably Intertwined

10

The government's contends that evidence of the May 7, 2017 call between

11

Esparza and Zheng is "inextricably intertwined" with the charges against SZNW.

12

This claim is meritless.

13

A growing number of courts have rejected the "inextricably intertwined"

14

theory of admissibility.  *See United States v. Fuertes*, 805 F.3d 485, 494 n. 4 (4th

15

Cir. 2015) (collecting cases); *see also United States v. Gorman*, 613 F.3d 711, 719

16

(7th Cir. 2010) (abandoning the "inextricable intertwinement doctrine" because it

17

"has outlived its usefulness" and "become overused, vague, and quite unhelpful");

18

*United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010) ("[T]he inextricably

19

intertwined test is vague, overbroad, and prone to abuse, and we cannot ignore the

20

danger it poses to the vitality of Rule 404(b).").

21

The Ninth Circuit has not abandoned the theory entirely, but it has limited its

22

use.  The Court has permitted the government to introduce "inextricably

23

intertwined" evidence under two limited circumstances.  The first category

24

concerns other-act evidence that is part of the transaction that serves as the basis

25

for the criminal charge.  *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013

26

(9th Cir. 1995).  The second category is if the other-act evidence is necessary to

27

offer a "coherent and comprehensible story."  *Id*. at 1012-13.  This latter exception

28

allows the admission of other-act evidence only where "the prosecution would

encounter . . . difficulty in presenting the evidence relevant to its case against the defendant" without offering the other act evidence. *Id.* at 1013; *United States v. Wells*, 879 F.3d 900, 928-29 (9th Cir.2018) (cleaned up) ("In determining whether particular evidence is necessary to the prosecution's 'coherent and comprehensible story,' we ask whether the evidence bears directly on the charged crime. There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b).")

Here, the other scheme evidence that the government seeks to introduce— Esparza and Zheng's call about Shanghai Construction—is unrelated and unconnected to the charges against SZNW.  Nor is this intercepted conversation necessary for the government to offer a "coherent and comprehensible story." *Vizcarra-Martinez,* 66 F.3d at 1013, citing *United States v. Daly*, 974 F.3d 1215, 1216 (9th Cir. 1992)  (in felon-in-possession case, the Court approved admission of the circumstances in which the defendant possessed the firearm); *United States v. Dorsey*, 677 F.3d 944, 951-2 (9th Cir. 2012), citing *Vizcarra-Martinez*, 66 F.3d at 1013 (where defendant was charged with discharging a firearm in relation to a crime of violence, it was proper to allow the testimony of two witnesses who had seen the defendant with the gun before the charged shooting "[b]ecause the testimony bore directly on the commission of the charged crimes" – that is, "it tended to prove that Dorsey had the means to commit the charged crimes and that he was in fact the shooter").

In sum, there is simply no risk that "the prosecution would encounter . . . difficulty in presenting its evidence relevant to its case against" SZNW without offering the intercepted conversation. *Vizcarra-Martinez*, 66 F.3d at 1013.

C.     <u>The Evidence is Substantially More Prejudicial Than Probative</u>

Whatever may be the minimal probative value of the other scheme evidence, including the intercepted call between Esparza and Zheng regarding Shanghai

LAW
OFFICES OF
RICHARD M.
STEINGARD

1  Construction, is substantially outweighed by the danger of unfair prejudice,
2  confusing the issues, misleading the jury, and undue consumption of time.  Fed. R.
3  Evid. 403.  The Court has already found that evidence of other schemes unrelated
4  to SZNW would be inadmissible and prejudicial to SZNW in a joint trial.  It is no
5  less inadmissible and prejudicial if introduced against SZNW alone.

6          For the foregoing reasons, SZNW asks that the Court exclude all evidence
7  that Huizar and Esparza participated in "pay-to-play" schemes with other
8  developers, including an intercepted telephone call between Esparza and Zheng in
9  which they discussed a scheme involving Shanghai Construction.

10  ///
11  ///
12  ///



LAW
OFFICES OF
RICHARD M.
STEINGARD

## GOVERNMENT'S OPPOSITION

### I.   INTRODUCTION

At trial, the government will seek to prove that defendant engaged in a years-long scheme to defraud the City of Los Angeles and its citizens of the right to honest services of Jose Huizar.[3]  Specifically, the government will show that Huizar and his associates, including Special Assistant George Esparza and former Deputy Mayor Raymond Chan, operated a pay-to-play scheme within the City; that defendant took part in that scheme through his corrupt relationship with Huizar, Esparza, and Chan; and that other substantive bribery crimes arose from that underlying scheme.  Thus, the pay-to-play scheme, as well as the May 11, 2017 recorded call between George Esparza and Ricky Zheng illustrating how the pay-to-play scheme operated, constitute direct evidence of the existence of a scheme and defendant's knowledge and intent.

