Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone: (213) 260-9449
Facsimile: (213) 260-9450

Attorney for Defendant
Shen Zhen New World I, LLC

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR-20-326(A)-JFW |
| Plaintiff, | **JOINT MOTION *IN LIMINE* NO. 5: SHEN ZHEN NEW WORLD I, LLC'S MOTION TO EXCLUDE IMPROPER OPINION TESTIMONY REGARDING EAST WEST BANK'S RISK OF LOSS; DECLARATION OF RICHARD M. STEINGARD** |
| v. | |
| SHEN ZHEN NEW WORLD I, LLC, | |
| Defendant. | |

Date: September 23, 2022
Time: 8:00 a.m.
Crtrm: 7A

Trial Date: October 25, 2022

Assigned to Hon. John F. Walter

LAW
OFFICES OF
RICHARD M.
STEINGARD

i

# <u>TABLE OF CONTENTS</u>

**Identification of Matters in Dispute** ...................................................................1

**SZNW's Motion** ..........................................................................................................2

I.     INTRODUCTION ...............................................................................................2

II.    STATEMENT OF RELEVANT FACTS ......................................................2
       A.    FBI Special Agent Andrew Civetti ...................................................2
       B.    EWB Employees Peggy O'Donnovan and Verita Gunido ...............3

III.   ARGUMENT .......................................................................................................5
       A.    The Witnesses' Prior Statements are Improper as Lay Opinion
            Testimony .............................................................................................6
       B.    The Witnesses' Statements are Improper Expert Opinion
            Testimony .............................................................................................6
       C.    Hypothetical Questions that Include Facts Not Known to
            the Witness are Improper ...................................................................7

**Government's Opposition**

I.     THE GOVERNMENT IS ENTITLED TO PUT ON EVIDENCE
       ESTABLISHING THE EXTENDED TEN-YEAR STATUTE
       OF LIMITATIONS FOR HONEST SERVICES FRAUD ...........................8

II.    THE COURT ALREADY RULED THAT SUCH TESTIMONIAL
       EVIDENCE IS ADMISSIBLE ........................................................................9

III.   SUCH TESTIMONY IS PROBATIVE AND ROUTINELY
       ADMITTED ......................................................................................................11

IV.   CONCLUSION ................................................................................................12

**SZNW's Reply** .........................................................................................................13

**Declaration of Richard M. Steingard** ................................................................18

1

## <u>TABLE OF AUTHORITIES</u>

2

## <u>FEDERAL CASES</u>

3

4
*Bell v. Cameron Meadows Land Co.*,
5
    669 F.2d 1278 (9th Cir. 1982) ........................................................11

6
*City of Los Angeles v. Santa Monica Baykeeper*,
7
    254 F.3d 882 (9th Cir. 2001) .........................................................13

8
*Compare Neder v. United States*,
9
    527 U.S. 1 (1999).........................................................................14

10
*McDonnell v. United States*,
11
    136 S.Ct. 2355 (2016)....................................................................7

12
*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
13
    902 F.2d 703 (9th Cir. 1990) .........................................................13

14
*Rivera v. Philip Morris, Inc.*,
15
    395 F.3d 1142 (9th Cir. 2005) .......................................................12

16
*Taylor v. Burlington N.R. Co.*,
17
    787 F.2d 1309 (9th Cir. 1986) .........................................................7

18
*Thomas v. Bible*,
19
    983 F.2d 152 (9th Cir. 1993) .........................................................10

20
*United States v. Celestine*,
21
    647 F.3d 1196 (9th Cir. 2011) .........................................................7

22
*United States v. Haroon*,
23
    874 F.3d 479 (6th Cir. 2017) .........................................................11

24
*United States v. Rotteveel*,
25
    703 F. App'x 518 (9th Cir. 2017) ............................................ 11, 14-15

26
*United States v. Serpico*,
27
    320 F.3d 691 (7th Cir. 2003) ................................................. 11, 15-16

28

LAW
OFFICES OF
RICHARD M.
STEINGARD

*United States v. Stargell*,
    738 F.3d 1018 (9th Cir. 2013) ............................................................. 8-9, 14

