Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone: (213) 260-9449
Facsimile: (213) 260-9450

Attorney for Defendant
Shen Zhen New World I, LLC

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR-20-326(A)-JFW |
|---|---|
| Plaintiff, | **JOINT MOTION *IN LIMINE* NO. 10: SHEN ZHEN NEW WORLD I, LLC'S MOTION TO EXCLUDE EVIDENCE OF JOSE HUIZAR'S ALLEGED MONEY LAUNDERING; DECLARATION OF RICHARD M. STEINGARD** |
| v. | |
| SHEN ZHEN NEW WORLD I, LLC, | |
| Defendant. | |
| | Date: September 23, 2022 |
| | Time: 8:00 a.m. |
| | Crtrm: 7A |
| | Trial Date: October 25, 2022 |
| | Assigned to Hon. John F. Walter |

LAW
OFFICES OF
RICHARD M.
STEINGARD

i

# <u>TABLE OF CONTENTS</u>

**Identification of Matters in Dispute** ......................................................1

**SZNW's Motion** ...................................................................................2

I.    INTRODUCTION ...........................................................................3

II.   STATEMENT OF RELEVANT FACTS .............................................4
      A.   Bank Deposits of Cash into Huizar's Relatives' Accounts ..................4
      B.   The November 2018 Seizure of Cash at Huizar's Home ....................16

III.  ARGUMENT .................................................................................16
      A.   The Money Laundering Evidence is Irrelevant and Inadmissible........16
      B.   Evidence of Huizar's Money Laundering is Substantially
           More Prejudicial than Probative ..................................................17

**Government's Opposition** ........................................................................19

I.    INTRODUCTION ...........................................................................19

II.   RELEVANT FACTS .......................................................................20
      A.   Huizar's Receipt of Cash from Defendant ......................................21
      B.   Huizar's Laundering of Cash from Defendant ..................................23

III.  ARGUMENT .................................................................................25
      A.   Evidence of Huizar's Concealment of Cash Payments
           He Received from Defendant Is Relevant and Admissible ................25
           1.   The Concealment/Money Laundering Evidence Has
                Sufficient Foundation Under Rule 104(b).................................25
      B.   Evidence of Huizar's Concealment of Cash Payments Is Relevant and
           Admissible .............................................................................28
           1.   The Cash in Huizar's Closet Is Admissible................................28
           2.   The Acts of Concealment Are Admissible as a Charged
                Part of Defendant's Scheme ..................................................28

IV.   CONCLUSION ..............................................................................33

**SZNW'S Reply** .....................................................................................34

**Declaration of Richard M. Steingard**................................................................38

LAW
OFFICES OF
RICHARD M.
STEINGARD

## <u>TABLE OF AUTHORITIES</u>

**<u>FEDERAL CASES</u>**

*Grunewald v. United States*,
    353 U.S. 391 (1957)........................................................................31, 33

*Huddleston v. United States*,
    485 U.S. 681 (1988)................................................................................26

*Robinson v. United States*,
    33 F.2d 238 (9th Cir. 1929) ..................................................................30

*United States v. Boone*,
    628 F.3d 927 (7th Cir. 2010) ........................................................... 29-30

*United States v. Armstrong*,
    782 F.3d 1028 (8th Cir. 2015) ......................................................... 26-27

*United States v. Bryant*,
    885 F. Supp. 2d 749 (D.N.J. 2012) ......................................... 3, 16, 30, 32-34

*United States v. Caraway*,
    534 F.3d 1290 (10th Cir. 2008) ..............................................................33

*United States v. Diez*,
    515 F.2d 892 (5th Cir. 1975) .................................................................32

*United States v. Flores*,
    679 F.2d 173 (9th Cir. 1982) .................................................................26

*United States v. Gleason*,
    766 F.2d 1239 (8th Cir. 1985) ...............................................................32

*United States v. Lothian*,
    976 F.2d 1257 (9th Cir. 1992) ...............................................................30

*United States v. Mackey*,
    571 F.2d 376 (7th Cir. 1978) .................................................................32

LAW
OFFICES OF
RICHARD M.
STEINGARD

*United States v. Mosberg*,
    866 F. Supp. 2d 275 (D.N.J. 2011) ...................................................30

*United States v. Sullivan*,
    522 F.3d 967 (9th Cir. 2008) ........................................................29

*United States v. Upton*,
    559 F.3d 3 (1st Cir. 2009).............................................................31

*United States v. Zemek*,
    634 F.2d 1159 (9th Cir. 1980) ......................................................26

**<u>FEDERAL RULES OF EVIDENCE</u>**

Fed. R. Evid. 104 ............................................................... 3, 17, 19, 25-27

Fed. R. Evid. 403 .........................................................................3, 17, 33

LAW
OFFICES OF
RICHARD M.
STEINGARD

# TABLE OF EXHIBITS

| Govt Trial Ex. # | Exhibit | Description | Page |
|---|---|---|---|
| 352 | A | 11/7/2018 photographs of currency found in closet at residence of Jose Huizar and Richelle Rios during execution of search warrant | 16:7 |
| n/a[1] | 1 | Table of Jose Huizar & Family Transactions | 5:7 |

---

[1]      Subject to the Court's ruling on this motion, the government intends to introduce a version of this table as a summary chart at trial and will produce that summary chart consistent with the Court's deadline for summary charts.

LAW
OFFICES OF
RICHARD M.
STEINGARD

## **IDENTIFICATION OF MATTERS IN DISPUTE**

**Defendant's Position:** SZNW moves the Court to exclude Jose Huizar's alleged money laundering activities, including cash financial transactions he conducted with his relatives and cash seized from his house.   This motion is a corollary to Motion *In Limine* 1, which seeks to exclude Huizar and George Esparza's acts of concealment.  (ECF 642.)  Here, the government cannot establish the necessary foundation for this evidence—that is, that SZNW or Wei Huang were aware of Huizar's alleged money laundering.  Further, examining the amounts of gambling chips that Huang allegedly gave Huizar on their Las Vegas trips, the cash Huizar allegedly came home with and gave his relatives could not have come solely from those trips; the balance must have come from other sources, including other schemes that he was involved in, known and unknown to the government.  Thus, the admission of his alleged money laundering would permit the government to improperly introduce "other schemes" evidence.

**Government's Position:** This MIL is largely redundant of MIL #1.  Evidence that Jose Huizar laundered a portion of the illegal benefits he received from defendant and its owner, Wei Huang, by (a) directing family members to deposit cash into their accounts and then write checks to Huizar or pay his expenses, and (b) hiding $129,000 in cash at his home (which acts defendant labels "money laundering evidence"), is powerful relevant evidence of central matters in this case.  These acts of concealment tend to show that the L.A. Grand Hotel bribery scheme alleged in the First Superseding Indictment existed; that defendant and Huang acted with corrupt intent when they gave various benefits to Huizar, a critical issue in this case; and that Huizar knew the money was for a corrupt purpose.  For these reasons, the government specifically alleged in the FSI that the scheme's means and methods included various acts of concealment.

As co-schemers, Huizar's acts of concealment, which furthered the scheme, are admissible against defendant.  And contrary to defendant's assertion, the

1  government will lay a proper foundation for the money laundering evidence at

2  trial, as there is substantial independent evidence from which a juror reasonably

3  could conclude that the money Huizar laundered came from defendant and Huang.

4  Defendant's arguments thus address the weight, not the admissibility, of the

5  evidence.

