Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Craig Wilke (SBN 150728)
*craig@craigwilkelaw.com*
305 N. Harbor Blvd., Suite 216
Fullerton, California 92832-1901
Telephone: (714) 870-8900
Facsimile: (714) 879-2278

Attorneys for Defendant
Shen Zhen New World I, LLC

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SHEN ZHEN NEW WORLD I, LLC,<br><br>　　　　Defendant. | CR-20-326(A)-JFW<br><br>**DEFENDANT SHEN ZHEN NEW WORLD I, LLC'S MEMORANDUM RE OUTSTANDING PRETRIAL ISSUES**<br><br>**Pretrial Conf: Oct. 14, 2022**<br>**Trial: Oct. 25. 2022** |

///
///
///

1

Defendant Shen Zhen New World I, LLC, by and through its counsel, Richard M. Steingard and Craig Wilke, hereby submits this memorandum addressing various outstanding pretrial issues.

Dated:  October 10, 2022            Respectfully Submitted,

                                    _____/s/_____
                                    RICHARD M. STEINGARD
                                    CRAIG WILKE
                                    Attorneys for Defendant
                                    SHEN ZHEN NEW WORLD I, LLC

**MEMORANDUM**

Defendant Shen Zhen New World I, LLC ("SZNW") submits that the following issues remain outstanding and asks that the Court address them at the upcoming pre-trial conference.

A. <u>Wei Huang's Status</u>

The government has advised that it seeks to introduce Wei Huang's current presence in China, his failure to appear in this court to answer to the charges, and his alleged status as a "fugitive." The government claims Huang's status is *akin* to a fugitive who fled the jurisdiction to avoid facing charges and is therefore relevant and admissible. SZNW disagrees.

Huang is not a "fugitive," and SZNW objects to the government labelling him this way to the jury. A "fugitive" is defined as follows:

1. Someone who flees or escapes; a refugee;
2. A criminal suspect or a witness in a criminal case who flees, evades, or escapes arrest, prosecution, imprisonment, service of process, or the giving of testimony, especially by fleeing the jurisdiction or by hiding.

*Fugitive*, Black's Law Dictionary (11th ed. 2019); see also *Fugitive*, Merriam-Webster.com, https:///www.merriam-webster.com (last accessed October 6, 2022) (defining "fugitive" as "a person who flees or tries to escape, such as (a) a person who flees a country or location to escape danger (such as war) or persecution: *refugee*; or (b) a person (such as a suspect, witness, or defendant) involved in a criminal case who tries to elude law enforcement especially by fleeing the jurisdiction; also called *fugitive from justice*). The word comes from the Latin adjective *fugitivus*, which comes from the verb *fugere,* meaning "to flee."

Huang does not meet these definitions of "fugitive." Huang is a citizen and resident of Shen Zhen, China. He was indicted in this jurisdiction in November 2020. At that time, he was residing in his native home and continues to reside

there today.  He never fled this jurisdiction for any purpose, much less to evade arrest or prosecution.

Falsely characterizing Huang as a "fugitive" would be an "other act" prohibited by Fed. R. Evid. 404(b).  It implies that he has avoided criminal prosecution because of an awareness of his – and SZNW's – commission of the charged offenses.  Further, under Fed. R. Evid. 403, whatever may be the purported probative value of characterizing Huang in this manner, it is substantially outweighed by a danger of unfair prejudice – literally, advising the jury that Huang, the face of SZNW, knows and believes he is guilty.  This would have the effect of misleading and confusing the jury as the pejorative "fugitive" term does not relate to any element of the offenses.  *See United States v. Sine,* 493 F.3d 1021, 1032 (9th Cir. 2007) ("We have previously observed that while prosecutors are not required to describe sinners as saints, they are required to establish the state of sin by admissible evidence unaided by aspersions that rest on inadmissible evidence, hunch, or spite").

