E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal Bar. No. 301924)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2091/0363/3289
    Facsimile: (213) 894-6436
    E-mail:    Mack.Jenkins@usdoj.gov
            Cassie.Palmer@usdoj.gov
            Susan.Har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>        v.<br><br>JOSÉ LUIS HUIZAR, et al.,<br><br>      Defendants. | No. CR 2:20-326(A)-JFW-1<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT JOSÉ LUIS HUIZAR'S MOTION TO VACATE THE COURT'S SUA SPONTE ORDER PROHIBITING DEFENSE TEAM CONTACT WITH JURORS ABSENT A COURT ORDER<br><br>Hearing Date: November 21, 2022<br>Hearing Time: 10:00 AM<br>Location:    Courtroom of the<br>            Hon. of the Hon.<br>            John F. Walter |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Cassie D. Palmer, and Susan S. Har, hereby files its response to defendant José Luis Huizar's Motion to Vacate Court's Sua Sponte

Order Prohibiting Defense Team Contact with Jurors Absent a Court Order (Dkt. 704) and the subsequently filed under seal declaration of Carel Alé in support of the motion (Dkt. 833).

This response is based upon the attached memoranda of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 15, 2022            Respectfully submitted,

                                    E. MARTIN ESTRADA
                                    United States Attorney

                                    SCOTT M. GARRINGER
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                    */s/ Cassie D. Palmer*
                                    MACK E. JENKINS
                                    CASSIE D. PALMER
                                    SUSAN S. HAR
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

I.     INTRODUCTION...................................................1

II.    PROCEDURAL BACKGROUND..........................................1

III.   ARGUMENT.......................................................3

       A.    The Court's Order Is Supported By Compelling
             Government Interests and Appropriately Tailored...........3

       B.    If the Court Permits Juror Contact, It Should Impose
             Safeguards..............................................10

IV.    CONCLUSION....................................................10

# Table of Authorities

**Federal Cases**

United States v. Logan,
  250 F.3d 350 (6th Cir. 2001) ................................. 7

Economou v. Little,
  850 F. Supp. 849 (N.D. Cal. 1994) ......................... 4, 8

Gentile v. State Bar of Nevada,
  501 U.S. 1030 (1991) ...................................... 4, 9

Haeberle v. Tex. Int'l Airlines,
  739 F.2d 1019 (5th Cir. 1984) ............................. 4, 9

Journal Pub'g Co. v. Mechem,
  801 F.2d 1233 (10th Cir. 1986) ........................... 9-10

McAuliffe v. United States,
  514 F. App'x 542 (6th Cir. 2013) ............................ 7

McDonald v. Pless,
  238 U.S. 264 1915). ....................................... 4, 6

Mitchell v. United States,
  958 F.3d 775 (9th Cir.) ................................. 6, 7, 8

Smith v. Cupp,
  457 F.2d 1098 (9th Cir. 1972) ............................... 5

United States v. Davila,
  704 F.2d 749 (5th Cir. 1983) ................................ 3

United States v. Dioguardi,
  492 F.2d 70 (2d Cir. 1974) ............................... 1, 6

United States v. Eagle,
  539 F.2d 1166 (8th Cir. 1976) ............................... 9

United States v. Eldred,
  588 F.2d 746 (9th Cir. 1978) ................................ 5

United States v. Franks,
  511 F.2d 25 (6th Cir. 1975) ................................. 7

United States v. Logan,
  250 F.3d 350 (6th Cir. 2001) ................................ 7

United States v. Major,
  676 F.3d 803 (9th Cir. 2012) ................................ 7

United States v. Moten,
    582 F.2d 654 (2nd Cir. 1978) ................................... 3

United States v. Stansfield,
    101 F.3d 909 (3d Cir. 1996) ................................... 6

United States v. Venske,
    296 F.3d 1284 (11th Cir. 2002) ............................. 3, 4

United States v. Wright,
    506 F.3d 1293 (10th Cir. 2007) ............................. 8-9

United States v. Zimny,
    857 F.3d 97 (1st Cir. 2017) ................................... 4

