CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CAREL ALE (Bar No. 283717)
Email: Carel_Ale@fd.org
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
ADAM OLIN (Bar No. 298380)
Email: Adam_Olin@fd.org
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
Jose Huizar

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE HUIZAR,<br><br>Defendant. | Case No. CR-20-326-JFW<br><br>**REPLY ISO MOTION TO ENFORCE RULE 17 SUBPOENA DIRECTED TO STEVE MEISTER**<br><br>Date: December 16, 2022<br>Time: 8:00 a.m.<br>Ctrm: 7A – Hon. John F. Walter |

Case 2:20-cr-00326-JFW   Document 845   Filed 12/05/22   Page 2 of 12   Page ID #:20102

**TABLE OF EXHIBITS**

| | | |
|---|---|---|
| Exhibit 1 | 10/17/22 Correspondence re Subpoena Service, Meet-and-Confer, and Additional Time to Comply. | 4:26 |
| Exhibit 2 | 10/19-21/22 Correspondence re Compliance with Subpoena | 6:21, 7:7 |
| Exhibit 3 | 10/26-31/22 Correspondence re Compliance with Subpoena | 4:27, 7:9 |

# REPLY

The Opposition does not dispute that:

- Jose Huizar applied publicly for a subpoena to Steve Meister;
- the subpoena seeks evidence critical to his defense of Scheme M;
- this Court knows the Rule 17 standard and approved the subpoena based on a detailed showing;
- Huizar served the subpoena on Meister, an experienced defense lawyer retained to represent the key cooperating witness for Scheme M;
- the subpoena provided a reasonable return date, and Huizar's counsel offered Meister additional time to comply;
- Huizar's counsel agreed to a reasonable limitation on request 3;
- there was no relevant change in circumstances between the Court's decision to approve the subpoena and the return date;
- Meister flatly refused to honor – or even respond to – the parts of the subpoena that he didn't like;
- Meister did not seek additional time to respond to the subpoena, move to quash, or file a privilege log;
- nearly six weeks after being served with the subpoena and refusing to comply, Meister filed an opposition that did not once cite Rule 17, justify his failure to respond at all to most of the subpoena, or, with one qualified exception, provide a facial basis for quashal; and
- Meister still has not filed a motion to quash under Rule 17 or a privilege log.

Huizar has so far taken a restrained approach to Meister's subpoena response, confining his arguments in the top half of Rule 17. But, to be clear, Meister' flagrant defiance is extraordinary, and failing to enforce a subpoena under these circumstances would turn the process into a farce. Meister waived any challenge to the subpoena when, rather than seeking additional time or moving to quash, he elected not to respond to most of the subpoena "[a]bsent a [further] Court order." And even had he not waived his objections, he has largely not shown that compliance with the subpoena would be "unreasonable or oppressive." See Fed. R. Crim P. 17(c)(2). For the reasons above, below, and in the moving papers, the Court should grant the motion in full.

///

1

**1. The Court should enforce the subpoena in full because Meister waived any challenge when he failed to timely move to quash and file privilege log.**

The Opposition, which never once cites Rule 17, offers no defense for Meister's failure to file a timely motion to quash. And the record makes clear that Meister noncompliance <u>would have continued indefinitely</u> absent Huizar's deadline-driven efforts to seek enforcement. Indeed, even today, Meister has not moved to quash on grounds recognized by Rule 17. The recipient of a federal trial subpoena cannot simply refuse to respond, wait to see if the proponent files a motion, and then have his objections treated <u>as if</u> he honored the legal process.

To the contrary, the mandatory language of Rule 17 requires a party resisting a subpoena to file a "prompt" motion to quash. <u>United States v. Smith</u>, No. 21 CR 703-2, 2022 WL 4608259, at *2–4 (N.D. Ill. Sept. 30, 2022) (explaining that a subpoena recipient is not "at liberty to ignore [this] mandatory command of a Federal Rules of Criminal Procedure"). While Rule 17 doesn't specify a particular number of days, "promptness is defined as without unreasonable delay, performed readily or immediately or given without delay." <u>Id.</u> Where, as here, a subpoena provides reasonable time to comply, the failure to file a motion "within the time set in the subpoena" or otherwise without delay results in a waiver of objections. <u>U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.</u>, 238 F. Supp. 2d 270, 278 (D.D.C. 2002) (interpreting the analogous "timely" requirement for motions to quash under Rule 45); <u>Innomed Labs, LLC v. Alza Corp.</u>, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (same); 9 <u>Moore's Federal Practice - Civil</u> § 45.50 (2022).[1]

