CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CAREL ALÉ (Bar No. 283717)
(E-Mail: Carel_Ale@fd.org)
CHARLES SNYDER (Bar No. 287246)
(E-Mail: Charles_Snyder@fd.org)
ADAM OLIN (Bar No. 298380)
(E-Mail: Adam_Olin@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-4740
Facsimile: (213) 894-0081

Attorneys for Defendant
José Luis Huizar

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSE LUIS HUIZAR, *et al.*,

Defendants.

Case No. 20-CR-0326-JFW

**NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF (1) TEXT NOTIFICATIONS OF GPS TRACKER, AND (2) EXHIBIT PROFFERED BY COOPERATOR GEORGE CHIANG DURING HIS JULY 11, 2019 INTERVIEW**

Hearing Date: January 9, 2023
Time: 8:00 a.m.
Courtroom: 7 A - Hon. John F. Walter

TO: ACTING UNITED STATES ATTORNEY AND HIS COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, on January 9, 2023 at 8:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable John F. Walter, United States District Judge, Defendant José Luis Huizar will move to compel the production of (1) text notification of GPS tracking device on George Esparza's car, and (2) previously withheld "Exhibit 2" proffered by George Chiang during his July 11, 2019 interview:

**MOTION TO COMPEL**

Defendant José Luis Huizar, hereby moves this Honorable Court for an order to compel the government to produce (1) text notification of GPS tracking device on George Esparza's car, and (2) previously withheld "Exhibit 2" proffered by George Chiang during his July 11, 2019 interview.

This motion is based on the Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1983), the Fifth Amendment of the United States Constitution, the attached Memorandum of Points and Authorities, the declaration of counsel, all files and records in this case, and any further evidence as may be adduced at the hearing on this motion.

The parties have met and conferred regarding the requested discovery and have been unable to reach a resolution. Given the trial date, the defense is filing this motion to resolve the issue as soon as possible but will continue meeting and conferring with the government. Should the government agree to provide the requested information, the defense will alert the Court and withdraw its motion.

Respectfully submitted,
CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: December 12, 2022

*s/ Carel Alé*

Carel Alé
Charles J. Snyder
Adam Olin
Deputy Federal Public Defenders
Attorneys for Jose Luis Huizar

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. STATEMENT OF FACTS .......... 2
A. GPS Tracker on Esparza's Car .......... 2
B. Chiang's Proffered Documents In Support of His July 11, 2019 Interview .......... 3
1. July 11, 2019 Proffer .......... 3
2. Defense Requests Redacted Documents .......... 4
III. LEGAL ANALYSIS .......... 5
A. Legal Standards Governing This Request .......... 5
B. The Government Must Produce the Text Notifications Containing Data Obtained Pursuant to a Warrant .......... 6
C. Chiang's Proffer Documents Must be Produced; Even if Attorney-Client Privilege Was Claimed Subsequent to Production, It Was Waived .......... 9
IV. CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Federal Case** **Page(s)**

*Brady v. Maryland*,
373 U.S. 83 (1983)....................2, 5, 6, 7

*Giglio v. United States*,
405 U.S. 150 (1972)....................6

*Kyles v. Whitley*,
514 U.S. 419 (1995)....................7

*Nidec Corp. v. Victor Co. of Japan*,
249 F.R.D. 575 (N.D. Cal. 2007) ....................9, 10

*Silva v. Brown*,
416 F.3d 980 (9th Cir. 2005) ....................6

*Takiguchi v. MRI Int'l, Inc.*,
No. 2:13-CV-1183-HDM-VCF, 2016 WL 614393 (D. Nev. Feb. 16, 2016) ....................10

*United States v. Batziak*,
697 F.3d 1105 (9th Cir. 2012) ....................6

*United States v. Bryan*,
868 F.2d 1032 (9th Cir. 1989) ....................6

*United States v. Chevron Texaco Corp.*,
241 F. Supp. 2d 1065 (N.D. Cal. 2002)....................9

*United States v. Hernandez-Meza*,
720 F.3d 760 (9th Cir. 2013) ....................5, 6

