E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal Bar. No. 301924)
BRIAN R. FAERSTEIN (Cal Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091/0363/3289/3819
     Facsimile: (213) 894-6436
     E-mail:    Mack.Jenkins@usdoj.gov
                Cassie.Palmer@usdoj.gov
                Susan.Har@usdoj.gov
                Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>JOSÉ LUIS HUIZAR,<br><br>　　　　Defendant. | No. CR 2:20-326(A)-JFW-1<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT JOSÉ LUIS HUIZAR'S MOTION TO SEVER (DKT. 856); EXHIBIT 1<br><br>Hearing Date: [Court will set if necessary]<br>Hearing Time: N/A<br>Location:　　Courtroom of the Hon. of the Hon. John F. Walter |

        Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Mack E. Jenkins,

Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby files

1    its opposition to defendant José Luis Huizar's Motion to Sever José

2    Huizar's and Raymond Chan's Trials.  (Dkt. 856.)

3        This opposition is based upon the attached memorandum of points

4    and authorities, the accompanying exhibit, the files and records in

5    this case, and such further evidence and argument as the Court may

6    permit.

7     Dated: December 15, 2022        Respectfully submitted,

8                                     E. MARTIN ESTRADA
                                      United States Attorney
9
                                      SCOTT M. GARRINGER
10                                    Assistant United States Attorney
                                      Chief, Criminal Division
11

12                                    _____/s/_____
                                      MACK E. JENKINS
13                                    CASSIE D. PALMER
                                      SUSAN S. HAR
14                                    BRIAN R. FAERSTEIN
                                      Assistant United States Attorneys
15
                                      Attorneys for Plaintiff
16                                    UNITED STATES OF AMERICA

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................ii

TABLE OF EXHIBITS.....................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION....................................................1

II.   RELEVANT BACKGROUND............................................1

III.  ARGUMENT.......................................................3

      A.    Legal Standard...........................................3

      B.    The Defenses Are Not Irreconcilable and Mutually
            Exclusive................................................4

      C.    There is No Danger of Prejudicial Inadmissible
            Evidence.................................................8

      D.    Jury Instructions Will Mitigate Any Potential
            Prejudice...............................................10

IV.   CONCLUSION....................................................14

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

Lambright v. Stewart,

5
　191 F.3d 1181 (9th Cir. 1999) .................................... 13

6

Richardson v. Marsh,
　481 U.S. 200 (1987) ............................................ 12

7

8

Runningeagle v. Ryan,
　686 F.3d 758 (9th Cir. 2012) .................................. 5, 6

9

United States v. Angwin,
　271 F.3d 786 (9th Cir. 2001) .................................... 13

10

11

United States v. Fernandez,
　388 F.3d 1199 (9th Cir. 2004) ........................... 10, 11, 13

12

13

United States v. Hernandez-Orellana,
　539 F.3d 994 (9th Cir. 2008) ................................... 4, 8

14

United States v. Mayfield,
　189 F.3d 895 (9th Cir. 1999) ......................... 8, 9, 12, 13

15

16

United States v. Sherlock,
　962 F.2d 1349 (9th Cir. 1989) .................................... 4

17

18

United States v. Throckmorton,
　87 F.3d 1069 (9th Cir. 1996) ........................... 3, 4, 5, 8

19

United States v. Tootick,
　952 F.2d 1078 (9th Cir. 1991) .............................. 6, 7, 12

20

21

United States v. Torres,
　908 F.2d 1417 (9th Cir. 1990) .................................... 3

22

Zafiro v. United States,
　506 U.S. 534 (1993) ...................................... 3, 8, 9, 12

23

**Statutes**

24

25

18 U.S.C. § 1962(d) .................................................. 1

26

**Rules**

27

Fed. R. Crim. P. 12(c)(3) ........................................... 3

28

**<u>Other Authority</u>**

Ninth Circuit Model Criminal
   Jury Instructions, No. 1.4 (2022 ed.) ............................. 9

