E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
CASSIE D. PALMER (Cal. Bar No. 268383)
SUSAN S. HAR (Cal Bar. No. 301924)
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091/0363/3289/3819
     Facsimile: (213) 894-6436
     E-mail:    Mack.Jenkins@usdoj.gov
                Cassie.Palmer@usdoj.gov
                Susan.Har@usdoj.gov
                Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:20-326(A)-JFW-1 |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANT JOSÉ LUIS HUIZAR'S MOTION TO COMPEL PRODUCTION OF (1) TEXT NOTIFICATIONS OF GPS TRACKER, AND (2) EXHIBIT PROFFERED BY COOPERATOR GEORGE CHIANG DURING HIS JULY 11, 2019 INTERVIEW; DECLARATION OF SPECIAL AGENT ANDREW R. CIVETTI; EXHIBITS 1-7 |
| v. | |
| JOSÉ LUIS HUIZAR, | |
| Defendant. | |
| | Hearing Date: January 9, 2023 |
| | Hearing Time: 8:00 AM |
| | Location:     Courtroom of the Hon. John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins,

Cassie D. Palmer, Susan S. Har, and Brian R. Faerstein, hereby files its opposition to defendant José Luis Huizar's Motion to Compel Production of (1) Text Notifications of GPS Tracker, and (2) Exhibit Proffered by George Chiang During His July 11, 2019 Interview.  (Dkt. No. 862.)

This opposition is based upon the attached memorandum of points and authorities, the supporting declaration and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 19, 2022           Respectfully submitted,

                                   E. MARTIN ESTRADA
                                   United States Attorney

                                   SCOTT M. GARRINGER
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                     /s/
                                   _____
                                   MACK E. JENKINS
                                   CASSIE D. PALMER
                                   SUSAN S. HAR
                                   BRIAN R. FAERSTEIN
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**Table of Contents**

Contents

I.   INTRODUCTION..................................................1

II.  ARGUMENT......................................................2

    A.   Defendant Already Has Esparza's GPS Data for February through July 2017..........................................2

    B.   Defense Counsel Makes the False and Reckless Claim That Agent Civetti Seized Data Outside the Authorized Time Period...................................................5

    C.   Nevertheless, the Government Is Continuing Its Diligent Efforts to Confirm Any Available GPS Text Notifications on Agent Civetti's Prior Cellphone..........7

    D.   Hazens Has Invoked Attorney-Client Privilege Over Its Exhibit, Which Hazens-Agent Chiang Provided to the Government Without Authorization..........................8

III. CONCLUSION...................................................10

**Table of Exhibits**

| Exhibit | Description | Cite(s) |
|---|---|---|
| 1 | Third Extension for Tracker Warrant and Application Covers (dated June 29, 2017) | pp. 2, 5 |
| 2 | 940 Hill/Lee Trial Ex. 89: Esparza Phone Geolocation Information for February 10, 2017 | p. 3 |
| 3 | 940 Hill/Lee Trial Ex. 90: Esparza Phone Geolocation Information for March 14, 2017 | pp. 3, 4 |
| 4 | Excerpt from GPS Vehicle Tracker Data Spreadsheet for March 14, 2017 at 21:44 (UTC-7)/2:44 p.m. PST | p. 4 |
| 5 | December 12, 2022 Email Thread with Huizar Defense Counsel, Government Counsel, and George Chiang's Counsel | p. 8 |
| 6 | December 14 & 18, 2022 Email Thread with Hazens Counsel and Government Counsel | p. 10 |
| 7 | Declaration by Monica Q. Vu, General Counsel of Jia Yuan USA Co., Inc. (Hazens) | p. 10 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Jose Huizar's latest motion, which is again replete with incorrect facts and unfounded accusations, seeks items that (1) he already has, (2) are not in the government's possession, and/or (3) the government has no authority to provide.

With respect to the "text notifications of GPS tracking device on Esparza's car" that defendant seeks to compel, counsel's central argument fails because it relies on several incorrect assertions.

*First,* the motion inaccurately suggests defendant currently lacks Esparza's GPS information from February to July 2017. However, defendant **already has** the relevant location information, both in the form of geolocation data from application programs ("app")[1] from Esparza's phone and the GPS vehicle tracker data ("tracker data") from February to July 2017, obtained via the court-authorized physical tracking device surreptitiously attached to Esparza's car by the FBI. Specifically, tracker data was provided in the form of an auto-generated Excel spreadsheet with almost 8,000 line entries from February 16, 2017 through July 3, 2017. Contrary to another defense contention, the Excel spreadsheet was not manually created by Agent Civetti or based on the text notifications he received. (Mot. at 8 (incorrectly characterizing the Excel as "Civetti's documentation of some of the data received through the GPS tracker").) And that tracker data corroborates the geolocation app information as it

