**<u>Exhibit 7</u>**

David M. Chaiken (California Bar No. 230619)
CHAIKENLAW LTD.
One Atlantic Center
1201 W. Peachtree Street, Suite 2300
Atlanta, Georgia 30309
Telephone: (404) 795-5005
Facsimile: (404) 581-5005
E-mail: david@chaiken.law

Stephanie Yonekura (California Bar No. 187131)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
Email: stephanie.yonekura@hoganlovells.com

Attorneys for JIA YUAN USA CO., INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. CR 2:20-326(A)-JFW-1 |
| Plaintiff, | **DECLARATION OF MONICA Q. VU** |
| v. | |
| JOSE LUIS HUIZAR, et al., | The Honorable John F. Walter |
| Defendant. | |

## DECLARATION OF MONICA Q. VU

I, Monica Q. Vu, declare as follows:

1.     I am an attorney at law, duly admitted to practice law in the State of California.  I am the General Counsel of Jia Yuan USA Co., Inc., and I have served in that capacity since 2016.  Prior to that, I represented Jia Yuan USA Co., Inc. since 2014 during my tenure at Jeffer Mangels Butler & Mitchell, LLP.  I have personal knowledge of the following facts, and if called upon to testify, I could and would competently testify to their truth and accuracy.

2.     Hazens Real Estate Group ("Hazens"), although not a distinct legal entity, is the trade name that refers to several legal entities for which I serve as General Counsel, including Jia Yuan USA Co., Inc., a Delaware corporation headquartered in Arcadia, California ("the Company"). The Company was formed in 2014 to acquire, operate, and redevelop the then Luxe City Center Hotel in downtown Los Angeles (the "Luxe Hotel redevelopment project"). Oftentimes, the Company is referred to as Hazens interchangeably.

3.     To assist the Company with legal matters respecting the Luxe Hotel redevelopment project—including with respect to the entitlements application and approval process, related Los Angeles City Council proceedings, and related negotiations with Los Angeles City officials—the Company retained the law firms of Jeffer Mangels Butler & Mitchell LLP and Liner LLP in 2014.

4.     Jeffer Mangels Butler & Mitchell LLP represented the Company in connection with the entitlements work from 2014 through the conclusion of the process in 2018, and it remains the Company's counsel on Luxe Hotel redevelopment-related entitlements matters today. The primary attorneys from Jeffer Mangels Butler & Mitchell LLP who have been handling the matter for the Company since 2014 are Sheri L. Bonstelle and Benjamin M. Reznik.

5.     Liner LLP represented the Company in connection with certain aspects of the entitlements process from 2014 until September 30, 2017. The primary attorney from Liner LLP who handled the matter for the Company was Jerold B. Neuman.

6.     George Chiang, a defendant in a related case, *United States v. Chiang*, No. 2:20-CR00203-JFW-1 (C.D. Cal.), was employed as a paid outside consultant to the Company for the Luxe Hotel redevelopment project from approximately 2014 until the Company terminated his services on January 15, 2019. In connection with his work for the Company, Mr. Chiang was permitted to attend confidential, privileged meetings and conference calls with the Company and its lawyers, and to participate in confidential and privileged communications between the Company and its lawyers in the belief that and with

1

the understanding that Mr. Chiang would maintain such communications, documents, and information in confidence and not disclose them without Company approval.

7.     This understanding was subsequently confirmed in written consulting agreements between the Company and Mr. Chiang that were executed by Mr. Chiang on February 21, 2017, October 11, 2017, and November 17, 2017.  True and correct copies of these agreements between the Company and Mr. Chiang are attached hereto as Exhibit **A**.

8.     In each of these agreements, Mr. Chiang agreed to provisions (or substantially similar provisions) as follows:

2. Limitations and Restrictions.
Notwithstanding any provisions of this Agreement, Consultant shall not take any action, expend any sum, make any decision, give any consent, approval, or authorization, or incur any obligation with respect to any of the following matters unless and until the same has been approved in writing by Owner making any expenditure or incurring any obligation by or on behalf of Owner or the Property.

6. Ownership of Information and Materials.
Consultant shall, upon completion of Consultant's Services or any sooner termination of this Agreement, deliver to Owner all written data and information generated by or for Consultant in connection with obtaining the Permits or otherwise hereunder or supplied to Consultant by Owner or Owner's agents, and all drawings, plans, books, records, contracts, agreements and all other documents and writings in its possession relating to its services hereunder, and Owner shall have the right to use the same without further compensation to Consultant.  Such data and information and all such documents shall at all times be the property of Owner. ***Consultant agrees, for itself and all persons retained or employed by Consultant in performing the Consultant's Services hereunder, to hold in confidence and not to use or disclose to others any confidential or proprietary information of Owner heretofore or hereafter disclosed to Consultant*** or any such persons and designated as such by Owner, including but not limited to any data, information, plans, or programs, which may come within the knowledge of Consultant or any such persons in the performance of, or as a result of, the Consultant's Services hereunder, except where: (a) the Owner specifically authorizes Consultant in writing to disclose any of the foregoing to others or such disclosure reasonably results from the performance of Consultant's Services hereunder; or (b) such written data or information shall have theretofore been made publicly available by parties other than Consultant or any such persons. ***Consultant agrees to maintain the confidentiality and will***

2

1
2
3
4

> *not disclose to any third-party information about the Owner's business, finances, and plans and design to develop the Property, and any other proprietary or confidential information of Owner, unless such disclosure is reasonably necessary for Consultant to assist Owner in obtaining the Permits and carrying out Consultant's services as set forth herein.*

*See, e.g.*, Ex. **A** at 15, 16 (emphasis added).

