CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CAREL ALE (Bar No. 283717)
Email: Carel_Ale@fd.org
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
ADAM OLIN (Bar No. 298380)
Email: Adam_Olin@fd.org
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
Jose Huizar

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-20-326-JFW-1 |
| Plaintiff, | |
| v. | **JOINT MOTION IN LIMINE NO. 1: DEFENDANT'S MOTION TO EXCLUDE EVIDENCE THAT THE GOVERNMENT SEEKS TO ADMIT UNDER 801(d)(2)(E) ABSENT A SUFFICIENT PRETRIAL SHOWING** |
| JOSE LUIS HUIZAR, | |
| Defendant. | **Hearing Date:** January 20, 2023<br>**Hearing Time:** 8:00 a.m.<br>**Location:** Courtroom of the Honorable John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Cassie D. Palmer, Brian Faerstein, and Susan S. Har, and defendant Jose Huizar, by and through his counsel of record, Carel Alé, Charles J. Snyder, and Adam Olin, hereby submit this Joint Motion in Limine No. 1: Defendant's motion to preclude out-of-court statements offered for admission under Rule 802(d)(2)(E) absent a sufficient pretrial showing.

1    This Joint Motion <u>in Limine</u> is based upon the attached memorandum of

2    points and authorities, the files and records in this case, and such further evidence

3    and argument as the Court may permit.

4

5    Dated: December 19, 2022          Respectfully submitted,

6                                      E. MARTIN ESTRADA
                                       United States Attorney
7
                                       SCOTT M. GARRINGER
8                                      Assistant United States Attorney
                                       Chief, Criminal Division
9
                                       */s/ Cassie D. Palmer*
10                                     MACK E. JENKINS
                                       CASSIE D. PALMER
11                                     SUSAN S. HAR
                                       BRIAN FAERSTEIN
12                                     Assistant United States Attorneys

13                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA
14

15                                     CUAUHTEMOC ORTEGA
                                       Federal Public Defender
16
17   DATED:  December 19, 2022     By  */s/ Charles J. Snyder*

18                                     CHARLES J. SNYDER
                                       CAREL ALÉ
19                                     ADAM OLIN
                                       Attorneys for Jose Huizar
20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES TO BE DECIDED ................................................. 1

DEFENSE MOTION ......................................................................................... 2

        1.    The Ninth Circuit construes Rule 801(d)(2)(E) strictly against the government ................................................................... 2

        2.    Given the volume and complexity of the potential trial evidence, the Court should require a substantial pretrial showing for coconspirator statements ........................................................ 4

CONCLUSION .................................................................................................. 6

GOVERNMENT OPPOSITION ........................................................................ 7

I. INTRODUCTION ......................................................................................... 7

II. ANALYSIS .................................................................................................. 8

    A.    The Court Has Ruled on Many Issues Defendant Re-Raises Here ............ 8

    B.    The Court Will Resolve the Admissibility of all Co-Conspirator Statements In the Exhibits In Advance of Trial ......................................... 11

DEFENSE REPLY ......................................................................................... 12

DECLARATION OF CHARLES J. SNYDER ..................................................... 13

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Bourjaily v. United States,*
5
    483 U.S. 171 (1987)................................................................................2, 4

6

*Crawford v. Washington,*
7
    541 U.S. 36 (2004).................................................................................. 10

8

*United States v. Bowman,*
9
    215 F.3d 951 (9th Cir. 2000) ................................................................... 2

10

*United States v. Coe,*
11
    718 F.2d 830 (7th Cir. 1983) ................................................................... 4

12

*United States v. Cox,*
13
    923 F.2d 519 (7th Cir. 1991) ................................................................... 5

14

*United States v. Eubanks,*
    591 F.2d 513 (9th Cir. 1979) ...............................................................3, 4

15

*United States v. Felix-Sosa,*
16
    905 F.2d 1541 (9th Cir. 1990) ................................................................. 2

17

*United States v. Fielding,*
18
    645 F.2d 719 (9th Cir. 1981) ...............................................................3, 4

19

*United States v. James,*
20
    590 F.2d 575 (5th Cir. 1979) ................................................................... 5

21

*United States v. Johnson*,
22
    927 F.3d 999 (7th Cir. 1991) ................................................................... 3

23

*United States v. Larson*,
24
    460 F.3d 1200 (9th Cir. 2006) ................................................................. 7

