# EXHIBIT 1



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*Veronica Dragalin*
*Phone:  (213) 894-0647*
*E-mail:  veronica.dragalin@usdoj.gov*

*1500 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California  90012*

December 15, 2021

<u>**VIA E-MAIL**</u>

| | |
|---|---|
| Carel Ale | Richard Steingard |
| Charles Snyder | Law Offices of Richard M. Steingard |
| Adam Olin | 800 Wilshire Blvd., Suite 1050 |
| Office of the Federal Public Defender | Los Angeles, CA 90017-2672 |
| 321 E. 2nd Street | richard@steingardlaw.com |
| Los Angeles, CA 90012 | |
| Carel_Ale@fd.org | |
| Charles_Snyder@fd.org | Ariel A. Neuman |
| Adam_Olin@fd.org | Ray S. Seilie |
| | Bird, Marella, Boxer, Wolpert, Nessim, |
| Harland Braun | Drooks, Lincenberg & Rhow, P.C. |
| Braun & Braun LLP | 1875 Century Park East, 23rd Floor |
| 10880 Wilshire Boulevard, Suite 1020 | Los Angeles, California 90067-2561 |
| Los Angeles, CA 90024 | aneuman@birdmarella.com |
| harland@braunlaw.com | rseilie@birdmarella.com |

      Re:    <u>United States v. Huizar, et al.</u>, CR No. 20-326(A)-JFW
            Expert Disclosure

Dear Counsel:

Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure and the trial scheduling order in this matter, the government hereby discloses that at trial in the above-captioned matter the government presently intends to elicit expert testimony from the following witnesses under Federal Rules of Evidence 702, 703, and 705.  Pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, the government hereby requests reciprocal disclosure from the defense of any testimony defendants intend to use at trial under Rule 702, 703 and/or 705 of the Federal Rules of Evidence.

As a courtesy, to reduce surprise, and to enhance efficiency at trial, this letter also discusses other likely areas of testimony to provide you notice, although the government does not believe the testimony qualifies as expert testimony.

      **A.**    **City of Los Angeles Development Process**

Although not all of the below topics necessarily fall within the category of expert testimony, in an abundance of caution, the government hereby gives notice that it intends to call the below

RE: Huizar, et al. – Expert Disclosure
December 15, 2021
Page 2

individuals to testify about various aspects of the City of Los Angeles ("City") application and approval process for large development projects.

    1.    <u>Bud Ovram</u>

The government intends to call Robert R. "Bud" Ovram, as a witness to testify about the general process for the application and approval of a large-scale development project in the City, and the roles of various public officials in that process. Specifically, Mr. Ovram will explain that within the City, large-scale development projects required a series of applications and approvals prior to, during, and after construction. These applications and approvals occurred in various City departments, including the City Council, the Planning and Land Use Management ("PLUM") Committee, the Economic Development Committee, the Los Angeles Planning Department, the Los Angeles Department of Building and Safety ("LADBS"), the Area Planning Commission, the City Planning Commission ("CPC"), and the Mayor's Office. Each part of the City approval process required official actions by public officials acting pursuant to their City authority and/or in their City capacity. These included entitlements, variances, permits, general plan amendments, subsidies, incentives, public benefits, scheduling agendas for the various committees, and overall approvals. Even for projects that were not going through the City approval process, City officials could benefit a project or take adverse action against a project by advocating for or against the project, including by pressuring or seeking to influence other City officials, departments, business owners, and stakeholders. Mr. Ovram will also testify about the developmental landscape in Downtown Los Angeles while defendant Huizar was in office, specifically the real estate boom, the timing and influx of foreign, particularly Chinese, investment, and the effect of redistricting that expanded defendant Huizar's district to cover more of Downtown. In addition, Mr. Ovram will testify regarding the topics covered in his January 22, 2019 report of interview, produced at Casino_0365079 attached hereto.

Mr. Ovram's understanding of the City approval process is based on his education, training and experience, including as the General Manager of the Building & Safety Department from January 2010 to May 2013, Deputy Mayor of Commercial & Residential Development from July 2005 to January 2010, and Chief Executive Officer of the Community Redevelopment Agency from March 2003 to June 2005, as well as experience as the City Manager of the City of Burbank (June 1985 to February 2003) and the City of Downey (May 1983 to June 1985).

