CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CAREL ALE (Bar No. 283717)
Email: Carel_Ale@fd.org
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
ADAM OLIN (Bar No. 298380)
Email: Adam_Olin@fd.org
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
Jose Luis Huizar

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>JOSE LUIS HUIZAR,<br><br>                    Defendant. | Case No. CR-20-326-JFW-1<br><br>**JOINT MOTION IN LIMINE NO. 5: DEFENDANT'S MOTION TO EXCLUDE SPECULATIVE TESTIMONY ABOUT KNOWLEDGE, INTENT, MOTIVE, OR STATE OF MIND**<br><br>**Hearing Date:** January 20, 2023<br>**Hearing Time:** 8:00 a.m.<br>**Location:**     Courtroom of the Honorable John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Cassie D. Palmer, Susan S. Har, and Brian Faerstein, and defendant Jose Luis Huizar, by and through his counsel of record, Carel Alé, Charles J. Snyder, and Adam Olin, hereby submit this Joint Motion *in Limine* No. 5: Defendant's motion to preclude the government from eliciting testimony from witnesses about other individuals' knowledge, intent, motive, or other criminal state of mind.

1    This Joint Motion *in Limine* is based upon the attached memorandum of

2   points and authorities, the files and records in this case, and such further evidence

3   and argument as the Court may permit.

4    Dated: December 19, 2022          Respectfully submitted,

5                                       E. MARTIN ESTRADA
                                        United States Attorney
6
                                        SCOTT M. GARRINGER
7                                       Assistant United States Attorney
                                        Chief, Criminal Division
8

9                                       */s/ Cassie D. Palmer*

10                                      MACK E. JENKINS
                                        CASSIE D. PALMER
11                                      SUSAN S. HAR
                                        BRIAN FAERSTEIN
12                                      Assistant United States Attorneys

13                                      Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA
14

15                                      Respectfully submitted,

16                                      CUAUHTEMOC ORTEGA
                                        Federal Public Defender
17

18   DATED:  December 19, 2022     By  */s/ Charles J. Snyder*

19                                      CHARLES J. SNYDER
                                        CAREL ALÉ
20                                      ADAM OLIN
                                        Attorneys for Jose Huizar
21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ................................................................ 1

DEFENSE MOTION ......................................................................................................... 2

GOVERNMENT OPPOSITION ...................................................................................... 5

I. INTRODUCTION ........................................................................................................ 5

II. ARGUMENT ............................................................................................................... 5

III. CONCLUSION ........................................................................................................... 9

DEFENSE REPLY ......................................................................................................... 10

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3

Carter v. DecisionOne Corp.,
  122 F.3d 997 (11th Cir. 1997) ............................................................. 5

United States v. Anderskow,
  88 F.3d 245 (3d Cir. 1996) ................................................................. 3

United States v. Campo,
  840 F.3d 1249–67 (11th Cir. 2016) ................................................... 5

United States v. Dawkins,
  999 F.3d 767 (2d Cir. 2021) ............................................................ 7, 8

United States v. Garcia,
  413 F.3d 201 (2d Cir. 2005) ............................................................... 6

United States v. Giovannetti,
  919 F.2d 1223 (7th Cir. 1990) ......................................................... 4, 6

United States v. Graham,
  856 F.2d 756 (6th Cir. 1988) ........................................................... 4, 7

United States v. Guzzino,
  810 F.2d 687 (7th Cir. 1987) ........................................................ 4, 5, 6

United States v. Henke,
  222 F.3d 633 (9th Cir. 2000) ........................................................... 3, 8

United States v. Hill,
  931 F.2d 56 (6th Cir. 1991) ............................................................. 4, 6

United States v. Mamic,
  90 F. App'x 532 (9th Cir. 2004) ......................................................... 8

United States v. Morton,
  391 F.3d 274 (D.C. Cir. 2004) ......................................................... 4, 6

United States v. Rea,
  958 F.2d 1206 (2d Cir. 1992) ........................................................... 3, 5

United States v. Tsekhanovich,
  507 F.3d 127 (2d Cir. 2007).............................................................. 7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# STATEMENT OF ISSUES TO BE DECIDED

**Defense Position:** In earlier trials, the government invited cooperating witnesses to opine about Huizar and other individuals' criminal intent, knowledge, and state of mind. The government's witnesses should be permitted to describe their own states of mind and the facts upon which other individuals' states of mind might be inferred. But the Court should preclude the government from asking questions designed to elicit testimony from witnesses about other individuals' criminal state of mind, particularly Huizar and the counterparties to the alleged bribes. If lay opinions about these individuals' thoughts are grounded in fact, the government should elicit the facts, argue, and let the jurors draw conclusions.

