1      **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3      **HONORABLE JOHN F. WALTER, U.S. DISTRICT JUDGE**

4

5   **UNITED STATES OF AMERICA,**      )
                                         )
6            **PLAINTIFF,**             )      **CASE NO.**
                                         )
7            **vs.**                    )      **CR 20-326(A)-JFW**
                                         )
8   **JOSE LUIS HUIZAR,**               )
    **RAYMOND SHE WAH CHAN,**           )
9                                        )      **PAGES 1 TO 51**
             **DEFENDANTS.**            )
10  _____    )

11

12

13

14                   **REPORTER'S TRANSCRIPT OF**
             **MOTION TO ENFORCE RULE 17 SUBPOENA**
15                **FRIDAY, DECEMBER 16, 2022**
                          **8:05 A.M.**
16               **LOS ANGELES, CALIFORNIA**

17

18

19

20

21

22

23   _____

24            **MIRANDA ALGORRI, CSR 12743, RPR, CRR**
                F E D E R A L   O F F I C I A L   C O U R T   R E P O R T E R
25             3 5 0   W E S T   1 S T   S T R E E T ,   S U I T E   4 4 5 5
                L O S   A N G E L E S ,   C A L I F O R N I A   9 0 0 1 2
                   M I R A N D A A L G O R R I @ G M A I L . C O M

1                 **APPEARANCES OF COUNSEL:**

2

3   **FOR THE PLAINTIFF:**

4       NICOLA T. HANNA
      UNITED STATES ATTORNEY

5       BY:  MACK JENKINS
      BY:  CASSIE PALMER

6       BY:  SUSAN HAR
      BY:  BRIAN FAERSTEIN

7       Assistant United States Attorneys
      United States Courthouse

8       312 North Spring Street
      Los Angeles, California 90012

9

10   **FOR DEFENDANT HUIZAR:**

11       HILARY L. POTASHNER
      FEDERAL PUBLIC DEFENDER

12       BY:  CAREL ALÉ
      BY:  CHARLES SNYDER

13       BY:  ADAM OLIN
      Deputy Federal Public Defenders

14       Central District of California
      321 East Second Street

15       Los Angeles, California 90012

16   **FOR DEFENDANT CHAN:**

17       BRAUN & BRAUN, LLP
      BY:  HARLAND W. BRAUN

18       10880 Wilshire Boulevard
      Suite 1020

19       Los Angeles, California 90024

20   Also Present:

21       Special Agent Andrew Civetti

22

23

24

25

```
              LOS ANGELES, CALIFORNIA; FRIDAY, DECEMBER 16, 2022

                          8:05 A.M.

                            ---

08:04AM   5          THE CLERK:  Calling CR 20-326(A)-JFW,

          6   United States of America versus Jose Luis Huizar.

          7          Counsel, please state your appearances.

          8          MR. JENKINS:  Good morning, Your Honor.

          9   Mack Jenkins, Cassie Palmer, Susan Har, and Brian Faerstein on

08:04AM   10  behalf of the United States.  Also at counsel table is

          11  Special Agent Andrew Civetti.

          12         MS. ALÉ:  Good morning, Your Honor.  Carel Alé,

          13  Adam Olin, and Charles Snyder on behalf of Mr. Jose Huizar who

          14  is present here today.

08:04AM   15         THE COURT:  All right.  Is Mr. Braun here this

          16  morning?

          17         MR. BRAUN:  Yes, Your Honor.

          18         THE COURT:  You have to get closer to the

          19  microphone.  That's all right.  As long as you're here because

08:04AM   20  there's a trial matter that I want to discuss at the end of the

          21  hearing.

          22         MR. BRAUN:  All right.  That's why we're here.

          23  Thank you.

          24         THE COURT:  Good morning to all.  This morning we

08:04AM   25  have two matters on calendar, the motion to enforce the Meister
```

subpoena and then the ex parte application to exclude the

Government from offering certain trial exhibits, and then the

third item that I wanted to discuss is various trial management

issues.  I'm going to take the matters in the order that I just

08:05AM   stated them.  The first is the motion to enforce the Rule 17

subpoena directed at Mr. Meister.

Is Mr. Meister here?

MR. MEISTER:  Yes.

THE COURT:  All right.  Good morning.

08:05AM   The background to this motion is on

February 2nd, 2022, Mr. Huizar filed an ex parte application

for an order issuing an early return subpoena duces tecum which

appears as docket No. 365 and asked the Court to issue a

subpoena that ordered Mr. Meister, counsel for Mr. Goldman, to

08:06AM   produce the following categories of documents.

The first was the -- the first category was the

audio recording -- and I'm reading from the subpoena -- that

you created during Morrie Goldman's December 5, 2018 proffer

session.

08:06AM   The second category was -- and I'm quoting from

the subpoena -- all communications or recordings in any form.

Example, mail, e-mail, text message, voicemail, recording

involving you or Morrie Goldman and any member of the

prosecution team in United States versus Jose Huizar.

08:06AM   And the third category of documents were all

1    notes or other documents reflecting or memorializing

2    communications involving you and/or Morrie Goldman and any

3    member of the prosecution team in the -- in this case.

4            On October 11th of 2022, the defendant Mr. Huizar

08:07AM  5    filed an ex parte application which was a request for a ruling

6    on Mr. Huizar's unopposed ex parte application for the issuance

7    of the subpoena.  That appears as docket No. 705 in the -- on

8    the docket.  Although the Government did not file an

9    opposition, the Government asked the defendant Huizar to set

08:07AM  10    forth the Government's position in its October 11th ex parte

11    application.  The Government objected to any order requiring

12    any counsel to disclose attorney/client communications to a

13    third party.

14            On October 13th, although the Court had certain

08:08AM  15    reservations with respect to the issuance of the subpoena for

16    category No. 3, after reviewing the ex parte application, I

17    concluded that the defendant had made a sufficient showing for

18    the issuance of the subpoena.  I was particularly concerned

19    about the lack of the recording which was covered by the first

08:08AM  20    category of the subpoena which was raised during our April 25th

21    hearing that apparently that recording had not been produced.

22            I granted the ex parte application as reflected

23    in Docket Nos. 715 and 716.  In my order, however, I advised

24    that, to the extent Morrie Goldman seeks to assert a claim of

08:09AM  25    privilege or otherwise object to the subpoena, he may do so at

1   the appropriate time.

2            On October 17th an investigator from the public

3   defender's office served the subpoena on Mr. Meister with a

4   return date of November 1st of 2022.  Two days later on

08:09AM   5   October 19th Mr. Meister e-mailed the public defender with an

6   item-by-item response to the subpoena.  In that e-mail with

7   respect to the first request, Mr. Meister advised that he would

8   produce a redacted copy of the audio recording claiming that

9   the -- that a portion of the recording was covered by

08:09AM   10   attorney/client privilege which was discussions between

11   Mr. Meister and Mr. Goldman.

12            With respect to the second request, Mr. Meister

13   advised that he believed that this item was covered entirely by

14   a previously denied defense motion to compel all of the

08:10AM   15   Government's communication with all of the cooperators' lawyers

16   under *Brady* or *Giglio*.  In addition, Mr. Meister advised he

17   would not have any additional communications that the

18   Government did not also have.

19            Finally, with respect to the third request,

08:10AM   20   Mr. Meister raised the issue that any notes reflecting his

21   communications would constitute a work product.

22            On October 20th in response to the concerns

23   raised by Mr. Meister with respect to category No. 3, the

24   public defender agreed to limit the scope of the third request

08:10AM   25   so that Mr. Meister could redact any work product from his

1    notes but maintained that the public defender was entitled to

2    all other items responsive to its request.

