# Exhibit 1



# United States Department of Justice

## United States Attorney's Office
## Central District of California

**Central District of California**
312 North Spring Street, Suite 1200
Los Angeles, California 90012

## NON-PROSECUTION AGREEMENT

The United States Attorney's Office for the Central District of California ("USAO") hereby enters into the following Non-Prosecution Agreement (the "Agreement") with CP Employer, Inc., formerly known as Carmel Partners, Inc., a California corporation headquartered in San Francisco, California ("the Company"), pursuant to authority granted by the Company's Chief Executive Officer reflected in <u>Exhibit D</u>, to resolve the federal criminal investigation under, among other statutes, Title 18, United States Code, Sections 666, 1341, 1343, and 1346. The investigation reviewed the approval of one of the Company's real estate development projects by City of Los Angeles ("City") public officials. This Agreement is binding only on the Company and its corporate affiliates and the USAO; it specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities.

## I.    Introduction and Relevant Considerations

1.    The USAO and the Federal Bureau of Investigation ("FBI") have been investigating certain matters relating to the Company's interactions with City public officials in connection with the Company's development of a real estate project located at 520 Mateo Street in Los Angeles, California (the "Mateo Project") between 2016 to November 2018. Specifically, as described in the statement of facts attached hereto as <u>Exhibit A</u> ("Statement of Facts"), the USAO and FBI have been investigating the Company's interactions with City public officials related to the Mateo Project.

2.    The USAO enters into this Agreement based on the individual facts and circumstances presented by this case and the Company, including the following factors:

    a.    The Company's demonstrated commitment to compliance, including the following:

        i.    Prior to the commencement of the Investigation, the Company created a Compliance Department; devoted substantial resources to its Compliance Department, including creating the position of Chief Compliance Officer and two additional full-time compliance positions; developed a Compliance Manual and Code of Ethics; held regular training sessions to review compliance policies; and maintained a hotline for employees to submit questions or report violations, including anonymously; and

        ii.    The Company maintained a compliance process that entailed three levels of review in evaluating requests for Political Action Committee ("PAC")

CP Employer, Inc. Non-Prosecution Agreement
USAO-CDCA
Page 2

contributions.  In particular, the contribution requests were subject internally to vetting by the Compliance Department and senior management, and were forwarded to outside counsel for review and evaluation.

b. The Company's cooperation with the USAO's investigation, which has assisted the government's efforts and has included:

  i. The Company's synthesis and presentation of relevant facts, including making factual presentations to the USAO;

  ii. Making the Company's senior executives and other employees available for interviews with the USAO and FBI.

c. The Company's lack of criminal history, and the lack of any adverse regulatory or enforcement actions against the Company or its employees;

d. The Company's acceptance of responsibility for its conduct, as described in Section II and the Statement of Facts;

e. The Company's voluntary undertaking of remedial measures, which have included:

  i. The termination of Morris Goldman as an outside consultant and lobbyist to the Company in January 2019;

  ii. The placement on administrative leave of Executive M in June 2020, and the subsequent termination of Executive M from the Company;

  iii. The enhancements of the Company's compliance program, internal controls, and corporate risk function, as described in <u>Exhibit F</u>, including a new policy that will prohibit the Company and its funds from making a contribution to any state or local PAC or to a state or local political candidate; a prohibition on raising or bundling state and local campaign contributions; tracking and logging interactions between Company staff and government officials; and increasing policies and training around gifts, contributions, and interactions with public officials.

f. The USAO's determination, based upon the Company's existing compliance program and remediation, that an independent compliance monitor is unnecessary;

g. The Company's agreement (in accordance with Paragraphs 6 through 9 of this Agreement) to continue to cooperate with the USAO and the FBI during the pendency of any prosecution the USAO has instituted and may institute against any individuals based on conduct relating to the Statement of Facts; and

CP Employer, Inc. Non-Prosecution Agreement
USAO-CDCA
Page 3

h. The nature and seriousness of the conduct described in the Statement of Facts, including weaknesses in the Company's compliance program and failures to properly supervise an executive that allowed that executive to circumvent compliance procedures in providing benefits to an elected public official.

## II.   The Term of the Agreement

3. This Agreement shall be deemed effective as of the last date of execution by a party to this Agreement (the "Initial Effective Date") and shall continue in effect for a period of 36 months (3 years) from the Initial Effective Date (the "Term"). Notwithstanding the foregoing, the Company's cooperation obligations as described in Paragraphs 6 through 8 of this Agreement shall continue until the conclusion of any criminal investigation or prosecution (through the entry of final judgment) of any individual relating to the Statement of Facts, which will only occur upon a letter from the USAO confirming this obligation has expired. The Company further agrees that in the event of a breach by the Company, then an extension or extensions of the Term of up to 12 months (1 year), per breach, may be imposed by the USAO, without prejudice to the USAO's right to proceed as provided in Paragraphs 17-21 below. Any extension of the Term extends all terms of this Agreement for an equivalent period.

