Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
724 South Spring Street, Ninth Floor
Los Angeles, California 90014
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Craig Wilke (SBN 150728)
*craig@craigwilkelaw.com*
LAW OFFICE OF CRAIG WILKE
305 North Harbor Boulevard, Suite 216
Fullerton, California 92832-1901
Telephone: (714) 870-8900
Facsimile: (714) 879-2278

Attorneys for Defendant
Shen Zhen New World I, LLC

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR-20-326(A)-JFW-4 |
| Plaintiff, | |
| v. | **DEFENDANT SHEN ZHEN NEW WORLD I, LLC'S MOTIONS FOR JUDGMENT OF ACQUITTAL, OR ALTERNATIVELY, A NEW TRIAL** |
| SHEN ZHEN NEW WORLD I, LLC, | |
| Defendant. | Hearing Date: May 12, 2023 |
| | Hearing Time: 8:00 a.m. |
| | Assigned to Hon. John F. Walter |

LAW
OFFICES OF
RICHARD M.
STEINGARD

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   LEGAL STANDARD ...........................................................................1

III.  ARGUMENT ........................................................................................1

    A.  SZNW Is Entitled to a Judgment of Acquittal on All Counts...................1

        1.  The Government's Proof of a Quid Pro Quo
            Was Legally Deficient............................................................2

        2.  The Individual Counts Each Harbor Independent
            Fatal Defects.........................................................................4

           a.  Honest Services Fraud (Counts 2-4) ................................4

           b.  Travel Act (Counts 18-21) ...............................................5

            c.  Federal Programs Bribery (Count 23)..............................8

    B.  Alternatively, SZNW Is Entitled to a New Trial on All Counts ...............9

        1.  The Court's Jury Instructions Included Material Errors ......................9

        2.  SZNW's Trial Was Punctuated by
            Prejudicial Evidentiary Errors ..............................................11

           a.  Jose Huizar and the "Other Scheme" Evidence ............12

           b.  Other Evidentiary Errors ................................................13

        3.  The Indictment Was Improperly Amended.......................................14

IV.  CONCLUSION ..................................................................................16

# TABLE OF AUTHORITIES

## **FEDERAL CASES**

*Beech Aircraft Corp. v. Rainey,*
    488 U.S. 153 (1988)...................................................................................14

*Helfand v. Gerson,*
    105 F.3d 530 (9th Cir. 1997) .................................................................10

*Kelly v. United States,*
    140 U.S. 1565 (2020)...............................................................................3

*Lincoln v. Sunn,*
    807 F.2d 805 (9th Cir. 1987) ..................................................................15

*McDonnell v. United States,*
    579 U.S. 550 (2016).....................................................................2-3, 6-10

*McNally v. United States,*
    484 U.S. 358 (2010).................................................................................3

*Skilling v. United States,*
    561 U.S. 358  (2010)..............................................................................5, 7

*United States v. Adamson,*
    291 F.3d 615 (9th Cir. 2002) ..................................................................16

*United States v. Agne,*
    214 F.3d 47 (1st Cir. 2000)......................................................................5

*United States v. Biaggi,*
    674 F. Supp. 86 (E.D.N.Y. 1987) ...........................................................6

*United States v. Brecht,*
    540 F.2d 45 (2d Cir. 1976)......................................................................6

*United States v. Chi,*
    936 F.3d 888 (9th Cir. 2019) ..................................................................6

LAW
OFFICES OF
RICHARD M.
STEINGARD

*United States v. Davis,*
    854 F.3d 601 (9th Cir. 2017) ........................................................................15

*United States v. Garrido,*
    713 F.4th 985 (5th Cir. 2013) ...................................................................2, 8

*United States v. Ghavami,*
    23 F. Supp. 3d 148 (S.D.N.Y. 2014) ...........................................................5

*United States v. Gordon,*
    641 F.2d 1281 (9th Cir. 1981) ....................................................................15

*United States v. Hamilton,*
    46 F.4th 389 (5th Cir. 2022) .....................................................................2, 8

*United States v. Heredia,*
    483 F.3d 913 (9th Cir. 2007) ......................................................................10

*United States v. Kincaid-Chauncey,*
    556 F.3d 923 (9th Cir. 2009) ......................................................................11

*United States v. Lindberg,*
    39 F.4th Cir. 151 (4th Cir. 2022) ...............................................................11

*United States v. Mincoff,*
    574 F.3d 1186 (9th Cir. 2009) ....................................................................16