Yet defendant now moves to exclude this significant evidence by arguing that it is "irrelevant" and unduly prejudicial.  Defendant's motion misconstrues this Court's order severing the trials as coextensive with a blanket exclusion of all evidence of the pay-to-play scheme of which defendant was a significant part--it was not.  Nor is this highly probative evidence unduly prejudicial under Rule 403.  Accordingly, the Court should deny defendant's motion.

### II.   ARGUMENT

A.   Evidence of the Pay-to-Play Scheme Within the City Is Direct Evidence of Defendant's Crimes

An element of the honest services wire fraud count is "a scheme to defraud." United States v. Jinian, 725 F.3d 954, 960 (9th Cir. 2013).  Honest services fraud on a bribery theory also requires a quid pro quo, which may be implied.  United States v. Garrido, 713 F.3d 985, 997 (9th Cir. 2013) (explaining that a quid pro quo

---

[3]   References to Huizar encompass Huizar, Huizar's Office, and other public officials working at his direction, like George Esparza.

is "the specific intent to give or receive something of value in exchange for an official act" (cleaned up)).  Here, evidence of the pay-to-play scheme is <u>direct</u> evidence of defendant's crimes: as to the existence of the scheme, defendant's participation in it, and as to defendant's intent.  <u>United States v. Ramirez-Jiminez</u>, 967 F.2d 1321, 1327 (9th Cir. 1992) (direct evidence is "used to flesh out the circumstances surrounding the crime with which the defendant has been charged, thereby allowing the jury to make sense of the testimony in its proper context.").

*First*, the pay-to-play scheme is direct evidence of the predicate scheme supporting the honest services fraud counts against defendant.  As alleged in the First Superseding Indictment, the basic framework of the pay-to-play scheme involved public officials demanding, soliciting, accepting, and agreeing to accept financial benefits from developers and their proxies in exchange for official acts.  In proving that defendant "devised or knowingly participated in a scheme or plan to deprive the City of Los Angeles or its citizens of their right of honest services," the government is entitled to present evidence of that scheme or plan defendant devised or knowingly participated in: the pay-to-play scheme.  (<u>See</u> Dkt. No. 584 [Lee/940 Hill Jury Instruction No. 21 on Honest Services Fraud].)

Merely because defendant was not involved in <u>every</u> aspect of the pay-to-play scheme does not mean he wasn't a member of the scheme or that the evidence is inadmissible against defendant.  <u>See</u> <u>United States v. Holden</u>, 908 F.3d 395, 400 (9th Cir. 2018) (regardless of whether the defendant devised the scheme, if there is intent to defraud when joining a dishonest scheme, the defendant "becomes a part of the scheme, although he may know nothing but his own share in the aggregate wrongdoing").  "Just as acts and statements of co-conspirators are admissible against other conspirators, so too are the statements and acts of co-participants in a scheme to defraud admissible against other participants." <u>United States v. Lothian</u>, 976 F.2d 1257, 1262 (9th Cir. 1992) (citing <u>Robinson v. United States</u>, 33 F.2d 238, 240 (9th Cir. 1929) ("[I]f a conspiracy exists in fact [as when a scheme to

LAW
OFFICES OF
RICHARD M.
STEINGARD

defraud is shared by several], the rules of evidence are the same as where a conspiracy is charged.")).  Here, evidence of the pay-to-play conduct by Huizar and Esparza--two of defendant's co-schemers--is "directly relevant to establish a critical component of the scheme" and therefore admissible as "direct evidence of the offense [theft of honest services]."  United States v. Boone, 628 F.3d 927, 935 (7th Cir. 2010).