*United States v. Stinson*,
    647 F.3d 1196 (9th Cir. 2011) ........................................................................7

**FEDERAL RULES OF CRIMINAL PROCEDURE**

Fed. R. Crim. P. 16.............................................................................................6

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 701 .................................................................... 5-6, 11, 13

Fed. R. Evid. 702 ................................................................................. 5-6

**STATUTES**

18 U.S.C. § 3293 ...............................................................................................8

## **TABLE OF EXHIBITS**

| **Exhibit** | **Description** | **Page** |
|---|---|---|
| A | July 30, 2020, partial transcript of Grand Jury Testimony of FBI SA Andrew Civetti | 3:13 |
| B | January 26, 2021, partial transcript of interview of East West Bank employee Peggy O'Donnovan | 3:22 |
| C | February 4, 2021, partial transcript of interview of East West Bank employee Verita Gunido | 4:19 |

LAW
OFFICES OF
RICHARD M.
STEINGARD

## IDENTIFICATION OF MATTERS IN DISPUTE

**Defendant's Position:** SZNW moves this Court for an order excluding the admission of improper "risk of loss" testimony by East West Bank employees. The First Superseding Indictment ("FSI") alleges that the collateral/loan transaction between Wei Huang, Jose Huizar, and East West Bank "affected a financial instutition."  While the government may attempt to prove this allegation, they should not be permitted to do so by asking unknowledgeable bank employees whether the bank would have accepted the collateral and extended the loan had it known the "true nature" of the alleged corrupt relationship between Huang and Huizar.

**Government's Position**: As the Court has already ruled, testimonial evidence of East West Bank representatives regarding the increased risk of loss to the financial institution based on the concealed, corrupt origin of the supporting collateral is admissible to extend the statute of limitations for honest services fraud.

The government would be prejudiced by the exclusion of this testimony, which is significant proof of the effect on a financial institution needed to extend the limitations period, as charged in the indictment.

LAW
OFFICES OF
RICHARD M.
STEINGARD

## JOINT MOTION *IN LIMINE* NO. 5
### SZNW'S MOTION TO EXCLUDE IMPROPER OPINION
## TESTIMONY REGARDING EAST WEST BANK'S RISK OF LOSS

### I.    INTRODUCTION

Shen Zhen New World I, LLC ("SZNW") moves this Court for an order excluding improper testimony from FBI Special Agent Andrew Civetti, as well as East West Bank ("EWB") employees Peggy O'Donnovan and Verita Gunido.  The testimony at issue concerns whether EWB was at a "risk of loss" based on the personal loan it extended to Jose Huizar that was secured by a Certificate of Deposit from SZNW's owner, Wei Huang.  These witnesses' testimony about EWB's potential risk of loss are not rationally based on the witnesses' perceptions as required for lay opinion testimony.  The witnesses have not been designated or qualified as experts, and their testimony is otherwise inadmissible.

### II.    STATEMENT OF RELEVANT FACTS

The bribery charges against SZNW are based, in part, on the fact that Wei Huang provided $600,000 in collateral to EWB to secure the bank's $570,000 loan to Jose Huizar.  Based on discovery materials, the government seeks to introduce Agent Civetti and EWB employees' testimony that East-West Bank was at a risk of loss due to the collateral that Huang provided and the loan EWB extended to Huizar.

A. <u>FBI Special Agent Andrew Civetti</u>

On July 30, 2020, FBI Agent Civetti testified before the grand jury[1] about EWB's risk of loss:

*///*

---

[1]    Agent Civetti's testimony was in connection with the *initial* Indictment, which referenced—but did not charge—SZNW and Wei Huang.  (ECF 36.)  Agent Civetti also testified before the grand jury that returned the First Superseding Indictment ("FSI") but was not asked any questions about EWB's risk of loss.



Q: And, Agent Civetti, this particular wire of money leaving the East West Bank account, did that transfer have an effect [sic] on a financial institution, in other words, an East West Bank account?

A: Yes.

Q: Is it your understanding that that wire of money out had the potential to expose East West Bank to the risk of loss of money?

A: That's correct.

Q: And is that because the money in the account, Jose Huizar was responsible for paying back this loan amount; is that correct?