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

2

3

4

**JOINT MOTION *IN LIMINE* NO. 10:**

**SHEN ZHEN NEW WORLD I, LLC'S MOTION TO EXCLUDE**

**EVIDENCE OF JOSE HUIZAR'S ALLEGED MONEY LAUNDERING**

## I.      INTRODUCTION

5

6

7

8

9

10

11

12

13

14

Shen Zhen New World I, LLC ("SZNW") moves this Court for an order excluding testimony or exhibits of Jose Huizar's alleged money laundering.  The government will present evidence at trial that Huizar went to Las Vegas with SZNW's owner, Wei Huang, and that at least on some occasions Huizar returned to Los Angeles with cash.  These facts are not disputed.  According to the government, *after* Huizar returned to Los Angeles, he laundered whatever cash he returned with through his relatives by having them deposit it into their accounts and then write checks to him or paid his expenses.  Further, the government claims that the agents' November 2018 seizure of almost $130,000 in cash from Huizar's house was also from his Las Vegas trips.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SZNW objects to this evidence.  First, the government will not be able to establish a foundation for its claim that the Las Vegas money was laundered through relatives and/or found at his house.  Absent such a foundation, the evidence is irrelevant.  Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.").  Second, evidence of Huizar's alleged money laundering, including hiding money at his house, are acts of concealment. Evidence of an alleged *bribee's* attempts to conceal his actions are irrelevant as to the alleged *briber*.  *United States v. Bryant*, 885 F. Supp. 2d 749, 761-62 (D.N.J. 2012).  Third, any evidence of Huizar's alleged money laundering—his concealment of alleged ill-gotten gains—is substantially more prejudicial than it is probative.  Fed. R. Evid. 403.  At most, Huizar's alleged money laundering would show *his* consciousness of guilt, but a jury would likely (but improperly) infer that

consciousness of guilt to *SZNW*.  For these reasons, evidence of Huizar's alleged money laundering, including funds seized from his house, should be excluded.

## II.    STATEMENT OF RELEVANT FACTS

Beginning in March 2013 and sporadically continuing to February 2017, Wei Huang invited Jose Huizar, George Esparza, and numerous other guests to Las Vegas for what amounted to all-expenses-paid vacations.  Because Huang was a big-dollar gambler (a "big whale" in casino parlance), the casinos "comped" Huang and his guests for virtually all expenses, including flights on the casino's jets, expensive hotel villas and rooms, elaborate meals, golf outings, spa treatments, and club and show tabs.  Huang, as part of his hosting responsibilities, provided his guests with casino chips in varying amounts with which they could gamble and allowed his guests to keep whatever was leftover at the end of the trip.

Two government witnesses, George Esparza and Ricky Zheng, provide different accounts of how much Huang gave Huizar on each trip.  According to Esparza, it was always between $10,000 and $20,000.  According to Zheng, the amounts varied from $2,000 to $20,000, depending upon Huang's mood and whether he (Huang) was winning.  .  In the FSI, the government chose Esparza's version or whatever the casino records showed, whichever was higher.

For purposes of this motion, SZNW does not challenge the FSI's amounts indicating how much Huang *gave* Huizar in casino chips.  SZNW does challenge the amount Huizar possessed at the end of each trip, *when he returned to Los Angeles*.  The funds that Huizar possessed *when he came home* constitute what he allegedly laundered and concealed, and are the focus of this motion.

### A.    Bank Deposits of Cash into Huizar's Relatives' Accounts

According to the First Superseding Indictment ("FSI"), during the period when Huizar received casino chips from Huang in Las Vegas (2013-2017), Huizar's wife Richelle Rios, his mother Isidra Huizar, and his brother Salvador Huizar deposited cash into their personal accounts, wrote checks to Huizar, and/or

paid his some of his expenses.  (Count 1, Overt Acts ("OA") 367-428.)  During this time period, the FSI alleges that Huizar received cash from Businessperson A and possibly others.[2]

In fact, there is no evidence that the money deposited into the relatives' accounts came from the Las Vegas money; indeed, an analysis of the allegations in the FSI appears to refute any such claim. To make this point, SZNW refers to the Court to a chart, attached as Exhibit 1 to this motion.[3]  This chart reflects the government's allegations regarding (1) Huizar's alleged receipt of casino chips from Huang on his Las Vegas trips; (2) Huizar's receipt of cash from Businessperson A; (3) cash deposits by Huizar's wife and relatives into their respective accounts; and (4) checks signed by Huizar's relatives to Huizar or for the payment of Huizar's expenses.  (*Id.*)  This chart demonstrates that the cash deposits into the accounts of Huizar's relatives do not correlate to the amount of casino chips that Huizar allegedly received from Huang in Las Vegas, much less any amounts of cash that Huizar possessed when he returned from Las Vegas.

---

[2]      The government's trial witness list includes Richelle Rios and an FBI forensic accountant, but not Salvador Huizar, Isidra Huizar, or Businessperson A. Further, the government's trial exhibit list does not include any of the bank records for Ms. Rios, Salvador Huizar, Isidra Huizar, or Businessperson A. After SZNW provided this MIL to the government, they advised that they would call Isidra Huizar and Salvador Huizar as witnesses at trial and were adding the bank records as exhibits.  This latter representation is the subject of the pending motion regarding the timeliness of the government's exhibits. (ECF 621.)

[3]      After SZNW provided this MIL to the government, and received the government's opposition, the government advised that there were numerous errors and omissions among the figures in the FSI.  (Declaration of Richard M. Steingard at ¶¶ 4-5.)  The government provided a spreadsheet containing what it claims are the accurate figures.  (*Id.*)  Rather than provide the Court with two different sets of figures—those in the FSI and those in the government's spreadsheet—SZNW will rely on the government's spreadsheet for purposes of this motion.

For instance, according to the chart, between March 2013 and April 2014, Huizar made two trips to Las Vegas where Huang allegedly gave him $10,000 on each trip, for a total of $20,000.  During this same 13-month time period, Isidra and Salvador Huizar deposited $12,500 and wrote checks to, or on behalf of, Huizar totaling $60,000.

| OA[4] | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/Checks to Huizar |
|---|---|---|---|---|
| 4 | 3/22/13 to 3/24/13 | $10,000.00 | | |
| n/a | 11/15/13 | | $5,000.00 | |
| 401 | 11/26/13 to 11/27/13 | | | $15,000.00 |
| 5 | 12/30/13 to 1/2/14 | $10,000.00 | | |
| 367 | 1/8/14 | | | $15,000.00 |
| 402 | 1/8/14 | | | $10,000.00 |
| n/a | 1/7/14 | | $1,000.00 | |
| n/a | 1/8/14 | | $500.00 | |
| 367 | 1/8/14 | | | $15,000.00 |
| n/a | 4/1/14 | | $6,000.00 | |
| 368 | 4/7/14 | | | $5,000.00 |
| **Total** | | **$20,000.00** | **$12,500.00** | **$60,000.00** |

Along the same lines, for the balance of 2014 (May thru December), Huizar made three trips to Las Vegas, where Huang allegedly gave him a total of $33,500

---

[4]     The references to "n/a" mean that the corresponding dates, transactions, and amounts are not referenced in the FSI.

LAW OFFICES OF RICHARD M. STEINGARD

in casino chips.  Yet, during this 7-month period, Isidra and Salvador Huizar deposited $27,000 in cash to their accounts but withdrew $30,000 cash—leaving a net of $3000 in cash—and wrote $41,900 in checks to, or on behalf of, Huizar.

| OA# | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/Checks to Huizar |
|---|---|---|---|---|
| 6 | 6/7/14 to 6/8/14 | $10,000.00 | | |
| 7 | 6/14/14 to 6/15/14 | $10,000.00 | | |
| 403 | 7/10/14 | | | $10,000.00 |
| | | | | |
| 8 | 8/22/14 to 8/25/14 | $13,500.00 | | |
| 404 | 8/27/14 | | | $10,000.00 |
| n/a | 9/18/14 | | $15,000.00 | |
| n/a | 9/23/14 | | ($30,000.00) | |
| 369 | 11/3/14 | | $5,000.00 | |
| 370 | 11/18/14 | | | $4,900.00 |
| 371 | 12/3/14 | | $7,000.00 | |
| 372 | 12/11/14 | | | $7,000.00 (Credit card) |
| 405 | 12/23/14 | | | $10,000.00 (Legal fees) |
| **Total** | | **$33,500.00** | **($3,000.00)** | **$41,900.00** |

LAW OFFICES OF RICHARD M. STEINGARD

Similarly, in 2015, Huang allegedly gave Huizar $60,000 in casino chips. [5] During this 12-month period, Isidra and Salvador Huizar made cash deposits totaling $39,400, but wrote checks to Huizar or paid his expenses totaling approximately $**61,165.02**.