Huang's current whereabouts are not relevant to the jury's determination of any issue in the case.  Fed. R. Evid. 401. Juries are routinely instructed not to speculate regarding the status of co-defendants and are expected to follow such instructions.  *See e.g.*, Ninth Cir. Model Jury Instr. 2.15 (Disposition of charge against co-defendant).  An order precluding the government from claiming that Huang is a "fugitive," or making any reference to his non-appearance at trial, would not affect the government's proof on any element of any of the charged offenses, nor would it impact its ability to tell its version of the case.

For the foregoing reasons, SZNW asks that the Court issue an order that the government and its witnesses may not refer to Huang as a fugitive and exclude any evidence of Huang's current location.

///

///



B. "Other Schemes" Evidence

The government advises that it will seek to introduce certain aspects of "other schemes" evidence. Specifically, the government asserts that the Court's ruling on MIL 9—granting in part and denying in part the motion to exclude "other schemes" evidence—permits the introduction of some "general framework" of other alleged pay-to- play schemes through the testimony of George Esparza and, possibly, Agent Civetti. While SZNW agrees that the Court's ruling may permit the introduction of some "other schemes" evidence, SZNW seeks the Court's clarification on what the government may seek to admit.[1]

In ruling on MIL 9, the Court stated that "at least some of the evidence regarding the general framework of the pay-to-play scheme is not other acts' evidence but is inextricably intertwined with the charges against Shen Zhen." (9/23/22 RT 94.) The Court then clarified this statement:

> The general framework evidence of the pay-to-play scheme, assuming that framework equally applied to Shen Zhen, appears to meet this test. The Court has reviewed the limiting examples of the general framework testimony the Government might seek to elicit, and those appear at page 12 of the Motion in Limine No. 9. And the Court is of the view that this evidence is inextricably intertwined. However, without specific evidence or testimony before it and the relationship of that evidence or testimony to Shen Zhen, the Court cannot definitively determine if it is inextricably intertwined or not. Moreover, it is difficult to assess whether any such pay-to-play scheme evidence is unfairly prejudicial without knowing exactly what testimony the Government will seek to elicit. As I indicated earlier in connection with any motion in limine to exclude evidence, the evidence must be inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary ruling should be deferred until trial so the

---

[1] During the hearing on MIL 9, counsel for SZNW attempted to address the parameters of the Court's ruling. (9/23//22 RT 91-92, 101.) However, because of the length of the hearing, the Court requested that counsel address the issue at a later time. (*Id*. at 101.)

5

questions of foundation, relevance, and potential prejudice may be resolved in the proper context. This is because, although rulings on motions in limine may save time, cost, effort, and preparation, the Court is almost always better situated during the actual trial to assess the value and utility of the evidence. Accordingly, the Court denies Motion in Limine No. 9 with respect to the general framework pay-to-play scheme evidence, and defense counsel may object to this evidence during the course of trial on a question-by-question basis so the Court can assess the value and utility of the evidence in the proper context. (*Id*. at 95-6.)

While counsel appreciates the Court's ruling, it does not provide specific guidance on what evidence may be admissible. We address below the testimony of the government's two primary witnesses regarding their "other scheme" evidence.

1. George Esparza's Testimony

In MIL 9, at pages 12-13, the government identified three instances of Esparza's (and Shawn Kuk's) prior testimony. (ECF 649 at 12.) Addressing these individually, the government first seeks to elicit Esparza's assertion that he "size[d] people up" to see if they were willing to "play" and "assess[ed] the room to figure out who was . . . the George of that certain developer." (*Id*. at 12.) While this may have been true for other schemes, Esparza has never claimed that he "sized up" Huang and/or Zheng in this manner – indeed, he was not present when Huizar first met Huang – and it would be improper for the government to introduce this part of the "general framework" of Huizar and Esparza's other pay-to-play schemes.

Second, the government seeks to introduce evidence that Huang was a "friend of the office" who received special "political access" to Councilmember Huizar. (*Id*.) SZNW has no objection to this testimony but does object if the government attempts to introduce testimony that other "friends of the office" were treated in the same manner *and* engaged in pay-to-play schemes.