**Other**

Federal Rule of Evidence 606(b) ................................. 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Jury service—especially service for a lengthy trial involving serious criminal conduct—imposes substantial burdens on the members of the community who are selected.  Jurors' identities and information about their personal lives are disclosed to the parties during voir dire, jurors must spend days or even weeks away from their jobs and personal responsibilities, and the unanimous verdict requirement means that each juror's individual vote is public.  In 2022, due to the proliferation of social media and ubiquitous access to individuals' personal, professional, and familial information, once jurors' names are disclosed as part of their jury service, they must surrender much of their anonymity, simply by electing to satisfy their civic duty.  To mitigate the intrusion on jurors' privacy, and to reassure jurors that their deliberations will remain confidential, federal courts generally disfavor post-verdict inquiry into the jury's deliberative process after the jurors have left the courthouse and returned to their regular lives.  And it is well-settled that this "[r]eluctance to inquire into the state of mind of any juror and into the conduct of the jurors during their deliberations rests on sound reasons." United States v. Dioguardi, 492 F.2d 70, 79 (2d Cir. 1974).

## II. PROCEDURAL BACKGROUND

Following the related trial of defendants Dae Yong Lee and 940 Hill, LLC, investigators from the Deputy Federal Public Defender's Office, on behalf of defendant Jose Huizar, sought to interview (and actually did interview) jurors who served on that trial, by showing up at their private residences unannounced, sometimes more than once

1   in a day.  (Dkt. 704-1 (Declaration of Carel Alé) ¶ 3; Dkt. 833

2   (Declarations Pursuant to Court Order).)  By counsel's own admission,

3   the purpose of these interviews was "to aid in [Huizar's] upcoming

4   defense and trial preparation."  (Dkt. 704 (Mot.) at 6.)

5       On July 8, 2022, apparently in response to outreach from a

6   contacted juror, the Court entered an order prohibiting counsel from

7   contacting jurors from the LEE/940 HILL trial, absent a court order.

8   (Dkt. 600 ("Court's Order") ("Counsel shall not contact any of the

9   jurors in U.S. v. Lee, et al. without an order of this Court.").)

10  Huizar incorrectly characterizes this order as applying only to

11  Huizar's counsel and not to the government or counsel for any other

12  defendant.  (Mot. at 3 ("[T]he Court sua sponte entered an order

13  prohibiting Jose Huizar's defense team—and not the government or any

14  other defense team—from contacting jurors who sat for the Lee trial

15  absent a court order.") (emphasis added).)  However, the government

16  always has read "counsel" as applying to it and all counsel in the

17  case and accordingly has made no efforts to interview any jurors.[1]

18      On October 11, 2022, Huizar moved to vacate the Court's Order

19  regarding juror contact, arguing it is (1) "an unconstitutional prior

20  restraint in violation of the First Amendment and a violation of

21  their First Amendment right to receive information" and (2)

22  "violative of Huizar's Fifth and Sixth Amendment rights to counsel

23

24      [1] Further, during the recent trial of defendant Shen Zen New
    World, LLC ("SZNW"), counsel for the government and defendant SZWN
25  agreed to comply with the Court's Order.  In light of the Court's
    Order, the government and defendant SZNW agreed that (1) neither side
26  would make unsolicited attempts to contact jurors after the trial
    ended at their home, workplaces, or anywhere outside of the
27  courthouse, and (2) at the conclusion of the trial, should any jurors
    have agreed to speak with SZNW or government counsel about the trial
28  and remain at or near the courthouse for those purposes, the parties
    could speak with them.  (Dkt. 721 at 34.)

and to prepare a defense" (the "Motion").  (Mot. at 3.)  On November

17, in response to the Court's order (Dkt. 817), counsel for

defendant Huizar filed a declaration detailing the defense team's

interactions with the prior jurors (Dkt. 833).

The Court's order should stand.  A defense team tracking down

jurors at their private residences to question them about their jury

service implicates compelling government interests relating to the

integrity of the juror deliberation process, protecting juror

privacy, avoiding the harassment of jurors, and ensuring the finality

of verdicts.  Absent a showing of juror misconduct (and none has been

alleged much less shown here), it is well within the Court's

discretion to restrict such conduct and does not violate the

defendant's rights, especially where, as here, the defendant's stated

purpose is tactical advantage for a future trial.