A recent order from the Northern District of Illinois demonstrates this rule. In <u>Smith</u>, the defendant (Smith) issued an early-return subpoena to the government's main

---

[1] The committee note to Rule 17(c) indicates that it is "substantially the same" as Rule 45 of the Federal Rules of Civil Procedure, which refers to a "timely" motion to quash. Fed. R. Civ. P. 45(d)(3)(A). Rule 45 does not set a minimum reasonable time for responding to a subpoena, 9 <u>Moore's Federal Practice - Civil</u> § 45.51 (2022), but the default is 14 days, Fed. R. Civ. P. 45(d)(2)(B)

cooperator (Lee) by serving Lee's lawyers. Smith, No. 21 CR 703-2, 2022 WL 4608259, at *1. Two months later, after Lee failed to acknowledge the subpoena, Smith moved for an order of enforcement. Id. In response to Smith's motion, Lee belatedly moved to quash, asserting, among other things, that compliance would violate the Fifth Amendment. Id. at *2. The Smith court granted the motion to enforce – which Smith "was forced to file due to [Lee's] failure to have promptly filed a Motion to Quash" – and ordered Lee to comply with the subpoena despite a claim of Constitutional privilege. Id. at *2-4.

In reaching that result, the court focused on the "express language of Rule 17(c)(2)," which places "the burden . . . on the party resisting a subpoena to 'promptly' file an appropriate motion . . . demonstrating that 'compliance would be unreasonable or oppressive." Id. at *1. "Since under Rule (17)(c)(2), promptness in bringing a motion is obligatory, not optional," the Smith court held that "a motion challenging a subpoena that is not 'promptly' brought . . . must be denied," and that a "district court is not at liberty to ignore the mandate of promptness in the Rule." Id. at *3 (everything omitted, cleaned up).

In the process, the court rejected Lee's effort to excuse his delay "by contending that[,] in the end, questions relating to a subpoena in a federal criminal case are within the 'court's exclusive authority to permit production of materials prior to trial.'" Id. at *3. As the Smith court explained:

> [I]gnoring Rule 17(c)(2)'s requirement of promptness and substituting a court's necessarily varying sense of right and wrong as the determinant for deciding whether a subpoena should be enforced is contrary to the very basis on which courts function and is contrary to the very premise of our adversary system of criminal justice . . . . To suggest that a judge has the discretion to ignore a command of the Federal Rules of Civil or Criminal Procedure in pursuit of his own necessarily idiosyncratic notion of what will best achieve "justice" in a particular case would usher in a regime of uncertainty and unpredictability in which justice and legitimacy would be measured, not by the commands of a statute or a Federal Rule of Criminal or Civil Procedure, but by the necessarily varying inclination of the particular judge to whom the case is assigned. That is a power which judges in this country do not enjoy.

Id. at *4 (emph. in orig.).

1       The well-reasoned order in Smith is instructive in this case, which is similar to Smith in relevant part. As in Smith, this Court issued a lawful subpoena to Meister based on a detailed and public showing. As in Smith, Huizar served the subpoena on Meister, an experienced lawyer retained to represent a cooperator in this case, with a reasonable return date. At that point, as in Smith, Meister had two legal options: (1) comply or (2) "promptly" move to quash.[2]

      Although Meister admitted that he possessed responsive documents commanded by the subpoena, as in Smith, he did not comply in full or file a prompt motion justifying his resistance. As in Smith, he also did not request additional time, either to comply or to file a motion to quash and a privilege log. Instead, with no change in the circumstances underlying the Court's decision to issue the subpoena, he decided on his own not to honor – or even respond to – most of the subpoena's commands. It was only when, as in Smith, Huizar "was forced to file" a motion to enforce the subpoena that Meister filed anything at all (six weeks after service).[3] And even today, unlike in Smith, where Lee at least belatedly attempted to comply with the mandatory language of Rule 17, Meister still has not attempted to file a motion to quash.