*United States v. Lloyd*,
992 F. 2d 348 (D.C. Cir. 1993)....................6

*United States v. Soto–Zuniga*,
837 F.3d 992 (9th Cir. 2016) ....................6

*United States v. Stever*,
603 F.3d 747 (9th Cir. 2010) ....................6

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18 (9th Cir. 1981) .......... 9, 10

**Other Authorities**

Federal Rule of Criminal Procedure 16 .......... 2, 5

United States Constitution Fifth Amendment .......... 2

**TABLE OF EXHIBITS**

| Exhibit | Description | Citation |
|---|---|---|
| A | February 15, 2017 warrant application for authorization to place GPS tracking device on George Esparza's car | 1 |
| B | February 15, 2017 Order granting the government's warrant application | 1 |
| C | Government's April 3, 2017 *ex parte* application to extend the warrant for GPS tracking device | 1 |
| D | April 3, 2017 Order granting the government's extension request | 1 |
| E | Government's May 19, 2017 request for a second extension of the warrant for GPS tracking device | 1, 8 |
| F | May 19, 2017 Order granting the government's second extension request | 1, 8 |
| G | FBI 302 documenting the October 5, 2018 removal of the GPS tracker installed on George Esparza's car | 1 |
| H | May 12, 2017 Physical Surveillance Log documenting government surveillance of Esparza based on data obtained by the GPS tracker | 1 |
| I | Correspondence from October 16 through October 25, 2022 re: outstanding discovery requesting | 2 |
| J | Correspondence from November 16 and December 8, 2022 re: outstanding discovery requesting | 2 |
| K | August 12, 2017 302 documenting notifications sent to SA Civetti's FBI issued cellphone between July 1, 2017 and August 12, 2017, from the GPS tracking device on Esparza's car | 2, 8 |
| L | 302 Report of July 11, 2019 George Chiang interview | 2, 10 |
| M | Outline proffered by Chiang for July 11, 2019 interview | 3 |
| N | "Exhibit 2" to Outline proffered by Chiang for July 11, 2019 interview | 3 |
| O | Correspondence from December 4, 2022 through December 9, 2022 re: redacted documents | 3 |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Between 2016 and 2018, the government sought and obtained warrants for GPS tracking data from George Esparza's cellphone. Although the government used that data when applying for warrants, a significant part of this highly relevant data never made it to the defense. Agent Andrew Civetti lost (by the government's estimation) half of that data when he "inadvertently" failed to secure the data. Civetti's inadvertent destruction of evidence was only discovered by defense counsel's persistent requests in the face of the government's insistence no such evidence existed.

But there was yet more missing GPS data. This time from a tracker placed on Esparza's car. A court authorized the tracker from February 15 through July 3, 2017. This is a critical time in the government's theory of the case and Esparza's testimony. Esparza's claims about where he was during this time period are critical to disputed parts of his story and credibility. After repeatedly denying that any car GPS data even existed, the government found a spreadsheet on a hard drive abandoned by former Assistant United States Attorney Veronica Dragalin and purportedly forgotten by everyone, including its author Civetti. The spreadsheet (produced December 9, 2022) appears to contain Civetti's input of the GPS data from text notifications sent to his cellphone from the tracker. That's almost certainly not all of the evidence, however. For example, at times, the spreadsheet contains minute-by-minute GPS tracker data; but at others, the spreadsheet has no information for many hours. More disturbingly, the spreadsheet stops in early July, which is the last date authorized under the warrant, but other reports in the discovery (like Ex. K) indicate that Civetti continued monitored the pings well after warrant authorization ended. Indeed, the government left the GPS tracker on Esparza's car for **more than a year after the warrant expired**. The spreadsheet does not contain the tracker information from after the warrant expired but while the tracker was still on Esparza's car. The defense moves to compel Civetti's text notifications of Esparza' GPS tracker for the entire period the tracker was on Esparza's car.

Separately, the defense moves to compel an exhibit proffered by George Chiang but redacted by the government. On July 11, 2019, the government interviewed Chiang. In preparation for that interview, Chiang and his counsel prepared and produced two outlines with dozens of supporting exhibits. The exhibits had cover pages and were cited in the outlines. At some unknown time after the interview, the government directed its privilege review team to redact a proffered exhibit for attorney-client privilege. The government believes that it flagged the document and reached out to Chiang's attorney about the exhibit at which time he asserted privilege. Mr. Chiang's attorney now believes Chiang does not hold any privilege as to that document. Because Chiang's production was knowing and voluntary and no privilege applies, and the Court should order the government to produce the exhibit.