Ninth Circuit Model Criminal
   Jury Instructions, No. 1.13 (2022 ed.) ........................... 11

iii

**TABLE OF EXHIBITS**

| Exhibit | Description | Cite |
|---------|-------------|------|
| 1 | Email chain between U.S. Attorney's Office and defense counsel, from October 11, 2022, through December 5, 2022 | Pg. 7:5-20 |

iv

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3      More than sixteen months after the severance deadline passed,

4   and less than three months before trial, defendant José Luis Huizar

5   ("Huizar") has moved to sever his trial from racketeering co-

6   conspirator and codefendant Raymond Chan ("Chan").[1]  Huizar's motion

7   offers little more than speculation and conjecture, and rests solely

8   on the barebones representation of Chan's counsel that his trial

9   strategy will include arguing that Huizar is guilty.  But even if

10  that representation were accurate -- based on other statements by

11  Chan's counsel throughout this litigation, including recently, there

12  is reason to believe it is not -- Chan's defense strategy would not

13  forge an irreconcilable and mutually exclusive conflict with Huizar's

14  defense, as Huizar must demonstrate at a minimum to obtain severance.

15  Nor does Huizar concretely identify any prejudicial evidence that

16  would come in against him only in a joint trial with Chan.  Even if

17  Huizar were to make either of these showings (and, to be clear, he

18  does not), timely and appropriate limiting instructions would

19  mitigate any potential prejudice arising out of defendants'

20  respective trial presentations.  Huizar thus fails to meet the heavy

21  burden of establishing prejudicial joinder, especially in light of

22  the strong preference for joint trials in conspiracy cases such as

23  this.  Huizar's motion should be denied.

24  **II.   RELEVANT BACKGROUND**

25     On May 13, 2021, the Court ordered that any motion to sever be

26

27     [1] Of the six defendants charged in the First Superseding
    Indictment ("FSI"), only defendants Huizar and Chan are charged in
28  Count One, violation of 18 U.S.C. § 1962(d): Racketeer Influenced and
    Corrupt Organizations ("RICO") Conspiracy.

filed by August 9, 2021.  (Dkt. 187 at 3.)  Codefendants Dae Yong Lee, 940 Hill, LLC, and Shen Zhen New World I, LLC (collectively, the "Developer Defendants") timely filed motions to sever, principally premised on the risk of purported "spillover evidence," perceived disparities in evidence and culpability, and the complexity of the case.  (See Dkt. 200, 201.)  Neither Huizar nor Chan moved to sever by the deadline on these or any other bases nor did they raise the issue with the Court at the hearing when severance was discussed or at any other time.  In support of the present motion, Huizar's counsel claims that, "[a]t that time, Huizar did not move to sever because he was not aware of a basis for severance."  (Dkt. 856-1 ¶ 2.)

The Court ultimately severed the case into three, with the Developer Defendants proceeding first in two separate trials, and Huizar and Chan set to follow together in the upcoming RICO conspiracy trial.  (Dkt. 390.)  The Court explained, "the jury in the larger more complex RICO case would be able to focus on the evidence against defendants Huizar and Chan and not worry[] about parsing out the First Superseding Indictment counts and supporting evidence that apply to the other defendants."  (Dkt. 413 at 27:4-8.)

Huizar now belatedly moves to sever based on one narrow but unfounded claim: that Chan's purported antagonistic defense strategy will prevent Huizar from receiving a fair trial.  (Dkt. 856 or "Mot.")  Huizar's claim is both untimely and without merit and should be rejected.[2]

_____

[2] Huizar contends that Chan's trial strategy described in the motion is a "new issue" excusing Huizar's 16-month-late motion. (Dkt. 856-1 ¶ 4.)  However, there is nothing novel about Chan's purported plan to draw distinctions between the evidence against two defendants in a joint trial, and this possibility should have been

*(footnote cont'd on next page)*

1    **III.   ARGUMENT**

2        **A.   Legal Standard**

3        The government set forth more fully the legal standards

4    governing severance under Rule 14 in its briefing in opposition to

5    the Developer Defendants' motions to sever, which the government

6    incorporates herein by reference.  (See Dkt. 228, 353.)