---

[1] Certain phone apps capture geolocation data during their utilization, such as when the user takes photographs, signs into Wi-Fi networks, or uses navigation features. For example, Esparza's phone stored geolocation data with the Waze navigation app, as well as when he signed into Wi-Fi networks at Las Vegas casinos.

relates to the second cash drop that Esparza testified he received from Justin Kim as part of the 940 Hill bribery scheme--the only specific event that defendant identifies as relevant with respect to the tracker data. Nevertheless, as explained below, the government is continuing its diligent efforts to confirm any GPS text notifications provided to Agent Civetti (in addition to those already produced).

*Second*, defendant and his counsel make the serious and reckless claim that Agent Civetti obtained unauthorized tracker data outside the warrant period. (Mot. at 3.) This is yet another defense allegation that is demonstrably false. As defense counsel knows, there were in fact <u>three</u> extensions for the vehicle tracker warrant, covering the time period of February 15, 2017 through August 13, 2017, and the only data that was seized was within the authorized period. (<u>See</u> Ex. 1.)

Finally, with respect to the George Chiang-proffered exhibit ("Hazens Exhibit 2"), the holder of the attorney-client privilege is <u>Hazens</u>, for whom Chiang was then acting as an agent. Counsel for Hazens has maintained its assertion of its privilege over the exhibit, clawed back Hazens Exhibit 2 from the government, and further confirmed that Chiang was not authorized to disclose the document to the government in the first place.

Defendant's motion should be denied in full.

**II. ARGUMENT**

**A. Defendant Already Has Esparza's GPS Data for February through July 2017**

In her 10-page motion, defense counsel identifies only one specific issue for which tracker data from Esparza's car would be

2

"material": the dates in early 2017 when Esparza received two cash drops from Justin Kim. (Mot. at 7 ("Esparza testified that there were three planned money drops: the first on February 10, 2017, the second sometimes in March, and the third in April.").)[2]

Yet it is undisputed that defendant already has geolocation data from that time period through Esparza's phone apps, including for the two dates when Esparza received the two cash drops from Kim, which confirm Esparza's testimony. (See Ex. 2 [940 Hill/Lee Trial Ex. 89] (showing geolocation data from Esparza's Waze phone app for Crocker Street on February 10, 2017 at 2:43 p.m.); Ex. 3 [940 Hill/Lee Trial Ex. 90] (showing geolocation data from Esparza's Waze phone app for 1020 Crocker Street on March 14, 2017 at 2:34 p.m.).)

It is also undisputed that defense counsel has an Excel spreadsheet with approximately 7,794 lines of GPS data from the vehicle tracker on Esparza's car (the "Tracker Spreadsheet").[3] The time period of the Tracker Spreadsheet spans February 16, 2017 to July 3, 2017. Because the warrant was not authorized until February 15, 2017--five days **after** the first cash drop on February 10--the tracker data could have never covered the date of the first cash drop, and it is disingenuous for defense counsel to claim otherwise. (See Mot. at 7 (claiming the vehicle tracker data contains "material information" about the "first [drop] on February 10, 2017"); see also id. at 1, 2 (acknowledging the tracker was first authorized starting

---

[2] Although three drops were originally planned, Esparza testified that he ultimately collected cash only twice from Kim: once on February 10 and again on March 14, 2017. (6/17/222 940 Hill/Lee Trial Tr. at 956, 967.)

[3] Due to the size of the full spreadsheet (which is about 99 pages when converted to a pdf), the government has not attached it as an exhibit but can lodge it for review if the Court would like.

3

February 15, 2017 (emphases added)); Exs. A-B (same).) And with respect to the second cash drop, the data in the Tracker Spreadsheet (that defendant already has) corroborates the geolocation data from Esparza's phone app on March 14, 2017 when, as he testified, Esparza picked up the second $200,000 in cash from Kim. (*Compare* Ex. 3 (1020 Crocker Street address in Waze app at approximately 2:34 p.m.) *with* Ex. 4 (GPS tracker data within a one-block radius of 1020 Crocker Street at approximately 2:44 p.m.).)

In another fishing expedition for purported "impeachment" material, defendant confoundingly insists that Agent Civetti was the one who manually created the Tracker Spreadsheet, and that he did so by inputting information he received from text notifications of the GPS tracker. This is just flat-out wrong. The Tracker Spreadsheet was auto-generated and reflects thousands of lines of data from when the tracker was active and authorized from February 15, 2017 to July 3, 2017. Agent Civetti had no role in creating or altering the substance of the spreadsheet; he simply downloaded the data in the form of a spreadsheet. (Civetti Decl. ¶ 2.)