9.     Importantly, the agreements required Mr. Chiang to maintain the Company's information and documents in confidence even if he received them prior to the date of the agreements.  Further, the agreements recite that the materials remained the Company's property "at all times" and required him to return such materials to the Company at the conclusion of the engagement.

10.     In addition, upon the Company's termination of Mr. Chiang's consulting services in January 2019, the Company requested that Mr. Chiang "comply with Section 6 of the [Consulting Services] Agreement and provide to [the Company] its records, information, and work product relating to [the consulting] services . . . ."  A true and correct copy of the Company's January 15, 2019 termination letter is attached hereto as Exhibit **B**.

11.     I am informed that, in connection with an interview with the U.S. Department of Justice ("DOJ") in July 2019, Mr. Chiang provided DOJ with, among other documents, (1) a September 9, 2015 memorandum identified as being protected by the "Attorney-Client Privilege" prepared by Jerold B. Neuman of Liner LLP for the Company relating to Liner LLP's entitlements work and advice (attached as Exhibit 2 to proffer materials of George Chiang), and (2) a September 28, 2015 e-mail message from Benjamin M. Reznik of Jeffer Mangels Butler & Mitchell LLP to the Company regarding certain entitlements-related advice and communications (attached at Exhibit 6 to proffer materials of George Chiang). Mr. Chiang received these documents from the Company in confidence, during and in connection with the performance of his consulting services for the Company.

12.     The Company did not learn that Mr. Chiang disclosed the documents identified in Paragraph 11, above, to DOJ in July 2019 until the Company was notified by

---

3

DOJ Privilege Review Team Member Sandra Kim, through the Company's outside counsel, on December 12, 2022.

13. I have reviewed the documents identified in Paragraph 11, above, and I believe that they constitute and contain protected attorney-client communications and attorney work product of the Company created and exchanged during the existence of the Company's attorney-client relationships with Liner LLP and Jeffer Mangels Butler & Mitchell LLP, respectively, and during and in anticipation of potential legal proceedings concerning the entitlements.

14. Further, these privileges belong to the Company and not to Mr. Chiang, and the Company did not authorize Mr. Chiang to waive any privileges or to otherwise disclose such privileged information or documents to any third party.

15. Subsequent to the notification received from DOJ that the aforementioned documents were disclosed to DOJ by Mr. Chiang without permission in July 2019 and that one of the documents is the subject of a December 12, 2022 Motion to Compel filed by Defendant Jose Huizar in the above-captioned case (Doc. 862), the Company (through its outside counsel), notified DOJ that it asserts its attorney-client and attorney work product privileges over the documents identified in Paragraph 11 and that DOJ and any other third party that received them should promptly return them to the Company and destroy any copies.

I declare under penalty of perjury pursuant to the laws of the United States and State of California that the foregoing is true and correct.

Executed this 19th day of December, 2022, at San Diego, California.

JIA YUAN USA CO., INC.

By _Monica Vu_____
    Monica Q. Vu

4

# EXHIBIT A

Exhibit 7
Page 6 of 26

## REAL ESTATE DEVELOPMENT CONSULTING SERVICES AGREEMENT

This Real Estate Consulting Services Agreement ("Agreement") is entered into this Twenty first day of January, 2017 by Jian Yuan USA Co., Inc. ("Owner") and Synergy Alliance Advisors, Inc. ("Consultant").

RECITALS

A.      Owners that certain real property known as Luxe City Center Hotel located at 1020 S. Figueroa Street, Los Angeles, CA 90015.

B.      Owner desires to make application for, and obtain, certain: (i) governmental land use permits, licenses, maps, entitlements, certificates, and agreements; and (ii) certain utility and other permits for the Property (collectively, the "Entitlements").

C.      Consultant has experience in processing with governmental authorities the applications, plans, maps, permits, agreements, documents and other instruments necessary or appropriate to obtain the Entitlements.

D.      Owner wishes to utilize the services of Consultant in connection with its efforts to obtain the Entitlements and Consultant is willing to provide such services.

E.      The parties hereto desire to enter into this Agreement to: (i) confirm the retention of Consultant to provide such services; (ii) establish their relationship as an independent contractor relationship; and (iii) set forth the respective rights and obligations of the parties hereto with respect to obtaining the Entitlements.

### OPERATIVE PROVISIONS

NOW THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      Real Estate Development Consulting Services.

1.1      Consultant shall assist Owner (and its agents, including, without limitation, Owner's attorneys) in connection with Owner's efforts to obtain the Entitlements, and shall perform the services and carry out the responsibilities with respect to obtaining the Entitlements by no later than December 30, 2017 as are set forth herein.  Consultant shall devote at least thirty (30) hours per week in providing its services and carrying out its responsibilities with respect to obtaining the Entitlement by no later than December 30, 2017 as set forth herein.  To the extend Consultant spends more than thirty (30) hours on a particular week, Owner shall not be obligated to compensate Consultant for any additional hours of service provided.

1.2      The Consultant's Services shall be performed in the name of and on behalf of Owner and shall consist of the duties set forth in Section 1.1 above, subparagraphs (1)-(6) below of this Section 1.2 and as provided elsewhere in this Agreement; provided, however, that, if the performance of any of such Consultant's Services or any other duty of Consultant under this Agreement is beyond the

Exhibit 7
Page 7 of 26

reasonable control of Consultant, then Consultant shall nonetheless be obligated to: (i) use commercially reasonable efforts to perform the Consultant's Services or such duty; and (ii) promptly notify the Owner that the performance of the same is beyond its reasonable control. Consultant shall perform the following:

(1)     Participation in conferences (whether with governmental representatives or otherwise) and the rendering of such advice and assistance as will aid in developing economical, efficient and desirable procedures necessary or appropriate to obtaining the Entitlements. Consultant shall participate in at least one weekly "Status update" in person meeting with Owner or its designated representative(s);

(2)     The rendering of advice and recommendations as to the selection of consultants and professionals;

(3)     Submission of any suggestions or requests for changes which could in any reasonable manner improve the efficiency of the Entitlement process or lower the cost of the same;

(4)     Furnishing such consultation and advice relating to obtaining the Entitlements as may be reasonably requested from time to time by Owner;

(5)     Keeping Owner fully informed on a regular basis of the progress of the Entitlement process, including the preparation of such reports as are provided for herein or as may reasonably be requested by Owner and which are of a nature generally requested or expected of real estate consultants or similar Owner's representatives engaged in similar activities;

(6)     Perform and administer any and all other services and responsibilities of Consultant which are set forth in any other provisions of this Agreement, or which are requested to be performed by Owner and are within the general scope of the services described herein.