25

*United States v. Manfre,*
    368 F.3d 832 (8th Cir. 2004) ................................................................... 4

26

*United States v. Marr,*
27
    No. 14-CR-00580-PJH, 2017 WL 1540815 (N.D. Cal. Apr. 28, 2017)...................... 4

28

*United States v. Morgan,*
  748 F.3d 1024 (10th Cir. 2014) ..................................................................... 4

*United States v. Nazemian,*
  948 F.2d 522 (9th Cir. 1991) ......................................................................... 2

*United States v. Ragland,*
  555 F.3d 706 (8th Cir. 2009) ......................................................................... 3

*United States v. Ricks,*
  639 F.2d 1305 (5th Cir. 1981) ....................................................................... 5

*United States v. Silverman,*
  861 F.2d 571 (9th Cir. 1988) .................................................................. 2, 3, 4

*United States v. SKW Metals & Alloys, Inc.,*
  195 F.3d 83 (2d Cir. 1999) ............................................................................ 3

*United States v. Tille,*
  729 F.2d 615 (9th Cir. 1984) ......................................................................... 9

*United States v. Townley,*
  472 F.3d 1267 (10th Cir. 2007) ..................................................................... 5

*United States v. Urbanik,*
  801 F.2d 692 (4th Cir. 1986) ......................................................................... 3

*United States v. Whitman,*
  771 F.2d 1348 (9th Cir. 1985) ..................................................................... 10

*United States v. Woodland,*
  No. CR 05-00668(A)-MMM, 2007 WL 9706767 (C.D. Cal. Jan. 9,
  2007) ............................................................................................................. 3

*United States v. Zavala-Serra,*
  853 F.2d 1512 (9th Cir. 1988) ..................................................................... 10

*United States v. Zemek,*
  634 F.2d 1159 (9th Cir. 1980) ....................................................................... 7

**Other Authorities**

Fed. R. Evid. 104(b) ........................................................................................ 7

Fed. R. Evid. 801 .................................................................................... passim

# STATEMENT OF ISSUES TO BE DECIDED

**Defense Position:** The government intends to admit a substantial portion of its evidence under the coconspirator-hearsay exception.  Consistent with courts presiding over other complex cases, Huizar seeks an order requiring the government to make a substantial pretrial showing before admitting statements under the exception.  If the government fails to do so, he seeks a further order provisionally excluding the statements from trial.

**Government Position:** The Court should deny defendant's motion for three reasons.  First, the Court has already ruled upon many of the same or analogous issues defendant raises here (and seeks to re-raise).  Second, via the Joint Pretrial Exhibit Stipulation, defendant will have the opportunity to brief, and the Court to resolve, the admissibility of all coconspirator statements contained in the exhibits, which constitute the vast majority of the coconspirator statements the government will seek to introduce at trial.  Third, any remaining, limited issues relating to coconspirator statements admitted through witness testimony are best addressed, as the Court has held, "on an objection-by-objection basis and statement-by-statement basis during the course of the trial."  (9/23/22 Hr'g Tr. (SZNW MIL Hr'g) at 46:19-24.).

1

## DEFENSE MOTION

2      The government intends to rely heavily on the Rule 801(d)(2)(E) to admit a wide

3  range of statements against Jose Huizar.  To date, it has declined to tell Huizar exactly

4  who it believes was conspiring with him at which periods of time, but suggested that

5  nearly any statement at any time by any person it deems a member of the conspiracy is

6  admissible under the exception.  Given the volume and breadth of the evidence in this

7  case, the Court should demand a more rigorous approach.  Consistent with courts

8  presiding over other complex cases, it should require the government to make a

9  substantial pretrial showing before admitting statements under the exception.  If the

10  government fails to do so, the statements should be provisionally excluded.

11  **1.  The Ninth Circuit construes Rule 801(d)(2)(E) strictly against the government.**

12      Because the coconspirator exception relies on an agency fiction, courts construe

13  it strictly against the government.  United States v. Nazemian, 948 F.2d 522, 529 (9th

14  Cir. 1991).  To properly deploy the exception, the government must establish that for

15  each statement: (1) a criminal conspiracy existed when the statement was made; (2) the

16  declarant and defendant were members; and (3) the statement was made in furtherance

17  of the conspiracy.  United States v. Bowman, 215 F.3d 951, 960-61 (9th Cir. 2000).