    2.    <u>Kevin Keller</u>

The government intends to call Kevin Keller, the Executive Officer of the Department of City Planning, to testify about the various departments and City officials involved in the approval of large-scale development projects in the City, including the sequence of approvals required, the types of hearings held, and the types of official acts involved in the approval process. In addition, Mr. Keller will testify regarding his specific opinions as reflected in his May 7, 2020 report of interview, produced at Casino_0371300 (attached hereto), including the financial benefits received by Carmel Partners on their Mateo Project as a result of changes by the City during the approval process, to include changes to affordable housing requirements made in the PLUM Committee, as well as the financial benefits provided by the City in the Hazens Luxe Hotel Project, to include Transfer of Floor Area Rights ("TFAR") requirements.

RE:  Huizar, et al. – Expert Disclosure
December 15, 2021
Page 3

Mr. Keller's understanding and opinions are based on his education, training and experience, including as Executive Officer of the Department of City Planning, Deputy Director of Long-Range Planning at the Department of City Planning, Director of Planning for City Councilmember Cindy Miscikowski, supervisor of the City Planning Commission, and Planning Advisor to Mayor Eric Garcetti.

### 3. Nick Maricich

The government intends to call Nick Maricich, the Director of Planning Policy and Development, to testify about the role of the Mayor's office in the application and approval process of large-scale development projects, and the relationship between the Planning Department, Department of Building and Safety, and the City Planning Commission, and their respective roles and official acts in the development process.  In addition, Mr. Maricich will testify regarding his specific opinions as reflected in his May 29, 2020 report of interview, produced at Casino_0372284 (attached hereto), regarding the TFAR ordinance, its intended purposes, and the way it affected large-scale projects in various City Council Districts, including CD-14.

Mr. Maricich's understanding and opinions are based on his education, training and experience, including as Planning Assistant, Senior Planner, and Principal City Planner at the Department of City Planning, as well as the Director of Planning Policy and Development at the Mayor's office.

### B. City and State Ethics Requirements

Although not all of the below topics necessarily fall within the category of expert testimony, in an abundance of caution, the government hereby gives notice that it intends to call Professor Jessica Levinson to testify about various aspects of the City's Governmental Ethics Ordinance and corresponding state laws that apply to City officials and are relevant to the charged matters.

Ms. Levinson will testify that City's Governmental Ethics Ordinance and corresponding state laws that apply to City officials are intended to protect the integrity of the City's decision-making processes.  She will explain that the governmental ethics laws were adopted to help preserve the public trust by promoting elections and government decisions that are fair, transparent, and accountable.  To further those goals, City officials are held to appropriately high standards of conduct, to help ensure that they act in the best interests of the public and the City.  Ms. Levinson will also opine that, as a public official employed by the City, Jose Huizar and Raymond Chan each owed a fiduciary duty to the City and citizens of the City to perform the duties and responsibilities of their respective office free from bias, conflicts of interest, self-enrichment, self-dealing, concealment, deceit, fraud, kickbacks, and bribery.

Ms. Levinson will testify about various aspects of the California Political Reform Act, its requirements, and its enforcement, including that every elected official and public employee who made or influenced governmental decisions was required to submit a Statement of Economic Interest, also known as the Form 700, annually.  She will testify how those requirements depend on the "honor code" and can be easily thwarted.  We expect Ms. Levinson will also testify how enforcement of the City Ethics Commission Ordinance has suffered difficulties during the relevant periods.   She will testify how the various relevant Political Actions Committees

RE:  Huizar, et al. – Expert Disclosure
December 15, 2021
Page 4

operate, their rules, and how they can be sometimes used improperly by donors and recipients to shield both the source of donations and the ultimate recipient of donations.

In addition, Ms. Levinson will testify that to prevent former City officials from exercising or appearing to exercise improper influence over City decisions, the Los Angeles Municipal Code contained "revolving door" restrictions.  The restrictions imposed a lifetime ban on receiving compensation to attempt to influence City action on a specific matter in which the City official personally and substantially participated in during their City service, either personally or through an agent.  The restrictions also imposed a one-year ban, or "cooling-off" period, during which the City official was prohibited from attempting to influence action, either personally or through an agent, on a matter pending before any City agency for compensation.

Ms. Levinson will also testify to the training provided City officials on the foregoing matters.

Ms. Levinson's understanding and opinions are based on her education, training and experience, including as Clinical Professor of Law Director of Loyola Law School's Public Service Institute, where she has taught courses on Election Law, Campaigns and Elections (at LMU), Money, Politics and the Supreme Court, Campaign Finance Seminar and her time as the President of the Los Angeles Ethics Commission (2013-2018.)