**Government Position:** The Court should deny Huizar's motion. First, several examples Huizar cites in the Motion involve witnesses describing their *own* state of mind and *own* understanding, as opposed those of another, which does not fall under Rule 701. Second, Huizar incorrectly contends that a witness's testimony about a co-defendant's state of mind is categorically impermissible. Not so. Lay opinion testimony about the mental state of another is permissible under Rule 701 if it is "rationally based on [his] perception," and "helpful to clearly understanding [his] testimony" and "determining a fact in issue." Fed. R. Evid. 701. Because this is a fact-intensive inquiry that benefits from development of the record, the Court should decline to grant defendant's blanket prohibition in advance of trial and instead rule on the admissibility of such testimony on a question-by-question basis at trial.

1

**<u>DEFENSE MOTION</u>**

2      In SZNW's final pretrial conference, the Court pressed the government to

3 describe the evidence tying the alleged stream of benefits from Wei Huang to Jose

4 Huizar's alleged agreement to help with the L.A. Grand Hotel redevelopment.  After

5 several general references to "circumstantial evidence," the prosecutor admitted that

6 "[t]here will not be a witness that said that Wei Huang stated that he was providing

7 benefits in exchange for Jose Huizar's assistance on the redevelopment project."

8 10/21/2022 Tr., Docket No. 748 at 69:2-5.  Sensing the Court's dissatisfaction with that

9 answer, the prosecutor then added that "George Esparza will testify that [it] was his

10 understanding [that Wei Huang was providing the benefits in exchange for help with

11 the L.A. Grand Hotel project].  I think Ricky Zheng will say something similar."  <u>Id.</u> at

12 69:17-19, 70:6-9.[1]  After the Court pressed the prosecutor further to explain what that

13 "understanding" was based on, the prosecutor said that it was based on a "pattern and

14 practice" of Wei Huang requesting favors largely unrelated to the L.A. Grand Hotel

15 project shortly after certain trips.  <u>Id.</u> at 70:14-71:7.

16      Huizar does not dispute that government witnesses can testify about what they

17 saw and heard, as well as their own states of mind, however implausible.  But it is a

18 small and easy step from that to testifying about other witnesses' states of mind, like

19 "[t]hat George Esparza understood the reason why" <u>Wei Huang</u> was providing "these

20 benefits" to "Jose Huizar and himself was in exchange for Jose Huizar's assistance on

21 the L.A. Grand Hotel redevelopment."  <u>Id.</u> at 70:6-9.  And because the government

22 cannot point to specific conversations to support many of the alleged bribes in this case,

23 Huizar suspects that it may repeatedly attempt to elicit testimony from cooperating

24 witnesses about what he and others knew and intended.

25

26 _____

27      [1] At least as of the conclusion of his direct testimony, which is when this motion was drafted, Zheng had not made that statement.  Esparza's understanding about a connection to the L.A. Grand redevelopment appears to have arisen for the first time

28 shortly after this exchange at the pretrial conference, three days before trial, and four years into his cooperation.  11/2/2022 Tr. at 1111:5-11.

Indeed, Esparza's recent trial testimony exemplifies the point.  In the SZNW trial, he made numerous claims about Huang and Huizar's knowledge, motive, and intent without any foundation.  For example, when asked whether Huizar intended to repay Huang for the loan, Esparza testified that Huizar did not (before admitting on cross that he knew nothing about the details of the loan or how it worked, and did not know that Huizar had been paying the bank for several years):

> Q What was your understanding of whether Jose Huizar was going to pay this money back?
> A What was my understanding of it?
> Q Yes.
> A That he wasn't going to pay it back.
> Q And how do you know that?
> A Because Jose Huizar never paid for anything.  So I know he wasn't going to pay for -- he wasn't going to pay back $500,000.