3            On October 26th Mr. Meister reiterated that

4    although he would produce a redacted recording, he would not

08:11AM   5    produce the privileged portion and would not produce any

6    responsive documents to requests 2 or 3 absent an order of the

7    Court.

8            On October 31st Mr. Meister timely provided a

9    thumb drive to the Court which contained the redacted audio

08:11AM   10   recording of Mr. Goldman's December 5th, 2018, proffer session.

11   Mr. Meister, however, did not produce any of the other

12   responsive documents or items, nor did he file a motion to

13   quash or a privilege log prior to the deadline of November 1st

14   of 2022.

08:11AM   15           Two days later on November 3rd of 2022,

16   Defendant Huizar filed a motion to enforce a Rule 17 subpoena

17   which appears as Docket No. 780.  And on November 29th

18   Mr. Meister filed his opposition which appears as

19   Docket No. 841.  And on the 5th of December, Huizar filed his

08:12AM   20   reply which appears as Docket No. 845.

21           On December 7th, in order to assist the Court in

22   ruling on the pending motion, the Court ordered Mr. Meister to

23   file a privilege log identifying all recordings,

24   communications, notes, and other documents that he contended

08:12AM   25   were protected from disclosure by the attorney/client privilege

1    or work product doctrine.  That appears as Docket No. 852.

2              On December 9th Mr. Meister filed a privilege log

3    in compliance with the Court's order.  And on the 9th, the

4    Court ordered Mr. Meister to file in camera, under seal the

08:13AM  5    notes he claims were protected from disclosure by the work

6    product doctrine on or before December 12th.  On December 12th

7    Mr. Meister filed those notes in camera and under seal in

8    compliance with the Court's order, and those appear as

9    Docket No. 867.

08:13AM  10             On December 12th the Government filed an ex parte

11   application to file its position on Defendant Huizar's motion

12   to enforce the subpoena.  It appears as Docket No. 860.

13   Although there is no excuse for the Government's failure to set

14   forth its position until now, I will grant the ex parte

08:13AM  15   application and consider the Government's position.

16             So that's the background with respect to the

17   pending motion to enforce the subpoena.  And if counsel for

18   Mr. Huizar wishes to be heard, I will hear from you.

19             MR. SNYDER:  Good morning, Your Honor.

08:14AM  20   Charles Snyder on behalf of Mr. Huizar.  If there's anything,

21   in particular, that the Court wants me to focus on, I can do

22   that.  Otherwise, I just have a few comments.

23             THE COURT:  No.  I have read all the papers, and

24   I'm prepared to rule.  The issue with respect to the recording

08:14AM  25   of the proffer, it appears to me, once I have the

1    representations of -- further representations of the Government

2    and Mr. Meister, that corrects the legitimate concern that you

3    had because you were given conflicting stories -- not stories,

4    but conflicting statements with respect to whether it had been

08:15AM   5    produced or hadn't been produced.

6            And now I think it's clear that Mr. Meister

7    confirms that he never sent it to the Government, and the

8    Government confirms that it never did receive the recording.

9    So I view that issue as resolved.  The -- resolved and there

08:15AM   10   obviously has been, in my view, no waiver of any

11   attorney/client privilege with respect to the conversation on

12   that audio between Mr. Meister and his client Mr. Goldman.

13           But I will hear from you, anything you want to

14   argue.  Keep it brief because I have read everything, and I'm,

08:16AM   15   quite frankly -- go ahead.

16           MR. SNYDER:  Okay.  I appreciate it.  I just want

17   to touch very briefly on the issues that the Court discussed.

18   I also want to have an opportunity to respond to the

19   Government's opposition to the extent that the Court is

08:16AM   20   thinking about considering it since that was filed after the

21   last papers were filed.

22           THE COURT:  It didn't say anything.

23           MR. SNYDER:  We agree with that.  That's actually

24   why I didn't file a response.  But I wanted to make sure that

08:16AM   25   it was clear what our position is.  You know, I think starting

1   with the Government's position, I think, both procedurally and

2   substantively, it's without merit.  So if that's what the

3   Court's conclusion is, I don't need to say anything else about

4   that.  But if anything in there is possibly going to change the

08:16AM   5   Court's mind, then I do want to talk about it.

6            THE COURT:  You can talk about it although it

7   didn't affect my decision.  I did believe that the scope of

8   the -- of request No. 2 was broad.  And before I received the

9   Government's position, it was my intention to limit the scope.

08:17AM   10           One of the problems with these -- you know my

11   view with respect to these Rule 17 subpoenas.  I issued this

12   one, but I was most concerned about the -- about the recording

13   because counsel had indicated at the hearing that no one has

14   ever seen the recording, and I thought that was the most

08:17AM   15   pressing and important item.

16           In any event, I do think it needs to be limited

17   in terms of time and certainly relevant to the -- to this case

18   or Mr. Goldman's case.

19           MR. SNYDER:  Yes.  Of course.  I don't think

08:17AM   20   anyone -- I certainly didn't intend to have all of

21   Mr. Meister's communications with the prosecution team on other

22   cases.  I think everyone understood it to be about this case,

23   but to the extent I was unclear.

24           Just very briefly, obviously the Court has read

08:18AM   25   and approved our subpoena, and in so doing, it said that we met

the Rule 17 standard.  So what that means at this point is
under *Nixon* and Rule 17, the only question is whether
compliance would be unreasonable or oppressive.  I think
clearly --

08:18AM            THE COURT:  That's not true.  I don't think that
the privilege issue is off the table.

            MR. SNYDER:  Well, I think that falls within
unreasonable or oppressive.  I would concede if something is
privileged, then that would make compliance unreasonable or
08:18AM   oppressive.  So that's why we kind of carved that out and said
that --

            THE COURT:  Same thing with respect to the work
product doctrine.

            MR. SNYDER:  Right.  So when it comes to request
08:18AM   No. 2, in particular, nobody has even attempted to make a
showing that compliance would be unreasonable or oppressive.
Mr. Goldman acknowledges that he has these documents.  He
acknowledges that they exist.  I suspect that it would take
him, you know, 20 minutes to conduct a search limited to this
08:19AM   case or these responsive communications.

            The only argument that's been made here is that
the Court didn't intend to do what it actually did when it
ruled on the subpoena because, on a different record under a
different standard at a different time where different
08:19AM   deadlines were set, the Court did something different.  I

think -- I have addressed that thoroughly in the papers, but the most obvious, you know, response to this is that in October the Court reviewed this.  It had everything in front of it. What we were seeking was clear.  None of the relevant facts have changed.

So with respect to request No. 2, understanding that it obviously has to only be about this case and the subject matter of Mr. Goldman and his participation in this case and his evolving story, but otherwise, I don't think that there would be any basis to quash.  So that's kind of an argument that applies both to the Government and to Mr. Goldman.

With respect to request No. 3, I think the Court has seen -- we made an effort to be, I think, very reasonable under the circumstances here.  We offered a reasonable compromise.  The work product privilege actually doesn't apply at all, as we pointed out, under 9th Circuit law.  It's also just conceptually -- this isn't a situation where a conversation between adversaries would be shielded from a third party.  Again, we have made, I think, a very reasonable compromise.  So long as Mr. Meister, you know, complies in good faith, then, you know, we're ready to honor that compromise.

For the Government's arguments, I will just say very briefly, this is not a subpoena to a federal agency.  This is not a subpoena for documents over which the Government has a

1    proprietary interest.  The Court has granted the subpoena.  The

2    question at this point is whether compliance would be

3    unreasonable or oppressive.

4            That is not an argument that the Government has

08:21AM    5    standing to make.  It is also just extraordinarily and entirely

6    out of time.  And I think what it really is is an effort to

7    seek reconsideration, at least in part, on something with no

8    change in the facts and with no excuse for not doing this ten

9    months earlier.