## III.   The Company's Acceptance of Responsibility

4. The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents within the scope of their employment, as set forth in the Statement of Facts. The Company agrees that the factual statements contained within the Statement of Facts are true and accurate.

5. The Company shall not, through any of its officers, employees, attorneys, consultants, or agents, or any other person authorized to make statements on behalf of the Company, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts contained in the Statement of Facts. Any such contradictory statement shall, subject to the rights of the Company described below in Paragraph 19 constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 17 through 21 of this Agreement. If the USAO determines that the Company has made a public statement contradicting its acceptance of responsibility or any fact contained in the Statement of Facts, the USAO shall so notify the Company. Thereafter, the Company may avoid a breach of this Agreement by publicly repudiating the statement within five days after such notification. The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, any statement contained in the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

CP Employer, Inc. Non-Prosecution Agreement
USAO-CDCA
Page 4

## IV.    **Cooperation**

6.      At the request or direction of the USAO, the Company shall cooperate fully with any and all investigations, prosecutions, or civil or administrative enforcement proceedings undertaken by the USAO or other federal law enforcement or regulatory authority or agency and relating to the conduct described in the Statement of Facts. All such cooperation described in this Paragraph shall include, but not be limited to:

   a.   Timely providing upon oral or written request, and in accordance with federal law, all non-privileged information, documents, records, and other tangible evidence that can be obtained through reasonable efforts, including from the Company and its affiliates;

   b.   Identifying, upon oral or written request, witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation; and

   c.   Upon oral or written request, using its best efforts to make available for interview or testimony, in a timely fashion, any current officer, executive, director, employee, agent, or consultant of the Company, including by making such persons available in the Central District of California, at Company expense, regardless of their location of residence.

7.      The Company shall at all times provide complete, truthful, and accurate information to the USAO/FBI. The Company's obligation to cooperate pursuant to the preceding paragraph will no longer apply if a prosecution by the USAO is commenced against the Company as a result of a breach of this Agreement.

8.      With respect to any information, testimony, documents, records, or other tangible evidence provided pursuant to this Agreement (other than any material or information provided pursuant to paragraph 9 below), the Company consents to any and all disclosures, subject to applicable law and regulations, to other governmental and regulatory authorities, including United States authorities and those of a foreign government, of such materials as the USAO, in its sole discretion, shall deem appropriate.

9.      In addition to the obligations in Paragraph 6, during the Term, the Company shall, upon discovery, promptly provide any specified non-privileged information, documents, records, or other tangible evidence of conduct within the Company, that may constitute a violation of federal criminal law and that can be obtained through reasonable efforts. The obligations of this Paragraph apply to conduct that may constitute a violation of federal criminal law regardless of whether that conduct relates to the conduct described in the Statement of Facts. The USAO may use this information to gather additional evidence of such violations.

CP Employer, Inc. Non-Prosecution Agreement
USAO-CDCA
Page 5

10.     Nothing in this Agreement is intended to request or require the Company to waive its attorney-client privilege or work product protections, and no such waiver shall be deemed effected by any provision herein.

11.     To the extent authorized by law, the USAO agrees to bring to the attention of other governmental authorities the nature and quality of the Company's cooperation with the USAO's investigation, upon request of the Company. By agreeing to provide this information to any such authority, the USAO is not agreeing to advocate on the Company's behalf or request any specific outcome, but rather is agreeing to provide facts to be evaluated independently by such authority.

## V.     <u>Financial Payment</u>

12.     The Company agrees to pay to the United States $1,200,000 (the "Financial Payment") within fourteen (14) calendar days of the Initial Effective Date of the Agreement. The Financial Payment shall be paid by certified check, business check, or money order made payable to "United States Department of Justice" and will identify "Op. Casino Loyale NPA" on the "memo" line. The payment can be provided to: United States Attorney's Office, Civil Division, Financial Litigation Section, 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012, with email proof of the same provided to the USAO.

13.     The Company and the USAO agree that the Financial Payment is appropriate given the facts and circumstances of this case, including the Company's compliance program efforts, its efforts at cooperation, its disclosure of relevant facts, including information relating to the individuals involved in the investigated conduct, and the Company's extensive remediation in this matter. The Financial Payment is final and shall not be refunded. The Company acknowledges that no tax deduction may be sought in connection with the payment of any part of this Financial Payment. The Company shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the Financial Payment that it pays pursuant to this Agreement.

## VI.     <u>Non-Prosecution</u>

14.     The USAO agrees that if the Company fully complies with all of its obligations under this Agreement, the USAO will not criminally prosecute the Company, or any of its parents, subsidiaries or affiliates, during the Term of this Agreement or thereafter for any crime related to the conduct described in the Statement of Facts. The USAO and the Company intend for this Agreement to resolve the USAO's criminal investigation of the Company relating to the conduct described in the Statement of Facts.