*United States v. Neill,*
    166 F.3d 943 (9th Cir. 1999) ......................................................................15

*United States v. Nevils,*
    598 F.3d 1158 (9th Cir. 2010) ......................................................................1

*United States v. Ochs,*
    842 F.2d 515 (1st Cir. 1988) .........................................................................7

*United States v. Robles,*
    698 Fed. Appx. 905 (9th Cir. 2017)..............................................................8

LAW
OFFICES OF
RICHARD M.
STEINGARD

iv

*United States v. Silver,*
    948 F.3d 538 (2d Cir. 2020)........................................................................3, 12

*United States v. Stargell,*
    738 F.3d 1018 (9th Cir. 2013) ...................................................................5

*United States v. Sun-Diamond Growers of Cal.,*
    526 U.S. 398 (1999)............................................................................ 2-3, 11

*United States v. Tatoyan,*
    474 F.3d 1174 (9th Cir. 2007) ...................................................................10

*United States v. Ubakanma,*
    215 F.3d 421 (4th Cir. 2000) .....................................................................5

*United States v. Vizcarra-Martinez,*
    66 F.3d 1006 (9th Cir. 1995) ....................................................................13

*Wis. Dep't of Revenue v. William Wrigley, Jr. Co.,*
    505 U.S. 214 (1992).................................................................................12

## STATE CASES

*People v. Deidrich,*
    31 Cal. 3d 263 (1982) ...............................................................................6

*People v. Gaio,*
    81 Cal. App. 4th 919 (2000) .....................................................................6

## MISCELLANEOUS AUTHORITIES

Bishop on the Criminal Law § 85(1) (9th ed. 1923)...................................................7

Black's Law Dictionary, 4th ed. (1951) .....................................................................6

Fed R. Crim. P. 29....................................................................................................1

Fed R. Crim. P. 33....................................................................................................1

LAW
OFFICES OF
RICHARD M.
STEINGARD

18 U.S.C. § 3293 ................................................................................................ 4-5

LAW
OFFICES OF
RICHARD M.
STEINGARD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

On November 11, 2022, the jury returned a guilty verdict on all counts against defendant Shen Zhen New World I, LLC ("SZNW").  Tr. 2378–83. Following the discharge of the jury, SZNW orally moved for a judgment of acquittal on all counts under Rule 29, Fed. R. Crim. P., or, in the alternative, a new trial under Rule 33, Fed. R. Crim. P.  *Id.* 2386–87.  The Court stated that it was denying the motions but allowed that SZNW could later file them.  *Id.* 2387.

To memorialize its positions, SZNW submits these motions and supporting memorandum for judgment of acquittal or, alternatively, a new trial.

## II.

## LEGAL STANDARD

The Court should enter a judgment of acquittal whenever the government's evidence fails to establish the charged federal crimes.  Fed. R. Crim. P. 29(a).  The standard is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt the essential elements of a crime, as properly understood under the law.  *See, e.g.*, *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010).  Alternatively, a court may "vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).

## III.

## ARGUMENT

### A. SZNW Is Entitled to a Judgment of Acquittal on All Counts

The jury convicted SZNW of three counts of honest services fraud (Counts 2–4); four counts of violating the Travel Act (Counts 18–21); and one count of federal programs bribery (Count 23).  SZNW asks that the Court order an acquittal for each charge.

### 1.  The Government's Proof of a *Quid Pro Quo* Was Legally Deficient

Respectfully, the federal bribery laws require more than what the government presented at trial.  *See, e.g.*, ECF 235, at 9–12; ECF 754, at 85–86, 90–91, 93, 96.[1]  The government must establish a genuine *quid pro quo*: an agreed-upon exchange where a public official provides a specific official act for a private benefit.  *See, e.g.*, *United States v. Garrido*, 713 F.3d 985, 997 (9th Cir. 2013) (§ 1346 requires *quid pro quo*); *United States v. Hamilton*, 46 F.4th 389, 398 (5th Cir. 2022) (same for § 666); ECF 235, at 34–39, 42–43 (same for federal generic definition of bribery under the Travel Act).