*Second*, the pay-to-play scheme is direct and highly probative evidence of defendant's knowledge and intent.  All three types of charges[4] against defendant require a culpable mens rea, be it an intent to defraud or an intent to influence or reward.  While it is not necessary for the government to establish an explicit agreement between defendant and Huizar, it makes it more probable that defendant had the requisite corrupt intent to bribe Huizar if Huizar, in fact, solicited and/or accepted bribes in exchange for official acts.  See Boone, 628 F.3d at 936 ("[E]vidence of the blatant and open nature of the requests for payments, and of the large number of individuals in the office who were participants in the scheme, was relevant to demonstrate that Boone must have known of the scheme.")  And as explained below, the May 11, 2017 recorded call is probative evidence that defendant knew and understood exactly how the pay-to-play scheme operated.

Illustrating the critical importance of the pay-to-play scheme evidence, especially as it relates to the wire fraud count, is this Court's recent ruling denying defendants Lee and 940 Hill's Rule 29 Motion to Dismiss Count Five.  (Dkt. No. 611.)  In that trial, the government admitted significant evidence of the pay-to-play scheme within the City, establishing that it began in 2013 and operated in a manner by which Huizar "would develop relationships and then solicit and accept from developers . . . financial benefits such as cash in exchange for official acts."  (Id. at 2.)  The government also admitted evidence showing how defendants Lee/940

---

[4]     Defendant is charged with honest services wire fraud (Counts 2-4); Travel Act violations (Counts 18-21); and federal program bribery (Count 23).

LAW
OFFICES OF
RICHARD M.
STEINGARD

Hill's relationship with Huizar vis-à-vis Justin Kim tracked the <u>modus operandi</u> of that pay-to-play scheme.  More specifically, it included testimony and exhibits regarding the "long standing relationship among [scheme members]," and Lee/940 Hill's "pattern of [providing benefits] to Huizar" and their use of a proxy, all of which was relevant evidence that served to demonstrate defendants' intent and the "nature and extent of the preexisting scheme."  (<u>Id.</u> at 2-3.)  Based on this evidence, the Court concluded that the jury could reasonably infer that defendants Lee/940 Hill joined the scheme by the time the predicate wire was sent and that the transmission of that wire was "a step in the plot of the scheme."  (<u>Id.</u> at 3 (citing <u>Jinian</u>, 725 F.3d at 960).)

In the trial against SZNW, the government intends to elicit similar testimony about the nature and extent of the pay-to-play scheme that Huizar, Esparza, and others operated within the City.  The government is entitled to present this critical evidence to, among other things, (1) establish the existence of a scheme to defraud (an element of honest services fraud); (2) aid the jury in understanding how the pay-to-play scheme worked; (3) demonstrate how defendant's conferral of extravagant benefits gave him direct access to Huizar, consistent with the operation of the pay-to-play scheme; (4) establish defendant's knowledge and understanding of the pay-to-play scheme; and (5) establish defendant's intent to participate in that scheme and when that intent developed.

     B.    <u>Evidence of the Pay-to-Play Scheme Is Also Inextricably Intertwined</u>

Even if the pay-to-play scheme evidence were not direct evidence, it would be admissible as inextricably intertwined evidence.

"Evidence should not be considered 'other crimes' or 'other act' evidence within the meaning of Rule 404(b) if the evidence concerning the 'other' act and the evidence concerning the crime charged are inextricably intertwined."  <u>United States v. Dorsey</u>, 677 F.3d 944, 951 (9th Cir. 2012) (quotation omitted).  Evidence is "inextricably intertwined" when it is "necessary to permit the prosecutor to offer

LAW
OFFICES OF
RICHARD M.
STEINGARD

a coherent and comprehensible story regarding the commission of the crime," <u>id.</u>, or is "necessary to put [defendant's] illegal conduct into context and to rebut his [defense]." <u>United States v. Daly</u>, 974 F.2d 1215, 1217 (9th Cir. 1992).[5]

Here, the pay-to-play scheme is necessary for the government to present a coherent and comprehensible story of <u>how defendant and Huizar's scheme worked</u>--something a lay jury would otherwise have no understanding of.[6]  It will explain, for instance, how information flowed between Jose Huizar, an English-speaking high-ranking Los Angeles official and Wei Huang, a Chinese-speaking real estate developer; namely, that they would communicate through their lackeys, Esparza and Zheng, and how that was by design.  (See Lee/940 Hill Trial Tr. 6/17/22 at 925:20-927:18 (Esparza explaining that, as part of the pay-to-play scheme, he was trained to "size people up" to see if they were willing to "play" and "assess the room to figure out who was . . . the George of that certain developer").  The evidence will show that, as part of the pay-to-play scheme, certain people became "friend[s] of the office"--that is, individuals who "never really told [Huizar] no" --and, in turn, were provided special access and treatment.  (See id. at 932:14-933:2 (Esparza explaining what a "friend of the office" was); see also Lee/940 Hill Trial Tr. 6/16/22 at 780:21-781:22 (Shawn Kuk testimony explaining that a special request on behalf of a "friend of the office" was understood to be coming from Jose Huizar directly).)  And this evidence will help the jury understand the coded or nuanced language that developers used and that Huizar interpreted as an invitation to solicit benefits.  (See Lee/940 Hill Trial Tr. 6/17/22 at 927:7-18 (Esparza explaining that "developers would speak a certain language