A: At a future date. Correct.

Q: Was there a risk that Jose Huizar would be unwilling to pay back that amount?

A: That's correct.

Q: Was it your understanding that there was a risk that the bank could have been exposed to not being fully paid back for the loan that it issued to Jose Huizar?

A: That's correct.

(Partial Transcript of Grand Jury Testimony, July 30, 2020, attached as Exhibit A.)

The government's witness list includes Agent Civetti. The government has not designated him as an expert witness.

B. <u>EWB Employees Peggy O'Donnovan and Verita Gunido</u>

On January 26, 2021, government prosecutors and agents interviewed EWB employee Peggy O'Donnovan, in the presence of the bank's attorney, Camille Evert. During this interview, the prosecutors and agents asked Ms. O'Donnovan hypothetical questions about whether the bank would have issued the loan to Huizar had it known that the collateral was a bribe. (Partial Transcript of Interview of Peggy O'Donnovan, January 26, 2021, attached as Exhibit B.) Before Ms. O'Donnovan could respond, Ms. Evert, EWB's attorney, reacted with alarm, but ultimately allowed Ms. O'Donnovan to answer:

Civetti:   Would the … if ... would knowledge of the – um – arrangement affect the bank's decisions at all?

O'Donnovan:   Huh?

LAW
OFFICES OF
RICHARD M.
STEINGARD

| | |
|---|---|
| Civetti: | I guess I could say it more specifically. If the bank was aware that these were bribe proceeds, would the bank have made the same decision? |
| Evert: | Wait, seriously? You're asking her if the bank knew there was a bribe? What bribe? |
| Civetti: | Meaning if the bank was aware that there was some kind of illegal relationship between the parties, does that put the bank at risk and would the bank not have done that then. |
| | … |
| O'Donnovan: | [unintelligible] that question, so yeah. I mean, I'm not sure how we would've known. |
| | … |
| O'Donnovan: | And you know, for the record, the bank only makes loans if they know it's legal. |
| Civetti: | And that's the exact thing I'm getting to. If the bank was aware that it was illegal, the bank wouldn't engage in it. |
| O'Donnovan: | Right. |

(*Id*.)

Nine day later, the government interviewed EWB employee Verita Gunido. The prosecutor and agents posed similar hypothetical questions: "Would it have been important to you to understand if there was any type of corrupt relationship between … [t]he guarantor and the borrower?" (Partial Transcript of Interview, Verita Gunido, February 4, 2021, attached as Exhibit C.) Ms. Gunido responded, "Uh, when we open account … we don't really check, like the relationship." (*Id*.) The prosecutor then asked whether the bank "proceed[s] with the assumption that everyone is acting in a legal manner and they're not somehow, uh, trying to do something like launder money, or pay bribes, or doing anything illegal." (*Id*.) Ms. Gunido responded: "Yeah, no," expressing some puzzlement with the question. (*Id*.) The bank's lawyer, Ms. Evert, attempted to explain the prosecutor's questions:

| | |
|---|---|
| Evert: | I think [unintelligible] – maybe I can – I think what she's asking you is if they came in as if they were |

proper and had a proper relationship, and were
doing legal things, which to our knowledge, they
were. If you had known that they were doing illegal
things, would you have opened the account for
them?

Gunido:  Oh yes! Yes.

Evert:  No. No, if they were doing illegal things, would you have
opened the account?

Gunido:  No, we wouldn't open the account.

(*Id.*)

The government then asked why the bank would have declined to open an account had they known the proceeds were illegal.  (*Id.*)  Ms. Gunido did not articulate any basis for this policy but rejected the prosecutor's suggestion that law enforcement might seize the funds if they were illegal proceeds, stating, "No, to me, it's just like … we – it's just not the right thing. And we shouldn't just open the account. Especially when we already know." (*Id.*)  The prosecutor asked, what if Mr. Huizar had disclosed at the time of the loan application that "there was some kind of corrupt relationship, uh, between the guarantor and the borrower, had he disclosed that to you, uh, would you have, uh, refused to open the savings loan?" Ms. Gunido responded that she would say, "I'm not feel comfortable. I'm not gonna do it." (*Id.*)

The government's trial witness list includes Ms. O'Donnovan and Ms. Gunido.  The government has not designated either as an expert witness.