| OA # | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/Checks to Huizar |
|---|---|---|---|---|
| 373 | 3/12/15 | | $10,000.00 | |
| 374 | 3/12/15 | | | $10,000.00 |
| 9 | 3/13/15 to 3/14/15 | $20,000.00 | | |
| 10 | 3/28/15 to 3/30/15 | $10,000.00 | | |
| 375 | 4/8/15 | | $10,000.00 | |
| 376 | 4/21/15 | | | $4,272.66 (EWB loan interest) |

---

[5]      The above chart omits one gambling trip.  On July 7, 2015, Huang allegedly gave Huizar $65,000 in casino chips.  As outlined in MIL 1, according to casino records, Huizar promptly lost approximately $47,000 at the baccarat table.  (ECF 642 at 4-5, 12-13.)  Shortly thereafter, Huizar left the baccarat table, leaving his remaining chips, and went to a blackjack table in another part of the casino.  (*Id.*) There, a casino employee asked that Huizar sign a Politically Exposed Person ("PEP") form.  (*Id.*)  Huizar declined to do so and was escorted from the gambling area and banned from gambling.  (*Id.*)  Huang subsequently played the chips that Huizar had left at the baccarat table.  (*Id.*)   Because there is no evidence Huizar possessed any chips or money when he returned to Los Angeles, we have excluded this event from the above chart.

| OA # | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/Checks to Huizar |
|---|---|---|---|---|
| 377 | 4/22/15 | | $2,300.00 | |
| 378 | 4/23/15 | | | $8,000 (Credit card) |
| 11 | 5/1/15 to 5/3/15 | $10,000.00 | | |
| 379 | 7/3/15 | | $9,000.00 | |
| 380 | 7/5/15 | | | $2,895.91 (EWB loan interest) |
| n/a | 7/5/15 | | | $2,640.51 (Taxes) |
| 381 | 7/13/15 | | | $2,492.45 (Credit card) |
| 382 | 7/14/15 | | | $2,460.51 (Property taxes) |
| 383 | 8/19/15 | | $8,100.00 | |
| 384 | 8/19/15 | | | $2,895.92 (EWB loan interest) |
| 386 | 8/19/14 | | | $3,042.47 (Credit card) |
| 385 | 8/24/15 | | | $1,844.10 (Credit card) |
| 13 | 10/28/15 to 10/30/15 | $10,000.00 | | |
| 406 | 11/16/15 | | | $6,000.00 |
| 407 | 11/16/15 | | | $4,915.92 (Credit card) |
| 14 | 12/11/15 to 12/13/15 | $10,000.00 | | |

LAW OFFICES OF RICHARD M. STEINGARD

| OA # | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/Checks to Huizar |
|---|---|---|---|---|
| 408 | 12/30/15 | | | $9,000.00 |
| 388 | 12/31/15 | | | $704.57 (Credit card) |
| **Total** | | **$60,000.00** | **$39,400.00** | **$61,165.02** |

In 2016, Huang allegedly gave Huizar $71,000 in casino chips.  During this 12-month period, Isidra and Salvador Huizar and Richelle Rios deposited a total of $**39,600.00** in cash and wrote checks to Huizar or paid his expenses totaling $**85,752.44**.

| OA# | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/Checks to Huizar | Richelle Rios Cash Deposits |
|---|---|---|---|---|---|
| 387 | 1/4/16 | | $2,900.00 | | |
| 388 | 1/6/16 | | | $704.57 (Credit card) | |
| 389 | 1/23/16 | | | $2,895.91 (EWB loan interest) | |
| 391 | 1/23/16 | | | $7,730.22 (Credit card) | |
| 390 | 1/25/16 | | $13,000.00 | | |

| OA# | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/Checks to Huizar | Richelle Rios Cash Deposits |
|---|---|---|---|---|---|
| 15 | 2/12/16 to 2/13/16 | $10,000.00 | | | |
| 16 | 2/26/16 to 2/28/16 | $10,000.00 | | | |
| n/a | 3/10/16 | | $9,000.00 | | |
| n/a | 3/14/16 | | | $7,075.61 (Credit card) | |
| n/a | 3/21/16 | | | $1,471.70 (EWB loan interest) | |
| 419 | 4/5/16 | | | | $500.00 |
| n/a | 4/27/16 | | | $5,859.72 (Credit card) | |
| n/a | 4/27/16 | | | $2,848.44 (EWB loan interest) | |
| 17 | 4/30/16 to 5/2/16 | $10,000.00 | | | |
| 18 | 5/5/16 to 5/7/16 | $10,000.00 | | | |
| 19 | 5/13/16 to 5/16/16 | $10,000.00 | | | |
| n/a | 6/22/16 | | | $8,091.87 (Credit card) | |
| 420 | 6/23/16 | | | | $400.00 |

LAW OFFICES OF RICHARD M. STEINGARD

| OA# | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/ Checks to Huizar | Richelle Rios Cash Deposits |
|---|---|---|---|---|---|
| 20 | 7/14/16 to 7/17/16 | $10,000.00 | | | |
| n/a | 7/26/16 | | | $6,206.25 (Credit card) | |
| 21 | 8/5/16 to 8/7/16 | $11,000.00 | | | |
| 421 | 8/16/16 | | | | $500.00 |
| | | | | | |
| 422 | 9/15/16 | | | | $500.00 |
| 409 | 9/22/16 | | | $2,836.52 (Credit card) | |
| 410 | 9/22/16 | | | $7,263.51 (EWB loan interest) | |
| 411 | 11/9/16 | | | $5,451.68 (Credit card) | |
| n/a | 11/9/16 | | | $2,621.91 (Quicken loans) | |
| 423 | 11/9/16 | | | | $800.00 |
| 424 | 12/2/16 | | | | $1,000.00 |
| 425 | 12/6/16 | | | | $500.00 |
| 426 | 12/21/16 | | | | $500.00 |
| 412 | 12/23/16 | | $10,000.00 | | |

LAW OFFICES OF RICHARD M. STEINGARD

| OA# | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/ Checks to Huizar | Richelle Rios Cash Deposits |
|---|---|---|---|---|---|
| 413 | 12/23/16 | | | $24,694.53 (Party) | |
| **Total** | | **$71,000.00** | **$34,900.00** | **$85,752.44** | **$4,700.00** |

In 2017, Huang allegedly gave Huizar $10,000 in casino chip.  In addition, during this 12-month period Businessperson A gave Huizar $85,000 in cash. (Count 1, OA 304, 307-8, 312, 316, 325, 339.)  During this same period, Isidra and Salvador Huizar and Ms. Rios deposited a total of $60,700 cash into their accounts and wrote checks to Huizar or paid his expenses totaling $**51,427.51**.

| OA # | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/ Checks to Huizar | Richelle Rios Cash Deposits | Business person A Cash to Huizar |
|---|---|---|---|---|---|---|
| 304 | 01/2017 | | | | | $10,000 |
| 427 | 1/30/17 | | | | $500.00 | |
| 307 | 02/2017 | | | | | $10,000 |
| 22 | 2/4/17 to 2/6/17 | $10,000.00 | | | | |
| 428 | 2/8/17 | | | | $200.00 | |

LAW OFFICES OF RICHARD M. STEINGARD

| OA # | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/ Checks to Huizar | Richelle Rios Cash Deposits | Business person A Cash to Huizar |
|---|---|---|---|---|---|---|
| 414 | 2/17/17 | | $10,000 | | | |
| 415 | 2/17/17 | | | $7,263.52 (Credit card) | | |
| 416 | 2/27/17 | | $6,000.00 | | | |
| 308 | 03/2017 | | | | | $10,000 |
| 417 | 3/10/17 | | $3,000.00 | | | |
| 418 | 3/13/17 | | | $7,464.99 (Credit card) | | |
| n/a | 4/13/17 | | | $5,000.00 (Credit card) | | |
| 312 | 04/2017 | | | | | $10,000 |
| 392 | 4/27/17 | | $9,000.00 | | | $10,000 |
| 393 | 4/27/17 | | | $2,900.07 (EWB loan interest) | | |
| n/a | 5/5/17 | | | $2,192.00 (Credit card) | | |
| 316 | 05/2017 | | | | | $10,000 |
| 325 | 06/2017 | | | | | $10,000 |