Third, the government seeks to introduce Esparza's statement that

"developers would speak a certain language or code about, hey, is there anything that we could be helpful with, anything you need, please let us know." With one seemingly inapplicable exception,[2] Huang never made such a statement. Consequently, Esparza's claim that other developers used this phrase to convey that they were willing to pay a bribe is hearsay and irrelevant to the instant matter.

The Court's ruling anticipates addressing these issues on a question-by-question basis. But this would require that SZNW continuously object to the government's questions, thereby seemingly highlighting to the jury SZNW's concern about this evidence. It would also permit the jury to hear possibly improper questions. To avoid such prejudice, SZNW asks that the Court clarify its ruling and/or hold a hearing outside the jury's presence to determine what is and is not admissible. *Sine*, 493 F.4d at 1031-2 ("We note preliminarily that although the order was never admitted into evidence, a line of questioning that repeatedly incorporates inadmissible evidence can be just as improper as the direct admission of such evidence. We agree with the Fourth Circuit that such 'speaking' questions can violate the Federal Rules of Evidence") (citing *United States v. Hall,* 989 F.2d 711, 716–17 (4th Cir.1993) (noting that by "proceed[ing] to read the [inadmissible hearsay] statement to the jury under the guise of cross-examining ... [t]he government's use of [the] unauthenticated statement violated Fed.R.Evid. Rule 802 ...")); Fed. R. Evid. 103(c) ("In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to

---

[2] On October 17, 2013, Huizar texted Ray Chan that Francine Godoy filed her sexual harassment lawsuit against him and that he was talking to his attorney. Chan responded, "Got it," and a few hours later texted, "The chairman asks if there is anything that he can help." (Govt Tr. Ex. 287E, attached as Exhibit A.) This is a far cry from Esparza's statement that developers used coded language to convey their purported willingness to pay a bribe. Moreover, Esparza was not on the text exchanges between Huizar and Chan and there is no evidence he was aware of it.

LAW OFFICES OF RICHARD M. STEINGARD

the jury by any means, such as ... asking questions in the hearing of the jury."); 21 Charles Alan Wright & Kenneth W. Graham, Jr, Federal Practice and Procedure: *1032 Evidence § 5042, at 954, 963 (2d ed.2005) (noting that Rule 103(c) seeks to ensure the jury "goes into deliberations with their minds void of everything except evidence that has been properly validated by trial procedures" and that the rule should apply to leading questions to witnesses "that counsel should have known contained inadmissible evidence").

    2. <u>Agent Civetti's Testimony</u>

It is unclear whether the government seeks to introduce testimony from Agent Civetti concerning his investigation of the other developers and their alleged involvement in pay-to-play schemes. Counsel for SZNW inquired of the government and provided them with an index of occasions in which Agent Civetti's prior testimony touched on "other schemes" evidence. (Exhibit B.) As of this filing, the government has not responded.[3] Accordingly, we ask that the Court address this matter at the upcoming hearing.

    C. <u>Agent Civetti's Testimony at Beginning and End of the Government's Case in Chief</u>

The government advises that it seeks to call Agent Civetti at the beginning and end of its case in chief. According to the government, Agent Civetti will testify at the start of the trial to authenticate evidence that he acquired during the course of the investigation, and at the end of its case to summarize the evidence that is reflected in charts that the government prepared. SZNW objects to the government calling the agent twice, as his second testimony serves as a "conviction" witness and little more.

---

[3]     The parties have arranged a call to discuss other matters for the late afternoon on October 11. If this issue is addressed and resolved, SZNW will promptly advise the Court.

LAW OFFICES OF RICHARD M. STEINGARD

Counsel for SZNW is aware that this issue was raised in the *940 Hill/Lee* trial (ECF 492 at 1-4), and that the Court permitted Agent Civetti to testify twice. However, SZNW does not know the basis for the Court's decision and/or what restrictions or limitations, if any, were placed on his testimony. Accordingly, SZNW objects to the agent testifying twice and asks that the Court address this issue at the upcoming hearing.