**III. ARGUMENT**

    **A.**    **The Court's Order Is Supported By Compelling Government Interests and Appropriately Tailored**

It is well settled that district courts have the power to make

rules and issue orders prohibiting attorneys and parties from

contacting jurors, whether directly or indirectly, absent prior court

approval.  See e.g., United States v. Davila, 704 F.2d 749, 754 (5th

Cir. 1983) (recognizing validity of these rules and noting that their

principal purpose is to prevent "fishing expeditions in search of

information"); United States v. Moten, 582 F.2d 654, 665 (2nd Cir.

1978) (recognizing power of trial judge to order all post-verdict

investigation of jurors to be conducted under his supervision).

United States v. Venske, 296 F.3d 1284, 1291 (11th Cir. 2002) (same).

Most fundamentally, the "district court's use of these powers is

1  informed by interests important to the integrity of the judicial

2  process." Id. (citing McDonald v. Pless, 238 U.S. 264, 267 (1915)).

3  Circuit and Local Rules restricting post-verdict contacts with jurors

4  are widespread, and in the absence of local rules regulating such

5  contacts, the issue of post-verdict juror contact is left to the

6  sound discretion of the district court.  See Haeberle v. Tex. Int'l

7  Airlines, 739 F.2d 1019, 1021-22 (5th Cir. 1984) ("Federal courts

8  have generally disfavored post-verdict interviewing of jurors.");

9  United States v. Zimny, 857 F.3d 97, 100 (1st Cir. 2017) ("[P]ost-

10 verdict contact with jurors is prohibited in the First Circuit

11 generally.").  Indeed, "[m]ost federal courts deny requests to

12 conduct post-verdict interviews of jurors unless there is a proper

13 preliminary showing of likely jury misconduct or witness

14 incompetency." Economou v. Little, 850 F. Supp. 849, 852-853 (N.D.

15 Cal. 1994) (collecting cases; "The Court of Appeals for the Ninth

16 Circuit disfavors post-verdict interrogation of jurors, and allows

17 such interrogation in limited circumstances.").

18      Despite this clear precedent, Huizar argues that the Court's

19 Order violates his First Amendment rights, in creating a "prior

20 restraint" on his counsel's speech by forbidding contact with jurors

21 absent prior court approval, and that this restraint does not serve a

22 compelling interest.  (Motion at 4-6.)  But the cases Huizar cites in

23 support of this proposition -- most of which involve attorney

24 statements to the media -- are inapposite.[2]  Regarding the specific

25

26      [2] Cases involving restrictions on attorney speech to the media,
   including Gentile v. State Bar of Nevada, 501 U.S. 1030 (1991) and
   its progeny, are readily distinguishable.  In Gentile, the Supreme
27 Court reviewed the Nevada Supreme Court's determination that an
   attorney had violated Nevada's rule restricting attorney statements
28 to the media.  Id. at 1048.  The Supreme Court reversed the State

*(footnote cont'd on next page)*

4

issue raised here -- a defendant's right to contact jurors post-

verdict -- the Ninth Circuit has held that "there is no federal

constitutional problem involved in the denial of a motion to

interrogate jurors where, as here, there has been no specific claim

of jury misconduct."  Smith v. Cupp, 457 F.2d 1098, 1100 (9th Cir.

1972); see also United States v. Eldred, 588 F.2d 746, 752 & n.4 (9th

Cir. 1978) (holding no abuse of discretion and "[n]o constitutional

or statutory deprivation of rights occurred" where trial court

refused to allow post-verdict interrogation of jurors absent some

showing of a sufficient reason, i.e., juror misconduct).

Huizar offers no allegation or evidence of juror misconduct but

simply contends "there is no reasonable justification much less a

compelling reason" justifying the Court's Order (Mot. at 11).

However, courts repeatedly have held that restricting juror contact

post-verdict serves at least five compelling purposes: (1)

discouraging harassment of jurors; (2) encouraging free and open

discussion among jurors; (3) reducing incentives for jury tampering;

---

Bar's imposition of sanctions, holding that the rule was
unconstitutionally vague *as applied*.  Id.  The Court went on to
consider the appropriate balance in regulating contact between
attorneys and the press, where attorneys are representing a party in
a pending case, and specifically whether the standard adopted by
Nevada was constitutional, that is, whether the restrained speech
created a substantial likelihood of materially prejudicing the
administration of justice.  See id. at 1065-74.  The Court held that
the Nevada rule was constitutional because it adequately protected
the First Amendment rights of attorneys while also balancing the
State's interest in a fair trial.  Id. at 1075.  But Gentile and the
other media speech cases address whether prior restraints placed on
an attorney's ability to make extrajudicial statements violate the
attorney's First Amendment rights.  But that issue is materially
different from that presented here: whether restricting contact with
jurors post-conviction (and, in Huizar's case, a defendant who was
not involved in the prior proceeding) violates that defendant's or
his attorney's rights.