      As the Smith court noted: "We live in a world of deadlines," and "[t]he practice of law is no exception." Id. at *4 (everything omitted). "Lawyers and litigants who decide to play by rules of their own invention will find that the game cannot be won." Id. (everything omitted). Having elected a path of defiance, Meister is not now entitled to the benefits of lawful compliance. The Court should grant the motion in full because Meister waived any challenge to the subpoena by flouting Rule 17. Id.; see also United States v. Lipshitz, 18 F.R.D. 102, 104 (E.D.N.Y. 1955) (although recognizing that trial

---

[2] In practice, a third option was to ask for additional time to comply. In this case, Huizar's counsel affirmatively offered to give Meister additional time to comply with the subpoena. Snyder Decl., Ex. 1. Meister never requested additional time; instead, he made clear his intent to resist the subpoena "[a]bsent a Court order." Id., Ex. 3.

[3] It appears that, on a separate docket (CR-22-369, Docket Nos. 42-44), Meister initially claimed that his client was indigent, and therefore could not fund a response to the motion to enforce; when the Court asked Meister to submit a declaration establishing indigency, Meister withdrew the claim..

4

subpoenas did "not specify with sufficient particularity all of the papers and documents therein referred to," nonetheless enforcing Rule 17 subpoenas addressed to the government because "the Government . . . failed to move to quash them, as provided by Rule 17(c)").

**2. Even had Meister not waived any challenge, the Opposition establishes no basis to avoid full compliance with request 2 and compliance with request 3 subject to Huizar's agreed limitation. For request 1, the Opposition raises a factual claim that turns on verifiable evidence that the Court should order produced.**

Although the Court need not reach the merits of Meister's waived arguments for the reasons explained above, it can also grant the motion because, even if Meister <u>had</u> filed a timely motion to quash, he has largely failed to demonstrate a basis for quashal.

**a. Meister has not and cannot establish that compliance with request 2 would be unreasonable or oppressive.**

As explained in the moving papers, a motion to quash is not an open-ended vehicle for relitigating the decision to issue the subpoena. Instead, it allows limited objections if compliance would be "'unreasonable or oppressive,' but not otherwise." <u>United States v. Nixon</u>, 418 U.S. 683, 698 (1974) ("A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise"); Fed. R. Crim. P. 17(c)(2).[4] This limitation is especially salient in situations like this one, where the Court has already reviewed and approved the subpoena based on a public and detailed showing and none of the relevant facts have changed.

In light of that standard, it is telling that the Opposition does not even attempt to explain why complying with request 2 would be "unreasonable or oppressive." That is

---

[4] Because the Court has already ruled that Huizar satisfied Rule 17 in order to obtain the subpoena, he does not intend to relitigate the issue in this filing. With that said, he notes briefly the similarity between the subpoena in this case and the subpoena in the seminal case of <u>Nixon</u>. In <u>Nixon</u>, the government not only sought to obtain presidential tapes, but also all documents relating to the handling and subject matter of the tapes. <u>See</u> Ford Library Museum, <u>The Watergate Files</u>, https://bit.ly/3PdnQqt. The United States Supreme Court enforced that subpoena against the President of the United States over an express claim of Constitutional privilege. Huizar does not believe that Meister is entitled to greater protection than a President who, unlike him, fully complied with all procedural rules and raised a challenge to a subpoena grounded in an unsettled area of structural Constitutional law.

5

because it wouldn't. For the reasons set forth in the subpoena application, documents responsive to request 2 are critically relevant to Huizar's defense to Scheme M, which turns on the whipsaw and shifting testimony of Morrie Goldman. Meister admits that responsive documents exist and are in his possession. Locating them is as simple and unoppressive as searching his emails or text messages for communications with a handful of people. There is, simply, no lawful basis to avoid enforcement.