## II. STATEMENT OF FACTS

### A. GPS Tracker on Esparza's Car

On February 15, 2017, the government applied for and was granted a warrant to place a GPS tracker on George Esparza's ("Esparza") car for 45-days. Decl. of Counsel, Exs. A & B (filed under seal.) The government applied for and was granted two 45-day extensions of that warrant, the first on April 3, 2017, *id.*, Exs. C & D (filed under seal), and the second on May 19, 2017, *id.*, Exs. E & F (filed under seal.) The warrants only covered the period from February 15, 2017 through approximately July 3, 2017, and the Court's order "commanded" the government to remove the tracker on or before the last date of authorized use of the tracking device, and within 10 calendar days after the use of the tracking device has ended[.]" *Id.*, Ex. F. Nevertheless, the government did not remove the GPS tracker from Esparza's car until October 5, 2018. *Id.*, Ex. G.

The GPS tracker appears to have worked by sending text notifications to Civetti when Esparza's car entered certain designated Geofence areas. *Id.*, Ex. H at Casino_1980992 (May 12, 2017 Surveillance Log) ("Civetti received an alert from ESPARZA's vehicle tracker that the vehicle had entered into the Geofence area") (filed under seal). The text notifications included a Google Map link to Esparza's location. *Id.*,

at Casino_1980999 (screenshot of March 29 and March 30, 2017 text notifications attached to May 12, 2017 Surveillance Log). Those links can be copied from the text messages (even simply from the screenshot of the text messages in the investigative report) into a web browser to track Esparza's movements.

On October 16, 2022, the defense sought the GPS tracker data for Esparza's car. Ex. I. On October 22, 2022, the government advised that "the manner in which GPS data for vehicles is obtained is that the ping is used in real time to take investigative steps that are otherwise documented (e.g., surveillance). It is not independently collected and preserved." *Id.* On December 8, 2022, the government advised that the text messages were preserved on Civetti's cellphone, that he did not delete the text messages, but that Civetti returned that particular phone to the FBI. *Id.*, Ex. J. The government believes that the phone no longer exists but has not confirmed whether that belief is correct. *Id.*

On December 9, 2022, the government produced an excel spreadsheet where Civetti purportedly documented the GPS tracker information. *Id.*, ¶22. Though the GPS tracker was not removed until October 5, 2018, the excel spreadsheet contained only information from February 14, 2017 through July 3, 2017. *Id.* Other evidence in discovery confirms that Civetti continued monitored the GPS tracker well after warrant authorization expired. *See e.g.*, *id.*, Ex. K (302 report listing "dates on which [Esparza's] vehicle. . . . provided a pertinent location ping and a screenshot was captured on SA Andy Civetti's FBI issued cell phone that was utilized to receive the vehicle pings" and listing dates from July 6, 2017 through August 12, 2017).

### B. Chiang's Proffered Documents In Support of His July 11, 2019 Interview

#### 1. July 11, 2019 Proffer

On July 11, 2019, Chiang, accompanied by his attorney, Stanley Friedman, was interviewed by the government. *Id.*, Ex. L (302 of Chiang 7/11/2019 Proffer) (filed under seal). According to the 302, "CHIANG's attorney proffered information (Exhibit A and Exhibit C) and the exhibits' supporting documents (Exhibits B and D respectively)." *Id.* "CHIANG confirmed that everything in those documents was true and accurate and

should be understood as CHIANG's own testimony. CHIANG provided the write up and exhibits to his attorney to provide to the government." *Id.* "Exhibit C" (described as an outline) had 46 supporting exhibits, each marked by a cover page, and referenced in the outline. Similarly, "Exhibit A" (also described as an outline), *id.*, Ex. M (filed under seal), had 37 supporting exhibits, each marked by a cover page. Exhibit 2 appears to correspond to "Exhibit A" where it is described as "Hazens TFAR Calculation Memo dated 9/9/15 and Letter to Mayors Office," *id.*, Ex. N at Casino_0369136, and cited to support Chiang's statement that "Neuman attempted to negotiate with planning department for a solution on TFAR[.]" *Id.* That exhibit was produced to the defense completely redacted with the notation, "Redacted by PRT." *Id.*, Ex. N.