7        Most relevant here, the Supreme Court has held that "[m]utually

8    antagonistic defenses are not prejudicial per se," and "Rule 14 does

9    not require severance even if prejudice is shown; rather, it leaves

10   the tailoring of the relief to be granted, if any, to the district

11   court's sound discretion."  Zafiro v. United States, 506 U.S. 534,

12   538-39 (1993).  Moreover, "it is well settled that defendants are not

13   entitled to severance merely because they may have a better chance of

14   acquittal in separate trials."  Id. at 540.  Due to the preference

15   for joint trials of defendants properly joined under Rule 8(b), "a

16   district court should grant a severance under Rule 14 only if there

17   is a serious risk that a joint trial would compromise a specific

18   trial right of one of the defendants, or prevent the jury from making

19   a reliable judgment about guilt or innocence."  Id. at 539.

20       Following Zafiro, the Ninth Circuit similarly has made clear

21   that "[a]ntagonism between defenses or the desire of one defendant to

22   exculpate himself by inculpating a codefendant . . . is insufficient

23   to require severance."  United States v. Throckmorton, 87 F.3d 1069,

24   1072 (9th Cir. 1996).  Rather, "a defendant must show that **the core**

25   of the codefendant's defense is so irreconcilable with the core of

26   ────────────────────

27   plainly foreseeable to Huizar in 2021.  Huizar has not demonstrated
     good cause for his untimely motion under Fed. R. Crim. P. 12(c)(3),
     and his motion should be denied on this basis alone.  See, e.g.,

28   United States v. Torres, 908 F.2d 1417, 1424 (9th Cir. 1990) (Rule 12
     motion denied as untimely where filed three months after deadline).

1  his own defense that the acceptance of the codefendant's theory by

2  the jury precludes acquittal of the defendant." Id. (emphasis

3  added). "Antagonism between defenses is insufficient; the defenses

4  must be antagonistic to the point of being *irreconcilable and*

5  *mutually exclusive*." United States v. Sherlock, 962 F.2d 1349, 1363

6  (9th Cir. 1989) (emphasis added). The burden for establishing

7  prejudicial joinder is a "heavy one, and the district court's

8  decision not to sever trials seldom will be disturbed."[3] United

9  States v. Hernandez-Orellana, 539 F.3d 994, 1002 (9th Cir. 2008).

10      Huizar falls far short of meeting any of the prongs of this

11  heavy burden for at least the following reasons.[4]

12      **B.   The Defenses Are Not Irreconcilable and Mutually Exclusive**

13      Chan's vague purported defense strategy -- which is itself at

14  odds with defense theories Chan's counsel (Mr. Braun) recently has

15  posited -- does not establish an irreconcilable and mutually

16  exclusive defense that warrants, much less requires, severance.

17      Mr. Braun claims he will "compar[e] and contrast[] [Huizar's and

18  Chan's] conduct as criminal and noncriminal, respectively" and "argue

19  that Mr. Chan would not be in this case were it not for Mr. Huizar's

20  criminal conduct, as Mr. Chan is merely an innocent bystander who got

21  swept up as a narrative device in a misguided RICO theory." (Dkt.

22  856-2 ¶ 3.) But Chan's claim to be an "innocent bystander" would not

23  prevent the jury from finding that Huizar's conduct itself was not

---

25  [3] On appeal, "[a] defendant seeking reversal by reason of a
    district court's denial of a motion to sever must establish that the

26  prejudice he suffered from the joint trial was so clear, manifest or
    undue that he was denied a fair trial." Hernandez-Orellana, 539 F.3d

27  at 1001-02 (cleaned up).

    [4] Should the Court disagree, the government will be prepared to

28  proceed to trial against Huizar, the lead defendant, on the currently
    scheduled trial date.

criminal and that Huizar himself was caught up in the very same "misguided RICO theory."  Huizar could -- and very well may -- argue that he did not have the requisite corrupt intent or intent to defraud for the charged offenses, or that the alleged RICO conspiracy lacked the requisite pattern of racketeering activity beyond a reasonable doubt, or that none of the financial benefits he received were in connection with his official duties.  Chan's apparent conclusory threat to "exculpate himself by inculpating" Huizar does not in any way foreclose the jury from finding Huizar not guilty upon any of these (or other) potential theories of defense.  Throckmorton, 87 F.3d at 1072.