Whatever GPS text notifications Agent Civetti received on his FBI-issued cellphone at that time reflected only a sub-set of the complete tracker data reflected in the Tracker Spreadsheet for February to July 2017. Specifically, Agent Civetti received select text notifications when the tracker alerted off a specific area of interest, i.e., a designated geofence location. (Civetti Decl. ¶ 3.) Thus, for February to July 2017, the Tracker Spreadsheet subsumes whatever narrower GPS data from the text notifications Agent Civetti received.

4

**B. Defense Counsel Makes the False and Reckless Claim That Agent Civetti Seized Data Outside the Authorized Time Period**

Next, defense counsel makes the false and reckless allegation that Agent Civetti seized data outside the authorized period of the warrant. (Mot. at 1, 3 (accusing Agent Civetti of monitoring the GPS tracker "well after warrant authorization expired").)

There were three extensions granted for the tracker after the original warrant was issued:

  1) the original warrant (17-MJ-00340), signed February 15, 2017 (Exs. A-B);

  2) the first extension (17-MJ-00340(A)), signed April 3, 2017 (Exs. C-D);

  3) the second extension (17-MJ-00340(B)), signed May 19, 2017 (Exs. E-F); and

  4) the third extension (17-MJ-00340(C)), signed June 29, 2017 (Ex. 1).

The third extension covered the 45-day time period from June 29, 2017 through August 13, 2017. (See Ex. 1.) Importantly, that third-extended period covered all the entries reflected in Exhibit K (FBI report describing pertinent vehicle pings from July 1 to August 12, 2017), which defendant cites as purported proof of the government's unauthorized seizure of GPS data from Esparza's car. (See Ex. K; see also Mot. at 3, 8 (citing Exhibit K and claiming that Agent Civetti used GPS data after the warrant authorization expired).) Defendant's claim is therefore false. While there is indisputably a large volume of discovery in this complex case, it is difficult to conceive how defense counsel could have missed the third extension before launching her serious accusation of misconduct against a federal

5

agent in a public filing.  This troubling failing to do basic due diligence before making public attacks on an individual agent is especially glaring given that all the pleadings relating to this tracker warrant (stamped with the 17-MJ-00340 number) were produced all together in discovery.[4]  Indeed, those specific pleadings were even produced more than once following defense counsel's request for searchable versions of the pleadings, which the government obliged.  Again, to be clear: Agent Civetti did not seize, review, or use GPS data from the tracker after the authorization period ended on August 13, 2017.  (Civetti Decl. ¶ 5.)

Defendant then makes much to-do about the delayed removal date of the physical tracking device from Esparza's car, without identifying any prejudice, any requested relief, or any basis for the unspecified relief, including standing to challenge the delayed removal.  Nor does defendant Huizar explain how the delayed removal has any relevance to his request for GPS text notifications from Agent Civetti's phone.  Based on the third extension order, the tracker was set to be removed in late August 2017.  However, the tracking device died, completely eliminating any capability for the device to transmit GPS data.  (Civetti Decl. ¶ 7.)  Given that the device was dead and no GPS data was seized outside the authorization period, and because of the many other pressing case needs and priorities at the time, the (nonfunctional) physical tracking device unfortunately was not removed until October 2018.  But this admitted

---

[4] The three extensions were produced consecutively, with the first extension affidavit and order provided at Casino_0331498 to Casino_0331507; the second extension affidavit and order at Casino_0331508 to Casino_0331545; and the third extension affidavit and order at Casino_0331546 to Casino_0331581.

delay does not furnish a basis for defendant's motion to compel GPS text notifications to Agent Civetti's phone.

### C. Nevertheless, the Government Is Continuing Its Diligent Efforts to Confirm Any Available GPS Text Notifications on Agent Civetti's Prior Cellphone

As is evident on the face of the parties' extensive email exchanges (see Ex. I), the government has responded in good faith to each of defense counsel's many and specific questions about a myriad of topics, including the availability of GPS text notifications to Agent Civetti's phone. And notwithstanding the foregoing, including that defendant already has the tracker data for the time of the 940 Hill/Lee cash drops, the government is continuing its due diligence to locate and confirm any other available tracker data, particularly for the period covered by the third extension.