1.3     Subject to the right of Owner to determine, from time to time, the scope of the Consultant's Services to be performed by Consultant hereunder, Owner agrees to cooperate in good faith with Consultant in Consultant's efforts to perform Consultant's Services.

1.4     The Owner understands the Consultant does not guaranty or warrant that the Owner will obtain the Entitlements by no later than December 30, 2017..

1.5     The Consultant is not a registered lobbyist in the City of Los Angeles and will not be performing lobbying service in the name of and on behalf of Owner.

1.6     The Consultant's officer, George C. Chiang is a licensee of California Bureau of Real Estate, License number #01781755. Consultant's officer, George C. Chiang, will continue to provide real estate services to other clients during this Agreement.

2.     Limitations and Restrictions.

Notwithstanding any provisions of this Agreement, Consultant shall not take any action, expend any sum, make any decision, give any consent, approval or authorization, or incur any obligation with respect to any of the following matters unless and until the same has been approved in writing by

Exhibit 7
Page 8 of 26

Owner making any expenditure or incurring any obligation by or on behalf of Owner or the Property.

3.     Compensation.

3.1     In full compensation for Consultant Services hereunder and subject to the other provisions hereof, Owner agrees to pay Consultant a monthly fee of $35,000.

3.2     The Consultant fee shall constitute full and complete payment to Consultant, and to any and all of its officers, employees, principals and affiliates, for all Consultant's Services furnished or performed by Consultant, or any of its officers, employees, principals or affiliates, hereunder in connection with Owner's efforts to obtain the Entitlements.

4.     Duration and Termination; Default.

4.1     This Agreement shall remain in effect one (1) year from the start date, unless sooner terminated as provided herein.

4.2     Notwithstanding the foregoing, Owner and Consultant shall each have the right to terminate this Agreement upon seven (7) business days notice.

4.3     Owner shall also have the right to terminate this Agreement upon the occurrence of any Default (as defined below) by Consultant.  A "Default" shall be defined as the occurrence of any one or more of the following:

          (1)     Consultant fails to perform any of the Consultant's Services in the manner or within the time required herein or commits or permits a breach of or default in any of its duties, liabilities or obligations hereunder and fails to fully cure or remedy such failure, breach or default within seven (7) business days after written notice specifying the nature of such failure, breach or default by Owner to Consultant, or if such failure, breach or default cannot reasonably be cured within such seven (7) business day period, fails to commence such cure or remedy within such ten (10) business day period or at any time thereafter fails to diligently prosecute such cure or remedy to completion;

          (2)     Consultant fails repeatedly to perform its obligations under this Agreement in a timely or satisfactory fashion and thereby materially interferes with the Schedule for the obtaining the Entitlements; provided that Owner has previously notified Consultant in writing of one or more prior failures to perform in a timely or satisfactory fashion and Consultant has failed to or could not correct such prior failures, and, in one or more subsequent instances, has failed to perform its obligations in a timely or satisfactory fashion;

4.4.     Upon termination of this Agreement pursuant to subparagraphs (1) through (2) of this Section 4.3, Consultant shall be entitled to receive, as its full and sole compensation under this Agreement, all payments already paid or accrued on account of the Consultant's Fee and Consultant shall have no right to receive any unaccrued portion of the Consultant Fee or any further payments.

5.     Independent Contractor.

Exhibit 7
Page 9 of 26

In performing its services hereunder Consultant shall be an independent contractor and not an employee or agent of the Owner. Consultant specifically waives any claim of rights or benefits for Consultant and Consultant's employees and agents, whether present or future, under any and all of Owner's retirement plans, fringe benefits afforded employees of Owner or the payment of Social Security taxes by Owner, worker's compensation or unemployment compensation or like benefits normally afforded Owner's employees.

6.      Ownership of Information and Materials.

Consultant shall, upon completion of Consultant's Services or any sooner termination of this Agreement, deliver to Owner all written data and information generated by or for Consultant in connection with obtaining the Entitlements or otherwise hereunder or supplied to Consultant by Owner or Owner's agents, and all drawings, plans, books, records, contracts, agreements and all other documents and writings in its possession relating to its services hereunder, and Owner shall have the right to use the same without further compensation to Consultant. Such data and information and all such documents shall at all times be the property of Owner. Consultant agrees, for itself and all persons retained or employed by Consultant in performing the Consultant's Services hereunder, to hold in confidence and not to use or disclose to others any confidential or proprietary information of Owner heretofore or hereafter disclosed to Consultant or any such persons and designated as such by Owner, including but not limited to any data, information, plans, or programs, which may come within the knowledge of Consultant or any such persons in the performance of, or as a result of, the Consultant's Services hereunder, except where: (a) the Owner specifically authorizes Consultant in writing to disclose any of the foregoing to others or such disclosure reasonably results from the performance of Consultant's Services hereunder; or (b) such written data or information shall have theretofore been made publicly available by parties other than Consultant or any such persons.