18      The first two requirements "are preliminary facts that must be established before

19  extrajudicial statements of a coconspirator can be introduced into evidence."  United

20  States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988);  Bourjaily v. United States, 483

21  U.S. 171, 175 (1987).  In the Ninth Circuit, proof of these facts must be substantial and

22  independent.  Silverman, 861 F.2d at 576-78.

23      "A coconspirator's out-of-court statement, standing alone, is insufficient to

24  establish that the defendant had knowledge of and participated in a particular

25  conspiracy."  Silverman, 861 F.2d at 577.  And because "out-of-court statements are

26  presumptively unreliable," id. at 578, "one presumptively unreliable hearsay statement

27  cannot be invoked to corroborate another hearsay statement, especially when uttered by

28  the same declarant."  United States v. Felix-Sosa, 905 F.2d 1541, 1541 (9th Cir. 1990).

1

Further, "[e]vidence of wholly innocuous conduct or statements by the defendant will [also] rarely be sufficiently corroborative . . . to constitute proof . . . that the defendant knew of and participated in the conspiracy." Silverman, 861 F.2d at 578.

And, even if the first two requirements are established, the heart of the exception lies in the third. "Not all statements made by co-conspirators can be considered to have been made in furtherance of the conspiracy." United States v. Eubanks, 591 F.2d 513, 520 (9th Cir. 1979). Rather, statements are "in furtherance of" the conspiracy only if they "'further the common objectives of the conspiracy' or 'set in motion transactions that [are] an integral part of the [conspiracy].'" United States v. Woodland, No. CR 05-00668(A)-MMM, 2007 WL 9706767, at *7 (C.D. Cal. Jan. 9, 2007) (everything omitted). While the contours of this third requirement are fact-specific, courts have provided extensive guidance regarding the types of statements that do not meet it.

First, statements that "simply inform[] the listener of the declarant's criminal activities [are] not made in furtherance of the conspiracy." United States v. Ragland, 555 F.3d 706, 713 (8th Cir. 2009). This includes statements in which one conspirator informs the listener of the supposed acts of another. United States v. Fielding, 645 F.2d 719, 726 (9th Cir. 1981) ("Confessions or admissions of a coconspirator, mere conversation between conspirators or merely narrative declarations [are not in furtherance]") (everything omitted); United States v. SKW Metals & Alloys, Inc., 195 F.3d 83, 88 (2d Cir. 1999) ("A merely narrative description by one co-conspirator of the acts of another, while often quite useful in terms of evidentiary value, will not be admissible under the exception because it is not in furtherance[.]").

Second, idle conversation that happens to touch upon the conspiracy is not sufficient to "further" a conspiracy. United States v. Urbanik, 801 F.2d 692, 698 (4th Cir. 1986). And "[t]his is true even when . . . the declarant makes what can be construed as an offhand admission of culpability." United States v. Johnson, 927 F.3d 999, 1002 (7th Cir. 1991) (collecting cases); United States v. Eubanks, 591 F.2d 513, 520 (9th Cir. 1979) (holding that a "casual admission of culpability to someone [the

2

1  declarant] had individually decided to trust" is not in furtherance of the conspiracy).

2  <u>Third</u>, statements made to individuals who are not then members of the

3  conspiracy generally don't qualify for admission.  <u>Fielding</u>, 645 F.2d at 727 (explaining

4  that, in <u>Eubanks</u>, the fact that the defendant's wife later became a conspirator did not

5  "retroactively convert [earlier] statements . . . into declarations in furtherance")

6  (cleaned up); <u>United States v. Manfre</u>, 368 F.3d 832, 841 (8th Cir. 2004) (accomplice's

7  statement to fiancé were not admissible under Rule 801(d)(2)(E) because he was just

8  describing activities to a non-conspirator and not making statements in furtherance).

9  <u>Fourth</u>, statements made before the conspiracy began, <u>United States v. Coe</u>, 718

10  F.2d 830, 839-840 (7th Cir. 1983); after its "central purpose" was attained, <u>United</u>

11  <u>States v. Morgan</u>, 748 F.3d 1024, 1036 (10th Cir. 2014); and before <u>both</u> the declarant

12  and accused joined or after <u>one</u> left, <u>Bourjaily</u>, 483 U.S. at 175, are not admissible.