      **C.**      **Casino Surveillance and Security Experts**

The government intends to call Jonathan Solomon, Jonathan Bell, and Stephen Fryson from the Palazzo Casino to testify about their specific opinions that Wei Huang provided chips to Jose Huizar for Huizar's benefit, as summarized in a wire affidavit produced in discovery at Casino_0340692, at pages 0715-718 and as reflected in a September 2, 2015 interview produced at Casino_0356405 (attached hereto).

Jonathan Solomon, former Senior Vice President and Global Chief Compliance Officer for the Las Vegas Sands Corporation, will explain the procedures used by casinos to screen for and document Politically Exposed Persons (PEP) gambling at casinos, and certain terminology that applies to gambling such as "chip sharing," "chip pushing," "drop," and "buy-in," as reflected in his September 2, 2015 interview produced at Casino_0356405 (attached hereto).  Mr. Solomon's opinions are based on his training and experience as a former FBI Special Agent and his experience as a gambling industry executive, as set forth in his interview.

Jonathan Bell, Vice President of Cage and Credit Operations at the Palazzo Hotel in Las Vegas, will opine that the value of the Presidential Suite at the Palazzo is approximately $7,000 per night, and that Jose Huizar's net chip "buy-in" was approximately $79,100 while his lifetime "drop" at the hotel was $0, meaning that there was no indication that Huizar purchased chips with which he was gambling at the casino.  Mr. Bell will also explain that the casino records show that Huizar "cashed out" a total of $36,500.  Mr. Bell will also opine that Huizar cashed out $3,00 and attempted to cash out another $6,300 just 90 minutes later during the June 14, 2014 trip, that he cashed out $5,00 and an additional $8,500 the following day during the August 24, 2014 trip, and that he cashed out $20,000 during the March 13, 2015 trip.  Mr. Bell's opinions are based on his training and experience as a gambling industry executive.

RE:  Huizar, et al. – Expert Disclosure
December 15, 2021
Page 5

Stephen Fryson, the Table Games Manager at Palazzo, will give his opinion of the gaming activity of Jose Huizar and Wei Huang on July 7, 2015 at the Palazzo hotel, based on his observations of the surveillance footage.  Specifically, Mr. Fryson will opine that Huang passed Huizar $65,000 in gaming chips, which would be considered "chip sharing," meaning Huang gave the chips to Huizar with the expectation that Huizar could keep the chips and winnings.  Mr. Fryson's opinion is based on 16 years of experience working as a gambling industry professional with extensive experience observing, reviewing, and classifying gaming activity, as set forth in the affidavit excerpt.

      **D.**      **Foreign Language Interpreters**

Absent a stipulation between the parties, the government intends to call Mandarin, Cantonese, Korean, and Spanish court-certified interpreters at trial to provide official translations of recordings in foreign languages.  The experts will opine that the English translation of the foreign language recordings are reliable and accurate.  The bases and reasons for those opinions will be based on the education, training, and experience of the court-certified interpreters.  The specific foreign language experts' names and qualifications will be produced 30 days in advance of trial.

<u>Please let us know if you will agree to a stipulation on this topic and forego the need for this expert testimony</u>.

      **E.**      **CART Examiner**

Absent a stipulation between the parties, the government intends to call one or more FBI Computer Analysis and Response Team (CART) certified special agents, who will testify to the procedures followed in extracting data from and conducting a digital forensic analysis of digital devices analyzed as part of this investigation.  The CART expert will opine that the digital data to be introduced at trial (e.g., text messages, voicemails, notes, photographs, etc.) were extracted from the specified digital devices following industry accepted procedures.  The expert's bases and reasons for those opinions will be based on the education, training and experience of the expert and the extraction report generated for the respective device.  The specific CART expert's name(s) and CV will be produced 30 days in advance of trial.

<u>Please let us know if you will agree to a stipulation on this topic and forego the need for this expert testimony</u>.

RE: Huizar, et al. – Expert Disclosure
December 15, 2021
Page 6

Please let us know if you have any questions or would like to further discuss any of the matters raised above, including any proposed stipulations.

Sincerely,

*/s/ Veronica Dragalin*

MACK E. JENKINS
VERONICA DRAGALIN
MELISSA MILLS
Assistant United States Attorneys
Public Corruption & Civil Rights Section

Enc: referenced reports