Tr. 11/1/2022 at 838:8-16.  Similarly, when asked about why Huang was providing benefits to Huizar, Esparza said that Huang provided the benefits as an investment, not because he saw Huizar as a friend (although Esparza testified that Huang provided the same benefits to him because they were friends):

> Q Was it your understanding that Chairman Huang was providing these benefits to Jose Huizar because they were friends?
> A No.
> Q What was your understanding of why Chairman Huang was providing these benefits to Jose Huizar?
> A Because he was an investment.

Tr. 11/2/2022 at 1135:1-7.  When asked about Huang's expectations as a result of the Australia trip, Esparza said that Huang's intention was to receive "full access and support" specifically on "the redevelopment project of L.A. Grand Hotel":

> Q No. Did you believe that -- did you believe that Chairman Huang expected something from Jose Huizar for that Australia trip along with all the other Las Vegas trips?
> A Yes.
> Q What did you understand Wei Huang to expect?
> A The councilmember's full access and support.
> Q Did that include on the redevelopment project of the L.A. Grand Hotel?
> A Yes.

Tr. 11/2/2022 at 1145:14-22.  Notably, this final statement was the subject of the Court's questions at the pretrial hearing, less than a week before trial, at which the

government described the apparent foundation as a circumstantial inference based on the fact that Huang made requests largely unrelated to the L.A. Grand hotel close in time to a few trips to Las Vegas.

In United States v. Henke, 222 F.3d 633 (9th Cir. 2000), the Ninth Circuit found the admission of similar testimony from a government witness to be reversible error. There, as here, the case turned on knowledge and intent. Id. at 639. Over objection, the government elicited testimony from a sympathetic witness that, based on the facts, the defendants must have known that the revenue reported in certain financial statements was false. Id. at 639-40. In reversing the defendants' convictions, the court explained that, where the jury has all of the facts on which that lay opinion about the defendants' intent was based – including testimony about the predicates for the opinion, several years of investigation, and input from all of the key actors except the defendants – the jury was equally well-suited to draw conclusions. Id. at 641-42. Under those circumstances, lay opinion testimony about the inner workings of a defendant's mind added nothing helpful and, for that reason, was inadmissible. And because it went to the key issue in the case, the improper admission of that testimony was reversible error. Id. at 639-42; see also United States v. Anderskow, 88 F.3d 245, 251 (3d Cir. 1996) (lay opinion testimony about defendant's knowledge and intent was not helpful to the jury, which was equally well suited to draw inferences, and thus inadmissible); United States v. Rea, 958 F.2d 1206, 1219 (2d Cir. 1992) (same).

Here, consistent with Henke, the Court should preclude the government from asking questions designed to elicit testimony from witnesses about other individuals' criminal state of mind, particularly Huizar and the counterparties to the alleged bribes. If lay opinions about these individuals' thoughts are grounded in fact, the government should elicit the facts, argue, and let the jurors draw conclusions.

1

## **GOVERNMENT OPPOSITION**

2

## **I.    INTRODUCTION**

3

4

5

6

7

8

9

10

11

12

13

14

15

The government agrees there is a fine line between appropriate lay opinion testimony that bears on state of mind and testimony that runs afoul of Federal Rule of Evidence 701.  The portions of testimony from the last trial in this matter that defendant cites as inadmissible (without ever citing any evidentiary rule) were properly admitted under Rule 701.  In each example, George Esparza was describing his *own* state of mind and *own* understanding, as a participant in the conspiracy, which courts have held is not subject to Rule 701.  But even if Esparza's statements did constitute lay opinions about the state of mind of his co-conspirators, his testimony was permissible under Rule 701 because it was "rationally based on [his] perception," and "helpful to clearly understanding [his] testimony" and "determining a fact in issue."  Fed. R. Evid. 701.  Defendant's motion, which misleadingly and incorrectly presumes that witness testimony about co-defendants' state of mind is categorically prohibited, should be denied.