08:21AM    10           I filed everything publicly.  Everything has been

11    transparent about this.  You know, part of the tenor of the

12    declaration was that, you know, maybe somehow it's my

13    responsibility to ensure that the Government reads the public

14    filings.  It's obviously not.  It's not my responsibility to

08:21AM    15    intuit arguments that the Government might make but doesn't.

16           So we think that, again, everything was public.

17    The Court made the right decision.  Nothing has changed.  So,

18    you know, with the limitations that the Court has already

19    somewhat alluded to, we think that full enforcement would be

08:22AM    20    appropriate.

21           THE COURT:  All right.  Does the Government wish

22    to be heard?

23           MR. JENKINS:  Just very briefly, Your Honor.

24           On one point in the Court's recitation of the

08:22AM    25    saga of this proceeding, I believe the Court didn't reference

```
 1   Docket 853 which required the Court -- excuse me -- the Court
 2   required the Government to provide 302s of Morrie Goldman.
 3   Just for the record, we completed that task or assignment.
 4              THE COURT:  Right.  I have the -- I have all the
 5   302s.  Obviously this whole issue relates to the defense's
 6   claim that there is some pressure that was applied on
 7   Mr. Goldman to change his views from his December 5th, 2018,
 8   proffer to the January -- the second proffer.  That's what
 9   drives all this.  That's the reason I asked for the 302s.
10              More importantly, when I was preparing for the
11   hearing, I became unhappy because that January 302 was
12   something that was missing from the briefing in connection with
13   the hearing that we had on the Motion to Compel on April 25th.
14   Counsel assured me I was going to be provided with a copy of
15   that 302.  Never did I receive a copy of it.  So that was one
16   of the things that prompted me to ask for all of the 302s
17   relating to Mr. Goldman which I have and which I reviewed.
18              But, quite frankly -- in any event.  So, yes, I
19   did order that.  I have received them.  And I will now -- one
20   thing it allowed me to do is get a better understanding of the
21   bribery scheme as alleged in the First Superseding Indictment.
22              I obviously have become very familiar with the
23   Lee 940 Hill bribery scheme and the Shen Zhen New World bribery
24   schemes.  And there are a few more that are alleged in the
25   First Superseding Indictment.  And now I have -- I think
```

08:22AM 5
08:23AM 10
08:23AM 15
08:23AM 20
08:24AM 25

08:24AM

1    Mr. Snyder, the last time we were -- at one of the hearings
2    that was his -- he was particularly informed about that
3    particular scheme.  And I'm now -- I think I'm up to speed
4    where I can -- if it becomes necessary -- and it's not
5    necessary this morning -- to discuss the facts surrounding that
6    scheme.
7             That actually is more interesting -- not more
8    interesting, but it's interesting because, as I went through
9    the various 302s and the cooperation plea agreement with

08:25AM

10   Mr. Goldman, although the alleged bribe comes in the form of --
11   instead of the Lee case with a bag of $500,000 cash, those --
12   the alleged bribe in Mateo comes from contributions to
13   Political Action Committees.
14            But there's a different nuance to the Mateo

08:25AM

15   because it looks like, contemporaneous with the -- not
16   contemporaneous but reasonably close to the contributions to
17   the various -- to the Political Action Committees there was
18   official action by Mr. Huizar in the PLUM Committee in one
19   instance and in the second instance, a vote on the City Council

08:25AM

20   to approve the Mateo project.
21            In any event, so you -- I digress, and I don't
22   know how long my voice is going to last.
23            MR. JENKINS:  And I will be quick.
24            Just the second point, Your Honor, it seems now

08:26AM

25   Mr. Snyder is conceding that the subpoena was, in fact,

1  overbroad and specifically his representation that he just

2  wants all the e-mails about the Huizar case during the Huizar

3  case with Mr. Meister.  The problem is there are e-mails with

4  Mr. Meister that are not about the Huizar case.  So that was

08:26AM  5  one of our points.  It seems Mr. Snyder has conceded it should

6  be narrowed, and we would agree.

7          THE COURT:  All right.  The Court makes the

8  following ruling:

9          After reviewing all the relevant briefing, the

08:26AM  10  privilege log, and the in-camera notes, the Court rules as

11  follows:

12          As an initial matter, Huizar contends that

13  because Meister did not timely file a request for additional

14  time, a motion to quash for a privilege log has waived any

08:26AM  15  challenge to the subpoena.  The Court disagrees.

16          Federal Rule of Criminal Procedure 17(c)(2)

17  provides that on a motion made promptly, the Court may quash or

18  modify the subpoena if compliance would be unreasonable or

19  oppressive.  It's been approximately two months since

08:27AM  20  Mr. Meister was served with a subpoena, and he's yet to file a

21  motion to quash.  This certainly does not constitute the

22  promptness contemplated by the Federal Rules of Criminal

23  Procedure.

24          However, under the unique circumstances present

08:27AM  25  in this case, the Court did not -- does not consider

Mr. Meister's failure to file a motion to quash as a waiver of

the arguments raised in his opposition.  This is not a case

where Meister simply ignored the subpoena.  Indeed, Mr. Meister

timely produced the redacted audio recording of the

December 5, 2018 proffer session.

Moreover, Mr. Meister was in direct communication

with the public defender's office within two days of being

served with the subpoena and made his views known regarding the

attorney/client privilege and work product doctrine, and the

unreasonableness and oppressiveness of the subpoena.  Within

nine days of being served with the subpoena, Mr. Meister made

it clear to the Federal Public Defender's Office what he would

and would not produce in response to the subpoena which allowed

the defendants to file its motion to enforce the subpoena two

days after the deadline were Mr. Meister to respond to the

subpoena and a mere 16 days after service of the subpoena.

In effect, this motion obviated the need for

Mr. Meister to file a prompt motion to quash.  Moreover,

Meister's opposition to the motion raised is the exact same

issues he raised with the public defender before the return

date of the subpoena.  In light of the fact that the public

defender's office is well aware of Mr. Meister's position and

that the public defender was able to promptly file its motion

to enforce, the Court concludes that Mr. Meister has not waived

the arguments raised in his opposition and will consider those

1    arguments.

2            As to the first, the December 5, 2018, proffer

3    session recording, the parties appear to all agree that if

4    Mr. Meister never provided the December 5th, 2018, recording to

08:29AM  5    the Government, it's protected from disclosure pursuant to the

6    attorney/client privilege.  Mr. Meister represents in his

7    opposition that he reviewed his e-mails and files and

8    determined that he never sent the recording to the Government

9    despite his earlier e-mail to the Government stating that he

08:29AM  10   had.

11           The Government also has represented to the public

12   defender's office that contrary to its earlier representation,

13   it never received the recording or a file sharing link with the

14   recording.

08:29AM  15           I'm just, out of an abundance of caution to make

16   a clear record, I'm going to ask the Government to confirm that

17   is the Government's representation.

18           MR. JENKINS:  That is accurate, yes.

19           THE COURT:  I'm asking Mr. Meister, is it your

08:30AM  20   accurate representation?

21           MR. MEISTER:  It is, Your Honor.

22           THE COURT:  Defendant Huizar asked the Court to

23   require Mr. Meister to file a declaration and all

24   communications and documents related to the handling of the

08:30AM  25   recording.  I find that unnecessary given both Mr. Meister's

1   representation and the Government's representation.

2            Accordingly, because the Court concludes that the

3   redacted portion of the recording is protected by the

4   attorney/client privilege, the Court denies the motion to

08:30AM   5   enforce the subpoena with respect to the redacted portion of

6   the December 5th, 2018, recording.

7            I do have the thumb drive of that.  I take it

8   counsel has it, the thumb drive?