15.     Except as expressly provided in Paragraph 14 above, this Agreement does not preclude or limit the USAO, any other United States Attorney's Office, or the United States Department of Justice from investigating or prosecuting the Company, or for prosecuting any other individual or entity, including any current or former officer, employee, or agent of the Company.

CP Employer, Inc. Non-Prosecution Agreement
USAO-CDCA
Page 6

16.     Nothing in this Agreement shall preclude or limit the USAO, any other United States
        Attorney's Office, or the United States Department of Justice from bringing a criminal
        prosecution against the Company for making false statements, obstruction of justice,
        perjury, subornation of perjury, or aiding and abetting or conspiring to commit such an
        offense based on the Company's conduct in performing its cooperation obligations under
        this Agreement.

**VII.    <u>Breach of Agreement</u>**

17.     If, during the Term, (a) any senior vice president-level employee or above of the Company
        commits any felony under United States law that is within the scope of his or her
        employment and intending to benefit the Company in whole or in part; (b) the Company
        provides in connection with this Agreement deliberately false, incomplete, or misleading
        information, including in connection with its disclosure of information about individual
        culpability; (c) the Company knowingly fails to cooperate as set forth in Paragraphs 6
        through 9 of this Agreement; (d) the Company fails to accept responsibility pursuant to
        Paragraph 5 of this Agreement; or (e) the Company otherwise knowingly and materially
        fails to perform or fulfill any of its obligations under the Agreement, the USAO will deem
        the Company in breach of the Agreement and the Company shall thereafter be subject to
        prosecution for any federal criminal violation, including, but not limited to, charges arising
        from the conduct described in the Statement of Facts.

18.     The determination whether the Company has breached the Agreement shall be in the
        USAO's sole discretion. Any such prosecution may be premised on information provided
        by the Company. Any such prosecution relating to the conduct described in the Statement
        of Facts that is not time-barred by the applicable statute of limitations on the Initial
        Effective Date may be commenced against the Company, notwithstanding the expiration
        of the statute of limitations, between the Initial Effective Date and the expiration of the
        Term plus one year. The tolling agreement is attached hereto as <u>Exhibit B</u> and incorporated
        herein by reference.

19.     Except as otherwise provided in Paragraph 5 above, in the event that the USAO determines
        that the Company has breached this Agreement, the USAO shall provide the Company
        with written notice of such determination prior to instituting any prosecution resulting from
        such breach. Within 30 days of receipt of such notice, the Company shall have the
        opportunity to address such a breach by providing a response to the USAO to demonstrate
        that no breach has occurred, to demonstrate that the breach was not a knowing breach,
        and/or to explain the actions taken to address and remediate the breach. The USAO shall
        thereafter provide written notice to the Company of its final determination regarding
        whether to declare the Agreement breached. The Company shall thereafter have 30 days to
        appeal to a higher authority within the Department of Justice in order to obtain a written
        finding that, based on a preponderance of the evidence, the Company has not breached the
        Agreement. In the absence of such a written finding, the USAO's determination of breach
        shall become final after 30 days following the USAO's written notification.

CP Employer, Inc. Non-Prosecution Agreement
USAO-CDCA
Page 7

20. In the event that the USAO determines to institute a criminal prosecution against the Company after a breach of this this Agreement, then:

   a. All statements made by or on behalf of the Company to the USAO, including the attached Statement of Facts, shall be admissible in evidence in any and all criminal proceedings brought by the USAO against the Company, and the Company shall stipulate to the admissibility into evidence of the Statement of Facts as an admission by the Company, and shall be precluded from offering any evidence or argument that contradicts the Statement of Facts or that suggests those facts are untrue or misleading;

   b. The Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements made by or on behalf of the Company prior or subsequent to this Agreement should be suppressed or are otherwise inadmissible; and

   c. The USAO shall immediately be free to use the waiver of indictment provided by the Company in Exhibit C attached hereto and to prosecute the Company by way of information for any federal offense arising out of the Statement of Facts. The Company remains bound by all other waivers expressly made as part of this Agreement.

21. The Company acknowledges that the USAO has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and any criminal prosecution instituted thereafter proceeds to judgment. The Company further acknowledges that any such sentence would be solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion. Nothing in this Agreement shall be deemed an agreement by the USAO that $1,200,000 is the maximum penalty that may be imposed in any future prosecution, and the USAO is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the USAO agrees that under those circumstances, it would recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment.