Applied to the instant case, the government was required to prove more than a private person (like Wei Huang) gave a private benefit (like gambling chips) to a public official (like Councilmember Huizar) with the possibility that the private person might one day request, and the public official might someday perform, a generic act in connection with a given project or some unspecified future official act.  Rather, the law "require[s] that some *particular* official act be identified and proved."  *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 406 (1999) (emphasis added).  That is, the government must not only identify a "specific and focused matter," but must also prove that "at the time of the alleged *quid pro quo*," the private benefit was given to the public official with the intent that he perform a *particular* official act "on that question, matter, cause, suit, proceeding, or controversy."  *McDonnell v. United States*, 579 U.S. 550, 572–74 (2016); *see also Sun-Diamond*, 526 U.S. at 404 ("[F]or bribery there must be a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act.") (emphasis in original).  Indeed, the Supreme Court has repeatedly and decisively rejected attempts to expand the federal corruption laws in

---

[1]  Mindful of the Court's stated denial of these motions, SZNW will not repeat at length points raised before.  Rather, SZNW incorporates by reference all previous written filings and oral motions as if cited herein.

LAW OFFICES OF RICHARD M. STEINGARD

sweeping and amorphous ways. *See, e.g.*, *Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020) (rejecting interpretation that would bring about a "sweeping expansion of federal criminal jurisdiction"); *McDonnell*, 579 U.S. at 575 (same for one that would create "pall of potential prosecution" over regular political activity); *McNally v. United States*, 483 U.S. 350, 360 (1987) (the government may not use the federal bribery laws "to set standards of disclosure and good government for local and state officials").  And, contrary to the government's view, the federal bribery laws require a meaningful nexus (or *pro*) between any purported *quid* and *quo*: there must be an agreement to exchange benefits for "some *particular* official act." *Sun-Diamond*, 526 U.S. at 406 (emphasis added).[2] The government's proof at trial failed to meet these requirements.  From the outset of its investigation, the government struggled to identify a specific "official act" that SZNW or Wei Huang sought from Councilmember Huizar.  *See, e.g.*, Tr. 378–83 (Agent Civetti explaining it was "unclear" through at least May 2018 what acts Huizar had taken here).  And at trial, the government abandoned any attempt to prove that Wei Huang ever asked Huizar to perform any official act on his behalf and conceded that Huizar never performed an official act in connection with the redevelopment of the LA Grand Hotel.  *See, e.g.*, Tr. 918–19 (prosecution conceding that they will not put on any evidence showing Huang planned to make

---

[2] SZNW respectfully disagrees with one aspect of the Second Circuit's decision in *United States v. Silver*, 948 F.3d 538 (2d Cir. 2020), and this Court's reliance on it: the so-called "as the opportunities arise" theory of bribery.  As noted above, in *McDonnell*, the Court stated that the government must prove that at the time of the alleged *quid pro quo*, a private benefit was given to a public official with the intent that he perform a *particular* official act "on *that* question, matter, cause, suit, proceeding, or controversy," effectively eliminating the "as the opportunities arise" theory of prosecution.  *Silver* is also distinguishable; the Court there had no occasion to analyze what is required to press an "as the opportunities arise" theory when the opportunities are wholly prospective, and thus did not address that question.

LAW
OFFICES OF
RICHARD M.
STEINGARD

specific asks of Huizar); Tr. 367-373 (Agent Civetti testifying that Huizar did not perform an official act in connection with the Tower Project).

Indeed, in the government's closing argument, it stated that Chairman Huang's "big ask" to Huizar did not involve any ask at all. In its words: "That wasn't how the scheme worked. There didn't have to be the big ask. Their entire relationship was the big ask. It was founded on the premises that Jose Huizar had power to do something that Chairman Huang wanted, and Chairman Huang was willing to pay for it. That was the ask." Tr. 2335.

At trial, the government did not allege—let alone prove beyond a reasonable doubt—that Chairman Huang and Councilman Huizar entered into an agreed-upon exchange where Huizar would supply a particular official act in exchange for financial benefits. The government's evidence was insufficient to sustain a federal bribery charge under any of the statutes at issue. This Court should order acquittal.

### 2. The Individual Counts Each Harbor Independent Fatal Defects

The above problem—the government's failure to prove an adequate *quid pro quo*—reaches every count. Additionally, the evidence presented with regard to the individual charges was inadequate and independently warrants acquittal on each count.

### a. Honest Services Fraud (Counts 2–4)

SZNW's honest services fraud convictions suffer from at least two key flaws.

*First*, Count 2 is untimely. *See, e.g.*, ECF 235, at 26–29. That count only survives the statute of limitations if the claimed violations (which took place in 2014) "affected at least one financial institution." 18 U.S.C. § 3293(2). The government's sole argument on this score is that because Wei Huang's $600,000 in collateral was necessarily a bribe and therefore conceivably subject to criminal forfeiture, it exposed the bank to a "new or increased risk of loss," which is all that

is needed to "affect" an institution under the statute.  *United States v. Stargell*, 738 F.3d 1018, 1022 (9th Cir. 2013); *see also* Tr. 2262–63.