---

[5]  Defendant attempts to cast doubt on the viability of the "inextricably intertwined" doctrine by citing out-of-circuit cases, but then concedes that the Ninth Circuit continues to apply the doctrine.  (Mot. at 4.)

[6]  For that matter, even if a jury did have a general understanding of what a pay-to-play scheme is, it would likely be dubious of its existence, absent compelling evidence proving that it, in fact, took place here in Los Angeles.

LAW OFFICES OF RICHARD M. STEINGARD

or code about, hey, is there anything that we could be helpful with, anything you need, please let us know").)

This evidence is also necessary to "rebut the [incorrect] defense," <u>Daly</u>, 974 F.2d at 1217, that the charges in this case require an agreement or mutual "arrangement" between defendant and Huizar. (See Dkt. No. 334 [Defendant's Motion for Bill of Particulars] at 8-9 (repeatedly characterizing bribery prosecutions as requiring proof of an "agreement" between the payor and public official; <u>see also</u> Dkt. No. 201 [Defendant's Motion to Sever] at 1 (suggesting there needs to be a "quid pro quo <u>arrangement</u> between Huizar and Wei Huang or SZNW" (emphasis added)). But the charges do not require any such agreement, much less an explicit one. <u>See United States v. Silver</u>, 948 F.3d 538, 551 (2d Cir. 2020) (rejecting argument that honest services fraud requires a "meeting of the minds between the payor and the official as to the corrupt purpose of the payments"); <u>see also Garrido</u>, 713 F.3d at 996-97 (defining <u>quid pro quo</u> for briber to mean briber's "<u>intent</u> to give or receive something of value in exchange for an official act" (emphasis added)).

In addition to affirmatively proving the government's case, the pay-to-play scheme evidence rebuts the defense's suggestion that there was no bribery here because of the lack of an express agreement. That is, Esparza's testimony will establish that it was <u>part of the scheme</u> "not to directly ask this for that," while still making clear "the [pay-to-play] message." (See Lee/940 Hill Trial Tr. 6/17/22 at 929:2-8 (Esparza testimony).) Such testimony is therefore critical to rebut the factually and legally flawed notion that there can be no bribery scheme afoot in the absence of an explicit mutual agreement. <u>See Silver</u>, 948 F.3d at 558 n.10 ("[B]ribery is rarely conducted in explicit terms; instead, the language of bribery is one of implication and innuendo.").

LAW
OFFICES OF
RICHARD M.
STEINGARD

13

C.   The May 11, 2017 Call Is Highly Relevant

As a specific example of how the pay-to-play scheme worked, the government intends to put on a recorded call between Esparza and defendant's central agent in the scheme, Zheng, where the two discuss how Huizar has stalled Shanghai Construction's project for the past year because they had refused to play Huizar's game.[7]  (Def. Ex. A.)  During that call:

- Esparza reminds Zheng that Huizar had stalled the Shanghai Construction project for a year now, which could not "even start" without "a bunch of stuff, approvals";

- Esparza explains that the reason for blocking the project was because Shanghai Construction "hasn't come through with any of their [financial] commitments to us" so "why even be helpful to them";

- Esparza asks Zheng what he wanted them to do; and

- Zheng provides instructions to Esparza to "keep ignoring them" and "don't meet the Chairman [of Shanghai Construction]."

Thus, the call is highly probative of several key issues at trial, including the power of Huizar and Huizar's office to block development projects, the fact that developers who did not engage in the pay-to-play scheme were treated adversely, and the relationship dynamic between Esparza and Zheng in which Zheng called the shots as to how Huizar's Office should handle another developer.  The call is also probative of defendant's (via Zheng's) knowledge of the power, ability, and influence of Jose Huizar to treat development projects adversely or favorably; defendant's understanding that Huizar punished developers who did not "come through" or provide financial benefits for Huizar; and of defendant's own motive

---

[7]   Shanghai Construction was another foreign development company with a major project in CD-14 but was unconnected to defendant and Huang.