## III.   ARGUMENT

SZNW moves to exclude Agent Civetti, Ms. O'Donnovan, and Ms. Gunido's testimony about whether EWB was at a risk of loss due to a corrupt relationship between Huizar and Huang. Such testimony is improper regardless of whether it is offered as lay opinion under Fed. R. Evid. 701 or expert opinion under Fed. R. Evid. 702.

//

LAW
OFFICES OF
RICHARD M.
STEINGARD

A. <u>The Witnesses' Prior Statements are Improper as Lay Opinion Testimony</u>

A witness who is not testifying as an expert may testify in the form of an opinion provided that the witness's opinion is rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  Fed. R. Evid. 701. The testimony of Agent Civetti and the bank employees is not admissible as lay opinion because it is not rationally based on the witnesses' perception.  Rather, any opinion that the witness may offer would be based on their specialized knowledge from their training, education, or experience.  As such, unless a proper foundation is laid, Agent Civetti and the bank employees should not be permitted to testify whether EWB was at risk of loss from SZNW's deposit of $600,000 into a certificate of deposit account that Huizar used to secure a $570,000 personal loan.

B. <u>The Witnesses' Statements are Improper Expert Opinion Testimony</u>

Rule 702 permits a witness who is qualified expert to testify "in the form of an opinion or otherwise" provided that the expert's knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, the testimony is based on sufficient facts or data, the testimony is the product of reliable principles and methods, and the expert has reliably applied the principles and methods to the facts of the case.  Fed. R. Evid. 702.  At the defendant's request, the government must provide a written summary of such expert testimony that it seeks to introduce in its case-in-chief.  Fed. R. Crim. P. 16(a)(1)(F).

On December 15, 2021 and March 18, 2022, the government disclosed its expert witnesses.  Agent Civetti, Ms. O'Donnovan, and Ms. Gunido were not so designated.  Because these witnesses were not designated as expert witnesses, they may not testify regarding the bank purported risk of loss.

//

//



C. Hypothetical Questions that Include Facts Not Known to the Witness are Improper

The EWB witnesses' statements regarding the bank's risk of loss were in response to improper hypotheticals questions that assumed a "corrupt relationship" between Huang and Huizar.  *See*, *e.g.*, *Taylor v. Burlington N.R. Co.*, 787 F.2d 1309, 1317-18 (9th Cir. 1986) ("The [hypothetical] question must not require the expert to assume facts that are not in evidence"); *United States v. Stinson*, 647 F.3d 1196, 1213-15 (9th Cir. 2011) (hypothetical questions to an expert "must not require the expert to assume facts that are not in evidence"); *United States v. Celestine*, 510 F.2d 457, 460 (9th Cir. 1975) (upholding expert's responses to hypothetical question where the opinion was "based only on facts established by his own observations and the established facts in evidence").

The hypothetical questions were also improper because they represent *as a matter of fact* that the collateral provided by Huang was indeed a bribe.  This is one of the seminal questions that lies at the heart of this case: the benefits conferred by SZNW and Huang on Huizar are only bribes if they are attached to an improper *quid pro quo* arrangement that includes an "official act." *McDonnell v. United States*, 136 S.Ct. 2355 (2016).  In the absence of an "official act," SZNW and Huang's benefits to Huizar are, at best, "tawdry" gifts.  *Id*. at 2375.

The government should not be permitted to pose questions to its witnesses—whether through hypothetical questions or otherwise—that state or imply that Huizar and Huang had a "corrupt relationship."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOVERNMENT'S OPPOSITION**

**I.    THE GOVERNMENT IS ENTITLED TO PUT ON EVIDENCE ESTABLISHING THE EXTENDED TEN-YEAR STATUTE OF LIMITATIONS FOR HONEST SERVICES FRAUD**

As part of defendant's scheme to defraud, defendant supplied Jose Huizar with approximately $575,000 in collateral to save Huizar's political career from a damaging sexual harassment lawsuit and, in the process, saved defendant's own corrupt investment in Huizar.  Armed with defendant's over-half-a-million-dollar bribe, Huizar successfully applied for a personal loan from East West Bank so that he could pay off the lawsuit threatening his reelection.  In approving Huizar's loan, East West Bank remained in the dark about Huang's involvement with the loan and the nature of Huang and Huizar's illicit relationship.  After the FBI searched Huizar's house and office, Huizar defaulted on his minimum loan payments, causing East West Bank to collapse the loan and seize the collateral secretly provided by Huang, resulting in a financial windfall for Huizar of over half a million dollars.  (See FSI p. 23, OA 49.)