LAW OFFICES OF RICHARD M. STEINGARD

| OA # | Date(s) | Huizar Gambling Chips Received in Las Vegas | Isidra & Salvador Cash Deposits (Withdrawals) | Isidra & Salvador Payment of Huizar Expenses/ Checks to Huizar | Richelle Rios Cash Deposits | Business person A Cash to Huizar |
|---|---|---|---|---|---|---|
| 394 | 6/2/17 | | $9,000.00 | | | |
| 395 | 6/8/17 | | | $12,755.11 (Credit card) | | |
| 396 | 6/23/17 | | | $2,895.91 (EWB loan interest) | | |
| 397 | 6/27/17 | | $6,000.00 | | | |
| 398 | 7/19/17 | | $8,000.00 | | | |
| 399 | 7/27/17 | | | $10,955.91 (Credit card) | | |
| 400 | 9/19/17 | | $9,000.00 | | | |
| 339 | 9/24/18 | | | | | $15,000 |
| Total | | $10,000.00 | $60,000.00 | $51,427.51 | $700.00 | $85,000 |

As is apparent, the amounts of Huizar's alleged receipt of casino chips from Huang do not correlate with his relatives' cash deposits, their checks to Huizar or their payments of Huizar's expenses.  Further, for the most part, there is no *temporal* correlation between the Las Vegas trips and the various cash deposits.  In other words, the dates of Huizar's Las Vegas trips rarely align with his relatives' cash deposits.  In sum, the government's evidence does not provide a foundation

LAW OFFICES OF RICHARD M. STEINGARD

for—and in fact, appears to refute—the claim that the money Huizar allegedly laundered through his relatives came from the funds he brought back from Las Vegas.

B.   The November 2018 Seizure of Cash at Huizar's Home

On November 7, 2018, FBI agents executed a search warrant at Huizar's home and seized approximately $129,000 in cash hidden in a closet.  (Govt. Ex. 352, Casino_2084639, 2084634 & 2084667, attached as Exhibit A.)[6]  This seizure occurred almost *two years* after Huizar's last trip to Las Vegas with Huang, which occurred in February 2017.  As reflected in the above chart, during the period between Huizar's last Las Vegas trip (February 2017, when he is alleged to have received $10,000 in casino chips) and the seizure of cash from his house (November 2018), Businessperson A gave Huizar at least $85,000 in cash, Isidra Huizar, Salvador Huizar and Richelle Rios deposited $60,700 in cash, and Salvador and Isidra Huizar paid Huizar's expenses totaling approximately $**51,427.51**. As is apparent, there is no correlation between the funds found in Huizar's house and the funds he theoretically *may have* returned with from Las Vegas.

III.   **ARGUMENT**

A.   The Money Laundering Evidence is Irrelevant and Inadmissible

Huizar's alleged laundering of cash that he brought home from Las Vegas, including any cash that he hid in his home closet, constitute acts of concealment that may be admissible against *Huizar* but are inadmissible against *SZNW*.  *See Bryant*, 885 F. Supp. at 761-62 (evidence of an alleged *bribee's* attempts to conceal his actions are irrelevant as to the alleged *briber*).[7]

---

[6]   In interviews with the government, Richelle Rios claimed to have no knowledge of these funds.

[7]   Legal arguments and case citations regarding the inadmissibility of Huizar's acts of concealment are presented in SZNW's motion *in limine* to exclude acts of

1    In addition, before being admitted at SZNW's trial, the government must
2    establish a foundation and clear connection between the Las Vegas money and the
3    funds that Huizar allegedly laundered or concealed.  Proof of such a connection is
4    a mandatory and foundational requirement.  FRE 104(b).  Absent such proof, the
5    laundered funds have no possible connection to SZNW and are irrelevant and
6    inadmissible.

7        Indeed, the allegations that Huizar funneled money through relatives'
8    accounts and hid cash in his closet constitute *his* separate crimes of money
9    laundering, structuring cash transactions to avoid Currency Transaction Report
10   reporting requirements, and tax evasion.  Unsurprisingly, Huizar—but not
11   SZNW—is charged with all three offenses.  (Counts 31-36, 41.)  Evidence of
12   Huizar's crimes is irrelevant to SZNW.  Fed. R. Evid. 401-402, 404.

13       B.    Evidence of Huizar's Money Laundering is Substantially More
14             Prejudicial than Probative

15       Whatever may be the minimal probative value of Huizar's money laundering
16   activities, it is substantially outweighed by its prejudicial impact, confusion, and
17   time-consuming nature.  Fed. R. Evid. 403.  By severing the trials, the Court noted
18   that the government's admission of other scheme evidence would be prejudicial
19   against SZNW.  Yet, if the government is permitted to introduce Huizar's alleged
20   money laundering activities, the defense would have to rebut this testimony by
21   showing that the funds at issue, including that seized from his home, came from
22   Huizar's involvement in other schemes unrelated to SZNW, such as his receipt of
23   cash from Businessperson A.  To avoid forcing the defense to make such an
24   election—either leave unchallenged the government's claim that all the laundered
25   cash came from the Las Vegas trips or show that Huizar's money laundering

26

27   concealment, MIL No. 1.  Rather than repeat them, they are incorporated herein by
28   reference.

1   activities were connected to other schemes involving other developers—evidence

2   of money laundering should be excluded.

1

## GOVERNMENT'S OPPOSITION

2

## I.   INTRODUCTION

3      Defendant Shen Zhen New World I, LLC ("defendant" or "SZNW") is

4 charged in the First Superseding Indictment ("FSI") with engaging in a scheme to

5 bribe former Councilmember Jose Huizar in connection with defendant's

6 redevelopment of the L.A. Grand Hotel, including by funneling large amounts to

7 cash to Huizar via gambling chips.  In Motion <u>in Limine</u> No. 11, defendant seeks

8 to exclude evidence that Huizar: (1) laundered a portion of the ill-gotten proceeds

9 he received from defendant through his family members by directing them to

10 deposit the cash into their accounts and then write checks to him or to pay his

11 expenses, in order to conceal the illicit source of the proceeds and evade detection,

12 and (2) hid a portion of the proceeds (approximately $129,000 in cash) in the closet

13 of his home, which the FBI later seized, which defendant labels "money laundering

14 evidence."

15      Defendant first argues that the Court should exclude this evidence under

16 Federal Rule of Evidence 104(b) claiming the government "will not be able to

17 establish a foundation" on a preliminary issue; that is, defendant claims the

18 government cannot "establish a clear connection" between this evidence and the

19 money defendant paid Huizar.  (Mot. at 1, 11.)  Not so.  There is substantial

20 independent evidence from which a juror reasonably could conclude (the standard

21 the Court must apply to this inquiry) that the cash Huizar laundered through family

22 members and hid in his closet was made up, in large part, of cash he received from

23 defendant.  As such, defendant's arguments merely address the weight, not the

24 admissibility, of this evidence.

25      Defendant further argues that evidence of Huizar's concealment and money

26 laundering is irrelevant and inadmissible, yet ignores that the government

27 <u>specifically alleged</u> in the FSI, and intends to prove at trial, that the L.A. Grand

28 Hotel bribery scheme's means and methods included the acts of concealment.  (<u>See</u>

FSI pp. 87-94, ¶ 43(7); pp. 102-03, ¶ 45.c.)  This evidence is highly relevant to elements the government must prove beyond a reasonable doubt for the honest services wire fraud and bribery counts, and is admissible as acts of concealment by a co-schemer in furtherance of the scheme.  Specifically, that Huizar sought to disguise the source of the money he received from defendant by laundering it through family members tends to prove the existence of the scheme and that Huizar knew the money was for a corrupt purpose (as benefits to influence his official acts).  Further, evidence that Huizar stored approximately $129,000 in cash in a closet at his home directly proves the scheme to defraud and bribery counts, in that the evidence will show that the cash was made up, in part, of payments defendant Huizar accepted from defendant.  Finally, Huizar's possession of an otherwise unaccounted for large sum of cash makes it more probable that he solicited and was willing to accept substantial financial benefits from defendant, including cash payments.