(4) promoting verdict finality; and (5) maintaining the viability of the jury as a judicial decision-making body.  See <u>United States v. Stansfield</u>, 101 F.3d 909, 915-16 (3d Cir. 1996); <u>accord</u> <u>Mitchell v. United States</u>, 958 F.3d 775, 792 (9th Cir.), <u>cert. denied</u>, 141 S. Ct. 216 (2020) (citing similar factors); <u>Pless</u>, 238 U.S. at 267 (allowing juror interviews would "make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference"; protecting jurors from being "harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict" is a compelling interest); <u>Dioguardi</u>, 492 F.2d at 79 ("Equally important is the court's interest in preserving the finality of the jury's verdict.").

Huizar argues that some of these interests do not apply here because he has not yet been tried and accordingly the finality of the jury verdicts and integrity of the deliberations are not at risk. (Mot. at 5-6.)  But this argument hurts rather than helps Huizar. Most fundamentally, it reveals that Huizar's rights are <u>less</u> compelling than the rights of a defendant who was previously convicted by the jury s/he now seeks to contact.  That is, in a typical juror contact case, courts are in the position of balancing "one of the most basic and critical precepts of the American justice system: the integrity of the jury" with another of the most basic and critical precepts of the American Justice System: a defendant's Sixth and Fifth Amendment rights to a fair trial and an impartial jury

1   under the Constitution.[3]  United States v. Logan, 250 F.3d 350, 380

2   (6th Cir. 2001), superseded on other grounds by statute as recognized

3   in McAuliffe v. United States, 514 F. App'x 542, 549 (6th Cir. 2013)

4   (noting the jury impeachment rule under Fed. R. Evid. 606(b) balances

5   "the preservation of the integrity of the jury system and the rights

6   of the defendant" and holding an external influence on the jury

7   justifies post-verdict interrogation of jurors to adequately protect

8   the defendant's constitutional rights but an internal influence on

9   the jury does not because "preservation of the integrity of the jury

10  system outweighs any potential violation of the defendant's

11  constitutional rights."); Mitchell, 958 F.3d at 787 ("The judicial

12  authority to exercise discretion regarding whether to grant lawyers

13  permission to conduct jury interviews" undergirds both the general

14  imposition of restrictions on lawyer access to jurors and the

15  formalized procedures under Rule 606(b), "which also stems from long-

16  established common law rules"); United States v. Franks, 511 F.2d 25,

17  38 (6th Cir. 1975) (trial judges exercise their discretion in

18  determining whether to allow post-verdict questioning of the jury).

19  In other words, Huizar's countervailing interest in interviewing

20  jurors is relatively limited.  And importantly, there is no evidence

21

22  _____

23      [3] Despite cursory citations to Huizar's Fifth and Sixth
    Amendment right to "prepare an effective defense" (Mot at 10-11),
    Huizar fails to explain how failing to obtain the information he
24  seeks from jurors would impede counsel's ability to prepare for
    trial.  Cf. United States v. Major, 676 F.3d 803, 811 (9th Cir. 2012)
25  (no violation of the Sixth Amendment right to prepare for trial,
    where district court prohibited juror contact (and restricted
26  defendants from contacting anyone except attorneys), absent any
    evidence that restriction actually impeded attorneys' ability to
27  prepare for trial).  Nor does Huizar articulate how (or cite any
    cases supporting his proposition that) his team's inability to
28  contact jurors would impair his rights to a fair trial or an
    impartial jury.