Nevertheless, ignoring Rule 17 entirely, Meister seeks to justify his defiance of request 2 based on his personal assessment that "the issue" was "settled at a previous hearing." Opp'n at 5:26-27. As Huizar explained in meet-and-confer correspondence with Meister, this conclusion is wrong for several reasons:

> First, and most importantly, Judge Walter never said that we are not entitled to these documents . . . . The best evidence of that is the subpoena in your possession. Judge Walter is a meticulous judge and is not issuing defense subpoenas on a whim. We made a specific and detailed showing to him, requested a subpoena with three straightforward requests, and he granted it. That's all that really matters. But to briefly address your comments about prior litigation, I think two things are important to know. First, you and the government are not on equal footing when it comes to disclosure. Different rules and standards apply, as do different timelines. The judge agrees that we have satisfied the standard for this subpoena, and that the documents should be produced now. Second, Judge Walter previously denied our discovery motions without prejudice on two grounds: (1) when requesting communications with all counsel for all cooperators, we had not made a sufficiently specific showing, and (2) the government's deadline for producing Brady and Giglio material had not yet come. In your case, we have made a specific and detailed showing about the course of your client's cooperation and the handling of the recording, which is why the subpoena request was granted by Judge Walter.

Snyder Decl., Ex. 2.

To briefly add to those points, the Court granted this subpoena application in October 2022. The earlier denial without prejudice of a motion to compel occurred in April 2022. Pointing to a decision on a different issue, on a different record, decided under a different standard to refuse compliance with a subpoena has nothing to do with Rule 17(c)(2) or any relevant law; and that is doubly true when the decision predated the order issuing the subpoena and none of the relevant facts have changed. Because it would be neither unreasonable nor oppressive, the Court should order Meister to fully

6

comply with request 2.⁵

### b. Meister cannot establish that compliance with request 3 would be unreasonable or oppressive because prosecutors' and agents' statements to him and his cooperator client are not attorney work product.

During the meet-and-confer process, Meister expressed concern that request 3 could require him to produce notes containing work product. While disputing the larger point, Huizar agreed as a compromise that Meister could redact his thoughts and mental impressions from any responsive materials. Snyder Decl., Ex. 2. Huizar further suggested that the parties "meet and confer and see if [they could] work it out," id., but Meister declined that invitation, id., Ex. 3.

In the Opposition, Meister does not deny that he possesses responsive notes reflecting statements made to him by the prosecution team. Instead, he argues that there is no way to disentangle prosecution-team statements from his own thoughts, and therefore that any prosecution-team statements contained in the notes are his attorney work product.

As Huizar would have tried to explain had Meister agreed to meet and confer, this argument is wrong as a matter of law. Consistent with the adversary focus of the work-product doctrine, the Ninth Circuit "limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." In re California Pub. Utilities Comm'n, 892 F.2d 778, 781 (9th Cir. 1989). To that end, "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected even

---

⁵ The hearing to which Meister refers occurred on April 25, 2022. There, the Court denied without prejudice Huizar's motion to compel all of the government's communications with all of the cooperators' lawyers under Brady and Giglio because (1) Huizar had not presented an adequate record, and (2) the government's deadline for compliance had not passed. Nonetheless, during that hearing, the Court spent considerable time discussing the declaration supporting the Meister subpoena application. Following that discussion, it said, in comparison to the rest of the motion: "[N]ow you're being more factually specific, but none of that is in the motion, and that's the problem I have with the motion." While the detailed public declaration filed in support of the Meister subpoena application may not have been sufficient to carry a different motion seeking different relief – something it never purported or sought to do – the Court's decision to approve the Meister subpoena confirms that it was sufficient to grant the relief requested here. None of the relevant facts have changed since the Court authorized the subpoena.

though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit." Loustalet v. Refco, Inc., 154 F.R.D. 243, 247 (C.D. Cal. 1993) (citing In re CPUC, 892 F.2d at 781 (citing Wright & Miller, Fed. Prac. & Proc. § 2024). Because Goldman is a witness, not a party, Meister's notes are therefore "wholly unprotected" in this case.