The 302 report for the July 11, 2019 interview, which was drafted on January 27, 2020, makes no mention of later alterations or revisions to the information contained in the 302 or produced documents. *See generally id.*, Ex. L. Further, Chiang proffered with the government three more times; on March 3, 2020, March 17, 2020, and March 24, 2020. *Id.*, ¶16. None of the proffer reports or notes mention the government raising or Chiang or his attorney claiming privilege over any previously produced document. *Id.*

**2. Defense Requests Redacted Documents**

On December 4, 2022, defense counsel reached out to the government about the four redacted pages from the Chiang July 11, 2019 interview. *Id.*, Ex. O. That same day, the government replied that the pages were redacted by the government's privilege team based on a claim of attorney-client privilege. *Id.* The defense explained that since the documents were produced by Chiang and his attorney, the privilege had been waived, and asked the government to produce the documents. *Id.*

On December 5th, the government advised that it would not produce the documents because "Mr. Chiang stated the inclusion of privileged documents was inadvertent and thus not voluntary." *Id.* AUSA Mack Jenkins stated that he had "not reviewed" the documents. *Id.* The defense then asked for any correspondence or report documenting the claw back request and confirmation that no member of the prosecution

team, including investigating agents, had reviewed the documents. *Id.* AUSA Jenkins then revealed that while he had not viewed the documents, in fact "someone on the government (outside of [the] PRT) did because it was someone on [the government's] side that flagged them." *Id*. In other words, the prosecution team had reviewed the documents and themselves—not Chiang or his attorney—later decided the exhibit (produced with a cover page at a proffer session) was nonetheless privileged.

On December 9, 2022, the government stated it could not locate correspondence about the alleged privilege claim and believed that the lack of correspondence confirmed that the assertion of privilege had been a verbal communication. *Id.* On December 9, 2022, counsel for the defense spoke with Mr. Friedman, Chiang's attorney. *Id.*, ¶18-19. At that time, Mr. Friedman did not recall clawing back any document. *Id*. He advised he would review his records and advise defense counsel on Monday, December 12th. *Id.*

On December 12, 2022, Mr. Friedman advised defense counsel that after reviewing his records he believed the document could be privileged but it was not Chiang's to assert and that Chiang did not hold a privilege as to that document. *Id.*, ¶24. Mr. Friedman advised he took no position on this request. *Id.*

## III. LEGAL ANALYSIS

### A. Legal Standards Governing This Request[1]

Federal Rule of Criminal Procedure 16 requires the government to "disclose any documents or other objects within its possession, custody, or control that are material to preparing the defense" upon request by the defense, *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (cleaned up), evidence that the government intends to use in its case-in-chief, and evidence that was obtained from, or belongs to the defendant, Fed. R. Crim. P. 16(a)(1)(E)(i)-(iii). Rule 16(a) "grants criminal defendants a broad right

[1] The defense has previously provided an extended discussion of the legal standard applicable to the government's discovery obligations pursuant to Rule 16 and *Brady*. (*See* ECF No. 381, 7-11.) Accordingly, in conformity with the Court's guidance to limit briefing, the defense provides an abbreviated legal standards section but relies on the previously produced recitation of the law.

to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). "Materiality is a 'low threshold; it is satisfied so long as the information ... would have helped' to prepare a defense." *United States v. Soto–Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016). The government's "[l]ack of knowledge or even a showing of due diligence [doesn't] excuse noncompliance." *Hernandez-Meza*, 720 F.3d at 768.