Nor does Chan's prospective strategy (if accurate) of comparing and contrasting the evidence against the defendants transform their defenses into irreconcilable and mutually exclusive theories.  Indeed, this is a common defense theme in any multi-defendant trial.  For example, in Runningeagle v. Ryan, 686 F.3d 758 (9th Cir. 2012), the Ninth Circuit found that defendants did not present mutually antagonistic defenses requiring severance in a murder trial even where one of the defendants (Tilden) "argued that all of the physical evidence linked Runningeagle to the murders, and none of it pointed to Tilden."  Id. at 776.  During closing, Tilden's attorney "repeatedly compared the evidence against Tilden to the evidence against Runningeagle."  Id.  The Ninth Circuit concluded that the "defenses were not in fact mutually antagonistic," explaining that "Tilden's defense was that he was innocent; Runningeagle's defense rested on the theory that the state failed to meet its burden of proof.  That Tilden highlighted the state's paucity of evidence as to

5

1  his guilt by focusing on the physical evidence implicating

2  Runningeagle does nothing to change this fact." Id. at 777.

3      United States v. Tootick, 952 F.2d 1078 (9th Cir. 1991), upon

4  which Huizar principally relies (Mot. at 2-3), further underscores

5  the lack of mutually exclusive defenses here.  In Tootick, the Ninth

6  Circuit found severance should have been granted for two defendants

7  charged with stabbing a victim, where "the principal defense of each

8  defendant was that the other alone committed the assaults." Id. at

9  1081.  Because the two defendants were the only people present (aside

10 from the victim) when the victim was stabbed, and they each solely

11 blamed the other, "the jury could not acquit [one defendant] without

12 disbelieving [the other].  Each defense theory contradicted the other

13 in such a way that the acquittal of one necessitates the conviction

14 of the other." Id.  Even under these circumstances, the Ninth

15 Circuit "decline[d] to adopt a per se rule against joinder" in cases

16 with "mutually exclusive defenses." Id. at 1083.

17     The charges and evidence against Huizar and Chan present none of

18 the potential dangers or mutually exclusive defenses at play in

19 Tootick.  Huizar and Chan did not operate in a vacuum, as numerous

20 co-conspirators and other witnesses will testify about the manner and

21 means of the RICO conspiracy and bribery scheme.  Defendants are

22 alleged to have played complementary, not conflicting, roles in

23 advancing the scheme.  Chan's views as to the criminality of the

24 conduct in which he helped Huizar engage (and the conduct he engaged

25 in without Huizar's knowledge) can neither absolve Chan of guilt nor

26 preclude Huizar from arguing his innocence.  And Huizar does not

27 identify any evidence or arguments **he** intends to make that would

28 exclusively shift blame to Chan.  In short, they cannot point the

6

1   finger at each other "in such a way that the acquittal of one

2   necessitates the conviction of the other." Tootick, 952 F.2d at 1081.

3         Mr. Braun's recent correspondence with the government casts

4   further doubt that the "core" of Chan's theory of defense is in fact

5   irreconcilable with that of Huizar.  In a series of emails, Mr. Braun

6   repeatedly represented his (and apparently his client's) view that

7   the government cannot meet its burden of proving a RICO conspiracy

8   and bribery scheme at trial.  (See Exhibit 1 attached hereto.)  Among

9   other things, Mr. Braun stated, notwithstanding the jury's recent

10  convictions of co-defendant Wei Huang's company (Shen Zhen New World)

11  on all counts: "the government will figure out why the idea that

12  [codefendant Wei] Huang was bribing Huizar with trips to Las Vegas

13  defies common sense," (Exh. 1 at 4, 12/1/22 Email from Mr. Braun);

14  "Have you figured out why Wei Huang never considered the [Las Vegas]

15  trips as a bribe," (Id. at 3, 12/2/22 Email from Mr. Braun); "I hope

16  you finally understand why Wei Huang never considered that the few

17  chips given to Huizar was a bribe," (Id. at 1, 12/5/22 Email from Mr.