As explained multiple times to the defense, and again in this filing, Agent Civetti no longer has the specific FBI-issued cellphone from 2017 where the GPS text notifications were sent (the "2017 Device"), as the FBI cellphones are regularly replaced. (See Ex. I at 3, 6; see also Civetti Decl. ¶¶ 3-4.) Indeed, Agent Civetti believes he has had approximately three to four replacement FBI phones issued since that time. (Civetti Decl. ¶ 4.) Apart from the screenshots of relevant text notifications attached to FBI reports, such as Exhibit K, Agent Civetti did not preserve GPS text notifications sent to his 2017 Device. (Id.) When the FBI issued Agent Civetti a new cellphone in the regular course of business, Agent Civetti returned the 2017 Device to the FBI's Information Technology Unit in exchange for a new FBI-issued cellphone. (Id.) According to the FBI IT Specialist, all agent-returned cellphones from that time, including the 2017 Device, were wiped and returned to

FBI Headquarters to be destroyed as standard procedure. (Id.) Nevertheless, as final confirmation, Agent Civetti has submitted a rush request to the FBI's records unit to see whether any GPS text notifications were preserved from the 2017 Device. The government will relay the response and any pertinent preserved records to defense counsel.

As for any auto-generated tracker data for the third extension period (July 4, 2017 to August 13, 2017), that information is not available to Agent Civetti in the system from where he obtained the Tracker Spreadsheet with data from February 16 to July 3, 2017. (Civetti Decl. ¶ 6.) The technology unit at FBI Headquarters has additionally confirmed that tracker data from that third time period is no longer available from that server. (Id.)

### D. **Hazens Has Invoked Attorney-Client Privilege Over Its Exhibit, Which Hazens-Agent Chiang Provided to the Government Without Authorization**

Defendant also seeks to compel production of an unredacted version of Hazens Exhibit 2, which is a document that George Chiang provided to the government during a proffer in July 2019.[5]

Defense counsel misses the mark when she asserts that the government must produce Hazens Exhibit 2 because "no privilege applies" and "Chiang produced the exhibit knowingly and voluntarily, with the assistance of counsel, and he asserts no privilege over the exhibit." (Mot. at 2, 10.) What DFPD Alé fails to acknowledge in her motion is that Chiang's counsel told her that Hazens would be the

---

[5] The report for Chiang's proffer, Hazens Exhibit 2, and the other Chiang-provided materials, were all produced to defendant Huizar in October 2020. The government is not aware of any reason why defense counsel could not have raised this issue years earlier instead of less than three months before trial, and defendant offers none.

8

one with the privilege, not Chiang. (Ex. 5 (Chiang's counsel confirming that he advised DFPD Alé that "it seems to be that Hazens would have a privilege and [that Chiang] take[s] no position in regard to the to-be-filed motion to compel").) Indeed, neither defendant's motion nor the counsel declaration mentions Hazens' privilege at all despite defendant's request for a court order compelling disclosure of a privileged document.

On this issue, the only position the government takes is that, as a general matter and consistent with its position throughout this case, bona fide claims of attorney-client privilege should be protected (and that defense counsel's view of waiver is impermissibly broad).[6] This is the government's position, and an obligation it takes seriously, regardless of whether the privilege holder is a third-party witness, a development company, or defendant Huizar himself. That is why Agent Civetti immediately ceased review of Hazens Exhibit 2 when he flagged that it might be potentially privileged, after which the prosecution team sent Hazens Exhibit 2 to the walled-off privilege review team. The privilege review team concluded Hazens Exhibit 2 was protected by the attorney-client privilege. The government did not attempt to steamroll ahead in reviewing Hazens Exhibit 2 by relying on faulty excuses, like the disclosure had already been made or purportedly "voluntary." (See Mot. at 9-10.) Even now, the prosecution team has never substantively reviewed the contents of Hazens Exhibit 2. (See Mot.

---

[6] In the hearing on December 16, 2022, the Court appeared to express similar concerns when it denied defendant's request to compel privileged communications between Morrie Goldman and his attorney, Steve Meister, and denied his request for Mr. Meister's attorney work product consisting of his notes related to communications with the government and his client. (See Dkt. No. 877.)

9

at 9 (incorrectly asserting that the government reviewed the documents).)  Moreover, after recently being apprised of the issue as part of defendant Huziar's request for this document[7], counsel for Hazens has now alerted the government that it is clawing back Hazens Exhibit 2 in its entirety.  (See Ex. 6.)

The privilege review team's assessment was correct.  Counsel for Hazens has confirmed that it asserts and maintains its privilege over Hazens Exhibit 2 and that Chiang, an agent of Hazens, was not authorized to disclose it to the government.  (Ex. 6.)  An affidavit from Hazens' counsel is attached as Exhibit 7 for the Court's review.

**III. CONCLUSION**

For the foregoing reasons, defendant's motion should be denied.

---

[7] Once the privilege review team sealed the information from the prosecution team as privileged, government counsel did not immediately disclose this information to Hazens because the government did not want to disclose the existence of Chiang's cooperation with the government's investigation and because Hazens was a subject of that investigation.