7.      Authority of Consultant.

Consultant shall have no right or authority, express or implied, to commit or otherwise obligate Owner in any manner whatsoever except as specifically authorized in writing by Owner.

8.      Taxes and Contributions.

Consultant assumes full and exclusive responsibility and liability for withholding and paying, as may be required by law, all federal, state and local taxes and contributions, with respect to, assessed against, or measured by the Consultant's Fee payable hereunder, or salaries or other contributions or benefits paid or made available to any persons retained, employed or used by or for Consultant in connection with the performance of Consultant's Services hereunder, and any and all other taxes and contributions applicable to its services for which Consultant may be responsible under any laws or regulations, and shall make all returns and/or reports required in connection with any and all such laws, regulations, taxes, contributions and benefits.

9.      Severability.

Each provision of this Agreement is intended to be severable. If any term or provision hereof shall be determined by a court of competent jurisdiction to be illegal or invalid for any reason whatsoever,

Exhibit 7
Page 10 of 26

such provision shall be severed from this Agreement and shall not affect the validity of the remainder of this Agreement.

10.     Waiver; Consents.

No consent or waiver, express or implied, by any party hereto to or of any breach or default by any other party in the performance by such other party of its obligations hereunder shall be valid unless in writing, and no such consent or waiver shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligations of such party hereunder. Failure on the part of any party to complain of any act or failure to act of another party or to declare such other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder. The granting of any consent or approval in any one instance by or on behalf of any party hereto shall not be construed to waive or limit the need for such consent in any other or subsequent instance.

11.     Governing Law.

This Agreement is entered into in the State of California and shall be governed by the laws thereof. The venue of any action or proceeding brought by either party against the other arising out of this Agreement shall, to the extent legally permissible, be in the County of Los Angeles, California.

12.     Modification of Agreement.

This Agreement constitutes the entire agreement between the parties hereto. To be effective, any modification of this Agreement must be in writing and signed by the party to be charged thereby.

13.     Headings.

The headings of the Sections of this Agreement are inserted for convenience of reference only and shall not in any manner affect the construction or meaning of anything herein contained or govern the rights or liabilities of the parties hereto.

14.     Execution of Agreement.

This Agreement may be executed in counterparts, each of which when so executed and delivered, shall be deemed to be an original.

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the day and year first above written.

Exhibit 7
Page 11 of 26

Jia Yuan USA Co., Inc.

By: _____

Name: _____

Title: _____

Date of Execution: _____

**SYNERGY ALLIANCE ADVISORS, INC.**

a California corporation

By: _____

Name: George Chiang

Title: Manager of Operations

Date of Execution: 2/21/17

## REAL ESTATE DEVELOPMENT CONSULTING SERVICES AGREEMENT – AMENDMENT 1

This Real Estate Consulting Services Amendment ("Amendment") is entered into this 11th day of October, 2017 to amend the January 21, 2017 Real Estate Development Consulting Services Agreement ("Agreement") by and between Jia Yuan USA Co., Inc. ("Owner") and Synergy Alliance Advisors, Inc. ("Consultant").

RECITALS

A.      Owners that certain real property known as Luxe City Center Hotel located at 1020 S. Figueroa Street, Los Angeles, CA 90015.

B.      Owner desires to make application for, and obtain, certain: (i) governmental land use permits, licenses, maps, entitlements, certificates, and agreements; and (ii) certain utility and other permits for the Property (collectively, the "Entitlements").

C.      Consultant has experience in processing with governmental authorities the applications, plans, maps, permits, agreements, documents and other instruments necessary or appropriate to obtain the Entitlements.

D.      Owner wishes to utilize the services of Consultant in connection with its efforts to obtain the Entitlements and Consultant is willing to provide such services.

E.      The parties hereto desire to enter into this Amendment to: (i) confirm the retention of Consultant to provide such services; (ii) establish their relationship as an independent contractor relationship; and (iii) set forth the respective rights and obligations of the parties hereto with respect to obtaining the Entitlements.

### OPERATIVE PROVISIONS

NOW THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      Real Estate Development Consulting Services.

1.1      Consultant shall assist Owner (and its agents, including, without limitation, Owner's attorneys) in connection with Owner's efforts to obtain the Entitlements, and shall perform the services and carry out the responsibilities with respect to obtaining the Entitlements by no later than December 30, 2017 as are set forth herein.  Consultant shall devote at least thirty (30) hours per week in providing its services and carrying out its responsibilities with respect to obtaining the Entitlement by no later than December 30, 2017 as set forth herein.  To the extend Consultant spends more than thirty (30) hours on a particular week, Owner shall not be obligated to compensate Consultant for any additional hours of service provided.

1.2      The Consultant's Services shall be performed in the name of and on behalf of Owner and shall consist of the duties set forth in Section 1.1 above, subparagraphs (1)-(6) below of this

OC 7458513v1

Exhibit 7
Page 13 of 26

Section 1.2 and as provided elsewhere in this Amendment; provided, however, that, if the performance of any of such Consultant's Services or any other duty of Consultant under this Amendment is beyond the reasonable control of Consultant, then Consultant shall nonetheless be obligated to: (i) use commercially reasonable efforts to perform the Consultant's Services or such duty; and (ii) promptly notify the Owner that the performance of the same is beyond its reasonable control. Consultant shall perform the following:

(1)    Participation in conferences (whether with governmental representatives or otherwise) and the rendering of such advice and assistance as will aid in developing economical, efficient and desirable procedures necessary or appropriate to obtaining the Entitlements.  Consultant shall participate in at least one weekly "Status update" in person meeting with Owner or its designated representative(s);

(2)    The rendering of advice and recommendations as to the selection of consultants and professionals;

(3)    Submission of any suggestions or requests for changes which could in any reasonable manner improve the efficiency of the Entitlement process or lower the cost of the same;

(4)    Furnishing such consultation and advice relating to obtaining the Entitlements as may be reasonably requested from time to time by Owner;

(5)    Keeping Owner fully informed on a regular basis of the progress of the Entitlement process, including the preparation of such reports as are provided for herein or as may reasonably be requested by Owner and which are of a nature generally requested or expected of real estate consultants or similar Owner's representatives engaged in similar activities;

(6)    Perform and administer any and all other services and responsibilities of Consultant which are set forth in any other provisions of this Amendment, or which are requested to be performed by Owner and are within the general scope of the services described herein.