**2.  Given the volume and complexity of the potential trial evidence, the Court should require a substantial pretrial showing for coconspirator statements.**

14  In all cases, but especially this one, correctly determining the admissibility of

15  coconspirator statements is a critical function.  If a coconspirator statement is wrongly

16  admitted and, either alone or in conjunction with other evidence, the statement could

17  have affected a single juror's decision to convict, the required result is reversal.  <u>See</u>,

18  <u>e.g.</u>, <u>Silverman</u>, 861 F.2d 582 (reversing conviction based on two statements wrongly

19  admitted under 801(d)(2)(E)); <u>Fielding</u>, 645 F.2d at 728 (same); <u>Eubanks</u>, 591 F.2d at

20  521 (reversing conviction based on wrongly-admitted statements made by one

21  coconspirator to his wife who later became a member of the conspiracy).

22  When evaluating coconspirator statements at the pretrial stage, courts have

23  generally taken three approaches.

24  The first involves conditionally admitting statements subject to "connecting up."

25  While this approach has the virtue of efficiency, the danger is that admissibility

26  depends on "all of the evidence, even the defendants' evidence," making it hard to

27  predict in the abstract.  <u>United States v. Marr</u>, No. 14-CR-00580-PJH, 2017 WL

28

3

1540815, at *13 (N.D. Cal. Apr. 28, 2017).  If it turns out at the end that evidence shouldn't have been admitted, "the prejudice . . . can rarely be eliminated by curative or cautionary instructions." United States v. Ricks, 639 F.2d 1305, 1309 (5th Cir. 1981).

The second approach involves a pretrial evidentiary hearing.  United States v. James, 590 F.2d 575, 581-82 (5th Cir. 1979).  Several courts prefer this approach because it reduces the likelihood of prejudicial error and limits the number of trial objections.  See United States v. Townley, 472 F.3d 1267, 1273 (10th Cir. 2007).

A third approach combines some of the efficiency of approach one with some of the accuracy of approach two.  Courts employing this approach require the government to make a pretrial proffer justifying each statement, but leave the final decision largely to the close of evidence.  United States v. Cox, 923 F.2d 519, 526 (7th Cir. 1991).

Here, a number of circumstances counsel in favor of requiring a substantial pretrial showing before admitting statements under Rule 801(d)(2)(E).

First, the trial evidence is likely to be extraordinarily voluminous and complex, and the number of potential declarants and statements is potentially vast.  Attempting to make conditional, on-the-spot admissibility determinations subject to trial evidence that may or may not come in as anticipated will inevitably be little more than guesswork.

Second, by severing this case into three trials and excluding scheme evidence from both earlier trials, the Court has already held that the government's overarching conspiracy theory swept more broadly than its proof.  Without any pretrial admissibility analysis, the Court would be relying on essentially the same assessment and assessors for its admissibility determination, but now in a 8-week trial on pain of reversible error.

Third, the alleged conspiracy spans several years and involves numerous people with shifting roles.  Just for example, the idea that Huizar was conspiring with Ray Chan or Ricky Zheng in 2013 and 2014 assumes that he was taking bribes from Wei Huang at the time, but the L.A. Grand redevelopment project did not yet exist.  Justin Kim, who did not plead to RICO, said that he was only involved in one 2017 bribe with Huizar.  Morrie Goldman, who also did not plead to RICO, says that he only

4

experienced one situation with Huizar involving a bribe; and the alleged evidence of bribery, as opposed to routine political activity, did not occur until mid-2018.  For Shawn Kuk, there is no evidence that Huizar would reasonably have foreseen any of his illegal activity in 2018, which Kuk sought to hide from his boss.  George Esparza was openly antagonistic to Huizar starting in 2016, left his office in late 2017, and waged a campaign to destroy his career and bury him with authorities throughout 2018.  And there are many more witnesses with equally varying roles over time from whom the government may seek to admit statements under the exception.

Fourth, the government has already manifested a view of Rule 801(d)(2)(E) that is contrary to law.  For instance, the government seeks to admit texts between Goldman and Neils Cotter from 2016; but, even under its own premises, that was before there existed evidence of criminal bribery.  The government seeks to admit a 2019 recorded conversation between Kim and David Lee; at the time, Kim was an informant working for the government, Huizar had already been raided, and Huizar and Lee hadn't talked for years.  The government seeks to admit communications between Esparza and Jesse Leon; Leon had no role in any alleged conspiracy with Huizar.  The government seeks to admit statements from Joon Chen and Max Zeff, both of whom had no involvement in a conspiracy with Huizar.  And the government seeks to admit prejudicial statements by Esparza, Kim, and Chiang that fall squarely within the Eubanks and Fielding bars.