16

## **II.    ARGUMENT**

17

18

19

20

21

22

23

24

25

26

27

28

"A witness's testimony about his own state of mind is not opinion testimony" and accordingly not subject to Rule 701.  See, e.g., United States v. Morton, 391 F.3d 274, 277 (D.C. Cir. 2004); United States v. Giovannetti, 919 F.2d 1223, 1226 (7th Cir. 1990) ("What [the witness] called his 'opinion' was actually a report of the contents of his mind, of which people are normally assumed . . . to have direct rather than inferential knowledge.").  Testimony about the mental state of another, however, is "neither conclusively nor presumptively inadmissible."  United States v. Guzzino, 810 F.2d 687, 699 (7th Cir. 1987); see also United States v. Hill, 931 F.2d 56 (6th Cir. 1991) (unpublished table) ("[L]ay opinion testimony concerning a defendant's state of mind is admissible under some circumstances."); United States v. Graham, 856 F.2d 756, 759 (6th Cir. 1988) (holding that a witness can testify, in the form of an opinion, as to his understanding of what a defendant intended when he made certain statements).

4

In determining whether such lay opinion testimony is admissible, the Court employs the criteria set forth in Rule 701: the testimony must be "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701; United States v. Rea, 958 F.2d 1206, 1215 (2d Cir. 1992) (The helpfulness requirement "is designed to provide 'assurance[ ] against the admission of opinions which would merely tell the jury what result to reach.'") (quoting Fed. R. Evid. 704, advisory committee's note on 1972 Proposed Rules (alteration in original)).  That a witness's lay opinion testimony may embrace an ultimate issue in the case, like a defendant's state of mind, "does not make the testimony objectionable." United States v. Campo, 840 F.3d 1249, 1266–67 (11th Cir. 2016) (citation omitted) (no error in admitting testimony that witness believed the defendant killed victim, even though he did not see the killing but observed events that led to his opinion and testified to those events)); Carter v. DecisionOne Corp., 122 F.3d 997, 1004 (11th Cir. 1997) (lay opinions regarding the "ultimate issue" in a case "are properly admitted if they are based on the personal observations of the witness"); Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").  The determination under Rule 701 is fact-intensive and "[u]ltimately, 'the decision as to admissibility is within the sound discretion of the trial judge and the issues involved are peculiarly suited to his determination.'" Guzzino, 810 F.2d at 699 (quoting Bohannon v. Pegelow, 652 F.2d 729, 732 (7th Cir. 1981)).

In support of his motion, defendant cites examples of George Esparza's testimony from the Shen Zhen New World I, LCC trial in this matter, which defendant claims were inadmissible.  But defendant fails to even acknowledge Rule 701, and those examples support the government's, not defendant's, position.  First, Esparza is describing his *own* state of mind and *own* understanding as a participant in the conspiracy, which falls outside of Rule 701.  Indeed, courts have repeatedly held that the contents of a witness's mind at a prior point in time is not opinion testimony of the

5

1    kind that Rule 701 addresses, even if expressed as a statement of opinion or belief.

2    See, e.g., Morton, 391 F.3d at 277; Giovannetti, 919 F.2d at 1226 ("What [the witness]

3    called his 'opinion' was actually a report of the contents of his mind, of which people

4    are normally assumed . . . to have direct rather than inferential knowledge."); Hill, 931

5    F.2d at 56 (rejecting defendant's claim of a violation of Rule 701; "In this case, each

6    witness testified as to his own state of mind.").

7         Second, even if Esparza's statements constituted lay opinions, his testimony was

8    admissible under Rule 701 because it was "rationally based on [his] perception," and

9    "helpful to clearly understanding [his] testimony" and "determining a fact in issue."

10   Fed. R. Evid. 701; see United States v. Garcia, 413 F.3d 201, 212 (2d Cir. 2005) ("Rule

11   701 affords the jury an insight into an event that was uniquely available to an

12   eyewitness.  In this respect, the rule recognizes the common sense behind the saying

13   that, sometimes, 'you had to be there.'").  For example, Esparza's testimony that he

14   understood Huizar had no intention of paying back the $500,000 "loan" Wei Huang

15   gave him did not require Esparza to know the details of the loan (as defendant

16   suggests); such details were immaterial.  The basis for his opinion was his perception.