9            MR. SNYDER:  Yes.

08:30AM   10            THE COURT:  Okay.  As to category 2, Mr. Meister

11   objects to producing all communications or recordings in any

12   form involving himself and/or Mr. Goldman and any member of the

13   prosecution team, primarily on the grounds that he believes the

14   issue was settled by the Court's prior ruling on Huizar's

08:31AM   15   Motion to Compel production of cooperators' devices and

16   accounts, communication between the Government and cooperators

17   and/or their counsel which appears as Docket No. 381.

18            The Court's prior ruling, however, did not settle

19   that issue.  On October 25th of 2022, the Court denied Huizar's

08:31AM   20   Motion to Compel production of the communications between the

21   Government and cooperators and/or their counsel without

22   prejudice because the defendant had not made a sufficiently

23   specific showing and the Court was confident that the

24   Government would continue to comply with its discovery

08:31AM   25   obligations.

1          The Court did not definitively conclude that the

2     Government was not required to disclose these communications.

3     In any event, given that the Court has issued the Rule 17(c)

4     subpoena directed to Mr. Meister which ordered the production

08:32AM  5     of all communications or recordings involving Meister and/or

6     Goldman and any member of the prosecution team, the Court's

7     prior ruling certainly does not provide any basis for

8     Mr. Meister to ignore request No. 2.

9          Mr. Meister also claims that producing these

08:32AM  10    communications or recordings would be burdensome but fails to

11    explain how or why.  Accordingly, this unsupported argument

12    also provides no basis for quashing the subpoena.

13         In the Government's position belatedly filed,

14    they object to the production on the grounds that it's overly

08:32AM  15    broad.  And the Government, however, cited no authority in

16    support of its contention that this category is not proper

17    subject of a Rule 17 subpoena.  In any event, I conclude that

18    the Government waived its objection by failing to raise it with

19    the Court for the last ten months.

08:33AM  20         Nonetheless, as I indicated, prior to receiving

21    the Government's belated pleadings, I had concluded that this

22    category should be limited in temporal scope and thus will

23    limit this category to all communications or recordings in any

24    form involving Meister and/or Mr. Goldman and any member of the

08:33AM  25    prosecution team in United States versus Huizar, 20- --

1   CR 20-326, from November 1st, 2018, to September 30, 2020.

2           And in the event -- it doesn't appear to me.  But

3   in the event there's any confusion, those communications need

4   not be produced unless they relate in some manner to CR 20-326

08:34AM   5   or Mr. Goldman's case 20-369.

6           Communications during this time period,

7   approximately one month prior to Goldman's first proffer

8   through the date of his guilty plea, should capture any alleged

9   Government pressure on Mr. Goldman to modify his proffer which

08:34AM   10   was the defendant Huizar's claim basis for the issuance of the

11   subpoena.

12           As to category No. 3, when the Court issued the

13   subpoena, the Court had reservations with respect to the notes

14   and documents requested in No. 3 because the Court was

08:34AM   15   concerned that these documents would be covered by the work

16   product doctrine.  The Court, however, concluded that Meister

17   could raise that issue at an appropriate time.

18           Now that Mr. Meister has raised this issue and

19   the Court has reviewed the privilege log and Mr. Meister's

08:35AM   20   notes filed in camera and under seal, the Court concludes that

21   the notes and documents requested are, indeed, protected from

22   disclosure by the work product doctrine.  That doctrine

23   codified at Federal Rules of Civil Procedure 26(b)(3) shields

24   from discovery documents and tangible things prepared in

08:35AM   25   anticipation of litigation.

08:35AM

08:36AM

08:36AM

08:36AM

08:36AM

        As the Supreme Court recognized in *Hickman* at
329 U.S., the work product doctrine reflects a necessity that a
lawyer work with a certain degree of privacy free from the
unnecessary intrusion by opposing parties and their counsel or
work product materials open to opposing counsel on mere demand,
much of which is now put down in writing would remain
unwritten.  Attorney's thoughts, heretofore, inviolate would
not be his own.  Inefficiency, unfairness and sharp practices
would inevitably develop in the giving of legal advice and the
preparation for cases at trial.  And the interest of the
clients and the cause of justice would be poorly served.

        As recognized by the Supreme Court in
*United States versus Nobles* at 422 U.S. 225, "Although the work
product doctrine most frequently is asserted as a bar to
discovery in civil litigation, its role in assuring the proper
functioning of the criminal justice system is even more vital.
The interest of society and the accused in obtaining a fair and
accurate resolution of the question of guilt or innocence
demand that adequate safeguards assure the thorough preparation
and presentation of each side of the case."  That's the end of
the quote.

        The Court concludes that Mr. Meister's notes, as
reflected in the privilege log filed on December 9th of 2022,
are protected from disclosure under the work product doctrine.
As the Court stated in *United States versus Arias* at

373 F.2d at 311 -- and I quote -- "There is no question that the notes taken by a criminal defense attorney during meetings with his client and the Government are taken in anticipation of litigation.  That is clearly the case for any proffer sessions that precede resolution to the client's case but is also true of notes taken at subsequent proffer sessions after the client has entered a cooperation agreement.

"A competent defense lawyer will take notes during such sessions in anticipation of issues that may arise at sentencing and to safeguard against the possibility that misunderstandings during the debriefings could result in revocation of the cooperation agreement and further prosecution of the client."

Clearly such materials are created because of anticipated and, indeed, existing litigation and would not have been prepared in a substantially similar form but for the prospect of litigation.

Accordingly, the notes here at issue were certainly prepared in anticipation of litigation.  Mr. Meister asserts that these notes, even though it's memorializing the Government's statements, even assuming those notes accurately memorialize those statements, reflect his private thoughts, theories, and analysis.  Mr. Meister persuasively states -- and I quote -- "Nothing is written accidentally.  Nothing is written in a vacuum.  And unless a conversation is

word-for-word manually ascribed, the only reason any statement from any party to a conversation is memorialized at all is that it is somehow relevant in the mind of the writer, here a lawyer to the legal representation of the lawyer's client.  There is no way to cull an official statement and provide only that in discovery, for example, without invading the private thoughts and plans and theories and approaches and analysis of the attorney who wrote the note."

After reviewing the notes, it is clear to the Court that these notes were not a verbatim transcript of Mr. Meister's conversation with the Government and counsel's selective ascription of Mr. Meister's communications.  As multiple district courts have held including *United States versus Dessange*, D-e-s-s-a-n-g-e, at 2000 WL 3110345; *United States versus Arias* at 373 F.Supp2d at 311; and *United States versus* -- the last name is L-i-s-c-h-e-w-s-k-i at 219 WL 5684537, notes such as these qualify for protection under the work product doctrine.

Of course, the work product doctrine is not absolute.  In order to overcome the protection afforded by the work product doctrine, Defendant Huizar must make at a minimum -- must at a minimum demonstrate that he has a substantial need for the materials and that he cannot without undue hardship obtain their substantially -- substantial equivalent by other means.

08:40AM

08:40AM

08:41AM

08:41AM

08:42AM

1    Defendant Huizar has not met this test.  Although

2    Mr. Meister -- after Mr. Meister produces the remaining items

3    responsive to the subpoena, Defendant Huizar will have, not

4    only the 302s memorialized in the Government's interviews of

5    Mr. Goldman and his cooperation plea agreement, will also have

6    the redacted December 5th, 2018, recordings and all

7    communications and recordings involving Mr. Meister and

8    Mr. Goldman and any member of the prosecution team during their

9    relevant time period, November 1st, 2018, to September 30th.