## VIII.   Sale, Merger, or Other Change in Corporate Form of the Company

22. Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term or during the pendency of its cooperation obligations described in Paragraphs 6 through 9, if it sells, merges, or transfers all or substantially all of the assets of the Company, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the USAO's ability to determine a breach under this Agreement is applicable

CP Employer, Inc. Non-Prosecution Agreement
USAO-CDCA
Page 8

in full force to that entity. The Company agrees that the failure to include these provisions in the transaction will make any such transaction null and void. The Company shall provide notice to the USAO at least 30 days prior to undertaking any such sale, merger, transfer, or other change in corporate form. If the USAO notifies the Company prior to such transaction (or series of transactions) that it has determined that the transaction(s) has the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined in the sole discretion of the USAO, the Company shall not consummate such transaction(s). In addition, if at any time during the Term or the pendency of the Company's cooperation obligations described in Paragraphs 6 through 9 the USAO determines in its sole discretion that the Company has engaged in a transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, it may deem it a breach of this Agreement pursuant to Paragraphs 17 through 21 of this Agreement. Nothing herein shall restrict the Company from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the USAO. The sale, merger, or transfer of the 520 Mateo Project and/or any portion of the project site by the Company shall not constitute a sale, merger, or transfer of all or substantially all of the assets of the Company within the meaning of this Agreement, provided that the transaction does not cause the Company to relinquish control over potentially relevant records, systems, information, accounts, and officers and employees such that the transaction would have the effect of circumventing or frustrating the enforcement purposes of this Agreement.

## IX.    Certification

23.    Thirty (30) days prior to the end of the Term, the Company will provide to the USAO a certification signed by a Company representative and counsel stating that it has met the conditions set forth in Sections II - IV of this Agreement. Such certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001 (false statement to federal agency) and 18 U.S.C. § 1505 (obstruction of federal proceeding), and it will be deemed to have been made in the Central District of California.

## X.    Notice

24.    Any notice to the USAO under this Agreement shall be provided (1) via email to mack.jenkins@usdoj.gov, veronica.dragalin@usdoj.gov, and melissa.mills@usdoj.gov; and (2) personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

CP Employer, Inc. Non-Prosecution Agreement
USAO-CDCA
Page 9

Mack E. Jenkins or Chief of Public Corruption & Civil Rights Section
United States Attorney's Office
United States Courthouse
312 North Spring Street, Suite 1500
Los Angeles, California 90012

Any notice to the Company under this Agreement shall be provided be provided (1) via email to MGolden@CarmelPartners.com andjohnpotter@quinnemanuel.com; and (2) personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

Matthew Golden
General Counsel
CPE Employer, Inc.
1000 Sansome Street
San Francisco, CA 94111

-and-

John Potter
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, California 94111

25.    Notice shall be effective upon actual receipt by the USAO or the Company.

**XI.    Jurisdiction and No Other Agreements**

26.    This Agreement is covered by the laws of the United States. The USAO and the Company agree that exclusive jurisdiction and venue for any dispute arising under this Agreement is in the United States District Court for the Central District of California.

///

///

///

CP Employer, Inc. Non-Prosecution Agreement
USAO-CDCA
Page 10

This Agreement, with its attached Exhibits A through F, sets forth all the terms of the agreement between the Company and the USAO. No modifications or additions to this Agreement, or to its attached Exhibits A through F, shall be valid unless they are in writing and signed by the USAO, the Company's attorneys, and a duly authorized agent of the Company.

Exhibit A – Statement of Facts
Exhibit B – Statute of Limitations Tolling Agreement
Exhibit C – Waiver of Indictment
Exhibit D – Certificate of Corporate Resolutions
Exhibit E – Certificate of Counsel
Exhibit F – Corporate Compliance Program

**AGREED:**

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney


_____            12/22/20
MACK E. JENKINS                             _____
VERONICA DRAGALIN                           DATE
MELISSA MILLS
Assistant United States Attorneys


_____            12/21/20
CP EMPLOYER, INC.                           _____
by:  Ron Zeff, Chief Executive Officer      DATE


_____            December 21, 2020
JOHN POTTER                                 _____
Quinn Emanuel Urquhart & Sullivan, LLP      DATE
Counsel for CP Employer, Inc.

## EXHIBIT A

## STATEMENT OF FACTS

CP Employer, Inc., along with affiliated entities (collectively, "the Company") admits, accepts, and acknowledges as true the following facts:

1.   CP V 520 Mateo, LLC, one of the Company's affiliates, has been pursuing development of a project located at 520 Mateo Street, Los Angeles, California (the "Mateo Project").

2.   Executive M was employed by the Company.  He was responsible for overseeing the development of the Mateo Project.

3.   Executive B was Executive M's supervisor.

4.   Jose Huizar served as Los Angeles City Councilmember for Council District 14 ("CD-14"), from 2005 until 2020, and served as the Chair of the Planning and Land Use Management ("PLUM") Committee until November 2018.

5.   Morris Goldman, also known as "Morrie Goldman," was a consultant for real estate developers with projects in Los Angeles and, at all relevant times, was a registered lobbyist with the City of Los Angeles.  Real estate developers in Los Angeles frequently hire consultants and/or lobbyists such as Goldman to assist in guiding projects through the development process, including by interfacing with the City Council office that represents the district in which the project is located. In or around 2015, the Company retained Morrie Goldman through his company, Urban Solutions LLC, to serve as a consultant for the Mateo Project.  Thereafter, Goldman acted as a consultant for the Company.