The mere specter of criminal forfeiture of a loan's collateral, however, is not sufficient.  As other courts have recognized, any risk of loss must be more than *de minimis*.  *E.g.*, *United States v. Agne*, 214 F.3d 47, 53 (1st Cir. 2000).  For instance, a bank is not "affected" where it is "mere[ly] utiliz[ed] … in the transfer of funds."  *United States v. Ubakanma*, 215 F.3d 421, 426 (4th Cir. 2000); *see also, e.g.*, *United States v. Ghavami*, 23 F. Supp. 3d 148, 162–63 (S.D.N.Y. 2014) (collecting cases).  And here, the bank would only be affected if each link along an attenuated chain of events took place—from Huizar defaulting, to Wei Huang's collateral being deemed a bribe, to the government pursuing forfeiture before the bank could secure its loan.

The government's theory largely collapses any distinction between an action "affecting" a financial institution and one "involving" a financial institution.  Yet, Congress was careful about which words it chose in this provision.  *Compare* 18 U.S.C. § 3293(2) ("affects"), *with id.* § 3293(3) ("involves").  The Court should hold that these distinctions have differences in meaning.

*Second*, SZNW submits that the Supreme Court's attempt in *Skilling* to save the honest-services statute from the shoals of unconstitutional vagueness has proven unsuccessful.  *See* ECF 235, at 65; *see also Skilling v. United States*, 561 U.S. 358, 420–24 (2010) (Scalia, J., concurring in part and concurring in the judgment).  The honest-services statute is unconstitutional in all applications, and *Skilling* should thus be overruled.  SZNW recognizes that this Court lacks the authority to overrule *Skilling* and presents this argument here solely to preserve it.

### b.  Travel Act (Counts 18–21)

SZNW's Travel Act convictions also have two fundamental deficiencies.

*First*, the California laws at issue cannot serve as predicates for Travel Act offenses.  *See* ECF 235, at 29–43.  As the Court knows, federal courts apply a

categorical approach to determine whether a state law may serve as a Travel Act predicate.  *See United States v. Chi*, 936 F.3d 888, 895 (9th Cir. 2019).  In so doing, courts compare the state bribery offense against the generic federal definition of bribery in 1961 (the year that the Travel Act was enacted).  *See* ECF 235, at 35.

Among other things, the California state bribery offenses used against SZNW require neither a *quid pro quo* nor an official act.  *See* ECF 235, at 39–42; *see also, e.g.*, *People v. Gaio*, 81 Cal. App. 4th 919, 928–29 & n.9 (2000); *People v. Deidrich*, 31 Cal. 3d 263, 276 (1982).  That is fatal, because the generic federal definition of bribery in 1961 required both of those elements.  And because these California provisions sweep more broadly, they cannot qualify as Travel Act predicates.

Plain meaning, statutory context, and history all confirm that the generic federal definition of bribery in 1961 involved both a *quid pro quo* and an official act.  Contemporary dictionaries reflect this understanding.  *See, e.g.*, Black's Law Dictionary, 4th ed. (1951) (defining "bribery" as "the offering, giving, receiving, or soliciting of any thing of value to influence action as official or in discharge of legal or public duty"); *see also United States v. Biaggi*, 674 F. Supp. 86, 87 (E.D.N.Y. 1987) (Weinstein, J.) ("Dictionary definitions in the main support the defendants' position that the common meaning of the word bribery is the giving of a thing of value corruptly and with intent to influence a specific official act.").  So too the Travel Act's statutory context, given the Act was passed in close succession with § 201—"the federal bribery statute," which requires both a *quid pro quo* and an official act.  *McDonnell*, 579 U.S. at 562.  And this view fits comfortably with the common law of public bribery.  *See, e.g.*, *United States v. Brecht*, 540 F.2d 45, 48 (2d Cir. 1976), *vacated on other grounds*, 440 U.S. 37 (1979) ("The traditional common law definition of bribery was limited to the 'giving or receiving of anything of value in corrupt payment for an official act.'")

1  (quoting Bishop on the Criminal Law § 85(1), at 62 (9th ed. 1923)).