LAW OFFICES OF RICHARD M. STEINGARD

and intent to provide benefits to Huizar to advance its own development projects.[8]
For these reasons, defendant's argument that the call is "irrelevant" easily fails.

Defendant also incorrectly posits that Zheng was no longer an agent of defendant by late 2016.  (Mot. at 3.)  To the contrary, the evidence shows that Zheng was still acting as defendant's agent during the time of this call.  In fact, in defendant's own Motion in Limine No. 7 (seeking to exclude evidence of the purportedly "legal" favors Huizar performed for defendant), defendant cites various exhibits showing Zheng's active involvement in securing media coverage for AUP's graduation ceremony on May 27, 2017 at defendant's hotel, including through a flurry of calls on May 26 in which Zheng (at the behest of Wei Huang) directed Esparza to invite the Chinese Embassy and to send follow-up emails, and confirmed he would relay information to Huang about media attendees--all for the benefit of defendant.  Moreover, the May 11 call details how the Shanghai Construction project had been stalled for an entire year (since mid-2016) with Zheng's input and understanding.

In sum, both the pay-to-play evidence, and the May 11 call involving defendant's key agent, are probative, significant evidence of the charged crimes.

> ### D.   The Evidence Is Not Unduly Prejudicial

The Ninth Circuit has made clear that "[Rule] 403 favors admissibility," United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000), and that excluding evidence under Rule 403 is an "extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence."  United States v. Patterson, 819 F.2d 1495, 1504 (9th Cir. 1987) (cleaned up).  As the Ninth Circuit explained in a case admitting evidence of the defendant's and a witness's gang ties:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits

---

[8]   While the government maintains that this evidence is direct evidence or, at a minimum, inextricably intertwined, it would alternatively be admissible under Rule 404(b) to prove motive, intent, knowledge, and lack of accident or mistake.

exclusion of relevant matter under Rule 403. ***Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing***. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

Hankey, 203 F.3d at 1172 (cleaned up) (emphasis added). Further, Rule 403 does not require that a trial be "scrub[bed] . . . clean of all evidence that may have an emotional impact." United States v. Ganoe, 538 F.3d 1117, 1124 (9th Cir. 2008) (cleaned up).

Consistent with the manner in which the pay-to-play scheme evidence was presented during the Lee/940 Hill trial, the government intends to elicit testimony about the general framework of the pay-to-play scheme, as well as a few, limited examples of how that scheme operated, including as it related to Shanghai Construction as referenced in the May 11 call. The highly probative nature of this evidence is not substantially outweighed by any unfair prejudice, particularly given that the jury will already hear about defendant's extensive provision of extravagant benefits to Huizar. And evidence should not be excluded as unduly prejudicial when it is not "more inflammatory than the charged crime." United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999).

Nor is admission of this evidence inconsistent with the Court's order severing the trials in this matter. The Court's concerns related to a scenario in which the "sheer volume of evidence against the other schemers" would "dwarf" the evidence presented against defendant. (3/7/22 Hearing Tr. at 25:19-21.) A full-blown joint trial against all defendants might have resulted in a defendant "sit[ting] in court for days and even weeks" without its name being mentioned, all while the jury listened to "countless hours of testimony related to other conduct and other defendants." (Id. at 25:10-24.)

That will not be the case at defendant's trial, just as it was not the case in the Lee/940 Hill trial. Much of the evidence that would have been presented in one

16

joint trial involving the full RICO conspiracy will <u>not</u> feature in this trial.  For instance, the government will not elicit evidence that would be needed to prove up the 940 Hill bribery scheme, the Luxe Hotel bribery scheme, the Mateo Project bribery scheme, and the Businessperson A schemes, or the vast majority of the obstructive conduct/false statement charges against the other co-defendants.[9]

To the extent the government elicits limited, specific examples of the pay-to-play scheme not directly involving defendant, it will contemporaneously make that clear during the testimony on direct, just as it did in the Lee/940 Hill trial.  (<u>See, e.g.</u>, Lee/940 Hill Trial Tr. 6/17/22 at 931:4-21 (eliciting testimony that Esparza received luxury trips from SZNW and <u>not</u> defendants Lee/940 Hill.)  For example, should the government elicit testimony about how Huizar solicited concert tickets as an example of how the pay-to-play scheme operated, the government would also elicit testimony that neither defendant nor Huang provided those concert tickets.