The FSI was returned on November 12, 2020.  Under controlling law (and the law of the case), the statute of limitations for honest services fraud is extended from five years to ten years if the offense affects a financial institution (here, East West Bank), as pled in the FSI.  18 U.S.C. § 3293(2); (see also 1/7/2022 Hr'g Tr. at 32:23-33:2 (same).)

Specifically, a "new or increased risk of loss to financial institutions"--even in the absence of actual loss--is sufficient to establish that the wire fraud affected a financial institution, thereby extending the limitations period.  United States v. Stargell, 738 F.3d 1018, 1022–23 (9th Cir. 2013).  The FSI alleges that defendant "executed a scheme to defraud . . . which violation affected at least one financial institution" and specifically details acts occurring within the extended ten-year limitations period, including that on September 23, 2014, defendant caused a wire

of $570,000 from Huizar's East West Bank to a Wells Fargo account (Count Two), which was ultimately used to settle the sexual harassment lawsuit.  (FSI p. 101 ¶ 44; p. 103 ¶ 46.)

Accordingly, to establish that East West Bank was subject to an "increased risk of loss" based on the true, concealed origin of the supporting collateral, Stargell, 738 F.3d at 1022, the government is entitled to ask the bank representatives whether they knew the true source of the collateral; what they would or would not have done had they known the true source; and why they would have acted differently.[2]

## II.    THE COURT ALREADY RULED THAT SUCH TESTIMONIAL EVIDENCE IS ADMISSIBLE

Notwithstanding the allegations of the FSI, the parties' prior briefing on the statute of limitations, and this Court's order addressing that briefing, defendant once again uses the motion in limine process to recycle failed claims and exclude direct evidence of its crimes.  Here, defendant moves to exclude the very evidence that would establish that defendant's "violation affected at least one financial institution."  (Mot. at 4 (moving to exclude testimony "about whether EWB was at a risk of loss due to a corrupt relationship between Huizar and Huang").)  Defendant again ignores this Court's prior ruling on this exact issue:

> As acknowledged by defendants, pursuant to Section 3293(2), the statute of limitations for honest services fraud in violation of 18 U.S.C. 1341, 1343, 1346 is extended to ten years if the offense affects a financial institution.
>
> Paragraph 44, lines 15 and 16 of the First Superseding Indictment, alleges that the scheme to defraud encompassing Counts 2 through 17 affected at least one financial institution.  As the 9th Circuit held in *United*

---

[2]    The government never claimed it would elicit this testimony from Agent Civetti--nor would it.

LAW OFFICES OF RICHARD M. STEINGARD

*States versus Stargell*, [738 F.3d 1018(9th Cir. 2013)], a financial institution need not suffer an actual loss in order to be affected but only a new or increased risk of loss.

Indeed, the allegations support a finding that the collateral provided by Defendant Huang to Defendant Huizar to secure the -- a loan from Bank 1 was a bribe. And because such funds securing the loan can be subject to forfeiture, for example, under 18 United States Code Section 981(a)(1)(C), the allegations are sufficient to support a finding that Bank 1 was subject to an increased risk of loss.

**Moreover, the Court notes that the Government represents at page 19 that discovery in this case further makes clear that, had Bank 1 representative known the true nature of the collateral payment, the bank would have denied the request to make a loan to Mr. Huizar under any circumstances because it would have placed the bank at risk of financial loss. If such evidence is presented at trial, a jury could find the offense charged in Count 2 affected a financial institution.**

(1/7/2022 Hr'g Tr. at 32:23-34:4 (emphasis added).)