The Court should admit Huizar's acts of concealment.

## II.    RELEVANT FACTS

The government alleges in the FSI, and intends to prove at trial, that defendant, Huizar, and others engaged in a scheme to defraud the City of Los Angeles and its citizens of their right to honest services through bribery.  As a part of that scheme, the co-schemers concealed the scheme by, among other things, "(1) storing large amounts of cash in their residences; (2) providing cash to family members and associates; (3) directing payments to family members, associates, and entities to avoid creating a paper trail between the developers, their proxies and public officials; (4) using family members and associates to pay expenses; (5) depositing cash at ATMs and banks in amounts under $10,000 to avoid bank reporting requirements; [and] (6) failing to disclose payments and benefits received on Forms 700 and on tax returns."  (See FSI ¶ 45.c.)  As relevant to this Motion, Item (1) relates to Huizar's concealment of approximately $129,000 in cash in a

closet in his personal residence; this cash was made up, in part, of payments Huizar accepted from defendant as part of their scheme. Items (2) through (6) relate to Huizar's laundering of money he received, in part, from SZNW, through family his members.

### A. Huizar's Receipt of Cash from Defendant

At trial, the government will elicit testimony from George Esparza, Isidra Huizar, Salvador Huizar, and Richelle Rios,[8] and present financial summary evidence and other documentary evidence (e.g., text messages and bank records) that the relevant cash had a clear connection to defendant's payments to Huizar. The government anticipates George Esparza will testify that defendant, through its agents, gave Jose Huizar at least $10,000 to $20,000 in casino chips on each of their all-expense paid trips to Las Vegas. Huizar sometimes gambled with these casino chips, sometimes winning additional chips, and sometimes losing a portion of the original chips he received. Typically, throughout the trips, Huizar would cash out chips personally or would instruct someone else, like Esparza, to cash out the chips Huizar received from defendant. At times, Huizar did not cash out all the chips during the same trip, but instead took them back to Los Angeles to cash them out during a future visit to Las Vegas, or instructed Esparza to return to Las Vegas to cash out the chips on Huizar's behalf.

The value of the gambling chips that defendant provided to Huizar, as alleged in the FSI, is underlined conservative (inuring to the advantage of defendant), in that

---

[8] Defendant incorrectly claims that Isidra and Salvador Huizar are not on the government's witness list and that the money laundering evidence is not on the government's exhibit list. (Mot. at 2 n.2.) During the meet-and-confer process on the motions in limine, the government advised the defense that it would seek to admit the money laundering component of the case, which would include calling both witnesses at trial and admitting related bank record evidence. The chronology of the parties' meet-and-confers regarding the motions in limine and the emails documenting those efforts are set forth in the parties' joint filing regarding the government's exhibit and witness lists. (Dkt. No. 621.)

LAW OFFICES OF RICHARD M. STEINGARD

the FSI generally alleges defendant gave Huizar $10,000 in chips per trip (even though the actual range was at least $10,000 to $20,000). Despite Huizar's evasive maneuvers, and although Huizar was rarely required to present identification to cash out, the government's evidence also includes certain, preserved casino surveillance footage showing Huizar cashing out. Where the surveillance video confirmed that Huizar cashed out more than the conservative $10,000 estimate Esparza provided (e.g., the trips on August 22-24, 2014 ($13,5000); March 13-14, 2015 ($20,000); and August 5-7, 2016 ($11,0000)), the government adopted the higher amount in the FSI. Otherwise, the government adopted the lower, conservative estimate of $10,000.[9]

Contrary to the defense's suggestion, the government need not definitively show the exact amount of cash Huizar took home from each Las Vegas trip to lay an adequate foundation. The evidence will establish that Huizar received regular infusions of cash and financial benefits from defendant during their trips together to Las Vegas, as well as cash from an all-expenses paid trip to Australia.[10]

---

[9] To be clear: the FSI does not allege the amounts of cash Huizar actually took home from Las Vegas trips; rather, they reflect a conservative estimate of the financial benefits (i.e., gambling chips) that defendant conferred upon Huizar. For example, the FSI conservatively alleges that SZNW gave Huizar $10,000 in chips during the April 30 to May 2, 2016 trip. But Huizar could have gambled those chips and won, in which case he would have left with more cash than the value of the chips he received from SZNW; or Huizar could have gambled and lost, in which case he would have left with less cash than what he received.

[10] Defendant seeks to exclude other concealment conduct, including the Australia cash Huizar received from defendant and Huizar's failure to disclose all cash payments from defendant, in a separate motion (Def. MIL No. 1). The government advised defendant during the meet-and-confer process to consolidate these motions, as they all raise similar issues of fact and law. But defendant has persisted in its position that the Court consider this conduct in separate motions. Defendant's attempts to separate this evidence into discrete buckets serves to distort the overall picture necessary for understanding how Huizar's acts of concealment relate to the scheme to defraud and bribery charges.

The evidence will further show that Huizar, over this same period, was laundering cash through his relatives and into his personal accounts to pay off his bills. This is highly probative evidence that the infusions of cash Huizar received came, in large part, from defendant.

Moreover, analysis of the financial records will also establish that there was no legitimate source for the large amount of cash (all in $100 bills) that Huizar hid in his closet nor for the large amounts of cash (also all in $100 bills) that he gave his family members and then directed them to pay directly to him via personal checks or indirectly to him via payment of his debts. In other words, there is no evidence of corresponding cash withdrawals from any of Huizar's accounts, no evidence that he was liquidating assets, and no other evidence of any legitimate sources of cash.

B.    Huizar's Laundering of Cash from Defendant

The evidence will also establish certain patterns in Huizar's behavior following his receipt of cash from defendant.[11]

First, Huizar never deposited the cash he received from defendant directly into his bank accounts and never claimed it on Forms 700 or on tax returns. Instead, Huizar kept some cash hidden at home (as evidenced by the cash hidden in his closet when the FBI searched his home). The government anticipates that

---

[11] The government's chart corrects a few incorrect amounts that were alleged in the FSI and includes additional information that was not alleged in the FSI, like additional instances that Huizar's family members made cash deposits into their accounts or made payments on Huizar's behalf (which were not charged but occurred during and in furtherance of the scheme), as well as the Australia cash Huizar received from defendant over the relevant period. The government's table also highlights certain instances where the timing of Huizar's family's deposits and payments on Huizar's behalf correspond closely to, that is, within a few weeks, Huizar's return from a Las Vegas trip.

Esparza will testify that Huizar typically resisted keeping especially large amounts of cash at his home.[12]  For the cash not kept hidden at his home, Huizar gave some to family members whom he then directed to pay the money back to him or on his behalf, directly and indirectly.  Sometimes those distributions to family members and then back to Huizar occurred within a week of a Las Vegas trip (on at least eight occasions), sometimes within a few weeks (on at least eleven other occasions), and sometimes later.  As evidenced by text messages, Huizar held onto the cash until the time he provided some to his family members and directed them to write checks to him from their personal bank accounts or directly pay his expenses from their accounts.  The reasonable inference that the jury can draw is that Huizar did not immediately hand over all the cash to his family members to be laundered, but instead portioned it out over time when a need for money or to pay an expense arose.  The government anticipates Huizar's wife, Richelle Rios, will testify, and bank statements will show, that Huizar provided cash to Rios to deposit into her personal bank account, from which she paid household expenses.

When Huizar distributed cash to family members, he always gave them $100 bills.  The government anticipates Isidra Huizar will testify that she did not know where the cash came from, so she lied to protect Huizar when a bank employee questioned her about its origin: first, by falsely claiming the cash came from rental income and, later, by falsely claiming the cash came from selling valuables.  She will also testify that the bank eventually closed her account.  In addition, Isidra Huizar will testify she initially lied to the FBI regarding these same facts to protect Huizar.  The government anticipates that Salvador Huizar will testify that he asked Jose Huizar about the source of the cash, and Jose Huizar told him it was better that Salvador did not know.  Salvador will also testify that he initially lied to the FBI regarding the funds to protect Huizar.  The government will further show that

---

[12] For instance, Huizar did not keep the bribe money from defendants Lee/940 Hill at his home.