of misconduct or impropriety here, and the declarations filed in support of the Motion indicate defense investigators showed up unannounced at jurors private residences, sometimes more than once a day, which plainly implicates other compelling government interests, i.e., discouraging harassment of jurors, protecting juror privacy, and encouraging free and open discussion among jurors. See Economou, 850 F. Supp. at 850-53 & n.3 ("While juror interviews by counsel may be appropriate at the courthouse steps immediately after the jury renders a verdict and is excused, an intrusion into the privacy of the jurors' addresses and telephone numbers weeks after the conclusion of trial is inappropriate where there has been no preliminary showing of juror misconduct."); Mitchell, 958 F.3d at 787 ("It is incumbent upon the courts to protect jurors from the annoyance and harassment of such conduct, and it is improper and unethical for lawyers to interview jurors to discover what was the course of deliberation of a trial jury,") (cleaned up).

Thus, not only has there been no suggestion of juror misconduct or impropriety, but Huizar's desire to interview jurors amounts to an attempt to acquire some tactical advantage by uncovering information helpful in crafting Huizar's defense and counsel's arguments at a future trial. The preservation of the integrity of the jury system and need to avoid juror harassment outweighs such a "fishing expedition" wholly untethered from any constitutional right. See United States v. Wright, 506 F.3d 1293, 1303 (10th Cir. 2007) (district courts have "wide discretion to restrict contact with jurors to protect jurors from fishing expeditions"; no abuse of discretion in denying juror contact where there was no claim of external interference with jury) (cleaned up); United States v.

1  Eagle, 539 F.2d 1166, 1170-71 (8th Cir. 1976) (no right to subpoena

2  jurors after a verdict is rendered in the absence of "specific

3  allegations that any of them engaged in overt improper acts"); cf.

4  Haeberle, 739 F.2d at 1022 (attorney's efforts to conduct post-

5  verdict interview is "not without first amendment significance," but

6  attempts to acquire "information to satisfy . . . curiosity and to

7  improve their techniques of advocacy . . . are not 'paramount' like

8  the public's right to receive information necessary for informed

9  self-government"). And even if Huizar has some tenuous rights under

10 these circumstances, "those interests are not merely balanced but

11 plainly outweighed by the jurors' interest in privacy and the

12 public's interest in well-administered justice."  Id.

13      Huizar's reliance on cases involving speech by the general

14 public and the press -- that is, the First Amendment "right to

15 receive information" (Mot. at 9-10) -- is unavailing because

16 attorneys acting as advocates in judicial proceedings do not enjoy

17 the same First Amendment protections as the general public or the

18 press, both due to membership in a specialized profession and their

19 status as officers of the court.  See id. ("By voluntarily assuming

20 the special status of trial participants and officers of the court,

21 parties and their attorneys subject themselves to greater restraints

22 on their communications than might constitutionally be applied to the

23 general public."); Gentile, 501 U.S. at 1066 ("Membership in the bar

24 is a privilege burdened with conditions . . . .") (cleaned up);

25 Journal Pub'g Co. v. Mechem, 801 F.2d 1233, 1236 (10th Cir. 1986)

26 ("[W]hile a court may broadly proscribe attorney and party contact

27 with former jurors, it does not have the same freedom to restrict

28 press interviews with former jurors.").

Finally, defendant's tailoring argument largely rest on his misreading of the Court's Order as applying only to his team and accordingly should be disregarded.  In any case, such a specific order would be justified, in light of the compelling government interests, the specific concern raised by a juror, and the lack of any recognized countervailing interest, much less a constitutionally protected one, articulated by Huizar.  Thus, the Court's Order was appropriate and should stand.

## B.    If the Court Permits Juror Contact, It Should Impose Safeguards

To the extent the Court permits juror contact, the Court should exercise its discretion to impose strict measures to protect juror privacy, avoid juror harassment, and ensure fairness.  Specifically, (1) any party wishing to speak with jurors should submit for the Court's approval an opt-in letter to be sent to jurors, which should advise jurors: (a) they have complete discretion to decline contact or to terminate any agreed-upon contact once initiated; and (b) to report to the Court any contacts contrary to the juror's decision to decline or terminate the same.  (2) Any party who interviews a juror must advise the other parties of such contact and allow those parties an opportunity to interview that juror, should the juror consent.

## IV.  CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant Huizar's Motion to Vacate Court's Sua Sponte Order Prohibiting Defense Team Contact with Jurors Absent a Court Order (CR 762).