But even were that not the law, conduit communications between the prosecution team and a cooperating witness, shorn of opinion, are not the work product of the cooperating witness's attorney. The principal purpose of the work-product doctrine is to prevent litigation adversaries from "borrowing the wits" of one another. See Hickman v. Taylor, 329 U.S. 495, 516 (1947) ("Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary") (Jackson, J., concurring); Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 576 (9th Cir. 1992); Allen v. Chicago Transit Auth., 198 F.R.D. 495, 499 (N.D. Ill. 2001) ("The work product doctrine developed to protect the work of an attorney from encroachment by opposing counsel"). To the extent that Goldman has a litigation adversary, it is not Huizar, but the government with whom he and his lawyer are communicating. Allowing him to invoke the work-product doctrine against Huizar would stand the rule on its head, converting it from a limited shield of fairness between adversaries to a broad privilege of secrecy among them. See Allen, 198 F.R.D. at 500 ("Only by strictly construing the elements of work product, can the doctrine's original intent be best served. That intent is to protect the adversarial process by providing an environment of privacy in which a litigator may creatively develop strategies, legal theories, and mental impressions outside the ordinary liberal realm of federal discovery provisions, thereby insuring that the litigator's opponent is unable to ride on the litigator's wits.") (emph. added). Because it would be neither unreasonable nor oppressive, the Court should thus order Meister to comply with

8

request 3, subject to Huizar's agreed-upon limitation.[6]

### c. For request 1, given the many shifting explanations, the Court should order Meister to submit a declaration and produce all correspondence and documents related to the handling of the recording.

As explained in the initial application, Huizar received at least three different explanations from the government about when, how, and whether the Meister recording was produced. Docket No. 365 ¶¶ 11-13. Without filing a substantive declaration or exhibits, Meister now appears to claim that, although there is an email stating that he sent the recording to the government, the recording was never actually sent. While Huizar is open to reconsidering his position in light of new information, given the lack of verifiable evidence presented and the repeatedly-changing stories, Huizar does not accept that those are the facts.[7]

The Court need not wade into this morass for the reasons stated in Section 1, and

---

[6] As explained in the subpoena application, throughout this case, defense lawyers have served as conduits for otherwise-unrecorded, undocumented substantive communications between cooperating (and noncooperating) witnesses and prosecutors. See Docket No. 365 ¶¶ 9-10, 16. During those communications, which occur before and after documented proffers, prosecutors indicate what information they are seeking, what they believe the facts to be, whether they believe that statements made during an earlier interview were fulsome or accurate, and the consequences of failing to cooperate or adhering to certain facts. Counsel for the cooperators likewise make factual proffers and other representations on behalf of their clients, none of which are privileged once disclosed, and there may be a substantive back and forth. Because these substantive communications are happening before and after proffer sessions with no agent involved, there is no record except insofar as it exists in attorney notes and correspondence. And the limited communications produced to date reflect affirmative efforts to avoid creating a written record by seeking to conduct all conversations on the phone. Evidence of these conduit communications is essential – indeed, just as important as 302s – to defending against the key testimony in this case, which has at times undergone dramatic changes from one documented meeting to the next. In Goldman's case, for example, his first proffer fully exonerated Huizar of Scheme M by repeatedly denying the existence of a bribe. Then, a month later, at his second proffer, he offered a completely revised story based on lawyer's direction to view the evidence from "the FBI's view point." That about face almost certainly did not occur without significant substantive communications between his counsel and the government, including possibly warnings about the consequences of failing to reverse course, but evidence of those communications, which goes to the heart of the key evidence to be presented at trial, is unavailable except through devices like the present subpoena. The Court was therefore entirely correct when it approved the subpoena and none of the relevant facts have changed.

[7] For example, while the Opposition states that Meister reviewed his emails and attachments, it makes no mention of a filesharing link, which is how the government at one point said that the recording was transmitted. Docket No. 365 ¶¶ 11-12.

can simply grant the motion based on Meister's refusal to comply with Rule 17. If it seeks to explore the merits further, however, it should order Meister to submit a declaration and all communications and documents related to the handling of the recording. If it turns out that Meister produced the recording to the government without time stamps and a request to redact, then the privilege would be waived by a voluntary disclosure, offering a second basis to order compliance. If, conversely, it turns out that the sworn facts are different than Huizar understood, then Huizar may agree that Meister did not waive privilege though a voluntary disclosure. In that case, enforcement would still be required based on Meister's defiance of Rule 17, but not on the independent grounds of a privilege waiver.

                                    Respectfully submitted,

                                    CUAUHTEMOC ORTEGA
                                    Federal Public Defender

DATED: December 5, 2022      By  */s/ Charles J. Snyder*
                                    CHARLES J. SNYDER
                                    CAREL ALÉ
                                    ADAM OLIN
                                    Attorneys for Jose Huizar