The government violates *Brady* "where (1) the evidence in question is favorable to the accused in that it is exculpatory or impeachment evidence, (2) the government willfully or *inadvertently* suppresses this evidence, and (3) prejudice ensues from the suppression (i.e., the evidence is 'material')." *Silva v. Brown*, 416 F.3d 980, 985 (9th Cir. 2005) (emphasis added) (citing *Strickler v. Green*, 527 U.S. 263, 281–82 (1999)). That is especially so "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' [and] nondisclosure of evidence affect[s] credibility . . . ." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Discoverable evidence includes evidence that could "play an important role in uncovering admissible evidence, aiding witness preparation, *corroborating testimony*, or *assisting impeachment or rebuttal*." *United States v. Lloyd*, 992 F. 2d 348, 351 (D.C. Cir. 1993) (cleaned up) (emphases added). "Where a defendant seeking discovery from the government has demonstrated materiality, the district court should not merely defer to government assertions that discovery would be fruitless; criminal defendants should not have to rely solely on the government's word that further discovery is unnecessary." *United States v. Batziak*, 697 F.3d 1105, 1112-13 (9th Cir. 2012).

**B. The Government Must Produce the Text Notifications Containing Data Obtained Pursuant to a Warrant**

The text notifications of the GPS tracker on Esparza's car are in the government's possession,[2] material, and discoverable. Information about the government's key

---

[2] The government has access to or possession of the requested information. *See United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989) ("The prosecutor will be

cooperator's movements is material to impeaching Esparza and the government's investigation. There is no basis to deny this request.

The text notifications contain material information about Esparza's movements from February through July 2017, the warrant period and beyond. More than any cooperator, Esparza has made specific claims, including in his prior trial testimony, about where he was at specific times during that period. For example, during the 940 Hill/Lee trial, Esparza testified that there were three planned money drops: the first on February 10, 2017, the second sometime in March, and the third in April. (ECF No. 561 (Tr. 06/17/2022 940 Hill/Lee Jury Trial), 958-59.) Justin Kim contradicted that testimony for years and even at trial Kim could not recall if it was one or two before finally admitting that he didn't "actually think there were two" cash pickups. (ECF No. 564 (Tr. 06/23/2022 940 Hill/Lee Jury Trial), 120 ("I don't actually think there were two.").) Esparza has also made a number of other specific claims about where he was at key times during the spring and summer of 2017. Not only is the GPS data critical to witness impeachment, but to demonstrating the disorganization and unreliability of the government's investigation. *See Kyles v. Whitley*, 514 U.S. 419, 446 (1995) (citing with approval *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible *Brady* violation"); *Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985) (awarding new trial where government withheld *Brady* evidence "carried within it the potential . . . for the . . . discrediting . . . of the police methods employed in assembling the case")).

---

deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant.") To the extent the government alleges that the FBI destroyed Civetti's phone, it has produced no confirmation (such as a custodian of records declaration), no policy describing such destruction, nor any basis for that assumption. Given that such phones presumably are of investigative significance, the complete destruction of such a device or the data contained within it, is, at the very least, an assertion worthy of additional inquiry.

On December 9, 2022, the government produced excel spreadsheets purporting to contain Civetti's documentation of GPS notifications. Though the warrant expired on July 3, 2017, Decl. of Counsel, Ex. D, the GPS tracker was on Esparza's car until October 5, 2018, *id.*, Ex. E.[3] The spreadsheet does not contain GPS information obtained outside of the warrant period, though the tracker continued to send text notifications to Civetti and Civetti continued to use the GPS data after warrant authorization expired. *See* Decl. of Counsel, Ex. K (302 Report documenting post-authorization GPS text alerts). That information is material to understanding the totality of Esparza's movements and associations throughout the period after July 3, 2017 and the completeness and reliability of the government's investigation.

Despite the government's claims, the excel spreadsheets are not a substitute for the data and text notifications obtained pursuant to the warrant. While the spreadsheet is Civetti's documentation of some of the data received through the GPS tracker, Civetti's charts have been shown to contain critical errors. As part of the SZNW trial, for example, it was revealed that Civetti's chart documenting the casino data listed incorrect dates and amounts of alleged trips. Specifically, it was shown that Civetti's chart, which was included in the FSI, incorrectly listed Huizar as having received $65,000 in chips. (ECF No. 826 (Tr. 11/08/2022 SZNW Jury Trial Day 9), at 1992-93.) Because of the underlying video data, however, the defense was able to prove that Civetti's chart was wrong and that it was another friend of Wei Huang's who received the $65,000, not Huizar. (*Id.* at 2002-04.) The inconsistencies in Civetti's documentation underscores the need for the data that could confirm or dispel Civetti's charts or spreadsheets.