18  Braun); "the idea that there was a RICO conspiracy is absurd," (Id.);

19  and "[a]ll you have is some chicken-shit charges against Huizar---no

20  big deal."  (Id.)  Any of these Chan theories of defense would

21  promote, not prejudice, Huizar's position at trial.

22        Tellingly, Huizar appears to recognize Chan's multi-fanged

23  approach, observing that "it appears that ***a core*** of Chan's trial

24  presentation will be arguing that he is sitting in a defense chair

25  solely because of his lawful association with a person, Huizar, whose

26  conduct was so unlawful that he was stained by interaction."  (Mot.

27  at 4 (emphasis added).)  But the standard is not whether "a core" of

28  a codefendant's defense will cause prejudice; rather, the critical

                                    7

1  inquiry is whether "***the core*** of the codefendant's defense is so

2  irreconcilable with ***the core*** of [a defendant's] own defense that the

3  acceptance of the codefendant's theory by the jury precludes

4  acquittal of the defendant." <u>Throckmorton</u>, 87 F.3d at 1072 (emphasis

5  added).  Huizar cannot meet this heavy burden on this record.

6      The best Huizar can do is contend that he will be caught in the

7  "blast radius" of Chan's prospective comparisons of the defendants'

8  conduct.  (Mot. at 3.)  This is insufficient to demonstrate prejudice

9  of irreconcilable and mutually exclusive defenses.  <u>See</u>, <u>e.g.</u>,

10  <u>Hernandez-Orellana</u>, 539 F.3d at 1001-02 (argument that "defense

11  amounted to a blame game" where one defendant "could point the finger

12  at [the other] without any remedy available" was the "sort of catch-

13  all guilt-by-association argument" that fails to meet the "heavy

14  burden" of prejudice).  The "core" of Chan's defense, regardless of

15  how he paints Huizar's conduct, is that, as a supposed "innocent

16  bystander," he did not facilitate or take any bribes.  The jury could

17  accept Chan's defense while also finding Huizar not guilty on any

18  number of theories.  Severance thus is not warranted.

19      **C.   There is No Danger of Prejudicial Inadmissible Evidence**

20      Huizar also fails to identify any specific unduly prejudicial

21  evidence that would be inadmissible against him in a separate trial,

22  nor any other "serious risk that a joint trial would compromise a

23  specific trial right." <u>Zafiro</u>, 506 U.S. at 539.  His motion should

24  be denied for this reason as well.

25      Huizar points to <u>United States v. Mayfield</u>, 189 F.3d 895 (9th

26  Cir. 1999), as a second example (in addition to <u>Tootick</u>) of the Ninth

27  Circuit requiring severance purportedly because of prejudicial

28  mutually antagonistic defenses.  What Huizar fails to mention is that

the Ninth Circuit in <u>Mayfield</u> was especially troubled by highly
prejudicial and inadmissible evidence that came in during the trial
in contravention of pretrial rulings.

Specifically, the court found the defendant was "denied his
Sixth Amendment right to confront witnesses against him when the
district court allowed a police officer's inculpatory testimony about
a 'reliable' police informant and when [the codefendant's] out-of-
court confession was introduced against [the defendant]." <u>Id.</u> at
901. The codefendant elicited inadmissible hearsay (in the form of
statements from a search warrant affidavit) of a non-testifying
informant and separately eviscerated a pretrial stipulation regarding
<u>Bruton</u> redactions to the codefendant's post-arrest statement. <u>Id.</u> at
901-03. Without timely limiting instructions (discussed further
below), the Ninth Circuit found that these Sixth Amendment violations
constituted "precisely the sort of circumstances that the <u>Zafiro</u>
Court envisioned *would* require severance because of the heightened
risk of serious prejudice." <u>Id.</u> at 905 (emphasis in original).