1.3    Subject to the right of Owner to determine, from time to time, the scope of the Consultant's Services to be performed by Consultant hereunder, Owner agrees to cooperate in good faith with Consultant in Consultant's efforts to perform Consultant's Services.

1.4    The Owner understands the Consultant does not guaranty or warrant that the Owner will obtain the Entitlements by no later than December 30, 2017.

1.5    The Consultant is not a registered lobbyist in the City of Los Angeles and will not be performing lobbying service in the name of and on behalf of Owner.

1.6    The Consultant's officer, George C. Chiang is a licensee of California Bureau of Real Estate, License number #01781755.  Consultant's officer, George C. Chiang, will continue to provide real estate services to other clients during this Amendment.

2 of 6

Exhibit 7
Page 14 of 26

2.      Limitations and Restrictions.

Notwithstanding any provisions of this Amendment, Consultant shall not take any action, expend any sum, make any decision, give any consent, approval or authorization, or incur any obligation with respect to any of the following matters unless and until the same has been approved in writing by Owner making any expenditure or incurring any obligation by or on behalf of Owner or the Property.

3.      Compensation.

3.1     In compensation for Consultant Services hereunder and subject to the other provisions hereof, Owner agrees to pay Consultant a monthly fee of $35,000.

3.2     The Consultant fee shall constitute full and complete payment to Consultant, and to any and all of its officers, employees, principals and affiliates, for all Consultant's Services furnished or performed by Consultant, or any of its officers, employees, principals or affiliates, hereunder in connection with Owner's efforts to obtain the Entitlements.

3.3     Aside from the monthly fee of $35,000 as set forth in Section 3.1, Owner shall furnish Consultant with the following Installment Payments upon certain milestones outlined below:

(1)     $100,000 – Due and payable upon the Entitlements' Officer Hearing Date (the "First Installment");

(2)     $150,000 – Due and payable upon the Entitlements' City Planning Commission Hearing Date (the "Second Installment");

(3)     $150,000 – Due and payable upon the Entitlements' Planning and Land Use Management Committee Hearing Date (the "Third Installment"); and,

(4)     $150,000 - Due and payable upon the Entitlements' City Council Hearing Date (the "Fourth Installment").

Owner and Consultant recognize and agree the First Installment has been paid and rendered at the time of this Amendment. Furthermore, Owner and Consultant recognize and agree the Second Installment is overdue, as the Entitlements' City Planning Commission was completed on September 14, 2017.

4.      Duration and Termination; Default.

4.1     This Amendment shall remain in effect one (1) year from the Agreement's January 21, 2017 start date, unless sooner terminated as provided herein.

4.2     Notwithstanding the foregoing, Owner and Consultant shall each have the right to terminate this Amendment upon seven (7) business days notice.

4.3     Owner shall also have the right to terminate this Amendment upon the occurrence of any Default (as defined below) by Consultant.  A "Default" shall be defined as the occurrence of any one or more of the following:

(1)     Consultant fails to perform any of the Consultant's Services in the manner or within the time required herein or commits or permits a breach of or default in any of its duties, liabilities or obligations hereunder and fails to fully cure or remedy such failure, breach or default within seven  (7) business days after written notice specifying the nature of such failure, breach or default by Owner to Consultant, or if such failure, breach or default cannot reasonably be cured within such seven (7) business day period, fails to commence such cure or remedy within such ten (10) business day period or at any time thereafter fails to diligently prosecute such cure or remedy to completion;

(2)      Consultant fails repeatedly to perform its obligations under this Amendment in a timely or satisfactory fashion and thereby materially interferes with the Schedule for the obtaining the Entitlements; provided that Owner has previously notified Consultant in writing of one or more prior failures to perform in a timely or satisfactory fashion and Consultant has failed to or could not correct such prior failures, and, in one or more subsequent instances, has failed to perform its obligations in a timely or satisfactory fashion;

4.4.     Upon termination of this Agreement or Amendment pursuant to subparagraphs (1) through (2) of this Section 4.3, Consultant shall be entitled to receive, as its full and sole compensation under this Agreement or Amendment, all payments already paid or accrued on account of the Consultant's Fee and Installment Payments; and, Consultant shall have no right to receive any unaccrued portion of the Consultant Fee or any further payments.

5.     Independent Contractor.

In performing its services hereunder Consultant shall be an independent contractor and not an employee or agent of the Owner. Consultant specifically waives any claim of rights or benefits for Consultant and Consultant's employees and agents, whether present or future, under any and all of Owner's retirement plans, fringe benefits afforded employees of Owner or the payment of Social Security taxes by Owner, worker's compensation or unemployment compensation or like benefits normally afforded Owner's employees.