## CONCLUSION

Bottom line, the government's conspiracy theory paints in exceptionally-broad strokes, but admissibility turns on fine details, including a defense case that the Court has yet to see.  A coconspirator free-for-all would undoubtedly be easier on the front end, but it is a threat to a fair trial and a dangerous invitation to reversible error.  Given the unique circumstances of this case, Court should require the government to make a substantial pretrial showing for each statement it intends to admit under Rule 801(d)(2)(E).  If it fails to do so, the Court should at least provisionally exclude the statements from trial.

## **GOVERNMENT OPPOSITION**

### A.   **INTRODUCTION**

At trial, the government will seek to introduce coconspirator statements contained in documents, recordings, and text messages, and via witness testimony relating to the RICO conspiracy and sub-schemes involving defendants Jose Huizar and Ray Chan.  These statements constitute admissible coconspirator statements under Federal Rule of Evidence 801(d)(2)(E).  The government will lay a proper foundation by a preponderance of evidence[1] showing that (1) a RICO conspiracy/sub-scheme existed, (2) Huizar and Chan participated in the RICO conspiracy/sub-scheme, and (3) the statements at issue were made during and in furtherance of the scheme.  United States v. Larson, 460 F.3d 1200, 1211 (9th Cir. 2006).  The Court is well-aware of the nuances of the coconspirator statement exemption and how it is applied, having addressed this issue at length in the prior trials in this matter.  (See, e.g., 5/13/22 Hr'g Tr. at 13-23 (940 Hill/Dae Yong Lee trial); 9/23/22 Hr'g Tr. ("SZNW Hr'g") at 9-15, 31-38, 41-45.)  In both, the Court ruled the government established the appropriate foundation to admit such statements.

Defendant outlines an onerous method he contends the Court should adopt for the RICO trial to evaluate the coconspirator/schemer[2] evidence in advance of trial, which would require the government to identify every statement it intends to introduce, as well as each participant in the RICO conspiracy/sub-scheme and the dates that the

---

[1] To the extent the Court opts to resolve these issues pretrial, all that is required is substantial evidence from which a reasonable juror could infer the existence of the conspiracy.  Fed. R. Evid. 104(b), advisory committee note to subdivision (b); United States v. Zemek, 634 F.2d 1159, 1170 (9th Cir. 1980) (admissibility of a coconspirator's statements requires only substantial independent evidence of the existence of the conspiracy).

[2] The government refers to coconspirator and co-schemer statements interchangeably in its opposition because, as the Court has correctly held, "just as acts and statements of co-conspirators are admissible against other co-conspirators, so too are statements and acts of co-participants in a scheme to defraud admissible against the other participants."  (SZNW Hr'g 13:15-19 (citing United States v. Lothian, 976 F.2d 1257, 1262-64 (9th Cir. 1992).)

6

1  participant entered and left the conspiracy/sub-scheme.  (Mot. at 3-4; Snyder Decl.
2  ¶¶ 2, 4, 6.)  The Court should decline to impose such a requirement for three reasons.
3  *First*, the Court has already ruled upon many of the same or analogous issues defendant
4  raises here (and seeks to re-raise, despite the Court's admonishment that parties not re-
5  litigate issues the Court has already ruled on).  *Second*, via the Joint Pretrial Exhibit
6  Stipulation, defendant will have the opportunity to brief, and the Court to resolve, the
7  admissibility of all coconspirator statements contained in the exhibits, which constitute
8  most of the coconspirator statements to be introduced at trial.  *Third*, any remaining,
9  limited issues relating to statements in testimony are best addressed, as the Court held,
10  "on an objection-by-objection basis and statement-by-statement basis during the course
11  of the trial."  (SZNW Hr'g at 46:19-24.)