17   As Huizar's right-hand man in the RICO conspiracy, Esparza was intimately aware of

18   Huizar's financial situation, knew Huizar did not have access to such a large sum of

19   money and would not be able to pay back that amount at any time, and, having worked

20   for Huizar (legally and illegally) for years, had observed that Huizar "never paid for

21   anything."[2]  This testimony was appropriate under Rule 701.  See Guzzino, 810 F.2d at

22   699  ("lay opinion testimony as to the mental state of another is indeed competent

23   under" Rule 701).

24

25

26         _____

27        [2] To the extent defendant's argument rests on a failure to lay a proper foundation, the defense did not object to this testimony.  Had the defense done so, the government could have laid a more comprehensive foundation.  See Morton, 391 F.3d at 277

28   (noting that the defendant's failure to object to an officer's testimony "deprived the Government of any opportunity to lay a proper foundation").

Similarly, Esparza's testimony about *his* understanding of why Huang gave him and Huizar benefits was based upon Esparza's intimate knowledge of the conspiracy, his close relationship with Huizar and Huang over several years, his conversations with them and other co-conspirators, and conversations he relayed between them and other co-conspirators in his role as a messenger in the conspiracy.  Esparza's testimony on these topics was based upon his first-hand knowledge of the context of these extensive conversations between the co-conspirators, which occurred over several years and which would not have been readily available to the jury.  As an insider to the scheme, his testimony was helpful, especially in light of the defense's contention that Huang was providing the benefits to Huizar and Esparza out of friendship.  See United States v. Dawkins, 999 F.3d 767, 793 (2d Cir. 2021) (holding no abuse of discretion in admitting lay witness testimony of government informant and co-founder of sports management company regarding their understanding of conversations with defendant and codefendant where the witnesses "were participants in these conversations and therefore possessed the required first-hand knowledge of their context—knowledge that would not have been readily available to jurors on their own"); Graham, 856 F.2d at 759 (holding witness in Travel Act Prosecution was properly permitted to testify as to his understanding that defendant's suggestion that he should contribute to county sheriff's re-election campaign was a suggestion to make a bribe rather than a voluntary contribution).  Contrary to defendant's contention, this testimony was based upon specific, articulable facts to which Esparza testified at length, not speculation.  See United States v. Tsekhanovich, 507 F.3d 127, 129-30 (2d Cir. 2007) (per curiam) (in trial involving false insurance claims, holding cooperating witness's lay opinion testimony regarding his understanding of why defendant sent him cars for repair and the meaning of certain phrases in their conversations was not based upon speculation and was admissible under Rule 701, where witness had known defendant for a few years before conversations in question).

7

Defendant's reliance upon United States v. Henke, 222 F.3d 633 (9th Cir. 2000) is misplaced.  In Henke, the Ninth Circuit held that the admission of lay opinion testimony that the defendant "must have known" about a false revenue reporting scheme was in error.  Id. at 641-42.  There, however, the witness was not involved *with* the defendant in committing the crimes, nor did the witness have knowledge of the facts underlying the crimes.  Despite lacking such personal knowledge, the witness offered an opinion that defendant knew of "the illegal scheme that formed the basis of the charges," based upon the witness's own experience and defendant's eventual firing. Id. at 639-41.  In other words, this witness's opinion was *not* based upon personal knowledge; it was based upon the same facts the jurors had.  By contrast, Esparza "testified to his own understanding of the situation," based upon facts not readily available to the jury.  United States v. Mamic, 90 F. App'x 532, 533 (9th Cir. 2004) (distinguishing Henke and upholding the admissibility of a lay witness's testimony that he believed the check defendant gave him was counterfeit); Dawkins, 999 F.3d at 793.

## III.   CONCLUSION

In the two prior trials, the government has borne in mind the delicate balance between permissible and impermissible testimony and will continue to do so in the RICO trial.  Because this is a fact-intensive inquiry that necessarily benefits from context and the development of the record, the Court should decline to grant defendant's blanket prohibition on such testimony in advance of trial and instead, as it has done in the past, rule on the admissibility of such testimony at trial on a question-by-question basis.  The Court should deny defendant's Motion.

1

## **DEFENSE REPLY**

2        Huizar believes that the existing briefing adequately frames the issue for

3   decision.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28