10    The Court concludes that Defendant Huizar has not

11    demonstrated a substantial need for the requested notes given

12    that he will have an opportunity to cross-examine Mr. Goldman

13    at trial with the benefit of the substantially equivalent

14    materials.  While it is understandable that Defendant Huizar

15    would like all possible materials that may be of use to impeach

16    Mr. Goldman at trial, this desire alone is insufficient ground

17    for compelled disclosure of this kind of privileged material.

18    In any event, the Court has conducted an

19    in-camera review of Mr. Meister's notes, and I conclude that

20    they do not provide any new or additional information that

21    would be helpful to Defendant Huizar as to the issue as to why

22    Mr. Goldman allegedly changed his position from his December

23    proffer to his January proffer.

24    Accordingly, the Court denies and/or quashes the

25    subpoena with respect to category No. 3.

```
 1                    For the foregoing reasons, defendant's motion to

 2       enforce the subpoena is granted in part and denied in part.

 3       That's the ruling on the Meister subpoena motion.

 4                    The next motion --

 5                    MR. MEISTER:  Your Honor, may I inquire

 6       briefly --

 7                    THE COURT:  You have to come up to the

 8       microphone.

 9                    MR. MEISTER:  Good morning.  Steve Meister.

10                    Just a follow-up question on subpoena.  By when

11       does Your Honor want me to comply with item No. 2?

12                    THE COURT:  As soon as possible.  How long is it

13       going to take you?

14                    MR. MEISTER:  A week would be good.

15                    THE COURT:  Okay.  So by -- by the 23rd?

16                    MR. MEISTER:  That's fine.

17                    THE COURT:  Okay.

18                    MR. MEISTER:  Thank you.

19                    THE COURT:  You're more than welcome to stay, but

20       I think we have concluded with that portion of the hearing.  So

21       if you have somewhere else you need to be or rather be, you are

22       free to go.

23                    MR. MEISTER:  I appreciate it.  Thank you,

24       Your Honor.

25                    THE COURT:  All right.  The next issue or the
```

1    next matter that we have on calendar is the ex parte

2    application for an order to enforce trial order.  That was

3    filed on December 5th of 2022 and appears as Docket No. 849.

4            The Government on December 12th filed its

08:44AM   5    opposition which is 858, and on December 14th Huizar filed a

6    reply which is 870.  The Government was concerned about the

7    reply and filed an ex parte application to strike the reply or,

8    as an alternative, continue the hearing.  That was filed on

9    December 15th and appears as Docket No. 876.  I'm not going to

08:44AM   10   continue the hearing, but I will address the ex parte

11   application as part of my ruling.

12           I will hear from counsel for the -- for

13   Mr. Huizar with respect to this motion, this ex parte

14   application.

08:45AM   15           It appears to me that the primary issue was or is

16   that the Government failed, according to your argument, by

17   October 11 of 2022 to provide you with the list of exhibits

18   that they intend to offer at trial.  The primary concern was

19   with respect to the audio and video recordings, approximately

08:46AM   20   176 trial exhibits that the Government had not provided

21   excerpts of those recordings.  It was your -- it's your belief

22   or your argument that the Government was required to produce

23   those by October 11th.  That's the primary thrust of this

24   ex parte application.

08:46AM   25           MS. ALÉ:  That's the primary issue, yes,

1    Your Honor.

2              THE COURT:  So I don't know where you got the --

3    arrived at the conclusion that October 11th was the deadline

4    for the Government to produce its excerpts of these audio and

08:47AM   5    video recordings.

6              The whole purpose of this process that I had -- I

7    have utilized, not only in the Lee case but also in the

8    Shen Zhen case, was to get the Government to move off its -- to

9    get the Government to finally make a decision in terms of the

08:47AM   10   exhibits that it intended at a particular deadline, which in

11   this case is October 11th, that they were going to seek to

12   offer into evidence at trial because, as this case has

13   developed, there's hundreds of thousands of documents out

14   there.

08:48AM   15             And this forces the Government to make a

16   preliminary determination of which of those documents they're

17   going to seek to offer into evidence at trial which begins the

18   entire process of meeting and conferring once the Government

19   has provided its exhibit list, which it did in this case, and

08:48AM   20   provided the trial exhibits in this case.

21             Then built into the schedule was the -- what is a

22   meet-and-confer process where it was my -- it's been my

23   intention -- and it's worked reasonably well in the prior two

24   trials -- that counsel get together and start going over these

08:48AM   25   exhibits and, once the defense knows what the exhibits are, be

1    able to intelligently discuss them among your trial team and

2    also with your client to the extent that there are pages that

3    may be missing, to the extent a document is incomplete, have

4    discussions with Government counsel --

08:49AM    5         MS. ALÉ:  And, Your Honor, we agree with that.  I

6    think that was --

7              THE COURT:  Don't interrupt me.

8              MS. ALÉ:  Excuse me, Your Honor.

9              THE COURT:  I'm right in the middle of a

08:49AM   10    sentence.

11             MS. ALÉ:  I apologize.

12             THE COURT:  I will be brief.  I don't understand

13   where you get the December 11th deadline as the Government has

14   to produce trial-ready exhibits.  It doesn't exist.  It was not

08:49AM   15   contemplated by this order.  The Government did comply.  It

16   presented its exhibit list, and it presented its exhibits.

17             The audio and visual exhibits were the entire

18   audio and visual recordings.  That is the trial exhibit.  What

19   the Government is going to use in terms of the excerpts of that

08:50AM   20   trial exhibit is not the actual trial exhibit that is

21   contemplated by this deadline.  That deadline has a different

22   deadline, and that deadline is the January 20, 2023, deadline.

23             So as far as I'm concerned, you're off on a wrong

24   premise that the Government had to produce all trial-ready

08:50AM   25   exhibits by October 11th.  So now you can go ahead and tell me

1       whatever you want, and I'm ready to rule.

2                 MS. ALÉ:  All right.  Thank you, Your Honor.

3       Again, I apologize for interrupting the Court.

4                 The sentiment I wanted to get across is we agree

08:50AM  5      with the Court that that is the basis or the reason to have the

6       October 11 deadline for the exhibit list.  What we understood

7       that to mean is to have exhibits that are in a ready-enough

8       form to allow for the parties to meet and confer.

9                 When we have 86 hours of recordings, that does

08:50AM  10     not allow for a meaningful meet-and-confer process.  That is

11      burdensome to the defense who has to then try to figure out

12      what from the 86 hours that the Government produced we want --

13      they want to introduce as exhibits.  And then it doesn't allow

14      for the actual meet-and-confer process, which we understand the

08:51AM  15     Court does want the parties to engage in good faith.

16                So that's where we're coming from in terms of --

17      we're not even asking that they be exactly trial-ready.  And,

18      in fact, from the -- in the ex parte application, as the Court

19      might have noticed, we mentioned it was 71 hours where at

08:51AM  20     Exhibit A it mentioned 86 hours.  The reason being is, by the

21      meet-and-confer process, they had at least given us the

22      highlighted transcripts for Businessperson A and Mr. Huizar's

23      recordings.  And so we understood from that what the Government

24      wanted, and we could meaningfully meet and confer about that.

08:52AM  25                But with the other recordings, we simply have no

idea what they wanted until they produced some sort of

transcript.

THE COURT:  But by December 7th, Exhibit 2 to the

Government's opposition, you were provided that information

either in highlighted transcripts or other documents that the

Government provided to you.

MS. ALÉ:  My understanding is that that is not

complete because some of the recordings are in foreign

language.  And so those --

THE COURT:  Well, there's only two.  Those are

the two that are excluded from there, the conversations with

Mr. Chan which are set forth in the First Superseding

Indictment.  But all the others -- in one form or another, the

Government has made its efforts to highlight the portions of

those audio and visual they intend to use at trial.