<u>The Mateo Project</u>

6.   In or around September 2014, the Company acquired land located at 520 Mateo Street in Los Angeles, located within CD-14 for the purpose of developing what was to become a mixed-use project.

7.   Following the purchase, the Company sought and obtained approvals from the City of Los Angeles to develop the Mateo Project.  Specifically, the City approval process included at least the following:

   a.      In November 2016, the City Planning Commission completed its Initial Study of the Mateo Project.

   b.      On May 15, 2018, the Planning Department held an administrative hearing on the Mateo Project.

Co. Initials RZ

A-1

c. On June 14, 2018, the City Planning Commission approved the Mateo Project with modifications, including an affordable housing requirement that 11% of the total units be reserved for "Very Low Income" housing.

d. On October 16, 2018, the PLUM Committee voted unanimously to approve the Mateo Project. The PLUM Committee also voted to deny a labor union appeal that had been filed against the project. In addition, the PLUM Committee also voted to modify the conditions imposed by the City Planning Commission, and accepted the Company's requested modification to reduce the affordable housing requirement.

e. On October 31, 2018, the City Council voted unanimously to approve the project.

<u>Requests for Contributions from Huizar</u>

8. In or about September 2016, Goldman conveyed Huizar's request and recommended that the Company make a contribution to a political action committee ("PAC B") in connection with a homelessness initiative that was on the ballot in November 2016 (Measure HHH). The request for a contribution was processed pursuant to the Company's customary legal and compliance review, and on November 9, 2016, the Company made a $25,000 contribution to PAC B, which was publicly disclosed.

9. In or about early February 2017, Goldman conveyed Huizar's request and recommended that the Company make an additional contribution to PAC B in connection with a homelessness initiative that was on the ballot in March 2017 (Measure H). The request for a contribution was processed pursuant to the Company's customary legal and compliance review, and on March 2, 2017, the Company made a second $25,000 contribution to PAC B, which was publicly disclosed.

10. In or about early March 2018, Goldman conveyed Huizar's request and recommended that the Company make a contribution to PAC A, which was publicly described as a general purpose PAC expected to benefit a broad array of candidates, including Huizar's relative who was expected to run for Huizar's CD-14 seat after Huizar's term ended. The request for a contribution was processed pursuant to the Company's customary legal and compliance review, and in June 2018, the Company made a $25,000 contribution to PAC A, which was publicly disclosed.

11. In or about early September 2018, Goldman conveyed Huizar's request and recommended that the Company make an additional $50,000 contribution to PAC A. The request for a contribution was processed pursuant to the Company's customary legal and compliance review. On September 24, 2018, the Company determined that it would not make the requested contribution to PAC A, and in fact did not make the contribution. The Company did not notify Goldman or Huizar that it did not intend to make this contribution.

Co. Initials 

<u>Additional Requests from Huizar</u>

12. On September 28, 2018, Executive M and Huizar met at a restaurant in Los Angeles for a one-on-one dinner, which was the first time they had such a meeting.  During the dinner, Executive M and Huizar discussed the amount of the Company's contribution to the citywide Los Angeles Public Benefits Trust Fund to support affordable housing.  Huizar also requested that Executive M assist with fundraising for his relative's anticipated campaign by asking other consultants and contractors for contributions; Executive M agreed to this request and told Huizar he would help.  During this conversation, Huizar also mentioned a personal matter that a particular individual ("Person 1"), and a person associated with Person 1, were causing problems for Huizar's family.  Executive M agreed to obtain background information on Person 1 in order to help Huizar.

13. Executive M did not inform the Compliance Department or the Company's senior management about his agreement at this dinner to assist with Huizar's request to help fundraising for his family member.  Executive M did not ultimately help with the fundraiser.

14. Shortly thereafter, Executive M asked his immediate supervisor, Executive B, about obtaining a background report on Person 1.  Executive B believed that this request to obtain a background report was odd.  Executive B told Executive M to run the request by the lawyers and expected him to inform the Compliance Department.  However, Executive M did not inform the Compliance Department nor the Company's senior management about this request.  Executive M also did not inform Goldman about this request.  Executive B did not follow up with Executive M, nor did he inform the Company's CEO or the Company's Compliance Department about the request.

15. On or about October 4, 2018, without the knowledge or approval of senior management, Executive M obtained a background report on Person 1, for which the Company paid approximately $7,200.  After another Company employee learned the background report had been obtained for Huizar, Executive M indicated to the employee that the report had been run through the lawyers.  The employee assumed Executive M meant that he had informed the Compliance Department about the report when, in fact, he had not.  On or about October 11, 2018, at a fundraiser for Huizar's relative attended by Executive M and another Company employee, Executive M provided, in an envelope, a redacted version of the background report to Huizar without the knowledge or approval of the Company's senior management.  When asked by Goldman what was in the envelope Executive M provided to Huizar, Executive M declined to inform his lobbyist.