2          Accordingly, the California bribery laws invoked here against SZNW cannot

3  serve as Travel Act predicates.  This Court should order acquittal on Counts 18–21.

4          *Second*, to the extent the Travel Act applies, it is unconstitutional.  For

5  starters, the statute's core command—forcing people to conform their present-day

6  conduct to the 1961 generic federal definition of bribery—is unconstitutionally

7  vague.  *See* ECF 235, at 62–65.  Understanding the contours of federal bribery

8  *statutes* is hard enough even for trained lawyers; discerning the bounds of *generic*

9  bribery as it existed in the Kennedy Administration is an impossible task for

10  ordinary citizens.  As the Supreme Court has explained time and again, statutes

11  must be written with "sufficient definiteness that ordinary people can understand

12  what conduct is prohibited."  *Skilling*, 561 U.S. at 402.

13  Related, the government's reading of the Travel Act collides with the same

14  constitutional concerns that animated *McDonnell*.  As the Court there explained, an

15  open-ended view of federal bribery—one untethered from a genuine official act

16  requirement—implicates numerous constitutional tripwires.  *See* 579 U.S. at 574–

17  75 (chilled First Amendment activity); 576 (lack of fair notice); 576–77

18  (federalism problems).  But here, the government presses a malleable view of the

19  Travel Act that would "let in through the back door the very prosecution theory

20  that the Supreme Court tossed out the front."  *United States v. Ochs*, 842 F.2d 515,

21  527 (1st Cir. 1988).

22          These constitutional considerations are all reasons to reject the government's

23  interpretation of the Travel Act and hold that the statute does not mean what the

24  government claims.  But if the Travel Act is actually as sweeping as the

25  government claims, then that statute violates the First Amendment, the Due

26  Process Clause, and the federalism principles of the Constitution.  Should the

27  Court side with the government on what the Travel Act means as a statutory

28  matter, it should deem that provision invalid as a constitutional matter.

**c.  Federal Programs Bribery (Count 23)**

As with the Travel Act, constitutional avoidance principles compel reading § 666 narrowly, and the government's position renders the law unconstitutional.

The government argues that § 666 requires neither a *quid pro quo* nor any intent to affect a particular official act; instead, the law proscribes merely the general intent to *influence* some governmental *business* through some sort of private benefit.  ECF 754, at 87.  That is not enough.  *See* ECF 235, at 48–62 (arguing § 666 is unconstitutional absent a clear *quid pro quo* requirement); *see also Hamilton*, 46 F.4th at 398 n.3 (5th Cir. 2022) ("Treating § 666 as though it covers all sorts of interactions with local public officials raises First Amendment, federalism, and due-process concerns.").[3]

The government's interpretation of § 666 runs afoul of three interrelated constitutional doctrines.  First, vagueness:  A nebulous prohibition on giving something of value with the intent to *influence* any governmental *business* does not give ordinary people a sufficient understanding of what conduct is unlawful, and risks subjecting individuals "to prosecution, without fair notice, for the most prosaic interactions."  *McDonnell*, 579 U.S. at 576; *see also* ECF 235, at 48–53 (detailing vagueness problems).  Next, overbreadth:  The government's attempt to treat any gift to a public official as a possible token of improper influence sufficient for a § 666 prosecution will surely chill core First Amendment activity, like lobbying or donations.  *See McDonnell*, 579 U.S. at 575; *see also* ECF 235, at 53–56 (explaining First Amendment issues).  And finally, federalism:  The

---

[3] The Ninth Circuit's decision in *Garrido* should not compel a contrary result. *But see United States v. Robles*, 698 Fed. Appx. 905, 906 (9th Cir. 2017).  Among other things, that case predated the Supreme Court's decision in *McDonnell*, and its holdings as to the requirements of § 666 are irreconcilable with that decision.  *See, e.g.*, *Hamilton*, 46 F.4th at 398 n.3 ("Treating § 666 as though it covers all sorts of interactions with local public officials raises First Amendment, federalism, and due-process concerns." (citing *McDonnell*, 579 U.S. at 550)).

LAW OFFICES OF RICHARD M. STEINGARD

government intrudes upon state sovereignty and the Constitution's vertical separation of powers when it construes federal statutes in sweeping ways to regulate the particulars of local government. *See, e.g.*, *McDonnell*, 579 U.S. at 576 (state authority "includes the prerogative to regulate the permissible scope of interactions between state officials and their constituents"); *see also* ECF 235, at 56–62 (detailing federalism problems).