### III.    CONCLUSION

For the foregoing reasons, defendant's motion should be denied.

///

///

///

---

[9]    Of course, should defendant open the door to these issues, for example, by cross-examining Esparza about these schemes as detailed in the factual basis of his plea agreement, the government would then be entitled to elicit testimony on the same topics during the re-direct examination.  Or if defendant opens the door by making statements about these issues in his opening jury address, the government should be permitted to address them on direct examination.

LAW OFFICES OF RICHARD M. STEINGARD

### SZNW'S REPLY

A.    "Other Schemes" Evidence

The government's above-stated position seeking to admit "other schemes" evidence is a **complete reversal** from its pre-filing representations to SZNW's counsel. Then, the government stated that, with one qualification, it would **not** seek to introduce **any** such evidence; the only caveat was that the government reserved its right to introduce the "other schemes" evidence if SZNW cross-examined government cooperators about the full nature of their criminal conduct as outlined in their plea agreements.  (*See* Declaration of Richard Steingard, Exhibit C, at ¶ 5.)  Indeed, SZNW's counsel raised this exact topic in several meet and confer sessions with the government concerning the nature and scope of the *in limine* motions.  (*Id*.)  As detailed in a confirming memo sent to government counsel after a May 3, 2022 meet and confer session, the government stated that it would not be seeking to admit the "other schemes evidence unless the defense cross-examined government witnesses about their plea agreements reflecting the other criminal schemes they were involved in:

> Other scheme evidence—the government will not seek to introduce evidence of the other schemes alleged in the FSI.  If the defense seeks to challenge the credibility of cooperators (e.g., George Esparza, Ricky Zheng, George Chiang) based on their other misconduct, the government may want to front the issue on direct examination

(Exhibit D.)[10]

So, what changed?  Two things, neither of which warrant the admission of "other schemes" evidence.  First, in the *940 Hill/Lee* trial, those defendants did not object to the government's admission of "other schemes" evidence and, in fact, highlighted it in the defenses' opening statement, examinations of witnesses, and closing argument.  In that case, having secured a severance by arguing that the

---

[10]    By email, the government confirmed the accuracy of the memo.  (*See* Steingard Declaration at ¶¶ 6-7.)

LAW OFFICES OF RICHARD M. STEINGARD

1   introduction of "other schemes" evidence would be prejudicial to their case, 940

2   Hill and Lee made a strategic decision to allow its admission at trial and even

3   emphasize its significance, ostensibly to differentiate those defendants from the

4   other developers.  The government apparently interprets 940 Hill and Lee's

5   acquiescence to, and introduction of, this evidence as a tacit indication that it can

6   admit such evidence against SZNW.  Not so.  A different defendants' trial tactic to

7   allow the introduction of "other schemes" evidence does not render it admissible

8   against SZNW, which clearly and unequivocally does object to its admission.

9        Second, the government notes the Court's ruling on one of 940 Hill and

10   Lee's post-trial motions, seeking to dismiss Count Five.  (ECF 611.)  There, the

11   Court referenced the "other schemes" evidence in finding that "a rational trier of

12   fact could have found that Lee sent the August 9, 2016 email with the requisite

13   intent and in furtherance of the scheme to defraud."  (*Id*. at 2.)  In so ruling, the

14   Court noted that "[i]n his opening statement, Lee's counsel acknowledged the

15   nature, scope and extensive duration of the corrupt pay to play scheme."  (*Id*. at 2.)

16   After reviewing some of the evidence introduced against Lee, the Court stated,

17   "Based on this evidence, and other evidence at trial relating to the pay to play

18   relationships Huizar and Esparza had nurtured with 'big gun' developers, a rational

19   trier of fact could reasonably conclude that at the time Lee sent the email to Kim

20   who then forwarded it to Esparza, Defendants intended to capitalize on the direct

21   access they had established with Huizar and his office and join the pay to play

22   scheme."  (*Id*. at 2-3; citation omitted.)  The Court also addressed the defendants'

23   contention "that in making the argument that Lee joined an existing pay to play

24   scheme, the Government relies on a theory previously rejected by the Court when

25   it granted Defendants' Motion for Severance."  (*Id*. at 3.)  The Court disagreed,

26   stating, "Defendants' Motion is based on the evidence presented at trial, and not on

27   the Court's assessment of the evidence prior to trial in ruling on an entirely

28   different motion with a different legal standard."  (*Id*.)