Simply put, the Court previously and correctly ruled that the government can put on evidence in the form of bank representative testimony stating they would have denied Huizar's request for a loan had they known the true nature of the collateral payment, i.e., that it was supplied by a billionaire developer as part of his ongoing bribery scheme to defraud. See Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993) (explaining that under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case"). Defendant's motion, which makes no mention of the statute of limitations, does not even attempt to analyze the law of the case or show why it is not fatal to his motion. See id. at 155 (describing five

LAW
OFFICES OF
RICHARD M.
STEINGARD

1    circumstances where a court may have discretion to "reopen a previously resolved
2    question").

3    **III.    SUCH TESTIMONY IS PROBATIVE AND ROUTINELY**
4    **ADMITTED**

5          Such testimony is probative, admissible lay opinion testimony that is
6    rationally based on the bank representative's personal perception--not some
7    scientific, technical, or other specialized knowledge--and "it is helpful to clearly . .
8    . determining a fact in issue."[3]  <u>See</u> Fed. R. Evid. 701.  It is entirely commonplace
9    and routine for courts to admit testimony of what a representative agent or victim
10   <u>would have done</u> had it known of a concealed fact and why.  <u>United States v.</u>
11   <u>Rotteveel</u>, 703 F. App'x 518, 519 (9th Cir. 2017) (evidence was sufficient for a
12   jury to find the bank was "affected" based on government-presented testimony
13   "that the bank <u>would not have issued the loan had it known</u> it was lending more
14   than 100 percent of an investment property's value" (emphasis added)); <u>see also</u>
15   <u>United States v. Serpico</u>, 320 F.3d 691, 695 (7th Cir. 2003) (explaining that hotel
16   loan kickback scheme affected Mid–City Bank, which made a $6.5 million
17   construction loan, because "it obviously would not have made [the loan] if it
18   believed the risks associated with the loan outweighed the expected payoff. . . .
19   Mid–City never would have been exposed to the risks of its loan absent [the
20   defendant's] scheme <u>because it never would have made the loan</u>" (emphasis
21   added)); <u>United States v. Haroon</u>, 874 F.3d 479, 485 (6th Cir. 2017) (where
22   "central inquiry under § 1425(a) [fraudulent procurement of naturalization] is 'how
23   knowledge of the real facts would have affected a reasonable government official' .
24   . . [w]itnesses for the government may testify that information would have affected
25   a reasonable officer's naturalization decision"); <u>Bell v. Cameron Meadows Land</u>
26   <u>Co.</u>, 669 F.2d 1278, 1282 (9th Cir. 1982) (securities fraud case; sufficient showing

27
28       [3]      For this reason, the cases defendant cites regarding hypothetical questions
     posed to experts are inapposite.  (Mot. at 6.)

of materiality based on "[plaintiff's] testimony to the effect that she <u>would have</u> <u>acted differently had she known</u> of the cooperative relationship between Arnold and Santa Fe.  Other tendering shareholders testified to the same effect." (emphasis added)); <u>cf.</u> <u>Rivera v. Philip Morris, Inc.</u>, 395 F.3d 1142, 1154 (9th Cir. 2005) (affirming dismissal of fraudulent concealment claim where "[t]he record is void of any evidence that [the fraud victim] would have acted differently if the omitted information had been disclosed").  The reason such testimony is routinely admitted is because it is the most direct way to answer a material question of ordinary meaning by a person with relevant knowledge.  There is no basis to keep it from the jury.

## IV.   CONCLUSION

Defendant's motion should be denied.

**SZNW'S REPLY**

The government's proposed testimony from the EWB witnesses is improper lay opinion testimony under Fed. R. Evid. 701.  Whether EWB might sustain a loss due to the so-called "true nature" of the collateral requires specialized knowledge based on training, education, and experience.  The government has not designated the EWB employees as experts and, based on their pre-indictment interviews, it is unlikely they could qualify as such on this issue.