Jose Huizar never directed his family members to deposit more than $10,000, which would have triggered the mandatory reporting requirements threshold for deposits of more than $10,000.

## III.   ARGUMENT

### A.   Evidence of Huizar's Concealment of Cash Payments He Received from Defendant Is Relevant and Admissible

#### 1.   *The Concealment/Money Laundering Evidence Has Sufficient Foundation Under Rule 104(b)*

Defendant first argues that the Court should exclude evidence of Huizar's concealment of the cash payments he received from defendant under Federal Rule of Evidence 104(b) because the government "will not be able to establish a foundation" for this evidence in that there is no "clear connection" between the concealment evidence and the money defendant paid Huizar.  (Mot. at 1, 11.) Defendant is wrong, both (1) because it artificially elevates the minimal threshold required for proper foundation and (2) because the government will present substantial independent evidence from which a juror reasonably could infer that the cash Huizar laundered through family members and hid in his closet was made up, in large part, of cash payments he received from defendant.

"When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."   Fed. R. Evid. 104(b).  "In making that determination, the court does not weigh the evidence or make credibility determinations, but instead 'simply examines all the evidence in the case . . .'"   United States v. Armstrong, 782 F.3d 1028, 1034–35 (8th Cir. 2015) (quoting Huddleston v. United States, 485 U.S. 681, 690 (1988)). The Court need not resolve a preliminary fact beyond a reasonable doubt or even a preponderance of the evidence; all that is required is substantial evidence from which a reasonable juror could infer the existence of the preliminary fact.  Fed. R. Evid. 104(b), advisory committee note to subdivision (b); United States v. Zemek,

634 F.2d 1159, 1170 (9th Cir. 1980) (admissibility of a coconspirator's statements requires only substantial independent evidence of the existence of the conspiracy); United States v. Flores, 679 F.2d 173, 178 (9th Cir. 1982) ("While some other circuits apply the preponderance of the evidence test to preliminary questions of fact, the Ninth Circuit requirement is satisfied by substantial evidence of the existence of the preliminary fact." (citations omitted)).

As explained above, the government will elicit testimony from George Esparza, Isidra Huizar, Salvador Huizar, and Richelle Rios, and present financial summary evidence and other documentary evidence (including text messages and bank records) that the relevant cash came from Las Vegas/defendant.  This evidence will establish that Huizar was receiving regular cash payments and financial benefits from defendant via gambling chips in Las Vegas and currency on an all-expenses paid trip to Australia during the same period that Huizar was laundering cash through his relatives into his personal accounts and to pay his bills.  The regular intervals of these trips with defendant (during which Huizar received cash), which correspond to when Huizar's family members received cash to launder, also tend to show that the cash was one and the same.  The evidence will further show that there was no legitimate source for the large amounts of cash that Huizar had hidden in his closet and gave to his family members.  This is substantial evidence from which a juror reasonably could infer the existence of the preliminary fact: that the cash Huizar laundered through family members and hid in his closet included cash payments he received from defendant SZNW.

Defendant argues there is "no connection" between the cash from the Las Vegas trips and the cash Huizar laundered through family members and hid at his house because (1) there's "no temporal correlation between the Las Vegas trips and the various cash deposits" and (2) the amounts of cash Huizar received from defendant SZNW do not align perfectly with the amounts his family members laundered on his behalf.  (Mot. at 8.)  But in making a determination under Rule

104, the court does not weigh the evidence or make credibility determinations, but instead "simply examines all the evidence in the case." <u>Armstrong</u>, 782 F.3d at 1034–35.  In light of the substantial evidence the government has presented, defendant's arguments go to the weight, not the admissibility of this evidence and accordingly are best addressed to the jury at trial.

To be clear: the government's theory *is not* that Huizar immediately gave his family members all the cash he received from defendant each time he returned from a Las Vegas trip.  Rather, the government's anticipated evidence will show that Huizar kept some cash hidden at home (like that found in his closet when the FBI searched his home) and gave other cash to family members as needed.  Indeed, the anticipated testimony, as corroborated by the records, will create the reasonable inference that Huizar often held onto cash until he had a particular need to pay a bill, at which time he would ask a family member to move the cash through their accounts and back to him.  As a result, some cash distributions to family members occurred within a week of a Las Vegas trip (on at least five occasions), sometimes with a few weeks (on at least six other occasions), and others happened later when the need arose.

None of this is negated by the fact that Huizar received some cash from Businessperson A.  As the government has always alleged, Huizar received some money *during part of this period* from Businessperson A.  But Businessperson A first paid Huizar by cash or check in January 2017, and the majority of the evidence relating to Huizar laundering money through family members is before 2017, as the evidence spans from 2013-2017; that is, the start of Huizar's money laundering activity coincides with when Huizar met Huang and started going to Las Vegas with him in early 2013.

In short, none of defendant's arguments undermine the proper foundation laid by the government.

LAW OFFICES OF RICHARD M. STEINGARD

27

B.    <u>Evidence of Huizar's Concealment of Cash Payments Is Relevant and Admissible</u>

Defendant is likewise wrong that the concealment/money laundering evidence is irrelevant and inadmissible. (Mot. at 10-11.)

1.    *The Cash in Huizar's Closet Is Admissible*

*First*, the cash found in Huizar's closet is admissible and relevant as direct evidence of the pay-to-play scheme and defendant's bribe alleged in the FSI because the government will establish that the cash, in part, came directly from defendant's cash payments to Huizar. Furthermore, the sheer fact that Huizar had over $129,000 in cash at his home (with no other explainable legitimate source of cash) makes it more probable that he solicited and was willing to accept cash bribes, including from defendant. Jurors who are deprived of this evidence will be less inclined to believe these illicit transactions occurred as described by government witnesses because they may be dubious that a career elected official would engage in such criminal, brazen, and risky behavior. Indeed, this Court recognized this very fact when it admitted the exact same evidence of the cash in Huizar's closet in the Lee/940 Hill trial, even though, <u>unlike here</u>, it was undisputed that the cash in the closet was not a bribe from defendants Lee/940 Hill.

2.    *The Acts of Concealment Are Admissible as a Charged Part of Defendant's Scheme*

*Second*, and critically, defendant ignores that the government alleged Huizar's acts of concealment <u>as part of the scheme charged in the indictment</u>. (<u>See</u> FSI ¶ 45.c.) These acts of concealment are highly relevant to elements the government must prove to satisfy its burden both on the honest services wire fraud counts and the bribery count. In connection with the honest services wire fraud count, the government will be required to prove that defendant devised or participated in a scheme or plan to deprive the City of Los Angeles or its citizens of their right of honest services through bribery and acted with the intent to

LAW
OFFICES OF
RICHARD M.
STEINGARD

defraud.  "[B]ecause a person's state of mind is rarely susceptible of proof by direct evidence, specific intent to defraud may be, and most often is, inferred from the totality of the circumstances, including indirect and circumstantial evidence." United States v. Boone, 628 F.3d 927, 936 (7th Cir. 2010) (cleaned up); see also United States v. Sullivan, 522 F.3d 967, 974 (9th Cir. 2008) ("It is settled law that intent to defraud may be established by circumstantial evidence.  Intent may be inferred from misrepresentations made by the defendants, and the scheme itself may be probative circumstantial evidence of an intent to defraud." (cleaned up)).