The text notifications are in the government's possession and are material to the defense's impeachment of Esparza, understanding of the government's failure to comply

---

[3] The warrant commanded the government to "remove the tracking device from the person or property to be tracked, if able to do so, on or before the last date of authorized use of the tracking device, and, within 10 calendar days after the use of the tracking device has ended[.]" Decl. of Counsel, Ex. F. Yet, the tracker was not removed for more than a year. No warrant return has been produced to the defense.

with a Court order and the competency of its investigation, and could form the basis of additional motion practice. The Court should compel the government to provide this evidence to the defense.

**C. Chiang's Proffer Documents Must be Produced; Even if Attorney-Client Privilege Was Claimed Subsequent to Production, It Was Waived**

The Court should also order the government to produce the redacted exhibit provided in support of Chiang's July 11, 2019 proffer. Chiang's disclosure was voluntary, the government reviewed the documents, there is no evidence that Chiang or his attorney asserted privilege, and Huizar is entitled to receive those documents.

"As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it. One of the elements that the asserting party must prove is that it has not waived the privilege." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (internal citation omitted). (*See also* ECF No. 316 (Govt. Ominbus Op.), at 30.) Attorney-client communications "made in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citation omitted). "If an e-mail with otherwise privileged attachments is sent to a third party, [the client] loses the privilege with respect to that e-mail and all of the attached e-mails." *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1075 n.6 (N.D. Cal. 2002) (emphasis in original).

As previously recounted, Chiang knowingly and voluntarily provided outlines and supporting exhibits to the government in connection with his July 11, 2019 proffer. These documents were not inadvertently produced. They were labeled with exhibits pages, cited in the outlines, and provided through counsel. The manner in which the documents were produced underscores that the documents were curated, selected, and produced knowingly and voluntarily. Moreover, the description of the exhibit evidences that it is not privileged. Chiang stated in the outline that Hazens "attempted to negotiate with [the]

planning department for a solution on TFAR," cited to exhibit 2, which he described as "Hazens TFAR Calculation Memo dated 9/9/15 and Letter to Mayor's Office." Decl. of Counsel, Ex. L at Casino_0369136.[4] Chiang's description suggests these documents relate to Hazen's negotiations with the city. At a minimum, the letter to the mayor's office and its attachments cannot be privileged. Moreover, now it is clear that Chiang does not assert privilege over the document he produced. Decl. of Counsel, ¶24. It was the government's prosecution team who, after reviewing the exhibit with Chiang and his attorney at the proffer, at some unknown time later, decided that the exhibit was privileged. *Id.*, Ex. N. The government, of course, has no standing to assert the privilege held by a third party. *See Takiguchi v. MRI Int'l, Inc.*, No. 2:13-CV-1183-HDM-VCF, 2016 WL 614393, at *3 & n. 5 (D. Nev. Feb. 16, 2016) ("A third party may not invoke another's attorney-client privilege in order to avoid disclosure of information").[5]

Chiang produced the exhibit knowingly and voluntarily, with the assistance of counsel, and he asserts no privilege over the exhibit. The government must produce the exhibit to the defense.

## IV. CONCLUSION

For the reasons stated above, the defense respectfully requests an order compelling the government to produce the requested discovery.

Respectfully submitted,
CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: December 12, 2022

/s/ *Carel Alé*

Carel Alé
Charles J. Snyder
Adam Olin
Deputy Federal Public Defenders
Attorneys for Jose Huizar

---

[4] The relevance of this exhibit is that the government alleges that at this same time, Huizar was already involved in resolving the TFAR issue on behalf of Hazens. (ECF No. 74, OA 127.)

[5] Even if a third-party could claim such a privilege, any privilege was destroyed by Chiang's presence and his knowing and voluntary production to the government. *See Nidec Corp.*, 249 F.R.D. at 578. It is the burden of the party asserting the privilege to prove that it was not waived. *Weil*, 647 F.2d at 25.