Huizar identifies nothing of the kind here nor can he. As an
initial matter, argument of Chan's counsel is not evidence, as the
jury will be instructed.[5] Other than Mr. Braun's prospective
arguments, Huizar merely speculates that Chan's "witness exams" and
"[Chan's] own testimony" will "drive home the point of Huizar's
guilt," and that Chan "will also seek to highlight the most
emotionally-evocative aspects of the government's case, in which Chan
largely did not participate." (Mot. at 3-4.) However, what Huizar

---

[5] Ninth Circuit Model Criminal Jury Instructions, No. 1.4 (2022
ed.) ("The following things are not evidence, and you must not
consider them as evidence in deciding the facts of this case: First,
statements and arguments of the attorneys[]".)

1  ignores is that essentially all of this evidence will be presented at

2  Huizar's trial even if he were the sole defendant; moreover, much of

3  it cannot be credibly disputed.  For example, the evidence that

4  Huizar received lavish benefits and trips from Wei Huang along with

5  $600,000 collateral from Huang to settle a sexual harassment lawsuit

6  is overwhelming and uncontroverted.  As for Huizar's concern about

7  Chan drawing emphasis on purportedly "emotionally-evocative"

8  evidence, such a purported (and meritless) spillover argument would

9  have been one for Chan -- not Huizar -- to raise by the prior

10  deadline.  In any event, Chan **did** conspire with Huizar regarding

11  certain personally sensitive aspects of the bribery scheme, such as

12  the sexual harassment lawsuit settlement, further underscoring the

13  appropriateness of a joint trial in this case.  (See FSI, Count 1,

14  Overt Acts 25-26, 30, 33, 35, 37, 39, 47-48.)

15      Huizar also fails to point to any specific evidence that would

16  be inadmissible against him in a separate trial, especially given

17  both defendants are charged in the same RICO conspiracy and same

18  bribery scheme.  The preference for joint trials is "particularly

19  appropriate where the co-defendants are charged with conspiracy,

20  because the concern for judicial efficiency is less likely to be

21  outweighed by possible prejudice to the defendants when much of the

22  same evidence would be admissible against each of them in separate

23  trials."  See United States v. Fernandez, 388 F.3d 1199, 1242 (9th

24  Cir. 2004).  Huizar's speculation is not a substitute for concrete

25  and compelling examples of prejudice requiring severance.

26      **D.   Jury Instructions Will Mitigate Any Potential Prejudice**

27      Huizar's further claim that Mr. Braun's stated intent to act as

28  a "second prosecutor" would be "extraordinarily prejudicial and

1   unfair" and require severance (Mot. at 4; see also Dkt. 856-2 ¶ 4),

2   is similarly without merit.  The standard jury instruction directing

3   the jury with how to separately and fairly consider evidence in a

4   multi-defendant case[6] plus timely limiting instructions can and will

5   mitigate any potential impact of Mr. Braun's defense strategy,

6   whatever it ultimately turns out to be, at trial.

7       The Ninth Circuit has "repeatedly held that a district court's

8   careful and frequent limiting instructions to the jury, explaining

9   how and against whom certain evidence may be considered, can reduce

10  or eliminate any possibility of prejudice arising from a joint

11  trial."  Fernandez, 388 F.3d at 1243.  In Fernandez, the Ninth

12  Circuit affirmed the denial of multiple motions to sever in an 11-

13  defendant RICO conspiracy trial, in part where "the district court

14  instructed the jury that it must consider the evidence against each

15  defendant and evaluate each defendant's guilt separately, stating [as

16  such] on the first day of trial and repeatedly throughout the

17  proceedings."  Id.  The court concluded, "[c]ombined with its

18  detailed instructions on the law governing conspiracies, and on

19  substantive RICO violations, the district court's explanatory and

20  limiting instructions to the jury are more than sufficient to guard

21  against the possibility of prejudice to the defendants."  Id.  The

22  same safeguards will be in place here, and "juries are presumed to

23

24

    ───────────────

25      [6] Ninth Circuit Model Criminal Jury Instructions, No. 1.13 (2022
    ed.) ("Although the defendants are being tried together, you must
26  give separate consideration to each defendant.  In doing so, you must
    determine which evidence in the case applies to each defendant,
27  disregarding any evidence admitted solely against some other
    defendant.  The fact that you may find one of the defendants guilty
28  or not guilty should not control your verdict as to any other
    defendant.")