6.     Ownership of Information and Materials.

Consultant shall, upon completion of Consultant's Services or any sooner termination of this Agreement or Amendment, deliver to Owner all written data and information generated by or for Consultant in connection with obtaining the Entitlements or otherwise hereunder or supplied to Consultant by Owner or Owner's agents, and all drawings, plans, books, records, contracts, agreements and all other documents and writings in its possession relating to its services hereunder, and Owner shall have the right to use the same without further compensation to Consultant. Such data and information and all such documents shall at all times be the property of Owner. Consultant agrees, for itself and all persons retained or employed by Consultant in performing the Consultant's Services hereunder, to hold in confidence and not to use or disclose to others any confidential or proprietary information of Owner heretofore or hereafter disclosed

to Consultant or any such persons and designated as such by Owner, including but not limited to any data, information, plans, or programs, which may come within the knowledge of Consultant or any such persons in the performance of, or as a result of, the Consultant's Services hereunder, except where: (a) the Owner specifically authorizes Consultant in writing to disclose any of the foregoing to others or such disclosure reasonably results from the performance of Consultant's Services hereunder; or (b) such written data or information shall have theretofore been made publicly available by parties other than Consultant or any such persons.

7.      Authority of Consultant.

Consultant shall have no right or authority, express or implied, to commit or otherwise obligate Owner in any manner whatsoever except as specifically authorized in writing by Owner.

8.      Taxes and Contributions.

Consultant assumes full and exclusive responsibility and liability for withholding and paying, as may be required by law, all federal, state and local taxes and contributions, with respect to, assessed against, or measured by the Consultant's Fee payable hereunder, or salaries or other contributions or benefits paid or made available to any persons retained, employed or used by or for Consultant in connection with the performance of Consultant's Services hereunder, and any and all other taxes and contributions applicable to its services for which Consultant may be responsible under any laws or regulations, and shall make all returns and/or reports required in connection with any and all such laws, regulations, taxes, contributions and benefits.

9.      Severability.

Each provision of this Amendment is intended to be severable. If any term or provision hereof shall be determined by a court of competent jurisdiction to be illegal or invalid for any reason whatsoever, such provision shall be severed from this Amendment and shall not affect the validity of the remainder of this Amendment.

10.     Waiver; Consents.

No consent or waiver, express or implied, by any party hereto to or of any breach or default by any other party in the performance by such other party of its obligations hereunder shall be valid unless in writing, and no such consent or waiver shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligations of such party hereunder. Failure on the part of any party to complain of any act or failure to act of another party or to declare such other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder. The granting of any consent or approval in any one instance by or on behalf of any party hereto shall not be construed to waive or limit the need for such consent in any other or subsequent instance.

11.     Governing Law.

This Amendment is entered into in the State of California and shall be governed by the laws thereof. The venue of any action or proceeding brought by either party against the other arising

out of this Amendment shall, to the extent legally permissible, be in the County of Los Angeles, California.

12.     Modification of Amendment.

This Amendment constitutes the entire agreement between the parties hereto. To be effective, any modification of this Amendment must be in writing and signed by the party to be charged thereby.

13.     Headings.

The headings of the Sections of this Amendment are inserted for convenience of reference only and shall not in any manner affect the construction or meaning of anything herein contained or govern the rights or liabilities of the parties hereto.

14.     Execution of Amendment.

This Amendment may be executed in counterparts, each of which when so executed and delivered, shall be deemed to be an original.

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the day and year first above written.


**Jia Yuan USA Co., Inc.**

By: _____
Name: MASON SITU
Title: GENERAL MANAGER
Date of Execution: 10/13/2017

**SYNERGY ALLIANCE ADVISORS, INC.**
a California corporation

By: _____
Name: George Chiang
Title: Manager of Operations
Date of Execution: 10/11/17

6 of 6

Exhibit 7
Page 18 of 26

## CONSULTING SERVICES AGREEMENT

This Consulting Services Agreement ("Agreement") is entered into December 1, 2017 by Jia Yuan USA Co., Inc. ("Owner") and Synergy Alliance Advisors, Inc. ("Consultant").

RECITALS

A.      Owner owns that certain real property commonly known as the Luxe City Center Hotel located at 1020 S. Figueroa Street, Los Angeles, CA 90015 (the "Property").

B.      Owner sets the goal to apply for, and obtain, all applicable construction permits for the development of the Property (collectively, the "Permits").

C.      Consultant represents and warrants that it has experience in processing the applications and plan check procedures necessary or appropriate to obtain the Permits.

D.      Owner wishes to utilize the services of Consultant in connection with its efforts to obtain the Permits and Consultant is willing to provide such services.

E.      The parties hereto desire to enter into this Agreement to: (i) confirm the retention of Consultant to provide such services; (ii) establish their relationship as an independent contractor relationship; and (iii) set forth the respective rights and obligations of the parties hereto with respect to obtaining the Permits.

## OPERATIVE PROVISIONS

NOW THEREFORE, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      Consulting Services.

1.1      Consultant shall assist Owner (and its agents and, consultants) in connection with Owner's efforts to obtain the Permits. Consultant shall devote necessary and reasonable time in providing its services and carrying out its responsibilities with respect to obtaining the Permits in a reasonably timely fashion in line with Owner's goals.

1.2 The Consultant's Services shall be performed in the name of and on behalf of Owner and shall consist of the duties set forth in Section 1.1 above, subparagraphs (1)-(6) below of this Section 1.2 and as provided elsewhere in this Agreement; provided, however, that, if the performance of any of such Consultant's Services or any other duty of Consultant under this Agreement is beyond the reasonable control of Consultant, then Consultant shall nonetheless be obligated to: (i) use commercially reasonable efforts to perform the Consultant's Services or such duty; and (ii) promptly notify the Owner that the performance of the same is beyond its reasonable control. Consultant shall perform the following:

Exhibit 7
Page 19 of 26

(1)    Take the lead in processing and obtaining the Permits on Owner's behalf in a timely fashion to meet Owner's goals as reasonably possible.

(2)    Participation in conferences that will aid in developing efficient and desirable procedures and timeline necessary or appropriate to obtaining the Permits.