## II.   ANALYSIS

## A.   The Court Has Ruled on Many Issues Defendant Re-Raises Here

13  Many issues defendant raises in the Motion have been litigated and ruled upon
14  previously.  For example, defendant argues that "the idea that Huizar was conspiring
15  with Ray Chan or Ricky Zheng in 2013 and 2014 assumes that he was taking bribes
16  from Wei Huang at the time, but the L.A. Grand redevelopment project did not yet
17  exist."  (Mot. at 4.)  But the Court's prior rulings are contrary to this view.  (See SZNW
18  Hr'g 45:19-21 ("[I]t is not required that the Government prove that the L.A. Grand
19  Hotel project was currently pending at the time of the bribe."); 41:9-16 ("There is more
20  than sufficient evidence to find that the [SZNW] scheme began as early as 2013 based
21  upon Raymond Chan's introduction of Mr. Huang and Mr. Huizar in February of 2013,
22  their immediate travel to Las Vegas, the benefits that Mr. Huang provided to Mr.
23  Huizar and Esparza on that trip, Huang's request of Huizar and Chan to support the
24  Shen Zhen and its renovation project, which Huizar agreed to do."); id. at 43:11-13
25  ("[T]hat prerequisite [that a conspiracy existed] has been met as to Mr. Huang, Zheng,
26  Huizar, Esparza, and Raymond Chan."); id. at 71:21-24 ("[T]here is sufficient evidence
27  to conclude that Shen Zhen, Mr. Huang, Huizar and Esparza, Zheng, and Chan were

1   participants in a much broader pay-to-play scheme than the one charged."). The Court

2   previously ordered any party wishing to challenge a prior ruling to file a declaration

3   with citations to the record (10/21/22 Hr'g Tr. at 28)—an order that defendant

4   apparently has disregarded here.[3]

5        Similarly, many arguments defendant advances rest on premises directly at odds

6   with prior Court rulings. For example, defendant claims that statements of concealment

7   by coconspirators, *e.g.*, Lee, Kim, or Esparza, should not be admissible against Huizar

8   because they occurred after the bribes. But "[t]he nature of a racketeering enterprise

9   may require continuing concealment," United States v. Tille, 729 F.2d 615, 620 (9th

10  Cir. 1984), which is precisely what the government has alleged here. In the SZNW

11  trial, the Court held that evidence of concealment by coconspirators – there, Huizar and

12  Esparza – was "relevant and probative" of Wei Huang's (and consequently SZNW's)

13  intent. (See SZNW Hr'g at 9:18-21; 7-15, 101-111.) Specifically, Huizar and

14  Esparza's statements and acts of "concealment tend to show that an illegal bribery

15  scheme existed, that Shen Zhen and Wei Huang were involved in the scheme, that Shen

16  Zhen and Huang acted with corrupt intent when they gave Huizar and Esparza benefits

17  as part of the scheme, and that Huizar and Esparza understood he corrupt nature of the

18  benefits." (Id. at 9-10.) The Court further held that statements of concealment were

19  made "during and in furtherance" of an ongoing scheme because they made "it less

20  likely that the bribery scheme would be detected by law enforcement and, thus, more

21  likely that [briber] would obtain the alleged benefits of the scheme, *i.e.*, Huizar's

22  favored treatment with respect to the development . . . ." (Id. at 14:6-11; 14:12-15:11

23  (stating that statements designed to conceal an ongoing conspiracy are made in

24  furtherance of the conspiracy for purposes of Rule 801(d)(2)(E)).) The same reasoning

25  applies to Huizar's conversations with Esparza, where Huizar actively encouraged

26

27        [3] Having failed to do the legwork requested by the Court of reviewing the
    Court's prior rulings in detail to determine which issues have been ruled upon and
28  providing such citations to the Court, defendant has essentially shifted the burden to the
    government to do this work.

concealment, and to Lee's conversations with Kim, where Lee did the same, even though they occurred after the bribe payments.