MS. ALÉ:  Yes, Your Honor.  And the other part of

that is -- and I think that was -- that was the reason why we

submitted Exhibit F which is the, quote, "debriefs," which

those are not transcripts.  Those are simply summaries of what

point from the recording they want to have in.  And so those

debriefs are summaries.  They give us an idea.  But, again,

there is a reason why we meet and confer about recordings and

why the transcripts and the recordings are helpful because

understanding the complete -- what the words are actually said

between the parties and the recordings, that is something that

1    parties negotiate around.  We can't do that with the debriefs,

2    with the summaries.

3                    THE COURT:  And you will have those by

4    January 20th.  The timing is such that you start this process

08:53AM    5    on October 11th.  The Government complied.  You have meet and

6    confers.  There's a formal deadline for the meet and confer on

7    the exhibit list of November 15th.  I assume those

8    meet-and-confer sessions are continuing as they have in the

9    other two cases.  And then the joint pretrial exhibit

08:54AM   10    stipulation is filed on the 17th.  And then the Government has

11    to make its final determination in terms of the transcripts and

12    translations on July 20th {sic}.

13                    You may only have a general idea which is

14    probably sufficient for you to do what you need to do, but

08:54AM   15    certainly by January 20th you're going to have the -- you're

16    going to have the trial ready excerpt of the audio and video,

17    and you will be able to respond to it.

18                    MS. ALÉ:  And I understand that point,

19    Your Honor.  The January 20th deadline is after the stipulation

08:54AM   20    for the trial exhibits.

21                    THE COURT:  Okay.  What's the objection that you

22    want to make to an audio/video?  The only objection -- the only

23    reasonable objection would be that somehow they can't

24    authenticate it.  Once they can authenticate the audio or

08:55AM   25    video, what's the objection that has to be raised in the

1  pretrial exhibit stipulation with respect to the audio or

2  video?  What possible objection can you make?

3            MS. ALÉ:  Your Honor, there could be parts of the

4  video or audio that we would want included for completeness.

08:55AM   5            THE COURT:  Well, that's the whole purpose of the

6  designation on the 20th.  It's certainly not going to preclude

7  you from offering, in response to the Government's

8  designation -- we have done this in the other two cases.  It's

9  not a mystery.  The Government makes its designation.  After

08:55AM  10  the designation date, it's really not an objection.  It is just

11  a supplement to that exhibit based on the rule of completeness.

12  You're certainly not going to be precluded from doing that, and

13  you will have an opportunity to do that once you see the final

14  designations.

08:56AM  15            As we had this issue that came up in Shen Zhen,

16  this is not a gotcha game.  We're trying to manage or counsel

17  are trying to manage a huge number of exhibits and a huge

18  number of documents.  To the extent that -- no one is going to

19  be penalized for not raising an objection provided there is an

08:56AM  20  excuse or a good cause for not raising it.

21            This is supposed to be a collaborative process.

22  Based upon the e-mail traffic that I now see attached to these

23  papers, this collaborative process appears to have been

24  breaking down.  And I would hope that after today that it would

08:56AM  25  get back on track because there's going to be a lot more work

that has to be done in this case.  It's in everybody's interest
to work cooperatively.

In any event, you're not going to be precluded
from raising that kind of an objection.  And, more importantly,
even if the pretrial exhibit stipulation is filed and there is
an objection that should have been made that you couldn't have
made until you saw the final designation, I'm not going to
preclude you from raising that objection.  It's obvious, with
respect to the timing, that the objection was probably not
reasonably available to you until you saw the final version.
Those are issues that we can deal with.

In any event --

MS. ALÉ:  Understood, Your Honor.

The reason for raising this with the Court now is
so the Court is aware of these issues and why our objections
may be late.

Again, we are attempting to collaboratively work
with the Government.  To us that was being able to meaningfully
meet and confer about these recordings.  I understand the
Court's ruling on that, and we will continue to, to the best of
our ability, meet and confer about these recordings with the
transcripts and debriefs that they have provided.

THE COURT:  All right.  The Court makes the
following ruling:

In the ex parte application to exclude Government

08:58AM

exhibits, despite the fact that the Government timely produced its complete exhibit list and exhibits on October 11th, Huizar requests that the Court exclude any exhibit in not trial-ready form including 71 recordings because the Government has failed to provide Huizar with the specific excerpts it intends to introduce in its case in chief.

08:58AM

According to Huizar, the 71 recordings total 52 hours and 37 minutes and 24 seconds, some of which are in a foreign language.  Huizar claims that he is prejudiced by the Government's failure to provide him with those excerpts because he cannot simply guess what part of those hour-long recordings the Government intends to use at trial, thus could not raise specific objections during the meet and confer or raise specific issues with respect to those exhibits prior to the

08:59AM

motion in limine deadline.

As an initial matter, the Court concludes that the Government has complied with the letter and spirit of the Court's order regarding the Government's trial exhibits.  The Government timely provided a numbered list of all of the

08:59AM

exhibits the Government intends to offer at trial and a copy of each exhibit by the court-ordered deadline of October 11th, over four months before trial.

In particular, with respect to the recordings the Government intends to introduce, the Government provided by

08:59AM

October 11th the audio and video files in two forms:  One fully

clipped and synched audio/visual files; two, complete

recordings from which the Government intends to play all or

portions of during its case in chief.

09:00AM                 Huizar does not dispute that the Government has

disclosed in its exhibit list and provided a copy of each and

every recording it seeks to exclude through this ex parte

application.

                The Court's order with respect to the

Government's early identification and production of the

09:00AM Government's exhibits was intended to make the Government

choose the exhibits it would introduce at trial.  Contrary to

Huizar's belief, which is also inconsistent with how this issue

was handled in the prior two trials, Lee and Shen Zhen, the

Government was not required to produce each and every specific

09:00AM excerpt it intends to introduce in its case in chief by

October 11th.

                Instead, although the deadline was meant to

facilitate the parties' preparation on the pretrial exhibit

stipulation due on January 17th, including by allowing the

09:00AM defendant Huizar to raise appropriate objections, the final

excerpts and translations are not due until January 20th of

2023 which is still a month before trial.

                The October 11th deadline merely serves to

jump-start the time-intensive process of meeting, conferring,

09:01AM and finalizing the excerpts and translations prior to trial

including allowing the defendant to raise rule of completeness issues.

Moreover, as contemplated by and consistent with this process, after Huizar flagged the issues regarding the hours' long recordings, the Government advised, as seen in Exhibit 2, that it would produce highlighted -- it would produce highlighted transcripts on a rolling basis.

Ultimately, as seen on Exhibit 2, the Government by December 7th, more than two months before trial, has produced highlighted transcripts either in the form of line sheets or more final versions and source debriefs of all but two of the recordings at issue.

Notably, the two recordings, Exhibits 226 and 227, for which the Government has not yet provided such highlights are of Mr. Chan's interviews with the FBI and do not directly relate to Mr. Huizar. Those two recordings will be introduced against Defendant Chan as evidence of his false statements to the FBI. Those false statements are specifically described in the First Superseding Indictment at overt act 2 -- overt act 452, page 100, paragraph 63 which is Count 39.

In any event and most importantly, the Court concludes that Huizar will not suffer any prejudice as a result of the Government's failure to provide specific excerpts of the recordings at issue. Indeed, the Government has provided Huizar with the substance of the excerpts it intends to

introduce over two months before trial.

To the extent Mr. Huizar has objections to specific excerpts that he could not raise before the parties filed their joint pretrial exhibit stipulation on January 17th, the Court will not preclude Huizar from raising those objections.  Huizar may object to the specific excerpts after the Government files the transcripts and translations on January 20th of 2023.  And to the -- and to the extent Huizar believes that a motion in limine is necessary with respect to any of the specific excerpts, Huizar may seek leave from Court to file that motion in limine, and the Court will determine whether such motion in limine is appropriate at that time.