16. At the October 11, 2018 fundraiser, Huizar also asked Executive M if the Company would give Huizar $250,000 directly if he reduced the Company's required payment to the Los Angeles Public Benefits Trust Fund.  Executive M did not respond to the request.  Executive M did not inform the Compliance Department, the Company's senior management, or Goldman about Huizar's additional request.

Co. Initials 

17. Following this fundraiser, Huizar asked Executive M for additional background information on two other individuals.  After looking up these individuals on the internet and learning that they worked for Huizar, Executive M did not conduct the background checks.  Executive M did not inform Huizar that he would not conduct the additional background checks as requested.  Executive M did not inform the Compliance Department, the Company's senior management, or Goldman about Huizar's additional request.

18. Around this time, Huizar, who had previously worked as a land use attorney, also asked Executive M about Huizar potentially working with the Company following Huizar's term on the City Council.  Executive M did not take any action in response to this comment, and did not inform the Compliance Department, the Company's senior management, or Goldman about Huizar's additional request.

Co. Initials

A-4

**EXHIBIT B**

**STATUTE OF LIMITATIONS
TOLLING AGREEMENT**

This Statute of Limitations Tolling Agreement ("Tolling Agreement") is entered into between CP Employer, Inc. (the "Company") and the United States Attorney's Office for the Central District of California (the "USAO").

1. The USAO and the Federal Bureau of Investigation have been investigating certain matters relating to the Company's interactions with Los Angeles City public officials in connection with the Company's real estate development project located at 520 Mateo Street in Los Angeles, California between 2016 to November 2018 (the "Investigation").

2. Contemporaneously with the execution of this Tolling Agreement, the Company and the USAO are entering into a Non-Prosecution Agreement to resolve the Investigation with respect to the Company (the "Non-Prosecution Agreement"). The Non-Prosecution Agreement includes, as Exhibit A, a Statement of Facts.

3. The Company and the USAO acknowledge that it is their mutual intention for this Tolling Agreement, in accordance with the terms and conditions of the Non-Prosecution Agreement, to effect a waiver and tolling of any federal statute of limitations (including, but not limited to, 18 U.S.C. §§ 3282, 3293, and 3301) for any violation of federal law relating to the conduct described in the Statement of Facts.

4. This Tolling Agreement applies solely to any federal criminal offenses, and allegations thereof, relating to the Company's conduct as described in the Statement of Facts charged by the USAO following a breach of the Non-Prosecution Agreement as set forth in Paragraphs 17 through 20 of the Non-Prosecution Agreement. It also applies to all criminal prosecution and civil and criminal forfeiture actions brought by the USAO that may be based on such federal criminal offenses. It does not apply to any criminal offenses, allegations, prosecutions, or actions brought by any other federal law enforcement or prosecutors' offices.

5. The parties to this Tolling Agreement hereby agree and stipulate that the period beginning on the execution date of the Non-Prosecution Agreement, and continuing until the conclusion of the Term as defined in the Non-Prosecution Agreement plus one year (the "Tolling Period"), shall be excluded from any calculation of time for purposes of the application of any federal statute of limitations to any violation of federal law relating to the conduct described in the Statement of Facts.

6. The parties to this Tolling Agreement further agree and stipulate that the running of any federal statute of limitations or any similar equitable doctrine for any alleged violation of federal law shall be tolled during the Tolling Period.

B-1

7.      The Parties to this Tolling Agreement further agree and stipulate that the Tolling Period shall not be considered or assessed against the United States or the USAO for purposes of any constitutional, statutory, or other challenge involving a claim of pre-indictment delay relating to any criminal prosecution brought by the USAO related to the conduct described in the Statement of Facts.

8.      The Company has retained and consulted with outside counsel. The Company, having been advised by its counsel of the potential consequences of this Tolling Agreement to its rights under the Fifth and Sixth Amendments of the United States Constitution, the federal statutes of limitations, and Rule 48(b) of the Federal Rules of Criminal Procedure, expressly waives its right to rely upon the time included in the Tolling Period to support any defense based upon the failure of a federal grand jury or the USAO to charge it with any violation of any relevant federal law relating to the conduct described in the Statement of Facts or the failure to institute civil or criminal  forfeiture proceedings against it or against any of its assets.

9.      The parties to this Tolling Agreement understand that nothing in this Tolling Agreement revives any criminal charges for which the applicable statute of limitations ran prior to the execution date of the Non-Prosecution Agreement.

10.     This Tolling Agreement does not limit or affect the right or discretion of the USAO, or any other component of the United States Department of Justice, to seek or initiate criminal charges or any civil money laundering or civil or criminal forfeiture proceedings against the Company based upon the violation of any federal law at any time, except to the extent set forth in the Non-Prosecution Agreement.

11.     This Tolling Agreement may be executed in counterparts and transmitted by

//

//

//

//

//

//

//

//

B-2

facsimile and/or electronic copy, each of which counterparts will be deemed to be an original and which taken together will constitute the Tolling Agreement.