\* \* \*

In light of the above, SZNW asks that the Court enter a judgment of acquittal on all counts. The government failed to prove that SZNW violated any federal law, properly understood. And to the extent those laws apply, they are unconstitutional.

### B. Alternatively, SZNW Is Entitled to a New Trial on All Counts

SZNW submits that instructional errors, evidentiary errors, and multiple constructive amendments to the indictment independently and collectively warrant a new trial.

### 1. The Court's Jury Instructions Included Material Errors

SZNW submitted numerous proposed jury instructions on the different counts (ECF 724, 725, and 754), and respectfully submits that the Court's rulings rejecting those instructions were in error. Tr. 2116–49. SZNW is aware that these arguments were all raised (and fell) before the Court. But four points nonetheless warrant further mention here, and SZNW incorporates its fuller briefing by reference.

*First*, the Court's instructions failed to adequately define the elements of each offense. As explained above, each of the federal bribery laws at issue—the honest-services statute, the Travel Act, and federal program bribery—require an agreed-upon *quid pro quo* that involves a particular official act. The Court erroneously omitted these elements from its instructions. *See, e.g.*, Tr. 2126–28 (honest-services instructions do "not require identification of the specific or

particular acts to be performed"); *id.* 2142 (holding that Travel Act does not require any agreement); *id.* 2145 (same for § 666); *id.* 2146 (neither Travel Act nor § 666 requires any official act).

*Second*, even if the Court disagrees about these points as a general matter, it should have included such instructions for the Travel Act counts *here*, given the indictment and the government's representations.  *See* ECF 235, at 42–43.  The Travel Act violations in the indictment include the specific assertion that Huizar and SZNW committed certain acts "in exchange for defendant Huizar agreeing to perform official acts to benefit the L.A. Grand Hotel Project."  ECF 74, at 108–10.  And the government relied on this point in arguing against dismissal.  ECF 259, at 51–52 ("The indictment already alleges a quid pro quo and 'official acts' that meet the *McDonnell* principles for all of the federal statutes charged in the indictment."); *see also, e.g.*, *Helfand v. Gerson*, 105 F.3d 530, 534–36 (9th Cir. 1997) ("Judicial estoppel … precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.").  Thus, as to the Travel Act counts, the government was required to prove a *quid pro quo* and an official act—just as it had promised to do—and the Court's instructions wrongly alleviated it of that burden.

*Third*, the Court failed to give the jury sufficient guidance about how to navigate the amorphous concepts that underly federal bribery law.  *See United States v. Tatoyan*, 474 F.3d 1174, 1179 (9th Cir. 2007) (instructions must adequately "guide the jury's deliberations").  Namely, SZNW requested instructions that would help the jury parse what is (and is not) a *quid pro quo* and an "official act" under federal law.  ECF 754, at 85–86 (*quid pro quo*); *id.* at 98–99 (official act).  SZNW also requested (and was denied) a similar instruction during trial.  Tr. 217.

Those instructions were particularly appropriate in this case.  *See United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) ("In general, a party is entitled

to an instruction to help it prove its theory of the case, if the instruction is supported by law and has foundation in the evidence."). As noted, the beginning, middle, and end of the government's prosecution was replete with actions by a government official that were *not* official acts. *See, e.g.*, ECF 647, at 8–9 (collecting examples, such as Huizar making phone calls and arranging meetings to help resolve a parking dispute and union-related issues). But the jury was not provided sufficient instructions in determining when something done in an *official capacity* ultimately "involv[ed] the formal exercise of *governmental power*." Tr. 2349 (jury instructions (emphasis added)); *see also, e.g.*, Tr. 2136 (SZNW: "[H]ow can [the jury] know whether a letter sent on Mr. Huizar's stationary constitutes a formal exercise of government power if we don't tell them?").

Likewise, the instructions failed to provide adequate guidance on how the jury should differentiate lawful ingratiation from an unlawful *quid pro quo*. Quite purposefully, the federal bribery laws do not prohibit the giving of gifts "to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future." *Sun-Diamond*, 526 U.S. at 405. Nor do they criminalize the "giving of gifts by reason of the recipient's mere tenure in office." *Id.* at 408; *see also, e.g.*, *United States v. Kincaid-Chauncey*, 556 F.3d 923, 941–46 (9th Cir. 2009). The government's case, though, rested on vilifying such behavior, and collapsing any distinction between access and corruption. *See, e.g.*, Tr. 2241 (Government Closing: "Do you think for one second that Wei Huang would have provided Jose Huizar with all these benefits if he were not the councilmember … [and instead] were a teacher or a receptionist or a mechanic?"). Given all this, the jury needed more specific guidance.