SZNW does not understand the Court's ruling to be as all-encompassing as the government wishes.  The Court stated multiple times in its order that its ruling was based on the evidence *presented at trial*.  In other words, because 940 Hill and Lee permitted the government to introduce the "other schemes" evidence, and also presented it throughout the defenses' case, those defendants can hardly complain about its evidentiary impact on the trial or the Court's consideration of it in deciding a post-trial motion.[11]

Indeed, during the severance litigation, the Court's explained the prejudice that SZNW would suffer if the "other schemes" evidence was admitted against SZNW.  As the Court will recall, after extensive briefing by the parties, the Court analyzed the legal and factual landscape and stated that "[i]f the Government is unable to satisfy the Court that 940 Hill, Lee, and Shen Zhen were participants in a single scheme, the Court will have to determine whether severance is appropriate… [M]uch of the evidence regarding the projects other than L.A. Grand Hotel… would be inadmissible against Shen Zhen."  (RT 1/7/22: 91-95.)  The Court subsequently adopted these tentative findings in its final order.  (RT 3/7/22 at 13-28.)

The Court's statements are no less relevant now.  In fact, the manner in which the government states it would introduce the "other schemes" evidence would be particularly pernicious and prejudicial.  The government advises that it "will not elicit evidence that would be needed to prove up the 940 Hill bribery scheme, the Luxe Hotel bribery scheme, the Mateo Project bribery scheme, and the

---

[11] Many of the government's other oppositions to *in limine* motions cite to the "other schemes" evidence as if the Court had already ruled that it is all admissible. Yet during the severance litigation, the government argued that the RICO and honest services counts alleged a series of separate and discrete schemes which could easily be delineated. (*See* ECF 228 at 23-24 ("Each of these schemes fall under a distinct FSI header naming the scheme/project that will serve as an easy-to-follow guide for the jury to navigate during its deliberations.").)

Businessperson A schemes," but, instead, will introduce "the general framework of the pay-to-play scheme, as well as a few, limited examples of how that scheme operated…."[12]

For instance, the government states that it will have Esparza testify, as he did in the *940 Hill/Lee* case, that "he was trained to 'size people up' to see if they were willing to 'play' and 'assess the room to figure out who was . . . the George of that certain developer'"); "certain people became 'friend[s] of the office'--that is, individuals who 'never really told [Huizar] no' --and, in turn, were provided special access and treatment;' and "developers would speak a certain language or code about, hey, is there anything that we could be helpful with, anything you need, please let us know."  The government argues this activity, entirely unknown to SZNW, is somehow evidence of SZNW's knowledge and intent. As it did in its severance opposition, the government leans heavily on the Seventh Circuit's decision in *United States v. Boone*, 628 F.3d 927, 935 (7th Cir. 2010). (*See* ECF 228 at 10-14.)  SZNW addressed the facts and findings of *Boone* in its reply brief (ECF 255 at 10-11), and rather than repeat what has already been presented to the Court, incorporates those arguments here.[13]

---

[12]    SZNW previously addressed the admissibility of this evidence in the context of a hub and spokes conspiracy under *Kotteakos v. United States*, 328 U.S. 750, 751 (1946).  (ECF 246-1 at 5-6; 255 at 8-10; 369.)  That briefing is incorporated herein.  In considering and then granting a severance, the Court indicated that "other schemes" evidence generally would not be admissible against SZNW.  (RT 1/7/22: 91-95; RT 3/7/22 at 13-28.)

[13]    As discussed in MILs 1 and 7, the government argues that it need not prove a meeting of the minds for honest services bribery, but also that SZNW should be treated as a de facto co-conspirator with Huizar, Chan, and Esparza, and that all statements made and evidence admissible by them is equally admissible against SZNW.  Because the *Lothian* analysis is based on co-schemers being essentially co-conspirators, the government should not be able to derive the benefit of the co-

LAW OFFICES OF RICHARD M. STEINGARD

The admission of "other schemes" evidence would require SZNW to address it as part of the case against it, or essentially concede that it is all true. Needless to say, SZNW's counsel has been preparing to try the case based on the government's evidence against SZNW and has not studied the "other schemes" counts, allegations, or evidence—including the massive amount of discovery—against other developers, individuals, and projects. It would be unfair now, two months before trial, to require that SZNW either concede the truth of these other alleged bribery schemes and allow it to be introduced unchallenged, or scramble to gain some kind of an understanding of them, including possible flaws in the schemes and contradictory evidence, while in the midst of final trial preparations.