Instead of conceding that the "risk of loss element" requires expertise, the government claims that when the Court denied SZNW's prior motion to dismiss count 2 on statute of limitations grounds, the Court already resolved this issue and that the "law of the case" doctrine precludes further consideration.   The government is twice wrong.  First, the Ninth Circuit has made clear that the "law of the case" doctrine is "wholly inapposite" when a district court revisits a ruling in a case over which it retains jurisdiction.  *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001). *See also Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (for discretionary law of case doctrine to apply, "the issue in question must have been decided explicitly or by necessary implication in the previous disposition") (cleaned up).[4]  Second, as the Court made clear in its ruling, SZNW's prior motion addressed whether the FSI sufficiently pled the "risk of loss" element in light of the statute of limitations.

---

[4]      In denying SZNW's motion to dismiss, the Court relied on the government's representation that EWB witnesses had previously stated that had they known of the "true nature" of the collateral, the bank would not have issued the loan as it would have placed the bank at risk of a financial loss. But the transcripts of those interviews make clear that this representation was a gross exaggeration – as the attached exhibits show, EWB employees actually stated that they do not ask their clients about the nature of the collateral, adding that had they been told the collateral was a bribe (a far-fetched hypothetical), the bank would not have issued the loan or otherwise engaged in illegal activity.

(RT 1/7/2022 at 32.)  The instant *in limine* motion challenges the evidentiary basis for one aspect of the EWB witnesses' anticipated testimony.  While both motions concern Huang's collateral for the loan, they concern different facts, standards, and analyses.

Moreover, the questions the government proposes to ask bank witnesses – whether they knew the source of the collateral and what they would have done had they known the collateral was a bribe – are not relevant to or probative of the "risk of loss" element.  Here, the government confuses the *materiality* element required in fraud cases – that is, whether a statement made or a fact omitted had a natural tendency to influence, or was capable of influencing, a person to part with money or property – with the element it must prove to extend the statute of limitations – whether the loan *affected a financial institution* by creating a "new or increased risk of loss."  *Compare Neder v. United States*, 527 U.S. 1, 22-23 (1999) (materiality of falsehood must be proved in prosecution under bank, mail, and wire fraud statutes) with *United States v. Stargell*, 738 F.3d 1018, 1022-23 (9th Cir. 2013) (defining effect on a financial institution for statute of limitations purposes as requiring proof of a new or increased risk of loss).[5]

The cases highlighted by the government illustrate this materiality/risk of loss distinction. In *Rotteveel*, the Ninth Circuit briefly addressed a sufficiency claim in a case involving a mortgage fraud scheme where the defendant was convicted of mail fraud affecting a financial institution. *See* 703 Fed.Appx. 518 (9th Cir. 2017). The government was required to prove both (1) materiality – that is,

---

[5]      While the government will be required to prove materiality in the honest services counts – that the defendant's *act of bribery* was material – this is a different element than the materiality issue that the government seeks to address here – whether a bank loan application contained a statement that was material to the *bank's issuance of the loan*. *Compare* ECF  584, *940 Hill/Lee* Court's Instruction No. 21(honest services fraud materiality) with Ninth Circuit Jury Instruction 8.127 (bank fraud materiality)



that the defendant's misstatements were capable of influencing a reasonable bank lender, *and* (2) that the scheme affected a financial institution by exposing it to a new or increased risk of loss. *Id.* at 519.  In *Rotteveel*, however, the evidence proving (1) and (2) overlapped. The bank had overfunded the loan based on the defendant's misstatements about the value of the property and the borrower's income and assets. Evidence that the bank would not have issued the loan had it known the property was worth much less than had been represented and that the borrower's actual income/assets was less than what was represented -- showed *both* (1) that the misstatements were capable of influencing the bank's decisions (materiality) *and* (2) that the bank was subject to an increased risk of loss because it lent more than 100 percent of the property's value to a borrower with insufficient income and assets (effect on a financial institution). *Id.* This latter obviously shows a potential risk of loss to the bank under the statute because the bank would not be able to sell the property to recoup the loan if the buyer, who likely could not repay the loan because his income/assets were not as stated, defaulted.

The government seizes on the fact that in *Rotteveel*, the effect on a financial institution element was proved by the question "Would you have issued the loan had you known that the property was worth less than the loan and that the buyer's income and assets were misrepresented?" But the reason that question was relevant in *Rotteveel* was because, pursuant to the facts of that case, the answer showed both materiality *and* how the bank was subject to a new or increased risk of loss because the borrower was likely to default. That is not true of the loan issued by East West Bank, which was fully – indeed, overly – collateralized. The government has to show that there was some increased risk that the bank would lose money – that is, that the collateral would not be available if Huizar defaulted on the loan. The questions the government seeks to pose to the East West Bank witnesses are not probative of that question.