Here, the "surrounding circumstances" relating to this key issue--whether there was a requisite scheme involving bribes to Huizar--include how Huizar treated the money he received from defendant; namely, that Huizar attempted to hide the money's origin by passing it through family members instead of directly depositing it into his bank accounts.  The steps Huizar took to disguise the source of this money are highly probative both of the existence of the scheme and the co-schemers' state of mind and are admissible as classic co-schemer acts in furtherance of scheme.  Indeed, the Ninth Circuit has long recognized that "mail and wire fraud are treated like conspiracy in several respects" and that "[s]imilar evidentiary rules apply."  United States v. Lothian, 976 F.2d 1257, 1262 (9th Cir. 1992) (citing Robinson v. United States, 33 F.2d 238, 240 (9th Cir. 1929) ("[I]f a conspiracy exists in fact [as when a scheme to defraud is shared by several], the rules of evidence are the same as where a conspiracy is charged." (alterations in original)).  As such, just as "acts and statements of co-conspirators are admissible against other conspirators, so too are the statements and acts of co-participants in a scheme to defraud admissible against other participants."  Id.  (emphases added).

Evidence of co-schemers' conduct is "directly relevant to establish a critical component of the scheme" and therefore admissible as "direct evidence of the offense [theft of honest services]" and to establish defendant's knowledge.  Boone, 628 F.3d at 935; (Dkt. No. 584 at 28) (instructing the jury in the Lee/940 Hill trial

LAW
OFFICES OF
RICHARD M.
STEINGARD

1   that if the defendant was a member of a scheme to defraud and had the intent to

2   defraud, the defendant may be responsible for other co-schemers' <u>actions</u> during

3   the course of and in furtherance of the scheme, even if the defendant did not know

4   what they said or did, where the act was one that the defendant could reasonably

5   foresee as a necessary and natural consequence of the scheme to defraud).  Here,

6   Huizar's acts of concealment were taken during and in furtherance of the scheme

7   to defraud and certainly were reasonably foreseeable as a necessary and natural

8   consequence of the scheme, in that the scheme depended on the illicit payments

9   from defendant remaining undetected.

10       Similarly, as to the bribery count, a central issue at trial will be whether

11   defendant had the requisite corrupt intent when it provided financial benefits to

12   Jose Huizar and George Esparza.  "To establish a corrupt intent, the Government

13   may present circumstantial evidence of concealment as '[c]landestine

14   arrangements are clandestine for a reason, presumably a corrupt one.'"  <u>United</u>

15   <u>States v. Bryant</u>, 885 F. Supp. 2d 749, 758 (D.N.J. 2012) (quoting <u>United States v.</u>

16   <u>Mosberg</u>, 866 F. Supp. 2d 275, 294 (D.N.J. 2011)).  In determining whether

17   defendant had the requisite corrupt intent to influence <u>Huizar</u>, the jury can and

18   should consider whether <u>Huizar</u> illicitly accepted a thing of value from defendant

19   in connection with defendant's L.A. Grand Hotel Project.  Evidence of Huizar's

20   concealment directly bears on that corrupt intent; that is, his efforts to conceal the

21   source of the cash makes it more probable that Huizar accepted large cash bribes

22   from defendant.

23       Defendant argues that Huizar's acts of concealment are inadmissible against

24   SZNW.  That position is contrary to the law.  A defendant is responsible for its

25   own acts of concealment, as well as any acts of concealment committed by co-

26   schemers, so long as the acts of concealment occurred during the course and in

27   furtherance of the scheme.  <u>See</u> <u>United States v. Upton</u>, 559 F.3d 3, 14 (1st Cir.

28   2009) (holding that the co-schemers' failure to file a tax return was an act in

furtherance of the conspiracy and "would have plainly been foreseeable to both conspirators," noting that "[n]ot filing returns was an 'integral and self-evident part of' the conspiracy" because had either defendant not hidden the proceeds, "this would have defeated the primary purpose of the conspiracy"). And when "[t]he successful accomplishment of the crime necessitates concealment," as here, acts of concealment are properly considered to be within the scope of the original scheme. Grunewald v. United States, 353 U.S. 391, 405 (1957).

As noted above, Huizar's acts of concealment occurred during the scheme and was in furtherance of it. In Grunewald, the Supreme Court drew a distinction between "acts of concealment done in furtherance of the main objectives of the conspiracy," which are admissible, and "acts of concealment done after these central objectives have been attained for the purposes of covering up after the crime," which require some proof of an express original agreement to engage in the acts of concealment. Id. at 405. The crimes alleged here are similar to the examples in Grunewald of crimes that inherently involve concealment, that is, Huizar's concealment of the cash defendant paid him was an "integral and self-evident part of" the scheme to deprive the City of Los Angeles and its citizens to their right to honest services through bribery. See id.; United States v. Gleason, 766 F.2d 1239, 1242–43 (8th Cir. 1985) (conspiracy to defraud the United States "necessarily contemplate[d] acts of concealment to accomplish its objectives"); United States v. Mackey, 571 F.2d 376, 383–84 (7th Cir. 1978) (statement made by co-conspirator that his comments to IRS agents would "probably send him [the co-conspirator] to jail" was admissible in conspiracy to evade payment of income taxes and attempted tax evasion since the statement was "in furtherance of" the concealment portion of the conspiracy and made "during the course" of the conspiracy); United States v. Diez, 515 F.2d 892, 897–98 (5th Cir. 1975) (co-conspirator statement and acts aimed at deflecting inquiry from tax evasion scheme held admissible because scheme "by its very nature called for concealment"). Had

1   Huizar deposited large sums of cash from defendant directly into his own bank

2   accounts and claimed the financial benefits defendant gave him on his mandatory

3   disclosure forms, the primary purpose of the scheme would have been significantly

4   jeopardized--that is, Huizar's ability to take favorable official action on

5   defendant's behalf.  The scheme's success therefore depended upon Huizar

6   concealing the cash defendant gave him.

7          Defendant's reliance on United States v. Bryant, 885 F. Supp. 2d 749

8   (D.N.J. 2012) is misplaced.  Not only is it a single, non-binding district court

9   opinion, but it does not stand for the proposition defendant claims.  The Bryant

10  court did not hold, as defendant argues, that evidence of a bribee's corrupt intent,

11  including acts of concealment, is inadmissible or irrelevant to a briber's corrupt

12  intent.  On the contrary, the court actually admitted evidence of the bribee's acts of

13  concealment at the bench trial.  Id. at 760-61.  Then, in evaluating the evidence

14  after trial, the court stated the uncontroversial propositions that each defendant's

15  state of mind must be determined separately (the government agrees) and that the

16  bribee's intent is not "dispositive" of the briber's intent (the government agrees)

17  but instead is "more probative" of the bribee's intent (the government also agrees).

18  Id. at 761 (emphases added).  Thus, the court did not hold that the bribee's intent

19  had no probative value whatsoever or was wholly irrelevant to the briber's intent.

20  Instead, on the facts of that case, the court held that the government failed to meet

21  its burden beyond a reasonable doubt as to the bribee's corrupt intent because the

22  evidence, evaluated as a whole, supported the government's theory of guilt but also

23  "support[ed] a different interpretation" that was consistent with innocence.  Id. at

24  760-62.  Thus, even under Bryant's reasoning, Huizar's acts of concealment are

25  admissible and have some probative value as to defendant's corrupt intent.

26          Further, as noted above, under binding Supreme Court precedent (which

27  Bryant failed to cite or analyze at all), evidence of Huizar's concealment is

28  admissible as a co-schemer act in furtherance of the scheme because the successful

accomplishment of the scheme necessitated the very acts of concealment defendant seeks to exclude.  <u>See</u> <u>Grunewald</u>, 353 U.S. at 405.  Thus, the evidence of Huizar's concealment of cash payments from defendant is both relevant and admissible.

Given the high relevance of this evidence to key disputed elements the government must prove at trial, its significant probative value is not substantially outweighed the risk of unfair prejudicial impact.  <u>See</u> Fed. R. Evid. 403, advisory committee's note (to be unfairly prejudicial, the evidence must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"); <u>United States v. Caraway</u>, 534 F.3d 1290, 1301 (10th Cir. 2008) ("Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case.").

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion should be denied.