                                    11

1   follow their instructions." Zafiro, 506 U.S. at 540-41 (quoting

2   Richardson v. Marsh, 481 U.S. 200, 211 (1987)).

3       The two Ninth Circuit cases upon which Huizar relies in his

4   motion -- Tootick and Mayfield -- actually further illustrate the

5   government's point.  In both cases, the Ninth Circuit found that

6   prejudicial statements of counsel purportedly acting as a "second

7   prosecutor" -- Tootick, 952 F.2d at 1082, 1084; Mayfield, 189 F.3d at

8   897 -- could have been cured by appropriate limiting instructions.

9       In Tootick, a two-defendant assault trial where each defendant

10   pointed the finger at the other, the Ninth Circuit catalogued

11   numerous instances where the trial judge should have provided

12   limiting instructions.  Tootick, 952 F.2d at 1083-85.  The court

13   ultimately found reversible prejudice based on "the number and types

14   of prejudicial incidents that were not corrected by instructions from

15   the court."  Id.  The Ninth Circuit was highly critical of the

16   district court's oversight of the trial, including that "[n]o

17   cautioning instructions were given directly after the damaging

18   opening arguments of the respective defendants" and "[n]o reins were

19   placed on defendants' respective counsel as they acted as

20   unsanctioned prosecutors during the course of the trial."  Id. at

21   1085.  The court recognized that "[i]t is assumed that juries will

22   listen to and follow the trial judge's instructions" and instructions

23   can "neutralize prejudice" so long as they are "proper and timely."

24   Id.  The failure to provide such instructions compelled the reversal

25   in that case.  Id. at 1086.  In his motion, Huizar quotes liberally

26   from Tootick about the potential pitfalls of a joint trial with

27   antagonistic defenses.  (Mot. at 2-3.)  But implicit in Tootick is

28

1  that all of those potential pitfalls can be adequately mitigated

2  through the trial court's vigilance and timely instructions.

3      Similarly, in Mayfield, the trial court failed to give timely

4  limiting instructions, even when requested by the defense, to

5  mitigate the codefendant's introduction of highly incriminating

6  impermissible evidence and his arguments in closing geared almost

7  entirely at proving the guilt of the defendant.  Mayfield, 189 F.3d

8  at 900-03.  The Ninth Circuit found reversible prejudice in the

9  district court's abdication of its "duty to police the tactics of

10 [the codefendant's] counsel," where the court had a duty "to sever or

11 use more rigorous and timely jury instructions to mitigate the

12 prejudice." Id. at 906.

13     Here, any potential prejudice presented by Chan's defense

14 strategy, including argument and questions offered by Mr. Braun in

15 opening and/or closing and through witness examinations, can be

16 effectively mitigated by timely and sufficiently robust limiting

17 instructions.  Fernandez, 388 F.3d at 1243.  Any potential prejudice

18 can be further alleviated through use of separate verdict forms for

19 each defendant.  See United States v. Angwin, 271 F.3d 786, 796 (9th

20 Cir. 2001), overruled on other grounds by United States v. Lopez, 484

21 F.3d 1186 (9th Cir. 2007).  The government intends to work

22 constructively with defense counsel and the Court to ensure

23 appropriate instructions are provided as necessary during trial to

24 guard against Mr. Braun's "tactics" and any of his attempts to act as

25 a "second prosecutor."[7]

26

27     [7] As an alternative measure, the Ninth Circuit recognizes the
use of dual juries to mitigate potential undue prejudice in joint

28 trials.  See Lambright v. Stewart, 191 F.3d 1181, 1185 (9th Cir.

*(footnote cont'd on next page)*

13

**IV.   CONCLUSION**

     For the foregoing reasons, defendant Huizar's motion to sever should be denied.  However, should the Court find that severance is necessary, the government requests that the lead defendant, Huizar, proceed to trial first and on the current date of February 21, 2023.

---

1999) ("[D]ual juries are in wide use and . . . they have worked out just fine.").  The government nonetheless believes the Court's instructions, particularly in light of the lack of irreconcilable and mutually exclusive defenses, will be sufficient to protect both defendants' right to a fair trial.

14