(3)    The rendering of advice and recommendations as to the selection of design professionals;

(4)    Submission of any suggestions or requests for changes to consult design professionals which could in any reasonable manner improve the efficiency of the plan check process or lower the cost of the same;

(5)    Furnishing such consultation and advice relating to obtaining the Permits as may be reasonably requested from time to time by Owner;

(6)    Consultant shall participate in at least one weekly "Status update" meeting with Owner or its designated representative(s) to keep Owner fully informed on a regular basis of the progress of the plan check process, including the preparation of such reports as are provided for herein or as may reasonably be requested by Owner and which are of a nature generally requested or expected of consultants or similar Owner's representatives and engaged in similar activities;

(7)    Perform and administer any and all other services and responsibilities of Consultant which are reasonably necessary to obtain the Permits, which are set forth in any other provisions of this Agreement, and/or which are requested to be performed by Owner and are within the general scope of the services described herein.

(8)    The persons Consultant will utilize in performing the services set forth in this Agreement include: George Chiang, Raymond Chan, Lincoln Lee, Larry Galstian, and Al Hernandez, and may change from time to time at the discretion of the Consultant, on the basis that any team member replaced will have the sufficient experience and expertise to carry out his or her respective duties under this Agreement.

1.3    Subject to the right of Owner to determine, from time to time, the scope of the Consultant's Services to be performed by Consultant hereunder, Owner agrees to cooperate in good faith with Consultant in Consultant's efforts to perform Consultant's Services.

1.4    The Owner understands the Consultant does not guaranty or warrant that the Owner will obtain the Permits.

1.5    The Consultant is not a registered lobbyist in the City of Los Angeles and will not be performing lobbying service in the name of and on behalf of Owner.

1.6    The Consultant's officer, George C. Chiang is a licensee of California Bureau of

2

Exhibit 7
Page 20 of 26

Real Estate, License number #01781755. Consultant's officer, George C. Chiang, will continue to provide real estate services to other clients during this Agreement.

2.      Limitations and Restrictions.

Notwithstanding any provisions of this Agreement, Consultant shall not take any action, expend any sum, make any decision, give any consent, approval or authorization, or incur any obligation with respect to any of the following matters unless and until the same has been approved in writing by Owner making any expenditure or incurring any obligation by or on behalf of Owner or the Property.

3.      Compensation.

3.1      In full compensation for Consultant Services hereunder and subject to the other provisions hereof, Owner agrees to pay Consultant a monthly fee of $70,000. Subject to Owner's approval, Consultant may propose a change in the amount of monthly fee as deemed necessary by the Consultant to render its services to assist the Owner in obtaining the Permits.

3.2      The Consultant fee shall constitute full and complete payment to Consultant, and to any and all of its officers, employees, principals, subconsultants and affiliates, for all Consultant's Services furnished or performed by Consultant, or any of its officers, employees, principals, subconsultants or affiliates, hereunder in connection with Owner's efforts to obtain the Permits.

4.      Duration and Termination.

4.1      The parties anticipate that this Agreement shall remain in effect for two (2) years from the start date, unless sooner terminated as provided herein.

4.2      Notwithstanding the foregoing, Owner and Consultant shall each have the right to terminate this Agreement upon seven (7) business days' notice for any reason or for no reason, with or without cause.

4.3      Owner shall also have the right to terminate this Agreement upon the occurrence of any Default (as defined below) by Consultant. A "Default" shall be defined as the occurrence of any one or more of the following:

(1)      Consultant fails to perform any of the Consultant's Services in the manner or within the time required herein or commits a breach of or default in any of its duties, liabilities or obligations hereunder and fails to fully cure or remedy such failure, breach or default within seven (7) business days after written notice specifying the nature of such failure, breach or default by Owner to Consultant, or if such failure, breach or default cannot reasonably be cured within such seven (7) business day period, fails to commence such cure or remedy within such ten (10) business day period or at any time thereafter fails to diligently prosecute such cure or remedy to completion;

(2)      Consultant fails repeatedly to perform its obligations under this Agreement in a timely or satisfactory fashion and thereby materially interferes with the Schedule for

3

Exhibit 7
Page 21 of 26

obtaining the Permits; provided that Owner has previously notified Consultant in writing of one or more prior failures to perform in a timely or satisfactory fashion and Consultant has failed to or could not correct such prior failures, and, in one or more subsequent instances, has failed to perform its obligations in a timely or satisfactory fashion;

4.4.    Upon termination of this Agreement for any reason, including pursuant to Section 4.2 or subparagraphs (1) through (2) of Section 4.3, above, Consultant shall be entitled to receive, as its full and sole compensation under this Agreement, all payments already paid or accrued on account of the Consultant's Fee and Consultant shall have no right to receive any unaccrued portion of the Consultant Fee or any further payments.

5.    Independent Contractor.

In performing its services hereunder Consultant shall be an independent contractor and not an employee or agent of the Owner. Consultant specifically waives any claim of rights or benefits for Consultant and Consultant's employees and agents, whether present or future, under any and all of Owner's retirement plans, fringe benefits afforded employees of Owner or the payment of Social Security taxes by Owner, worker's compensation or unemployment compensation or like benefits normally afforded Owner's employees. In performing the services under this Agreement, Consultant represents and warrants to Owner that it will not violate any laws, statutes or ordinances.