Next, the Court held that "it is not necessary that the statement be made to another member of the conspiracy for it to come in under Rule 801(d)(2)(E)" (SZNW Hr'g at 33:11-14 (citing United States v. Lloyd, 807 F.3d 1128, 1160-61 (9th Cir. 2015)), which directly addresses and rejects defendant's arguments regarding coconspirators' conversations with persons he claims may not have been members of the conspiracy (for example, Shawn Kuk, Joon Cheon, Max Zeff, and Jesse Leon). (See, e.g., 11/2/22 Hr'g Tr. at 1185 (overruling objection to Trial Ex. 395 (a call between Esparza and Jesse Leon), because Esparza's statements were "made during the course of and in furtherance of the conspiracy and are admissible as non-hearsay").) "When inquiring whether a statement was made in furtherance of a conspiracy or scheme, the Court focuses not on the statement's actual effect in advancing the goals of the conspiracy but on the declarant's intent in making the statement."  (Id. at 32:18-22 (quoting United States v. Zavala-Serra, 853 F.2d 1512, 1516 (9th Cir. 1988); see Zavala-Serra, 853 F.2d at 1516 ("When a declarant 'seek[s] to induce [the listener] to deal with the conspirators or in any other way to cooperate or assist in achieving the conspirators' common objective,' the declaration may be admissible [as a co-conspirator statement]" (quoting United States v. Foster, 711 F.2d 871 (9th Cir. 1983)). Thus, a coconspirator's conversations with a non-conspirator are admissible if the coconspirator's intent is to advance the goals of the conspiracy, in which case the non-coconspirator's statements are admissible as non-hearsay to show the statements were made, e.g., that a conspirator was carrying out a plan, and to place the conspirator's statements in context.  See United States v. Whitman, 771 F.2d 1348, 1352 (9th Cir. 1985) (informant's statements admissible as non-hearsay to show they were made and place conspirator's statements in context); Crawford v. Washington, 541 U.S. 36, 59, (2004) (Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

1   **B.      The Court Will Resolve the Admissibility of All Co-Conspirator**
2           **Statements In the Exhibits In Advance of Trial**

3           Defendant argues the relief he seeks is necessary because the evidence at trial
4   will be "extraordinarily voluminous and complex." (Mot. at 4.) But the Court has in
5   place a comprehensive method of addressing the admissibility most coconspirator
6   statements, *i.e.*, the Joint Pre-Trial Exhibit Stipulation. Indeed, the parties are amid the
7   Court's mandated meet-and-confer process: they have stated their respective positions
8   regarding the admissibility of such statements, will submit the Joint Stipulation, and
9   brief their arguments if they do not reach an agreement, including whether the
10  declarants were members of the conspiracy and whether the statements were made
11  during and in furtherance of it. Thus, defendant will have an opportunity to brief, and
12  the Court to resolve, whether such statements fall within the coconspirator exemption.

13          Moreover, the indictment in this case is incredibly detailed and contains the dates
14  the government alleges the RICO conspiracy and sub-schemes began and ended, and
15  the Court has sat through the two prior trials in which it resolved the admissibly of
16  statements relating to the 940 Hill and LA Grand sub-schemes. Consequently, the
17  Court is intimately familiar with the evidence relating to the RICO conspiracy and the
18  sub-schemes involving Huizar and Chan and will be in an even better position at trial to
19  make reasoned, fact-based admissibility determinations, rather than resorting to what
20  defendant disparagingly characterizes as "little more than guesswork."

21          Having resolved the coconspirator statements in the exhibits before trial, the
22  Court will be left only with statements in testimony, which the Court previously ruled
23  are best resolved "on an objection-by-objection basis and statement-by-statement basis
24  during the course of the trial." (SZNW Hr'g at 46:19-24.) Thus, the Court should
25  decline to adopt the onerous, unnecessary approach defendant recommends, because
26  the alternative and more efficient means of achieving this same goal is already in place.

27

28

                                         10

1

**<u>DEFENSE REPLY</u>**

2       This motion does not seek to exclude individual pieces of evidence as

3   inadmissible under the coconspirator exception, a topic that couldn't possibly be

4   covered in five pages or on this record.[4]  Instead, given the Court's expressed desire for

5   an orderly trial, it proposes a trial-management procedure that courts have used in

6   complex cases with foreseeable coconspirator-hearsay disputes.  <u>See</u>, <u>e.g.</u>, <u>United</u>

7   <u>States v. Meshkin, et al.</u>; CR-21-112-JLS, Docket No. 195 (C.D. Cal. Nov. 9, 2022)

8   (recent order by Judge Staton approving procedure in a complex healthcare-fraud trial).

9   Whether or not to adopt that procedure is within the Court's discretion.  But Huizar

10  suggests that his proposal is grounded in pragmatism and common sense.  This trial

11  will be sweeping and complex in ways that the earlier two trials were not.  And the

12  government intends to rely heavily on the coconspirator exception to admit a large

13  portion of its evidence.  It is in everyone's interest to preestablish the rough contours of

14  what the government can and can't admit under the exception instead of finding out,

15  weeks in, that the government overshot and generated a mistrial or reversal.  While this

16  may be more onerous than the alternative, as John Wooden said: "If you don't have

17  time to do it right, when will you have time to do it again?"