Accordingly, the ex parte application is denied.

With respect to the Government's ex parte application for an order striking the improper reply, the Government specifically objects to the portions of the reply that challenge the Government's compliance with *Brady/Giglio* and newly discovered production.

Because the Court views that these new issues are not properly raised in their -- in a reply, the Court declines to consider them.  Accordingly, the Government's ex parte application for an order striking defendant's improper reply is granted, and the reply is stricken except for Sections 3(a) at pages 3 to 4 and Exhibits B and F.

So that takes care of the two motions.

       1              The final issue that -- let me ask a question.

       2    With respect to -- I do have another note here to myself.

       3              The Government requested to file a response to

       4    the allegations as to the *Brady* issue that was raised in the

09:05AM 5    reply.  Do you still want to file a response?

       6              MR. JENKINS:  We do, Your Honor.

       7              THE COURT:  All right.  You can go ahead and file

       8    whatever you want.

       9              MR. JENKINS:  Thank you.

09:05AM 10             THE COURT:  I assume that's going to be a --

      11    well, in any event, I can just -- I have been with this case

      12    now for several years.  I can state that in the course of the

      13    litigation of not only this case but, more importantly, the Lee

      14    case and the Shen Zhen case, that I have formed the opinion and

09:06AM 15   of the belief that the Government takes very seriously its

      16    *Brady* and *Giglio* obligations.  I don't recall those issues or

      17    any issues during the course of either the Lee trial or the

      18    Shen Zhen trial where counsel for the defendant raised an issue

      19    that the Government had violated *Brady* or *Giglio*.

09:06AM 20             As I said, I'm convinced that the prosecution

      21    team in this case takes their obligations very seriously, and I

      22    am confident that they will continue to recognize those

      23    obligations and continue to search the millions of documents

      24    that they have accumulated in this case to provide the -- to

09:07AM 25   continue to comply with their obligations.  If you feel the

1    need to file something, you can go ahead and file it.

2              MR. JENKINS:  Your Honor, thank you for those

3    comments.  In light of that, can we have time to decide whether

4    or not, in light of the fact that the Court has stricken now

09:07AM  5    that reply?  It may not be necessary in light of the Court's

6    comments.

7              THE COURT:  You can go ahead and file something.

8    I can tell you I'm probably not going to read it.

9              MR. JENKINS:  Fair enough, Your Honor.  We will

09:07AM 10    definitely consider that and talk to the defense about whether

11    anything should be filed.

12              THE COURT:  All right.  How many motions in

13    limine are going to be filed on Monday?

14              MS. ALÉ:  There are six motions on behalf of both

09:08AM 15    Huizar and Chan, Your Honor.

16              MR. JENKINS:  And there are two Government

17    motions, Your Honor.

18              THE COURT:  Okay.  One of the things that I want

19    to start -- and I have found that the practice or requirements

09:08AM 20    of meaningfully describing documents on the docket when you're

21    filing them is very helpful.  And I noticed that the Government

22    did not describe Exhibits 1 through 4 on the docket in

23    connection with your recent filing.  And also the table of

24    contents are very helpful.

09:08AM 25              What I'm going to now ask counsel to do --

1    require counsel to do is, when you're attaching exhibits to the

2    various pleadings -- and this becomes very important in terms

3    of the -- how you identify or label the trial exhibits.  It's

4    probably more important for the trial exhibits, but I'm finding

09:09AM    5    that it's difficult for me to keep track of the various pages

6    of these exhibits which sometimes run into numerous pages.

7              So if you would attach an exhibit, obviously

8    they're tabbed, and obviously you have a cover sheet which

9    says -- I'm just looking at Exhibit H here.  But then, when you

09:09AM    10    turn the page and start looking at Exhibit H, it's not

11    internally paginated which means that if I take Exhibit H out

12    or if Exhibit H falls out of the binder, it's difficult to put

13    the pages back together.

14              So in the future, start labeling these

09:10AM    15    exhibits -- and this example would be H, page 1; H, page 2;

16    H, page 3, on so, wherever I am in looking at an exhibit, I can

17    figure out this is Exhibit H and it's page 58.  And I say that

18    is particularly important for trial because we don't want

19    witnesses up there, when you say, look at page such and such,

09:10AM    20    and not having any page number in the exhibit, then we have to

21    waste the time to try to get the right page.  So if you will

22    start doing that with respect to any exhibits that you file.

23              And since -- I recognize the motions in limine

24    have probably already been filed.  I'm not going to have you go

09:10AM    25    back and do it for the motions in limine.  But for any future

```
 1   filings, it would be helpful to have that.

 2            The final issue that I want to discuss with

 3   counsel is -- I know this is a moving target, but what is the

 4   current trial estimate?

 5            MR. JENKINS:  It remains that 25 to 30 days,

 6   Your Honor, but it's definitely decreasing.  We recently

 7   decreased our witnesses.  At one point it was 75 witnesses.

 8   We're now down to approximately 50.  We believe that culling

 9   will continue.  I would say the 25 to 30 court days is an

10   outside estimate.

11            THE COURT:  For the Government's case?

12            MR. JENKINS:  For the Government's case.

13            THE COURT:  How about the defense case?

14            MS. ALÉ:  Your Honor, I think that might depend

15   on the other issue before the Court this morning regarding

16   Mr. Chan.

17            THE COURT:  Well, it's not before me because I

18   didn't set the hearing today.

19            MS. ALÉ:  I apologize, Your Honor.

20            THE COURT:  I have read it.  My tentative

21   conclusion is I'm not going to sever, but I haven't read the

22   cases thoroughly.  I'm familiar with the issue.

23            As I indicated in the order that I issued, if I

24   need a hearing, I will set a hearing.  If I'm going to do that,

25   I will probably try to do it within the next couple weeks.
```

```
 1                    MS. ALÉ:  Understood, Your Honor.  If I may have
 2       a moment.
 3                    THE COURT:  Sure.
 4                    MR. BRAUN:  Harland Braun.  We're not part of it,
09:12AM  5       but you did ask --
 6                    THE COURT:  You're part of it because your input
 7       with respect to the length of trial for trial is important.
 8                    MR. BRAUN:  I would estimate we have about
 9       40 witnesses in addition to Mr. Chan, and I think Mr. Chan's
09:12AM 10       testimony will take a month.  We anticipate going through every
11       single allegation in the Indictment and showing the jury how
12       dishonest the prosecution has been.  So we would say ours is
13       probably 60 days.
14                    THE COURT:  I can tell you Mr. Chan is not going
09:13AM 15       to be testifying for a month.  So you'd better start honing
16       down his testimony.  What are the other witnesses going to be
17       testifying to?
18                    MR. BRAUN:  Specific elements -- there will be a
19       number of character witnesses, but there will also be a number
09:13AM 20       of the elements.  Remember, we didn't indict this case.  They
21       indicted a RICO case.  So it basically means that everything
22       charged in the Indictment and every statement made by anyone,
23       even though my client didn't know them, is an issue.  So we --
24       it's -- you can cut down Mr. Chan's testimony, Your Honor, but
09:13AM 25       we will offer it, and Your Honor will decide what to do.
```

THE COURT:  All right.  How did your conversation
with Mr. Estrada go?

MR. BRAUN:  We haven't talked yet.  I should
indicate that before Mr. Chan was indicted, I had met with him
09:14AM  a number of times and I asked the lady -- Medulfa -- I forgot
her name but asked her for a reverse proffer because I
explained to my client the Government will then tell us how
you're involved in the Las Vegas case or what their theory is
and you decide whether to plead or not.  That was turned down.
09:14AM  We plan on scheduling a reverse proffer within the next week.
Maybe that will change the Government's attitude about the
case.