READ AND AGREED TO:


NICOLA T. HANNA
United States Attorney
Central District of California


_____            12/22/20
MACK E. JENKINS                      DATE
VERONICA DRAGALIN
MELISSA MILLS
Assistant United States Attorneys


_____            12/21/20
CP Employer, Inc.                    DATE
by:  Ron Zeff, Chief Executive Officer


_____            December 21, 2020
JOHN POTTER                          DATE
Quinn Emanuel Urquhart & Sullivan, LLP
Counsel for CP Employer, Inc.


B-4

**EXHIBIT C**

**WAIVER OF INDICTMENT**

In the event that the United States Attorney's Office for the Central District of California institutes a criminal prosecution against CP Employer, Inc., following a determination of a breach of the Non-Prosecution Agreement, in accordance with paragraphs 17 through 20 of that Agreement, CP Employer, Inc., having been advised by counsel of its rights and the nature of potential charges arising out of the Statement of Facts, waives its right to indictment and agrees that criminal proceedings may be by information rather than indictment for any federal offense arising out of the Statement of Facts attached as Exhibit A to the Non-Prosecution Agreement.

_____
**CP Employer, Inc.**
by:  Ron Zeff, Chief Executive Officer

12/21/20
_____
DATE

_____
JOHN POTTER
Quinn Emanuel Urquhart & Sullivan, LLP
Counsel for CP Employer, Inc.

December 21, 2020
_____
DATE

**EXHIBIT D**

**COMPANY OFFICER'S CERTIFICATE**

I have carefully reviewed every part of this Agreement, including Exhibits A-F, with outside counsel for CP Employer, Inc. (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted with outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Chief Executive Officer for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

_____          12/21/20
CP EMPLOYER, INC.                         _____
by:  Ron Zeff, Chief Executive Officer    DATE

**EXHIBIT E**

**CERTIFICATE OF COUNSEL**

The undersigned is counsel for CP Employer, Inc. in the matter covered by this Non-Prosecution Agreement. In connection with such representation, I have examined relevant company documents and have discussed the terms of this Non-Prosecution Agreement with Management for CP Employer, Inc. Based on my review of the foregoing materials and discussions, I am of the opinion that Ron Zeff is duly authorized to enter into this Non-Prosecution Agreement on behalf of CP Employer, Inc., and that this Non-Prosecution Agreement has been duly and validly authorized, executed, and delivered on behalf of CP Employer, Inc., and is a valid and binding obligation of CP Employer, Inc. Further, I have carefully reviewed the terms of this Non-Prosecution Agreement with the Chief Executive Officer, Ron Zeff, and the General Counsel of CP Employer, Inc. I have fully advised them of the rights of CP Employer, Inc., of possible defenses, of the Sentencing Guidelines' provisions

//

//

//

//

//

//

//

//

//

//

E-1

and of the consequences of entering into this Non-Prosecution Agreement. To my knowledge,

the decision of CP Employer, Inc. to enter into this Non-Prosecution Agreement, based on the

authorization of the Chief Executive Officer of CP Employer, Inc., is informed and voluntary.


DATED: <u>December 21, 2020</u>          BY: _____

                                         JOHN POTTER
                                         Quinn Emanuel Urquhart & Sullivan, LLP
                                         Counsel for CP Employer, Inc.

E-2

# EXHIBIT F
# CORPORATE COMPLIANCE PROGRAM

The Company agrees to revise and address any deficiencies in its compliance code, policies, and procedures regarding compliance with applicable anti-bribery/anti-corruption laws.  Indeed, the Company already has initiated substantial additions and changes to its compliance program, policies, and procedures.  However, when necessary and appropriate, the Company agrees to adopt new, or to modify its existing, compliance code, policies, and procedures in order to ensure that it maintains a rigorous anti-bribery/anti-corruption compliance code, and policies and procedures designed to detect and deter violations of anti-bribery/anti-corruption laws.  At a minimum, this should include, but not be limited to, the following elements to the extent they are not already part of the Company's existing compliance code, policies, and procedures:

## High-Level Commitment

1.      The Company will ensure that its executives, directors, and senior management provide strong, explicit, and visible support and commitment to its corporate policy against violations of the anti-bribery/anti-corruption laws and its compliance code.

## Policies and Procedures

2.      The Company will develop, memorialize, and promulgate a clearly articulated and visible corporate policy against violations of all anti-bribery/anti-corruption laws.

3.      The Company will develop and promulgate compliance policies and procedures designed to reduce the prospect of violations of the anti-bribery/anti-corruption laws and the Company's compliance code, and the Company will take appropriate measures to encourage and support compliance by personnel at all levels and locations of the Company.  These anti-bribery/anti-corruption policies and procedures shall apply to all executives, directors, officers, and employees regardless of location and, when necessary and appropriate, outside parties acting on behalf of the Company, including but not limited to, agents and intermediaries, consultants, representatives, distributors, teaming partners, contractors and suppliers, consortia, and joint venture partners (collectively, "agents and business partners").  It shall also apply to other current and future affiliates of the Company.  The Company shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the Company.  Such policies and procedures shall address:

        a.      gifts;
        b.      hospitality, entertainment, and expenses;
        c.      customer travel;
        d.      political contributions;
        e.      charitable donations and sponsorships;
        f.      facilitation payments; and
        g.      solicitation and extortion.