These errors bore most directly on the honest-services counts, but also affected the other charges given their invariable overlap. *See, e.g.*, *United States v. Lindberg*, 39 F.4th Cir. 151, 163–65 (4th Cir. 2022) (vacating § 666 conviction after vacating honest-services conviction because jury may have "felt compelled" to convict if it

LAW OFFICES OF RICHARD M. STEINGARD

understood the "official act" at issue as "necessarily" satisfying element of § 666, so the error may "have effortlessly bled into the jury's consideration" of latter count).

*Fourth*, under the circumstances presented here, the 2014 city council resolution honoring Wei Huang cannot be an official act, the jury should have been instructed accordingly, and this "official act" should have been struck from the special verdict form.  *See, e.g.*, ECF 644, at 4–5.  This sort of vacuous resolution involves no meaningful exercise of governmental power and is too *de minimis* to constitute an official act.  *See, e.g.*, *Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992) ("[T]he venerable maxim *de minimis non curat lex* ('the law cares not for trifles') is part of the established background of legal principles against which all enactments are adopted"); *United States v. Silver*, 864 F.3d 102, 121 (2d Cir. 2017) ("A rational jury could thus conclude that, though certainly 'official,' the prolific and perfunctory nature of these resolutions makes them *de minimis quos* unworthy of a *quid*.").

### 2.  SZNW's Trial Was Punctuated by Prejudicial Evidentiary Errors

Respectfully, the Court allowed the government to introduce numerous items of evidence that were improper, irrelevant, and highly inflammatory.  Those errors merit a new trial.

### a.  Jose Huizar and the "Other Scheme" Evidence

The government built its prosecution against SZNW based on evidence about Jose Huizar's independent crimes and bad acts.  SZNW consistently objected to the introduction of this evidence.  *See, e.g.*, ECF 642 (concealment); ECF 649 (other schemes); ECF 667 (money laundering).  For the most part, the Court overruled these objections and permitted the presentation of this evidence.  SZNW respectfully submits that doing so was error.

An essential piece of the prosecution's strategy was to front-load the jury with evidence about Huizar's "pay-to-play" scheme, and then brand Wei Huang as

1    simply another "friend of the office."  *See, e.g.*, Tr. 2240 (government stressing in
2    closing Huizar was "leader of a pay-to-play scheme in LA").  For example, the
3    government had its star witness—George Esparza—explain for the jury the
4    "general … pay-to-play scheme" that Huizar was operating.  *Id.* 744.  The
5    government then spent extensive trial time—including calling multiple members of
6    Huizar's family to make the same point about his illicit money-laundering—
7    documenting the Councilman's nefarious conduct.  *See, e.g.*, 1482–86 (Isidra
8    Huizar testifying about how her son took advantage of her to launder money).

9         The government's evidence was prejudicial.  As the Court recognized when
10   it decided to sever this case, the government's burden was to show that SZNW—
11   and only SZNW—intended to enter a corrupt bargain with Huizar.  Whether
12   Huizar entered into corrupt relationships with others, or committed additional
13   offenses on his own, has no bearing on that issue.  *See, e.g.*, ECF 649, at 5.  Even if
14   such information has some minimal probative value, its prejudicial effects clearly
15   outweighed it.  *See, e.g.*, ECF 642, at 6–7; *see also United States v. Vizcarra-*
16   *Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995).

17        **b.  Other Evidentiary Errors**

18        Over objection, the Court allowed the government to introduce irrelevant or
19   otherwise inadmissible evidence that prejudiced SZNW.  *See, e.g.*, ECF 643
20   (Sheraton redevelopment); ECF 644 (city council resolution); ECF 645 (radar
21   screens); ECF 646 (co-schemer statements); ECF 647 (innocent acts); ECF 648
22   (Psomas testimony); ECF 650 (East West Bank testimony); ECF 702 (Wei
23   Huang's alleged fugitive status); ECF 793 (evidence of Henry Yong disbarment);
24   Tr. 93, 145, 211 (permitting Agent Civetti to testify as to his "understandings").
25   Aware that the Court has rejected these arguments before, SZNW incorporates its
26   prior filings by reference and rests on those arguments.
27   Additionally, the Court excluded testimony of Ricky Zheng regarding certain out-
28   of-court statements by Wei Huang. Over objection, Zheng testified that he and

multiple others expressed concern to Chairman Huang about bringing Huizar, a public official, to Las Vegas and giving him gambling chips.  Tr. 1529–31.  On cross, counsel asked Zheng how Huang responded to these statements—and proffered that Zheng would testify that Huang said not to worry, because they were all just having fun, and that he was not doing anything wrong since he was not asking anything of Huizar.  ECF 794, at 6.  The Court precluded Zheng's expected testimony as hearsay.  *See* Tr. 1586–88.