For these reasons, and those by the Court in prior discussions of this very issue, the admission of "other schemes" evidence would be manifestly prejudicial to SZNW and deny it a fair trial.

B.    Zheng and Esparza's May 11, 2017 Conversation

The government claims that a 2017 call between Ricky Zheng and George Esparza in which they discussed a project involving Shanghai Construction is inextricably intertwined with the case and therefore should be admitted. Clearly, this conversation is not "inextricably intertwined" evidence that warrants its admission at trial. It is neither part of the transaction that serves as the basis for the criminal charge nor is it necessary to offer a "coherent and comprehensible story." *Vizcarra-Martinez*, 66 F.3d at 1013; *Wells*, 879 F.3d at 928-29; *Boone*, 628 F.3d at 933. The government does not argue otherwise.

Moreover, it bears noting that in May 2017, when this conversation occurred, Zheng was not employed by SZNW, the call had nothing to do with

conspirator's exception to the hearsay rule without proving that there was a meeting of the minds and a criminal agreement.



SZNW, and therefore the conversation cannot be attributed to the corporate defendant.  As discussed in MIL 1, during those periods when Zheng was either not employed by SZNW or not "at work" (*e.g.*, during social events or engagements), he does not meet the definition of an "agent."  In this particular phone call, which occurred *after* Zheng left SZNW's employ, it is clear he was not acting as an agent for SZNW.  The conversation is thus hearsay, and the co-schemer exception does not apply, as the conversation was not "in furtherance of" the LA Grand Hotel Bribery Scheme.

In sum, this recording has nothing to do with SZNW, Wei Huang, or the redevelopment of their downtown hotel.  It is thus inadmissible and should be excluded.

///

///



LAW
OFFICES OF
RICHARD M.
STEINGARD

DATED: August 29, 2022

RICHARD M. STEINGARD
Law Offices of Richard M. Steingard


By:  /s/
RICHARD M. STEINGARD
Attorney for Defendant
SHEN ZHEN NEW WORLD I, LLC

DATED: August 29, 2022

TRACY L. WILKINSON
United States Attorney


By:  /s/
MACK JENKINS
SUSAN HAR
CASSIE PALMER
JAMARI BUXTON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## <u>DECLARATION OF RICHARD M. STEINGARD</u>

I, Richard M. Steingard, state and declare as follows:

1.      I am an attorney licensed to practice in the state of California and before this Court.  I represent Shen Zhen New World I, LLC ("SZNW") in the above-pending matter and submit this declaration in support of the motion *in limine* to exclude evidence of Jose Huizar and George Esparza's acts of concealment.

2.      SZNW moves this Court for an order excluding evidence of other alleged bribery schemes, including but not limited to a conversation between Ricky Zheng and George Esparza concerning a completely unrelated redevelopment project involving Shanghai Construction.  The "other schemes" evidence was the basis for SZNW's request for a severance, which the Court granted.  These other alleged bribery schemes—involving completely unrelated developers, individuals, and projects—are irrelevant to the case against SZNW and extremely prejudicial.

3.      Counsel for both parties have met and conferred about this motion *in limine*. After discussing the matter, counsel for the government stated that it would not seek to introduce the "other schemes" evidence.  However, the government introduced such testimony during the *940 Hill/Lee* trial and so, out of an abundance of caution, I included it in this motion *in limine*.  However, based on the government's opposition to this motion, they have reversed course and now seek to introduce it in their case in chief.

4.      As to the Zheng and Esparza phone conversation about Shanghai Construction, after discussions with the government, they stated that they wanted to introduce this conversation at trial.

///

///

///



LAW
OFFICES OF
RICHARD M.
STEINGARD

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 29th day of August, 2022 in Los Angeles, California.


_____
Richard M. Steingard

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

## **LOCAL RULE 5-4.3.4 ATTESTATION**

I attest and certify that all other signatories listed, and on whose behalf this

filing is submitted, concur with the filing's content and have authorized the filing.

DATED: August 29, 2022          By: _____

RICHARD M. STEINGARD

LAW
OFFICES OF
RICHARD M.
STEINGARD