1    In *Serpico*, the Seventh Circuit examined a hotel loan kickback scheme

2  where Mid-City Bank made a short-term $6.5 million construction loan guaranteed

3  by funds which, unbeknownst to the bank, defendant had misappropriated from a

4  pension fund. 320 F.3d at 695. Under the terms of the loan, the collateral would be

5  returned to the fund if the hotel was not completed on time and under budget –

6  leaving the bank holding a long-term loan it didn't want -- and the fact that the

7  construction project was funded by kickbacks increased the risk of this happening:

8  "Certainly a construction project is more likely to be delayed when those running it

9  and putting up the money for it are doing so illegally, making them subject to the

10  disruption of investigation and arrest at any time." *Id*. The court thus rejected the

11  defendant's sufficiency challenge to the "affecting a financial institution" element.

12  *Id*.

13    The government cites *Serpico* for the proposition that it can prove risk of

14  loss by showing the bank would not have made the loan. *See supra* at 10. But the

15  court used that particular turn of phrase in response to the *defendant's* argument

16  that the bank would have made the loan anyway, despite the risk. The Seventh

17  Circuit rejected that argument -- the government was required to prove increased

18  risk of loss to the bank, and it did this by showing how the defendant's scheme

19  could have delayed the project, causing the collateral on which the bank depended

20  to disappear.

21    In sum, to prove whether  Huang's collateral affected a financial institution,

22  the government should not be permitted to rely on EWB witnesses who lack the

23  expertise necessary to answer this question.

24  ///

25  ///

26  ///

27

28



1    DATED: August 29, 2022                    RICHARD M. STEINGARD
2                                              Law Offices of Richard M. Steingard
3
4                                         By:  /s/
5                                              RICHARD M. STEINGARD
                                               Attorney for Defendant Shen Zhen
6                                              New World I, LLC
7    DATED: August 29, 2022                    TRACY L. WILKINSON
8                                              United States Attorney
9
10                                        By:  /s/
11                                             MACK JENKINS
                                               SUSAN HAR
12                                             CASSIE PALMER
                                               JAMARI BUXTON
13                                             Assistant United States Attorneys
14
15                                             Attorneys for Plaintiff
16                                             UNITED STATES OF AMERICA
17
18
19
20
21
22
23
24
25
26
27
28

## <u>DECLARATION OF RICHARD M. STEINGARD</u>

I, Richard M. Steingard, state and declare as follows:

1.      I am an attorney licensed to practice in the state of California and before this Court.  I represent Shen Zhen New World I, LLC ("SZNW") in the above-pending matter and submit this declaration in support of the motion *in limine* to exclude evidence of Jose Huizar and George Esparza's acts of concealment.

2.      SZNW moves this Court for an order excluding the admission of improper "risk of loss" testimony by East West Bank employees.  The First Superseding Indictment ("FSI") alleges that the collateral/loan transaction between Wei Huang, Jose Huizar, and East West Bank "affected a financial instutition." While the government may attempt to prove this allegation, they should not be permitted to do so by asking unknowledgeable bank employees whether the bank would have accepted the collateral and extended the loan had it known the "true nature" of the alleged corrupt relationship between Huang and Huizar.

3.      Counsel for both parties have met and conferred about this motion *in limine*. After discussing the matter, we were unable to agree on what would be proper questions for the EWB witnesses or whether they needed to be experts or lay witnesses.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of August, 2022 in Los Angeles, California.


_____
Richard M. Steingard

1

2                 **LOCAL RULE 5-4.3.4 ATTESTATION**

3         I attest and certify that all other signatories listed, and on whose behalf this

4 filing is submitted, concur with the filing's content and have authorized the filing.

5

6  DATED: August 29, 2022      By: _____

7                           RICHARD M. STEINGARD

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW
OFFICES OF
RICHARD M.
STEINGARD