1

## SZNW'S REPLY

2       Adopting its trademark hyperbolic prose, the government characterizes its

3   alleged money laundering evidence as "powerful relevant evidence of central

4   matters in this case." To support this statement, the government opines that

5   Huizar's alleged money laundering shows (1) "the L.A. Grand Hotel bribery

6   scheme … existed;" (2) "[SZNW] … acted with corrupt intent when [it] gave

7   various benefits to Huizar;" and (3) "Huizar knew the money was for a corrupt

8   purpose." None of these statements are true. Rather, at best, Huizar wanted to

9   conceal any cash that he possessed – whether from gambling in Las Vegas, illegal

10  activities with other developers and consultants, or from any other source – hardly

11  an uncommon phenomenon.[13]

12      The government insists it will be able to lay a foundation for the introduction

13  of this evidence. What they mean is that someone – perhaps George Esparza or

14  Richelle Rios – will testify that Huizar returned from some of his Las Vegas trips

15  with cash. The amounts of cash are unknown but, based on the government's chart

16  (Ex. 1), it is clear that the Las Vegas money cannot account for *all* of the relatives'

17  transactions. Foundationally, *there is no evidence that SZNW or Huang knew of*

18  *Huizar's alleged laundering.* Indeed, Huizar's wife, mother, and brother, all of

19  whom conducted the alleged money laundering transactions, *denied* knowing of

20  Huizar's alleged money laundering. Because there is no evidence that SZNW or

21  Huang knew of Huizar's alleged money laundering, the government cannot lay a

22  foundation for the relevance of this evidence.

23

24

25  [13]    In MIL 1, SZNW rebutted the government's claim that Esparza and Huizar's

26  acts of concealment, unknown and unforeseeable to Huang and SZNW, are

    somehow probative of their (SZNW and Huang's) intent. *See* ECF 642 at 22. We

27  also responded to the government's attempt to distinguish the holding in *United*

    *States v. Bryant*, 885 F. Supp. 2d 749 (D.N.J. 2012). *Id.* at 26. SZNW

28  incorporates those arguments here.

The government correctly characterizes the alleged money laundering evidence as Huizar's acts of concealment and concedes that SZNW and Huang were unaware of it.[14]  That fact alone should give the Court pause, as Huizar's concealment of gambling funds is unrelated to SZNW and Huang's mindset, just as Huang's open and transparent actions (such as signing PEP and CTR forms, openly providing gambling chips in front of casino representatives, and always using his real name – none of which the government challenges or refutes) are not automatically applicable to Huizar's intent.  Contrary to the government's belief, one purported schemer's allegedly corrupt intent does not robotically transfer to another claimed co-schemer, particularly when one alleged schemer's acts of concealment (Huizar) were designed at least in part so that the other alleged co-schemers (SZNW and Huang) would not know of them.

Equally important, while SZNW concedes that on *some* occasions Huizar returned to Los Angeles with *some* amount of cash, and that Huizar *could* have given *some* amount of that cash to his relatives to deposit into their accounts, the balance of the allegedly laundered funds came from Huizar's extracurricular (and possibly illegal) activities, known and unknown to the government.  As the government well knows, the proposed introduction of this evidence amounts to the backdoor admission of "other schemes" evidence.  (*See* ECF 649, MIL 9 (moving to exclude "other schemes" evidence).)  The admission of Huizar's relatives' financial transactions forces SZNW to either (a) accept the evidence unchallenged and allow the jury to believe that the total amount of the allegedly laundered funds came from the Las Vegas trips, or (b) address these transactions head-on to explain to the jury that Huizar was involved in other schemes – some discovered during the

_____

[14]    In MIL 1, SZNW noted the limitations and inherent prejudice of introducing concealment evidence when it is presented at the trial of the *concealer*.  (ECF 642 at 6-8.)  Absent an alleged co-schemer's knowledge of the concealment, those same limitations and prejudices are magnified in a trial of the *non*-concealing alleged co-schemer.

government's investigation and others that likely remain hidden – which generated some or possibly most of the allegedly laundered cash.

As one example, in 2013 Huizar took two trips to Las Vegas with Wei Huang where, according to Esparza, he received a total of $20,000 in casino chips. (Ex. 1.)  There is no indication whether he won or lost on these two trips, although Las Vegas is hardly known for having successful gamblers.  But during that same year and through the first quarter of 2014, Huizar's relatives deposited $12,500 and wrote check to Huizar or for his benefit totaling $60,000.  Since Isidra and Salvador Huizar's incomes did not justify $60,000 to dispense to Huizar or pay his bills, where did the additional funds come from?  If this evidence is presented to the jury, they will either believe the cash deposits and outlays to Huizar came from the two gambling trips or that the Huizar received additional cash from other (possibly illegal) schemes.  The same analysis can be performed for the following years, as well as for the money found during the search of Huizar's residence.[15]

In sum, the relatives' financial transactions simply do not square with the funds from the Las Vegas trips, meaning that the balance of that which was not from Las Vegas – whatever that amount was – came from some other (ostensibly illegitimate) source.  For SZNW to explain this to the jury would require it to abandon its objection to the introduction of "other schemes" evidence, which itself was the basis for its request for a severance.

---

[15]    Huizar's last trip to Las Vegas with Huang was in February 2017, when he allegedly received $10,000. The search of his residence occurred 21 months later, in November 2018.  In between, Huizar received $85,000 in cash from Businessman A and, possibly, unknown amounts from other schemes.



DATED: September 5, 2022       RICHARD M. STEINGARD
           Law Offices of Richard M. Steingard

By:   /s/
           RICHARD M. STEINGARD
           Attorney for Defendant
           SHEN ZHEN NEW WORLD I, LLC

DATED: September 5, 2022       TRACY L. WILKINSON
           United States Attorney

By:   /s/
           MACK JENKINS
           SUSAN HAR
           CASSIE PALMER
           JAMARI BUXTON
           Assistant United States Attorneys

           Attorneys for Plaintiff
           UNITED STATES OF AMERICA

1

## DECLARATION OF RICHARD M. STEINGARD

2    I, Richard M. Steingard, state and declare as follows:

3        1.       I am an attorney licensed to practice in the state of California and

4    before this Court.  I represent Shen Zhen New World I, LLC ("SZNW") in the

5    above-pending matter and submit this declaration in support of the motion *in*

6    *limine* to exclude evidence of Jose Huizar's alleged money laundering activities.

7        2.       SZNW moves this Court for an order excluding Huizar's alleged

8    money laundering, including cash deposits by his relatives, their subsequent checks

9    to Huizar and payment of his expenses, and cash found at Huizar's house during

10    the November 2018 execution of a search warrant.  There is no evidence that

11    SZNW or Wei Huang were aware of Huizar's alleged money laundering, and there

12    is no evidence the cash found at his house – which occurred *19 months* after his

13    last trip to Las Vegas with Huang – was connected to the Las Vegas trips.

14        3.       Counsel for both parties met and conferred about this motion *in*

15    *limine*. After discussing the matter, counsel for the government stated that it will

16    seek to introduce such evidence at trial.

17        4.       Pursuant to the scheduling order (ECF 428), on July 5, 2022, I

18    provided the government with this *in limine* motion which, in large measure,

19    analyzed the charts in the First Superseding Indictment ("FSI") that allege (a) how

20    much Huizar received from Huang during their trips to Las Vegas and (b) Huizar's

21    relatives' financial transactions purportedly connected to that cash.  Pursuant to

22    that same order. on August 1, 2022, the government sent me their opposition which

23    also relied on the FSI's charts and figures.

24        5.       One month later, on August 31, 2022, the government advised that the

25    charts in the FSI contained numerous errors and omissions.  The government

26    provided a new chart that corrected the FSI's charts, as well as a revised opposition

27    brief which incorporated the new figures.  Thereafter, the parties conferred and

28    agreed that SZNW needed additional time to review the new chart and the

government's revised opposition, possibly revise its motion and draft a reply, and file this motion.  (ECF 635.)

6.     I ultimately decided that for the purposes of this motion, I would use the government's revised figures rather than present the Court with two conflicting charts.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of September, 2022 in Los Angeles, California.


_____
Richard M. Steingard

1

## **LOCAL RULE 5-4.3.4 ATTESTATION**

2

      I attest and certify that all other signatories listed, and on whose behalf this

3

filing is submitted, concur with the filing's content and have authorized the filing.

4

5

DATED: September 5, 2022      By: _____

6

             RICHARD M. STEINGARD

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28