6.    Ownership of Information and Materials.

Consultant shall, upon completion of Consultant's Services or any sooner termination of this Agreement, deliver to Owner all written data and information generated by or for Consultant in connection with obtaining the Permits or otherwise hereunder or supplied to Consultant by Owner or Owner's agents, and all drawings, plans, books, records, contracts, agreements and all other documents and writings in its possession relating to its services hereunder, and Owner shall have the right to use the same without further compensation to Consultant. Such data and information and all such documents shall at all times be the property of Owner. Consultant agrees, for itself and all persons retained or employed by Consultant in performing the Consultant's Services hereunder, to hold in confidence and not to use or disclose to others any confidential or proprietary information of Owner heretofore or hereafter disclosed to Consultant or any such persons and designated as such by Owner, including but not limited to any data, information, plans, or programs, which may come within the knowledge of Consultant or any such persons in the performance of, or as a result of, the Consultant's Services hereunder, except where: (a) the Owner specifically authorizes Consultant in writing to disclose any of the foregoing to others or such disclosure reasonably results from the performance of Consultant's Services hereunder; or (b) such written data or information shall have theretofore been made publicly available by parties other than Consultant or any such persons. Consultant agrees to maintain the confidentiality and will not disclose to any third-party information about the Owner's business, finances, and plans and design to develop the Property, and any other proprietary or confidential information of Owner, unless such disclosure is reasonably necessary for Consultant to assist Owner in obtaining the Permits and carrying out Consultant's services as set forth herein.

4

Exhibit 7
Page 22 of 26

7.   Taxes and Contributions.

Consultant assumes full and exclusive responsibility and liability for withholding and paying, as  may be required by law, all federal, state and local taxes and contributions, with respect to,  assessed against, or measured by the Consultant's Fee payable hereunder, or salaries or other  contributions or benefits paid or made available to any persons retained, employed or used by or  for Consultant in connection with the performance of Consultant's Services hereunder, and any  and all other taxes and contributions applicable to its services for which Consultant may be  responsible under any laws or regulations, and shall make all returns and/or reports required in  connection with any and all such laws, regulations, taxes, contributions and benefits.

8.   Severability.

Each provision of this Agreement is intended to be severable. If any term or provision hereof shall be determined by a court of competent jurisdiction to be illegal or invalid for any reason whatsoever, such provision shall be severed from this Agreement and shall not affect the validity of the remainder of this Agreement.

9.   Indemnity.

To the fullest extent permitted by law, Consultant shall indemnify and hold harmless Owner and its employees, affiliates, agents, officers, and directors ("Indemnified Parties") from and against all losses, damages, liabilities, costs, claims, damages, losses and expenses, including but not limited to reasonable attorneys' fees and costs of defense, (collectively, "Claims") sustained or incurred by any Indemnified Party and arising from third party claims, but only to the extent that such losses, damages, liabilities, costs and expenses are caused by the negligent acts, errors and/or omissions of the Consultant or any persons or entities working for Consultant.

10.   Waiver; Consents.

No consent or waiver, express or implied, by any party hereto to or of any breach or default by  any other party in the performance by such other party of its obligations hereunder shall be valid  unless in writing, and no such consent or waiver shall be deemed or construed to be a consent or  waiver to or of any other breach or default in the performance by such other party of the same or  any other obligations of such party hereunder. Failure on the part of any party to complain of any  act or failure to act of another party or to declare such other party in default, irrespective of how  long such failure continues, shall not constitute a waiver by such party of its rights hereunder.
The granting of any consent or approval in any one instance by or on behalf of any party hereto  shall not be construed to waive or limit the need for such consent in any other or subsequent  instance.

11.   Governing Law.

This Agreement is entered into in the State of California and shall be governed by the laws thereof. The venue of any action or proceeding brought by either party against the other

5

Exhibit 7
Page 23 of 26

arising out of this Agreement shall, to the extent legally permissible, be in the County of Los Angeles, California.

12.      Modification of Agreement.

This Agreement is intended as the final expression and complete and exclusive statement of the parties' agreement with respect to its terms and any oral or written statements that contradict, explain or supplement this Agreement are not admissible or effective. To be effective, any modification of this Agreement must be in writing and signed by the party to be charged thereby.

13.      Headings.

The headings of the Sections of this Agreement are inserted for convenience of reference only and shall not in any manner affect the construction or meaning of anything herein contained or govern the rights or liabilities of the parties hereto.

14.      Execution of Agreement.

This Agreement may be executed in counterparts, each of which when so executed and delivered, shall be deemed to be an original.

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the day and year first above written.

**Jia Yuan USA Co., Inc.**

By: _____
Name: MASON SITH
Title: GENERAL MANAGER
Date of Execution: 11/29/2017

**SYNERGY ALLIANCE ADVISORS, INC.**
a California corporation

By: _____
Name: George Chiang
Title: Manager of Operations
Date of Execution: 11/17/17

6

Exhibit 7
Page 24 of 26

# EXHIBIT B

Exhibit 7
Page 25 of 26



**Jia Yuan USA Company, INC.**
801 South Figueroa Street, Suite 1800,
Los Angeles, CA 90017, USA

January 15, 2019

Via Email:  George.Chiang@synergyalliance.net
and U.S. Mail

George Chiang
Manager of Operations
Synergy Alliance Advisors, Inc.
800 6th Street, #900
Los Angeles, CA 90017

**Re:  Notice of Termination of Consulting Services Agreement dated December 1,
2017 with Jia Yuan USA Co., Inc. (the "Agreement")**

Dear Mr. Chiang,

This correspondence constitutes Jia Yuan USA Co., Inc.'s ("Jia Yuan") notice of termination of the Agreement referenced above pursuant to section 4.2 thereof, effective immediately after expiration of the 7 days' notice provided for therein.  Pursuant to section 4.4 of the Agreement, Jia Yuan will pay the monthly consulting fees for November and December 2018, but no payment will be made for January 2019, as previously agreed.

We request that Synergy Alliance Advisors, Inc. comply with section 6 of the Agreement and provide to Jia Yuan its records, information and work product relating to Synergy's services as soon as possible so that Jia Yuan may transition the work accordingly.

Thank you,

Mason Situ
General Manager

Exhibit 7
Page 26 of 26