18

19

20       [4] The government cites the Court's comments at earlier pretrial hearings to
suggest that every issue raised by this motion has already been decided.  As stated

21  above, this motion is about a procedure, not individual pieces of evidence, so that
argument is conceptually wrong.  But even on the level of individual pieces of

22  evidence, the Court has acknowledged that its views pretrial are necessarily preliminary
and based on the record available to it at the time.  Also, this motion barely scratches

23  the surface on the breadth and volume of statements that the government intends to
admit under the coconspirator exception.  Just as one of many examples, during the

24  meet-and-confer process for trial exhibits, the government indicated that it intended to
admit statements from nonconspirators against Huizar under the coconspirator

25  exception on the theory that the nonconspirators were agents of Huizar's
coconspirators.  In other words, the government intends to extend the agency "fiction"

26  of the exception to the fictional agent's agents.  That Frankenstein-like amalgamation
of Rules 801(d)(2)(D) and (E), which knows no basis in the law, reflects an anything-

27  goes attitude toward the exception that augurs danger for the trial and any record on
appeal.  <u>See</u> Fed. R. Evid. 801, ACN ("While the broadened view of agency taken in

28  item [present 801(d)(2)(D)] might suggest wider admissibility of statements of co-
conspirators, the agency theory of conspiracy is at best a fiction and ought not to serve
as a basis for admissibility beyond that already established").

## <u>DECLARATION OF CHARLES J. SNYDER</u>

I, Charles J. Snyder, declare as follows:

1. I am a California-licensed DFPD appointed to represent Jose Huizar in this matter.  Unless otherwise stated, I make this declaration based on personal knowledge and, if called as a witness, would attest to its contents under oath.

2. On October 23, 2022, in advance of the parties' meet-and-confer conversation, I emailed the government and asked that it identify who it believed was conspiring with Huizar at which periods of time.  I suggested that the government could do this by completing the following table:

| Person | Date Joined Conspiracy with Huizar | Date Left Conspiracy with Huizar |
|--------|-------------------------------------|----------------------------------|
|        |                                     |                                  |

3. In response, the government stated that it was not "required to provide a table listing each person and what dates they participated in the conspiracy with Huizar, but [it was] happy to discuss, of course, who [it] believe[d] to be unnamed co-conspirators and to address broader categories of evidence like the two examples you raised."[5]

4. I agree that the government is not required to provide a table listing Huizar's alleged coconspirators and the dates on which they allegedly conspired with Huizar.  Given the stage of the case, however, I don't think it is unreasonable to ask the government to state who it believes was conspiring with Huizar at which periods of time.

5. On November 3, after the parties' meet-and-confer conversation and as I was

---

[5] In response to two exemples, the government indicated that it believed that statements made by George Esparza after he left to Huizar's office in late 2017, began working with Wendy Carillo in Sacramento, and attempted to destroy Huizar's career by promoting harassment lawsuits and negative press, would be statements in furtherance of a conspiracy with Huizar; the government also indicated that a surreptitiously recorded conversation between Justin Kim and David Lee in March 2019 was in furtherance of a conspiracy with Huizar even though Kim was working for the government at the time, Lee and Huizar hadn't spoken for several years, and Lee's comments made clear that he viewed the pending investigation as Huizar's problem separate from him.

12

drafting this motion, I followed up again and asked that the government at least "identify the coconspirators from whom [it] intend[s] to offer statements against Huizar" under the coconspirator exception. The government responded with its view that the "most efficient way to achieve what you're requesting is through the exhibit list process."

6. The problem with this response is that the government will inevitably seek to elicit statements from purported 80(d)(2)(E) declarants beyond the documents on its exhibit list – for example, by questioning cooperators about unrecorded conversations with alleged coconspirators. Given the volume and complexity of the potential trial evidence, I don't think it makes sense for Huizar and the Court to be finding out for the first time in front of a jury whom the government thinks was conspiring with Huizar at which points in time.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed November 8, 2022 at Los Angeles, California.

*/s/ Charles J. Snyder*
Charles J. Snyder

13