THE COURT:  You know, the tenor of your e-mails,
I haven't raised this before, but I think you ought to tone
09:14AM  down the personal attacks on the prosecutors.  You may have
your views, but I don't think it is appropriate for some of the
things that you have included in your e-mails that you sent on
prior occasions.

MR. BRAUN:  Yes, Your Honor.  I agree.  But I
09:14AM  think you have to understand I don't regard the prosecution as
honest.  In other words, I don't believe that we can
collaborate with a dishonest prosecution.  You can check with
Judge Fitzgerald.  I had a client from Mainland China that was
in custody for nine months, Guan Lee, and the Government then
09:15AM  dismissed eight cases involving overseas scholars on one Friday

1    afternoon.  I sent three letters, two letters to the prior

2    acting U.S. Attorney, one to Mr. Estrada, asking them why did

3    you dismiss the case and never got a response.

4              So I understand Your Honor's attitude.  My

09:15AM  5    attitude, you should understand, is that we are dealing with a

6    dishonest Government.  But I'm still going to have that reverse

7    proffer hoping they will understand what the case is about.

8              THE COURT:  Well, you sat through the Shen Zhen

9    case.  You were here most every day.  And the jury returned a

09:15AM  10   guilty verdict in that case.

11             MR. BRAUN:  I think Your Honor was incorrect in

12   the jury instructions.  The jury instruction that said that

13   Mr. Huang Wei leaving the country was to be interpreted or used

14   as evidence.  And I know Your Honor disagrees with this, but to

09:16AM  15   assume that a person from a culture that goes back 5,000 years

16   who has an obligation to the Government of China, who is a

17   member of the communist party supposed to trust our legal

18   system is -- and use that evidence against Shen Zhen I think

19   was improper.  If Your Honor does that in this current case, I

09:16AM  20   think it's also improper.  We will make the record at the time,

21   but it does assume a lot about what a person who is raised in a

22   different culture views our culture.

23             THE COURT:  Same as for Mr. Lee?

24             MR. BRAUN:  That's a different case entirely.

09:16AM  25             THE COURT:  All right.  Well, the reason I asked

1    for the estimate -- what about the estimate for Mr. Huizar?

2              MS. ALÉ:  Your Honor, we would add anything from

3    zero days to ten days to Mr. Braun's estimate.

4              THE COURT:  Well, the issue I want to raise with

09:17AM   5    counsel is whether or not you object to having the jury

6    department time qualify the jury in this case.  And time

7    qualify simply means they send out a letter to prospective

8    jurors that estimates the length of the trial so that we can

9    end up with a pool or a panel from which the -- a pool from

09:17AM   10   which a panel can be summoned in for which we don't need to

11   spend time asking whether or not they have open heart surgery

12   scheduled during the course of the trial or whether or not

13   there's a financial hardship or otherwise.

14             MS. ALÉ:  If I may have a moment, Your Honor.

09:18AM   15             THE COURT:  Yes.

16             MR. JENKINS:  The Government does not object,

17   Your Honor.

18             MS. ALÉ:  Thank you, Your Honor.

19             We would prefer not to have time-qualified jurors

09:18AM   20   and instead just follow the normal process of the --

21             THE COURT:  Well, the normal process then is

22   going to be for counsel to meet and confer and prepare a short

23   questionnaire, and then we will be passing out that

24   questionnaire.  And we will involve magistrate judges to make

09:18AM   25   various determinations on financial hardship, and counsel can

1   go through the questionnaires and make a determination as to

2   which should be excused and which should not be excused.

3            The problem with that is it is an enormous waste

4   of time.  If you have a juror who says, I have a prepaid

5   vacation or I have open heart surgery during the course of this

6   trial, he is obviously -- he or she is going to be excused.  So

7   to go through that process is an enormous waste of time.  But

8   if that is what counsel want to do, then we will do it.

9            MS. ALÉ:  Your Honor, we can confer and advise

10   the Court if that is okay.

11            THE COURT:  All right.  But I need to know by

12   Monday because the jury department has to send out a letter.  I

13   seriously think you ought to consider that issue because,

14   having the number of people we have to call in, passing out the

15   questionnaires and counsel are going to be dealing with the

16   questionnaires and it's simply going through and finding out

17   who has an excuse and, those that you don't think have a

18   legitimate excuse asking a few questions, they have to bring

19   the documentation with them in terms of showing what their

20   vacation plan is, it's just -- I have been through it before,

21   and I'm sure counsel have been through it before.  It's a

22   colossal waste of time.

23            MS. ALÉ:  Understood, Your Honor.  We can file

24   something later this afternoon after we have an opportunity to

25   speak with --

1          THE COURT:  If you want to talk about it now, go

2    talk about it now because I'd like to resolve this issue now

3    because today is Friday.

4          MS. ALÉ:  Yes, Your Honor.

09:20AM  5          MR. JENKINS:  While they're conferring, just for

6    the record, our 50 witnesses did not include custodial

7    witnesses and witnesses that have been the subject of

8    stipulations in the prior two trials.  My understanding from

9    Mr. Braun's quote that they won't stip to anything, so that may

09:20AM  10   necessitate additional witnesses.

11         The public defenders on behalf of Huizar had

12   expressed several objections to foundation to obvious business

13   records, so that may also increase that number.  So we just

14   want to clarify that.

09:21AM  15         THE COURT:  All right.

16         MS. ALÉ:  Thank you, Your Honor.  We would object

17   to the questionnaire.

18         THE COURT:  You object to what?

19         MS. ALÉ:  We would object to the time

09:22AM  20   qualifying -- to the time qualifying questionnaire.

21         THE COURT:  Then counsel shall meet and confer

22   and prepare a questionnaire that will be used to determine

23   whether or not jury service for the period of time that we will

24   inform the jury -- the jurors on the day that they report will

09:22AM  25   cause an undue hardship.  The questionnaire shouldn't be more

```
  1    than one page.  Meet and confer and submit an agreed-upon

  2    questionnaire.  If you can't agree, a joint statement with

  3    respect to each side's proposed questionnaire.

  4              I don't think it should be any controversy, but

  5    given the nature of this case, there may be.  Anyway, file it

  6    by next Friday.

  7              MR. JENKINS:  Understood, Your Honor.

  8              MS. ALÉ:  Yes, Your Honor.

  9              THE COURT:  All right.  Anything else from the

 10    Government?

 11              MR. JENKINS:  Nothing further from the

 12    Government.  Thank you, Your Honor.

 13              MS. ALÉ:  Nothing further from Mr. Huizar,

 14    Your Honor.

 15              THE COURT:  All right.  Mr. Braun, with respect

 16    to your character witnesses, how many do you expect to call?

 17              MR. BRAUN:  I haven't interviewed them.  I'm

 18    going to do that through January.  Probably 20.

 19              THE COURT:  How many?

 20              MR. BRAUN:  20.

 21              THE COURT:  I can alert you that my normal

 22    practice is to require an offer of proof as to any character

 23    witnesses.  So when you're preparing your character witnesses,

 24    keep that in mind because I'm not going to -- I'm not going to

 25    allow 20 character witnesses to testify.
```

1           MR. BRAUN:  I'm going to be interviewing them in

2    January, Your Honor.

3           THE COURT:  All right.  I have nothing else.  We

4    will be in recess.

09:24AM   5           (Proceedings concluded at 9:24 a.m.)

1    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5        I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

7    THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

8    PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

9    FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13   THE UNITED STATES.

14

15        DATED THIS  9TH  DAY OF JANUARY, 2023.

16

17

18        /S/ MIRANDA ALGORRI

19        _____
          MIRANDA ALGORRI, CSR NO. 12743, CRR
20        FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25