F-1

Periodic Risk-Based Review

4.      The Company shall review its anti-bribery/anti-corruption compliance policies and procedures no less than annually and update them as appropriate to ensure their continued effectiveness, taking into account relevant developments in the field and evolving industry standards.

Proper Oversight and Independence

5.      The Company will designate an officer or employee to serve as the Company's Chief Compliance Officer for the implementation and oversight of the Company's anti-bribery/anti-corruption compliance code, policies, and procedures, including for guidance and advice about compliance with such code, policies, and procedures.  The Chief Compliance Officer shall have direct reporting obligations to independent monitoring bodies, and shall have an adequate level of autonomy from management as well as sufficient resources and authority to maintain such autonomy.

Training and Guidance

6.      The Company will implement mechanisms designed to ensure that its anti-bribery/anti-corruption compliance code, policies, and procedures are effectively communicated to all executives, directors, officers, employees, and, when necessary and appropriate, agents and business partners.  These mechanisms shall include periodic training for the following employees: (a) all executives, directors, and officers; (b) all employees in positions of leadership or trust; (c) all employees in positions that require such training, such as corporate, community, government and congressional affairs, internal audit, sales, real estate, legal, compliance, and finance; (d) employees of agents and business partners in the above positions, when necessary and appropriate. The Company will also require that all people in the above-described categories annually certify that they have received the necessary training and have complied with the law and the Company's anti-bribery/anti-corruption compliance code, policies, and procedures.

Internal Reporting and Investigation

7.      The Company will maintain, or when necessary establish, an effective system for internal reporting and, when possible, confidential reporting by, executives, directors, officers, employees, and, when appropriate, agents and business partners concerning violations of the anti-bribery/anti-corruption laws or the Company's anti-bribery/anti-corruption compliance code, policies, and procedures.  The Company will maintain, or when necessary establish, mechanisms to prevent any personnel action from being taken against any individual making such a report.

8.      The Company will maintain, or when necessary establish, an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of the anti-bribery/anti-corruption laws or the Company's anti-bribery/anti-corruption compliance code, policies, and procedures.

F-2

Enforcement and Discipline

9.      The Company will implement mechanisms designed to effectively enforce its compliance code, policies, and procedures, including appropriately incentivizing compliance, disciplining violations, and re-assessing its compliance code, policies, and procedures to identify modifications necessary to ensure that the overall anti-bribery/anti-corruption compliance program is effective. Such procedures should be applied consistently and fairly, regardless of the position held by, or perceived importance of, the executive, director, officer, or employee.  The Company shall implement procedures to ensure that, when misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct and to ensure that appropriate steps are taken to prevent further similar misconduct.

Third-Party Relationships

10.     The Company will institute risk-based due diligence and compliance requirements pertaining to the retention and oversight of agents and business partners, including:

    a.      conducting properly documented due diligence pertaining to the hiring, and appropriate and regular oversight of, agents and business partners;
    b.      informing agents and business partners of the Company's commitment to abiding by anti-bribery/anti-corruption laws, and of the Company's anti-bribery/anti-corruption compliance code, policies, and procedures; and
    c.      seeking a reciprocal commitment from agents and business partners.

11.     When necessary and appropriate, the Company will include standard provisions in agreements, contracts, and renewals thereof with all agents and business partners that are reasonably calculated to prevent violations of the anti-corruption laws, which may, depending upon the circumstances, include: (a) representations and undertakings relating to compliance with the anti-bribery/anti-corruption laws; (b) rights to conduct audits of the books and records of the agent or business partner to ensure compliance with the foregoing; and (c) rights to terminate an agent or business partner as a result of any breach of the anti-bribery/anti-corruption laws, the Company's compliance code, policies, or procedures, or the representations and undertakings related to such matters.

Mergers and Acquisitions

12.     The Company will develop and implement policies and procedures for mergers and acquisitions requiring that the Company conduct appropriate risk-based due diligence on potential new business entities, including appropriate anti-bribery/anti-corruption due diligence by legal, accounting, and compliance personnel.  If the Company discovers any corrupt benefits of any kind or inadequate compliance processes as part of its due diligence of newly acquired entities or entities merged with the Company, it shall report such conduct to the United States Attorney's Office for the Central District of California.

13.     The Company will ensure that the Company's compliance code, policies, and procedures regarding the anti-bribery/anti-corruption laws apply as quickly as practicable to newly acquired

F-3

businesses or entities merged with the Company and will promptly train the executives, directors, officers, employees, agents, and business partners consistent with Paragraph 6.

F-4