Respectfully, that was error—and one that kept key testimony from the jury.  Zheng's testimony about Huang's statements fit comfortably within the state-of-mind exception to hearsay.  *See* ECF 794, at 6.  And even if it did not, the rule of completeness required admitting it.  *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171 (1988).  Without the second half of these conversations, the jury was left with the misleading impression that Chairman Huang heedlessly ignored his right-hand-man and associates' objections to including Huizar on the trips.  But the reality was much different:  Chairman Huang was unconcerned with Huizar's presence on the trips precisely because he was *not* asking Huizar for anything.

* * *

Respectfully, SZNW submits that the Court made a number of incorrect evidentiary rulings, and that those errors—whether taken individually or in combination—merit a new trial.

### 3.  The Indictment Was Improperly Amended

SZNW submits that the indictment was improperly amended twice over:  Once by the Court, and once by the prosecution.  As a result, SZNW is entitled to a new trial.

*First*, the Court erred in granting the government's motion to formally amend the indictment to change the California bribery predicates for the Travel Act counts.  *See* ECF 706, at 3–8.  Given the dictates of the Fifth Amendment, courts may amend an indictment only in narrowly confined circumstances.

Namely, courts may only permit non-substantive amendments—those that remedy "minor or technical deficienc[ies]"—like typos—but nothing more.  *United States v. Neill*, 166 F.3d 943, 947 (9th Cir. 1999); *United States v. Gordon*, 641 F.2d 1281, 1285 (9th Cir. 1981).

Here, it is uncontested that if the government did not alter the indictment, SZNW would have been entitled to judgments of acquittal on the Travel Act counts.  *See Gordon*, 641 F.2d at 1283.  Salvaging four counts from certain peril is not a non-substantive change.  The government needed a grand jury to fix those mistakes, *see* ECF 706, at 4–6, and dispensing with that constitutionally required step prejudiced SZNW.  *See United States v. Davis*, 854 F.3d 601, 605–06 (9th Cir. 2017).

*Second*, the government constructively amended the indictment when it changed its theory of the case at trial.  In the indictment, the culminating overt act was that Wei Huang supposedly planned on making his "big ask" of Jose Huizar during a trip to Cabo San Lucas, where he would make specific demands regarding the LA Grand Hotel, or force Huizar to repay the $600,000 in collateral.  ECF 74, at 26–27; *see also* ECF 413, at 9–10.  At trial, the government abandoned this evidence (Tr. 918–19) and, instead, adopted a completely different position: the "big ask" did not involve any ask at all.  Again, the government stressed this in its final words to the jury:  "There didn't have to be the big ask.  Their entire relationship was the big ask."  Tr. 2335.

That is a substantial alteration to the indictment.  In the indictment, the government depicted a case that turned on actual events that had already transpired; yet at trial, the government presented a theory that turned entirely on its interpretation of Wei Huang's unspoken future intentions and desires.  Those are completely different theories and the government's switch constructively amended the indictment.  *See, e.g.*, *Lincoln v. Sunn*, 807 F.2d 805, 813 (9th Cir. 1987).

This amendment prejudiced SZNW.  Not only did the government materially

LAW
OFFICES OF
RICHARD M.
STEINGARD

change what SZNW needed to defend itself against—actual conduct versus hypothetical future behavior—but it is not clear a grand jury would have even indicted SZNW in the first place, given the nebulous nature of the government's new theory.  *See, e.g.*, *United States v. Mincoff*, 574 F.3d 1186, 1198 (9th Cir. 2009) (a constructive amendment is *per se* prejudicial when "it [is] impossible to know whether the grand jury would have indicted for the crime actually proved"). Finally, and at the least, the government changing its theory of the case amounted to an impermissible variance.  *See, e.g.*, *United States v. Adamson*, 291 F.3d 615–16 (9th Cir. 2002).

## IV.

## CONCLUSION

For the reasons above, SZNW asks that the Court enter a judgment of acquittal on all counts or, alternatively, order a new trial.